[redacted]

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own

lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is

3

[redacted]

the two different configurations of the camera clip, *i.e.*, on a flat surface (Fig. 2) and on an inclined object (Fig. 4):



**B.     Disputed Terms**

"Hinge Member" [cls. 1, 8, 10, 17, 19, 20, and 21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that joins to another for rotation | A structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

The parties generally agree that the "hinge member" is "a structural element that joins to another." The parties, however, disagree whether the hinge member must form a "hinge joint" or can include any form of "joint."

5

A0017

Plaintiff's proposed construction evolved over the course of the briefing. Plaintiff ultimately argues that the "hinge member" is not limited to hinge *joints*. Specifically, Plaintiff contends that the claims and specification describe the "hinge member" as both "rotatably attached" and "hingedly attached." Therefore, an object that is "rotatably attached" is necessarily broader than a "hingedly attached" object. PL.'S BR. at 4–8; PL.'S REPLY at 3–4. Plaintiff raises secondary arguments regarding the "rotatably attached" terms and their interplay with the hinge member (*Id*. at 7–8), however, those arguments are discussed in more detail in the section below construing the "rotatably attached" terms.

The claims and the specification of the '343 patent disclose the hinge member as both "rotatably" and "hingedly" attached to another object. For example, claim 1 of the '343 patent describes the support frame as "rotatably attached" to the hinge member. '343 patent at 58–60. On the other hand, claim 19 of the '343 patent describes the support frame as "hingedly attached" to the hinge member. '343 patent at 9:24–26. A plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments.

The specification, moreover, describes embodiments of the hinge member incorporating the concept of pivots and pivoting. *See, e.g.*, 4:44–48 ("It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34."); 5:37–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26."). Therefore, Defendants' proposed

6

construction limiting the hinge member to hinge *joints* would improperly read out the foregoing preferred embodiments. *See Globetrotter Software, Inc.*, 362 F.3d at 1381.

Defendants' proposed construction would also render the "rotatably attached" terms superfluous by limiting all claimed attachments to "hinged" attachments. Such a result is untenable. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of claim construction that would render additional, or different, language in another independent claim superfluous.") (quoting *Fantasy Sports Props. v. Sportsline.com*, 287 F.3d 1108, 1115-16(Fed. Cir. 2002)). Defendants' proposed construction is also unnecessarily permissive because it describes the hinge member as a structural element that *may* be joined to another. Neither the specification nor claims teach a permissive attachment and such a construction would not meaningfully limit the claims.

As Defendants advocate, the claimed "hinge member" indeed may include a hinge joint. However, the claims and the specification disclose that the hinge member is not limited to hinge joints. Had the patentee intended to limit the patent in such a way, he or she: (1) could have simply used the term hinge *joint*, and not the broader term *member*; or (2) would have used "hingedly" to describe all the attachments in the claims. Therefore, the Court construes "hinge member" as "a structural element that joins to another for rotation."

[redacted]

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| [redacted] | [redacted] |

The specification is consistent with the claims in disclosing the camera and support frame rotating over a first and second axis of rotation. *See, e.g.*, 2:12–18 ("The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation"); 4:17–19 ("Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26."). Every reference to a "rotatably attached" object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.

Plaintiff contends that that claims refer to the apparatus as "comprising" a first and second axis of rotation; therefore, Plaintiff argues that the use of "comprising" broadens the claims to allow attachments which rotate over multiple axes. PL.'S BR. at 7. Plaintiff is mistaken. For example, claim 1 recites:

> 1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:
>   a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and
>   b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

'343 patent at 6:49–7:6. "Comprising" appears before the individual elements of the claimed camera clip, *i.e.*, the hinge member and support frame. Therefore, the word "comprising" may suggest that other elements exist beyond the *hinge member* and *support frame*. However, the term "comprising" does not render each and every word in the claim open-ended as Plaintiff suggests. Plaintiff's position would render the claim language meaningless.

Plaintiff further contends that the rotatable attachment between the hinge member and the camera is a "pivot joint"; therefore, limiting the rotation about a single axis would exclude a preferred embodiment. PL.'S BR. at 8. Even assuming the specification does disclose a pivot joint, limiting the *rotation* around a single axis would not read out the embodiment. A pivot joint allows for rotation and the specification explicitly describes the "pivot element" as rotating around a *single* axis of rotation. *See, e.g.*, '343 patent at 5:38–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about *first axis* 26.") (emphasis added).

On the other hand, Defendants' proposed construction merely restates what is already contained in the claims. The claims plainly describe each "rotatably attached" object as rotating about a single axis and any further construction would only serve to confuse the jury. In other words, Defendants' construction merely repeats the claim language. Therefore, the Court finds that the "rotatably attached" terms do not require construction beyond what is contained in the claims. While the Court has not explicitly construed the "rotatably attached" terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, *i.e.*, "rotatably attached" objects in the patent-in-suit are limited to a single axis of rotation. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When

[redacted]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [redacted] | [redacted] |

[redacted]

be rotated to a second position to support the camera on a display screen of a laptop computer."); 2:24–26 ("[T]he rear support element and the first and second front support elements support the camera in the first position"); 2:39–41 ("[T]he rear support element and the first and second front support elements support the camera in a second position on the first surface"); 4:48–54 (same); 5:2–14 (same). Therefore, the claims and the specification identify the first and second disposition as particular structural arrangements of the support frame.

Plaintiff and Defendants generally agree that the structure of the support frame is provided in the specification and claims. PL.'S BR. at 10; PL.'S REPLY at 1–2. Plaintiff, however, proposes a construction that ignores the different structural arrangements of the support frame, *i.e.* different dispositions. On the other hand, Defendants' construction unnecessarily requires the actual dispositions of the support frame to functionally provide the support frame its ability to "support." The claims are not limited to the extent that "the different dispositions *enable* support" of the hinge member.

Support frame is an easily understood term and its function and structure are defined in the claims. While the support frame must allow for two structural arrangements as described in the claims, the ability to support the hinge member is not directly linked to the two structural arrangements. As such, the Court finds that "support frame" is sufficiently defined in the claims and no construction is necessary. Nevertheless, the Court has resolved the parties' dispute regarding the scope of the claims. *See O2 Micro*, 521. F.3d at 1360.

[redacted]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [redacted] | [redacted] |

**CONCLUSION**

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 10th day of April, 2012.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

## APPENDIX A

| Claim Term | Court's Construction |
|---|---|
| Hinge member | a structural element that joins to another for construction |
| Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Support Frame | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Disposition | a configuration or arrangement of the support frame |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADJUSTACAM, LLC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:10-CV-329 |
| | § | PATENT CASE |
| | § | |
| AMAZON.COM, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## ORDER

The above entitled and numbered civil action has been referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Memorandum Opinion and Order (Doc. No. 627) containing the Magistrate Judge's claim construction ruling has been presented for consideration. Plaintiff and Defendants' have filed Objections (Doc. Nos. 629, 632) to the Memorandum Opinion and Order. However, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and are not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Therefore, the Court hereby overrules Plaintiff's and Defendants' objections and adopts the Memorandum Opinion and Order of the United States Magistrate Judge as the Opinion and Order of this Court.

**So ORDERED and SIGNED this 7th day of June, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

Pursuant to the Orders granting the parties' Joint Motions to Dismiss, the Court hereby enters Final Judgment. Plaintiff Adjustacam LLC filed suit against fifty-nine Defendants in this case on July 2, 2012. Since that time, all Defendants have been dismissed: Amazon.com, Inc. (Docket No. 630); Auditek Corporation (Docket No. 647); Blue Microphones, LLC (Docket No. 492); Baltic Latvian Universal Electronics, LLC d/b/a Blue Microphones, LLC d/b/a Blue Microphone (Docket No. 492); CDW Corporation f/k/a CDW Computer Centers, Inc. (Docket No. 658); CDW, Inc. (Docket No. 658); CDW, LLC (Docket No. 10); Compusa.com, Inc. (Docket No. 620); Cobra Digital, LLC (Docket No. 420); Creative Technology Ltd. (Docket No. 348); Creative Labs, Inc. (Docket No. 560); Dell, Inc. (Docket No. 563); Digital Innovations, LLC (Docket No. 651); Eastman Kodak Company (Docket No. 217); Ezonics Corporation d/ba/ Ezonics Corporation USA d/b/a Ezonics (Docket No. 361); Fry's Electronics Inc. (Docket No. 675); Gear Head, LLC (Docket No. 665); General Electric Company (Docket No. 8); Hewlett-Packard Company (Docket No. 677); Incomex, Inc. (Docket No. 342); Jasco Products Company LLC d/b/a Jasco Products Company d/b/a Jasco (Docket No. 410); Jwin Electronics Corporation (Docket No. 419); Klip Extreme LLC (Docket No. 341); Kmart Corporation (Docket No. 445);

Lifeworks Technology Group, LLC (Docket No. 522); Macally Peripherals, Inc. d/b/a Macally U.S.A. (Docket No. 562); Mace Group, Inc. (Docket No. 562); Micro Electronics, Inc. d/b/a Micro Center (Docket No. 671); New Compusa Corporation (Docket No. 620); Newegg, Inc. (Docket No. 720); Newegg.com, Inc. (Docket No. 720); Office Depot, Inc. (Docket No. 672); Overstock.com, Inc. (Docket No. 535); Phoebe Micro Inc. (Docket No. 412); Prolynkz, LLC (Docket No. 367); Radioshack Corporation (Docket No. 493); Rosewill Inc. (Docket No. 720); Sears Brands, LLC (Docket No. 445); Sears Holdings Corporation d/b/a Sears (Docket No. 445); Sakar International, Inc. (Docket No. 745); Sakar, Inc. (Docket No. 349); SDI Technologies, Inc. (Docket No. 127); Intcomex, Inc. (Docket No. 342); Software Brokers of America Inc. d/b/a Intcomex Corporation d/b/a Intcomex (Docket No. 343); Systemax, Inc. d/b/a Compusa (Docket No. 620); Target Corp. (Docket No. 615); Tigerdirect, Inc. (Docket No. 620); Trippe Manufacturing Company d/b/a Tripp Lite (Docket No. 312); Wal-Mart Stores, Inc. (Docket No. 674); Sears, Roebuck and Company (Docket No. 445); Best Buy Co., Inc. (Docket No. 673); Best Buy Stores, LP (Docket No. 673); BestBuy.com, LLC (Docket No. 673); Conns, Inc. d/b/a Conns (Docket No. 411); J&R Electronics, Inc. d/b/a J&R (Docket No. 586); Kohls Corporation d/b/a Kohl's (Docket No. 745); Kohl's Illinois, Inc. (Docket No. 745); Solid Year Co., Ltd. (Docket No. 350); and Walgreen Co. d/b/a Walgreens (Docket No. 184).

    It is therefore **ORDERED**, **ADJUDGED** and **DECREED** that the parties take nothing and that all pending motions are **DENIED AS MOOT**.  All costs are to be borne by the party that incurred them.

    It is further **ORDERED**, **ADJUDGED** and **DECREED** that all claims, counterclaims, and third-party claims in the instant suit be **DISMISSED** in their entirety.

The Clerk of the Court is directed to close this case.

**So ORDERED and SIGNED this 20th day of August, 2013.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**