2013-1665, -1666, -1667

**United States Court of Appeals
for the Federal Circuit**

ADJUSTACAM, LLC,
*Plaintiff-Appellant*,

v.

NEWEGG, INC., NEWEGG.COM, INC. and ROSEWILL, INC.,
*Defendants-Cross-Appellants*,

and

SAKAR INTERNATIONAL, INC.,
*Defendant-Cross-Appellant*,

*Appeals from the United States District Court for the Eastern District of Texas in case no. 10-CV-00329, Chief Judge Leonard Davis*

**CORRECTED OPENING BRIEF OF PLAINTIFF-APPELLANT**

Date: August 13, 2014

/s/ John J. Edmonds
John J. Edmonds
Stephen F. Schlather
Shea N. Palavan
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057

ATTORNEYS FOR PLAINTIFF-APPELLANT ADJUSTACAM, LLC

### CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, undersigned counsel for Plaintiff-Appellant hereby certifies that:

1.    The full names of every party or amicus represented by me is:

 Adjustacam, LLC

2.    The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

 None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

 Plaintiff-Appellant's ultimate parent is Acacia Research Corporation, a publicly traded company.

4.    The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

 John Edmonds, Stephen Schlather, Michael Collins, Andrew Tower, Eric Robinson, Johnathan Yazdani, and Shea Palavan of COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC.
 Andrew Spangler and James Fussell of SPANGLER LAW PC.
 Louis Charles Van Cleef of L. CHARLES VAN CLEEF, ATTORNEY LAW.

Dated: August 13, 2014     */s/ John J. Edmonds*
            John J. Edmonds

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................................... i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES .............................................................................. iv

   Cases ............................................................................................................ iv

   Statutes .......................................................................................................... v

STATEMENT OF RELATED CASES .................................................................. vi

I.    STATEMENT OF JURISDICTION ...................................................................1

II.   STATEMENT OF THE ISSUES .......................................................................1

III.   STATEMENT OF THE CASE ...........................................................................2

IV.   STATEMENT OF THE FACTS ........................................................................3

V.    SUMMARY OF THE ARGUMENT ..............................................................12

VI.   APPLICABLE LEGAL PRINCIPLES ...........................................................15

VII.    ARGUMENT ..........................................................................................17
   A.   Standard Of Review ......................................................................................17

   B.   The Magistrate Judge (and the District Judge in adopting the Magistrate Judge's opinion) properly held that the "rotatably attached" terms need no construction, but then erroneously added a restriction that "'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation." .................18

VIII.   CONCLUSION AND PRAYER ...............................................................30

VII.    CERTIFICATE OF SERVICE ...................................................................32

VIII.   CERTIFICATE    OF    COMPLIANCE    WITH    TYPE-VOLUME
LIMITATION,    TYPE-FACE    REQUIREMENTS,    AND    TYPE-STYLE
REQUIREMENTS ................................................................................................33

ADDENDUM ..........................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Bell Communications Research. v. Vitalink Communications,*
    55 F.3d 615 (Fed. Cir. 1995)................................................................ 23

*Blackboard, Inc. v. Desire2Learn, Inc.,*
    *574 F.3d 1371 (Fed. Cir. 2009)*.......................................................... 22

*CIAS, Inc. v. Alliance Gaming Corp.,*
    504 F.3d 1356 (Fed. Cir. 2007)............................................................ 25

*Clearstream Wastewater Sys., Inc. v. Hydro–Action, Inc.,*
    206 F.3d 1440 (Fed. Cir. 2000)............................................................ 22

*Edwards Lifesciences LLC v. Cook Inc.,*
    582 F.3d 1322 (Fed.Cir.2009).............................................................. 17

*Electro Med. Sys. v. Cooper Life Scis., Inc.,*
    34 F.3d 1048 (Fed.Cir.1994)................................................................ 16

*Georgia-Pacific Corp. v. United States Gypsum Co.,*
    195 F.3d 1322 (Fed. Cir. 1999)............................................................ 25

*Hill–Rom Servs., Inc. v. Stryker Corp.*, No.2013–1450,
    2014 WL 2898495 (Fed. Cir. June 27, 2014) ................................... 16, 17, 24, 29

*Kara Technology, Inc. v. Stamps.com*, Inc.,
    582 F.3d 1341 (Fed. Cir. 2009)............................................................. 8

*Lahr v. Fulbright & Jaworski,*
    164 F.R.D. 204 (N.D. Tex. 1996) ......................................................... 11

*Liebel–Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004)............................................................. 16, 24

*Lighting Ballast Control LLC v. Philips Electronics North America Corp.,*
    744 F.3d 1272 (Fed. Cir. 2014)............................................................ 17

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)...................... 17

*NeoMagic Corp. v. Trident Microsystems, Inc.,*
    287 F.3d 1062 (Fed. Cir. 2002)........................................................... 8, 27

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314, 1323 (Fed. Cir. 2003)................................................... 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)..................................................... 15, 16, 19, 21, 24

*R.A.C.C. Indus., Inc. v. Stun-Tech, Inc.*,
    178 F.3d 1309 (unpublished opinion) (Fed. Cir. 1998) ........................................................ 23

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003)............................................................................................... 22

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    563 F.3d 1358 (Fed. Cir. 2009)............................................................................................... 23

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed.Cir.2001)................................................................................................. 17

*Teleflex Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)............................................................................................... 15

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)........................................................................................ 17, 29


**Statutes**
35 U.S.C. § 112.................................................................................................................................. 8

Fed. R. App. P. 4................................................................................................................................ 1

CASE PARTICIPANTS ONLY Document: 26 Filed: 08/13/2014 Page: 7

## STATEMENT OF RELATED CASES

There have been no other appeals before this or any other appellate court stemming from the civil action giving rise to this appeal.

# I.    STATEMENT OF JURISDICTION

Plaintiff-Appellant, Adjustacam LLC ("Adjustacam"), brings this Appeal from the United States District Court for the Eastern District of Texas (the "District Court") to the United States Court of Appeals for the Federal Circuit in accordance with 28 U.S.C. § 1295(a)(1). *See* Fed. R. App. P. 4(a)(4)(B)(i).

This is a case arising under the United States Patent Laws and jurisdiction in accordance with and pursuant to 28 U.S.C. §§ 1338(a) and 1400(b). Adjustacam is appealing the order of the Magistrate Judge construing the term "rotatably attached" and the order of the Disrict Court denying Adjustacam's timely objections to the Magistrate Judge's construction. These orders are final orders because final judgment was entered in the case on August 20, 2013 (A001).

This appeal has been timely taken within thirty (30) days of the entry of final judgment pursuant to 28 U.S.C. § 2107. Final judgment was entered on August 20, 2013 (A001), and Adjustacam's notice of appeal was filed on September 17, 2013. (A177).

# II.    STATEMENT OF THE ISSUES

1.  Whether the Magistrate Judge (and District Court which adopted, and denied timely objection to, the Magistrate Judge's ruling) improperly contrued the "rotatably attached" claim terms by imposing a "single axis of rotation" limitation.

### III.   STATEMENT OF THE CASE

Adjustacam filed suit against Defendants-Cross-Appellants for infringing U.S. Patent No. 5,855,343 (the "'343 patent"). A3670.  The District Court assigned the case to the Honorable  U.S. Magistrate Judge Love for pretrial proceedings including claim construction.  After claim construction was fully briefed (A2718, A2740 & A2806), the Magistrate Judge held a claim construction hearing. A2610-A2707.  On April 10, 2012, the Magistrate Judge issued a claim construction order, which construed, *inter alia*, the "rotatably attached" terms at issue in this appeal. A0013-A0027 at A0020-A0023 & A0027.  On April 24, 2012, pursuant to Federal Rule of Civil Procedure 59, Adjustacam timely objected to the Magistrate Judge's claim construction order. A2436. Once the matter was fully briefed (A2436, A2348 & A2171), on June 7, 2012, the District Court overruled Adjustacam's objections and adopted the Magistrate Judge's opinions. A0012. Following entry of final judgment, A0001,  Adjustacam timely appealed to this Court. A0193.

## IV.  STATEMENT OF THE FACTS

### A.  The '343 Patent.

Adjustacam is the exclusive licensee with all substantial rights in and to U.S. Patent No. 5,855,343 (the "'343 patent") entitled "Camera Clip." In present times, apparatuses which comprise camera clips are often referred to as "webcams," because cameras clipped or otherwise mounted atop a computer screen may be used for communicating pictures or video over the World Wide Web.

The '343 patent generally relates to a novel adjustable camera clip comprising one disposition on a generally horizontal, planar surface (*e.g.*, a table top), and another disposition on an inclined object (*e.g.*, the elevated screen of a laptop computer). Exemplary Fig. 2 below shows a preferred embodiment webcam in a first disposition on a table top, and exemplary Fig. 4 below shows the same webcam in a second disposition when attached to the laptop screen, as follows:



The independent claims of the '343 patent are claims 1, 10, 19, 20 and 21.[1]

Exemplary claim 1 covers an apparatus comprising a hinge member rotatably attached to a camera, a support frame rotatably attached to the hinge member, the support frame having a first disposition on a surface and a second disposition on an inclined object. A0169-A0170. To help the Court better envision claim 1, the following color-coded chart compares claim 1 to certain preferred embodiments disclosed in the '343 patent:

---

[1] The '343 patent went through reexamination proceedings in the U.S. Patent & Trademark Office, and on December 26, 2012 (*i.e.*, after claim construction in this case), claims 1, 10, and 19 were ultimately canceled in favor of certain new and amended claims, many of which carry forward the "rotatably attached" terms. A0173-A0175.  For example, claim 22, which was added during reexamination, is identical to now canceled claim 1 except that the hinge member is adapted to be "permanently and rotatably attached" to the support frame (claim 22) instead of merely being adapted to be "rotatably attached" to the support frame (claim 1). However, claims 1, 10, and 19 were still in effect at the time of all relevant claim construction proceedings and decisions in this case, and claims 1, 10, and 19 were, and still are, pertinent to the claim construction issues involving "rotatably attached."  It should also be noted that Defendants-Cross-Appellants have cross-appealed alleging, in part, that the District Court erred in denying their exceptional case motion brought under 35 U.S.C. § 281, based in part upon their allegation (which Adjustacam disputes) that Adjustacam should have dismissed its infringement claims after the District Court construed the "rotatably attached" terms to require a "single axis of rotation."

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably and permanently attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object,

said hinge member rotating about a second axis of rotation relative to said support frame,

said first axis of rotation being generally perpendicular to said second axis of rotation,

said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object,

said support frame having a first disposition positioned on said generally horizontal, substantially planar surface,

and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation,

the camera being maintained adjacent said edge in said second disposition of said support frame.



Independent claim 10 is similar to claim 1, except it comprises additional claim limitations related to the support frame being comprised of "a rear support element and a first and a second front support element."

Independent claim 20 is also similar to claim 1, except it comprises additional claim limitations related to "wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar

surface."

Independent claim 21 is similar to claim 1, except that it comprises additional claim limitations related to "wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object."

Independent claim 19 covers a "camera clip for supporting a camera on a laptop computer ... comprising ... a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and a support frame hingedly attached to said hinge."

Thus, claims 1, 10, 20, and 21 each comprise a "support frame rotatably attached to said hinge member ..." and claim 19 comprises a "support frame hingedly attached to said hinge member."

The Magistrate Judge construed "hinge member" as "a structural element that joins to another for construction." A0017-0019 & A0027. The District Court adopted this construction. A0012. The '343 patent teaches and claims that a "hinge member" comprises a structural element  comprising rotation about a first axis relative to a camera and rotation about a second axis relative to a support frame. Regarding the first axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge

member 16." 4:17-19.[2] *See also* 2:12-14; 3:36-40, & 5:38-41. Further, independent claim 1 comprises: "said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member," and independent claims 10, 19, 20, and 21 each comprise: "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member."

Regarding the second axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18." 4:22-24. *See also* 2:14-18; 3:40-43, & 5:41-44. Claim 1 comprises: "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object." A0169-A0170. Claims 10, 20, and 21 comprise: "said hinge member rotating about a second axis of rotation relative to said support frame." A0170-A0171. Claim 19 comprises: "said hinge member rotating over a second axis of rotation relative to said support frame." A0171.

A "rotatable attachment" is broader than a hinge joint. A few well known examples of rotatable attachments are pivot joints, ball and socket joints and saddle joints. A2813.

The preferred embodiment rotatable attachment between the hinge member

---

[2] Note that "4:17-19" is shorthand for column 4, lns. 17-19 of the '343 patent.

and the camera depicted in Figs. 2, 3, and 4 is a pivot joint, not a hinge joint. "It is elementary that a claim construction that excludes a preferred embodiment is rarely, if ever correct." *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002).

As noted above independent claims 1 and 10 comprise a hinge member which "rotatably" attaches to a support frame, while claim 19 comprises a hinge member which "hingedly" attaches to a support frame. Common sense and the doctrine of claim differentiation, *see, e.g., Kara Technology, Inc. v. Stamps.com, Inc.*, 582 F.3d 1341 (Fed. Cir. 2009), dictate that "rotatably" attached is different from, and broader than, "hingedly" attached.

### B.    The Prosecution History of the '343 patent.

The prosecution history of the '343 patent was uneventful with respect to the "rotatably attached" terms at issue in this appeal, but it is mentioned herein in the interest of completeness. The first Office Action asserted only Section 112 rejections because it was "not clear whether applicant intend to claim a subcombination or combination." A2899.  The Patent Examiner stated that "Claims 1 – 26 would be allowable if rewritten or amended to overcome the rejection(s) under 35 U.S.C. § 112." A2900.  Thereafter the Applicant amended the claims to overcome the § 112 rejections, A2907-A2929, and the claims were allowed. A2931-A2934.

## C.   The Claim Construction hearing.

At the claim construction hearing, the primary thrust of Appellees' argument regarding the "rotatably attached" terms was that the claims should be limited to a hinge attached to the camera and support frame via hinge joints, and that hinges are restricted to a single axis of rotation.   A2674, lns. 12-16. ("the Court will see the door and the hinge on the left and then on the right the camera rotating about the second axis of rotation swinging as a hinge. A hinge is a hinge, Your Honor"). However, the Magistrate Judge appreciated that a "hinge member" could have a pivotable attachment rather than a hinged attachment (*see, e.g.,* A2677, ln. 24 – A26778, ln. 3) and that the rotatable attachment in claims 1, 10, 20, and 21 was broader than the hinged attachment in claim 19. *See, e.g.,* A2779, lns. 3-6.[3]

In its claim construction briefing, Adjustacam advocated the following construction for the "rotatably attached" terms: "connected such that the connected object is capable of being rotated." A2983-2984.   In contrast, Appellees advocated the following construction: "Connected such that the connected object is capable of being adjusted to different configurations via motion over one axis of rotation". A2761.

---

[3] As noted below, the Magistrate Judge's *Markman* Order correctly acknowledged that "[a] plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments." A0018.

### D.    The Erroneous Claim Construction Ruling.

The Honorable Magistrate Judge Love issued the Memorandum Opinion and Order Regarding Claim Construction (the "*Markman* Opinion") on April 10, 2012. A0013-A0027.  The great majority of the *Markman* Opinion correctly addressed the disputed claim terms.  Adjustacam objected to, and is now appealing, the Magistrate's findings and statements solely with respect to the term "rotatably attached" and the like terms, "adapted to be rotatably attached" and "adapted to rotatably attach," which the *Markman* Opinion and this Brief refer to collectively as the "rotatably attached terms."  Adjustacam objected to the District Court, and now it appeals to this Court, because, with all due respect, the Magistrate Judge (and hence, the District Court in affirming the Magistrate Judge) erred in holding that "'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation." *Id*.

In this regard, the Magistrate Judge held in relevant part as follows:

> The Court finds that the claims of the '343 patent describe "rotatably attached" objects as rotating over a single axis … The Court finds that the "rotatably attached" terms do not require construction beyond what is contained in the claims. While the Court has not explicitly construed the "rotatably attached" terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, i.e., "rotatably attached" objects in the patent-in-suit are limited to a single axis of rotation … No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims."

A0020-A0023 & A0027.  Although the Magistrate Judge did not explicitly construe

the "rotatably attached" terms, the *Markman* Opinion erroneously states that "rotatably attached objects" are "limited to a single-axis of rotation," and that "the parties may not contradict the Court's resolution of that dispute." *Id.*

As noted above, Adjustacam timely objected to the Magistrate Judge's claim construction order and appealed it to the District Court. A2436. In objecting to the Magistrate Judge's ruling regarding the "rotatably attached terms," Adjustacam requested that the District Court adopt Adjustacam's construction, or alternatively, that the District Court adopt the Magistrate Judge's ruling that the "rotatably attached" terms do not require construction while overruling and not adopting the Magistrate Judge's unwarranted limitation that rotatably attached objects are "limited to one axis of rotation." A2442. Adjustacam requests the same relief from this Court.

The District Court reviewed the Magistrate Judge's legal conclusions *de novo*. *See Lahr v. Fulbright & Jaworski*, 164 F.R.D. 204, 209 (N.D. Tex. 1996). Once the matter was fully briefed (A2436, A2348, & A2171), on June 7, 2012, the District Court erroneously overruled Adjustacam's objections and adopted the Magistrate Judge's opinion (A0012).

For the reasons stated herein, this Court should properly construe the "rotatably attached" terms, thus reversing the District Judge's erroneous overruling of Adjustacam's objections and adoption of the Magistrate Judge's erroneous

construction (and thus reversing the Magistrate Judge's erroneous construction itself) of the "rotatably attached" terms.

## V.    SUMMARY OF THE ARGUMENT

The Magistrate Judge (and the District Judge in affirming the Magistrate Judge) improperly construed the "rotatably attached" terms.  This Court should properly construe the term "rotatably attached" as not including a limitation to a single axis of rotation, thus reversing the District Judge's erroneous affirmance of the Magistrate Judge's erroneous construction.

With all due respect, the Magistrate Judge's restriction that "rotatably attached" objects are "limited to one axis of rotation" is erroneous.  Nothing in

Nothing in the '343 patent claims, specification or prosecution history requires that rotation is "limited to one axis of rotation" at all times and in all configurations.  Although a preferred embodiment comprises " first axis 26" which is perpendicular to "second axis 32,"A168, 4:17-26, none of the claims, specification or prosecution history mandate that the hinge member is restricted from being capable of rotating, or from rotating, over *any* axis besides these perpendicular first and second axis relative to the support frame.

The *Markman* Opinion "finds that the claims of the '343 patent describe 'rotatably attached' objects as rotating over a single axis." A0020.  To the contrary, the applicable claims *require* a hinge member "adapted to be rotatably attached …

about a first axis of rotation," and a support frame "rotatably attached" to a hinge

member and "rotating about a second axis of rotation" relative to the support frame.

This does not mean that "rotatably attached" objects that can be configured to rotate

over more than a single axis cannot meet the claim limitations, provided that they

rotate over the required first and second axes in an infringing configuration.

    With all due respect, the Magistrate Judge erred in rejecting Adjustacam's

"comprising" argument. *See* A0022.    That the claims *comprise* all types of

"rotatable" attachments (including those which permit rotation in more than a single

axis) does not mean that "rotatably attached" is completely open ended; rather, it

means that it is not limited at all times and in all configurations to the specific

rotatable attachments (*e.g.*, a hinge and a pivot joint) or specific axes in the preferred

embodiments.  Second, the rotatable attachments *comprise* rotation over a first axis

(as claimed), rotation over a second axis (as claimed), *and* rotation over a third axis,

and so on.  This also does not mean that "rotatably attached" is completely open

ended; rather, it means that the claimed invention can involve rotatable attachment

over multiple axes in certain configurations, provided that it meets the first axis and

second axis limitations of the claims. For example, a claim directed to a vehicle

comprising an axel for driving forward and reverse would be infringed by a car

which drives forward, in reverse, and turns to the side.

    The Magistrate Judge correctly found that the "rotatably attached terms," *i.e.*,

"rotatably attached," "adapted to be rotatably attached," and "adapted to rotatably attach" have a plain meaning that is apparent in the context of the claims. However, that plain meaning does not include a restriction to a single axis of rotation at all times and in all configurations of the apparatus, and the Magistrate Judge erred in importing this unwarranted restriction on the plain meaning of such terms. Courts should depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal. The standards for finding lexicography and disavowal are exacting, the Magistrate Judge did not find there to be any lexicography or disavowal relative to a single axis of rotation, and there is no such disclaimer or lexicography to be found. There are no words of manifest exclusion or restriction in the patent or prosecution history. The patentee did not describe the invention as "limited" to a "single axis of rotation." Nor is there language of limitation or restriction in this manner.

As for the language in the patent specification and claims, it is readily apparent that the terms "first axis of rotation" and "second axis of rotation" merely distinguish the axis of rotation involving the camera and the hinge member from the axis of rotation involving the hinge member and the frame.

Accordingly, the court below erred in construing the "rotatably attached" terms as being "limited to one axis of rotation." This Court should reverse the Magistrate Judge's (and District Judge's) erroneous construction, and construe the

"rotatably attached" terms as not being "limited" to a single axis of rotation.

## VI.    Applicable Legal Principles

Courts "indulge a heavy presumption that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003). Claim terms are interpreted from the point of view of a person of ordinary skill in the art who "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). However, "the ordinary meaning of claim language as understood by a person of ordinary skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

"Intrinsic evidence includes the claims, written description, drawings, and the prosecution history." *Teleflex Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1324 (Fed. Cir. 2002). A disputed term should be construed by first examining the intrinsic evidence of record from the perspective of one skilled in the relevant art. *Phillips*, 415 F.3d at 1313-14. "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314.

Although the specification is relevant to interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims. *Hill–Rom Servs., Inc. v. Stryker Corp.*, No.2013–1450, 2014 WL 2898495, at *2 (Fed. Cir. June 27, 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims."); *Electro Med. Sys. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed.Cir.1994) ("[C]laims are not to be interpreted by adding limitations appearing only in the specification."). As this Court has held, "[o]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillip*s, 415 F.3d at 1319-20.

This court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to only that embodiment." *Hill-Rom Services,* 2014 WL 2898495*; Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004) (listing cases rejecting attempts to import limitations from the specification into the claims). Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction." *Hill-Rom Services,* 2014 WL 2898495*; Liebel–Flarsheim*, 358 F.3d at 906.

Courts should depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal. *Hill-Rom Services*, 2014 WL 2898495; *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The standards for finding lexicography and disavowal are exacting. "To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must clearly express an intent to redefine the term. *Hill-Rom Services*, 2014 WL 2898495. "Disavowal requires that the specification or prosecution history make clear that the invention does not include a particular feature," *Hill-Rom Services*, 2014 WL 2898495; *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed.Cir.2001), "or is clearly limited to a particular form of the invention." *Hill-Rom Services*, 2014 WL 2898495; *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed.Cir.2009).

## VII.  ARGUMENT

### A. Standard Of Review

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). This Court reviews the claim construction decisions of District Court's *de novo* and without deference. *Lighting Ballast Control LLC v. Philips Electronics North America Corp.*, 744 F.3d 1272, 1285 (Fed. Cir. 2014).

**B. The Magistrate Judge (and the District Judge in adopting the Magistrate Judge's opinion) properly held that the "rotatably attached" terms need no construction, but then erroneously added a restriction that "'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation."**

The Magistrate Judge (and the District Judge in affirming the Magistrate Judge) improperly construed the "rotatably attached" terms. This Court should properly construe the term "rotatably attached" as not including a limitation to a single axis of rotation, thus reversing the District Judge's erroneous affirmance of the Magistrate Judge's erroneous construction.

To understand "rotatably attached" in the context of the patent and claims, one must also understand a "hinge member" and a "support frame." The Magistrate Judge correctly construed hinge member as "a structural element that joins to another for construction." A0017-A0019 & A0027. The Magistrate Judge also correctly construed "support frame" as having a plain meaning and requiring "no construction," subject to the Court's resolution of certain disputes over "support frame." A0023-A0024 & A0027.

A hinge member, *i.e.*, a structural element that joins another for construction, is (1) for rotatable attachment to a camera (claims 1, 10, 19, 20, & 21); and (2) for rotatable attachment (claims 1, 10, 20, & 21) or hinged attachment (claim 19) to a support frame. Regarding rotatable attachment to a camera, the '343 patent teaches that in a preferred embodiment, "[h]inge member 16 is rotatably attached to camera

12." 4:17-19.[4] Further, each independent claim comprises: "a hinge member adapted to be rotatably attached to the camera."[5] Regarding rotatable attachment to a support frame, the '343 patent teaches and claims, "a support frame *rotatably attached* to said hinge member and configured to support said hinge member on the surface and the object." A0164, claims 1, 10, 20, & 21; *see also* Figs. 2-4.

Regarding the first axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16." *Id.* at 4:17-19. *See also* 2:12-14; 3:36-40 & 5:38-41. Further, independent claim 1 comprises, "said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member," and independent claims 10, 19, 20, and 21 each comprise: "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member." *Id.*

Regarding the second axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18." *Id.* at 4:22-24. *See also*

---

[4] *See also* rotatable attachment of the hinge member and camera in Figs. 2-4; 3:9-14 & 5:37-41.

[5] "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.

2:14-18; 3:40-43 & 5:41-44. Further, claim 1 comprises: "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object." *Id*. Claims 10, 20 and 21 comprise: "said hinge member rotating about a second axis of rotation relative to said support frame." *Id*. Claim 19 comprises: "said hinge member rotating over a second axis of rotation relative to said support frame." *Id*.

With all due respect, the Magistrate Judge's restriction that "rotatably attached" objects are "limited to one axis of rotation" is erroneous and the reasoning behind that restriction is flawed. The Magistrate Judge found that the "rotatably attached" terms do not require construction beyond what is contained in the claims. A0020-A0023 & A0027. However, the claims have "first axis of rotation" and "second axis of rotation" limitations. The claims do not state or require that an infringing apparatus must be "limited to a single axis of rotation" at all times and in all configurations. This Court should reverse the Magistrate Judge's (and District Judge's) erroneous construction, and construe the "rotatably attached" terms as not being "limited" to a single axis of rotation.

Nothing in the '343 patent or its prosecution history states that rotation is "limited to one axis of rotation" at all times and in all configurations. Although a preferred embodiment comprises "where camera 12 rotates over a first axis 26" relative to the hinge member, and "hinge member 16 rotates around a second axis

32" relative to the support frame, wherein "first axis 26 is perpendicular to second axis 32" and "second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30," A168, 4:17-26, neither the claims nor the specification state that the hinge member is restricted from being capable of rotating, or from rotating, over *any* axis besides these perpendicular first and second axis relative to the support frame.

As the Magistrate Judge acknowledged, "[t]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. Claims 1 and 10 of the '343 patent, at element (a), each comprise "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member." *See* A0164. If "rotatably attached" was "limited to one axis of rotation" as the Magistrate Judge has erroneously ruled, then it would be redundant to have a "first axis of rotation" limitation also present in element (a) of claims 1 and 10.[6] The same issue exists with Claims 19 and 20, wherein element (a) of each is worded: "a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member." *Id.*

---

[6] Claim 21 has almost the exact same language, except its element (a) is written in terms of "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member."

Likewise, claims 1, 10, and 21 of the '343 patent, at element (b), each comprise: "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame." *Id*. If "rotatably attached" was "limited to one axis of rotation" as the Magistrate Judge erroneously ruled, then it would be redundant to have a "second axis of rotation" limitation also present in element (a) of claims 1, 10 and 21. The same issue exists with Claim 20, wherein element (b) is worded: "a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation." *Id*.

As the foregoing illustrates, it was improper to import the "limited to a single axis of rotation" restriction into the rotatably attached terms, including because it would make the "first axis of rotation" in element (a) redundant or superfluous, and it would make the "second axis of rotation" in element (b) redundant or superfluous.[7]

---

[7] *See, e.g., Blackboard, Inc. v. Desire2Learn, Inc., 574 F.3d 1371, 1376 (Fed. Cir. 2009); Rambus Inc. v. Infineon Techs. AG,* 318 F.3d 1081, 1096 (Fed. Cir. 2003) (claim limitation for a multiplexed bus, a limitation that would be redundant if "bus" already meant "multiplexed bus"). *See also Clearstream Wastewater Sys., Inc. v. Hydro–Action, Inc.,* 206 F.3d 1440, 1446–47 (Fed. Cir. 2000) (explaining the doctrine which "prevents the narrowing of broad claims by reading into them the limitations of narrower claims").

The *Markman* Opinion "finds that the claims of the '343 patent describe 'rotatably attached' objects as rotating over a single axis." A0020.  To the contrary, the applicable claims[8] *require* a hinge member "adapted to be rotatably attached … about a first axis of rotation," and a support frame "rotatably attached" to a hinge member and "rotating about a second axis of rotation" relative to the support frame. This does not mean that "rotatably attached" objects that can be configured to rotate over more than a single axis cannot meet the claim limitations, provided that they rotate over the required first and second axes in an infringing configuration.[9]

The *Markman* Opinion also states that the specification is "consistent with the claims in disclosing the camera and support frame rotating over a first and second axis of rotation." A0021.  However, here the *Markman* Opinion is referring to what are, and what the specification specifically identifies as, "embodiments." Yet, the

---

[8] Claim 19 involves hinged attachment at element (b), so it is inapplicable to this issue.

[9] A camera clip would need to be "adapted to" rotate about a first axis perpendicular to a second axis in order to meet the relevant claim limitations; yet, this Court has held that, the presence of functional limitations in the claim language in no way requires the performance of such functions for infringement to occur. *See R.A.C.C. Indus., Inc. v. Stun-Tech, Inc.*, 178 F.3d 1309 (unpublished opinion) (Fed. Cir. 1998) ("This court has never determined that functional language in a claim converts an apparatus claim into a method of use or hybrid claim."). *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369-70 (Fed. Cir. 2009) (finding that infringement merely required the capability of performing the function of the claim limitation); *Bell Communications Research. v. Vitalink Communications*, 55 F.3d 615, 622-23 (Fed. Cir. 1995) (a device that "sometimes, but not always, embodies a claim [] nonetheless infringes.").

"cardinal sin" of claim construction is limiting the claims to a preferred embodiment. *Phillips*, 415 F.3d at 1319-20.  Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction. *Hill-Rom Services,* 2014 WL 2898495*; Liebel–Flarsheim*, 358 F.3d at 906.  Yet the trial court did not find, and there would be no basis to find, that the patentee had demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.  No words or expressions of manifest exclusion or restriction relating to the "rotatable attachment" terms (or any other terms) are found in the '343 patent or its prosecution history.

Moreover, as noted above, while the preferred embodiment does involve certain rotation about a first axis of rotation and rotation about a second, parallel axis of rotation, it never states, or even implies, that "rotatable attachment" must be limited to a single axis of rotation at all times in all configurations, or that an apparatus that rotates in more than one axis of rotation cannot fall within the plain meaning of the broad "adapted to be rotatably attached" terms.

Further, while the Magistrate Judge correctly acknowledged that one preferred embodiment comprises a pivot joint for rotatable attachment, A0022, the specification describes that, "a pivot element 80 at proximal end 76 of body 74

rotatably attached camera 12 to body 74 so the camera may rotate about first axis 26. A153, 5:38-41. "May rotate" about a "first axis" does not mean that something is limited and restricted to *only* a single axis.

Further, the claims unequivocally refer to an apparatus "*comprising*" a "first axis of rotation" relative to the hinge member and camera and a "second axis of rotation" relative to the hinge member and support frame. The word "comprising," which in patent lexicography means "including, but not limited to" is "open-ended and does not exclude additional, unrecited elements." *See, e.g., CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999). While all that is required to infringe the claims is rotation in one particular axis per rotatable attachment, the claimed invention is not restricted to this embodiment on all configurations at all times. Rather it *comprises* all types of "rotatable" attachments, including those which permit rotation in more than a single axis.

With all due respect, the Magistrate Judge erred in rejecting Adjustacam's "comprising" argument. *See* A0022. That the claims *comprise* all types of "rotatable" attachments (including those which permit rotation in more than a single axis) does not mean that "rotatably attached" is completely open ended; rather, it means that it is not limited at all times and in all configurations to the specific rotatable attachments (*e.g.*, a hinge and a pivot joint) or specific axes in the preferred

embodiments.  Second, the rotatable attachments *comprise* rotation over a first axis (as claimed), rotation over a second axis (as claimed), *and* rotation over a third axis, and so on.  This also does not mean that "rotatably attached" is completely open ended; rather, it means that the claimed invention can involve rotatable attachment over multiple axes in certain configurations, provided that it meets the first axis and second axis limitations of the claims. For example, a claim directed to a vehicle comprising an axel for driving forward and reverse would be infringed by a car which drives forward, in reverse, and turns to the side.

A preferred embodiment disclosed in the '343 patent comprises a pivot joint at pivot element 80 of hinge member 16. This is exemplified by the embodiment at Fig. 4, as follows:



A0164.

Because the hinge member rotates relative to the support frame and because the support frame is configurable and adjustable, the preferred embodiment camera

is capable of being rotated on a variety of axes, for example:



and

If limited to rotation in a single axis of rotation, this preferred embodiment would,

at least according to the logic employed Appellees/Cross-Appellants in this case, be

excluded.  However, "[i]t is elementary that a claim construction that excludes the

preferred embodiment is rarely, if ever correct." *NeoMagic*, 287 F.3d at 1074.

Including in the absence of any indication to the contrary in the '343 patent or its

prosecution history, "rotatably attached" should be construed in accordance with its

plain meaning, including in context of the patent, such that the claims would

indisputably encompass the preferred embodiment webcam clip depicted in the figures and described in the specification. Otherwise, one of the main purposes of the highly configurable camera clip of the invention – which can pan side to side and tilt up and down in order to orient the camera in a desired orientation – would be defeated.

The foregoing is consistent with the claim language wherein there is a second disposition or configuration when "said first surface and said second surface" or "display screen" are "inclined from a generally horizontal orientation." *See, e.g.,* A0164, claims 1, 19, and 21. There is no requirement anywhere in the '343 patent, including in the claims, that the "first surface and second surface" or "display screen" be inclined to any particular angle. In fact, it is readily apparent that display screens can be inclined to a variety of tilts depending on user preference.

The Magistrate Judge correctly found that the "rotatably attached terms," *i.e.*, "rotatably attached," "adapted to be rotatably attached," and "adapted to rotatably attach" have a plain meaning that is apparent in the context of the claims. However, that plain meaning does not include a restriction to a single axis of rotation at all times and in all configurations of the apparatus, and the Magistrate Judge erred in importing this unwarranted restriction on the plain meaning of such terms. As noted above, courts should depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal. *Hill-*

*Rom Services,* 2014 WL 2898495*; Thorner*, 669 F.3d at 1365. The standards for finding lexicography and disavowal are exacting, the Magistrate Judge did not find there to be any lexicography or disavowal relative to a single axis of rotation, and there is no such disclaimer or lexicography to be found. There are no words of manifest exclusion or restriction in the patent or prosecution history. The patentee did not describe the invention as "limited" to a "single axis of rotation." Nor is there language of limitation or restriction in this manner. To the contrary, the Patentee wrote that, "[h]aving thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached." A0169, 6:44-47.

As for the language in the patent specification and claims, it is readily apparent that the terms "first axis of rotation" and "second axis of rotation" merely distinguish the axis of rotation involving the camera and the hinge member from the axis of rotation involving the hinge member and the frame. This is just good patent drafting for purposes of clarity and to avoid any ambiguities involving antecedent basis.

Finally, as noted above, original claims 1 and 19 of the '343 patent are different primarily because claim 1 involved rotatable attachment while claim 19 involved hinged attachment. Regarding hinged attachment to a support frame, the

'343 patent discloses that in a preferred embodiment, "[s]upport frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30." A0164 4:21-20. *See also* 2:14-16; 3:40-41; 5:41-43.  "Rotatably" attached is different from, and broader than, "hingedly" attached.  This was acknowledged by the Magistrate Judge, who wrote that "A plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments." A0018.

Accordingly, the court below erred in construing the "rotatably attached" terms as being "limited to one axis of rotation."

## VIII.    CONCLUSION AND PRAYER

For the reasons stated herein, Plaintiff-Appellant Adjustacam LLC respectfully submits that the Magistrate Judge's construction of the "rotatably attached" terms (as adopted by the District Court) should be reversed, and that Adjustacam's proposed construction[10] of the "rotatably attached" terms should be adopted and an order rendered, or alternatively, this Court should affirm the Magistrate Judge's ruling that the "rotatably attached" terms have a plain meaning and do not require construction; while reversing the Magistrate Judge's unwarranted limitation that "rotatably attached" objects are "limited to one axis of rotation."

---

[10] *i.e.* "connected such that the connected object is capable of being rotated."

Adjustacam also requests such other relief to which it may be justly entitled such that the correct construction of the "rotatably attached" terms, *i.e.*, without being limited to a single axis of rotation, is effected, including a judgment and order correctly construing the terms or, alternatively, a remand to the District Court to effect the same.

Dated: August 13, 2014                    Respectfully submitted,

                                          /s/ *John J. Edmonds*
                                          John J. Edmonds
                                          Stephen F. Schlather
                                          Shea N. Palavan
                                          COLLINS, EDMONDS, POGORZELSKI,
                                          SCHLATHER & TOWER, PLLC
                                          1616 South Voss Road, Suite 125
                                          Houston, Texas 77057
                                          Telephone:  (281) 501-3425
                                          Fax:  (832) 415-2535
                                          jedmonds@cepiplaw.com
                                          sschlather@cepiplaw.com
                                          spalavan@cepiplaw.com

                                          ATTORNEYS FOR PLAINTIFF-
                                          APPELLANT ADJUSTACAM, LLC

## VII.   CERTIFICATE OF SERVICE

I, John J. Edmonds, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On August 13, 2014 a copy of the foregoing Corrected Opening Brief of Plaintiff-Appellant was filed electronically with the Clerk of the Court using the CM/ECF System, which will serve via electronic mail notice of such filing to all counsel registered as CM/ECF users. Paper copies will also be sent to all opposing counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the electronically filed document, six paper copies will be filed with the Court via courier within the time provided by the Court's rules.

Dated: August 13, 2014                    /s/ *John J. Edmonds*
                                          John J. Edmonds

                                          COLLINS, EDMONDS, POGORZELSKI,
                                          SCHLATHER & TOWER, PLLC

## VIII.   CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A), because it contains <u>7,720</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Dated: August 13, 2014                */s/ John J. Edmonds*
                                      John J. Edmonds

                                      COLLINS, EDMONDS, POGORZELSKI,
                                      SCHLATHER & TOWER, PLLC

## ADDENDUM

1. MEMORANDUM OPINION AND ORDER DATED APRIL 10, 2012 BY MAGISTRATE JUDGE JOHN LOVE IN *ADJUSTACAM, LLC V. AMAZON.COM, INC., ET AL.* (NO. 6:10-CV-00329-ODW-LED) (ECF NO. 627) ........................................................................... A0013-A0027

2. ORDER OVERRULING PLTF'S OBJECTIONS 629 AND DEFTS' OBJECTIONS 632 , AND ADOPTING 627 MEMORANDUM OPINION AND ORDER OF THE US MAGISTRATE JUDGE AS THE OPINION OF THIS COURT (NO. 6:10-CV-00329-ODW-LED) (ECF NO. 650)......A0012

3. FINAL JUDGMENT (NO. 6:10-CV-00329-ODW-LED) (ECF NO. 762) ............................................................................................A0001

Case 1:05-cv-00328-SLR    Document 612-1    Page: 15    Filed: 08/18/2014

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own

2

lexicographer.  *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325.  For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).  But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent.  *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent").  The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).  The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance.  *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).  "Indeed, by distinguishing the claimed invention over the prior art, an applicant is

[redacted]

the two different configurations of the camera clip, *i.e.*, on a flat surface (Fig. 2) and on an inclined object (Fig. 4):



B.    **Disputed Terms**

"Hinge Member" [cls. 1, 8, 10, 17, 19, 20, and 21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that joins to another for rotation | A structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

The parties generally agree that the "hinge member" is "a structural element that joins to another."  The parties, however, disagree whether the hinge member must form a "hinge joint" or can include any form of "joint."

5

Plaintiff's proposed construction evolved over the course of the briefing. Plaintiff ultimately argues that the "hinge member" is not limited to hinge *joints*. Specifically, Plaintiff contends that the claims and specification describe the "hinge member" as both "rotatably attached" and "hingedly attached." Therefore, an object that is "rotatably attached" is necessarily broader than a "hingedly attached" object. PL.'S BR. at 4–8; PL.'S REPLY at 3–4. Plaintiff raises secondary arguments regarding the "rotatably attached" terms and their interplay with the hinge member (*Id*. at 7–8), however, those arguments are discussed in more detail in the section below construing the "rotatably attached" terms.

The claims and the specification of the '343 patent disclose the hinge member as both "rotatably" and "hingedly" attached to another object. For example, claim 1 of the '343 patent describes the support frame as "rotatably attached" to the hinge member. '343 patent at 58–60. On the other hand, claim 19 of the '343 patent describes the support frame as "hingedly attached" to the hinge member. '343 patent at 9:24–26. A plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments.

The specification, moreover, describes embodiments of the hinge member incorporating the concept of pivots and pivoting. *See, e.g.*, 4:44–48 ("It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34."); 5:37–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26."). Therefore, Defendants' proposed

A0018

construction limiting the hinge member to hinge *joints* would improperly read out the foregoing preferred embodiments. *See Globetrotter Software, Inc.*, 362 F.3d at 1381.

Defendants' proposed construction would also render the "rotatably attached" terms superfluous by limiting all claimed attachments to "hinged" attachments. Such a result is untenable. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of claim construction that would render additional, or different, language in another independent claim superfluous.") (quoting *Fantasy Sports Props. v. Sportsline.com*, 287 F.3d 1108, 1115-16(Fed. Cir. 2002)). Defendants' proposed construction is also unnecessarily permissive because it describes the hinge member as a structural element that *may* be joined to another. Neither the specification nor claims teach a permissive attachment and such a construction would not meaningfully limit the claims.

As Defendants advocate, the claimed "hinge member" indeed may include a hinge joint. However, the claims and the specification disclose that the hinge member is not limited to hinge joints. Had the patentee intended to limit the patent in such a way, he or she: (1) could have simply used the term hinge *joint*, and not the broader term *member*; or (2) would have used "hingedly" to describe all the attachments in the claims. Therefore, the Court construes "hinge member" as "a structural element that joins to another for rotation."

[redacted]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| [redacted] | [redacted] |

The specification is consistent with the claims in disclosing the camera and support frame rotating over a first and second axis of rotation.  *See, e.g.*, 2:12–18 ("The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation"); 4:17–19 ("Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26.").  Every reference to a "rotatably attached" object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.

Plaintiff contends that that claims refer to the apparatus as "comprising" a first and second axis of rotation; therefore, Plaintiff argues that the use of "comprising" broadens the claims to allow attachments which rotate over multiple axes.  PL.'S BR. at 7.  Plaintiff is mistaken. For example, claim 1 recites:

> **1**. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on
> 50 an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:
> a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so
> 55 attached, rotating, about a first axis of rotation, relative to said hinge member; and
> b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the
> 60 surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first
> 65 surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

A0021

'343 patent at 6:49–7:6. "Comprising" appears before the individual elements of the claimed camera clip, *i.e.*, the hinge member and support frame. Therefore, the word "comprising" may suggest that other elements exist beyond the *hinge member* and *support frame*. However, the term "comprising" does not render each and every word in the claim open-ended as Plaintiff suggests. Plaintiff's position would render the claim language meaningless.

Plaintiff further contends that the rotatable attachment between the hinge member and the camera is a "pivot joint"; therefore, limiting the rotation about a single axis would exclude a preferred embodiment. PL.'S BR. at 8. Even assuming the specification does disclose a pivot joint, limiting the *rotation* around a single axis would not read out the embodiment. A pivot joint allows for rotation and the specification explicitly describes the "pivot element" as rotating around a *single* axis of rotation. *See, e.g.*, '343 patent at 5:38–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about *first axis* 26.") (emphasis added).

On the other hand, Defendants' proposed construction merely restates what is already contained in the claims. The claims plainly describe each "rotatably attached" object as rotating about a single axis and any further construction would only serve to confuse the jury. In other words, Defendants' construction merely repeats the claim language. Therefore, the Court finds that the "rotatably attached" terms do not require construction beyond what is contained in the claims. While the Court has not explicitly construed the "rotatably attached" terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, *i.e.*, "rotatably attached" objects in the patent-in-suit are limited to a single axis of rotation. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When

10

[redacted]

| Plaintiff’s Proposed Construction | Defendants’ Proposed Construction |
| --- | --- |
| [redacted] | [redacted] |

be rotated to a second position to support the camera on a display screen of a laptop computer."); 2:24–26 ("[T]he rear support element and the first and second front support elements support the camera in the first position"); 2:39–41 ("[T]he rear support element and the first and second front support elements support the camera in a second position on the first surface"); 4:48–54 (same); 5:2–14 (same). Therefore, the claims and the specification identify the first and second disposition as particular structural arrangements of the support frame.

Plaintiff and Defendants generally agree that the structure of the support frame is provided in the specification and claims. PL.'S BR. at 10; PL.'S REPLY at 1–2. Plaintiff, however, proposes a construction that ignores the different structural arrangements of the support frame, *i.e.* different dispositions. On the other hand, Defendants' construction unnecessarily requires the actual dispositions of the support frame to functionally provide the support frame its ability to "support." The claims are not limited to the extent that "the different dispositions *enable* support" of the hinge member.

Support frame is an easily understood term and its function and structure are defined in the claims. While the support frame must allow for two structural arrangements as described in the claims, the ability to support the hinge member is not directly linked to the two structural arrangements. As such, the Court finds that "support frame" is sufficiently defined in the claims and no construction is necessary. Nevertheless, the Court has resolved the parties' dispute regarding the scope of the claims. *See O2 Micro*, 521. F.3d at 1360.

A0024

[redacted]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |

[redacted]

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above.  For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 10th day of April, 2012.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Claim Term | Court's Construction |
|---|---|
| Hinge member | a structural element that joins to another for construction |
| Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Support Frame | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Disposition | a configuration or arrangement of the support frame |

A0027

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| ADJUSTACAM, LLC. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CASE NO. 6:10-CV-329** |
| | § | **PATENT CASE** |
| | § | |
| AMAZON.COM, INC., ET AL. | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

The above entitled and numbered civil action has been referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Memorandum Opinion and Order (Doc. No. 627) containing the Magistrate Judge's claim construction ruling has been presented for consideration. Plaintiff and Defendants' have filed Objections (Doc. Nos. 629, 632) to the Memorandum Opinion and Order. However, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and are not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Therefore, the Court hereby overrules Plaintiff's and Defendants' objections and adopts the Memorandum Opinion and Order of the United States Magistrate Judge as the Opinion and Order of this Court.

**So ORDERED and SIGNED this 7th day of June, 2012.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

Pursuant to the Orders granting the parties' Joint Motions to Dismiss, the Court hereby enters Final Judgment. Plaintiff Adjustacam LLC filed suit against fifty-nine Defendants in this case on July 2, 2012. Since that time, all Defendants have been dismissed: Amazon.com, Inc. (Docket No. 630); Auditek Corporation (Docket No. 647); Blue Microphones, LLC (Docket No. 492); Baltic Latvian Universal Electronics, LLC d/b/a Blue Microphones, LLC d/b/a Blue Microphone (Docket No. 492); CDW Corporation f/k/a CDW Computer Centers, Inc. (Docket No. 658); CDW, Inc. (Docket No. 658); CDW, LLC (Docket No. 10); Compusa.com, Inc. (Docket No. 620); Cobra Digital, LLC (Docket No. 420); Creative Technology Ltd. (Docket No. 348); Creative Labs, Inc. (Docket No. 560); Dell, Inc. (Docket No. 563); Digital Innovations, LLC (Docket No. 651); Eastman Kodak Company (Docket No. 217); Ezonics Corporation d/ba/ Ezonics Corporation USA d/b/a Ezonics (Docket No. 361); Fry's Electronics Inc. (Docket No. 675); Gear Head, LLC (Docket No. 665); General Electric Company (Docket No. 8); Hewlett-Packard Company (Docket No. 677); Incomex, Inc. (Docket No. 342); Jasco Products Company LLC d/b/a Jasco Products Company d/b/a Jasco (Docket No. 410); Jwin Electronics Corporation (Docket No. 419); Klip Extreme LLC (Docket No. 341); Kmart Corporation (Docket No. 445);

Lifeworks Technology Group, LLC (Docket No. 522); Macally Peripherals, Inc. d/b/a Macally U.S.A. (Docket No. 562); Mace Group, Inc. (Docket No. 562); Micro Electronics, Inc. d/b/a Micro Center (Docket No. 671); New Compusa Corporation (Docket No. 620); Newegg, Inc. (Docket No. 720); Newegg.com, Inc. (Docket No. 720); Office Depot, Inc. (Docket No. 672); Overstock.com, Inc. (Docket No. 535); Phoebe Micro Inc. (Docket No. 412); Prolynkz, LLC (Docket No. 367); Radioshack Corporation (Docket No. 493); Rosewill Inc. (Docket No. 720); Sears Brands, LLC (Docket No. 445); Sears Holdings Corporation d/b/a Sears (Docket No. 445); Sakar International, Inc. (Docket No. 745); Sakar, Inc. (Docket No. 349); SDI Technologies, Inc. (Docket No. 127); Intcomex, Inc. (Docket No. 342); Software Brokers of America Inc. d/b/a Intcomex Corporation d/b/a Intcomex (Docket No. 343); Systemax, Inc. d/b/a Compusa (Docket No. 620); Target Corp. (Docket No. 615); Tigerdirect, Inc. (Docket No. 620); Trippe Manufacturing Company d/b/a Tripp Lite (Docket No. 312); Wal-Mart Stores, Inc. (Docket No. 674); Sears, Roebuck and Company (Docket No. 445); Best Buy Co., Inc. (Docket No. 673); Best Buy Stores, LP (Docket No. 673); BestBuy.com, LLC (Docket No. 673); Conns, Inc. d/b/a Conns (Docket No. 411); J&R Electronics, Inc. d/b/a J&R (Docket No. 586); Kohls Corporation d/b/a Kohl's (Docket No. 745); Kohl's Illinois, Inc. (Docket No. 745); Solid Year Co., Ltd. (Docket No. 350); and Walgreen Co. d/b/a Walgreens (Docket No. 184).

It is therefore **ORDERED**, **ADJUDGED** and **DECREED** that the parties take nothing and that all pending motions are **DENIED AS MOOT**. All costs are to be borne by the party that incurred them.

It is further **ORDERED**, **ADJUDGED** and **DECREED** that all claims, counterclaims, and third-party claims in the instant suit be **DISMISSED** in their entirety.

The Clerk of the Court is directed to close this case.

**So ORDERED and SIGNED this 20th day of August, 2013.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**