2013-1665, -1666, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADJUSTACAM, LLC,

Plaintiff-Appellant,

NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.,

Defendants-Cross-Appellants

and

SAKAR INTERNATIONAL, INC.,

Defendant-Cross-Appellant

Appeals from the United States District Court for the Eastern District of Texas
in Case No. 10-CV-329, Chief Judge Leonard Davis

## NON-CONFIDENTIAL BRIEF OF DEFENDANT-CROSS-APPELLANT SAKAR INTERNATIONAL, INC.

Ezra Sutton
EZRA SUTTON, P.A.
900 Route 9 North
Plaza 9, Suite 201
Woodbridge, NJ 07095
Telephone: (732) 634-3520

*Counsel for Defendant-Cross-Appellant*

October 14, 2014

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Adjustacam v. Newegg, 2013-1665

<u>CERTIFICATE OF INTEREST FOR SAKAR INTERNATIONAL, INC.</u>

Counsel for Sakar International, Inc. hereby certifies the following:

1.      The full name of every party or amicus represented by me is:

      Sakar International, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      No publicly held company owns ten percent or more stock in Sakar International, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      Ezra Sutton, Ezra Sutton, P.A.

Dated:  October 14, 2014          <u>/s/ Ezra Sutton</u>
                            Ezra Sutton
                            *Counsel for Defendant-Cross-Appellant*

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ...................................................................1

JURISDICTIONAL STATEMENT .....................................................................2

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................3

STATEMENT OF FACTS ...................................................................................6

    I.   Introduction.............................................................................................6

    II.  The Parties ..............................................................................................7

    III.   AdjustaCam's Infringement Allegations.......................................7

    IV.   AdjustaCam's Validity Arguments ..............................................12

    V.  AdjustaCam's Nuisance-Value Settlements and Demands...........14

SUMMARY OF THE ARGUMENT ...................................................................15

STANDARD OF REVIEW .................................................................................17

ARGUMENT .......................................................................................................18

I.   The District Court Abused its Discretion by Not Finding This Case Exceptional ........................................................................................18

    A.   AdjustaCam Filed and Prosecuted This Case in Bad Faith .....................19

        1.   AdjustaCam Brought this Case for the Improper Purpose of Obtaining Nuisance-Value Settlements ................................................................20

2.      Nuisance Litigation is Exceptional and Egregious ...............................22

3.      Nuisance Litigation Should be Discouraged .........................................23

B.    The Accused Cameras Could Not Possibly Have Infringed ...................23

C.    AdjustaCam's Validity Positions Were Frivolous ..................................25

II.    AdjustaCam's Appeal Must be Dismissed for Lack of Subject Matter Jurisdiction..........................................................................................................25

CONCLUSION ......................................................................................................28

## <u>CONFIDENTIAL MATERIAL OMITTED</u>

The material omitted on pages 3, 14 and 15 reflects the terms of settlement agreements that were designated as confidential by AdjustaCam, and are subject to a protective order entered by the district court.

# TABLE OF AUTHORITIES

## *Cases*

*Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990 (W.D. Wis. 2002) ....20

*Artese v. Academy Collection Service,* No. 3:96-cv-2546-GLG, 2000 U.S. Dist. LEXIS 1186 (D. Conn. Jan. 18, 2000) ................................................................20

*Benitec Austl, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) ................26

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005) ................................................................................................................18

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)........................................18

*Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338 (Fed. Cir. 2010)................26

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990)...................11

*Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314 (Fed. Cir. 2011) ................. 20, 23

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) .....15

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014) ................................................................................................................ 17, 18, 19

*Ingenuity 13, LLC v. Doe No. 2:12-cv-8333-ODW*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013) ...........................................................................21

*Jang v. Boston Sci. Corp.,* 532 F.3d 1330 (Fed. Cir. 2008)....................................27

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013) .................22

*MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907 (Fed. Cir. 2012) ................................................................................................................17, 25

*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988)....................................................22

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 726 F.3d 1359 (Fed. Cir. 2013) ................................................................................................ 20, 21, 22

*NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282 (Fed. Cir. 2005)................27

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014)

................................................................................ 5, 17, 18,, 19, 22,23

*Rude v. Westcott*, 130 U.S. 152 (1889) ................................................................ 15

*SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348 (Fed. Cir. 2012) .................27

*Steffel v. Thompson*, 415 U.S. 452 (1974) .............................................................26

*Upthegrove v. Health Prof"ls, LTD.*, No. 07-cv-0596-BBC, 2009 U.S. Dist. LEXIS
4546 (W.D. Wis. Jan. 21, 2009) ........................................................................21

### Statutes

28 U.S.C. § 1295(a)(1) ...........................................................................................2

28 U.S.C. § 2107(a) ................................................................................................2

28 U.S.C. §§ 1331 ...................................................................................................2

28 U.S.C. §§ 1338(a) ..............................................................................................2

35 U.S.C. § 285 ............................................................................................. passim

### Rules

Federal Rule of Appellate Procedure 4 ....................................................................2

## STATEMENT OF RELATED CASES

No other appeal in or from this same civil action was previously before this Court or any other court of appeals.    Sakar International, Inc. ("Sakar" or "Defendant Sakar") and its undersigned counsel are unaware of any other actions now pending in this or any other court that will directly affect or be directly affected by this Court's decision in the present appeal.

1

## JURISDICTIONAL STATEMENT

Sakar's Cross-Appeal:

The district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Sakar filed a timely and proper notice of appeal under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

AdjustaCam's Appeal:

For reasons discussed below, this Court does *not* have subject matter jurisdiction over AdjustaCam's appeal and AdjustaCam's appeal must be dismissed.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred by failing to find this case exceptional and egregious under 35 U.S.C. § 285 and its inherent authority to award Sakar its attorneys' fees and expert fees, despite clear and unrebutted evidence showing that this lawsuit was meritless, was prosecuted in bad faith, and was prosecuted to leverage the high cost and burden of litigation to coerce a nuisance-value settlement payment from Sakar.

2.    Whether this Court has subject matter jurisdiction over AdjustaCam's appeal, given that the case on the merits was mutually and voluntarily dismissed in its entirety, and no case or controversy remains between the parties.

CONFIDENTIAL MATERIAL OMITTED
## **STATEMENT OF THE CASE**

AdjustaCam, LLC ("AdjustaCam") brought this action in July 2010 against 59 defendants, including Defendant Sakar, alleging that certain camera products sold by Sakar infringed United States Patent No. 5,885,343 ("the '343 Patent"), entitled "Camera Clip." A0004. The '343 Patent is owned by Global-Media Group, LLC and AdjustaCam is the exclusive licensee of the patent. A1789.

After filing suit AdjustaCam began seeking to settle with the defendants. All defendants other than Defendant Sakar and Newegg Inc., Newegg.com, Inc., and Rosewill, Inc. (collectively, "Newegg" or "the Newegg Defendants") settled with AdjustaCam well before trial and were dismissed. However, 20 out of 22 twenty defendants settled for less than [[          ]]. A1282.

During the reexamination, on August 12, 2011, the USPTO issued a first Office Action and rejected the asserted claims of the '343 Patent, as being anticipated and/or obvious based on Japanese Utility Model Publication No. H2-19997 to Irifune (the "Irifune Publication") and U.S. Patent No. 5,880,783 to Ma entitled "Digital Camera for a Computer" (the "Ma Patent").

Then a *Markman* hearing was held on February 9, 2012 to construe various claim terms of the '343 Patent. A0013. Magistrate Judge Love issued a *Markman* order on April 10, 2012, which was subsequently adopted in full by Chief Judge Davis on June 7, 2012. A0013-27; A0012 ("the *Markman* Order").

In the *Markman* Order, the Court considered the term "[r]otatably attached / adapted to be rotatably attached / adapted to rotatably attach." A0020-23. Adjustacam argued that the term as used in the claims "allow[s] for a 'rotatably attached' object to rotate over more than a single axis." A0020. However, the district court agreed with the defendants, deciding that "[t]he claims plainly describe each 'rotatably attached' object as rotating about a single axis." A0022. The district court also explained that "[e]very reference to a 'rotatably attached' object in the specification and claims describes the attachment as permitting motion over a single axis of rotation." A0021.

Since Sakar's accused products had essentially a ball and socket joint, it was clear that Sakar accused products had multiple axes of rotation, and not just one or two axes of rotation, as required by the '343 Patent claims. Therefore, it was clear that there was **no infringement** for Sakar's camera having a multi-axis ball and socket joint.

At the same time, AdjustaCam's counsel was also **delaying and prolonging** the reexamination of the validity of the '343 Patent for one year until August 30, 2012, when the USPTO finally rejected the asserted claims of the '343 Patent during a third Office Action as being **not patentable and therefore invalid**. This was more than 2 years into the case, and most of the defendants had already settled except for Sakar, and the Newegg Defendants. Then, on September 20, 2012, after

4

most of the defendants had settled, AdjustaCam's counsel finally responded to the USPTO by **cancelling** the asserted claims from the '343 Patent. AdjustaCam could have cancelled the asserted claims of the '343 Patent (or at least withdrawn them from this litigation) long before September 20. Instead, AdjustaCam acted in bad faith by asserting frivolous responses to the USPTO's first two rejections between August 12, 2011 and August 30, 2012, in order to buy additional time to enter into additional nuisance-value settlements.

After AdjustaCam dismissed both the asserted claims and Sakar from the case, Sakar filed a motion for attorneys' fees and expert fees (totaling $163,522), which was denied by the trial court.  A0156, A0160.

On Sept. 18, 2013, Sakar then filed a notice of appeal seeking review of the denial of its motion for attorneys' fees. Although AdjustaCam's notice of appeal also referred to the district court's final judgment, that final judgment was not premised on any claim construction issues, nor did AdjustaCam seek a consent judgment incorporating the claim construction order as the basis for a judgment of non-infringement.  Rather, the final judgment merely reflected the parties' agreed mutual dismissal of the case.  A0001-03; A1986-87.

Meanwhile, shortly before this appeal was reactivated, the Supreme Court decided *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749

(2014), which relaxed the standard for finding a case "exceptional" under Section 285.

## STATEMENT OF FACTS

### I. Introduction

Unable to force a nuisance-value settlement payment from Sakar after more than two years of litigation, and since all of the defendants had settled except for Sakar and the Newegg Defendants, AdjustaCam decided to dismiss Sakar with prejudice in order to end the case.

This action by AdjustaCam was intended to extort nuisance-value settlement fees from defendants, and not to resolve any legitimate claims of infringement or damages. In fact, AdjustaCam knew at the time of the first Office Action rejection of the claims on August 12, 2011, that AdjustaCam could not prevail. Yet, AdjustaCam did not withdraw the patent claims and continued with the prosecution of its infringement claims and with the settlements. Such a baseless case that abuses the judiciary for personal gain is exceptional and warrants fee shifting.

By the time Sakar filed its motion for attorneys' fees and expert fees, AdjustaCam had forced Sakar to spend a total of $163,522, including $143,933 in attorney's fees and $19,589 in expert witness fees to defend itself. A1793-94. Sakar contends that it should not have to bear these fees, and that Sakar should be reimbursed by AdjustaCam

## II. The Parties

AdjustaCam is a limited liability company that is exclusively in the business of patent litigation. As a wholly-owned subsidiary of Acacia Research Group, LLC, its business follows the model of using the burden and expense of patent litigation as leverage to extort settlement fees from defendants. A1779.

Sakar is a wholesaler of consumer electronics products and accessories that it sells to various retailers throughout the United States under the brand name VIVITAR®. Sakar does not manufacture its products, including the accused webcam products in this case, but simply purchases its products from third parties in China and then resells them in the United States. Sakar's accused webcam products in this case were sold under Sakar's licensed brand name "Kodak."

A large number of defendants in this case were retailers, who simply purchased and re-sold the accused cameras and were not manufacturers who actually made the accused cameras.

## III.    AdjustaCam's Infringement Allegations

AdjustaCam is the exclusive licensee of United States Patent No. 5,855,343 ("the '343 Patent"), entitled "Camera Clip." A1789. The '343 Patent is generally directed to a camera clip that supports a camera when sitting on a flat surface or when attached to an object, such as a computer monitor:







'343 Patent, Figs. 1, 2, 4.  The clip allows the camera to rotate in two distinct

directions about distinct axes of rotation.

First, as shown in Fig. 1, the camera can be rotated to pan side-to-side.  The

specification explains: "[h]inge member 16 is rotatably attached to camera 12,

where camera 12 rotates over a **first axis 26** in a direction shown by arrow 28

8

relative to hinge member 16." '343 Patent, at 4:17-19. Second, as shown in Fig. 2, the camera can be tilted upward and downward. The specification explains: "[h]inge member 16 rotates over a **second axis 32** in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32." '343 Patent, at 4:21-24.

These two different axes of rotation are expressly required by all independent claims in the '343 Patent. In Claim 1 ("a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, *rotating, about a first axis of rotation*, relative to said hinge member"); Claim 1 also requires ("a support frame rotatably attached to said hinge member ..., said hinge member *rotating about a second axis of rotation* relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation").

Accordingly, the district court correctly held that the term "[r]otatably attached / adapted to be rotatably attached / adapted to rotatably attach" as used in the claims indicated that "'rotatably attached' objects in the patent-in-suit are **limited to a single axis of rotation**." A0022-23.

Unlike the camera covered by the '343 Patent, Sakar's accused cameras do not rotate about a single axis of rotation. Instead, Sakar's cameras (the "Accused Ball-and-Socket Products") include a camera connected to a support frame via a

9

**ball-and-socket joint**, which permits rotation about *multiple axes*, not just a first and second axis of rotation, as claimed.

Thus, the structure of Sakar's camera is different, since the Accused Ball-and-Socket Camera structure of Sakar is different from the structure of the '343 Patent claims, as illustrated by the following photographs of the accused Kodak webcams (Model Nos. Kodak S101 and Kodak T130):



A0307. The nature of these ball-and-socket joints is that they allow for rotation for each of the parts of the camera product about **multiple axes**—the camera is able to spin and pivot about **multiple axes of rotation** with respect to the socket (**not just a single axis**), and the support frame is likewise able to spin and pivot about multiple axes of rotation with respect to the ball (**not just a single axis**). A0296-98. Comparing Sakar's products to the claims and specification of the '343 Patent shows that **AdjustaCam's infringement allegations were baseless from the outset**.

Therefore, AdjustaCam's bad faith is evident. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith.").

In addition, AdjustaCam's own expert, Dr. Muskivitch, admitted three times during his deposition on cross-examination that Sakar's Kodak webcams with a ball and stem fixed to the camera DO NOT rotate about a **single axis of rotation** as required by asserted claims 1(a) and 19(a):

> **1) First Admission**
> A. Yes. The stem and the ball and the camera all are -- if you are going to rotate it, they will all rotate together.
> Q. Okay. So am I correct, would you be -- is it correct to say that the Kodak camera does not rotate relative to the stem and ball because they are fixed to each other?
> A. That's correct. (Muskivitch Deposition, p.280, ll.4-12);
> **2) Second Admission**
> Q. Well, we have -- we have already talked about the relationship between the camera and the stem and ball, and we have agreed earlier -- or you agreed earlier that -- that in a Kodak webcam, there is no rotational movement between the -- the camera and the ball and stem that fits [are fixed] together. Do you remember that?
> A. Yeah, sure, sure. (Id. at 308, ll.12-19); and
> **3) Third Admission**
> Q. Okay. But there is no relative movement between the ball and stem, which are -- and the camera, which are fixed together, correct?
> A. I agree. Right. (Id. at 311, ll.14-17).

(A0297-98).

Based on the foregoing admissions by AdjustaCam's expert, there could never have been any infringement by Sakar's Accused Ball-and-Socket Product.

## IV.     AdjustaCam's Validity Arguments

In its two arguments to the Patent Office, AdjustaCam also took frivolous positions in distinguishing the prior art cited by the Examiner, such as Japanese Utility Model Publication No. H2-19997 to Irifune ("Irifune"). This prior art discloses a camera rotatably attached to a hinge member (mounting device (2)) via the threaded "camera attachment shaft (9)":



A1386, A1387, A1394.  AdjustaCam's expert incorrectly asserted that Irifune does not disclose a device that can be rotatably attached to a camera.   Dr. Muskivitch argued that "[w]ith Irifune, the camera is not even attached to the hinge member until fully tightened down using camera attachment shaft (9) and camera attachment screws (10 and (11)." A1263.  Using an exceedingly narrow definition of "attached" ("permanently fixed joined, connected, or bound"), Dr. Muskivitch argued that Irifune did not meet the claim requirements because "[o]nce the camera

12

is attached to the fixed part 2, the camera cannot rotate about a first axis relative to the hinge member." *Id.* In Dr. Muskivitch's view, when the camera of Irifune is screwed all the way onto the hinge member, the camera cannot be rotated, and if the camera is loosened to permit rotation, the camera is not attached. *Id.* ("[E]ven assuming for the sake of argument that with Irifune the camera is attached, it is not "rotatably attached.").

In the first office action, on August 12, 2011, in a reexamination proceeding regarding the '343 Patent, **the USPTO rejected the asserted claims as anticipated and/or obvious based on Irifune**. A1425; A1431-36; A1376-96 (English translation of Irifune). Like Dr. Muskivitch later did in the litigation, during the reexamination proceedings patent owner Global-Media argued that the camera of Irifune is not "rotatably attached" to the hinge member because the camera "is not attached to the hinge member until *fully screwed or threaded to the hinge member*." A1448. To make such an argument, Global-Media posited that the plain and ordinary meaning of attached is "permanently fixed, joined, connected, or bound." A1447. The examiner rejected this argument twice, correctly concluding that "it is clearly possible to loosen the attachment screw, to enable the pivoting of the camera relative to support (fixed part 2) while the camera is still attached to the support." A1508-10; A1476. After the third office action, which was a final rejection based on Irifune, AdjustaCam cancelled all the asserted claims

13

CONFIDENTIAL MATERIAL OMITTED

on September 20, 2012, which effectively ended the case. By that time, all the parties had settled, except Sakar and NewEgg.  A1515-19, A1460, A1465, A1469-74, A1493, A1502-06.

### V. AdjustaCam's Nuisance-Value Settlements and Demands

Sakar, like its co-defendants, was served with a lawsuit and was then approached by AdjustaCam to discuss settlement of the case.   Nearly every defendant proceeded to settle for a dollar amount well under the cost to defend oneself against the infringement allegations, 20 out of 22 for less than [[███████]].  A1282 (AdjustaCam settlement agreement summary).

AdjustaCam and its damages expert state that AdjustaCam's settlement agreements were based on an established target royalty of $1.25-$1.50/unit. *See* A1195-97   ("In its licensing program for this litigation, AdjustaCam used this $1.25 - $1.50 per webcam royalty rate as a baseline for licensing the various defendants."); A1324. The chart below does not support this royalty rate alleged by AdjustaCam:

CONFIDENTIAL MATERIAL OMITTED

**Attachment 12**
Implied Royalty Rates



[[                                                                          ]]

A1283-85.

The alleged basis for the target royalty of $1.25-$1.50/unit was two settlement and license agreements entered into in 2001 by one of AdjustaCam's predecessors in interest, PAR Technologies, both of which included lump sum payments plus prospective running royalty components.  A1197; A1282; A1303-06.  One of these agreements had a tiered prospective royalty structure ranging from [[$1.00 to $8.00]] per unit as the number of units increased, and the other had a royalty structure of [[$1.25]] per unit that decreased to [[zero]] as the sales volume increased.  A0542-45; A0631.  From these two PAR Technologies agreements alone, to the exclusion of the more than twenty other licenses that do not support the proffered royalty rate, and without making any comparison of the

PAR Technologies licenses to the facts of the case against Sakar, AdjustaCam and its expert took the unsupported position that "a royalty in the $1.25 to $1.50 frame" was an appropriate and consistent target for licensing discussions. A1305-06.

AdjustaCam also asserts that "AdjustaCam's settlement numbers were tied to a pre-established unit royalty of $1.25 - $1.50 per infringing device." A1201. But AdjustaCam has no proof of this established royalty rate. *See, e.g., Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983).

Settlements were untied to Sakar's sales of the accused cameras. However, Sakar refused all of AdjustaCam's settlement demands in 2011 and 2012 because the asserted claims of the '343 Patent were not infringed, invalid, and had been rejected by the U.S. Patent Office.

## <u>SUMMARY OF THE ARGUMENT</u>

This lawsuit by AdjustaCam sued Sakar and its dozens of co-defendants was for the purpose of seeking nuisance-value settlement payments.

AdjustaCam's patent covers a camera that is claimed to rotate in a *single* axis of rotation. But it is undisputed that Sakar's ball-and-socket joint rotated about *multiple* axes of rotation, not a single axis of rotation.

Even after the district court construed the claims against AdjustaCam, AdjustaCam continued to pursue many nuisance-value settlement offers.

To make matters worse, all Sakar's time and money (totaling $163,522 in attorneys' fees and expert fees) was wasted on defending this frivolous lawsuit even though AdjustaCam knew for nearly a year before Sakar was dismissed that Sakar's accused ball and socket product did not infringe.

Because AdjustaCam did not litigate in good faith, this case "stands out from the others" and is exceptional under *Octane Fitness*, and is also sufficiently egregious to warrant expert fee shifting. Accordingly, this Court should remand the case to determine the amount of Sakar's recoverable fees.

## STANDARD OF REVIEW

The denial of a motion for attorneys' fees under 35 U.S.C. § 285 is reviewed for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014) ("[A]n appellate court should review all aspects of a district court's § 285 determination for abuse of discretion.").

A district court's decision not to award expert fees under its inherent authority is also reviewed for an abuse of discretion. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012).

"The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the

law or on a clearly erroneous assessment of the evidence.'"  *Highmark*, 134 S. Ct.

at 1748 n. 2 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## ARGUMENT

### I. The District Court Abused its Discretion by Not Finding This Case Exceptional and Egregious

The Supreme Court in its recent *Octane Fitness* decision explained that,

under 35 U.S.C. § 285, "an 'exceptional' case is simply one that stands out from

others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable

manner in which the case was litigated."  134 S. Ct. at 1756.  "District courts may

determine whether a case is 'exceptional' in the case-by-case exercise of their

discretion, considering the totality of the circumstances."  *Id.*  For particularly

egregious cases, district courts also have the inherent authority to award expert

fees.  *MarcTec v. Johnson & Johnson,* 664 F.3d 907, 921 (Fed. Cir. 2012).

As noted above, the district court decided Sakar's motion **before** *Octane*

*Fitness* relaxed the standard for finding a case "exceptional" under Section 285.  In

denying Sakar's motion, the district court recited and applied the then-applicable

law under *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed.

Cir. 2005), stating that absent material inappropriate conduct in litigation, "an

exceptional case may only be found if 'both (1) the litigation is brought in

subjective bad faith, and (2) the litigation is objectively baseless.'"  A0005.

Unlike under the *Brooks Furniture* standard relied on by the district court, the exceptionality standard does not require proof of both objective baselessness and bad faith, or require misconduct to be independently sanctionable, or require proof by clear and convincing evidence. *Octane Fitness*, 134 S. Ct. at 1757-58. Here, because the district court erred by denying Sakar's motion under the strict *Brooks Furniture* standard, it certainly also erred under the far less burdensome *Octane Fitness* standard as well.

In denying Sakar's motion for attorneys' fees and expert fees, the district court misapprehended the evidence. Under the test of *Brooks Furniture* or *Octane Fitness,* the "clearly erroneous assessment of the evidence" constitutes an abuse of discretion. *Highmark*, 134 S. Ct. at 1748 n. 2.

## A. AdjustaCam Filed and Prosecuted This Case in Bad Faith

According to the district court, "there is insufficient evidence that the action was brought in bad faith and for an improper purpose." A0006. In fact, the evidence of bad faith was overwhelming.

It is clear that AdjustaCam pursued Sakar for two years on patent claims that were facially **not infringed by the Accused Ball-and-Socket Products**. However, AdjustaCam continued with its case even after the Patent Office rejected the patentability of the claims on August 12, 2011, and even after the *Markman* Order emphatically precluded any possible infringement. *See infra.*

19

### 1. AdjustaCam Brought this Case for the Improper Purpose of Obtaining Nuisance-Value Settlements

AdjustaCam's settlements, as well as the settlement demands made to Sakar, were not reasonably tied to a particular royalty rate. District courts should not permit such **flagrant bad faith**.

The lower Court stated that "low settlement offers . . . effectively ensure [] that [the patentee's] baseless infringement allegations remained unexposed, allowing [the patentee] to continue to collect additional nuisance value settlements." *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1327 (Fed. Cir. 2011); *see also Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 997 (W.D. Wis. 2002) (Bad faith litigation tactics "force defendants into settlement and away from their legitimate defenses."); *Artese v. Academy Collection Service,* No. 3:96-cv-2546-GLG, 2000 U.S. Dist. LEXIS 1186, at *10 (D. Conn. Jan. 18, 2000) (holding that the filing of many lawsuits seeking relatively small settlements "gives rise to a suspicion of *barratry* and *champerty*").

As stated above, the settlement amounts in this case are small compared to the cost of defense, showing that AdjustaCam's desire was to obtain settlements.. When Sakar, after nearly two years, still refused to settle, AdjustaCam's response exposed its true purpose.  Such an "overall vexatious litigation strategy" that is wasteful of judicial resources evidences bad faith.  *See Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013).

In *Monolithic Power Systems*, the case was deemed exceptional in large part because the plaintiff "withdrew its claims and granted covenants not to sue after substantial litigation had taken place," "moving to dismiss only after [defendants] had completed their filings for the final pretrial conference, wasting the parties' and the court's resources." *Id.* Similarly, AdjustaCam waited two years to dismiss Sakar, and did not actually dismiss Sakar until after Sakar had incurred considerable expense in attorney fees and expert fees. AdjustaCam cannot just lose the case and dismiss it with zero consequences after forcing Sakar to spend $163,522 in attorneys' fees and expert fees to defend itself.

In *Ingenuity 13, LLC v. Doe*, copyright plaintiffs were found to have acted in bad faith and sanctioned for fees in circumstances largely identical to those in this case. No. 2:12-cv-8333-ODW, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013). First, the plaintiffs engaged in a strategy to file lawsuits against many defendants. *Id.* at *6-7. Due to "the high cost of litigation," "[m]ost defendants settled . . . , resulting in proceeds of millions of dollars due to the numerosity of defendants." *Id.* "For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement."

It is unfair for a plaintiff to force Sakar to endure the substantial burden and expense of litigation and then lose the case and dismiss it. *See Upthegrove v. Health Prof'ls, LTD.*, No. 07-cv-0596-BBC, 2009 U.S. Dist. LEXIS 4546, at *12

(W.D. Wis. Jan. 21, 2009) ("Plaintiff cannot expect to subject defendant Rose to a year of litigation and walk away with no consequences."); *compare Monolithic Power Sys.*, 726 F.3d at 1367 (affirming award of fees, emphasizing that vexatious case was dismissed "after substantial litigation had taken place . . . wasting the parties' and the court's resources").

Section 285's exceptional case provision exists precisely to prevent "gross injustice to an alleged infringer." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988). Sakar was left with considerable and unjustifiable litigation costs, making this case exceptional and abusive.

### 2. *Nuisance Litigation is Exceptional and Egregious*

Patent-type nuisance litigation brought by a patent owner has become a lucrative industry. *See, e.g.,* Colleen V. Chien, *Patent Trolls by the Numbers*, Santa Clara University Studies Research Paper No. 08-13, *available at* http://ssrn.com/abstract=2233041 (March 13, 2013) (explaining that patent assertion entities file the majority patent lawsuits in the U.S., primarily targeting non-technology companies).

The case of *Octane Fitness* explained that "an 'exceptional' case is simply one that stands out from others" regarding weak merits positions or litigation misconduct. 134 S. Ct. at 1756.

Section 285 is supposed to be remedial—to correct for unfairness and

injustice. *See Octane Fitness*, 134 S. Ct. at 1753, 1756 n.6; *see also Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1312-13 (Fed. Cir. 2013).

As stated in *Eon-Net,* 653 F.3d at 1328 ("[T]he appetite for licensing revenue cannot overpower a litigant's and its counsel's **obligation to file cases reasonably based in law and fact and to litigate those cases in good faith**.").

### 3. *Nuisance Litigation Should be Discouraged*

*Octane Fitness* recognizes that the Court's power to award attorneys' fees should be a deterrent effect on bad faith litigation and misconduct. 134 S. Ct. at 1756 n.6 (reminding district courts of "the need in particular circumstances to advance considerations of compensation and deterrence"). AdjustaCam cannot be allowed to file a baseless case, and then after losing the case (claims declared invalid), AdjustaCam's only consequence is to dismiss the case. *See Kilopass*, 738 F.3d at 1317 ("[T]rial courts retain broad discretion to make findings of exceptionality under § 285 *in a wide variety of circumstances*.").

If AdjustaCam's conduct is not deemed exceptional and egregious in this case, it will embolden nuisance litigants to continue their abusive conduct unchecked.

### B. The Accused Cameras Could Not Possibly Have Infringed

The district court agreed with AdjustaCam that the Accused Ball-and-Socket Products included constrained ball-and-socket joints that restricted movement to

some extent.  A0006. According to the district court, this constricted movement made it possible for AdjustaCam to prevail in proving infringement:

> [i]f the ball and socket joint truly restricts the range of movement such that it cannot rotate about multiple axes, the constrained ball and socket joint could meet the claim limitation which requires the hinge member being rotatably attached to the camera in a single axis of rotation.  Since one could reasonably argue Defendants' products meet the "rotatably attached" limitation, AdjustaCam's infringement theories are not objectively baseless.

A0006.  However, it is undisputed that the Accused Ball-and-Socket Products included cameras that were in fact capable of rotating about multiple axes with respect to the socket—they could be both twisted and tilted up and down.

See A0022 ("The claims plainly describe each 'rotatably attached' object as rotating about a single axis."); A0021 ("Every reference to a 'rotatably attached' object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.").  Therefore, from the beginning of this lawsuit, no reasonable plaintiff could have expected to succeed in proving infringement.

The situation would be somewhat different if AdjustaCam honestly did not know that infringement was impossible to prove at the outset of the case, but later discovered that it could not prevail.  Here, such ignorance is implausible given the readily apparent functionality of the accused products and the simplicity of the patent and its claims.  But even if AdjustaCam could legitimately plead ignorance,

ignorance is no excuse to continue undeterred—for nearly five months, which included considerable and expensive expert discovery—after the district court's decisive *Markman* ruling in Sakar's favor. A0013-27 (April 10, 2012 *Markman* Order). Here, as in *MarcTec*, AdjustaCam "not only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused [defendant] to incur needleless litigation expenses. This vexatious conduct is, by definition, litigation misconduct, and provides a separate and independent basis supporting the district court's determination that this case is exceptional." *MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907, at 920-21 (Fed. Cir. 2012).

### C. AdjustaCam's Validity Positions Were Frivolous

As explained above, AdjustaCam advanced the following incorrect argument to the Patent Office: "With Irifune, the camera **is not even attached to the hinge member until fully tightened** down using camera attachment shaft (9) and camera attachment screws (10 and (11)." A1263. Using the exceedingly narrow definition of "attached" offered in the reexamination, AdjustaCam's expert Dr. Muskivitch opined that, "[o]nce the camera is attached to the fixed part 2, the camera cannot rotate about a first axis relative to the hinge member." *Id.* These conducted aruguments were objectively baseless for several reasons.

25

## II. AdjustaCam's Appeal Must be Dismissed for Lack of Subject Matter Jurisdiction

AdjustaCam brought its own affirmative appeal to this Court, but there is no subject matter jurisdiction. There is no legal support whatsoever for AdjustaCam's attempt to appeal a claim construction issue that it lost in the district court, made no effort to preserve for appeal, and expressly extinguished when it dismissed its case against Sakar with prejudice. This frivolous appeal only compounds the exceptionality of this case and causes Sakar to incur further needless legal expenses.

An "actual controversy must be extant at all stages of review, not merely at the time the complaint was filed." *Benitec Austl, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). "Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case, and no amount of 'prudential reasons' or perceived increases in efficiency, however sound, can empower a federal court to hear a case where there is no extant case or controversy." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010).

AdjustaCam filed its notice of appeal seeking review of the district court's claim construction rulings. A0193. But by that time, Sakar had already been dismissed with prejudice from the case and given a covenant not to be sued in the future for infringement of the '343 Patent. A1955-57; A0319-20; A0158. The

dismissal and covenant extinguished any ongoing disputes between AdjustaCam and Sakar concerning the infringement and validity of the '343 Patent.

This Court has often recognized its inability to reach claim construction issues that are not subject to an ongoing case or controversy. *See, e.g, SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1354 (Fed. Cir. 2012) ("[W]here, as here, a party's claim construction arguments do not affect the final judgment entered by the court, they are not reviewable. . . . Without a final judgment as to the infringement or validity of these claims, the court's claim constructions that impact only these withdrawn claims are not properly before us."); *Jang v. Boston Sci. Corp.,* 532 F.3d 1330, 1336 (Fed. Cir. 2008) (resolving claim construction issues "that do not actually affect the infringement controversy between the parties" would result in impermissible advisory opinion because "[t]he Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties"); *see also NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1311 (Fed. Cir. 2005).

Although AdjustaCam purports to appeal from the district court's final judgment, but that final judgment was in no way based on the claim construction ruling. It was instead based entirely on the mutual consent of the parties to end the

case. Therefore, this Court lacks subject matter jurisdiction to review the claim constructions.

Here, AdjustaCam made no effort whatsoever to preserve any challenges to the district court's claim constructions when it decided to dismiss its case against Sakar.

This Court cannot hear AdjustaCam's appeal because it lacks subject matter jurisdiction over the challenges raised to the claim construction rulings by the district court. AdjustaCam's appeal must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the district court should be reversed, this case should be declared exceptional and egregious, and the case should be remanded for a determination of the amount of attorneys' fees and expert fees owed to Sakar.

Additionally, AdjustaCam's appeal should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

Dated: October 14, 2014    By:    /s/ Ezra Sutton
                                            Ezra Sutton
                                            EZRA SUTTON, P.A.
                                            900 Route 9 North
                                            Plaza 9, Suite 201
                                            Woodbridge, NJ 07095
                                            Telephone: (732) 634-3520

                                            *Counsel for Defendant-Cross-Appellant*

28

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Jurisdictional Statement on page 1, and ending with the last line of the conclusion on page 28, including headings, footnotes, and quotations, contains 5,532 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

/s/ Ezra Sutton
Ezra Sutton
*Counsel for Defendant-Cross-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 14, 2014, copies of the foregoing Brief of Defendant-Cross-Appellant were served on counsel for Plaintiff-Appellant AdjustaCam, LLC via the Court's ECF system and via electronic mail upon the following:

John J. Edmonds
Collins, Edmonds, Pogorzelski, Schlather & Tower PLLC
1616 South Voss Road
Houston, TX 77057
Direct: 281-501-3425
Email: jedmonds@cepiplaw.com

/s/ Ezra Sutton
Ezra Sutton
*Counsel for Defendant-Cross-Appellant*