2013-1665, -1666, -1667

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADJUSTACAM, LLC,

Plaintiff-Appellant,

v.

NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.,

Defendants-Cross-Appellants

and

SAKAR INTERNATIONAL, INC.,

Defendant-Cross-Appellant

Appeals from the United States District Court for the Eastern District of Texas
in Case No. 10-CV-329, Chief Judge Leonard Davis

### NON- CONFIDENTIAL REPLY BRIEF OF CROSS-APPELLANTS NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.

Kent. E. Baldauf, Jr.
Daniel H. Brean
Anthony W. Brooks
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

Mark. A. Lemley
Laura E. Miller
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Yar R. Chaikovsky
McDERMOTT, WILL &
EMERY
275 Middlefield Rd., Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7447

*Counsel for Defendants-Cross-Appellants Newegg, Inc.,*
*Newegg.com, Inc., and Rosewill, Inc.*
November 24, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AdjustaCam v. Newegg, 2013-1665

## <u>CERTIFICATE OF INTEREST FOR NEWEGG INC.</u>

Counsel for Newegg Inc. hereby certifies the following:

1.     The full name of every party or amicus represented by me is:

  Newegg Inc.; Newegg.com, Inc.; Rosewill, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

  Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

  No publicly held company owns ten percent or more stock in Newegg Inc.; Newegg.com, Inc.; or Rosewill, Inc.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

  Kent E. Baldauf, Jr., The Webb Law Firm
  Daniel H. Brean, The Webb Law Firm
  Anthony W. Brooks, The Webb Law Firm
  Herbert A Yarbrough, III, Yarbrough & Wilcox, PLLC
  Debra Elaine Gunter, Yarbrough Wilcox, PLLC
  John N. Zarian, Parsons Behle & Latimer
  Robert A. Matson, Parsons Behle & Latimer
  Justin Neil Stewart, Parsons Behle & Latimer
  Dana M. Herberholz, Parsons Behle & Latimer
  Christopher Cuneo, Parsons Behle & Latimer

Edward R. Reines, Weil Gotshal & Manges
Richard G. Frenkel, Latham & Watkins LLP
Yar R. Chaikovsky, McDermott Will & Emery
Mark A. Lemley, Durie Tangri LLP
Laura E. Miller, Durie Tangri LLP

Dated:  November 24, 2014            /s/ Daniel H. Brean_____
                                    *Counsel for Defendants-Cross-Appellants*
                                    *Newegg, Inc. Newegg.com, Inc., and*
                                    *Rosewill, Inc.*

# TABLE OF CONTENTS

**CERTIFICATE OF INTEREST FOR NEWEGG INC.** ..................................... i

**TABLE OF CONTENTS** ................................................................... iii

**TABLE OF AUTHORITIES** .............................................................. iv

**ARGUMENT** .......................................................................................1

    I.   The *Octane Fitness* Standard for Exceptionality Applies to This Appeal ......2

    II.  AdjustaCam's Litigation was Nuisance-Driven, and
         AdjustaCam Admits that Nuisance Litigation is Exceptional........................3

    III.   AdjustaCam Did Not Accuse and Pursue Newegg in Good Faith...............8

    IV.   AdjustaCam's Infringement Arguments Are Not Reasonable....................11

    V.  AdjustaCam's Validity Arguments Are Not Reasonable.............................13

    VI.   There Is No Need For a Remand in This Case............................................15

    VII.  AdjustaCam Provides No Authority That Would
          Allow this Court to Hear its Claim Construction Appeal ...........................17

**CONCLUSION**....................................................................................21

**CERTIFICATE OF SERVICE** .........................................................23

**CERTIFICATE OF COMPLIANCE** ................................................24

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 4-6 reflects the terms of settlement agreements that were designated as confidential by AdjustaCam, and are subject to a protective order entered by the district court.

# TABLE OF AUTHORITIES

## *Cases*

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005) ............................................................ 2, 11, 15, 16

*Chamberlain Group, Inc., v. Skylink Technologies, Inc.*,
381 F.3d 1178 (2004) ...........................................................................19

*Cooter & Gell* v. *Hartmarx Corp.*,
496 U.S. 384 (1990) ..............................................................................16

*Eon-Net L.P. v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) .................................................... 3, 10, 11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ..............................................................................20

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) ..............................................................................19

*Harper v. Va. Dep't of Taxation*,
509 U.S. 86 (1993) .............................................................................2, 3

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
134 S. Ct. 1744 (2014) ................................................................ 2, 14, 16

*Jang v. Boston Sci. Corp.*,
532 F.3d 1330 (Fed. Cir. 2008) .............................................................19

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ..............................................................................15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ................................................................. *passim*

*SanDisk Corp. v. Kingston Tech. Co.*,
695 F.3d 1348 (Fed. Cir. 2012) .............................................................18

***Other Authorities***

8-41 Moore's Federal Practice - Civil § 41.40[7][e] (2014) ...................................17

8-41 Moore's Federal Practice - Civil § 41.33[8][a] (2014) ...................................17

# **ARGUMENT**

AdjustaCam's brief itself highlights the exceptional nature of this case. Unable to prevail under the *Octane Fitness* standard, AdjustaCam contends that *Octane Fitness*, which is controlling Supreme Court precedent, cannot be applied because the correct law was somehow "waived." In doing so, AdjustaCam ignores controlling Supreme Court precedent to the contrary. It brings its own appeal on claim construction despite having dismissed its lawsuit with prejudice, depriving the court of Article III jurisdiction over the merits of its now-abandoned case. And it plays fast and loose with the factual record in an effort to avoid the obvious conclusion that it filed this case to obtain nuisance-value cost-of-litigation settlements, making claims that lack any basis in the record. The extreme and unsupported nature of AdjustaCam's arguments on appeal is further evidence of the exceptional nature of this case, and indeed compounds the unreasonable nature of AdjustaCam's litigation strategy.

Nearly every merits argument made by AdjustaCam in its opposition brief ("Adj. Br.") was taken verbatim from AdjustaCam's briefing in the district court. As such, Newegg's opening brief ("Newegg Br.") anticipated and addressed the points that AdjustaCam simply reiterated on appeal. The following reply brief is directed only to the few on which further discussion may assist the Court.

1

## I.    THE *OCTANE FITNESS* STANDARD FOR EXCEPTIONALITY APPLIES TO THIS APPEAL

AdjustaCam takes the frivolous position that the Supreme Court's *Octane Fitness* decision does not apply to Newegg's appeal because Newegg's fee motion was briefed and argued at the district court under the standard of *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), before *Octane Fitness* was decided.  Adj. Br. at 5.  However, it is well settled that "[w]hen [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."  *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).  This Court cannot ignore the new *Octane Fitness* decision when considering Newegg's appeal.[1]

AdjustaCam also suggests, without citation, that Newegg has waived its right to rely on *Octane Fitness* because Newegg did not ask this Court for a

---

[1] AdjustaCam accuses Newegg of being "ambiguous" concerning whether the *Brooks Furniture* or *Octane Fitness* standards should apply.  Adj. Br. at 5.  There was no ambiguity.  As explained in Newegg's brief, Newegg appeals the district court's judgment under the *Brooks Furniture* standard *and* the *Octane Fitness* standard.  Newegg Br. at 31 ("[B]ecause the district court erred by denying Newegg's motion under the strict *Brooks Furniture* standard, it certainly also erred under the far less burdensome *Octane Fitness* standard as well."); *id.* ("Under either the *Brooks Furniture* or *Octane Fitness* analytical framework, this 'clearly erroneous assessment of the evidence' constitutes an abuse of discretion. *Highmark*, 134 S. Ct. at 1748 n. 2.").

remand for reconsideration under *Octane Fitness*.  Adj. Br. at 5.  Newegg did not request a remand because none is required or helpful to properly dispose of this case.  Under the *Octane Fitness* standard, it would be an abuse of discretion not to declare this case exceptional and award Newegg its fees.  A remand would only delay the inevitable fee shifting.

The fact that AdjustaCam ignores controlling Supreme Court precedent (*Harper*) in asking this Court to ignore still other controlling Supreme Court precedent (*Octane Fitness*) is evidence of the weakness of its position.  AdjustaCam knows full well that it cannot prevail under the new legal standard of *Octane Fitness*.

## II.    ADJUSTACAM'S LITIGATION WAS NUISANCE-DRIVEN, AND ADJUSTACAM ADMITS THAT NUISANCE LITIGATION IS EXCEPTIONAL

Although AdjustaCam contends that this case is not nuisance settlement-driven, it does not defend the nuisance litigation business model.  AdjustaCam specifically concedes on page 56 of its brief that "nuisance litigation should be discouraged."  If this Court concludes that AdjustaCam's patent assertions were in fact intended to seek nuisance-value settlements, the parties appear to agree that Newegg should prevail and be awarded its fees.  *Accord Eon-Net L.P. v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) ("Eon–Net acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from Flagstar.").

CONFIDENTIAL MATERIAL OMITTED

AdjustaCam suggests that its settlement values are small simply because "the product at issue has waned in popularity and does not generate millions of dollars in sales." Adj. Br. at 55; *see also id.* at 56 ("Adjustacam's patent covered products with marginal popularity, but Adjustacam has every right to seek redress for infringement of its patents, rather [sic] large or modest."). AdjustaCam never made this argument to the district court and cited nothing in the record to support these assertions.

Even if true, this purported justification does nothing to explain why the vast majority of Newegg's co-defendants paid [[          ]] or less to settle, more than half paying [[          ]] or less, and always as a round number. A1282. If these settlements were actually based on the amount of accused sales, as AdjustaCam argues, one would expect the numbers to be more scattered than they are. But here, for example, five of the settlements are for exactly [[          ]], which is not credible as a mere coincidence.

AdjustaCam cites to various parts of the record to allegedly show that "Adjustacam's settlements with the various defendants are directly linked to their represented sales volumes and to this $1.25 - $1.50 per unit royalty." Adj. Br. at 31. Yet all of those record citations trace back to the same bare self-serving statements of AdjustaCam's 30(b)(6) witness, Steve Wong, that he used a $1.25 - $1.50 per unit target royalty in every negotiation using past and estimated future

CONFIDENTIAL MATERIAL OMITTED

sales information.  A0797-98 (explaining that Mr. Bratic's report and testimony relied on Mr. Wong's statements concerning the use of the "target royalty); A0558-59 (Bratic report citing exclusively to "Interview of Steve Wong" as source for alleged use of target royalty and consideration of licensees' sales); A0666 (Mr. Bratic reading portions of expert report discussing "general subject matter of the discussions with Mr. Wong").

AdjustaCam points to nothing—no negotiation correspondence, sales summaries, etc.—to show that the dollar amounts paid by the settling defendants actually reflect sales volume and were calculated using a $1.25 - $1.50 per unit target royalty.  Contrary to AdjustaCam's argument, it is not the fact that "Adjustacam's Rule 30(b)(6) designee was not aware of the precise number of units sold by any settling defendants" (Adj. Br. at 31 n. 14) that is troubling, though it does indicate that AdjustaCam was not truly concerned with collecting a per-unit royalty.  It is the fact that AdjustaCam has no documentation whatsoever to back up its alleged licensing pricing model.  This supposed licensing model is nothing more than a fabricated, litigation-induced argument to divert attention away from the nuisance nature of the settlements.

The litigation-induced nature of this argument is further confirmed by the fact that AdjustaCam structured its licenses to perpetuate the "target royalty" sham. First, AdjustaCam included a [[███████████████████████]] in six licenses, but

CONFIDENTIAL MATERIAL OMITTED

set the number of units threshold so high that it knew none of the defendants would ever reach that sales volume to trigger the running royalty. A0558 (AdjustaCam's expert stating "I understand that AdjustaCam utilized this royalty structure because these licensees had a low volume of past sales it would be highly unlikely that total volume sales would exceed the units included in the lump-sum payment"); A1313-14 (AdjustaCam's expert admitting that none of the six licensees ever reached the maximum number of sales and had to pay a running royalty). Second, AdjustaCam set the meaninglessly high threshold at a number so that it would equate to an effective royalty of [[███████████████]] based on past sales. Newegg Br. at 23-24; A0545-49; A0631-33. In reality, the parties to those six agreements simply paid nuisance-value lump sums between [[███████████]]. A0631-33.

AdjustaCam quibbles over the effective royalty rate calculations provided by Newegg's expert, which show that the lump-sum settlement fees paid to AdjustaCam ranged from a minimum effective royalty rate of [[██████]] to a maximum rate of [[███████]]. Newegg Br. at 20-21; A1283-85. Even if some adjustments should be made to Dr. Sullivan's calculations along the lines that AdjustaCam suggests (Adj. Br. at 32-33), AdjustaCam provides no reason to think that such adjustments would come close to correcting for the orders-of-magnitude disparity between the alleged target royalty and the effective royalty rates. In fact,

6

all of AdjustaCam's criticisms of the calculations suggest that the number of products subject to the royalty was calculated as being too high.  If the calculations were redone using a smaller number of royalty-bearing products, it would only increase the effective royalty per unit and skew almost all the figures even <u>further away</u> from AdjustaCam's alleged "target royalty."  *See* A1283.

Finally, the early nuisance-value settlement demands of $75,000 and $65,000 made by AdjustaCam to Newegg were never tied to the merits of the case, or even to AdjustaCam's own damages theory in the case.  Newegg Br. at 24-25.  Even after serving an expert report calculating damages of $17,928, AdjustaCam still sought nearly three times that amount from Newegg to settle the case—a figure that AdjustaCam's own expert agreed was unreasonable.  *Id.*  AdjustaCam's only explanation for this overreaching demand is to say that the settlement payment would "necessarily" include both past and future infringement.  Adj. Br. at 35-36.  AdjustaCam points to nothing showing how much expected future sales were projected for Newegg, or any indication that Newegg even wanted to continue selling the accused products instead of switching to alternative products.  As with the executed settlement licenses, AdjustaCam simply cannot back up its demands to Newegg with any hard facts or figures to show a credible connection between the dollar amounts and the alleged target royalty.  This is because the

demands, like the executed settlements, were calculated as nuisance-value given the high cost of litigation defense.

## III.  ADJUSTACAM DID NOT ACCUSE AND PURSUE NEWEGG IN GOOD FAITH

In its opposition brief, AdjustaCam contends that its conduct with respect to Newegg was always in good faith.  AdjustaCam claims that it "acted reasonably" by dropping sixteen accused webcams from the lawsuit following the district court's *Markman* ruling.  Adj. Br. at 11.  AdjustaCam also argues that it dismissed Newegg from the lawsuit for entirely prudent reasons—because Newegg's upstream suppliers of accused products became licensed, making Newegg's potential exposure "*de minimis*," it supposedly no longer made economic sense to pursue Newegg.  *Id.* at 37-38.

First, the fact that AdjustaCam brought sixteen additional infringement allegations that it admits were meritless does nothing to render its other remaining contentions somehow more meritorious.  To accuse ball-and-socket products of infringing the '343 Patent was baseless given the plain language of the patent claims, in which the patented camera is limited to rotate exclusively within a single axis of rotation.  Newegg Br. at 9-17.  Even if there was some reasonable doubt about this clear claim requirement, which there is not, the *Markman* order conclusively established that a ball-and-socket configuration was outside the scope

of the claims of the '343 Patent.   Yet AdjustaCam continued pressing those baseless claims despite the *Markman* order.

Second, if AdjustaCam's motivation to dismiss Newegg was strictly based on Newegg's minimal exposure, as AdjustaCam contends, then one would have expected AdjustaCam to dismiss Newegg promptly after it learned of Newegg's small exposure.   AdjustaCam was anything by prompt in moving to dismiss Newegg, however.   Here, Newegg's sales of less than $100,000 of the accused products were confirmed to AdjustaCam no later than November 2011.   Newegg Br. at 24-25, 38; A1784; A1226; A1362-63.[2]   This reflected the total accused sales before the February 2012 *Markman* hearing and subsequent *Markman* order that allegedly prompted AdjustaCam to drop sixteen accused webcams from the lawsuit.   *Id.*   Yet it took AdjustaCam more than nine months, until August 27, 2012, to finally conclude that Newegg's minimal sales volume did not justify protracted litigation.   A2141 (AdjustaCam's motion to dismiss Newegg).   The district court's April 10, 2012 *Markman* order that supposedly caused AdjustaCam to jettison the majority of its infringement accusations, reducing Newegg's potential exposure even further, was still more than six months before AdjustaCam

---

[2] AdjustaCam contends that this confirmation of accused sales finds no support in the record, and is "false and untrue."   AdjustaCam Br. at 12 n. 7.   To the contrary, the portions of the record cited above and in Newegg's opening brief show that these sales figures were "produced to AdjustaCam pursuant to the Court's order following status conference on February 7, 2011."   A1226, A1361-63.

filed its motion to dismiss Newegg. A0026. Meanwhile, AdjustaCam made repeated nuisance settlement demands entirely unreflective of Newegg's actual exposure in the litigation. Newegg Br. at 24-25.

While AdjustaCam professes that it dismissed Newegg because it discovered late in the case that the potential damages against Newegg were *de minimis*, the undeniable fact is that the potential damages were very small from the outset, and AdjustaCam had this information since at least as early as the November 9, 2011 mediation. In truth, AdjustaCam dismissed Newegg simply because it saw that Newegg would not pay a nuisance settlement payment, and that Newegg was determined to vindicate its legal positions in the litigation. Newegg Br. at 34-35, 42-43. This conduct—seeking a payment based on the cost of litigation and unrelated to the merits of the patent claim—has the "indicia of extortion" this Court has previously found sufficient to support an award of fees even under the stricter pre-*Octane* standard. *Eon-Net*, 653 F.3d at 1326. As the Court explained in *Eon-Net* in awarding fees on the basis of a very similar nuisance-value settlement strategy:

> Viewed against Eon–Net's $25,000 to $75,000 settlement offer range, it becomes apparent why the vast majority of those that Eon–Net accused of infringement chose to settle early in the litigation rather than expend the resources required to demonstrate to a court that the asserted patents are limited to processing information that originates from a hard copy document. Thus, those low settlement offers—less than ten percent of the cost that Flagstar expended to defend suit—effectively ensured that Eon-Net's baseless infringement allegations

> remained unexposed, allowing Eon–Net to continue to collect
> additional nuisance value settlements.

*Id*. at 1327.  *Eon-Net* found this conduct to be baseless and engaged in in bad faith

under *Brooks Furniture*.  It is surely "exceptional" under *Octane Fitness*.

## IV.   ADJUSTACAM'S INFRINGEMENT ARGUMENTS ARE NOT REASONABLE

As it argued in the district court, AdjustaCam contends that its patent

enforcement against the Accused Ball-and-Socket Products is "reasonable"

because a single ball and socket joint is really "two distinct joints" that can be

viewed as two "functionally independent joints."  Adj. Br. at 16, 26, 39.  But the

claims do not permit such a reading.  As claimed, the '343 Patent requires the

camera and support frame each to rotate about only a single axis of rotation.

Newegg Br. at 10-12, 14-15; '343 Patent, Claim 1 ("a hinge member adapted to be

rotatably attached to the camera, said camera, when the hinge member is so

attached, *rotating, about a first axis of rotation*, relative to said hinge member"); *id*

("a support frame rotatably attached to said hinge member . . . , said hinge member

*rotating about a second axis of rotation* relative to said support frame"); A0022

(district court explaining that "[t]he claims plainly describe *each* 'rotatably

attached' object [i.e., the camera and support frame] as rotating about a single

axis").

AdjustaCam cannot deny that the Accused Ball-and-Socket Products,

"constrained" or otherwise, are able to rotate about more than one axis.

AdjustaCam's own expert admitted that the camera in the Accused Ball-and-Socket Products can rotate about *at least three distinct axes*. Newegg Br. at 16; A0485-86 ("This happens to be a constrained ball and socket joint. So [the camera] can [1] spin about the axis, it can [2] move forward, it may be able to [3] move to the side.").

The two exemplary Accused Ball-and-Socket Products called out on pages 41 and 42 of AdjustaCam's brief, with color-coded arrows, still fail to establish any reasonable basis for infringement. In these examples, the blue arrows are the accused "first axis" about which the camera rotates with respect to the accused hinge member (indicated by the green arrow). Newegg agrees that these accused cameras can rotate about the blue axis in an upright twisting motion. By AdjustaCam's own admission, however, the camera can also "tilt" with respect to the accused hinge member. Adj. Br. at 41-42 ("[A]t any tilt axis, the camera always turns on an axis which is perpendicular to the hinge member."). In other words, in the photos shown on pages 41 and 42, the cameras can tilt to the right or left in addition to twisting side-to-side while remaining upright. *See* A1762-63 (expert report explaining that "[t]he structural element that the camera of the Hercules Classic/Deluxe Webcams is mounted on rotates relative to the camera clip in multiple axes of rotation via a ball-and-socket joint."). This dual-rotation of

the camera with respect to the accused hinge member alone takes these accused products outside the scope of the claims.[3]

## V.    ADJUSTACAM'S VALIDITY ARGUMENTS ARE NOT REASONABLE

AdjustaCam argues that its validity positions are reasonable, and specifically posits that this Court should affirm because "there was no finding by the District Court that AdjustaCam's arguments were improper or baseless." Adj. Br. at 43. In fact, there was *no finding at all* by the district court regarding Newegg's invalidity arguments. The district court's decision fails to mention the substance or merits of Newegg's contentions regarding the Irifune publication in its decision even though those arguments were fully briefed before the district court. *See* A0004-11 (stating, without any explanation, that "[d]efendants also have failed to demonstrate that AdjustaCam's validity arguments were baseless"). This alone means that the district court failed to consider "the totality of the circumstances" as required by *Octane Fitness*. 134 S. Ct. at 1756. Thus, this Court cannot affirm the

---

[3] AdjustaCam incorrectly suggests that Newegg is making a new argument on appeal that the accused products lack the claimed "hinge member." Adj. Br. at 40. Newegg's comments in its opening brief were not offered to raise a new basis for showing non-infringement and exceptionality. Newegg was clarifying its existing arguments by explaining *why* the '343 Patent claims could not be mapped to the accused products as having two distinct axes of rotation, both with respect to the claimed hinge member. Newegg Br. at 13 (explaining that "[t]he use of a ball-and-socket joint between [the camera and the support frame] eliminates the need for a third element—an intermediate hinge member—as claimed in the '343 Patent. A ball-and-socket camera is simply an inapt product to accuse given the precisely claimed three-part camera of the '343 Patent and its limited rotation capabilities.").

district court's judgment as AdjustaCam urges but must, at a minimum, remand for reconsideration. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014).

In fact however, remand would be futile and wasteful, as it would be an abuse of discretion not to find AdjustaCam's validity arguments frivolous. AdjustaCam contends that "Irifuni lacks a 'rotatable attachment' because the camera either has to be screwed tightly down, in which case it is not rotatable, or it has to be loosely appended via an unthreaded hole, in which case it is not attached." Adj. Br. at 45. That is simply not true. A partially screwed down camera is both "attached" and "rotatable"—it is "rotatably attached" to the mounting device under the plain language of the claims and under AdjustaCam's own proposed construction ("connected such that the connected object is capable of being rotated"). A0020. Anybody who has ever screwed a bottle cap onto a bottle knows that even a partially closed bottle still has its cap both connected to the bottle and rotatable. Yet, in AdjustaCam's view, "the *only way* to connect the Irifuni to its hinge member was to screw it down tightly such that it could not rotate." Adj. Br. at 45. This argument also supposes that a camera being fully screwed down becomes physically incapable of rotation, which is plainly false because a camera that can be tightened in this fashion can be untightened by counter-rotation. Indeed, if AdjustaCam's view of "rotatably attached" were

correct, the following threaded adjustable barstool seat would be neither "rotatable" nor "attached," but of course it is both:[4]



AdjustaCam's arguments concerning Irifune are frivolous, and especially so in the post-*KSR* landscape where "common sense" prevails. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). Thus, even were AdjustaCam to have taken a reasonable claim construction position, its case overall was still meritless.

## VI.    THERE IS NO NEED FOR A REMAND IN THIS CASE

Because of the intervening change in law, this Court cannot affirm the district court's determination under the now-overruled *Brooks Furniture* standard.

---

[4]    Image Source: http://www.decorpad.com/look-4-less/925/Industrial-Barstool-Look-4-Less (last visited November 12, 2014).

At a minimum, this Court should remand the case to the district court for reconsideration under *Octane Fitness*.  The mere fact that the district court did not apply the *Octane Fitness* standard when ruling on Newegg's fee motion constitutes an abuse of discretion that requires at least a remand.  *Highmark,* 134 S. Ct. at 1748 n. 2 ("'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .'") (quoting *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

But there is no need for a remand in this case.  The facts of the case unambiguously demonstrate its exceptionality.  AdjustaCam advanced obviously incorrect arguments, maintained those arguments even after losing on claim construction, and conducted the entire case with an eye towards nuisance-value litigation cost settlements rather than any genuine effort to prevail on the merits.  It would be an abuse of discretion to deny fees on those facts under the *Octane Fitness* standard.[5]

---

[5]  A remand is also inappropriate because, to date, the Eastern District of Texas does not appear to have been exercising the discretion *Highmark* affords to decide cases on their individual facts.  *Octane Fitness* was clearly intended to make it easier for prevailing defendants to recover their attorneys' fees.  *Octane Fitness*, 134 S.Ct. at 1757 (rejecting *Brooks Furniture* as "too restrictive").  And in the wake of *Octane Fitness*, most district courts have been willing to grant fees to prevailing defendants in appropriate cases, doing so in 14 out of 34 cases—a marked increase in fee shifting over the pre-*Octane Fitness* status quo.  But, as it did in the year preceding *Octane Fitness*, the Eastern District of Texas has denied defendants' fee requests in *every single case* to come before it despite the new, more equitable standard.

## VII. ADJUSTACAM PROVIDES NO AUTHORITY THAT WOULD ALLOW THIS COURT TO HEAR ITS CLAIM CONSTRUCTION APPEAL

This Court has no jurisdiction to hear AdjustaCam's claim construction appeal because no case or controversy has existed between the parties since the case was dismissed. Newegg Br. at 51-54.[6] AdjustaCam dismissed its lawsuit against Newegg with prejudice. It did not, as is common, seek a stipulated judgment from the district court that preserved its right to appeal claim construction. Rather, having put Newegg to the time and expense of defending a meritless case, it simply chose to walk away. It is black-letter law that a voluntary dismissal with prejudice bars a party from thereafter raising the same arguments it voluntarily abandoned. 8-41 Moore's Federal Practice - Civil § 41.40[7][e] (2014) ("[T]he courts are unanimous in holding that the claims voluntarily dismissed may not be reviewed or revived on appeal."); *cf. id.* § 41.33[8][a] (2014) ("A plaintiff should not ordinarily be able to appeal from a voluntarily noticed dismissal with prejudice, which operates as an adjudication on the merits.").

Because AdjustaCam cannot sue Newegg for infringement of this patent after having dismissed its claim with prejudice, there is no live controversy for this

---

[6] Newegg would not ordinarily respond on a matter implicating AdjustaCam's affirmative appeal in Newegg's reply brief. Here, however, AdjustaCam's opening brief included only a conclusory allegation of jurisdiction and its opposition brief raised several entirely new arguments that should have been made, if at all, in its opening brief. Thus, Newegg believes that its response submitted here is appropriate so that the Court has the benefit of the issues being fully briefed.

Court to review concerning the district court's construction of its patent claims. Even if there was somehow an extant controversy despite AdjustaCam's dismissing its entire case against Newegg with prejudice, AdjustaCam made no effort to preserve its allegations of claim construction error for appeal.

Instead of conceding the inevitable dismissal of its appeal for lack of jurisdiction, AdjustaCam's opposition brief cherry-picks statements from various cases to present a tortured and facially wrong argument. This desperate attempt to preserve a frivolous appeal cites not a single case that is even remotely analogous to the present situation, and fails to present any plausible basis for jurisdiction. It is indicative of the exceptional nature of this entire case, and itself justifies an award of sanctions from this Court for a frivolous appeal.

The fact that Newegg's appeal of the denial of its fees motion is largely based on the unreasonableness of AdjustaCam's claim construction position regarding "rotatably attached" does not make up for the total absence of any live dispute over whether Newegg infringes AdjustaCam's patent. Because AdjustaCam no longer accuses Newegg of any infringement, there is no remaining controversy to confer this Court with jurisdiction to review the district court's claim constructions. *See, e.g, SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1354 (Fed. Cir. 2012) (holding that claim constructions cannot be reviewed on appeal "[w]ithout a final judgment as to the infringement or validity of these

18

claims"); *Jang v. Boston Sci. Corp.,* 532 F.3d 1330, 1336 (Fed. Cir. 2008) (holding that construction issues "that do not actually affect the infringement controversy between the parties" cannot be addressed on appeal).

Nevertheless, according to AdjustaCam, the mere presence of a final judgment and a dismissal with prejudice is enough to make *any* decision by a district court properly appealable. Adj. Br. at 58 (arguing that "an appeal from a final judgment brings before the appellate court all underlying issues in a case") (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)); *id.* at 57 (arguing that a dismissal with prejudice gives this Court jurisdiction to hear "all appeals on all issues") (citing *Chamberlain Group, Inc., v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1190 (2004)).

But the *Firestone* line of cases cited by AdjustaCam (Adj. Br. at 58) merely note the existence of the "final judgment rule," which generally prohibits appeals until the litigation on the merits has concluded at the district court. 449 U.S. at 373-74 (explaining that the rule avoids piecemeal appeals and promotes judicial efficiency). The final judgment rule does not mean that entry of a final judgment resurrects all previously mooted claims, as AdjustaCam contends. Adj. Br. at 58.

When this Court in *Chamberlain* noted that, incident to a dismissal with prejudice of a patent infringement claim, it could hear "all appeals on all issues," the statement was made in the context of deciding whether non-patent claims also

19

at issue in the case could be appealed to the Federal Circuit.  381 F.3d at 1190 ("[W]henever the complaint included a patent claim and the trial court's rulings altered the legal status of the parties with respect to that patent claim, we retain appellate jurisdiction over all pendent claims in the complaint.").  This Court was certainly not abrogating the case or controversy requirement of Article III of the U.S. Constitution, or eliminating the concept of waiver in litigation, merely because the case included a dismissal with prejudice of a patent claim, as AdjustaCam would have the Court conclude.

Finally, when the Supreme Court said that "[t]he controversy therefore remains live" in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., it was not holding that a live controversy exists whenever the parties disagree about a court's ruling, as AdjustaCam suggests.  544 U.S. 280, 291 n.7 (2005); Adj. Br. at 58.  Rather, the Court was simply referring to the fact that the respondent was continuing to challenge a parallel state court judgment with a petition for certiorari.  *Id.* (holding that the case was not moot because "SABIC continues to oppose the Delaware judgment . . . and has represented that it will petition this Court for a writ of certiorari").  Unlike AdjustaCam in this case, the respondent in *Exxon* was actively challenging adverse judgments relating to issues that were not voluntarily dismissed and were not waived by inaction.

AdjustaCam's position is truly radical. On its view of the world, a party could settle a case after an adverse claim construction and then decide to appeal that claim construction notwithstanding the settlement. Many parties may well want this Court to issue an advisory opinion on how their claims should be construed. But if they are not willing to continue litigating the case, Article III affords them no opportunity to obtain such an opinion.

## CONCLUSION

The judgment of the district court should be reversed, this case should be declared exceptional, and the case should be remanded to the district court to order payment by AdjustaCam of the attorneys' fees and expert fees owed to Newegg.

AdjustaCam's appeal should be dismissed for lack of subject matter jurisdiction, and Newegg should be awarded its fees expended in responding to AdjustaCam's frivolous appeal.

Respectfully submitted,

Dated: November 24, 2014

By: /s/ Daniel H. Brean
Kent E. Baldauf, Jr.
Daniel H. Brean
Anthony W. Brooks
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd.
Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

Mark. A. Lemley
Laura E. Miller
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

Yar R. Chaikovsky
McDERMOTT, WILL & EMERY
275 Middlefield Rd., Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7447

*Counsel for Defendants-Cross-Appellants*
*Newegg, Inc. Newegg.com, Inc., and*
*Rosewill, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on November 24, 2014, copies of the foregoing Reply

Brief of Defendant-Cross-Appellants was served on counsel for Plaintiff-Appellant

AdjustaCam, LLC and counsel for Defendant-Cross-Appellant Sakar International,

Inc. via the Court's ECF system and via electronic mail upon the following:

> John J. Edmonds (jedmonds@cepiplaw.com)
> Shea Neal Palavan (spalavan@cepiplaw.com)
> Stephen F. Schlather (sschlather@cepiplaw.com)
> COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER PLLC
> 1616 South Voss Road
> Houston, TX 77057
>
> Ezra Sutton, Attorney (esutton@ezrasutton.com)
> EZRA SUTTON, P.A.
> Suite 201
> 900 Route 9
> Woodbridge, NJ 07095

/s/ Daniel H. Brean
*Counsel for Defendants-Cross-Appellants*
*Newegg, Inc. Newegg.com, Inc., and*
*Rosewill, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Argument on page 1, and ending with the last line of the conclusion on page 21, including headings, footnotes, and quotations, is written in Times New Roman, size 14-point font, and contains 4,945 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).

/s/ Daniel H. Brean
*Counsel for Defendants-Cross-Appellants*
*Newegg, Inc. Newegg.com, Inc., and*
*Rosewill, Inc.*