## VOLUME III OF III (PAGES A02449 – A3670)

### 2013-1665, -1666, -1667

#### United States Court of Appeals for the Federal Circuit

ADJUSTACAM, LLC,

*Plaintiff-Appellant,*

v.

NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.,

*Defendants-Cross-Appellants,*

and

SAKAR INTERNATIONAL, INC.,

*Defendants-Cross-Appellant,*

*Appeals from the United States District Court for the Eastern District of Texas in Case No. 10-cv-329, Chief Judge Leonard Davis*

## CORRECTED NON-CONFIDENTIAL JOINT APPENDIX

Date:  December 11, 2014

John J. Edmonds
Stephen F. Schlather
Shea N. Palavan
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone:  (281) 501-3425

*Attorneys for Plaintiff-Appellant
AdjustaCam, LLC*

Kent E. Baldauf, Jr.
Daniel H. Brean
Anthony W. Brooks
THE WEBB LAW FIRM
One Gatewar Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-885

*Attorneys for Defendant-Cross-
Appellants Newegg, Inc., Newegg.com,
Inc. and Rosewill, Inc.*

Ezra Sutton
EZRA SUTTON, P.A.
900 Route 9, Suite 201
Woodbridge, NJ 07095
Telephone: (732) 634-3520

*Attorneys for Defendant-Cross-
Appellants Sakar International, Inc.*

*AdjustaCam LLC v. Newegg, Inc., et al.*

Fed. Cir. Appeal Nos. 2013-1665, -1666, -1667

### INDEX OF NON-CONFIDENTIAL JOINT APPENDIX

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|------|---------|-------|---------------|
| 08/20/2013 | 762 | FINAL JUDGMENT that the parties take nothing and that all pending motions are DENIED AS MOOT | **A0001** |
| 08/19/2013 | 761 | ORDER denying 727 Sealed Motion for Declaration of Exceptional Case; denying 748 Sealed Motion for Declaration of Exceptional Case | **A0004** |
| 06/07/2012 | 650 | ORDER overruling pltf's objections 629 and defts' objections 632 , and adopting 627 Memorandum Opinion and Order of the US Magistrate Judge as the Opinion of this Court | **A0012** |
| 04/10/2012 | 627 | MEMORANDUM OPINION AND ORDER. The Court interprets the claim language in this case in the manner set forth in this Order | **A0013** |
| | | Entire Docket Sheet from the Proceedings Below | **A0028** |
| | | U.S. Patent No. 5,855,343 | **A0164** |
| 03/31/2014 | 782 | ORDER Granting Motion to Withdraw Motion to Correct or to Amend Judgment | **A0176** |
| 09/17/2013 | 765 | NOTICE OF APPEAL - FEDERAL CIRCUIT as to 650 Order, 627 Order, 762 Judgment, by AdjustaCam LLC | **A0193** |
| 09/17/2013 | 764 | NOTICE OF APPEAL - FEDERAL | **A0195** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|---|---|---|---|
| | | CIRCUIT as to 761 Order on Sealed Motion, 762 Judgment, by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. | |
| 02/05/2013 | 749 | SEALED RESPONSE to Motion re 748 SEALED MOTION DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES filed by AdjustaCam LLC | **A0257** |
| 01/16/2013 | 748 | SEALED MOTION DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES by Sakar International, Inc. with attachments | **A0285** |
| 12/14/2012 | 744 | Unopposed MOTION to Dismiss claims and counterclaims involving Defendants/Counter-claimants Sakar International, Inc., Kohls Illinois, Inc., Kohls Corporation, Inc. and Kohls Department Stores, Inc. by AdjustaCam LLC | **A0319** |
| 11/07/2012 | 736 | SEALED ADDITIONAL ATTACHMENTS to Main Document | **A0340** |
| 11/07/2012 | 735 | SEALED RESPONSE to Motion re 727 SEALED MOTION For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses filed by AdjustaCam LLC | **A1190** |
| 10/11/2012 | 728 | SEALED ADDITIONAL ATTACHMENTS to Main Document: 727 SEALED MOTION | **A1224** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|---|---|---|---|
| | | For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses | |
| 10/11/2012 | 727 | SEALED MOTION For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. | **A1776** |
| 10/03/2012 | 724 | NOTICE by AdjustaCam LLC of Supplemental Authority in support of its opposed Motion to Dismiss | **A1867** |
| 10/02/2012 | 723 | Proposed Pretrial Order (Joint) by AdjustaCam LLC | **A1873** |
| 09/30/2012 | 721 | Opposed MOTION to Dismiss Remaining Defendants Sakar and Kohl's by AdjustaCam LLC | **A1955** |
| 09/27/2012 | 719 | Unopposed MOTION to Dismiss involving Defendants/Counter-claimants Newegg Inc., Newegg.com Inc., and Rosewill, Inc. by AdjustaCam LLC | **A1986** |
| 08/27/2012 | 678 | Opposed SEALED MOTION TO DISMISS CLAIMS AND COUNTERCLAIMS INVOLVING NEWEGG AND ROSEWILL by AdjustaCam LLC | **A2136** |
| 05/17/2012 | 642 | RESPONSE to 635 Response to Non-Motion,, PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS OBJECTIONS TO THE MAGISTRATES ORDER ON CLAIM CONSTRUCTION by AdjustaCam LLC | **A2171** |
| 05/07/2012 | 635 | RESPONSE to 629 Appeal of Magistrate Judge Decision to District Court by Best Buy | **A2348** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|------|---------|-------|---------------|
| | | Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW, LLC, Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Wal-Mart Stores, Inc. | |
| 04/24/2012 | 629 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by AdjustaCam LLC re 627 Order | **A2436** |
| 03/02/2012 | 614 | OFFICIAL TRANSCRIPT of CLAIM CONSTRUCTION HEARING held on 2/9/12 before Judge John D. Love | **A2610** |
| 01/31/2012 | 601 | REPLY to 595 Claim Construction Brief,,, filed by AdjustaCam LLC | **A2718** |
| 01/17/2012 | 595 | CLAIM CONSTRUCTION BRIEF filed by Amazon.com, Inc., Auditek Corporation, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., | **A2740** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|---|---|---|---|
| | | Wal-Mart Stores, Inc. | |
| 12/19/2011 | 575 | CLAIM CONSTRUCTION BRIEF filed by AdjustaCam LLC | **A2806** |
| 07/02/2010 | 1 | COMPLAINT | **A3670** |

**CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Federal Circuit Rule 28(d)(1)(B), material subject to a protective order entered by a United States District Court has been redacted. Pages noted with "THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE" contain information derived from confidential third party settlement agreements.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ADJUSTACAM, LLC. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CASE NO. 6:10-CV-329** |
| | § | **PATENT CASE** |
| | § | |
| AMAZON.COM, INC., ET AL. | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patent No. 5,855,343 ("the '343 patent"). Plaintiff Adjustacam, LLC ("Adjustacam") and Defendants[1] have presented their claim construction positions. (Doc. Nos. 575, "PL.'S BR.;" 595, "DEF.'S RESP.," 601, "PL.'S REPLY"). On February 9, 2012, the Court held a claim construction hearing and heard further argument (Doc. No. 614). For the reasons stated herein, the Court adopts the constructions set forth below.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad*

---

[1] Amazon.com, Inc., Auditek Corp., Best Buy Co., Inc., Best Buy Stores, LP, Bestbuy.com, CDW LLC, CompUSA.com, Inc., Digital Innovations, LLC, Fry's Electronics, Inc., Gear Head, LLC, Hewlett-Packard Co., Kohls, Corp., Kohl's Illinois, Inc., Micro Electronics, Inc. d/b/a Micro Center, New Compusa Corp., Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc., Target Corp., Tigerdirect, Inc., and Wal-Mart Stores, Inc. are referred to collectively as "Defendants."

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own

lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is

indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

### A.    Overview of Patents-in-Suit

The '343 patent, entitled "Camera Clip," is directed at a clip for supporting a portable webcam. *See* '343 patent at ABSTRACT. The claimed apparatus is specifically directed to a structure supporting a webcam both on a flat surface, like a tabletop, and on an edge of a housing, like a laptop computer screen. *Id.* at 1:4–9. The camera clip is also intended to protect the camera lens when the clip is not used as support. *Id.* Figures 2 and 4 of the patent illustrate

the two different configurations of the camera clip, *i.e.*, on a flat surface (Fig. 2) and on an inclined object (Fig. 4):



**B.    Disputed Terms**

"Hinge Member" [cls. 1, 8, 10, 17, 19, 20, and 21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that joins to another for rotation | A structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

The parties generally agree that the "hinge member" is "a structural element that joins to another." The parties, however, disagree whether the hinge member must form a "hinge joint" or can include any form of "joint."

5

Plaintiff's proposed construction evolved over the course of the briefing. Plaintiff ultimately argues that the "hinge member" is not limited to hinge *joints*. Specifically, Plaintiff contends that the claims and specification describe the "hinge member" as both "rotatably attached" and "hingedly attached." Therefore, an object that is "rotatably attached" is necessarily broader than a "hingedly attached" object. PL.'S BR. at 4–8; PL.'S REPLY at 3–4. Plaintiff raises secondary arguments regarding the "rotatably attached" terms and their interplay with the hinge member (*Id*. at 7–8), however, those arguments are discussed in more detail in the section below construing the "rotatably attached" terms.

The claims and the specification of the '343 patent disclose the hinge member as both "rotatably" and "hingedly" attached to another object. For example, claim 1 of the '343 patent describes the support frame as "rotatably attached" to the hinge member. '343 patent at 58–60. On the other hand, claim 19 of the '343 patent describes the support frame as "hingedly attached" to the hinge member. '343 patent at 9:24–26. A plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments.

The specification, moreover, describes embodiments of the hinge member incorporating the concept of pivots and pivoting. *See, e.g.*, 4:44–48 ("It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34."); 5:37–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26."). Therefore, Defendants' proposed

construction limiting the hinge member to hinge *joints* would improperly read out the foregoing preferred embodiments. *See Globetrotter Software, Inc.*, 362 F.3d at 1381.

Defendants' proposed construction would also render the "rotatably attached" terms superfluous by limiting all claimed attachments to "hinged" attachments. Such a result is untenable. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of claim construction that would render additional, or different, language in another independent claim superfluous.") (quoting *Fantasy Sports Props. v. Sportsline.com*, 287 F.3d 1108, 1115-16(Fed. Cir. 2002)). Defendants' proposed construction is also unnecessarily permissive because it describes the hinge member as a structural element that *may* be joined to another. Neither the specification nor claims teach a permissive attachment and such a construction would not meaningfully limit the claims.

As Defendants advocate, the claimed "hinge member" indeed may include a hinge joint. However, the claims and the specification disclose that the hinge member is not limited to hinge joints. Had the patentee intended to limit the patent in such a way, he or she: (1) could have simply used the term hinge *joint*, and not the broader term *member*; or (2) would have used "hingedly" to describe all the attachments in the claims. Therefore, the Court construes "hinge member" as "a structural element that joins to another for rotation."

<u>"Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach"</u> [cls. 1, 10, 19, 20, and 21]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Connected such that the connected object is capable of being rotated | Connected such that the connected object is capable of being adjusted to different configurations via motion over one axis of rotation |

The crux of the parties disagreement is whether the '343 patent claims allow for a "rotatably attached" object to rotate over more than a single axis. Plaintiff contends that "rotatably attached" objects are not limited to one axis of rotation, while Defendants advocate for the contrary.

The Court finds that the claims of the '343 patent describe "rotatably attached" objects as rotating over a single axis. For example, claim 1 explains that when the hinge member is "rotatably attached" to the camera, it rotates "about a first axis of rotation." '343 patent at 6:54–57. Claim 1 further describes that when the hinge member is rotatably attached to the support frame, it rotates "about a second axis of rotation." *Id.* at 6:58–65. In other words, in claim 1, the hinge member may rotate about a single axis relative to the camera and a single axis relative to the support frame, and the two axes are "generally perpendicular" to one another. *Id.* All of the remaining claims that discuss "rotatably attached" objects are consistent with this understanding. *See, e.g.*, '343 patent at 7:60–67 ("[A] hinge member . . . rotatably attached to the camera . . . rotating[] about a first axis of rotation" and "a support frame rotatably attached [to the] hinge member . . . [with] the hinge member rotating about a second axis of rotation to said support frame."); 9:20–32 ("[A] hinge member adapted to be rotatably attached to the camera . . . rotating about a first axis of rotation."); 9:35–47 (same); 10:16–45 (same).

8

The specification is consistent with the claims in disclosing the camera and support frame rotating over a first and second axis of rotation. *See, e.g.*, 2:12–18 ("The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation"); 4:17–19 ("Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26."). Every reference to a "rotatably attached" object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.

Plaintiff contends that that claims refer to the apparatus as "comprising" a first and second axis of rotation; therefore, Plaintiff argues that the use of "comprising" broadens the claims to allow attachments which rotate over multiple axes. PL.'S BR. at 7. Plaintiff is mistaken. For example, claim 1 recites:

> **1**. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on
> 50 an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:
>
> a. a hinge member adapted to be rotatably attached to the
> 55 camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and
>
> b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the
> 60 surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first
> 65 surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

'343 patent at 6:49–7:6. "Comprising" appears before the individual elements of the claimed camera clip, *i.e.*, the hinge member and support frame. Therefore, the word "comprising" may suggest that other elements exist beyond the *hinge member* and *support frame*. However, the term "comprising" does not render each and every word in the claim open-ended as Plaintiff suggests. Plaintiff's position would render the claim language meaningless.

Plaintiff further contends that the rotatable attachment between the hinge member and the camera is a "pivot joint"; therefore, limiting the rotation about a single axis would exclude a preferred embodiment. Pʟ.'s Bʀ. at 8. Even assuming the specification does disclose a pivot joint, limiting the *rotation* around a single axis would not read out the embodiment. A pivot joint allows for rotation and the specification explicitly describes the "pivot element" as rotating around a *single* axis of rotation. *See, e.g.*, '343 patent at 5:38–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about *first axis* 26.") (emphasis added).

On the other hand, Defendants' proposed construction merely restates what is already contained in the claims. The claims plainly describe each "rotatably attached" object as rotating about a single axis and any further construction would only serve to confuse the jury. In other words, Defendants' construction merely repeats the claim language. Therefore, the Court finds that the "rotatably attached" terms do not require construction beyond what is contained in the claims. While the Court has not explicitly construed the "rotatably attached" terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, *i.e.*, "rotatably attached" objects in the patent-in-suit are limited to a single axis of rotation. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When

the parties raise an actual dispute regarding the proper scope of the claims, the court, not the jury, must resolve that dispute."). Therefore, the parties may not contradict the Court's resolution of that dispute.

"Support Frame" [cls. 1–8, 10, 11, 13–17, and 19–21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| A structural element that supports a hinge member | A physically distinct structural element whose different dispositions enable support of said hinge member |

Plaintiff and Defendants both propose functional constructions to the extent that they agree that the intended purpose of the support frame is to support the hinge member.[2]  Indeed, the function of the support frame is explicitly recited in the claims.  *See, e.g.*, 6:57–59 ("[A] support frame rotatably attached to said hinge member and configured to support said hinge member.").  Defendants, however, argue that the claim language specifically links the ability of the support frame to provide support on particular structural arrangements, specifically the "first disposition" and "second disposition."  DEF.'S RESP. at 8.  Plaintiff disagrees that the different dispositions enable support of the hinge member and argues that the specification and claims generally provide the relevant structure of the support frame. PL.'S REPLY at 1–2.

The claims of the '343 patent describe two general structural arrangements of the support frame.  For example, claim 1 of the '343 patent describes the support frame as supporting the camera on a horizontal surface and an inclined object. '343 patent at 6:58–7:2. The specification is consistent with this understanding of the claims. *See, e.g.*, '343 patent at 2:1–2 ("The clip may be rotated to a first position to support the camera on a surface of a table or desk.  The clip may

---

[2] The parties agree that the "support frame" is a "structural element that supports" the claimed hinge member. PL.'S REPLY at 1.  While not explicitly contained in Plaintiff's proposed construction, Plaintiff also agrees that the support frame is distinct from and not part of the hinge member.  *Id.*  Thus, the parties only dispute is related to the whether the support frame is limited to specific structural arrangements, namely, the "different dispositions."

be rotated to a second position to support the camera on a display screen of a laptop computer."); 2:24–26 ("[T]he rear support element and the first and second front support elements support the camera in the first position"); 2:39–41 ("[T]he rear support element and the first and second front support elements support the camera in a second position on the first surface"); 4:48–54 (same); 5:2–14 (same).   Therefore, the claims and the specification identify the first and second disposition as particular structural arrangements of the support frame.

Plaintiff and Defendants generally agree that the structure of the support frame is provided in the specification and claims. PL.'S BR. at 10; PL.'S REPLY at 1–2.  Plaintiff, however, proposes a construction that ignores the different structural arrangements of the support frame, *i.e.* different dispositions.   On the other hand, Defendants' construction unnecessarily requires the actual dispositions of the support frame to functionally provide the support frame its ability to "support."   The claims are not limited to the extent that "the different dispositions *enable* support" of the hinge member.

Support frame is an easily understood term and its function and structure are defined in the claims.  While the support frame must allow for two structural arrangements as described in the claims, the ability to support the hinge member is not directly linked to the two structural arrangements.  As such, the Court finds that "support frame" is sufficiently defined in the claims and no construction is necessary.  Nevertheless, the Court has resolved the parties' dispute regarding the scope of the claims. *See O2 Micro*, 521. F.3d at 1360.

"Disposition" [cls. 1, 2, 5, 6, and 10]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; alternatively, configuration or arrangement | Configuration of the support frame enabling support of the hinge member, accomplished through rotation about the second axis |

Beyond an agreement that a disposition is a "configuration," the parties' proposed constructions wildly diverge. Plaintiff contends that "disposition" is an easily understood term and does not require construction beyond its plain and ordinary meaning. Defendants argue that a "disposition" is a functional configuration of the "support frame" and such function can only be accomplished through rotational motion through the second axis. DEF.'S RESP. at 11–13.

A plain reading of the claims discloses that the support frame has two "dispositions" or configurations, one allowing for the apparatus to be placed on a generally flat surface, the second allowing for the apparatus to be attached to an inclined object. Defendants appear to contend that these "dispositions" may only be functionally accomplished through rotational motion of the support frame about the second axis. DEF.'S RESP. at 12. On the contrary, the claims describe the hinge member, not the support frame, as rotating about the second axis. *See, e.g.*, '343 patent at 6:60–61 ("[S]aid hinge member rotating about a second axis of rotation."). Further, the first clause of Defendants' proposed construction is merely a second bite at the same argument they advanced in construing "support frame." The claims, however, do not require the specific *dispositions* of the support frame to enable support of the hinge member.

Defendants appear to be masquerading a noninfringement position as an issue of claim construction by injecting rotation into an easily understood structural term. Accordingly, the Court construes "disposition" as "a configuration or arrangement of the support frame."

13

**CONCLUSION**

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 10th day of April, 2012.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Claim Term | Court's Construction |
|---|---|
| Hinge member | a structural element that joins to another for construction |
| Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Support Frame | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Disposition | a configuration or arrangement of the support frame |

US005855343A

# United States Patent [19]

## Krekelberg

[11] Patent Number: 5,855,343

[45] Date of Patent: Jan. 5, 1999

[54] **CAMERA CLIP**

[75] Inventor: **David E. Krekelberg**, Minnetonka, Minn.

[73] Assignee: **iREZ Research, Corporation**, Minnetonka, Minn.

[21] Appl. No.: **814,168**

[22] Filed: **Mar. 7, 1997**

[51] Int. Cl.⁶ .................................................. **A47G 29/00**

[52] U.S. Cl. .......................... **248/121**; 248/126; 248/918

[58] Field of Search .................................... 248/121, 126, 248/440.1, 166, 176.1, 688, 918; 224/908; 396/421, 422, 423, 424, 425, 426, 427, 428

[56] **References Cited**

U.S. PATENT DOCUMENTS

1,208,344  12/1916  McAll ........................................ 248/126

Primary Examiner—Ramon O. Ramirez
Assistant Examiner—Long Dinh Phan
Attorney, Agent, or Firm—Nawrocki, Rooney & Sivertson, P.A.

[57] **ABSTRACT**

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

**21 Claims, 2 Drawing Sheets**



**U.S. Patent**          Jan. 5, 1999          Sheet 1 of 2          **5,855,343**



Fig. 1

Fig. 2

Fig. 3

Fig. 4

**U.S. Patent**          Jan. 5, 1999          Sheet 2 of 2          **5,855,343**



*Fig. 5*



*Fig. 6*

*Fig. 7*

5,855,343

## 1

## CAMERA CLIP

### FIELD OF THE INVENTION

This invention relates to a clip for holding a camera. More particularly it relates to a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

### BACKGROUND OF THE INVENTION

With portable cameras, it is desirable to have an apparatus which can support the camera in any number of desired configurations. The apparatus must easily accommodate repositioning the camera to new orientations during use, and must be easily transportable. This is especially true when using the camera with a portable computer, such as a laptop computer. With increasing improvements in technology, both the laptop computer and camera have become smaller over time, emphasizing the need for a compatible camera support apparatus. The camera support apparatus must be versatile, light in weight, and be easily transportable to accommodate the new camera and laptop designs, and must desirably facilitate easy and safe storage of the camera. Often times portable computers are stored in carry bags which may be fully loaded with other hardware devices, such as disk drives or printers, as well as with personal effects, making for cramped storage conditions. The camera support apparatus must desirably protect the camera from damage during transport under these cramped storage conditions to avoid the necessity for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

### SUMMARY OF THE INVENTION

Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any

## 2

desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on a display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object where the apparatus comprises a hinge member and a support frame. The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member. A support frame is hingedly attached to the hinge member to engagingly support the hinge member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame. The first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object when the hinge member is engagingly supported on the object. In the preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements are engaging the first surface when the first surface is substantially level. In the preferred embodiment, the rear support element and first and second front support elements engage the first surface at three locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface. In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top surface of the table. The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge when the first surface is inclined from the substantially level position. The object has a second surface wherein a thickness between the first surface and the second surface defines an edge therebetween. The camera is maintained adjacent to the edge in the second position where the uppermost portion of the object is the edge. The rear support element engages a first surface and the first and second support elements engage the edge and the second surface. The rear support element and the first and second front support elements, in combination, maintain the camera adjacent the edge and prevent rotation of the support frame along an axis substantially parallel to the second axis where the second axis is substantially parallel to the edge. In a preferred embodiment, the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface. A center of gravity of the camera and the hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance prevents rotation of the support frame along the axis substantially parallel to the second axis of rotation. In the preferred embodiment, when the support frame is in the

5,855,343

3

second position, the object may be a display screen for a laptop computer, where the second surface is the front of the display screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position between and is releasably held by the rear support element and the first and second front support elements. In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements. The first and second front support elements resiliently and outwardly flex to accommodate passage of the housing. The housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably attaches the camera to the body so that the camera rotates about the first axis relative to the body. A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame. In the preferred embodiment, the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

BRIEF DESCRIPTION OF THE DRAWINGS

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

4

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, FIG. 1 is a perspective view of the camera clip invention. FIG. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16. Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32. Second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30 (see also, FIG. 2). Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42. Housing 20 has a first indentation 25 and a second indentation 27 to slidably and fittably receive distal end 41 of first front support element 40 and distal end 43 of second front support element 42 when first front support element 40 and second front support element 42 are rotated in the direction of arrow 34 to engage housing backside 24.

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in the first position 44, on the first surface 36, when rear support element 38, first front support element 40 and second front support element 42 are engaging first surface 36 and first surface 36 is substantially level. In the first position 44, camera 12 may be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

5,855,343

5

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2). In FIG. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween. Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56. Rear support element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60. Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68. Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60. The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18. In the preferred embodiment, object 58 may be a display screen for a laptop computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen. FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18. FIG. 4 further shows camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12. Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12. While the embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated. For example, wiring harness could enter body 74 at a location angularly spaced upward from bore 90.

FIGS. 5–7 show various perspectives of a third embodiment of the present invention. FIG. 5 is a side view, FIG. 6 is a detailed side view showing the lens of the camera being fitably received by the cover, and FIG. 7 is a front view. The third mode of the preferred embodiment of the present invention is shown when camera 12 is rotated about second axis 32 along the direction shown by arrow 34 in a direction from the first front support element 40 and the second front support element 42 towards rear support element 38 of support frame 18. This rotation is continued in this third mode until camera 12 is in a position between rear support element 38 and first front support element 40 and second front support element 42. In this

6

position, distal end 41 of first support element 40 and distal end 43 of second front support element 42 slidably and fittably engage first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. Camera 12 is then releasably held between rear support element 38 and first front support element 40 and second front support element 42. Rear support element 38 further has means to protect a lens 22 of camera 12, which is cover 90. Cover 90 is mounted at a distal end 92 of rear support element 38. Lens 22 of camera 12 faces in the direction of arrow 92, which is the direction of rotation about second axis 32 from first front support element 40 and second front support element 42 to rear support element 38 of support frame 18. Cover 90 fitably receives lens 22 of camera 12. Cover 90 has a raised portion 95 sized to be accommodated by lens 22 of camera 12. Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

FIG. 3 is a detailed front view of the camera clip invention. FIG. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94. Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment. Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20. Housing 20 is releasably held once passing between first front support element 40 and second front support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

What is claimed:

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

   a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

   b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially

5,855,343

7

planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

2. Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, the support frame being in the first disposition on the generally horizontal, substantially planar surface when said first extremities of said first portion and said second portion are engaging the generally horizontal, substantially planar surface, and the support frame being in the second disposition on the object when said first portion is engaging the first surface and said second portion is engaging the second surface, said first portion and said second portion in combination maintaining the camera adjacent the edge.

3. Apparatus according to claim 2 wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

4. Apparatus according to claim 3 wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

5. Apparatus according to claim 2 wherein the support frame is in the first disposition when the first portion and the second portion engage the generally horizontal, substantially planar surface at three or more locations in a common plane, thereby preventing rotation of the support frame relative to the generally horizontal, substantially planar surface in any direction.

6. Apparatus according to claim 2 wherein the support frame is in the second disposition when a first distance from the edge to a location where the first portion engages the first surface is greater than a second distance from the edge to a location where the second portion engages the second surface, thus preventing rotation of the support frame.

7. Apparatus according to claim 1 wherein the object is a display screen for a laptop computer, and the second surface is the front of the display screen and the first surface is the back of the display screen.

8. Apparatus according to claim 1 wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame.

9. Apparatus according to claim 8 wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

10. Apparatus for supporting a camera, having a housing and a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the first surface and the object, said hinge member rotating about a second axis of rotation relative to said support

8

frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, the support frame having a rear support element and a first and a second front support element, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when the first surface is inclined from a substantially horizontal position so that an uppermost extremity of the object is the edge, the support frame being maintained in said second disposition by said rear support element engaging said first surface and said first and second front support elements engaging the second surface, said rear support element and said first and second front support elements in combination preventing rotation of the support frame.

11. Apparatus according to claim 10 wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

12. Apparatus according to claim 11 wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

13. Apparatus according to claim 11 wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

14. Apparatus according to claim 10 wherein the support frame is in the first disposition when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface at three or more locations in a common plane of the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

15. Apparatus according to claim 10 wherein the support frame is in the first disposition positioned on the generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

16. Apparatus according to claim 10 wherein support frame is in the second disposition when a first distance from the edge to a location where the rear support element engages the first surface is greater than a second distance from the edge to a location where the first and second front support elements engage the second surface, the first dis-

5,855,343

9

10

tance being greater than the second distance thus preventing rotation of the support frame.

17. Apparatus according to claim **10** wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

18. Apparatus according to claim **17** wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

19. A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member;

and

b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a second axis relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge.

20. Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

21. Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member;

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

\* \* \* \* \*

Case 6:10-cv-00329    PageID #: 4933

08/814168

Subclass    12

ISSUE CLASSIFICATION    SCANNED

Class    248

5855343

5855343

| UTILITY SERIAL NUMBER 08/814168 | PATENT DATE JAN 05 1999 | PATENT NUMBER |
|---|---|---|

| SERIAL NUMBER 08/814,168 | FILING DATE 03/07/97 | CLASS 248 | SUBCLASS | GROUP ART UNIT 3505 | EXAMINER Pha |
|---|---|---|---|---|---|

**APPLICANTS**

DAVID E. KREKELBERG, MINNETONKA, MN.

**CONTINUING DATA***********************
VERIFIED    NONE
LDP

**FOREIGN/PCT APPLICATIONS**************
VERIFIED    NONE
LDP

FOREIGN FILING LICENSE GRANTED 10/06/97    ***** SMALL ENTITY *****

| Foreign priority claimed 35 USC 119 conditions met | ☐ yes ☑ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| Verified and Acknowledged | ☐ yes ☑ no   Examiner's initials | ▶ | MN | 5 | 21 | 2 | $516.00 | 19239/103;?? |

**ADDRESS**

LAWRENCE M NAWROCKI
NAWROCKI RODNEY & SIVERTSON
BROADWAY PLACE EAST SUITE ???
3433 BROADWAY STREET NORTH???
MINNEAPOLIS MN 55413

**TITLE**

CAMERA CLIP

U.S. DEPT. OF COMM./ PAT. & TM—PTO-436L (Rev.12-94)

| PARTS OF APPLICATION FILED SEPARATELY | | Applications Examiner |
|---|---|---|

| NOTICE OF ALLOWANCE MAILED | LONG DINH PHAN | CLAIMS ALLOWED | |
|---|---|---|---|
| 7/15/98 | Assistant Examiner    LDP | Total Claims 21 | Print Claim |

| ISSUE FEE | | DRAWING | | |
|---|---|---|---|---|
| Amount Due 660.00 | Date Paid 10/20/98 | Sheets Drwg. 2 | Figs. Drwg. 7 | Print Fig. 2 |

+3632
Primary Examiner

| | ISSUE BATCH NUMBER 654 |
|---|---|

Label Area

PREPARED FOR ISSUE

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S Patent & Trademark Office is restricted to authorized employees and contractors only

Form PTO-436A (Rev. 8/92)

SCAN 6

ADJCAM000009

A2472

Case 6:10-cv-00329-LED   Document 629-3   Filed 04/24/12   Page 2 of 60 PageID #: 4934

# PATENT APPLICATION

08/814168

08814168

APPROVED FOR LICENSE

INITIALS _____

## CONTENTS

**Date Entered or Counted**

**Date Received or Mailed**

| | | |
|---|---|---|
| 1. | *Application* __2__ *papers.* | |
| 2. | *Ltl xeaffees* | 6/25/97 |
| 3. | *Fee + mithing + Leex* | 8/27 |
| 5. | *Re/3 mos* | 2/6/98 |
| 5. | *Eft June (1)* | 6/18/98 gntid |
| 6. | *Amdt A* | 1-12-98 |
| 7. | *E/A, S antercin Summary* | 7/ |
| 8. | *E/A, S Amdt / B* | 7/15/98 |
| 9. | *2     1Sun /4/15/98* | 10-2 |
| | *10-27-98* | |
| 10. | PTO GRANT JAN 0 5 1999 | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| 18. | | |
| 19. | | |
| 20. | | |
| 21. | | |
| 22. | | |
| 23. | | |
| 24. | | |
| 25. | | |
| 26. | | |
| 27. | | |
| 28. | | |
| 29. | | |
| 30. | | |
| 31. | | |
| 32. | | |

(FRONT)

ADJCAM000010

A2473

## SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 248 | 121 | 12/15/97 | LOP |
|  | 126 |  |  |
|  | 440.1 |  |  |
|  | 166 |  |  |
|  | 176.1 |  |  |
|  | 688 |  |  |
|  | 918 |  |  |
| 224 | 908 |  |  |
| 396 | 421 |  |  |
|  | 422 |  |  |
|  | 423 |  |  |
|  | 424 |  |  |
|  | 425 |  |  |
|  | 426 |  |  |
|  | 427 |  |  |
|  | 428 |  |  |
| SEARCH | UPDATED | 06/30/98 |  |

## SEARCH NOTES

|  | Date | Exmr. |
|---|---|---|
| DEMON BROUSE &c | 12/15/98 | LOP |
| CLAS 248 |  |  |
| APS SEARCHED |  |  |
| (AS WITHIN | 06/01/08 |  |
| STAPLED |  |  |
| ( AS ABOVE ) |  |  |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 248 | 121 | 07/07/98 | LOP |
|  | 126 |  |  |
|  | 440.1 |  |  |
|  | 166 |  |  |
|  | 176.1 |  |  |
|  | 688 |  |  |
|  | 918 |  |  |
| 224 | 908 |  |  |
|  | 421 → |  |  |
|  | → 428 |  |  |

(RIGHT OUTSIDE)

ADJCAM000011

| POSITION | ID NO. | DATE |
|---|---|---|
| CLASSIFIER | | |
| EXAMINER | | |
| TYPIST | | |
| VERIFIER | | |
| CORPS CORR. | | |
| SPEC. HAND | | |
| FILE MAINT. | | |
| DRAFTING | | |

## INDEX OF CLAIMS

| Final | Claim Original | | Date | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 01 28 98 | 07 14 99 | | | | | |
| 1 | 1 | ✓ | = | | | | | |
| 2 | 2 | ✓ | = | | | | | |
| | 3 | ✓ | | | | | | |
| 3 | 4 | ✓ | = | | | | | |
| 4 | 5 | ✓ | = | | | | | |
| 5 | 6 | ✓ | = | | | | | |
| | 7 | ✓ | | | | | | |
| 6 | 8 | ✓ | = | | | | | |
| | 9 | ✓ | | | | | | |
| | 10 | ✓ | | | | | | |
| 7 | 11 | ✓ | = | | | | | |
| 8 | 12 | ✓ | = | | | | | |
| 9 | 13 | ✓ | = | | | | | |
| 10 | 14 | ✓ | = | | | | | |
| | 15 | ✓ | | | | | | |
| 11 | 16 | ✓ | = | | | | | |
| 12 | 17 | ✓ | = | | | | | |
| 13 | 18 | ✓ | = | | | | | |
| 14 | 19 | ✓ | = | | | | | |
| 15 | 20 | ✓ | = | | | | | |
| 16 | 21 | ✓ | = | | | | | |
| | 22 | ✓ | | | | | | |
| | 23 | ✓ | | | | | | |
| | 24 | ✓ | | | | | | |
| 17 | 25 | ✓ | = | | | | | |
| 18 | 26 | ✓ | = | | | | | |
| 19 | 27 | | = | | | | | |
| 20 | 28 | | = | | | | | |
| 21 | 29 | | = | | | | | |
| | 30 | | | | | | | |
| | 31 | | | | | | | |
| | 32 | | | | | | | |
| | 33 | | | | | | | |
| | 34 | | | | | | | |
| | 35 | | | | | | | |
| | 36 | | | | | | | |
| | 37 | | | | | | | |
| | 38 | | | | | | | |
| | 39 | | | | | | | |
| | 40 | | | | | | | |
| | 41 | | | | | | | |
| | 42 | | | | | | | |
| | 43 | | | | | | | |
| | 44 | | | | | | | |
| | 45 | | | | | | | |
| | 46 | | | | | | | |
| | 47 | | | | | | | |
| | 48 | | | | | | | |
| | 49 | | | | | | | |
| | 50 | | | | | | | |

| Final | Claim Original | Date | | | | | |
|---|---|---|---|---|---|---|---|
| | 51 | | | | | | |
| | 52 | | | | | | |
| | 53 | | | | | | |
| | 54 | | | | | | |
| | 55 | | | | | | |
| | 56 | | | | | | |
| | 57 | | | | | | |
| | 58 | | | | | | |
| | 59 | | | | | | |
| | 60 | | | | | | |
| | 61 | | | | | | |
| | 62 | | | | | | |
| | 63 | | | | | | |
| | 64 | | | | | | |
| | 65 | | | | | | |
| | 66 | | | | | | |
| | 67 | | | | | | |
| | 68 | | | | | | |
| | 69 | | | | | | |
| | 70 | | | | | | |
| | 71 | | | | | | |
| | 72 | | | | | | |
| | 73 | | | | | | |
| | 74 | | | | | | |
| | 75 | | | | | | |
| | 76 | | | | | | |
| | 77 | | | | | | |
| | 78 | | | | | | |
| | 79 | | | | | | |
| | 80 | | | | | | |
| | 81 | | | | | | |
| | 82 | | | | | | |
| | 83 | | | | | | |
| | 84 | | | | | | |
| | 85 | | | | | | |
| | 86 | | | | | | |
| | 87 | | | | | | |
| | 88 | | | | | | |
| | 89 | | | | | | |
| | 90 | | | | | | |
| | 91 | | | | | | |
| | 92 | | | | | | |
| | 93 | | | | | | |
| | 94 | | | | | | |
| | 95 | | | | | | |
| | 96 | | | | | | |
| | 97 | | | | | | |
| | 98 | | | | | | |
| | 99 | | | | | | |
| | 100 | | | | | | |

SYMBOLS

| ✓ | Rejected |
|---|---|
| = | Allowed |
| — (Through numberal) | Canceled |
| N | Restricted |
| | Non-elected |
| I | Interference |
| A | Appeal |
| O | Objected |

(LEFT INSIDE)

ADJCAM000012

A2475

☆U.S.GOVERNMENT PRINTING OFFICE 1997-430-220

| PATENT NUMBER | ORIGINAL CLASSIFICATION | | | |
|---|---|---|---|---|
| | CLASS 248 | SUBCLASS 121 | | |
| APPLICATION SERIAL NUMBER 08/814,168 | CROSS REFERENCE(S) | | | |
| | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | |
| APPLICANT'S NAME (PLEASE PRINT) DAVID E. KREKELBERG | 248 | 126 | 918 | |
| | | | | |
| IF REISSUE, ORIGINAL PATENT NUMBER | | | | |
| | | | | |
| INTERNATIONAL CLASSIFICATION | | | | |
| A 4 7 G | 29/00 | | | |

| INTERNATIONAL CLASSIFICATION | | | GROUP ART UNIT 3632 | ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME) LONG DINH PHAN |
|---|---|---|---|---|
| A | 4 7 G | 29/00 | | PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME) RAMON O. RAMIREZ |

PTO-270
(REV. 5-91)                    **ISSUE CLASSIFICATION SLIP**                    U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ADJCAM000013

A2476



US005855343A

# United States Patent [19]

## Krekelberg

[11]  Patent Number:     **5,855,343**

[45]  Date of Patent:     **Jan. 5, 1999**

[54]  **CAMERA CLIP**

[75]  Inventor:  **David E. Krekelberg**, Minnetonka, Minn.

[73]  Assignee:  **iREZ Research, Corporation**, Minnetonka, Minn.

[21]  Appl. No.: **814,168**

[22]  Filed:  **Mar. 7, 1997**

[51]  Int. Cl.⁶ ................................ **A47G 29/00**
[52]  U.S. Cl. .................... **248/121**; 248/126; 248/918
[58]  **Field of Search** ...................... 248/121, 126, 248/440.1, 166, 176.1, 688, 918; 224/908; 396/421, 422, 423, 424, 425, 426, 427, 428

[56]              **References Cited**

U.S. PATENT DOCUMENTS

1,208,344  12/1916  McAll ................................ 248/126

Primary Examiner—Ramon O. Ramirez
Assistant Examiner—Long Dinh Phan
Attorney, Agent, or Firm—Nawrocki, Rooney & Sivertson, P.A.

[57]              **ABSTRACT**

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

21 Claims, 2 Drawing Sheets



ADJCAM000014

**U.S. Patent**   Jan. 5, 1999   Sheet 1 of 2   **5,855,343**



Fig. 1

Fig. 2

Fig. 3

Fig. 4

ADJCAM000015

Case 6:10-cv-00329-LED   Document 629-3   Filed 04/24/12   Page 8 of 60 PageID #:  4940

**U.S. Patent**     Jan. 5, 1999     Sheet 2 of 2     **5,855,343**

## Fig. 5



## Fig. 6

## Fig. 7



ADJCAM000016

5,855,343

# 1
## CAMERA CLIP

### FIELD OF THE INVENTION

This invention relates to a clip for holding a camera. More particularly it relates to a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

### BACKGROUND OF THE INVENTION

With portable cameras, it is desirable to have an apparatus which can support the camera in any number of desired configurations. The apparatus must easily accommodate repositioning the camera to new orientations during use, and must be easily transportable. This is especially true when using the camera with a portable computer, such as a laptop computer. With increasing improvements in technology, both the laptop computer and camera have become smaller over time, emphasizing the need for a compatible camera support apparatus. The camera support apparatus must be versatile, light in weight, and be easily transportable to accommodate the new camera and laptop designs, and must desirably facilitate easy and safe storage of the camera. Often times portable computers are stored in carry bags which may be fully loaded with other hardware devices, such as disk drives or printers, as well as with personal effects, making for cramped storage conditions. The camera support apparatus must desirably protect the camera from damage during transport under these cramped storage conditions to avoid the necessity for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

### SUMMARY OF THE INVENTION

Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any

# 2
desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on a display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object where the apparatus comprises a hinge member and a support frame. The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member. A support frame is hingedly attached to the hinge member to engagingly support the hinge member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame. The first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object where the hinge member is engagingly supported on the object. In the preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements are engaging the first surface when the first surface is substantially level. In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface. In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top surface of the table. The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge when the first surface is inclined from the substantially level position. The object has a second surface wherein a thickness, between the first surface and the second surface defines an edge therebetween. The camera is maintained adjacent to the edge in the second position where the uppermost portion of the object is the edge. The rear support element engages a first surface and the first and second support elements engage the edge and the second surface. The rear support element and the first and second front support elements, in combination, maintain the camera adjacent the edge and prevent rotation of the support frame along an axis substantially parallel to the second axis where the second axis is substantially parallel to the edge. In a preferred embodiment, the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface. A center of gravity of the camera and the hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance prevents rotation of the support frame along the axis substantially parallel to the second axis of rotation. In the preferred embodiment, when the support frame is in the

ADJCAM000017

5,855,343

**3**

second position, the object may be a display screen for a laptop computer, where the second surface is the front of the display screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position between and is releasably held by the rear support element and the first and second front support elements. In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second front support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements. The first and second front support elements resiliently and outwardly flex to accommodate passage of the housing. The housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably attaches the camera to the body so that the camera rotates about the first axis relative to the body. A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame. In the preferred embodiment, the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

BRIEF DESCRIPTION OF THE DRAWINGS

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

**4**

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, FIG. 1 is a perspective view of the camera clip invention. FIG. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16. Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32. Second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30 (see also, FIG. 2). Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42. Housing 20 has a first indentation 25 and a second indentation 27 to slidably and fittably receive distal end 41 of first front support element 40 and distal end 43 of second front support element 42 when first front support element 40 and second front support element 42 are rotated in the direction of arrow 34 to engage housing backside 24.

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in the first position 44, on the first surface 36, when rear support element 38, first front support element 40 and second front support element 42 are engaging first surface 36 and first surface 36 is substantially level. In the first position 44, camera 12 may be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

ADJCAM000018

5,855,343

5

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2). In FIG. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween. Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56. Rear support element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60. Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68. Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60. The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18. In the preferred embodiment, object 58 may be a display screen for a laptop computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen. FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18. FIG. 4 further shows camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12. Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12. While the embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated. For example, wiring harness could enter body 74 at a location angularly spaced upward from bore 90.

FIGS. 5–7 show various perspectives of a third mode of the preferred embodiment of the present invention. FIG. 5 is a side view, FIG. 6 is a detailed side view showing the lens of the camera being fitably received by the cover, and FIG. 7 is a front view. The third mode of the preferred embodiment of the present invention is shown when camera 12 is rotated about second axis 32 along the direction shown by arrow 34 in a direction from the first front support element 40 and the second front support element 42 towards rear support element 38 of support frame 18. This rotation is continued in the third mode until camera 12 is in a position between rear support element 38 and first front support element 40 and second front support element 42. In this

6

position, distal end 41 of first support element 40 and distal end 43 of second front support element 42 slidably and fittably engage first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. Camera 12 is then releasably held between rear support element 38 and first front support element 40 and second front support element 42. Rear support element 38 further has means to protect a lens 22 of camera 12, which is cover 90. Cover 90 is mounted at a distal end 92 of rear support element 38. Lens 22 of camera 12 faces in the direction of arrow 92. which is the direction of rotation about second axis 32 from first front support element 40 and second front support element 42 to rear support element 38 of support frame 18. Cover 90 fitably receives lens 22 of camera 12. Cover 90 has a raised portion 95 sized to be accommodated by lens 22 of camera 12. Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

FIG. 3 is a detailed front view of the camera clip invention. FIG. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94. Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment. Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20. Housing 20 is releasably held once passing between first front support element 40 and second front support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

What is claimed:

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

 a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

 b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially

ADJCAM000019

5,855,343

7

planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

2. Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, the support frame being in the first disposition on the generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, substantially planar surface, and the support frame being in the second disposition on the object when said first portion is engaging the first surface and said second portion is engaging the second surface, said first portion and second portion in combination maintaining the camera adjacent the edge.

3. Apparatus according to claim 2 wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

4. Apparatus according to claim 3 wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

5. Apparatus according to claim 2 wherein the support frame is in the first disposition when the first portion and the second portion engage the generally horizontal, substantially planar surface at three or more locations in a common plane, thereby preventing rotation of the support frame relative to the generally horizontal, substantially planar surface in any direction.

6. Apparatus according to claim 2 wherein the support frame is in the second disposition when a first distance from the edge to a location where the first portion engages the first surface is greater than a second distance from the edge to a location where the second portion engages the second surface, thus preventing rotation of the support frame.

7. Apparatus according to claim 1 wherein the object is a display screen for a laptop computer, and the second surface is the front of the display screen and the first surface is the back of the display screen.

8. Apparatus according to claim 1 wherein the hinge member includes a body having a proximal and a distal end,· a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame.

9. Apparatus according to claim 8 wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

10. Apparatus for supporting a camera, having a housing and a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support

8

frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, the support frame having a rear support element and a first and a second front support element, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when an uppermost extremity of the object is the edge, the support frame being maintained in said second disposition by said rear support element engaging said first surface and said first and second front support elements engaging the second surface, said rear support element and said first and second front support elements in combination preventing rotation of the support frame.

11. Apparatus according to claim 10 wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

12. Apparatus according to claim 11 wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

13. Apparatus according to claim 11 wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

14. Apparatus according to claim 10 wherein the support frame is in the first disposition when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface at three or more locations in a common plane of the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

15. Apparatus according to claim 10 wherein the support frame is in the first disposition positioned on the generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

16. Apparatus according to claim 10 wherein support frame is in the second disposition when a first distance from the edge to a location where the rear support element engages the first surface is greater than a second distance from the edge to a location where the first and second front support elements engage the second surface, the first dis-

ADJCAM000020

5,855,343

**9**

tance being greater than the second distance thus preventing rotation of the support frame.

**17.** Apparatus according to claim **10** wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

**18.** Apparatus according to claim **17** wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

**19.** A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge.

**20.** Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said

**10**

support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

**21.** Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

\* \* \* \* \*

ADJCAM000021

Case 6:10-cv-00329-LED   Document 629-3   Filed 04/24/12   Page 14 of 60 PageID #:  4946

PATENT APPLICATION SERIAL NO. __08/874168__

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

10 31 97

PTO-1556
(5/87)

ADJCAM000022

## Abstract of the Disclosure

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

5    The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer.

10    When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

ADJCAM000023

08/814168

05/01/31

## CAMERA CLIP

### Field of the Invention

This invention relates to a clip for holding a camera.
More particularly it relates to a clip for supporting a
5   portable camera either on a surface or on an edge of a
housing, and for protecting the lens of the camera when the
camera is not being supported.

### Background of the Invention

With portable cameras, it is desirable to have an
10   apparatus which can support the camera in any number of
desired configurations.  The apparatus must easily accommodate
repositioning the camera to new orientations during use, and
must be easily transportable.  This is especially true when
using the camera with a portable computer, such as a laptop
15   computer.  With increasing improvements in technology, both
the laptop computer and camera have become smaller over time,
emphasizing the need for a compatible camera support
apparatus.  The camera support apparatus must be versatile,
light in weight, and be easily transportable to accommodate
20   the new camera and laptop designs, and must desirably
facilitate easy and safe storage of the camera.  Often times
portable computers are stored in carry bags which may be fully
loaded with other hardware devices, such as disk drives or
printers, as well as with personal effects, making for cramped
25   storage conditions.  The camera support apparatus must
desirably protect the camera from damage during transport
under these cramped storage conditions to avoid the necessity

ADJCAM000024

for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs

5 which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the

10 collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

15 Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen

20 of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a

25 small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the

2

ADJCAM000025

surface of a desk or table, and vertical surfaces, such as the
display screen of a laptop computer, and to protect the camera
during storage and transport.

### Summary of the Invention

5          Accordingly, it is an object of the invention to provide
a clip for supporting a portable camera either on a surface or
on an edge of a housing, and for protecting the lens of the
camera when the camera is not being supported.  The clip
provides two axis of rotation to position the camera to any
10    desired viewing angle.  The clip may be rotated to a first
position to support the camera on a surface of a table or
desk.  The clip may be rotated to a second position to support
the camera on a display screen of a laptop computer.  When the
camera is not being supported in the first position or the
15    second position, the camera may be rotated to be releasably
held by the clip to protect the camera and lens during
storage.

In a preferred embodiment of the present invention, an
apparatus is provided for supporting a camera on an object
20    where the apparatus comprises a hinge member and a support
frame.  The hinge member is rotatably attached to the camera
where the camera rotates over a first axis of rotation
relative to the hinge member.  A support frame is hingedly
attached to the hinge member to engagingly support the hinge
25    member on the object, where the hinge member rotates over a
second axis of rotation relative to the support frame.  The

3

ADJCAM000026

first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object when the hinge member is engagingly supported on the object.   In the

5    preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support

10    element and the first and second front support elements are engaging the first surface when the first surface is substantially level.   In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a

15    plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface.   In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top

20    surface of the table.   The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge

25    when the first surface is inclined from the substantially level position.   The object has a second surface wherein a

4

ADJCAM000027

thickness between the first surface and the second surface
defines an edge therebetween.    The camera is maintained
adjacent to the edge in the second position where the
uppermost portion of the object is the edge.  The rear support

5      element engages a first surface and the first and second
support elements engage the edge and the second surface.   The
rear support element and the first and second front support
elements, in combination, maintain the camera adjacent the
edge and prevent rotation of the support frame along an axis

10     substantially parallel to the second axis where the second
axis is substantially parallel to the edge.   In a preferred
embodiment, the rear support element and the first and second
front support elements support the camera in the second
position on the first surface adjacent the edge when a first

15     distance from the edge to the position where the rear support
element engages the first surface is greater than a second
distance from the edge to the position where the first and
second front support elements engage the second surface.   A
center of gravity of the camera and the hinge member being

20     adjacent and external to the first surface in combination with
the first distance being greater than the second distance
prevents rotation of the support frame along the axis
substantially parallel to the second axis of rotation.   In the
preferred embodiment, when the support frame is in the second

25     position, the object may be a display screen for a laptop
computer, where the second surface is the front of the display

5

ADJCAM000028

screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The

5    camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position between and is releasably held by the rear support element and the first and second front support

10   elements.  In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements

15   to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second front

20   support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements.  The

25   first and second front support elements resiliently and outwardly flex to accommodate passage of the housing.  The

6

ADJCAM000029

housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first

5   indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably

10   attaches the camera to the body so that the camera rotates about the first axis relative to the body.  A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame.  In the preferred embodiment,

15   the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

20   Brief Description of the Drawings

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in

25   connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures

7

ADJCAM000030

thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

Detailed Description of the Preferred Embodiments

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, Fig. 1 is a perspective view of the camera clip invention. Fig. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where

8

ADJCAM000031

camera 12 rotates over a first axis 26 in a direction shown by
arrow 28 relative to hinge member 16.  Support frame 18 is
hingedly attached to hinge member 16 to engagingly support
hinge member 16 on an object 30 (see also, Fig. 2).  Hinge

5   member 16 rotates over a second axis 32 in the direction shown
by arrow 34 relative to support frame 18.  First axis 26 is
perpendicular  to  second  axis  32.    Second  axis  32  is
substantially parallel to a first surface 36 when hinge member
16 is engagingly supported on object 30 (see also, Fig. 2).

10   Support  frame  18  has  a  first  portion  consisting  of  first
support element 38 and a second portion consisting of a first
front support element 40 and a second front support element
42.   Housing 20 has a first indentation 25 and a second
indentation 27 to slidably and fittably receive distal end 41

15   of first front support element 40 and distal end 43 of second
front support element 42 when first front support element 40
and  second  front  support  element  42  are  rotated  in  the
direction of arrow 34 to engage housing backside 24.

Fig. 2 is a side view showing a first mode of a preferred

20   embodiment of the present invention.  Rear support element 38,
first  front  support  element  40  and  second  front  support
element 42 support camera 12 in the first position 44, on the
first surface 36, when rear support element 38, first front
support element 40 and second front support element 42 are

25   engaging  first  surface  36  and  first  surface  36  is
substantially level.  In the first position 44, camera 12 may

9

ADJCAM000032

be pivoted upon support frame 18 from a position 46 to a position 48.  It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34.  In the preferred embodiment,

5    rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a

10   plane 50 of first surface 36.  Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36.  It is understood that in the preferred embodiment, rear support element 38, first front

15   support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36.  In the preferred embodiment, when support frame

20   18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

     Fig. 4 is a side view showing a second mode of the

25   preferred embodiment of the present invention.  The second mode occurs when rear support element 38, first front support

10

ADJCAM000033

element 40 and second front support element 42 support camera
12 in a second position 52 on a first surface 54 adjacent an
edge 56.   Second position 52 corresponds to first surface 54
being inclined from the substantially level position (see
5      also, Fig. 2).   In Fig. 4, object 58 has a second surface 60,
where a thickness d1 between first surface 54 and second
surface 60 defines the edge 56 therebetween.   Camera 12 is
maintained adjacent edge 56 in second position 52 when the
uppermost portion of object 58 is edge 56.   Rear support
10     element 38 engages first surface 54, and first front support
element 40 and second front support element 42 engage edge 56
and second surface 60.   Rear support element 38, first front
support element 40 and second front support element 42, in
combination, maintain camera 12 adjacent edge 56 and prevent
15     rotation of support frame 18 along an axis substantially
parallel to second axis 32, where second axis 32 is
substantially parallel to edge 56.   Rear support element 38,
first front support element 40 and second front support
element 42 support camera 12 in second position 52 on the
20     first surface 54 adjacent edge 56 when a first distance 64
measured between edge 56 and position 66 is greater than a
second distance 68.   Second distance 68 is measured between
edge 56 and position 70, where first front support element 40
and second front support element 42 engage second surface 60.
25     The center of gravity shown in the direction of arrow 72 of
camera 12 and hinge member 16 being adjacent and external to

11

ADJCAM000034

first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18.  In the preferred embodiment, object 58 may be a display screen for a laptop

5    computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen.  Fig. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78.  A pivot element 80 at proximal end 76

10   of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74.  A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18.  Fig. 4 further shows

15   camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12.  Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12.  While the

20   embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated.  For example, wiring harness could enter body 74 at a location angularly spaced upward from

25   bore 90.

Figs. 5-7 show various perspectives of a third mode of

12

ADJCAM000035

the preferred embodiment of the present invention.  Fig. 5 is

a side view, Fig. 6 is a detailed side view showing the lens

of the camera being fitably received by the cover, and Fig. 7

is a front view.  The third mode of the preferred embodiment

5    of the present invention is shown when camera 12 is rotated

about second axis 32 along the direction shown by arrow 34 in

a direction from the first front support element 40 and the

second front support element 42 towards rear support element

38 of support frame 18.  This rotation is continued in the

10    third mode until camera 12 is in a position between rear

support element 38 and first front support element 40 and

second front support element 42.  In this position, distal end

41 of first support element 40 and distal end 43 of second

front support element 42 slidably and fittably engage first

15    indentation 25 and second indentation 27 respectively of

housing 20 at housing backside 24.   Camera 12 is then

releasably held between rear support element 38 and first

front support element 40 and second front support element 42.

Rear support element 38 further has means to protect a lens 22

20    of camera 12, which is cover 90.  Cover 90 is mounted at a

distal end 92 of rear support element 38.  Lens 22 of camera

12 faces in the direction of arrow 92, which is the direction

of rotation about second axis 32 from first front support

element 40 and second front support element 42 to rear support

25    element 38 of support frame 18.  Cover 90 fitably receives

lens 22 of camera 12.  Cover 90 has a raised portion 95 sized

13

ADJCAM000036

A2499

to be accommodated by lens 22 of camera 12.  Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

5        Fig. 3 is a detailed front view of the camera clip invention.  Fig. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94.  Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment.

10      Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94.  When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support

15      element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20.  Housing 20 is releasably held once passing between first front support element 40 and second front

20      support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside

25      24.  When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently

14

ADJCAM000037

urge housing 20 towards rear support element 38 so that lens
22 of camera 12 is fitably received into cover 90.

     Having thus described the preferred embodiments of the
present invention, those of skill in the art will readily
5     appreciate that yet other embodiments may be made and used
within the scope of the claims hereto attached.

15

ADJCAM000038

What is Claimed:

1.   An apparatus for supporting a camera on an object,
     comprising:

     a.   a hinge member rotatably attached to the camera,
          said camera rotating over a first axis of rotation
          relative to said hinge member; and

     b.   a support frame hingedly attached to said hinge
          member to engagingly support said hinge member on
          the object, said hinge member rotating over a
          second axis of rotation relative to said support
          frame, said first axis of rotation being
          perpendicular to said second axis of rotation, said
          second axis of rotation being substantially
          parallel to a first surface when said hinge member
          is engagingly supported on the object, said support
          frame supporting said camera in a first position on
          the object when said first surface is substantially
          level, said support frame supporting the camera in
          a second position on the object when said first
          surface is inclined from said substantially level
          position, the object having a second surface
          wherein a thickness between the first surface and
          said second surface defines an edge therebetween,
          the camera being maintained adjacent said edge in
          said second position when the uppermost portion of
          the object is the edge, rotation of said support

                              16

ADJCAM000039

frame being prevented along an axis substantially
parallel to said second axis, said second axis
being substantially parallel to said edge.

2.    An apparatus according to claim 1 wherein the support
      frame comprises a first portion and a second portion,
      said first portion and said second portion supporting the
      camera in the first position on the first surface when
      said first portion and said second portion are engaging
      the first surface when the first surface is substantially
      level, said first portion and said second portion
      supporting the camera in the second position on the first
      surface adjacent the edge when said first portion is
      engaging the first surface and said second portion is
      engaging the edge and the second surface, said first
      portion and said second portion in combination
      maintaining the camera adjacent the edge and preventing
      rotation of the support frame along the axis
      substantially parallel to the second axis.

3.    An apparatus according to claim 2 wherein the support
      frame has means to releasably hold and protect the camera
      during storage.

4.    An apparatus according to claim 3 wherein the means to
      releasably hold and protect the camera comprises the

17

ADJCAM000040

camera being rotated around the second axis in a
direction from the second portion towards the first
portion of the support frame until the camera is in a
position between the first portion and the second portion
and is releasably held between the first portion and the
second portion, the first portion having means to protect
a lens of the camera.

5.  An apparatus according to claim 4 wherein the means to
protect the lens of the camera is a cover mounted at the
distal end of the first portion, the lens of the camera
facing in the direction of rotation about the second axis
from the second portion to the first portion of the
support frame to allow the lens of the camera to be
fitably received into said cover when the camera is
releasably held between the first portion and the second
portion.

6.  An apparatus according to claim 2 wherein the first
portion and the second portion support the camera in the
first position on the first surface when the first
portion and the second portion engage the first surface
at three or more locations in a plane of the first
surface to prevent rotation of the support frame relative
to the first surface in any direction within said plane
of the first surface.

18

ADJCAM000041

7.  An apparatus according to claim 2 wherein the first portion and the second portion support the camera in the first position on the first surface when the first portion and the second portion engage the first surface to prevent rotation of the support frame relative to the first surface in any direction within a plane of the first surface.

8.  An apparatus according to claim 2 wherein the first portion and the second portion support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the first portion engages the first surface is greater than a second distance from the edge to the position where the second portion engages the second surface, a center of gravity of the camera and said hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance preventing rotation of the support frame along an axis substantially parallel to the second axis of rotation.

9.  An apparatus according to claim 1 wherein the object is a top of a table when the support frame is in the first position, the first surface being a top surface of the table.

19

ADJCAM000042

10.  An apparatus according to claim 1 wherein the object is
a desk top when the support frame is in the first
position, the first surface being a top surface of the
desk.

11.  An apparatus according to claim 1 wherein the object is
a display screen for a laptop computer when the support
frame is in the second position, the second surface being
the front of the display screen and the first surface
being the back of the display screen.

12.  An apparatus according to claim 1 wherein the hinge
member is comprised of a body having a proximal and a
distal end, a pivot element at said proximal end of said
body rotatably attaching the camera to the body so that
the camera rotates about the first axis relative to the
body, a hinge element at said distal end of said body
hingedly attaching said body to the support frame so that
said body rotates about the second axis relative to the
support frame.

13.  An apparatus according to claim 12 wherein the camera has
an electrical wiring harness to couple from an interior
to an exterior, the pivot element having a bore parallel
to the first axis of rotation to receive said electrical
wiring harness to pass said wiring harness from said

20

ADJCAM000043

interior to said exterior of the camera.

14.  An  apparatus  for  supporting  a  camera  on  an  object,
     comprising:

     a.   a  hinge  member  rotatably  attached  to  the  camera,
          said  camera  rotating  over  a  first  axis  of  rotation
          relative to said hinge member; and

     b.   a  support  frame  hingedly  attached  to  said  hinge
          member  to  engagingly  support  said  hinge  member  on
          the  object,  said  hinge  member  rotating  over  a
          second  axis  of  rotation  relative  to  said  support
          frame,  said  first  axis  of  rotation  being
          perpendicular  to  said  second  axis  of  rotation,  said
          second  axis  of  rotation  being  substantially
          parallel to a  first surface when said hinge member
          is  engagingly  supported  on  the  object,  the  support
          frame  having a  rear support element and a first and
          second  front  support  element,  said  rear  support
          element  and  said  first  and  said  second  front
          support  elements  supporting  the  camera  in  the  first
          position  on  said  first  surface  when  said  rear
          support  element  and  said  first  and  second  front
          support  elements  are  engaging  said  first  surface
          when  said  first  surface  is  substantially  level,
          said  rear  support  element  and  said  first  and  said
          second  front  support  elements  supporting  the  camera

                              21

ADJCAM000044

in a second position on said first surface adjacent an edge when said first surface is inclined from said substantially level position, the object having a second surface wherein a thickness between said first surface and said second surface defines said edge therebetween, the camera being maintained adjacent said edge in said second position when the uppermost portion of the object is the edge, said rear support element engaging said first surface and said first and second front support elements engaging the edge and the second surface, said rear support element and said first and second front support elements in combination maintaining the camera adjacent the edge and preventing rotation of the support frame along an axis substantially parallel to the second axis, said second axis being substantially parallel to said edge.

15.  An apparatus according to claim 14 wherein the support frame has means to releasably hold and protect the camera during storage.

16.  An apparatus according to claim 15 wherein the means to releasably hold and protect the camera comprises the camera being rotated around the second axis in a direction from the first and second front support

22

ADJCAM000045

elements towards the rear support element of the support
frame until the camera is in a position between the rear
support element and the first and second front support
elements and is releasably held between the rear support
element and the first and second front support elements,
the rear support element having means to protect a lens
of the camera.

17.  An apparatus according to claim 16 wherein the first and
second front support elements are spaced a distance apart
at a distance less than a diameter of a housing of the
camera, the camera being rotated around the second axis
in the direction towards the rear support element so that
said housing passes between the first and second front
support elements, the first and second front support
elements resiliently and outwardly flexing to accommodate
passage of said housing, said housing being releasably
held once passing between the first and second front
support elements by the rear support element engaging
said housing at the lens, the first and second front
support elements engaging said housing backside to
resiliently urge said housing towards the rear support
element.

18.  An apparatus according to claim 16 wherein the means to
protect the lens of the camera is a cover mounted at the

23

ADJCAM000046

distal end of the rear support element, the lens of the camera facing in the direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into said cover when the camera is releasably held between the rear support element and the first and second front support elements.

19. An apparatus according to claim 14 wherein the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements engage the first surface at three or more locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within said plane of the first surface.

20. An apparatus according to claim 14 wherein the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements engage the first surface to prevent rotation of the support frame relative to the first surface in any direction within a plane of

24

ADJCAM000047

the first surface.

21. An apparatus according to claim 14 wherein the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface, a center of gravity of the camera and said hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance preventing rotation of the support frame along an axis substantially parallel to the second axis of rotation.

22. An apparatus according to claim 14 wherein the object is a top of a table when the support frame is in the first position, the first surface being a top surface of the table.

23. An apparatus according to claim 14 wherein the object is a desk top when the support frame is in the first position, the first surface being a top surface of the desk.

25

ADJCAM000048

24. An apparatus according to claim 14 wherein the object is a display screen for a laptop computer when the support frame is in the second position, the second surface being the front of the display screen and the first surface being the back of the display screen.

25. An apparatus according to claim 14 wherein the hinge member is comprised of a body having a proximal and a distal end, a pivot element at said proximal end of said body rotatably attaching the camera to the body so that the camera rotates about the first axis relative to the body, a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

26. An apparatus according to claim 25 wherein the camera has an electrical wiring harness to couple from an interior to an exterior, the pivot element having a bore parallel to the first axis of rotation to receive said electrical wiring harness to pass said wiring harness from said interior to said exterior of the camera.

26

**COMBINED DECLARATION/POWER OF ATTORNEY FOR PATENT APPLICATION**

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled _CAMERA CLIP_ , the specification of which (check one)

> XX is attached hereto

> __ was filed on _____
> as U.S. Application
> Serial No. _____

> __ and was amended on (if
> applicable) _____

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefit(s) under Title 35, United States Code §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application(s) for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

| Prior Foreign Application(s) | | | Priority Claimed | |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which

ADJCAM000050

occurred between the filing date of the prior application and the national or PCT international filing date of this application:

_____     _____     _____
(Serial No.)            (Filing Date)    (Status) (patented, pending, abandoned)

_____     _____     _____
(Serial No.)            (Filing Date)    (Status-patented, pending, abandoned)

**POWER OF ATTORNEY:**   As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith.

> John L. Rooney, Reg. No. 28,898;
> Lawrence M. Nawrocki, Reg. No. 29,333;
> Wayne A. Sivertson, Reg. No. 25,645;
> David M. Crompton, Reg. No. 36,772;
> Glenn M. Seager, Reg. No. 36,926;
> Steven E. Dicke, Reg. No. 38,431;
> Brian N. Tufte, Reg. No. 38,638;
> Craig F. Taylor, Reg. No. 40,199;
> Donald A. Jacobson, Reg. No. 22,308; and
> Lew Schwartz, Reg. No. 22,067

Send correspondence to:

> Lawrence M. Nawrocki
> NAWROCKI, ROONEY & SIVERTSON, P.A.
> Suite 401, Broadway Place East
> 3433 Broadway Street Northeast
> Minneapolis, Minnesota 55413
> (612) 331-1464

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon, I further declare that I understand the content of this declaration.

Full name of sole or first inventor __David E. Krekelberg____

Inventor's Signature _____ Date _____

Residence _15604 Dawn Drive, Minnetonka, Minnesota 55345____

_____ Citizenship _U.S.A.__

Post Office Address ___15604 Dawn Drive_____

_____ Minnetonka, Minnesota  55345_____

ADJCAM000051

-3-

**1.56 Duty to disclose information material to patentability.**

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability.  Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.  Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application.  There is no duty to submit information which is not material to the patentability of any existing claim.  The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§1.97(b)-(d) and 1.98.  However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.  The Office encourages applicants to carefully examine:

(1) prior art cited in search reports of a foreign patent office in a counterpart application, and

(2) the closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or
(ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application:

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

ADJCAM000052



67137 U.S. PTO

03/07/97

Applicant or Patentee: David E. Krekelberg          Attorney's Docket No.:  19139/103/101

Serial or Patent No.: N/A

Filed or Issued: Herewith

For:  CAMERA CLIP

### VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) AND 1.27(c)) -- SMALL BUSINESS CONCERN

I hereby declare that I am

[ ]      the owner of the small business concern identified below:

[X]      an official of the small business concern empowered to act on behalf of the concern identified below:

NAME OF CONCERN  iREZ Research, Corporation

ADDRESS OF CONCERN  15604 Dawn Drive, Minnetonka, Minnesota 55345

I hereby declare that the above-identified small business concern qualifies as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention, entitled  CAMERA CLIP  by inventor(s) David E. Krekelberg described in

[X]      the specification filed herewith

[ ]      application serial no._____, filed_____

[ ]      patent no._____, issued_____

If the rights held by the above-identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(b) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

*NOTE:        Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME_____

ADDRESS_____

[ ] INDIVIDUAL        [ ] SMALL BUSINESS CONCERN        [ ] NONPROFIT ORGANIZATION

NAME_____

ADDRESS_____

[ ] INDIVIDUAL        [ ] SMALL BUSINESS CONCERN        [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue

ADJCAM000053

fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING David E. Krekelberg

TITLE OF PERSON OTHER THAN OWNER  CEO and CTO

ADDRESS OF PERSON SIGNING 15604 Dawn Drive, Minnetonka, Minnesota 55345

SIGNATURE_____DATE_____

ADJCAM000054

PRINTED DRAWINGS
AS ORIGINAL    FILED

08/814168



08/814168



*fig. 5*

*fig. 6*

*fig. 7*

TOTAL P.03

ADJCAM000056

08/814168

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

**67137 U.S. PTO**

Serial No.:  N/A

03/07/97

Filing Date:  Herewith

For:  CAMERA CLIP

Docket No.:  19239/103/101

## TRANSMITTAL SHEET

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

---

**CERTIFICATE UNDER 37 C.F.R. 1.10:**  The undersigned hereby certifies that
this paper or papers, as described herein, are being deposited in the United
States Postal Service, "Express Mail Post Office to Addressee" having an
Express Mail mailing label number of :  EM 609 179 413 US, in an envelope
address to:  Assistant Commissioner for Patents  Washington, D.C., 20231 on
this ___7th___ day of ___March___, 19__97__

By_____
Carolyn A. Erickson

---

We are transmitting herewith the attached Patent Application
including the following:

[XXXX]     ___15___ sheet(s) of specification.

[XXXX]     ___11___ sheet(s) of claim(s).

[XXXX]     ___1___ sheet(s) of Abstract.

[XXXX]     ___2___ sheet(s) of drawings.

[XXXX]     Unexecuted Declaration and Power of Attorney.

[XXXX]     An unexecuted verified statement(s) to establish small
           entity status under 37 C.F.R. 1.9 and/or 1.27 is
           enclosed.

[   ]      An Assignment of the invention to iREZ Research,
           Corporation is being filed contemporaneous with this
           patent application.

[   ]      A certified copy of a _____ application, serial
           no. _____, filed _____, 19___,
           the right of priority of which is claimed under 35
           U.S.C. 119.

1

ADJCAM000057

| CLAIMS AS FILED | | | | | | |
|---|---|---|---|---|---|---|
| | (1) | (2) | SMALL ENTITY | | OTHER | |
| FOR: | # FILED | # EXTRA | Rate | Fee | Rate | Fee |
| BASIC FEE | | | | $385 | | $770 |
| TOTAL CLAIMS | 26-20 = | 6 | x11= | $ 66 | x22= | $ |
| INDEPENDENT CLAIMS | 2  -3 = | 0 | x40= | $  0 | x80= | $ |
| (  ) MULTIPLE DEPENDENT CLAIM PRESENTED | | | +130= | $  0 | +260= | $ |
| TOTAL | | | $451.00 | | $ | |

*If the difference in Column (1) is less than zero, enter "0" in Column 2.

[    ]    Other _____

_____

_____ .

[    ]    Checks in the amounts of $_____ and $_____ are enclosed.

[    ]    Please charge any deficiencies or credit any overpayment in the enclosed fees to Deposit Account 14-0620.

By: _Lawrence M. Nawrocki_____
    Lawrence M. Nawrocki
    Reg. No. _29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
  Telephone:  (612) 331-1464
  Facsimile:  (612) 331-2239

2

ADJCAM000058



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO./TITLE |
|---|---|---|---|
| 08/781,168 | | | |

HAUGSCKI RODNEY SIVENTSON
BROADWAY PLACE EAST SUITE 300
3433 BROADWAY STREET NE
MINNEAPOLIS MN 55413

DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION
### *Filing Date Granted*

An Application Number and Filing Date have been assigned to this application. However, the items indicated below are missing. The required items and fees identified below must be timely submitted ALONG WITH THE PAYMENT OF A SURCHARGE for items 1 and 3-6 only of $ _____ for a ☒ large entity ☐ small entity in compliance with 37 CFR 1.27. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE within which to file all required items and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*If all required items on this form are filed within the period set above, the total amount owed by applicant as a* ☒ *large entity* ☐ *small entity (verified statement filed), is $ _____ .*

☒ 1. The statutory basic filing fee is:
    ☒ missing.
    ☐ insufficient.
    *Applicant must submit $ _____ to complete the basic filing fee and/or file a verified small entity statement claiming such status (37 CFR 1.27).*

☒ 2. Additional claim fees of $ _____ , including any multiple dependent claim fees, are required.
    *Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.*

☐ 3. The oath or declaration:
    ☐ is missing.
    ☐ does not cover the newly submitted items.
    ☐ does not identify the application to which it applies.
    ☐ does not include the city and state or foreign country of applicant's residence.
    *An oath or declaration in compliance with 37 CFR 1. 63, including residence information and identifying the application by the above Application Number and Filing Date is required.*

☒ 4. The signature(s) to the oath or declaration is/are:
    ☒ missing.
    ☐ by a person other than inventor or person qualified under 37 CFR 1.42, 1.43, or 1.47.
    *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*

☐ 5. The signature of the following joint inventor(s) is missing from the oath or declaration:

    _____
    *An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Filing Date, is required.*

☐ 6. A $ _____ processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 7. Your filing receipt was mailed in error because your check was returned without payment.

☐ 8. The application does not comply with the Sequence Rules.
    *See attached "Notice to Comply with Sequence Rules 37 CFR 1.821-1.825."*

☐ 9. OTHER:

Direct the response and any questions about this notice to "Attention: Box Missing Parts."

*A copy of this notice **MUST** be returned with the response.*

Customer Service Center
Initial Patent Examination Division (703) 308-1202

FORM PTO-1533 (REV.7-96)            PART 3 - OFFICE COPY          *U.S. GPO: 1996-404-496/40515

ADJCAM000059



P A T E N T

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:    08/814,168

Filed:   March 7, 1997

For:   CAMERA CLIP

Docket No.:   19239/103/101

---

### COMMUNICATION

| | |
|---|---|
| Assistant Commissioner<br>for Patents<br>Washington, D.C.   20231 | <u>CERTIFICATE UNDER 37 C.F.R. 1.8</u><br>I hereby certify that this correspondence is being<br>deposited with the United States Postal Service on<br>the date shown below with sufficient postage as<br>first class mail in an enveloped addressed to the<br>Assistant Commissioner for Patents, Washington,<br>D.C. 20231 on this day of August, 1997<br><br>By:_____<br>     Carolyn I. Erickson |

Sir:

Applicant filed the application covered by the caption
indicated above on March 7, 1997.  The signature of the inventor
was, however, missing on the DECLARATION.  In response to the
filing, the United States Patent and Trademark Office issued a
NOTICE TO FILE MISSING PARTS OF APPLICATION - FILING DATE GRANTED
document (FORM PTO-1533).  That paper documented the fact that the
filing date was granted for the application.  Further, however, it
documented a requirement that a properly signed Declaration in
compliance with 37 CFR §1.63, identifying the application by

1

ADJCAM000060

Application Number and Filing Date, be submitted.  That paper also required that a surcharge in the amount of $130, for a large entity, or $65, for a small entity, be submitted.  It documented a requirement that the statutory basic filing fee be paid, and that large entity filing fees in the amount of $770 be submitted.  Also, it documented that additional claim fees in the amount of $132.00 for a large entity, including any required multiple dependent claim fees be submitted.

In view of the filing of small entity affidavit contemporaneous with this document, and the other documents filed with this package, the surcharge is in the amount of $65.00, the filing fees are in the amount of $385.00, and the additional claim fees are in the amount of $66.00, for a total amount of $516.00.

The period for response was set to expire two months from the date of that paper.  The unextended deadline for responding is, therefore, August 25, 1997.

Please find enclosed the "RESPONSE" copy of the NOTICE TO FILE MISSING PARTS OF APPLICATION - FILING DATE GRANTED document, a Declaration signed by the named inventor, one (1) VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS, and a check in the amount of $516.00 (the amount of the surcharge for a small entity, the small entity filing fees, and additional claim fees for a small business entity).

In view of the action taken herein, Applicant would submit that the requirements imposed by the NOTICE TO FILE MISSING PARTS OF APPLICATION - FILING DATE GRANTED paper have been complied with.

2

ADJCAM000061

It is, therefore, requested that the application be passed for issuance of the formal FILING RECEIPT document.

Respectfully submitted,

David E. Krekelberg

By his attorney,

Dated: _August 25, 1997_        _Lawrence M. Nawrocki_
                                Lawrence M. Nawrocki, Reg. No. 29,333
                                NAWROCKI, ROONEY & SIVERTSON, P.A.
                                Suite 401, Broadway Place East
                                3433 Broadway Street Northeast
                                Minneapolis, MN 55413
                                Telephone:  (612) 331-1464
                                Facsimile:  (612) 331-2239

3

ADJCAM000062

**COMBINED DECLARATION/POWER OF ATTORNEY FOR PATENT APPLICATION**

a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled  _CAMERA CLIP_ , the specification of which (check one)

    \_\_ is attached hereto

    XX was filed on _March 7, 1997_
        as U.S. Application
        Serial No. _08/814,168_

    \_\_ and was amended on (if
        applicable) _____

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefit(s) under Title 35, United States Code §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application(s) for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)

| | | | Priority Claimed | |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which

ADJCAM000063

occurred between the filing date of the prior application and the
national or PCT international filing date of this application:

| (Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |
|---|---|---|

| (Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |
|---|---|---|

**POWER OF ATTORNEY:**   As  a  named  inventor,  I  hereby  appoint  the
following attorney(s) and/or agent(s) to prosecute this application
and  transact  all  business  in  the  Patent  and  Trademark  Office
connected therewith.

> John L. Rooney, Reg. No. 28,898;
> Lawrence M. Nawrocki, Reg. No. 29,333;
> Wayne A. Sivertson, Reg. No. 25,645;
> David M. Crompton, Reg. No. 36,772;
> Glenn M. Seager, Reg. No. 36,926;
> Steven E. Dicke, Reg. No. 38,431;
> Brian N. Tufte, Reg. No. 38,638;
> Craig F. Taylor, Reg. No. 40,199;
> Donald A. Jacobson, Reg. No. 22,308; and
> Lew Schwartz, Reg. No. 22,067

Send correspondence to:

> Lawrence M. Nawrocki
> NAWROCKI, ROONEY & SIVERTSON, P.A.
> Suite 401, Broadway Place East
> 3433 Broadway Street Northeast
> Minneapolis, Minnesota 55413
> (612) 331-1464

I  hereby  declare  that  all  statements  made  herein  of  my  own
knowledge are true and that all statements made on information and
belief are believed to be true; and further that these statements
were made with the knowledge that willful false statements and the
like so made are punishable by fine or imprisonment, or both, under
Section 1001 of Title 18 of the United States Code and that such
willful  false  statements  may  jeopardize  the  validity  of  the
application or any patent issued thereon, I further declare that I
understand the content of this declaration.

Full name of sole or first inventor    David E. Krekelberg
Inventor's Signature _____ Date  8-19?
Residence  15604 Dawn Drive, Minnetonka, Minnesota 55345
                                              Citizenship  U.S.A.
Post Office Address    15604 Dawn Drive
                       Minnetonka, Minnesota  55345

ADJCAM000064

-3-

**1.56 Duty to disclose information material to patentability.**

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability.  Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.  Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application.  There is no duty to submit information which is not material to the patentability of any existing claim.  The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§1.97(b)-(d) and 1.98.  However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.  The Office encourages applicants to carefully examine:

(1) prior art cited in search reports of a foreign patent office in a counterpart application, and

(2) the closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or
(ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application:

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

ADJCAM000065

Applicant or Patentee: David E. Krekelberg_____ Attorney's Docket No.:_19139/103/101_____

Serial or Patent No.: 08/814,168_____

Filed or Issued: March 7, 1997_____

For:_CAMERA CLIP_____

### VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) AND 1.27(c)) -- SMALL BUSINESS CONCERN

I hereby declare that I am

    [ ]    the owner of the small business concern identified below:

    [X]    an official of the small business concern empowered to act on behalf of the concern identified below:

NAME OF CONCERN_iREZ Research, Corporation_____

ADDRESS OF CONCERN_15604 Dawn Drive, Minnetonka, Minnesota 55345_____

I hereby declare that the above-identified small business concern qualifies as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention, entitled_CAMERA CLIP_by inventor(s)_ David E. Krekelberg described in

    [X]    the specification filed herewith

    [ ]    application serial no._____, filed_____

    [ ]    patent no._____, issued_____

If the rights held by the above-identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

*NOTE:    Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME_____

ADDRESS_____

[ ] INDIVIDUAL    [ ] SMALL BUSINESS CONCERN    [ ] NONPROFIT ORGANIZATION

NAME_____

ADDRESS_____

[ ] INDIVIDUAL    [ ] SMALL BUSINESS CONCERN    [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue

ADJCAM000066

fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisionment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING Michael D. Harris

TITLE OF PERSON OTHER THAN OWNER  President

ADDRESS OF PERSON SIGNING 15604 Dawn Drive, Minnetonka, Minnesota 55345

SIGNATURE _____ DATE  8-13-97

ADJCAM000067





**UNITED STA1⎯ DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO./TITLE |
|---|---|---|---|
| 08/814,168 | 03/07/97 | | |

MAWROCKI ROONEY SIVERTSON
BROADWAY PLACE EAST
3433 BROADWAY STREET N E
MINNEAPOLIS MN 55413

**DATE MAILED:**

## NOTICE TO FILE MISSING PARTS OF APPLICATION
### *Filing Date Granted*

An Application Number and Filing Date have been assigned to this application. However, the items indicated below are missing. The required items and fees identified below must be timely submitted ALONG WITH THE PAYMENT OF A SURCHARGE for items 1 and 3-6 only of $ _130.00_ for a ☒ large entity ☐ small entity in compliance with 37 CFR 1.27. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE within which to file all required items and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*If all required items on this form are filed within the period set above, the total amount owed by applicant as a* ☒ *large entity* ☐ *small entity (verified statement filed), is $ _____ .*

☒ 1. The statutory basic filing fee is:
    ☒ missing.
    ☐ insufficient.
    Applicant must submit $ _770.00_ to complete the basic filing fee and/or file a verified small entity statement claiming such status (37 CFR 1.27).

☒ 2. Additional claim fees of $ _132.00_ , including any multiple dependent claim fees, are required.
    Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.

☐ 3. The oath or declaration:
    ☐ is missing.
    ☐ does not cover the newly submitted items.
    ☐ does not identify the application to which it applies.
    ☐ does not include the city and state or foreign country of applicant's residence.
    An oath or declaration in compliance with 37 CFR 1.63, including residence information and identifying the application by the above Application Number and Filing Date is required.

☒ 4. The signature(s) to the oath or declaration is/are:
    ☒ missing.
    ☐ by a person other than inventor or person qualified under 37 CFR 1.42, 1.43, or 1.47.
    A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.

☐ 5. The signature of the following joint inventor(s) is missing from the oath or declaration:
    _____
    An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Filing Date, is required.

☐ 6. A $ _____ processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 7. Your filing receipt was mailed in error because your check was returned without payment.

☐ 8. The application does not comply with the Sequence Rules.
    See attached "Notice to Comply with Sequence Rules 37 CFR 1.821-1.825."

☐ 9. OTHER:

Direct the response and any questions about this notice to "Attention: Box Missing Parts."

*A copy of this notice **MUST** be returned with the response.*

_____
Customer Service Center
Initial Patent Examination Division (703) 308-1202

FORM PTO-1533 (REV.7-96)        PART 2 - COPY TO BE RETURNED WITH RESPONSE

$\mathcal{S}$ECTOR #

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

re Application of:

David E. Krekelberg

Serial No.:  08/814,168

Filing Date:  March 7, 1997

For:  CAMERA CLIP

Docket No.:  19239/103/101

## *TRANSMITTAL SHEET*

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence
> and the documents described herein
> are being deposited with the United States Postal Service on the date shown
> below with sufficient postage as first class mail in an envelope addressed
> to the:  Assistant Commissioner for Patents, Washington, D.C. 20231, on this
> ____ day of _August_, 19 97
>
> By _____
> Carolyn J. Erickson

We are transmitting herewith the attached:

[   ]    Amendment

        [ ] No additional fee required
        [ ] The fee has been calculated as shown:

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
|  | (3) | (4) | (5) | SMALL ENTITY | | OTHER | |
|  | REMAINING CLAIMS | HIGHEST PAID | EXTRA | RATE | ADD'L FEE | RATE | ADD'L FEE |
| TOTAL CLAIMS | – | = |  | x11= | $ | x22= | $ |
| INDEPEN-DENT CLAIMS | – | = |  | x40= | $ | X80= | $ |
| (  ) FIRST MULTIPLE DEPENDENT CLAIM | | | | +130= | $ | +260 = | $ |
| TOTAL | | | | $ | | $ | |

1

ADJCAM000069

[XXXX]    Checks in the amounts of $516.00 and $40.00 are
          enclosed.

[    ]    Small entity status of this application under 37 C.F.R.
          1.9 and 1.27 has been established by verified statement
          previously submitted.

[XXXX]    Other:  Response Copy of Notice to File Missing Parts
          of Application-Filing Date Granted; Communication;
          Combined Declaration/Power of Attorney for Patent
          Application; Verified Statement (Declaration) Claiming
          Small Entity Status; Recordation Form Cover Sheet-
          Patents Only; Assignment.

[XXXX]    Please charge any deficiencies or credit any over
          payment in the enclosed fees to Deposit Account 14-
          0620.

                    By:  _Lawrence M. Nawrocki_____
                         Lawrence M. Nawrocki
                         Reg. No. __29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

ADJCAM000070



**UNITED STATEs DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
              Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/814,168 | 03/07/97 | KREKELBERG                    D | 19239/103/10 |

PM31/0206

LAWRENCE M NAWROCKI
NAWROCKI ROONEY & SIVERTSON
BROADWAY PLACE EAST SUITE 401
3433 BROADWAY STREET NORTHEAST
MINNEAPOLIS MN 55413

| EXAMINER |
|---|
| PHAN, L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3632 | # 4/ |

DATE MAILED:    02/06/98

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)
*U.S. GPO: 1996-404-496/40510

1- File Copy

ADJCAM000071

| **Office Action Summary** | Application No.<br>08/814,168 | Applicant(s)<br>David E. Krekelberg |
| | Examiner<br>Long Dinh Phan | Group Art Unit<br>3632 |

☒ Responsive to communication(s) filed on _Mar 7, 1997_ _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under _Ex parte Quayle_, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____ _3_ ____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-26_ _____ ..... .... ... is/are pending in the application.

   Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1-26_ _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All ☐ Some* ☐None  of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____ .

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____ __

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

ADJCAM000072

Serial Number: 08/814,168                                                      Page 2

Art Unit: 3632

## DETAILED ACTION

This is the first Office Action for serial number 08/814,168, Camera Clip, filed on March 07, 1997.  This application contains 1-26 claims.

### *Claim Objections*

Claims 2-13 and 15-26 are objected to because of the following informalities: on line 1 of claims 2-13 and 15-26, before "apparatus", "An" should be replaced with --The--.  Appropriate correction is required.

### *Claim Rejections - 35 USC § 112*

Claim 1-26 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The preamble of claim 1 is drawn to a subcombination of an apparatus comprising a hinge member and a support frame per se whereas line 3 appears to positively recite "rotatable attached to the camera" this implying a combination claim.  On lines 12 and 13, "being substantially parallel to a first surface" is a combination claim.  On lines 20-28, "the object having a second surface ..., the camera being maintained ..." is also claiming combination.  It is not clear whether applicant intends to claim a subcombination or combination.

In claim 2, lines 3-6, "said second portion supporting the camera" and "said second portion are engaging the first surface" are claiming combination.

In claim 3, line 2, "to releasably hold and protect the camera" is a combination claim.

ADJCAM000073

Serial Number: 08/814,168                                        Page 3

Art Unit: 3632

On lines 2, 3, 5, 8, and 9 of claim 4, " comprises the camera" and " to protect a lens of the camera" are claiming combination.

On lines 2, 3, 6, and 7 of claim 5, "to protect the lens of the camera" and "the camera" are a combination claim.

In claims 6 and 7, lines 2-7, "support the camera" and "engage the first surface" are claiming combination.

On lines 2, 5, 7, and 8 of claim 8, "support camera", "engage the first and the second surfaces", and "a center gravity of the camera" are not a sucombination claim.

On lines 1 and 3 of claims 9 and 10, "the object" and "the first surface" are not claiming subcombination.

In claim 11, lines 1, 3, and 4, "the object", "the second surface", and "the first surface" are a combination claim.

In claim 12, line 4, "rotatably attaching the camera" is claiming combination.

On lines 1 and 6 of claim 13, "the camera" is a combination claim.

Claims 14-26 are having the same 112 problems of combination and subcombination as indicated in the above claims 1-14.

Applicant is advised to make all the necessary corrections for all the above claims 1-26.

### *Allowable Subject Matter*

Claims 1-26 would be allowable if rewritten or amended to overcome the rejection(s) under 35 U.S.C. 112 set forth in this Office action.

ADJCAM000074

Serial Number: 08/814,168                                                                 Page 4

Art Unit: 3632

### *Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.  U.S. Patent 1,208,344 to McAll discloses a camera holding device.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Long Dinh Phan whose telephone number is (703) 308-3409.  The examiner

can normally be reached on Tuesday through Friday from 8:00 A.M. to 6:00 P.M. E.S.T.

Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 308-2168.  The fax

number for this Group is (703) 305-3597 or 3598.

Long Dinh Phan   ᒪᗞᒋ

January 30, 1998

RAMON O. RAMIREZ
PRIMARY EXAMINER
ART UNIT 355

ADJCAM000075

FORM PTO 948 (REV. 01-97)    U.S. DEPARTMENT OF COMMERCE-Patent and Trademark Office    Application No. _81U168_

## NOTICE OF DRAFTPERSON'S
## PATENT DRAWING REVIEW

The drawing filed (insert date) 3/7/07 are:

A. _____ not objected to by the Draftperson under 37 CFR 1.84 or 1.152.

B. _____ objected to by the Draftperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   _____ Color drawing are not acceptable until petition is granted.
   Fig.(s)_____
   _____ Pencil and non black ink is not permitted. Fig(s)_____

2. PHOTOGRAPHS. 37 CFR 1.84(b)
   _____ Photographs are not acceptable until petition is granted.
   _____ 3 full-tone sets are required. Fig(s)_____
   _____ Photographs not properly mounted (must bristol board or photographic double-weight paper). Fig(s)_____
   _____ Poor quality (half-tone). Fig(s)_____

3. TYPE OF PAPER. 37 CFR 1.84(e)
   _____ Paper not flexible, strong, white and durable.
   Fig(s)_____
   _____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not acceptable. (too thin)
   _____ Mylar, vellum paper is not acceptable (too thin).
   Fig(s)_____

4. SIZE OF PAPER. 37 CFR 1.84(F): Acceptable sizes:
   _____ 21.0 cm by 29.7 cm (DIN size A4)
   _____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   _____ All drawings sheets not the same size.
   Sheet(s)_____

5. MARGINS. 37 CFR 18.4(g): Acceptable margins:
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   Margins not acceptable. Fig(s) 1-3
   _____ Top (T) _____ Left (L)
   _____ Right (R) _____ Bottom (B)

6. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   _____ Views connected by projection lines or lead lines.
   Fig.(s)_____
   Partial views. 37 CFR 1.84(h)(2)
   _____ Brackets needed to show figure as one entity.
   Fig.(s)_____
   _____ Views not labeled separately or properly.
   Fig.(s)_____
   _____ Enlarged view not labeled separately or properly.
   Fig.(s)_____

7. SECTIONAL VIEWS. 37 CFR 1.84(h)(3)
   _____ Hatching not indicated for sectional portions of an object.
   Fig.(s)_____
   _____ Sectional designation should be noted with Arabic or Roman numbers. Fig.(s)._____

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   _____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned, so that the top becomes the right side, except for graphs. Fig.(s)_____
   _____ Views not on the same plane on drawing sheet. Fig.(s)_____

9. SCALE. 37 CFR 1.84(k)
   _____ Scale not large enough to show mechanism with crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig.(s)_____

10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
    _____ Lines, numbers & letters not uniformly thick and well defined, clean, durable and black (poor line quality).
    Fig.(s) 1-6.

11. SHADING. 37 CFR 1.84(m)
    _____ Solid black areas pale. Fig.(s)_____
    _____ Solid black shading not permitted. Fig.(s)_____
    _____ Shade lines, pale, rough and blurred. Fig.(s)_____

12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
    37 CFR 1.48(p)
    _____ Numbers and reference characters not plain and legible.
    Fig.(s)_____
    _____ Figure legends are poor. Fig.(s)_____
    _____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(3) Fig.(s)_____
    _____ Engligh alphabet not used. 37 CFR 1.84(p)(3) Fig.(s)_____
    _____ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3) Fig.(s) 1-6

13. LEAD LINES. 37 CFR 1.84(q)
    _____ Lead lines cross each other. Fig.(s)_____
    _____ Lead lines missing. Fig.(s)_____

14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.48(t)
    _____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Fig.(s)_____

15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
    _____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig.(s)_____

16. CORRECTIONS. 37 CFR 1.84(w)
    _____ Corrections not made from PTO-948 dated _____

17. DESIGN DRAWINGS. 37 CFR 1.152
    _____ Surface shading shown not appropriate. Fig.(s)_____
    _____ Solid black shading not used for color contrast.
    Fig.(s)_____

COMMENTS

REVIEWER _4.Dan_  DATE _10/18/07_ TELEPHONE NO. _7033058400_

ATTACHMENT TO PAPER NO. _4_

ADJCAM000076

| *Notice of References Cited* | Application No. 08/814,168 | Applicant(s) David E. Krekelberg | |
|---|---|---|---|
| | Examiner Long Dinh Phan | Group Art Unit 3632 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 1,208,344 | 12/1916 | McAll | 248 | 126 |
| B | | | | | |
| C | | | | | |
| D | | | | | |
| E | | | | | |
| F | | | | | |
| G | | | | | |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

### NON-PATENT DOCUMENTS

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

U.S. Patent and Trademark Office
PTO-892 (Rev. 9-95)

Notice of References Cited

Part of Paper No.  4

ADJCAM000077

A2540

#5

P A T E N T

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

| | | | |
|---|---|---|---|
| Serial No.: | 08/814,168 | Examiner: | Phan, L. |
| Filed | : March 7, 1997 | Group Art Unit: | 3632 |
| For | : CAMERA CLIP | | |
| Docket No.: | 19239/103/101 | | |

---

Assistant Commissioner
  for Patents
Washington, D.C.   20231

CERTIFICATE UNDER 37 C.F.R. 1.8
I hereby certify that this correspondence is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an enveloped addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231 on this ___ day of _June_, 199_8_

By: _____
        Carolyn I. Erickson

Sir:

### PETITION FOR EXTENSION OF TIME

It is requested that the time for filing the enclosed

AMENDMENT, now set to expire on May 7, 1998, be extended for one

month to now expire on June 7, 1998.   A check in the amount of

$55.00 is enclosed.

Respectfully submitted,

David E. Krekelberg

By his attorney

Date _June 8, 1998_

Lawrence M. Nawrocki
Reg. No. 29,333
NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway St. N.E.
Minneapolis, MN   55413
(612) 331-1464

06/17/1998  00000025 00814168
02 FC:215              55.00 0P

Rec'd Ext of Time
Approved _____
Clerk, Group 350

ADJCAM000078

$Gp3632$

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:  08/814,168                    Examiner:  Phan, L.

Filing Date: March 7, 1997                 Group Art Unit:  3632

For:  CAMERA CLIP

Docket No.:  19239/103/101

## *TRANSMITTAL SHEET*

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence
> and the documents described herein
> are being deposited with the United States Postal Service on the date shown
> below with sufficient postage as first class mail in an envelope addressed to
> the:  Assistant Commissioner for Patents, Washington, D.C. 20231, on this ___
> day of ___ June ___, 19 9 8
>
> By_____
>              Carolyn J. Erickson

We are transmitting herewith the attached:

[XXX]      Amendment

    [  ] No additional fee required
    [XX] The fee has been calculated as shown:

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
| | (3) | (4) | (5) | SMALL ENTITY | | OTHER | |
| | REMAINING CLAIMS | HIGHEST PAID | EXTRA | RATE | ADD'L FEE | RATE | ADD'L FEE |
| TOTAL CLAIMS | 21 - | 26= | 0 | x11= | $ | x22= | $ |
| INDEPEN-DENT CLAIMS | 5 - | 3= | 2 | x41= | $82 | X82= | $ |
| (  ) FIRST MULTIPLE DEPENDENT CLAIM | | | | +135= | $ | +270 = | $ |
| TOTAL | | | | | $82.00 | | $ |

1

ADJCAM000079

[XXXX]    Checks in the amounts of $55.00 and $82.00 are
          enclosed.

[XXXX]    Small entity status of this application under 37 C.F.R.
          1.9 and 1.27 has been established by verified statement
          previously submitted.

[XXXX]    Other: Petition for Extension of Time.

[XXXX]    Please charge any deficiencies or credit any over
          payment in the enclosed fees to Deposit Account 14-
          0620.

                    By: _Lawrence M. Nawrocki_____
                        Lawrence M. Nawrocki
                        Reg. No. __29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

2

ADJCAM000080



P A T E N T

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:      08/814,168            Examiner:  Phan, L.

Filed      :     March 7, 1997         Group Art Unit:  3632

For        :     CAMERA CLIP

Docket No.:      19239/103/101

Assistant Commissioner for Patents
Washington, D.C. 20231

---

**CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Assistant Commissioner for Patents, Washington, D.C., 20231 on this _____ day of _____ June _____ , 19 98 ____ .

By_____
Carolyn I. Erickson

---

Sir:

<u>AMENDMENT</u>

This Amendment is being filed in response to the presently outstanding Official Action issued by the Examiner regarding the above-captioned matter.  Please amend the case as follows.

<u>In the claims</u>

Please amend Claim 1 as follows:

1.    (Amended)  [An apparatus] <u>Apparatus</u> for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge

06/17/1998 ███████ ███████ ███████
01 FC:202                  ██.██ █

$a$ 1

ADJCAM000081

intersecting the first surface and the second surface, comprising:

a.  a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, [over] about a first axis of rotation, relative to said hinge member; and

b.  a support frame [hingedly] rotatably attached to said hinge member [to engagingly support said hinge member on the object] and configured to support said hinge member on the surface and the object, said hinge member rotating [over] about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to [a] the first surface when said hinge member is [engagingly] supported on the object, said support frame [supporting said camera in] having a first [position] disposition positioned on [the object when said first surface is] said generally horizontal, substantially [level] planar surface, and said support frame [supporting the camera in] having a second [position on] disposition attached to the object when said first surface and said second surface are [is] inclined from [said] a generally horizontal orientation

2

ADJCAM000082

[substantially level position], [the object having a second surface wherein a thickness between the first surface and said second surface defines an edge therebetween,] the camera being maintained adjacent said edge in said second disposition of said support frame [position when the uppermost portion of the object is the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge].

Please amend Claim 2 as follows:

2.   (Amended) [An apparatus] Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, [said first portion and said second portion supporting the camera in] the support frame being in the first [position] disposition on the [first] generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, [first surface when the first surface is] substantially [level] planar surface, [said first portion and said second portion supporting the camera in] and the support frame being in the second [position] disposition on the [first surface adjacent the edge] object when said first portion is engaging

3

ADJCAM000083

the first surface and said second portion is engaging
[the edge and] the second surface, said first portion
and said second portion in combination maintaining the
camera adjacent the edge [and preventing rotation of
the support frame along the axis substantially parallel
to the second axis].

Please cancel Claim 3.

Please amend Claim 4 as follows:

(Amended) [An apparatus] <u>Apparatus</u> according to claim
[3] <u>2</u> wherein the <u>support frame includes a cover to</u>
[means to releasably hold and] protect the camera
[comprises] <u>lens when</u> the camera [being] <u>is</u> rotated
[around] <u>about</u> the second axis [in a direction from the
second portion towards the first portion of the support
frame] until the camera is [in a position] between the
first portion and the second portion [and is releasably
held between the first portion and the second portion,
the first portion having means to protect a lens of the
camera].

Please amend Claim 5 as follows:

(Amended) [An apparatus] <u>Apparatus</u> according to Claim 4
wherein the [means to] <u>first portion of the support
frame further includes said cover,</u> [protect the lens of

4

ADJCAM000084

the camera is a] said cover being mounted at the distal
end of the first portion[,] and adapted to receive the lens of the
camera [facing in the direction of rotation about the
second axis from the second portion to the first
portion of the support frame to allow the lens of the
camera to be fitably received into said cover when the
camera is releasably held between the first portion and
the second portion].

Please amend Claim 6 as follows:

(Amended) [An apparatus] Apparatus according to Claim 2
wherein the [first portion and the second portion
support the camera] support frame is in the first
[position on the first surface] disposition when the
first portion and the second portion engage the [first]
generally horizontal, substantially planar surface at
three or more locations in a common plane [of the first
surface to prevent], thereby preventing rotation of the
support frame relative to the [first] generally
horizontal, substantially planar surface in any
direction [within said plane of the surface].

Please cancel Claim 7.

Please amend Claim 8 as follows:

5

ADJCAM000085

6 8. (Amended) [An apparatus] <u>Apparatus</u> according to Claim 2
wherein the [first portion and the second portion
support the camera] <u>support frame is</u> in the second
[position on the first surface adjacent the edge]
<u>disposition</u> when a first distance from the edge to
[the position] <u>a location</u> where the first portion
engages the first surface is greater than a second
distance from the edge to [the position] <u>a location</u>
where the second portion engages the second surface, [a
center of gravity of the camera and said hinge member
being adjacent and external to the first surface in
combination with the first distance being greater than
the second distance] <u>thus</u> preventing rotation of the
support frame [along an axis substantially parallel to
the second axis of rotation].

Please cancel Claims 9-10, inclusive.

Please amend Claim 11 as follows:

7 11. (Amended) [An apparatus] <u>Apparatus</u> according to Claim 1
wherein the  object is a display screen for a laptop
computer [when the support frame is in the second
position], <u>and</u> the second surface [being] <u>is</u> the front
of the display screen and the first surface [being] <u>is</u>
the back of the display screen.

Please amend Claim 12 as follows:

6

ADJCAM000086

12. (Amended) [An apparatus] Apparatus according to Claim 1
wherein the hinge member [is comprised of] includes a
body having a proximal and a distal end, a pivot
element at said proximal end of said body adapted to
rotatably [attaching] attach the camera to the body so
that the camera rotates about the first axis relative
to the body, and a hinge element at said distal end of
said body hingedly attaching said body to the support
frame so that said body rotates, about the second axis,
relative to the support frame.

Please amend Claim 13 as follows:

13. (Amended) [An apparatus] Apparatus according to Claim
12 wherein [the camera has an electrical wiring harness
to couple from an interior to an exterior,] the pivot
element [having] has a bore[ parallel to] along the
first axis of rotation to receive an electrical wiring
harness [to] and pass said wiring harness [from said
interior] to [said exterior of] the camera.

Please amend Claim 14 as follows:

14. (Amended) [An apparatus] Apparatus for supporting a
camera, having a housing and a lens, on any generally
horizontal, substantially planar surface and on an
object having a first surface and a second surface, and
an edge intersecting the first surface and the second

7

ADJCAM000087

surface, comprising:

a.    a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, [over] about a first axis of rotation relative to said hinge member; and

b.    a support frame [hingedly] rotatably attached to said hinge member [to engagingly support said hinge member on the object] and configured to support said hinge member on the surface and the object, said hinge member rotating [over] about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to [a] the first surface when said hinge member is [engagingly] supported on the object, the support frame having a rear support element and a first and a second front support element, said [rear support element and said first and said second front support elements supporting the camera in the] support frame having a first [position] disposition positioned on [said first] said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said [first] generally horizontal,

8

ADJCAM000088

substantially planar surface [when said first
surface is substantially level], said [rear
support element and said first and said second
front support elements supporting the camera in]
support frame having a second [position]
disposition attached to the object [on said first
surface adjacent an edge] when [said] the first
surface is inclined from [said] a substantially
[level] horizontal position so that an uppermost
extremity of the object is the edge, [the object
having a second surface wherein a thickness
between said first surface and said second surface
defines said edge therebetween, the camera] the
support frame being maintained [adjacent said
edge] in said second [position when the uppermost
portion of the object is the edge,] disposition by
said rear support element engaging said first
surface and said first and second front support
elements engaging [the edge and] the second
surface, said rear support element and said first
and second front support elements in combination
[maintaining the camera adjacent the edge and]
preventing rotation of the support frame [along an
axis substantially parallel to the second axis,
said second axis being substantially parallel to
said edge].

9

ADJCAM000089

Case 6:10-cv-00329-LED   Document 629-4   Filed 04/24/12   Page 22 of 64 PageID #:  5014

Please cancel Claim 15.

Please amend Claim 16 as follows:

16. (Amended) [An apparatus] Apparatus according to claim
[15] 14 wherein the [means to] support frame
[releasably hold and protect] protects *adapted to protect*, the camera
[comprises] when the camera [being] is rotated [around]
about the second axis [in a direction from the first
and second front support elements] towards the rear
support element of the support frame until the camera
is [in a position] between the rear support element and
the first and second front support elements, and is
releasably held between the rear support element and
the first and second front support elements[, the rear
support element having means to protect a lens of the
camera].

Please amend Claim 17 as follows:

17. (Amended) [An apparatus] Apparatus according to Claim
16 wherein the first and second front support elements
are spaced a distance apart [at a], and wherein said
distance is less than a diameter of [a] the housing of
the camera[,] so that as the camera is being rotated
[around] about the second axis in the direction towards
the rear support element, [so that] said housing passes
between the first and second front support elements[,]

10

ADJCAM000090

A2553

<u>and</u> the first and second front support elements
resiliently [and outwardly flexing] <u>flex outwardly</u> to
accommodate passage of said housing, said housing being
releasably held once passing between the first and
second front support elements by the rear support
element engaging said housing at the lens[, the first
and second front support elements engaging said housing
backside to resiliently urge said housing towards the
rear support element].

Please amend Claim 18 as follows:

(Amended) [An apparatus] <u>Apparatus</u> according to Claim
16 wherein the [means to] <u>first portion of the support</u>
<u>frame further has a cover,</u> [protect the lens of the
camera is a] <u>said</u> cover <u>being</u> mounted at [the] <u>a</u> distal
*and adapted*
end of the rear support element[,] <u>to receive</u> the lens
of the camera [facing in the direction of rotation
about the second axis from the first and second front
support elements to the rear support element of the
support frame to allow the lens of the camera to be
fitably received into said cover] when the camera is
releasably held between the rear support element and
the first and second front support elements.

Please amend Claim 19 as follows:

11

ADJCAM000091

14. (Amended) [An apparatus] Apparatus according to Claim 10 wherein the [rear support element and the first and second front support elements support the camera] support frame is in the first [position on the first surface] disposition when the rear support element and the first and second front support elements engage the [first] generally horizontal, substantially planar surface at three or more locations in a common plane of the [first] generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the [first] generally horizontal, substantially planar surface [in any direction within said plane of the first surface].

Please amend Claim 20 as follows:

20. (Amended) [An apparatus] Apparatus according to Claim 10 wherein the [rear support element and the first and second front support elements support the camera] support frame is in the first [position] disposition positioned on the [first] generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the [first] generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the [first] generally horizontal, substantially planar surface [in any direction within a

12

ADJCAM000092

plane of the first surface].

Please amend Claim 21 as follows:

16 21. (Amended) [An apparatus] Apparatus according to Claim
10 14 wherein the [rear support element and the first and
second front support elements support the camera]
support frame is in the second [position on the first
surface adjacent the edge] disposition when a first
distance from the edge to [the position] a location
where the rear support element engages the first
surface is greater than a second distance from the edge
to [the position] a location where the first and second
front support elements engage the second surface, [a
center of gravity of the camera and said hinge member
being adjacent and external to the first surface in
combination with] the first distance being greater than
the second distance thus preventing rotation of the
support frame [along an axis substantially parallel to
the second axis of rotation].

Please cancel Claims 22-24, inclusive.

Please amend Claim 25 as follows:

26 25. (Amended) [An apparatus] Apparatus according to Claim
10 14 wherein the hinge member [is comprised of] includes
a body having a proximal and a distal end, a pivot

13

ADJCAM000093

element at said proximal end of said body <u>adapted to</u> rotatably [attaching] <u>attach</u> the camera to the body so that the camera rotates about the first axis relative to the body, <u>and</u> a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

Please amend Claim 26 as follows:

26. (Amended) [An apparatus] <u>Apparatus</u> according to claim 25 wherein [the camera has an electrical wiring harness to couple from an interior to an exterior,] the pivot element [having] <u>has</u> a bore [parallel to] <u>along</u> the first axis of rotation to receive said electrical wiring harness [to] <u>and</u> pass said wiring harness [from said interior] to [said exterior of] the camera.

Please add new Claims 27-29 as follows:

27. (Newly presented) A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

a.    a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member;

14

ADJCAM000094

A2557

and

b.   a support frame hingedly attached to said hinge
     member to engagingly support said hinge member on
     the display screen, said hinge member rotating
     over a second axis of rotation relative to said
     support frame, the camera being maintained
     adjacent the edge, rotation of said support frame
     being prevented along an axis substantially
     parallel to said second axis where said second
     axis is substantially parallel to said edge.

28.  (Newly presented) Apparatus for supporting a camera
     having a lens on a substantially level surface,
     comprising:

a.   a hinge member adapted to be rotatably attached to
     the camera, the camera rotating about a first axis
     of rotation relative to said hinge member; and

b.   a support frame rotatably attached to said hinge
     member and configured to support said hinge member
     on a generally horizontal, substantially planar
     surface, said hinge member rotating about a second
     axis of rotation relative to said support frame,
     said first axis of rotation being generally
     perpendicular to said second axis of rotation,
     said second axis of rotation being substantially
     parallel to the generally horizontal,

15

ADJCAM000095

substantially planar surface when said hinge

member is supported on the generally horizontal,

substantially planar surface, said support frame

having a first portion and a second portion

wherein said support frame protects the camera

when said hinge member is not supported on the

generally horizontal, substantially planar

surface, and when the camera is rotated around

said second axis in a direction from said second

portion towards said first portion of said support

frame until the camera is between said first

portion and said second portion and is releasably

held between said first portion and said second

portion.

29.   (Newly presented) Apparatus for supporting a camera,

having a lens, on an object having a first surface and

a second surface, wherein a thickness measured between

the first surface and the second surface defines an

edge therebetween, comprising:

a.    a hinge member adapted to be rotatably attached to

the camera, said camera, when the hinge member is

so adapted, rotating about a first axis of

rotation relative to said hinge member; and

b.    a support frame rotatably attached to said hinge

member and configured to support said hinge member

16

ADJCAM000096

on the object, said hinge member rotating about a
second axis of rotation relative to said support
frame, said first axis of rotation being generally
perpendicular to said second axis of rotation,
said second axis of rotation being substantially
parallel to the first surface when said hinge
member is supported by said support frame on the
object, said support frame supporting said hinge
member on the object when said first surface is
inclined from a substantially horizontal position,
the camera being maintained adjacent the edge when
an uppermost extremity of the object is the edge,
rotation of said support frame being precluded
about an axis substantially parallel to said
second axis, said second axis being substantially
parallel to said edge, said support frame having a
first portion and a second portion wherein said
support frame releasably holds and protects the
camera when said hinge member is not supported by
said support frame on the object and the camera is
rotated around said second axis in a direction
from said second portion towards said first
portion of said support frame until the camera is
between said first portion and said second portion
and is releasably held between said first portion
and said second portion.

17

ADJCAM000097

R E M A R K S

The preceding amendment and following remarks are submitted in response to the presently outstanding Official Action of the examiner.  Having fully responded to each objection and ground of rejection of the examiner, all pending claims are believed to be in condition for allowance.  Entry of these amendments and reconsideration by the examiner to that end is respectfully requested.

The examiner objected to claims 2-13 and 15-26 because, at line 1 of claims 2-13 and 15-26, before "apparatus", "An" should be replaced with --The--.  In response, Applicant has amended claims 1-2, 4-6, 8, 11-14, 16-21 and 25-26 to make appropriate correction.

Claims 1-26 were rejected under 35 U.S.C. §112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention.  The Examiner stated that the preamble of claim 1 is drawn to a subcombination of an apparatus comprising a hinge member and a support frame per se whereas line 3 appears to positively recite "rotatable attached to the camera", thus implying a combination claim.  The Examiner further stated that, at lines 12 and 13, "being substantially parallel to a first surface" is a combination claim.  The Examiner further stated that, at lines 20-28, "the object having a second surface . . ., the camera being maintained . . . " is also

18

ADJCAM000098

claiming a combination.  The Examiner stated that it is not clear whether Applicant intends to claim a subcombination or a combination.

In response, Applicant has amended claim 1 to more clearly identify the "work pieces" in the preamble and thereby focus upon the elements of the invention, e.g. the hinge member and the support frame, in the claim body. Applicant has amended the preamble of claim 1 to recite "a camera having a lens on an object, the object having a first surface and a second surface" wherein a thickness between the first surface and the second surface defines an edge therebetween.  Applicant has also amended other portions of claim 1 to be consistent with the above changes.

The Examiner stated that in claim 2, lines 3-6, "said second portion supporting the camera" and "said second portion are engaging the first surface" are claiming combination.  In response, Applicant has amended claim 2 to remove the language "said first portion and said second portions supporting the camera in" and replace it with "the support frame being in...".

The Examiner stated that in claim 3, line 2 "to releasably hold and protect the camera" is a combination claim.  Claim 3 has been cancelled.

The Examiner stated that on lines 2, 3, 5, 8, and 9 of claim 4, "comprises the camera" and "to protect a lens of the camera" are claiming combination.  In response Applicant

19

ADJCAM000099

has amended claim 4 to make it clear that the camera is a "work piece" and to make other clarifications.

The Examiner stated on lines 2, 3, 6, and 7 of claim 5, "to protect the lens of the camera" and "the camera" are a combination claim. In response, Applicant has amended claim 5, and it is clear that the camera and the lens of the camera are "work pieces" and to make other amendments for clarification.

The Examiner stated that in claims 6 and 7, lines 2-7, "support the camera" and "engage the first surface" are claiming combination. In response, Applicant has amended claims 6 and 7 to clarify inventive structure and "work pieces".

The Examiner stated on lines 2, 5, 7, and 8 of claim 8, "support camera", "engage the first and the second surfaces", and "a center of gravity of the camera" are not a subcombination claim. In response, Applicant has amended claim 8 to remove "first portion and the second portion support the camera" to replace it with "support frame". Applicant has amended claim 8 to remove any ambiguity regarding combination/subcombination issues.

The Examiner states in lines 1 and 3 of Claims 9 and 10, "the object" and "the first surface" are not claiming subcombination. In response, Applicant has cancelled Claims 9 and 10.

The Examiner states that in claim 11, lines 1, 3 and 4,

20

"the object", and "the second surface", and "the first surface" are a combination claim. In response, Applicant has amended claim 11 to make amendments to further clarify the combination/subcombination issues.

The Examiner stated that in claim 12, line 4, "rotatably attaching the camera" is claiming combination. In response, Applicant has amended claim 12 to define the interaction between the work piece, the camera, and the body, an element of the invention.

The Examiner stated on lines 1 and 6 of claim 13, "the camera" is a combination claim.  In response, Applicant has amended claim 13 to remove "the camera" as an element of the invention.

The Examiner stated that claims 14-26 have the same §112 problems of combination and subcombination as indicated in the above claims 1-14.  In response, Applicant has amended these claims to overcome the §112 problems of combination and subcombination as were discussed above.

Applicant has added newly presented claims 27-29. Applicant submits that, in view of the above arguments regarding pending Claims 1-2, 4-6, 8, 11-14, 16-21, and 25-26; Claims 27-29 are also in condition for allowance.

Having thus addressed each objection and ground of rejection of the Examiner, pending claims 1-2, 4-6, 8, 11-14, 16-21, and 25-26, as well as newly presented claims 27-29, are now believed to be in condition for allowance.

21

ADJCAM000101

Entry of the present amendment and reconsideration to that end is respectfully requested.

    Please charge any deficiencies or credit any overpayment to Deposit Account 14-0620.

                        Respectfully submitted,

                        David E. Krekelberg

                        By his attorney,

Dated: _June 8, 1998_     _Lawrence M. Nawrocki_
                        Lawrence M. Nawrocki
                        Reg. No. 29,333
                        NAWROCKI, ROONEY & SIVERTSON, P.A.
                        Suite 401, Broadway Place East
                        3433 Broadway Street Northeast
                        Minneapolis, MN 55413
                        Telephone:  (612) 331-1464
                        Facsimile:  (612) 331-2239

                        22

ADJCAM000102

A2565

| *Interview Summary* | Application No.<br>08/814,168 | Applicant(s)<br>David E. Krekelberg | |
|---|---|---|---|
| | Examiner<br>Long Dinh Phan | Group Art Unit<br>3632 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Long Dinh Phan* _____    (3) _____

(2) *Lawrence M. Nawroki* _____    (4) _____

Date of Interview _____ *Jul 7, 1998* _____

Type:   ☒ Telephonic   ☐ Personal (copy is given to   ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.  If yes, brief description:

_____

Agreement   ☒ was reached.   ☐ was not reached.

Claim(s) discussed: *4, 5, 16, and 18* _____

Identification of prior art discussed:
*None* _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*Applicant agreed to amend the claims to overcome possible 112 problems and pass the case to issue.* _____

_____

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached.  Also, where no copy of the amendents which would render the claims allowable is available, a summary thereof must be attached.)

1.   ☒   It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2.   ☐   Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.  Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note:  You must sign and stamp this form unless it is an attachment to a signed Office action.

U. S. Patent and Trademark Office
PTO-413 (Rev. 10-95)                    Interview Summary                    Paper No.   8    )

ADJCAM000103



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:    COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/814,168 | 03/07/97 | KREKELBERG | 0   19239/103/1 |

| EXAMINER |
|---|
| PHAN, L |

LAWRENCE M. NAWROCKI          PM31/0715
NAWROCKI, ROONEY & SIVERTSON
BROADWAY PLACE EAST SUITE 401
3433 BROADWAY STREET NORTHEAST
MINNEAPOLIS MN 55413

| ART UNIT | PAPER NUMBER |
|---|---|
| 3632 | 8/B |

DATE MAILED:    07/18/90

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| *Notice of Allowability* | Application No. 08/814,168 | Applicant(s) David E. Krekelberg | |
|---|---|---|---|
| | Examiner Long Dinh Phan | Group Art Unit 3632 | |

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application.  If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to *amendment filed on 06/12/1998* .

☒ The allowed claim(s) is/are *1, 2, 4-6, 8, 11-14, 16-21, and 25-29.*

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

     ☐ received.

     ☐ received in Application No. (Series Code/Serial Number) _____ .

     ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action.  Failure to timely comply will result in ABANDONMENT of this application.  Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient.  A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

   ☐ because the originally filed drawings were declared by applicant to be informal.

   ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. __*4*__ .

   ☐ including changes required by the proposed drawing correction filed on _____ , which has been approved by the examiner.

   ☐ including changes required by the attached Examiner's Amendment/Comment.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings.  The drawings should be filed as a separate paper with a transmittal lettter addressed to the Official Draftsperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

   ☐ Notice of References Cited, PTO-892

   ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

   ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

   ☐ Notice of Informal Patent Application, PTO-152

   ☒ Interview Summary, PTO-413

   ☒ Examiner's Amendment/Comment

   ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

   ☒ Examiner's Statement of Reasons for Allowance

ADJCAM000105

Serial Number: 08/814,168                                                    Page 2

Art Unit: 3632

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below.  Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Mr. Lawrence M. Nawrocki on July 07, 1998.

The application has been amended as follows:

In the Claims:

Claim 4- line 2: after "cover", inserted --adapted--.

Claim 5- line 5: before "to receive", inserted --and adapted--.

Claim 16- line 3: before "the camera", replaced "protects" with --adapted to protect--.

Claim 18- line 5: before "to receive", inserted --and adapted--.

The following is an examiner's statement of reasons for allowance: The prior art of record does not disclose nor suggest apparatus for supporting a camera, comprising a hinge member adapted to be rotatably attached to the camera about a first axis of rotation; and a support frame rotatably attached to the hinge member about a second axis of rotation and configured to support the hinge member on a surface and an object.  Applicant's invention is deemed to be novel and unobvious over the prior art of record and thus allowable for patent.

Any comments considered necessary by applicant must be submitted no later than the

ADJCAM000106

Serial Number: 08/814,168                                          Page 3

Art Unit: 3632

payment of the issue fee and, to avoid processing delays, should preferably accompany the issue

fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Long Dinh Phan whose telephone number is (703) 308-3409.  The examiner

can normally be reached on Tuesday through Friday from 8:00 A.M. to 6:00 P.M. E.S.T.

Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 308-2168. The fax

number for this Group is (703) 305-3597 or 3598.

Long Dinh Phan  Lɓʔ

July 14, 1998

                                        RAMON O. RAMIREZ
                                        PRIMARY EXAMINER
                                        ART UNIT 355 26 3Ƨ

ADJCAM000107

Case 6:10-cv-00329-LED   Document 629-4   Filed 04/24/12   Page 40 of 64 PageID #: 5032



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

## NOTICE OF ALLOWANCE AND ISSUE FEE DUE

LAWRENCE M. NAWROCKI
NAWROCKI, ROONEY & SIVERTSON
BRODWAY PLACE EAST SUITE 401
3433 BROADWAY STREET NORTHEAST
MINNEAPOLIS MN 55413

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/814,168 | 03/07/97 | | PHAN | |

| First Named Applicant | KREKELBERG, | | | |
|---|---|---|---|---|

TITLE OF INVENTION CAMERA CLIP

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3 | 19239/103/10 | 248-121.000 | | | $600.00 | |

*THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.*
<u>*PROSECUTION ON THE MERITS IS CLOSED.*</u>

*THE ISSUE FEE MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>*

## HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.
   If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or
   B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

   A. Pay FEE DUE shown above, or

   B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "4b" of Part B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number.
   Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

*IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.*

PATENT AND TRADEMARK OFFICE COPY

PTOL-85 (REV. 10-96) Approved for use through 08/30/99. (0651-0033)

*U.S. GPO. 1998-437-639/80023

ADJCAM000108

**PART B—ISSUE FEE TRANSMITTAL**

*242 - 660*
*521 - 30*

Complete and mail this form, together with app.   .e fees, to:   **Box ISSUE FEE**
**Assistant Commissioner for Patents**
**Washington, D.C. 20231**

---

*MAILING INSTRUCTIONS:* This form should be used for transmitting the ISSUE FEE. Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

PM31/11715
**RECEIVED**
Publishing Division
**OCT 2 0 1998**
16

LAWRENCE M. NAWROCKI
NAWROCKI, ROONEY & SIVERTSON
BRODWAY PLACE EAST SUITE 40
3433 BROADWAY STREET NORTHEA
MINNEAPOLIS MN 55413

Note: The certificate of mailing below can only be used for domestic mailings of the Issue Fee Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

**Certificate of Mailing**

I hereby certify that this Issue Fee Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above on the date indicated below.

Carolyn I. Erickson                    *(Depositor's name)*

_____        *(Signature)*

10/15/98                               *(Date)*

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/814,168 | 03/07/97 | 021 | PHAN, L | 3632 | 07/15/98 |

| First Named Applicant | KREKELBERG, | DAVID E. |
|---|---|---|

TITLE OF INVENTION CAMERA CLIP

---

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3   19239/103/10 | 248-121.000 | G54 | UTILITY | YES | $660.00 | 10/15/98 |

1. Change of correspondence address or indication of " Fee Address" (37 CFR 1.363). Use of PTO form(s) and Customer Number are recommended, but not required.

   ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

   ☐ "Fee Address" indication (or "Fee Address" indication form PTO/SB/47) attached.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

   1  NAWROCKI, ROONEY & SIVERTSON, P.I.

   2 _____

   3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
**PLEASE NOTE:** Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE
   iREZ Research, Corporation

(B) RESIDENCE: (CITY & STATE OR COUNTRY)
   Minnetonka, Minnesota
Please check the appropriate assignee category indicated below (will not be printed on the patent):
☐ individual  ☒ corporation or other private group entity  ☐ government

4a. The following fees are enclosed (make check payable to Comissioner of Patents and Trademarks):
☒ Issue Fee
☒ Advance Order - # of Copies  10

4b. The following fees or deficiency in these fees should be charged to:

DEPOSIT ACCOUNT NUMBER _____
(ENCLOSE AN EXTRA COPY OF THIS FORM)

☐ Issue Fee
☐ Advance Order - # of Copies _____

The COMMISSIONER OF PATENTS AND TRADEMARKS IS requested to apply the Issue Fee to the application identified above.

(Authorized Signature)                    (Date)
Lawrence M. Nawrocki                      Oct 15, 1998

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

*Burden Hour Statement:* This form is estimated to take 0.2 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND FEES AND THIS FORM TO: Box Issue Fee, Assistant Commissioner for Patents, Washington D.C. 20231

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

10/23/1998 CASHBY  00000026 08814168
01 FC:242                  660.00 OP
02 FC:561                   30.00 OP

**TRANSMIT THIS FORM WITH FEE**

PTOL-85B (REV.10-96) Approved for use through 06/30/99. OMB 0651-0033          Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

ADJCAM000109

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.: 08/814,168                    Examiner: L. Phan

Filing Date: March 7, 1997                Group Art Unit: 3632

For: CAMERA CLIP

Docket No.: 19239/103/101

## TRANSMITTAL SHEET

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence
> and the documents described herein
> are being deposited with the United States Postal Service on the date shown below
> with sufficient postage as first class mail in an envelope addressed to the:
> Assistant Commissioner for Patents, Washington, D.C. 20231, on this ____ day of ____
>
> By_____
>            Carolyn D. Erickson

We are transmitting herewith the attached:

[   ]    Amendment

　　　　[  ] No additional fee required
　　　　[  ] The fee has been calculated as shown:

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
| | (3) | (4) | (5) | SMALL ENTITY | | OTHER | |
| | REMAINING CLAIMS | HIGHEST PAID | EXTRA | RATE | ADD'L FEE | RATE | ADD'L FEE |
| TOTAL CLAIMS | - | = | | x11= | $ | x22= | $ |
| INDEPEN-DENT CLAIMS | - | = | | x41= | $ | X82= | $ |
| (  ) FIRST MULTIPLE DEPENDENT CLAIM | | | | +135= | $ | +270 = | $ |
| TOTAL | | | | $ | | $ | |

1

ADJCAM000110

[XXXX]     A check in the amount of $ 690.00 is enclosed.

[XXXX]     Small entity status of this application under 37 C.F.R.
           1.9 and 1.27 has been established by verified statement
           previously submitted.

[XXXX]     Other:  Part B-Issue Fee Transmittal (with Certificate of
           Mailing); Letter to Official Draftsperson; Two (2) Sheets
           of Formal Drawings.

[XXXX]     Please charge any deficiencies or credit any over payment
           in the enclosed fees to Deposit Account 14-0620.

                        By: _____

                            Lawrence M. Nawrocki
                            Reg. No. __29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

2

ADJCAM000111

P A T E N T

Serial No.: 08/814,168
Filed: March 7, 1997
Batch No.: G54

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.: 08/814,168          **RECEIVED**          Examiner:    L.  Phan
                                Publishing Division

Filed: March 7, 1997            **OCT 2 0 1998**          Group Art: 3632

For:  CAMERA CLIP                    **16**

Docket No.: 19239/103/101

---

Assistant Commissioner                <u>CERTIFICATE UNDER 37 C.F.R. 1.8</u>
 for Patents                     I hereby certify that this correspondence is being
Washington, D.C.   20231          deposited with the United States Postal Service on
                                 the date shown below with sufficient postage as
                                 first class mail in an enveloped addressed to the
                                 Assistant Commissioner for Patents, Washington,
                                 D.C. 20231 on this 15th day of October, 1998

                                 By:_____
Sir:                                      Carolyn F. Erickson

### LETTER TO OFFICIAL DRAFTSPERSON

     Submitted herewith are two (2) sheets of formal drawings for

filing in the above-identified application.

                         Respectfully submitted,

                         David E. Krekelberg

                         By his attorney,

Date *October 15, 1998*  _Lawrence M. Nawrocki_
                         Lawrence M. Nawrocki
                         Reg. No. 29,333
                         NAWROCKI, ROONEY & SIVERTSON, P.A.
                         Suite 401, Broadway Place East
                         3433 Broadway St. N.E.
                         Minneapolis, MN  55413
                         (612) 331-1464

ADJCAM000112

Case 6:10-cv-00329-LED   Document 629-4   Filed 04/24/12   Page 45 of 64 PageID #:  5037



**5855343**

*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*

ADJCAM000113

| APPROVED | O.G. FIG. | |
|---|---|---|
| BY | CLASS | SUBCLASS |
| DRAFTSMAN | | |

*Fig. 5*



*Fig. 6*

*Fig. 7*



ADJCAM000114

A2577

e 6:10-cv-00329-LED                                    geID #:  5039

**PTO UTILITY GRANT**

Paper Number _10_

## The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America for the term set forth below, subject to the payment of maintenance fees as provided by law.*

*If this application was filed prior to June 8, 1995, the term of this patent is the longer of seventeen years from the date of grant of this patent or twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*If this application was filed on or after June 8, 1995, the term of this patent is twenty years from the U.S. filing date, subject to a statutory extension. If the application contains a specific reference to an earlier filed application or applications under 35 U.S.C. 120, 121 or 365(c), the term of the patent is twenty years from the date on which the earliest application was filed, subject to any statutory extension.*

*Bruce Lehman*
Commissioner of Patents and Trademarks

*Ollie M. Person*
Attest

*The United States of America*

Form **PTO-1584** (Rev. 2/97)

(RIGHT INSIDE)

ADJCAM000115

A2578

Text Input HTML page                                    http://151.207.28.21:457/cgi-bin/text

```
        59116 CAMERA
        58127 CLIP
L1          2 CAMERA CLIP
              (CAMERA(W)CLIP)

=>
```

ADJCAM000116

Tex: Input HTML page

http://151.207.28.21:457/cgi-bin/text 10

```
US PAT NO:       4,403,717 [IMAGE AVAILABLE]         L1: 1 of 2
TITLE:        Camera carrying device

4,403,717 [IMAGE AVAILABLE]      5 CLASSIFICATIONS    L1: 1 of 2

       1.   224/666        OR
       2.   224/268        XR
       3.   224/269        XR
       4.   224/667        XR
       5.   224/908        XR
US PAT NO:       3,962,711 [IMAGE AVAILABLE]         L1: 2 of 2
TITLE:        Accessory adapter for photographic apparatus

3,962,711 [IMAGE AVAILABLE]      3 CLASSIFICATIONS    L1: 2 of 2

       1.   396/544        OR
       2.   396/529        XR
       3.   D16/211        XR

=>
```

ADJCAM000117

Case 6:10-cv-00329-LED   Document 629-4   Filed 04/24/12   Page 50 of 64 PageID #:  5042

Text Input HTML page                                          http://151.207.162.15:457/cgi-bin/text 10

```
US PAT NO:     5,111,983 [IMAGE AVAILABLE]           L1: 1 of 5

5,111,983 [IMAGE AVAILABLE]    3 CLASSIFICATIONS     L1: 1 of 5

      1.   224/258        OR
      2.   224/908        XR
      3.   248/118        XR
US PAT NO:     5,025,320 [IMAGE AVAILABLE]           L1: 2 of 5

5,025,320 [IMAGE AVAILABLE]    4 CLASSIFICATIONS     L1: 2 of 5

      1.   348/373        OR
      2.   348/335        XR
      3.   348/722        XR
      4.   379/202        XR
US PAT NO:     4,676,622 [IMAGE AVAILABLE]           L1: 3 of 5

4,676,622 [IMAGE AVAILABLE]    2 CLASSIFICATIONS     L1: 3 of 5

      1.   396/428        OR
      2.   248/179.1      XR
US PAT NO:     4,297,756 [IMAGE AVAILABLE]           L1: 4 of 5

4,297,756 [IMAGE AVAILABLE]    2 CLASSIFICATIONS     L1: 4 of 5

      1.   7/127          OR
      2.   81/367         XR
US PAT NO:     4,198,150 [IMAGE AVAILABLE]           L1: 5 of 5

4,198,150 [IMAGE AVAILABLE]    2 CLASSIFICATIONS     L1: 5 of 5

      1.   396/422        OR
      2.   362/3          XR

=>
```

ADJCAM000118

A2581

## PATENT APPLICATION FEE DETERMINATION RECORD
Effective October 1, 1996

**Application or Docket Number:** 8 14 16 8

### CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | SMALL ENTITY FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | 385.00 | OR | | 770.00 |
| TOTAL CLAIMS | 26 minus 20 = | * 6 | x$11= | | OR | x$22= | 132.00 |
| INDEPENDENT CLAIMS | 2 minus 3 = | * | x40= | | OR | x80= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +130= | | OR | +260= | |
| | | | TOTAL | | OR | TOTAL | 902.00 |

\* If the difference in column 1 is less than zero, enter "0" in column 2

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | SMALL ENTITY ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * 21 | Minus | ** 26 | = | x$11= | | OR | x$22= | |
| Independent | * 5 | Minus | *** 3 | = 2 | x40= | 126 | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +130= | | OR | +260= | |
| | | | | | TOTAL ADDIT. FEE | 8.00 | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | SMALL ENTITY ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +130= | | OR | +260= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | SMALL ENTITY ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | OTHER THAN SMALL ENTITY ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +130= | | OR | +260= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10/96)

\*U.S. Government Printing Office: 1996 - 413-288/49191

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

ADJCAM000119

Form PTO 1130
(REV 2/94)

## PACE DATA ENTRY CODING SHEET

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

| 1ST EXAMINER | W Green | DATE | 6-23-77 |
| 2ND EXAMINER | | DATE | |

ADJCAM000120

| APPLICATION NUMBER | TYPE APPL | FILING DATE | | | SPECIAL HANDLING | GROUP ART UNIT | CLASS | SHEETS OF DRAWING |
| | | MONTH | DAY | YEAR | | | | |
| 08/874168 | 1 | 0 3 | 0 7 | 9 2 | 0 | 3 5 0 5 | 2 4 8 | 2 |

| TOTAL CLAIMS | INDEPENDENT CLAIMS | SMALL ENTITY? | FILING FEE | FOREIGN LICENSE | ATTORNEY DOCKET NUMBER |
| 2 6 | 2 | | | ✓ | 1 9 2 3 9 / 1 0 3 / 1 0 |

### CONTINUITY DATA

| CONT CODE | STATUS CODE | PARENT APPLICATION SERIAL NUMBER | PCT APPLICATION SERIAL NUMBER | PARENT PATENT NUMBER | PARENT FILING DATE |
| | | | | | MONTH | DAY | YEAR |
| | | | P C T / / | | | | |
| | | | P C T / / | | | | |
| | | | P C T / / | | | | |
| | | | P C T / / | | | | |
| | | | P C T / / | | | | |

### PCT/FOREIGN APPLICATION DATA

| FOREIGN PRIORITY CLAIMED | COUNTRY CODE | PCT/FOREIGN APPLICATION SERIAL NUMBER | FOREIGN FILING DATE |
| | | | MONTH | DAY | YEAR |
| | | | | | |

A2583

E. S. McALL.
CAMERA HOLDING DEVICE.
APPLICATION FILED APR. 29, 1915.

1,208,344.

Patented Dec. 12, 1916.
2 SHEETS—SHEET 1.



INVENTOR.
Edward S. McAll

THE NORRIS PETERS CO., PHOTO-LITHO, WASHINGTON, D. C.

ADJCAM000121

Case 6:10-cv-00329-LED   Document 629-4   Filed 04/24/12   Page 54 of 64 PageID #:  5046

E. S. McALL.
CAMERA HOLDING DEVICE.
APPLICATION FILED APR. 29, 1915.

**1,208,344.**

Patented Dec. 12, 1916.

2 SHEETS—SHEET 2.



*Fig. 5.*

*Fig. 6.*

INVENTOR.

Edward S. McAll

THE NORRIS PETERS CO., PHOTO-LITHO., WASHINGTON, D. C.

ADJCAM000122

A2585

# UNITED STATES PATENT OFFICE.

## EDWARD S. McALL, OF ILION, NEW YORK.

### CAMERA-HOLDING DEVICE.

**1,208,344.**      Specification of Letters Patent.      **Patented Dec. 12, 1916.**

Application filed April 29, 1915.   Serial No. 24,666.

*To all whom it may concern:*

Be it known that I, EDWARD S. McALL, a citizen of the United States, and a resident of Ilion, in the county of Herkimer 5 and State of New York, have invented a certain new and useful Improvement in Camera-Holding Devices, of which the following is a full, clear, and exact description, reference being made to the accom-10 panying drawings, forming part of this specification.

This invention relates to improvements in camera-holding devices which include means to enable a camera to be adjusted for use 15 by moving it angularly on a horizontal axis, the main object of the invention being to facilitate the operation of cameras under conditions which now are apt to be more or less troublesome.

20 The invention consists of a camera-holding device comprising the parts, and having the construction and arrangement of parts, which are hereinafter described and specified in the claims.

25 On the accompanying two sheets of drawings, on which like reference-numerals designate like parts of different views: Figure 1 is a side elevation of a camera-holding device which embodies the invention in its 30 preferred form; Fig. 2, a front elevation of this device; Fig. 3, a plan thereof; Fig. 4, another side elevation thereof; Fig. 5, another plan, the relative positions of the parts differing from those shown in Fig. 3; 35 and Fig. 6, a side and sectional view, the relative positions of the parts being the same as shown in Fig. 5.

The particular camera-holding device shown comprises what is essentially a low 40 tripod, a platform hinged thereto, and a clamp which is effective to hold the platform adjusted with relation to the base in any of a large number of positions. That it differs much in character from ordinary 45 tripods is plainly indicated by its utility in various places where any of them are useless, as well as by peculiarities of its construction and its mode of operation. For example, it will properly support a camera 50 in a desired position when the device is held by the hand against a wall, or post, or trunk of a tree, or the steeply sloping or vertical face of a rock or cliff, as illustrated in Fig. 1, in which the surface against which the 55 device is held is represented by the irregular line *a*, and the camera by broken lines,

or when the device stands, as shown in Fig. 4, on a small and inclined surface *b*, such as that of a rock, log, or branch of a tree, or on a flat surface which is too small to en- 60 able a common tripod to stand on it and which may be the top of a post, stump of a tree, or something else.

The tripod and platform of this device are made from thin sheet metal, the head of 65 the tripod consisting of a single piece of stock and being the base on which the platform is mounted. This base is an approximately V-shaped frame including the flat portion 1 (Fig. 2), the lateral flanges or sides 70 2 and 3, which are preferably straight, and the perforated parts 4 and 5 which are continuations of the flanges and form a pair of eyes at the broad end of the base. The projection 6, consisting of a struck up portion 75 of the stock of the frame or base, is one of the feet of the tripod. The platform, which is also a single piece of stock, includes the part 7, the lateral flanges or sides 8 and 9, and the perforated continuations 10 and 11 80 of the flanges, the part 7 being flat except where it forms the annular struck up camera-seat 12, and the portions 10 and 11 forming eyes similar to the eyes 4 and 5 of the base. The eyes of the platform fit 85 loosely between the eyes of the base and the flanges of the platform between the flanges of the base, so that the platform and base may lie close together as appears by Figs. 5 and 6. The screw 13 having the milled 90 head 14 extends loosely through the part 7 at the center of the seat 12, the cotter pin 15, which passes through the stem of the screw and lies close to the face of the platform, being a keeper for the screw. 95

The bolt 16, having at one end the head 17 and at the other the winged nut 18, passes through the eyes of the platform and base, and on this bolt are also the spacing-sleeve 19, the friction-washers 20 and 21, and a 100 yoke comprising the bar 22, eyes 23 and 24, and parts 25 and 26 which form both the ends of the yoke and the two other feet of the tripod. The sleeve 19 fits closely between the eyes 10 and 11, each friction- 105 washer is between an eye of the base and the adjacent eye of the platform, and the eyes of the yoke surround the bolt outside of the eyes of the base.

Although the parts of the device might be 110 otherwise arranged, the arrangement shown and described is preferred because it en-

ADJCAM000123

A2586

**2**                                        1,208,344

ables the parts to fit together as shown in Figs. 5 and 6, and renders the distance between the feet 25 and 26 greater than the width of the base or frame at its broad
5 end. The bolt and three pairs of eyes constitute means by which the base, platform and yoke are hinged together, each of these three parts being angularly movable on the axis of the bolt with relation to the two
10 others, and the bolt, spacing-sleeve and nut form a clamp by which the parts may be tightly held in various positions to which they may be adjusted.

It will be seen that whether the base is
15 vertical or nearly horizontal the platform may be either horizontal or vertical or may be inclined at any desired angle to the plane of the horizon. The yoke so turns that the feet 25 and 26, which are fast together and
20 turn together on the axis of the bolt, may be located behind the bolt as they are shown in Figs. 1, 3 and 4, or at the sides of the base as they are shown in Figs. 5 and 6, their length being much less than that of the base
25 or that of the bolt, so that they do not project far from the base at the sides thereof and so that when the device either is held against a vertical or steeply sloping surface, or rests on a flat or slightly inclined surface,
30 there is but little space between the base and that surface and the device is far more stable than an ordinary tripod having legs that are many times as long as the head of the tripod. The camera rests on the seat 12
35 and is fastened to the platform by the screw 13, when the holding-device and camera are in use, the screw fitting in a hole in the frame of the camera and engaging with an internal screw-thread formed in that frame.
40 Then the feet 25 and 26 are behind the bolt. The platform may be readily adjusted and clamped in the desired position when the feet rest on the object on which the device is to stand or against which it is to be held.
45 Of course the axis of the bolt will usually be horizontal when the platform is adjusted and the camera operated.

A camera-holding device like that described and suitable to hold a small camera
50 may be conveniently carried in an ordinary coat-pocket.

It will be understood that the invention may be embodied in devices differing in details of construction from the camera-hold-
55 ing device shown and particularly described herein.

Having thus described my invention, what I claim as new and desire to secure by Letters Patent, is:

60 1. A camera-holding device comprising a base, a platform hinged thereto, feet adjacent to the ends of the hinge, and a clamp effective to hold the platform adjusted with relation to the base, these feet being fast to-
65 gether and their length being less than that

of the base and less than the width of that part of the base which is next to the hinge.

2. A camera-holding device comprising a base, a platform hinged thereto, a clamp effective to hold the platform adjusted with 70 relation to the base, and angularly movable feet adjacent to the ends of the hinge, these feet being fast together and their length being less than that of the base and less than the width of that part of the base 75 which is next to the hinge.

3. A camera-holding device comprising a base, a platform hinged thereto, a clamp effective to hold the platform adjusted with relation to the base, and three short feet 80 which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge, and the other being fast on the base.

4. A camera-holding device comprising a base, a platform hinged thereto, a clamp 85 effective to hold the platform adjusted with relation to the base, and three short feet which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge and being pivotally connected 90 with the base, and the other being fast on the base.

5. A camera-holding device comprising a base, a platform hinged thereto, a fastening to secure the camera on the platform, a 95 clamp effective to hold the platform adjusted with relation to the base, and three short feet which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge and the other being fast on 100 the base.

6. A camera-holding device comprising a base, a platform hinged thereto, a screw attached to and extending through the platform, a clamp effective to hold the platform 105 adjusted with relation to the base, and three short feet which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge, and the platform including a camera-seat surrounding the screw 110 and the other being fast on the base.

7. A camera-holding device comprising a base, a platform, a yoke, and a bolt on which the three other parts are mounted and on which they are angularly movable, the ends 115 of the yoke forming feet.

8. A camera-holding device comprising a base, a platform, a yoke, a bolt on which said three other parts are mounted and on which they are angularly movable, a spac- 120 ing-sleeve, and a pair of friction-washers, the ends of the yoke forming feet, the base, platform and yoke each having a pair of eyes through which the bolt extends, the spacing-sleeve being on the bolt between the 125 eyes of each pair, each of the friction-washers being on the bolt between an eye of the base and an eye of the platform, and the eyes of both the base and platform being between those of the yoke. 130

ADJCAM000124

**A2587**

1,208,344

9. A camera-holding device comprising a base, a platform hinged thereto, a clamp, and two feet which are pivotally connected with the base, the clamp being effective to hold the platform and feet adjusted with relation to the base.

10. A camera-holding device comprising a base, a platform hinged thereto, a clamp, and three feet which with the base form a tripod, two of the feet being adjacent to the ends of the hinge, the clamp being effective to hold the platform adjusted with relation to the base, and the base and platform each having lateral flanges, those of one part fitting between those of the other.

11. A camera-holding device comprising a base which is narrow at one end and the lateral edges of which are straight and diverge as they recede from that end and which has eyes at its broad end, a platform which is broader at one end than at the other and which has eyes at its broad end and a camera-seat at its narrow end, a bolt which extends through the eyes of the base and platform, a spacing-sleeve on the bolt, and three feet which with the base form a tripod, two of the feet being adjacent to the eyes of the base and the other being on the base close to its narrow end.

12. A camera-holding device comprising a base which is narrow at one end and the lateral edges of which are straight and diverge as they recede from that end and which has eyes at its broad end, a platform which is broader at one end than at the other and which has eyes at its broad end and a camera-seat at its narrow end, a bolt which extends through the eyes of the base and platform and on which at one end is a winged nut, the eyes of the platform being between those of the base, a spacing-sleeve which surrounds the bolt and fits between the eyes of the platform, and three feet which with the base form a tripod, one of the feet being on the base close to its narrow end and the others being on the bolt and being angularly movable thereon, one of them being next to the head of the bolt and the other next to the winged nut.

13. A camera-holding device comprising a base which is narrow at one end and the lateral edges of which diverge as they recede from that end, is broader at one end than at the other and has on it a camera-seat, the base and platform being pivotally connected together at their broad ends, a fastening to secure a camera on the platform, and a clamp effective to hold the platform adjusted with relation to the base.

14. A camera-holding device comprising a base which is narrow at one end and has lateral flanges which diverge as they recede from that end, a platform which is broader at one end than at the other and has on it a camera-seat, the base and platform being pivotally connected together at their broad ends, a fastening to secure a camera on the platform, and a clamp effective to hold the platform adjusted with relation to the base, the platform being adjustable to a position in which it fits close to the base from end to end and between the flanges of the base.

EDWARD S. McALL.

Copies of this patent may be obtained for five cents each, by addressing the "Commissioner of Patents, Washington, D. C."

ADJCAM000125

Case 6:10-cv-00329-LED   Document 629-4   Filed 04/24/12   Page 58 of 64 PageID #:  5050

Corrections in Letters Patent No. 1,208,344.

It is hereby certified that in Letters Patent No. 1,208,344, granted December 12, 1916, upon the application of Edward S. McAll, of Ilion, New York, for an improvement in "Camera-Holding Devices," errors appear in the printed specification requiring correction as follows: Page 2, line 109, claim 6, after the word "hinge" and before the comma insert the words *and the other being fast on the base;* same page and claim, at the end of line 110 insert a period and strike out line 111; and that the said Letters Patent should be read with these corrections therein that the same may conform to the record of the case in the Patent Office.

Signed and sealed this 9th day of January, A. D., 1917.

[SEAL.]

F. W. H. CLAY,

*Acting Commissioner of Patents.*

ADJCAM000126

*Table of Contents*                                                                                                    *i*

# MPI Family Report (Family Bibliographic and Legal Status)

In the MPI Family report, all publication stages are collapsed into a single record, based on identical application data. The bibliographic information displayed in the collapsed record is taken from the latest publication.

**Report Created Date:**   2010-02-22

**Name of Report:**

**Number of Families:**   1

**Comments:**

## Table of Contents

1.   US5855343A   19990105   IREZ RESEARCH CORP     US
     Camera clip ................................................................................................................................   1



**Family1**

**1 records in the family.**

**US5855343A    19990105**



(ENG) Camera clip

**Assignee:**   IREZ RESEARCH CORP     US

**Inventor(s):**  KREKELBERG DAVID E   US

**Application No:**  US  81416897   A

**Filing Date:**  19970307

**Issue/Publication Date:**  19990105

**Abstract:**   (ENG) A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

**Priority Data:**  US 81416897 19970307 A I;

**IPC (International Class):**   A47G02900

**ECLA (European Class):**   F16M01302; F16M01112; F16M01120; G06F00116P2C

**US Class:**  248121; 248126; 248918

**Agent(s):**   Nawrocki, Rooney &  Sivertson, P

**Examiner Primary:**  Ramirez, Ramon O.

**Examiner Assistant:**  Phan, Long Dinh

**US Post Issuance:**
--US Litigations: NOTICE OF LITIGATION; NOTICE OF LITIGATION PAR Technologies, Inc. v. Philips
Electronics North America Corporation, et al, Filed Jul. 9, 2001, D.C.
Arizona (Phoenix), Doc. No. CIV '01 1273 PHX MHM; NOTICE OF LITIGATION Logitech, Inc. v. Par
Technologies, Inc. ,
Filed May 21, 2001, D.C. N.D. California, Doc. No. C01-1983 SI   Order
of dismissal with prejudice pursant to the parties' settlement agreement,
Filed January 14, 2002,HonorableSusan Illston, United States District
Court, Northern District of California

**Assignments Reported to USPTO:**
**Reel/Frame:**  08730/0592   **Date Signed:**  19970813   **Date Recorded:**  19970827
**Assignee:**  IREZ RESEARCH, CORPORATION SUITE 485 5929 BAKER ROAD MINNETONKA
MINNESOTA 55345

**Assignor:**  KREKELBERG, DAVID E.

**Corres. Addr:**  NAWROCKI, ROONEY & SIVERTSON, P.A. LAWRENCE M. NAWROCKI 3433
BROADWAY STREET N.E., SUITE 401 MINNEAPOLIS, MN 55413
**Brief:**  ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

 *MicroPatent Patent Index - an enhanced INPADOC database*

ADJCAM000128

**Reel/Frame:** 09669/0507  **Date Signed:** 19981219  **Date Recorded:** 19981231
**Assignee:** ANCHOR BANK NA 1055 E. WAYZATA BLVD. WAYZATA MINNESOTA 55391

**Assignor:** IREZ RESEARCH CORP.

**Corres. Addr:** HUGH D. JAEGER 1000 SUPERIOR BLVD., STE. 302 WAYZATA, MN 55391
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Reel/Frame:** 09671/0084  **Date Signed:** 19981219  **Date Recorded:** 19981231
**Assignee:** PAR TECHNOLOGIES, INC. 14605 AIRPORT DRIVE, SUITE 304 SCOTTSDALE ARIZONA
         85260

**Assignor:** ANCHOR BANK NA

**Corres. Addr:** HUGH D. JAEGER 1000 SUPERIOR BLVD., SUITE 302 WAYZATA, MN 55391
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Reel/Frame:** 12745/0992  **Date Signed:** 20020312  **Date Recorded:** 20020403
**Assignee:** WIYN INVESTMENTS 865 EAST SWEETWATER AVENUE SCOTTSDALE ARIZONA

**Assignor:** PAR TECHNOLOGIES, INC.

**Corres. Addr:** KINNEY & LANGE, P.A. ALANA BERGMAN 312 SOUTH THIRD STREET
         MINNEAPOLIS, MN 55415-1002
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FORDETAILS).

**Reel/Frame:** 12813/0714  **Date Signed:** 20020312  **Date Recorded:** 20020422
**Assignee:** GLOBALMEDIA GROUP 15020 NORTH 74TH STREET SCOTTSDALE ARIZONA 85260

**Assignor:** WIYN INVESTMENTS

**Corres. Addr:** KINNEY & LANGE, P.A. ALANA T. BERGMAN 312 SOUTH THIRD STREET
         MINNEAPOLIS, MN 55415-1002
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENTFOR DETAILS).

**Reel/Frame:** 17198/0952  **Date Signed:** 20060222  **Date Recorded:** 20060222
**Assignee:** WIYN INVESTMENTS, LLC 8665 E. SWEETWATER SCOTTSDALE ARIZONA 85260

**Assignor:** PAR TECHNOLOGIES, INC.

**Corres. Addr:** JOEL E. BARTHELEMY 8281 EAST GELDING DRIVE SCOTTSDALE, AZ 85260
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Reel/Frame:** 17207/0320  **Date Signed:** 20060223  **Date Recorded:** 20060223
**Assignee:** GLOBALMEDIA GROUP, LLC 8281 EAST GELDING DRIVE SCOTTSDALE ARIZONA
         85260

**Assignor:** WIYN INVESTMENTS, LLC

**Corres. Addr:** JOEL E. BARTHELEMY 8281 EAST GELDING DRIVE SCOTTSDALE, AZ 85018
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Legal Status:**

| Date | +/- | Code | Description |
|------|-----|------|-------------|
| 19970827 | () | AS | New owner name: IREZ RESEARCH, CORPORATION, MINNESOTA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:KREKELBERG, DAVID E.;REEL/FRAME:008730/0592; Effective date: 19970813; |



*MicroPatent Patent Index - an enhanced INPADOC database*

ADJCAM000129

| 19970827 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: IREZ RESEARCH, CORPORATION SUITE 485 5929 BAKER RO; Effective date: 19970813; |
| 19970827 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: KREKELBERG, DAVID E.; Effective date: 19970813; |
| 19970827 | () | AS02 | New owner name: IREZ RESEARCH, CORPORATION SUITE 485 5929 BAKER RO; Effective date: 19970813; |
| 19970827 | () | AS02 | New owner name: KREKELBERG, DAVID E.; Effective date: 19970813; |
| 19981231 | () | AS | New owner name: ANCHOR BANK NA, MINNESOTA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:IREZ RESEARCH CORP.;REEL/FRAME:009669/0507; Effective date: 19981219; |
| 19981231 | () | AS | New owner name: PAR TECHNOLOGIES, INC., ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:ANCHOR BANK NA;REEL/FRAME:009671/0084; Effective date: 19981219; |
| 19981231 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: PAR TECHNOLOGIES, INC. 14605 AIRPORT DRIVE, SUITE; Effective date: 19981219; |
| 19981231 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: ANCHOR BANK NA; Effective date: 19981219; |
| 19981231 | () | AS02 | New owner name: PAR TECHNOLOGIES, INC. 14605 AIRPORT DRIVE, SUITE; Effective date: 19981219; |
| 19981231 | () | AS02 | New owner name: ANCHOR BANK NA; Effective date: 19981219; |
| 20020403 | ( ) | AS | ASSIGNMENT New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUE SCOTTS; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | ( ) | AS | ASSIGNMENT New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUESCOTTSD; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC. /AR;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | () | AS | New owner name: WIYN INVESTMENTS, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | () | AS | New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUE SCOTTS; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | () | AS | New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUESCOTTSD; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC. /AR;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020422 | ( ) | AS | ASSIGNMENT New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREET SCOTTSDA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS;REEL/FRAME:012813/0714; Effective date: 20020312; |

ADJCAM000130

| | | | |
|---|---|---|---|
| 20020422 | ( ) | AS | ASSIGNMENT New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREETSCOTTSDAL; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS /AR;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20020422 | () | AS | New owner name: GLOBALMEDIA GROUP, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20020422 | () | AS | New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREET SCOTTSDA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20020422 | () | AS | New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREETSCOTTSDAL; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS /AR;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20060222 | ( ) | AS | ASSIGNMENT New owner name: WIYN INVESTMENTS, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:017198/0952; Effective date: 20060222; |
| 20060222 | () | AS | New owner name: WIYN INVESTMENTS, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:017198/0952; Effective date: 20060222; |
| 20060222 | () | AS | New owner name: WIYN INVESTMENTS, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:017198/0952; Effective date: 20060222; |
| 20060223 | ( ) | AS | ASSIGNMENT New owner name: GLOBALMEDIA GROUP, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS, LLC;REEL/FRAME:017207/0320; Effective date: 20060223; |
| 20060223 | () | AS | New owner name: GLOBALMEDIA GROUP, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS, LLC;REEL/FRAME:017207/0320; Effective date: 20060223; |
| 20060223 | () | AS | New owner name: GLOBALMEDIA GROUP, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS, LLC;REEL/FRAME:017207/0320; Effective date: 20060223; |

ADJCAM000131

# USPTO Maintenance Report

| Patent Bibliographic Data | | | 02/22/2010 05:21 PM | |
|---|---|---|---|---|
| Patent Number: | 5855343 | Application Number: | 08814168 | |
| Issue Date: | 01/05/1999 | Filing Date: | 03/07/1997 | |
| Title: | CAMERA CLIP | | | |
| Status: | 12th year fee window opens: 01/05/2010 | Entity: | | Small |
| Window Opens: | 01/05/2010 | Surcharge Date: | 07/07/2010 | Expiration: | N/A |
| Fee Amt Due: | $2,055.00 | Surchg Amt Due: | $0.00 | Total Amt Due: | $2,055.00 |
| Fee Code: | 2553 | MAINTENANCE FEE DUE AT 11.5 YEARS | | |
| Surcharge Fee Code: | | | | |
| Most recent events (up to 7): | 08/23/2006 08/23/2006 07/26/2006 08/19/2002 08/19/2002 07/23/2002 | Payment of Maintenance Fee, 8th Yr, Small Entity. 7.5 yr surcharge - late pmt w/in 6 mo, Small Entity. Maintenance Fee Reminder Mailed. Payment of Maintenance Fee, 4th Yr, Small Entity. Surcharge for late Payment, Small Entity. Maintenance Fee Reminder Mailed. --- End of Maintenance History --- | | |
| Address for fee purposes: | GLOBAL MEDIA GROUP, LLC 15020 N. 74TH STREET, SUITE B SCOTTSDALE, AZ 85260 | | | |

ADJCAM000132

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADJUSTACAM LLC

v.                                          NO. 6:10-cv-329-LED

AMAZON.COM, INC., ET AL.                    JURY

## ORDER

CAME BEFORE THE COURT the Objections of the Plaintiff AdjustaCam LLC ("to the Magistrate Judge's Memorandum Opinion and Order Regarding Claim Construction (Doc No. 627) (the "Opinion").  Upon review of the Objections, the Opinion and the other papers on file, the Plaintiff's objections are SUSTAINED.

The Court finds that nothing in the '343 patent or its prosecution history states that rotation is "limited to one axis of rotation."  Further, "[t]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  Claims 1 and 10 of the '343 patent, at element (a), each comprises "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member . . ."  If "rotatably attached" was "limited to one axis of rotation," then it would be redundant to have a "first axis of rotation" limitation also present in element (a) of claims 1 and 10.

Likewise, Claims 1, 10 and 21 of the '343 patent, at element (b), each comprises "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame. . ."  If "rotatably attached" was "limited to one axis of rotation" as

1

the Magistrate has erroneously ruled, then it would be redundant to have a "second axis of rotation" limitation also present in element (a) of claims 1, 10 and 21.

As the foregoing illustrates, it would be improper to import "single axis of rotation" into rotatably attached, including because it would make the "first axis of rotation" in element (a) redundant or superfluous, and it would make the "second axis of rotation" in element (b) redundant or superfluous. *See, e.g., Blackboard, Inc. v. Desire2Learn, Inc., 574 F.3d 1371, 1376 (Fed. Cir. 2009); Rambus Inc. v. Infineon Techs. AG,* 318 F.3d 1081, 1096 (Fed.Cir.2003) (claim limitation for a multiplexed bus, a limitation that would be redundant if "bus" already meant "multiplexed bus"). *See also Clearstream Wastewater Sys., Inc. v. Hydro–Action, Inc.,* 206 F.3d 1440, 1446–47 (Fed.Cir.2000) (explaining that the doctrine "prevents the narrowing of broad claims by reading into them the limitations of narrower claims").

Further, limiting the "rotatably attached" terms to a single axis of rotation would improperly limit the claims to a preferred embodiment. *See Phillips*, 415 F.3d at 1319-20.

Finally, the claims unequivocally refer to an apparatus "*comprising*" a "first axis of rotation" relative to the hinge member and camera and "second axis of rotation" relative to the hinge member and  support frame. The word "comprising," which in patent lexicography means "including, but not limited to" is "open-ended and does not exclude additional, unrecited elements." *CIAS, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356, 1361 (Fed. Cir. 2007); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999).While all that is required to infringe the claims is rotation in one axis per rotatable attachment, the claimed invention is not restricted to this embodiment.  Rather it *comprises* all types of "rotatable" attachments, including those which permit rotation in more than a single axis.  In addition, the

rotatable attachments *comprise* rotation over a first axis (as claimed), rotation over a second axis (as claimed), *and* rotation over other axes as well.

Accordingly, it is ORDERED that "rotatably attached," "adapted to be rotatably attached" and "adapted to rotatably attach" are herby construed as "connected such that the connected object is capable of being rotated" and "adapted to be connected such that the connected object is capable of being rotated," respectively, and that the Magistrate Judge's Ruling that the "rotatably attached" terms are  limited to one axis of rotation is hereby OVERRULED.

CLAIM CONSTRUCTION HEARING

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE EASTERN DISTRICT OF TEXAS
 3                        TYLER DIVISION
 4  ADJUSTACAM, LLC          )(
 5                           )(    CIVIL DOCKET NO.
 6                           )(    6:10-CV-329
 7  VS.                      )(    TYLER, TEXAS
 8                           )(
 9                           )(    FEBRUARY 9, 2012
10  AMAZON.COM, INC., ET AL. )(    9:00 A.M.
11               CLAIM CONSTRUCTION HEARING
12          BEFORE THE HONORABLE JUDGE JOHN D. LOVE
13               UNITED STATES MAGISTRATE JUDGE
14
15  APPEARANCES:
16
17  FOR THE PLAINTIFF:   (See Attorney Sign-In Sheet)
18
19  FOR THE DEFENDANTS:  (See Attorney Sign-In Sheet)
20
21  COURT REPORTER:      SHELLY HOLMES, Texas CSR 7804
                         Expiration Date:  12/31/12
22                       Sunbelt Reporting & Litigation
                         6575 West Loop South, Suite 580
23                       Bellaire, Texas 77401
                         (903) 593-3213
24
25  (Proceedings recorded by mechanical stenography,
    transcript produced on a CAT system.)
```

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2610

CLAIM CONSTRUCTION HEARING

1                    I N D E X

2

3

4  February 9, 2012

5                                              Page

6      Appearances                          1

7      Hearing                              3

8      Court Reporter's Certificate        98

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2611

CLAIM CONSTRUCTION HEARING

```
 1              COURTROOM CLERK:  All rise.

 2              THE COURT:  Please be seated.

 3              All right.  Ms. Morris, you may call the

 4    case.

 5              COURTROOM CLERK:  The Court calls Case No.

 6    6:10-CV-329, Adjustacam versus Amazon.com, et al.

 7              THE COURT:  Announcements.

 8              MR. SPANGLER:  Good morning.  Andrew

 9    Spangler on behalf of the Plaintiff.  With me today is

10    Mr. John Edmonds and Mr. Johnathan --

11              MR. YAZDANI:  Yazdani.

12              MR. SPANGLER:  -- Yazdani, yes.  And we're

13    ready, Your Honor.

14              THE COURT:  All right.  And for the

15    Defendants?

16              MR. CRAFT:  Morning, Your Honor, Brian

17    Craft.  I'm here on behalf of Amazon.com with Jacqueline

18    Lu, Steve Daniels, here on behalf of Best Buy entities,

19    CDW, Fry's Electronics, Hewlett Packard Company, Micro

20    Electronics, and Office Depot.

21              THE COURT:  Okay.

22              MR. HAMMOND:  Herbert Hammond on behalf of

23    Gear Head.

24              MR. SMITH:  Michael Smith on behalf of

25    Wal-Mart.
```

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2612

CLAIM CONSTRUCTION HEARING

```
 1              MR. YARBROUGH:  Trey Yarbrough, Your Honor,
 2   on behalf of the Newegg Defendants and Rosewill.  And
 3   John Zarian, as well.  Mr. Zarian will be arguing some
 4   of the disputed terms.
 5              THE COURT:  All right.  Thank you.
 6              We're here, of course, for claim
 7   construction hearing.  As the -- I'm sure you probably
 8   know, the way I want to approach this is to take this
 9   term-by-term.  I don't think there's, in this context,
10   really any necessity of any general tutorial of any
11   kind.  I think you can just jump right into the terms.
12   And we'll go back and forth on the -- term-by-term.
13              Let me, though, before we begin just kind of
14   get a clear understanding of what terms are in dispute
15   going forward here.  I'll just go kind of down the list.
16   I understand, I guess, that -- I'll just list them off,
17   that hinge member, rotatably attached terms,
18   disposition, support frame, I think these are the four
19   that I'm fairly certain are in dispute.  Are there any
20   other terms in dispute?  And I'm going off of what the
21   Defendants briefed.  Support frame, disposition, hinge
22   member, and rotatably attached.  Any other term in
23   dispute?
24              MS. LU:  No, Your Honor.
25              THE COURT:  Okay.  Just those four?
```

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2613

CLAIM CONSTRUCTION HEARING

```
 1              MR. EDMONDS:  No, Your Honor.  I mean, there
 2    are -- there are a number of agreements that may not be
 3    reflected in the chart we gave you --
 4              THE COURT:  Okay.
 5              MR. EDMONDS:  -- in terms of plain meaning,
 6    but those are the ones in dispute.
 7              THE COURT:  So that I'm understanding, then,
 8    those terms which are originally in dispute, is there
 9    agreement as to plain meaning?  Is that what I'm
10    understanding, or is there an agreement --
11              MS. LU:  That's right.
12              THE COURT:  Okay.  All right.  So with those
13    four terms in dispute, then let's begin, and I'll leave
14    it up to the parties as far as how they would like to do
15    the order of terms.  As always, just keep in mind your
16    time.  I don't think this hearing should take too long
17    with the disputed terms in dispute, but my typical
18    advice is to prioritize the most important terms first
19    to the parties.
20              So let me hear first from the Plaintiff.
21              MR. ZARIAN:  Well, if it please the Court,
22    Your Honor, counsel conferred before the hearing and had
23    proposed and agreed that the -- that the following order
24    of terms be -- be discussed, support frame, then
25    dispossession, then hinge member, then rotatably
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2614

## CLAIM CONSTRUCTION HEARING

1   attached, essentially in the order they were presented

2   in the briefing, Your Honor.

3           THE COURT:  Okay.  That's fine.  Okay.

4   Support frame, then.  Go ahead.

5           MR. EDMONDS:  Thank you, Your Honor, John

6   Edmonds here for the Plaintiff.

7           And let me make one correction to what we

8   said.  In terms of the -- the agreements on plain

9   meaning, there's one element, hingedly attached, that

10  the parties agreed on a construction.  It was connected

11  or joined via a hinge joint.  I believe the rest of

12  them we stated correctly had been agreed to be plain

13  meaning.

14          THE COURT:  Okay.  Connected or joined via a

15  hinge --

16          MR. EDMONDS:  Joint, Your Honor.

17          THE COURT:  -- joint or point?

18          MR. EDMONDS:  Joint.  Is there a -- if

19  there's a typo, it should be joint.

20          THE COURT:  It may be -- it may be just in

21  our -- what we put together.  Okay.  Go ahead.

22          MR. EDMONDS:  So -- and by the way, I think

23  hinge member is probably the most important term, but

24  the Defendants' presentation was done in a different

25  way, so we're going to do it that way, which is fine.

**Sunbelt Reporting & Litigation Services**
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

**A2615**

CLAIM CONSTRUCTION HEARING

1              And the first term that they want to do

2   is -- make sure I get their order correct here.  Okay.

3   The support frame.  So, Your Honor, a -- a support frame

4   is, we say, a very simple term, that in general, the

5   Defendants are trying to read extra limitations into

6   this element, and I -- and I think even though we're

7   going to do it one at a time, I think it's important for

8   the Court to understand the -- the combination, kind of

9   the one-two punch they're trying with support frame and

10  disposition, because they have the word -- in support

11  frame, they have the word disposition.

12             So when they have a construction of

13  disposition, they're -- they're trying to import that

14  into a support frame.  And as -- in terms of the

15  Plaintiff's construction of support frame, we say it's a

16  structural element that supports a hinge member.

17  We're -- we're somewhat close to the Defendants in that

18  we agree that it supports a hinge member.  That seems to

19  be an agreement.

20             But the -- the point of disagreement is that

21  whether the different dispositions have to be what

22  enable the support of the hinge member or whether the

23  support frame is just simply what supports the hinge

24  member.

25             And in -- in that regard, we can look at

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2616

1  Claim 1, and as you can see with Claim 1, Element B, we

2  have the support frame is rotatably attached to the

3  hinge member, and it's configured to support it.  The --

4  the Plaintiff says that that's all that's required by

5  this simple term, that's all that's required by a very

6  straightforward language in the claim.

7          What I see the Defendants saying is that the

8  Plaintiff's definition lacks context, but we disagree.

9  The context is provided within the claim itself, and

10  if -- what I'll do is I think our -- I think our

11  construction is fairly straightforward.  So I'll pick

12  apart theirs, which I think frames the issues somewhat

13  better for the Court.

14          The Defendants say that a support frame --

15  the different dispositions must be what enables support,

16  and then when they talk about disposition, they say that

17  that has to be something that's done in the second axis

18  of rotation.  So what they're trying to do is they're

19  trying to limit a support frame to something where

20  rotation in a second axis is the only thing that must be

21  the thing that enables support of -- of the hinge

22  member.  And that's just simply not required by these

23  claims.

24          That -- that may very well be an aspect of a

25  preferred embodiment, but as the Phillips case teaches

CLAIM CONSTRUCTION HEARING

1  us, and many other cases teaches us, as the Court is

2  well aware, claims are not limited to their preferred

3  embodiments.

4          The -- the Defendants say that we need more

5  physical structure in the construction.  The problem

6  with that argument is their construction doesn't provide

7  additional structure.  All it's doing is putting in

8  additional limitation -- importing additional limitation

9  into this element.

10         So as I see it -- can I get the one with the

11  colors on it -- this is kind of a colored version of

12  Claim 1, and it gives kind of a better explanation of

13  what's happening here so the Court can better understand

14  it.  We have a -- it's a -- it's a camera clip.  The

15  hinge member is attached to the camera, and the claim

16  requires that it rotates around a first axis of rotation

17  relative to the hinge member.  Then we have -- we have

18  our hinge member attached to a camera, now we have a

19  support frame that's attached to the hinge member.

20         So to us, the structure is clear of what's

21  required in this claim, as they -- the old saying the

22  leg bone connected to the hip bone and the hip bone

23  connected to the thigh bone.  Here we have a hinge

24  member that's attached to the camera; we have a support

25  frame that's attached to the hinge member.  And then the

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2618

CLAIM CONSTRUCTION HEARING

1   claim goes on to talk about how the hinge member, how

2   it -- how it rotates around a second axis -- axis of

3   rotation relative to the support frame.

4           And as the Court -- I don't want to go

5   through every element here, but I think the pictures

6   illustrate that in -- as claimed, we have the two

7   different dispositions here that are required by the

8   claim.  One is relative to the surface, and one is

9   relative to the object.  But those are already in the

10  claim.

11          As -- as we see it, if you take the

12  Defendants' restrictive construction, the claim now

13  becomes more limited than -- than it is already

14  structurally, and I think it's just a -- it's just a

15  non-infringement argument they're trying to make and an

16  improper claim construction in terms of what -- what the

17  Court should do.

18          The -- there's a lot of citations they have

19  to -- you have to have structure and you have to have

20  context, but what we'd say to the Court is carefully

21  read Claim 1 or Claim -- any of the -- any of the

22  independent claims, Claim 19 or Claim 20.  It's clear

23  from these straightforward claims what the structure is.

24  You have the hinge member that's attached to a camera,

25  you have a support frame that's attached to the hinge

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2619

CLAIM CONSTRUCTION HEARING

1    member.  The support frame attaches the hinge member,

2    which is what is rotatably attached to the camera.

3              So the structure is there.  It's very

4    straightforward, and what -- what the Defendants are

5    trying to do is not to put additional structure in.

6    They're just trying to limit the claim in a very

7    restrictive way.  If you -- if you limited this to the

8    rotation about a second axis of rotation it must be what

9    enables support of the camera, then that's a very

10   restrictive -- unduly restrictive interpretation of this

11   claim, and we say that the fact that the camera is

12   attached to the hinge member and that the hinge member

13   is attached to the support frame is what -- all you need

14   is -- all you need to support is to attach.

15             There's no need to -- to say that I have to

16   move it in a single direction to enable support.  It

17   only needs to be attached.  I think that's the -- the

18   gist of our argument there, and I think it's as simple

19   as that.

20             You know, the Defendants have a lot of

21   slides here, a whole lot of slides.  We just got them,

22   so we're kind of working through them, but, you know,

23   it's remarkable how much argument, how many slides, how

24   many cites it takes here to have the Court construe a

25   very straightforward term in a very straightforward

CLAIM CONSTRUCTION HEARING

1    context, and we respectfully submit that any argument
2    that this -- is this long and contorted and any argument
3    that is so dependent upon the preferred embodiments as
4    opposed to the straightforward claim language is
5    inevitably wrong, which is the case we have here.
6            Thank you, Your Honor.
7            THE COURT:  Well, let me -- let me ask
8    before I go to the Defendants, I don't at all disagree
9    with what you're saying, in other words, that the
10   support frame supports.  You know, that seems fairly
11   straightforward.
12           I guess my only question would be the
13   Defendants say, whose different disposition enable
14   support of said hinge member.  Now, just kind of explain
15   to me why that is unacceptable to the Plaintiff.  You
16   know, what do you see is that -- what does that
17   ultimately mean?  How does that ultimately work itself
18   out?
19           MR. EDMONDS:  Here's how --
20           THE COURT:  Yeah, go ahead.
21           MR. EDMONDS:  Thank you, Your Honor.
22           So as -- as the claim is structured, you
23   have a support frame that -- that is attached to the
24   hinge member supporting it, and the hinge member
25   supports the camera.  There -- there are also separate

CLAIM CONSTRUCTION HEARING

1   claim elements that cover the rotation and -- and -- or

2   the disposition of the support frame, and what's one of

3   the novel aspects of these claims is, as you can see

4   from the illustration, in one disposition, the -- the

5   support frame has -- as claimed has to have a first

6   disposition on the surface, which is the one that you

7   see sitting on the blue there, and then it has a second

8   disposition when attached to an object, which is what

9   you see at the bottom there.

10          So the -- the problem we have with the

11  Defendants' construction is that as I read it, because

12  they're using the word disposition in their construction

13  of support frame and because they limit disposition to

14  rotation about a single axis, what they're trying to do

15  is to now argue to the jury based upon that construction

16  that the -- these claims require that the only way that

17  the support frame can be attached to the hinge member is

18  that the rotation about a second axis is what must

19  enable that, and that's just simply a very restrictive

20  reading of it.  There's no requirement that the

21  disposition be what enable the support.  The attachment

22  itself can enable the support regardless of the

23  disposition of the camera.

24          THE COURT:  Okay.

25          MR. EDMONDS:  Thank you, Your Honor.

CLAIM CONSTRUCTION HEARING

```
 1              THE COURT:  All right.  Response?

 2              MS. LU:  Good morning, Your Honor.

 3              THE COURT:  Good morning.

 4              MS. LU:  So you just heard Plaintiff's

 5   explanation for what their construction of support frame

 6   is and why they think that's correct.  Defendants

 7   disagree.  Defendants will tell you that and demonstrate

 8   that Plaintiff's construction lacks context.

 9              And Your Honor asked an excellent question

10   just now, what is it about including the word

11   disposition that's unacceptable or incompatible somehow

12   with the finding of what a support frame is in this

13   context, and the Defendants agree, that is an excellent

14   point.  And as we will show you, the two have to be

15   related, and if Your Honor will permit, because

16   disposition is also a disputed term and Defendants are

17   of the position that the two terms have to be related

18   structurally to what it means to have a support frame in

19   the claims, if it would be permitted by Your Honor, we'd

20   like to go ahead and present the arguments for

21   disposition and support frame together just because they

22   flow together logically.

23              THE COURT:  That's fine with me.  I'll allow

24   the Plaintiff to respond back to support frame and then

25   respond to disposition, as well.
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2623

CLAIM CONSTRUCTION HEARING

1           So go ahead.

2           MS. LU:  Okay.  Thank you, Your Honor.

3           So, first of all, we just looked at the

4   claims.  We saw a lot of colored boxes highlighting

5   specific words in the claim, but let's not forget what

6   the claim and really the patent here is about.  The

7   entire patent is about a camera clip, not the camera,

8   just the clip part of the camera, and this clip is used

9   to support the camera on different surfaces.  You can

10  put it on a desk, you can put it on top of a screen.

11          And the four terms that the parties are

12  disputing all have something to do with the clip.  The

13  clip is a device that fulfills a function, and all these

14  terms relate to that device and its function.  So the

15  disagreement really between the parties underlying all

16  four terms, and it will become clear as we go through

17  each of these, is that should the disputed terms be

18  construed to take into account the relationship to the

19  entire functioning device, the entire clip or not?

20          Now, Defendants would say, yes, and the

21  reason is -- I think becomes pretty clear when we look

22  at what the terms actually are.  So two of the terms are

23  support frame and hinge member, and what these actually

24  are in the clip are its pieces.  Just for convenience,

25  we have here a visualization of that, a figure taken out

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2624

CLAIM CONSTRUCTION HEARING

1    straight from the patent, the hinge member here, and the

2    Plaintiff has also already highlighted this in their own

3    version of the diagram, but we used a different color

4    scheme.  It's highlighted here in blue, and the support

5    frame is highlighted here in red.

6              So these are physical pieces.  The support

7    frame is a thing.  It's a part of the clip.  The hinge

8    member is a physical thing that's a part of the clip.

9              Now, aside from that, the other two terms,

10   rotatably attached and disposition, relate to how these

11   pieces are joined together and how they function

12   collectively in the clip, and we'll go into detail as to

13   exactly what's going on.

14             So the patent itself tells us what the clip

15   is for, and that's pretty clear.  It supports a camera,

16   and permissibly it can support a camera on either a flat

17   tabletop, flat horizontal tabletop, and you can also put

18   it on a non-flat surface, for instance, the housing of a

19   laptop screen, and here we have a couple of excerpts

20   just from the face of the patent itself, and it

21   basically just talks about the desire in the industry

22   for having some kind of adaptable support apparatus

23   going from tabletop to laptop.

24             And so accordingly, in the summary of the

25   invention section, the patentee describes it as being an

CLAIM CONSTRUCTION HEARING

1  object of the invention to provide such a clip that can

2  take you from horizontal tabletop to nonhorizontal

3  laptop screen.

4          So that said, the patent also tells you how

5  the invention does this.  It also tells you how the clip

6  is able to do this, and it's through rotation and motion

7  among its parts.  That's how the clip works.

8          Again, here seen in the summary of the

9  invention section, the clip is described here as being

10  able to be rotated into a first position to support the

11  camera on the surface of the table or a desk, and then

12  you rotate it again into a second position to support

13  the camera on the display screen of a laptop computer,

14  and the parts of the camera, as they are set out in the

15  claims, and here's just a simple excerpt from

16  Independent Claim 1, which all the parties have been

17  referring to as sort of the example representative of

18  all the -- all the independent claims are the hinge

19  member and the support frame.

20          Okay.  So we have here a clip.  We know what

21  it's supposed to do.  We know that it does this through

22  rotational motion among its parts, but, I mean,

23  logically the next question is, so what's rotating?

24  What -- what's actually the motion that's going on here?

25          And the claims tell you where and how the

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2626

18

CLAIM CONSTRUCTION HEARING

1  claim -- how the clip provides rotational motion.  And

2  there's really only two places where anything can move.

3  There's a first axis of rotation at the point where the

4  hinge member may be attached to a camera, and there is a

5  second axis of rotation where the support frame attaches

6  to the hinge member.  These are the only locations

7  described in the claims talking about where in or about

8  the clip that this thing can move.

9         So knowing this is a physical object and

10  describing it in words and telling you about axes and

11  pieces connecting together, it may be a bit hard to

12  visualize, so towards that end, Defendants have put

13  together a simple animation based on the figures of the

14  patent just to show you how everything fits together.

15         And my colleague will please play the

16  animation.

17         (Animation played.)

18         So here we have the first axis.  The first

19  axis is at the point of connection between a camera and

20  the hinge member, and it rotates.  That's where the

21  first axis is.  And then the following slide, this is

22  where the second axis is.  The second axis is at the

23  point of connection between the support frame and hinge

24  member, and it also allows rotational motion.  So there

25  you go.

CLAIM CONSTRUCTION HEARING

 1          Now, we've been saying time and again this
 2   is a device with a particular function.  It takes you
 3   from tabletop to laptop.  So we know where the pieces
 4   are.  We know where the axes are.  Putting it together,
 5   how does it work?  Motion about the second axis.  And
 6   there you go.  It takes the clip from tabletop to
 7   laptop, one smooth motion.  And this is just a slide for
 8   later reference if you like, Your Honor, to sum up what
 9   the previous animation shows.  So there's really no
10   point in reading off of it right now.
11          But anyway -- so that brings us to the terms
12   that are actually disputed.  We know what the clip is.
13   We know that the support frame is a piece of this clip.
14   We know the clip performs a specific function.  So what
15   does it mean in relation to the invention that's claimed
16   in the patent to have a support frame?
17          And Plaintiff would answer this question
18   differently from Defendants, as you've already seen.
19   Plaintiffs would say it's a structural element that
20   supports a hinge member.  Okay.  And Defendants, just so
21   you have our complete construction in front of you,
22   would say that it's a physically distinct structural
23   element whose different dispositions enable support of
24   the hinge member.
25          And the reason why Defendants' construction

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2628

CLAIM CONSTRUCTION HEARING

1  gives you a little bit more information, Your Honor, is

2  that the type of physical structure that a support frame

3  is and what it does in the context of the clip because

4  it's a part of a clip that performs a function, all

5  these things have to be taken into account in

6  determining what a support frame is.

7         So if we start not with the preferred

8  embodiment, as Plaintiffs seems to believe we did, but

9  just with the claim language, it states here in

10  Subparagraph B describing the support frame, we have a

11  support frame rotatably attached to said hinge member

12  and configured to support said hinge member on the

13  surface and the object.

14         Okay.  So what does -- what does this tell

15  us?  We know that in the context of a clip, a camera

16  clip that can take you -- take the camera from tabletop

17  to laptop, the support frame is the structural element

18  within this clip that is responsible for providing

19  support on the tabletop and on the laptop, on the

20  different surface and the different object.

21         But if we stop here, Your Honor, all that

22  tells you is what the support frame does.  What does

23  this tell you about what it is physically?  I mean, I

24  can tell you that it can go from tabletop to laptop, but

25  what's -- what is the shape of this thing?  How does it

CLAIM CONSTRUCTION HEARING

1   actually do any of this?  It doesn't say.  And that

2   precisely is why Plaintiff's construction is, in the

3   Defendants' opinion, willfully incomplete.

4           So, again, just for quick reference,

5   Plaintiff's construction of support frame is that it's a

6   structural element that supports a hinge member.  It

7   doesn't actually tell you what the physical thing is,

8   and just saying that it's a structural element also

9   doesn't give you any information, because element, as we

10  already know from various old cases out there, is a

11  generic term.  It just says a thing exists.  It doesn't

12  tell you what the thing is.

13          And so as a practical matter, if you look at

14  Plaintiff's construction, take a careful look at it,

15  what it's really saying is that a support frame is a

16  means for performing the function of supporting a hinge

17  member.

18          Now, Plaintiff can't do this for several

19  reasons, and in their brief, there's case law cited, but

20  really what it all boils down to is common sense.  They

21  can't be allowed to claim all possible means, physical

22  or otherwise, for supporting the hinge member because

23  it's an old canon of claim construction, and here's a

24  citation provided here, but really we don't even need to

25  look at it, that you can't just define physical things

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2630

CLAIM CONSTRUCTION HEARING

1   solely by what they do instead of by what they actually

2   are.

3           And, again, there's citations for this, but

4   the principle is really rooted in common sense.  If you

5   don't tell me what the physical thing is that's doing

6   something, and I'm claiming or supposedly claiming a

7   physical thing, then conceivably that thing that

8   performs a function could be any conceivable physical

9   thing that could conceivably somehow fulfill that

10  function and -- because really just there's no limits.

11  There's no metes and bounds to what the thing itself is,

12  as a result of which any given member of the public

13  reading a patent like this would go, okay, you're

14  telling me there's a thing that can do this, but what --

15  what's the thing?  I have no idea.  There's no

16  fulfillment of the public notice function, which is the

17  entire point of why we have patents, why we require the

18  patentees to describe what their inventions are.

19          And that is why, Your Honor, time and again

20  the Courts have said, reiterated -- reiterating this

21  common sense principle, that the patentee simply cannot

22  be allowed to claim all possible means of achieving a

23  function.  You have to tell me what the thing is and how

24  it's achieving that function for me to have any idea of

25  what it is that you're talking about.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2631

CLAIM CONSTRUCTION HEARING

1          Now, there's two different ways out of this,

2    and this is also well established, and both by statute

3    and in the case law, just as a quick summary, one of

4    them is established by Congress in Title 35, Section

5    112, Paragraph 6, and that is the availability of

6    means-plus-function claiming.

7          You can designate a term as literally being

8    I'm only claiming the means for performing a function,

9    but the result, the consequence mandated by statute of

10   doing that is you have to limit what it is you're

11   claiming to the specific structure that's described in

12   the patent and its equivalence, and that's it.  And the

13   only other way out -- and the only other alternative to

14   that is you tell me something about what the physical

15   structure is in the language of the claims.  You have to

16   give me some idea of what it is.

17          Now, here, Plaintiff has not even attempted

18   to argue that a support frame is a means-plus-function

19   term.  Defendants don't think it should be either, but

20   at the same time, if you look at their construction,

21   Your Honor, they're saying that a support frame is

22   basically any sort of physical means for supporting a

23   hinge member, which completely goes back on the position

24   that they've been taking on the construction since the

25   beginning, that there are no means-plus-function terms

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2632

CLAIM CONSTRUCTION HEARING

1   here, and also goes against this very old common sense

2   principle, that if you're claiming a physical thing that

3   does something, you have to tell me what the thing is,

4   you can't just tell me what it does.

5           So the only alternative left here for -- for

6   us to make any sense of what the claims are going to is

7   to look to the claims to tell us something about the

8   physical structure.  And this is precisely what

9   Defendants aim to do.

10          So here the claim language does actually

11  tell us something about the physical characteristics of

12  a support frame.  Again, going back to Subparagraph B of

13  Independent Claim 1 as an example, it tells you that the

14  support frame is configured, shaped somehow or arranged

15  somehow, to support the hinge member on a flat surface

16  or a vertical object such that it would have a first

17  disposition when it's positioned on a generally

18  horizontal flat surface and a distinct second

19  disposition attached to a -- an object that has been

20  inclined from a horizontal position.

21          Now, what does that tell us?  So

22  disposition, to the extent that there's any agreement

23  between the different sides at all on what that word

24  means, refers to a configuration or an arrangement,

25  something has been arranged in space.

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2633

CLAIM CONSTRUCTION HEARING

1          So at the very least, the very least that
2   the claims require is that the physical structure of the
3   support frame has to be such that it could take these
4   different dispositions.  The physical structure of the
5   support frame has to allow it to have these different
6   configurations depending on whether or not it's resting
7   on a flat desk or on a laptop screen.  That's the very
8   least.

9          Now, Plaintiff will say that the
10  dispositions are not related to supporting the hinge
11  member, but because the support frame can support the
12  hinge member by being attached to it, I mean, just as --
13  at a very superficial level, the word attached is not
14  the same as support, and I don't think there's any
15  reason why we should confuse the two.

16         And just for another more graphic example,
17  imagine, Your Honor, that I have, say, like the -- any
18  given camera or camera plus clip assembly in my hand,
19  and we know that the camera is attached to the hinge
20  member, if I can flip the entire camera plus clip
21  assembly upside down and somehow balance the camera on
22  the desk, does the camera now become the support frame?
23  It's attached to the hinge member, but it's not, and
24  it's not because it does not have the structural
25  characteristics required of a support frame in the

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2634

CLAIM CONSTRUCTION HEARING

 1   claims.  But just saying that it's attached to the hinge

 2   member does not get you there.

 3           And we can look also to the specifications

 4   permissibly just as further confirmation of what the

 5   claims are already telling us, that it's the

 6   dispositions or the different dispositions of the

 7   support frame that allow it to provide support for the

 8   entire hinge member and camera assembly on different

 9   surfaces.

10           For instance, here, going back to the

11   summary of the invention section, that's the shortest

12   text -- the smallest text box you see in front of you,

13   it says that the clip may be rotated to a first position

14   to support the camera on the desk, rotated to a second

15   position to support the camera on a vertical object such

16   as the display screen of a laptop computer, and then,

17   also, further clearer descriptions of what one

18   embodiment of the invention would do.

19           In Figure 2, you see that the entire camera

20   plus clip assembly is resting on a flat, horizontal

21   surface, and in describing what's going on in Figure 2,

22   the specification tells you that in the embodiment,

23   there are specific rear end support elements -- rear end

24   support elements 38 and 40 and 42 that are touching

25   the -- or engaging the flat, horizontal surface at

CLAIM CONSTRUCTION HEARING

 1  certain locations such that the entire assembly is

 2  resting in the position 44.

 3          Basically, what that's telling Your Honor is

 4  the parts of the support frame are arranged or

 5  configured in a certain manner, and that is how the

 6  entire assembly can rest on a flat surface.

 7          Now, Figure 4 will show you another

 8  disposition, a second disposition where the entire

 9  camera plus clip assembly is resting on an inclined

10  object such as a laptop screen, and, again, what's going

11  on here to clarify what the support frame is doing, the

12  specification tells you that the rear end support

13  elements 38, 40, 42 are touching the housing at the

14  locations shown in 44 such that the entire assembly is

15  supported in a position 54.

16          So there you go.  This is just further

17  confirmation with pictures showing you that as the

18  claims say, the disposition of the support frame is what

19  allows it to support the hinge member on a flat desk or

20  a laptop screen.  So --

21          THE COURT:  I guess -- I just have a

22  question, I guess.

23          MS. LU:  Uh-huh.

24          THE COURT:  Let me just go through them.  I

25  guess just to the point you just raised, I'm not sure

CLAIM CONSTRUCTION HEARING

1  that I'm understanding why the different dispositions

2  enable support.  I mean, why doesn't the support

3  frame -- just a piece of plastic itself support the

4  hinge member?  I mean, why does it have to be in certain

5  dispositions or, you know, I mean, why does it just in

6  and of itself provide support?  It's a frame that

7  supports.  I don't understand why that's of necessity,

8  the disposition supporting the hinge member.

9          MS. LU:  That's an excellent point, Your

10  Honor, and to kind of help clarify our point, it's not

11  Defendants' contention that the word support doesn't

12  have some meaning in the English language.  What we'd

13  ask the Court to do is look at what the entire invention

14  is, and the entire invention as described in the -- oh,

15  I guess I don't have to go all the way back -- but if

16  you recall from the brief introductory section, the

17  entire invention is a clip that can take you from

18  tabletop to laptop.

19          I mean, you could have a piece of plastic

20  attached to a hinge member, but the point of the clip as

21  a whole is to be able to provide support on different

22  surfaces.  So when we say providing support, in the

23  context of what the invention is designed to do, that

24  means providing support on top of different things, and

25  in order to be adapted to differently inclined surfaces

CLAIM CONSTRUCTION HEARING

1   and objects, something about the invention has to be

2   adaptable, as well.  And those adaptations, as the

3   patentee described in the claims, are the different

4   configurations or dispositions of the support frame.

5            THE COURT:  Well, I don't -- I'm not saying

6   necessarily by what I'm asking that I disagree with your

7   overall sort of position as to what this invention is

8   designed to do and what it does and all that.  But I

9   guess my question would be why is it important to I

10  suppose implement that idea into the definition of

11  support frame?

12           And I guess what I'm getting to is I guess

13  I'm not clear from your argument why the claim itself

14  doesn't outline what you just said?  I mean, it talks

15  about that it's configured to support the hinge member

16  on the surface and the object, and it goes on to talk

17  about the first axis and the second axis and all that.

18           I guess I don't -- I mean, is the claim, you

19  know, that unclear that we've got to define the support

20  frame by the different dispositions when the different

21  dispositions are talked about in the claim?

22           MS. LU:  You know, Your Honor, that is an

23  excellent point, and from Defendants' perspective, the

24  claim is clear, too, but the mischief at work here is

25  not whether the entire claim is clear.  The mischief

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2638

CLAIM CONSTRUCTION HEARING

1  that Defendants are concerned about is in Plaintiff's
2  construction.
3         It states that a structural element -- or a
4  support frame is just a structural element that supports
5  a hinge member.  And as you heard just now from
6  Plaintiff's argument with respect to this term, they
7  don't see any reason even to relate the dispositions to
8  what a support frame -- what this thing that's the piece
9  of a clip is.
10        And from Defendants' perspective, that's a
11 problem because the claims are clearly required, impose
12 a physical limitation on what the shape of a support
13 frame is, and that physical limitation has to require it
14 to provide support by taking these different
15 dispositions, but it's inherent in Plaintiff's argument,
16 as you heard just now, Your Honor, that they're trying
17 to divorce the idea that the shape of the support frame
18 has to be limited in this way for it to function in the
19 way that it's supposed to to serve its role in the clip
20 from the definition of support frame.  And that is what
21 Defendants are concerned about.
22        So we really appreciate, Your Honor, that
23 you're looking deeply into the claims and seeing the
24 same point that Defendants have been seeing, is that the
25 dispositions is a physical property that's inherent and

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2639

CLAIM CONSTRUCTION HEARING

1   necessary to what the support frame is, and we just with

2   our construction hope to clarify that and avoid the

3   mischief that Plaintiff's construction would otherwise

4   work.

5           THE COURT:  Okay.  Let me ask you, I guess

6   I'm also a little bit unclear.  I think part of your

7   problem with Plaintiff's proposal is that you say, well,

8   it just is sort of defining support frame by what it

9   does, by its function.  I'm a little unclear as to why

10  your proposal that adds -- essentially it's the same

11  thing, except it says, whose different dispositions

12  enable support.

13          I'm not sure that different dispositions

14  provides any more structural identification than -- than

15  theirs does.  It seems to also go to the function, you

16  know, that it's -- as to how you position the support

17  frame it -- it supports.

18          I suppose that might give a little bit more

19  of an idea of what the -- of what it looks like, but it

20  seems like it also is sort of discussing it in -- in

21  functional terms.  So I guess have I kind of articulated

22  what you believe as far as different dispositions that

23  gives at least a little bit more of an idea how the

24  support frame would -- would look and would be

25  structurally composed?

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2640

CLAIM CONSTRUCTION HEARING

1              MS. LU:  Yes, that's right, Your Honor.  So
2  the thing here, and I guess Defendants are also trying
3  to be modest and not trying to overreach at all as
4  Plaintiffs contends in looking to the preferred
5  embodiment.
6              Now, what would really give a clear picture
7  of what the support frame physically is, is if you just
8  look to the illustrations in the specification.  I mean,
9  that -- if anything tells you what the structure of this
10 thing is, it's that.  But in the interest of being
11 agreeable, not trying to restrict the patent any more
12 than the claims do, Defendants have not attempted to say
13 that the support frame is a physical thing with front
14 and back legs, you know, rear end support elements 38,
15 40, and 42.
16             But at a minimum, and this is another
17 reason why Defendants would like to present their
18 constructions for disposition and support frame
19 together, Your Honor, is that the word disposition, in
20 order to be arranged in a certain way, you have to also
21 be able to give some idea of what the arrangement is,
22 because an arrangement is something that exists in
23 physical reality.  It's something put together or
24 configured in space.  And so that gives much more of a
25 physical idea of what a support frame is than

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2641

CLAIM CONSTRUCTION HEARING

1    Plaintiff's construction.

2           We agree it could be better.  The patent

3    could have gone ahead and described more structure, but

4    at a minimum, at a very minimum, as required in the

5    claims, this is what it is.

6           Now, if Your Honor would -- is of the

7    opinion that it would be clearer if we just say, it has

8    front and rear support elements 40, 42 and 38,

9    Defendants would be amenable to that, as well.

10           THE COURT:  Okay.  Well, let me hear back

11   from the Plaintiff.  I think I need to get with them

12   on -- I guess, Mr. Edmonds, what -- going, I guess, more

13   to this idea of disposition, I guess, what is the

14   Plaintiff's position on -- I mean, it talks about -- you

15   look at Claim 1, said support frame having a first

16   disposition, positioned on said generally horizontal

17   substantially planar surface and said support frame

18   having a second disposition attached to the object --

19   you know, so it talks about, obviously, first and second

20   disposition, first and second axis.

21           I mean, give me an idea of, you know, what

22   does this mean?  You know, what is the jury to make of

23   this?  How are they to interpret what's going on here?

24   Are we -- you know, even if the Court does not put that

25   the frame has different dispositions, we go to

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2642

CLAIM CONSTRUCTION HEARING

```
 1  disposition, define it.  They propose through rotation
 2  about the second axis -- I mean, what is -- what is the
 3  Court and the jury supposed to do with that?  I mean,
 4  what -- what is going to be your position as to what
 5  these -- what this means?  I mean, are these the
 6  dispositions, you know, related to these axes?  Are they
 7  related to these objects?  I mean, how does this thing
 8  work?
 9              MR. EDMONDS:  Fair enough, Your Honor.
10              Could I have their Slide 21 back?  I thought
11  it may have illustrated it better than anything else.
12  21.
13              As we see it, Your Honor, the -- what
14  they're talking about in terms of what they're trying to
15  shoehorn into the definition of support frame, those are
16  already provided for in the claim itself, and in terms
17  of the support frame that's required to have a first
18  disposition, it's already there.
19              So there's no -- you know, we're not
20  claiming that that's not part of the claim.  We're just
21  saying that that's not what enables -- what is required
22  to enable support.
23              THE COURT:  Okay.  But let -- let's move --
24              MR. EDMONDS:  Yes.
25              THE COURT:  -- let's move from support
```

CLAIM CONSTRUCTION HEARING

1  frame, I want to move to disposition itself.

2              MR. EDMONDS:  Yes, Your Honor.

3              THE COURT:  Okay.  Your proposal is

4  configuration or arrangement for disposition, correct?

5              MR. EDMONDS:  Yes, Your Honor.

6              THE COURT:  And they're proposing

7  configuration of the support frame enabling support of

8  the hinge member accomplished through rotation about the

9  second axis.  What I'm really concerned about is not so

10 much about the first part of what they proposed but the

11 second part, that this disposition is accomplished

12 through rotation about the second axis.

13             MR. EDMONDS:  Same -- same concern here,

14 Your Honor, and it's frankly not clear to us what

15 non-infringement argument this supports.  And maybe the

16 Defendants could enlighten us as to whether that webcam

17 there would -- would meet the claim as they have

18 proposed to be construed, because apparently what

19 they're -- what we see them doing is they're trying to

20 limit -- disposition is -- is just a very

21 straightforward word.  Configuration is a very

22 straightforward word.  And they're trying to limit that

23 to something that's accomplished about the second axis.

24 So they're trying to -- to limit the word disposition to

25 a -- if I could borrow your webcam.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2644

CLAIM CONSTRUCTION HEARING

1          They seem to be trying to limit disposition
2    to something that's limited to one axis, one thing.  So
3    what they seem to be saying is that I have to enable
4    support of this camera by this -- something that happens
5    in this axis, and apparently they have a
6    non-infringement argument to say that, okay, I may be --
7    I may be supporting this thing, but what's enabling this
8    support is not what's happening on this axis.
9          That -- that's all we can tell they're
10   trying to do, and that's why I think they're trying to
11   import things that are already in the claim into this
12   term because there's a sleight-of-hand here to where
13   they're -- because they're trying to limit it to the
14   second axis, they're trying to import a whole
15   non-infringement argument into one claim term.
16          And, you know, like I said, I'd invite them
17   to say would this infringe under their construction?  If
18   not, why not?  And then maybe we'd understand why
19   they're making this argument better.  But all we can see
20   is they're -- they're taking words that don't belong
21   there, and they're adding them, and there's obviously
22   some reason.
23          THE COURT:  Okay.  Well, that's a point well
24   taken.  But I guess what I want to understand is -- I
25   think what they're saying is that in their animation

CLAIM CONSTRUCTION HEARING

1  that the disposition, let's say, on the object is

2  accomplished through this sort of back and forth which

3  is oriented about the second axis.  Am I correctly

4  stating your understanding?  Maybe I need to get them up

5  here.

6             MR. EDMONDS:  Well, if we pull up Claim 1, I

7  think it's -- it's easier to -- to follow here.  So as

8  far as -- I think, Your Honor, that -- and as far as the

9  first axis and the second axis, I think that -- that

10 everyone, I think, seems to -- to disagree that the

11 first axis is vertical.  That's the way this works,

12 because -- because you're dealing with horizontal

13 surfaces and something that's inclined from a horizontal

14 surface.  So the first axis is vertical.  The second

15 axis is horizontal.

16             And in terms of what was -- I think -- I

17 think that's already -- and what we're saying is that

18 the support frame has to have a first disposition on the

19 table, and it has to have a first disposition -- a

20 second disposition on the object or the laptop.

21             Now, the support frame, you could still have

22 a support frame, and -- but if it doesn't have a first

23 disposition on the surface and if it doesn't have a

24 second disposition on the object, then it doesn't

25 infringe.  It's still a support frame.  It's just that

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2646

CLAIM CONSTRUCTION HEARING

1   the claim limitation is not --

2           THE COURT:  But that's my question, I think,

3   is --

4           MR. EDMONDS:  Right.

5           THE COURT:  -- you say, okay, the support

6   frame has to have a first disposition and a second

7   disposition.  How are you defining -- you're saying it's

8   just a configuration or arrangement?

9           MR. EDMONDS:  Right.

10          THE COURT:  And what I'm trying to get at

11  is -- I guess my question is, is that enough?  They're

12  saying that disposition is accomplished through rotation

13  around the second axis, I think, or the first axis, but

14  what is your -- I mean, is it -- is it -- is the

15  disposition connected to the axis of rotation, I guess,

16  is what I'm asking?

17          MR. EDMONDS:  Fair enough.

18          THE COURT:  And if it is, how are you

19  defining -- how are you kind of linking the two

20  together?

21          MR. EDMONDS:  Well, they're -- they're

22  linked together by the other claim language, and -- and

23  if I may borrow -- so it just has to have a -- we have

24  to have, one, a first disposition, one, a second

25  disposition.  There's no -- there's no limit on what

CLAIM CONSTRUCTION HEARING

1   those are until you get to the other claim limitations.

2          First -- first disposition is sitting flat.

3   The second disposition would be here what's sitting on

4   top of the computer.  Fair enough.  Now, that's all

5   that's required.  It has to have a first disposition on

6   the surface, a second disposition on the -- on the

7   object.

8          Now, separately in the claims, it says that

9   there has to be an axis rotation for the hinge member,

10  and it says there has to be an axis rotation for the

11  support frame, and that those axes have to be

12  perpendic -- generally perpendicular to each other.

13  That's -- what you're asking about is already there in

14  the claim.  There's no need to -- there's no loss of

15  structure.  There's no ambiguity.  The claim itself

16  provides, as I said, the hip bone's connected to the leg

17  bone.

18          We understand how these pieces are connected

19  and how they move by the claim, and -- and going to our

20  definitions, well, disposition -- see, there's no --

21  there's nothing in the -- in the claim that says that

22  the support has to be accomplished through rotation

23  about a second axis.  It just simply says it has to

24  support, it says it has to have two configurations.

25  Separately it says that there have to be two axes

CLAIM CONSTRUCTION HEARING

1   relative to the hinge member and relative to the camera.

2          So when you -- the sum total of what they're

3   trying to do is they're trying to limit it to where the

4   rotation about the second axis has to be the thing that

5   enables support of the camera, and that's just simply

6   not in the claim.  The claim wasn't written that way.

7          Thank you.

8          And we had one thing for the Court.  We're

9   familiar with the Markman ruling from the Court in -- I

10  call it SFA, it's Sales Force Automation.  I think there

11  were two different Markmans, and I think in that case,

12  the Defendants had argued something similar relative

13  to -- let's see, the claim term had to do with -- I

14  think it was just hardware or software that did

15  something, and they were -- there was -- the Defendants

16  in that case had suggested that -- that that wasn't

17  enough, and the Court looked at the surrounding claim

18  language and saw that proper context and proper

19  understanding was given by the surrounding claim

20  language.  That may be something that might inform the

21  Court here.

22          THE COURT:  Okay.  All right.  I'd like, I

23  think, to go ahead and move on, unless there's something

24  else specifically the parties want to address on support

25  frame or disposition, go ahead and move on to the next

CLAIM CONSTRUCTION HEARING

 1  two -- or, I guess, whatever the -- I think we got left

 2  rotatably attached and hinge member.  So unless you have

 3  something specific to address on -- on either one of

 4  those -- the two terms we just talked about, I think

 5  we're ready to move on to the other two.

 6            MS. LU:  Actually, Your Honor, there is

 7  something specific Defendants would like to address with

 8  respect to what Plaintiffs just said --

 9            THE COURT  okay.

10            MS. LU:  -- and with respect to the

11  disposition.

12            THE COURT:  Go head.

13            MS. LU:  So I think, Your Honor, the

14  question that you posed just now is here the claims tell

15  you there's a second axis, here the claims tell you that

16  there is different arrangements, physical arrangements

17  of the support frame that depending on what it's resting

18  on that the patentee termed the first disposition and

19  the second disposition, and I think what Your Honor was

20  getting at, and this was something that Defendants

21  struggled with, as well, is if you're telling me that

22  something -- there's a physical thing in space that can

23  be arranged in certain ways, and it can be moved from

24  one arrangement to another, then logically the next

25  question is, well, how do you -- how do you arrange it?

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2650

CLAIM CONSTRUCTION HEARING

1   What -- what's an arrangement?

2            And Plaintiffs would respond that you look

3   at the claims and the word disposition is a simple word,

4   and it has a plain and ordinary meaning, or it means

5   configuration or arrangement, well, you can say all

6   that, but we're not trying to determine whether or not

7   the word disposition has a meaning in the English

8   language out there in the abstract.  We're here talking

9   about a camera clip whose shape is adapted so that you

10  can go from tabletop to a laptop.  That is what we're

11  talking about here.

12           And in this context, what does it mean when

13  you have a disposition, and what does it -- what is its

14  relation really to the rest of what's in here?  And the

15  Defendants would say that from the claims, it's apparent

16  that a disposition, you can't simply say that it's just

17  the configuration, because that still tells you nothing

18  what a physical arrangement of a physical thing in space

19  physically is.

20           And just to drive the point home, we brought

21  here a couple of examples.  Here we have U.S. Patent

22  5,8 -- 5,857,684 for a collapsible golf cart, and before

23  the parties get up here and object and say it has

24  nothing to do with the camera clip, that is actually

25  precisely Defendants' point.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2651

CLAIM CONSTRUCTION HEARING

```
 1            Golf cart, collapsible or not, is not a
 2  camera clip, has nothing to do with a camera clip.  Yet
 3  you look at the claims here, and what is it talking
 4  about but a frame that has different dispositions.  I
 5  mean, what's the difference between a disposition here
 6  and a disposition in the patent that we're talking
 7  about?  They both mean arrangement.  They both mean
 8  arrangement or configuration of a physical thing.
 9            But that's not enough.  I mean, when you say
10  there's a disposition of a golf cart, that doesn't mean
11  the same thing as a disposition for a camera frame.
12  Why?  Because it's a different device serving different
13  purposes, and because it's a mechanical thing and things
14  are arranged, you have to tell me how the different
15  parts are arranged, and they're arranged in different
16  ways.
17            Now, there's many examples of this.  If you
18  just go on Google patents and say, enter a support frame
19  and disposition, hundreds of these things will come up.
20  The word disposition will mean a physical arrangement or
21  configuration in every single one of them, but in every
22  single one of them, when you say disposition of a golf
23  cart as opposed to a disposition of a support -- of the
24  support frame of a camera clip, it will mean something
25  different because it's a different device with a
```

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2652

CLAIM CONSTRUCTION HEARING

 1  different purpose.

 2           And here again is another such example of a

 3  folding creeper, which I recently learned is a type of

 4  lawn chair.  I did not know that before.  This thing has

 5  not only one disposition or two dispositions but also a

 6  third and fourth disposition, and here in the claims,

 7  they tell you not only that they're -- these different

 8  dispositions exist, they also tell you exactly how you

 9  make them and exactly what they're for.  That's what

10  tells you what a disposition is with respect to a

11  folding creeper.

12           So the bottom line is this, the word

13  disposition, if you consider it in the absence of what

14  it -- what the clip does doesn't have any meaning.  You

15  know, what's the difference between disposition in the

16  golf cart patent as opposed to disposition in the camera

17  clip patent, different device, different purpose,

18  different way to form it.

19           And so at a minimum, to ascribe any physical

20  meaning to the word disposition, and Defendants are of

21  the opinion that disposition, because it means a

22  physical arrangement, should have physical meaning, you

23  have to know what's being disposed, why it's being

24  disposed, and most importantly how you're causing it to

25  be disposed.  I mean, you can't just telling, I can

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2653

CLAIM CONSTRUCTION HEARING

1  arrange something, without telling me how to arrange it.

2  That's just common sense.

3         And the claims can't answer these questions

4  here.  So going back to Subparagraph B, which tells you

5  about the support frame and how it fits into this whole

6  camera clip thing, we have the disposition is a

7  configuration of a support frame.  You have multiple

8  dispositions, so it has to be able to transition from

9  one to the other.  Transition requires movement, and the

10  only point of movement attributed to the support frame,

11  the only way that we -- the claims tell us that the

12  support frame can move is about -- is rotation about the

13  second axis.  That's it.  That's all the claims give us.

14         So, again, as an illustration, because here

15  we're talking about spacial arrangements of a physical

16  thing, it might be helpful to actually see it as opposed

17  to try to visualize where the pieces go.

18         And will you play the animation?

19         (Animation played.)

20         There you go, movement about the second axis

21  taking you from tabletop to laptop, two different

22  dispositions.  So at a minimum, at a very minimum, the

23  physical description of a disposition with respect to

24  the patent here requires that it's a configuration of a

25  support frame that enables support of a hinge member and

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2654

CLAIM CONSTRUCTION HEARING

1  that it's accomplished through a rotation of the second

2  axis at a very minimum.

3          Now, as Your Honor contemplated earlier,

4  maybe that is not enough structural description, and if

5  it is, the Court's opinion that we should limit it to

6  front and rear support elements and talk about those

7  arrangements instead, Defendants would be amenable to

8  that, as well, but at a very minimum, you have to tell

9  me how to arrange something if you're going to say that

10 different arrangements exist and they serve a purpose.

11 And the only way that the claims give you to do that is

12 rotation about the second axis.

13         Now, in comparison, you go back and look at

14 the Plaintiff's construction again, it's just saying

15 configuration or arrangement, it becomes clear why that

16 lacks context.  So as you've already heard, Plaintiff

17 will say, well, you know, there is a support frame, and

18 it's attached to the hinge member, so, therefore, it's

19 supporting and it also has dispositions, and that's all

20 you need.

21         But I don't believe Plaintiff answered your

22 question when -- and Defendants think this is where you

23 were going, Your Honor, is what -- what is it?  I mean,

24 if you're telling me there's an arrangement of the

25 support frame, what is it and how do you do it?  Like

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2655

CLAIM CONSTRUCTION HEARING

1   how do you make a disposition?  If you're going to

2   arrange something and this arrangement serves some

3   function, it's not in there for no particular reason,

4   then how do you do it?

5              And here, again, Your Honor, it's a matter

6   of common sense, the claims go to a functioning device.

7   It's not to a list of parts.  The claim is telling

8   you -- is teaching you -- is claiming something that can

9   do something, a clip that can take you from tabletop to

10  laptop, but if you don't tell me how to configure it,

11  how to adapt it from one thing -- from one surface to

12  another, then what I'm leaving you with is I'm not

13  telling you how to make the invention work, and that is

14  a big problem.

15             Again, from a matter of common sense, and

16  here on the slide, Your Honor, we provided a citation to

17  a seminal text on the principles of claim drafting, but

18  this is mostly just for ease of reference.  I mean, you

19  can think about it in the absence of looking at any

20  text.  If you're going to claim something, if you're

21  going to contribute to society something that they

22  didn't have before, a functioning device, a device that

23  can do something, then I sure hope your claims tell me

24  how you can do it because then I don't know what you've

25  contributed.

CLAIM CONSTRUCTION HEARING

1              It's not -- and going to the text here, this
2    Faber on Mechanics of Patent Claim Drafting is more of
3    an expert on this, presumably, than -- than I or the
4    Plaintiff.  The claim must be to an assembled operable
5    combination, not to a mere parts list, and that, Your
6    Honor, Defendants think really sums up the point.
7              The clip functions to take you from tabletop
8    to laptop.  As part of doing so, it takes on different
9    physical arrangements.  You have to tell me how to make
10   those physical arrangements, and the second axis is the
11   only means in the claims that allows you to do that.
12             Now, Plaintiff has suggested that maybe
13   there are other ways to form dispositions.  Well, that's
14   great, but that's not in the claims.  Are you telling me
15   that the second axis is immaterial, that the claims set
16   that out, but that has nothing to do with how to make
17   the invention work?  Well, then, how does the invention
18   work?
19             That is the connection that has to be there,
20   Your Honor, so the disposition, in order for the camera
21   to function, in order for the camera to take functional
22   arrangements, that functional arrangement has to be
23   about the second axis in order for this entire thing to
24   make sense.
25             THE COURT:  Okay.  Well, let me -- let me

CLAIM CONSTRUCTION HEARING

1   back up a little bit then.  Now, what you've shown me in

2   this animation --

3              MS. LU:  Uh-huh.

4              THE COURT:  -- I'm assuming by showing me

5   that, you're saying that is what you believe this claim

6   comprises, that type of camera that goes from the table,

7   rotates on a second axis, and you set it on the laptop

8   screen; am I -- am I correct?

9              MS. LU:  Right.  That animation is drawn

10  from the figures in the patent, and that's an example

11  showing you how the invention works.  So, yes, that's

12  right.

13             THE COURT:  Okay.  Well, I guess -- okay.

14  Give me an idea.  We've argued here for an hour and 15

15  minutes about this -- this camera going from table to

16  laptop in such a fashion.  I think Plaintiff raised the

17  issue, well, does that camera in Defendants' estimation

18  infringe this claim?  Apparently the answer is yes.  So

19  what are we really arguing about here?  What's the

20  issue?  Why is this so important?

21             MS. LU:  The issue -- well...

22             THE COURT:  I mean, I guess what's the

23  Plaintiff's theory on how this -- if what you're saying

24  is correct --

25             MS. LU:  Uh-huh.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2658

CLAIM CONSTRUCTION HEARING

1          THE COURT:  -- and I think the Plaintiff

2     will probably agree to a large extent that this patent

3     is about a camera that can set up on a table and set up

4     on a laptop, what is their theory as to what's your --

5     how your cameras meet these claims, and then what's

6     different about the camera you're showing me in the

7     animation?

8          MS. LU:  Well, correct me if I'm wrong, Your

9     Honor, but I didn't think that it was actually

10    permissible for us to talk about -- import our

11    non-infringement case into the claim construction, so --

12         THE COURT:  Well, if I'm going to spend over

13    an hour talking about this, I need to know what's going

14    on here.  Why is this important?  I mean --

15         MS. LU:  Right.  Excellent point, Your

16    Honor.

17         THE COURT:  I'm going to make it an issue,

18    so tell me what's going on in this case.

19         MS. LU:  Okay.  So what Defendants are

20    concerned about with Plaintiff's construction is saying

21    that a configuration or physical arrangement exists, but

22    I'm not going to tell you how to make that

23    configuration, and moreover, the only means of making

24    that configuration in the claims, the second axis should

25    not be taken into account -- taken into account when

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2659

CLAIM CONSTRUCTION HEARING

1  you're trying to tell me what the configuration is.

2        What Defendants are concerned about here is

3  Plaintiffs will say anything connected to something else

4  connected to a camera where the thing that's closest to

5  the bottom could have different shapes.  I'm not -- it

6  doesn't matter how it makes it, it doesn't matter if the

7  claim tells -- if -- if that product makes different

8  shapes in a way that's taught by the claims, it doesn't

9  matter if those have any relationship, then that's going

10  to infringe because there are two pieces, and it can

11  move, and one of those pieces can take different shapes.

12        If you're going to tell me that you're going

13  to read the claim on things that can take different

14  shapes, well, then, the shape has to at least be enabled

15  by the patent.  It has to be -- you can't just say that

16  you take a camera and some piece that allows the camera

17  to rotate around two axes and stick it on to, say, a

18  giant magnet, and you move the magnet from tabletop to

19  laptop and say, oh, look, it's taking different shape,

20  or a big sticky ball and you change that big sticky ball

21  from one shape to another and say, look, it has

22  different dispositions, that something like that would

23  be covered by the claims.

24        THE COURT:  Okay.  All right.  Well, let's

25  move -- I want to move on from this, but I do want to

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2660

CLAIM CONSTRUCTION HEARING

1  get Plaintiff up one more time on this because we've got

2  to move on.

3       Mr. Edmonds, you know, I want to raise the

4  issue here what really is -- is going on.  I mean, what

5  they're saying is, look, what you claimed was this

6  configuration on the table, you move it, you rotated

7  this second axis that's referred to in the claim, you

8  set it up on the laptop.  And they're saying, you're

9  trying to make this into something that if it's got

10 anything that supports this camera and you move it from

11 table to laptop, as long as it's got this axis -- two

12 axes you can find, it infringes.

13      And they're saying, no, what you invented

14 was this thing you can move from one surface to the

15 another -- a surface to an object by rotating it, and

16 that's what you've got, and now you're trying to make it

17 into something that covers, I guess, a multitude of

18 webcams that your claim is not supportive of, so --

19      MR. EDMONDS:  Yes, Your Honor, and I

20 think --

21      THE COURT:  What is your theory here?

22 What's going on here?

23      MR. EDMONDS:  Good question.  So -- and I

24 think this illustrates the point.  My question to

25 them -- I think everybody agrees that the illustration

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2661

CLAIM CONSTRUCTION HEARING

1  in their PowerPoint meets the claims limitation.  I

2  think the issue is this one here that the Court's

3  looking at that they brought with them, because we say

4  this infringes, they say it doesn't.  So I think this is

5  where -- really where the rubber hits the road.

6         So the only thing I can figure out that

7  they're getting at is here we have a hinge member, it's

8  here, it's rotatably attached to the camera, and it

9  rotates throughout the first axis of rotation, which is

10  the horizontal axis.  This also rotates around other

11  axes of rotation, too.  I think they want to say that

12  it -- it has to rotate around -- there has to be a

13  single axis of rotation and that has to be what

14  accomplishes everything, and if it does more, if it

15  rotates in more than one axis, then it doesn't infringe.

16  They're going to say to the jury that the Court has

17  construed this so narrowly that if we -- that if we

18  rotate in more than one axis, then we can't infringe.

19         I think that's where the rubber is hitting

20  the road here, and I think that gets into the same thing

21  with hinge where they say it has to be a specific kind

22  of joint, and we get that.  I think it's the same

23  argument over and over again to where essentially

24  they're saying that the only thing that could possibly

25  infringe is something that's configured exactly like the

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2662

CLAIM CONSTRUCTION HEARING

1  one that's in the patent, and we're saying that the

2  claim language, it should be interpreted -- you should

3  look at the claim, not the preferred embodiment.

4         THE COURT:  Well, I'll just ask one more

5  thing --

6         MR. EDMONDS:  Yes.

7         THE COURT:  -- and then we do have to move

8  on.  The way I'm understanding their argument here at

9  the very end was I'm not sure it's so much what you're

10 pointing out.  It seems to me what they're saying is, is

11 that they're saying the thing is sitting on the surface,

12 then as you move this clip to the laptop, you rotate it

13 about this second axis, which I think is a horizontal

14 axis, correct, or is it the --

15        MR. EDMONDS:  The second axis is horizontal,

16 yes, Your Honor.

17        THE COURT:  So you rotate it, and that's

18 what enables you to fit it onto the laptop.  So it's

19 almost like it's this transition.  They're saying,

20 configuration table, configuration laptop.  You go from

21 one to the other, one disposition to the other by

22 rotating it.

23        MR. EDMONDS:  And maybe that is what they're

24 saying.  I mean, that's just simply -- that -- that

25 illustration they had is really neat, but that's not in

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2663

1  the patent, that's not required by the claims.  There --

2  it's just all that I acquired is -- it's an apparatus,

3  so it's not a method of kind of shaping itself that way.

4  The apparatus has to have a first disposition; it has to

5  have a second disposition.  It doesn't say that there

6  has to be some transition between the two.  If that's

7  how they're reading it, it's just not there.

8         THE COURT:  Well, I think that is how

9  they're reading it.  They're saying because you've got

10 these two orientations, two dispositions, that this

11 clip, how you do -- how you maneuver these orientations

12 is by rotating it around this second axis.  I think

13 that's why they say -- you know, I'm really not sure as

14 I -- maybe I'm not fully understanding what they're

15 saying.  That seemed to be what they were saying at the

16 end there, but anyway...

17        Okay.  All right.  Well, I tell you what,

18 we're going to take a break for about 10 minutes and

19 then resume with, I guess, rotatably attached and hinge

20 member and -- so all right, in recess for about 10

21 minutes.

22        COURTROOM CLERK:  All rise.

23        (Recess.)

24        COURTROOM CLERK:  All rise.

25        THE COURT:  Please be seated.

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2664

CLAIM CONSTRUCTION HEARING

```
 1              All right.  What's the next term?
 2         MR. EDMONDS:  Hinge member, Your Honor.
 3         THE COURT:  All right.  Go ahead.
 4         MR. EDMONDS:  Your Honor, with respect to
 5  hinge member, it seems like the -- the battle -- the
 6  battle lines are fairly drawn here.  The -- the
 7  Plaintiff says it's a structural element that joins to
 8  another for rotation.  And I think that there's a join
 9  versus may be joined.  I think that's somewhat of a side
10  issue with the Court.  I mean, in the claims, they are
11  joined, so I'm not really sure why we're arguing over
12  how many angels dance on the head of a pin there.
13              But I think the big issue for the Court to
14  resolve is that this hinge joint, which is what the
15  Defendants are trying to read into the claim here,
16  whether -- whether a hinge member has to be limited to a
17  hinge joint or not, and I think that -- that is the
18  major question for the Court.
19              And the -- all right.  The hinge member, as
20  claimed, it has -- it has to do a couple of things here.
21  First of all, all the claims have rotatable attachment,
22  all the independent claims have rotatable attachment in
23  there.  So we know rotatable attachment is something we
24  need to account for.
25              And then go to the next slide.
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2665

CLAIM CONSTRUCTION HEARING

1          Claim 19 has hinged attachment.   The parties

2   have agreed that hinged attachment means a hinge joint.

3   We've agreed on that.   And I think where the battle

4   lines are drawn are the Defendants are saying that not

5   only is hingedly attachment a hinge joint, but rotatably

6   attached must be a hinge joint, too.   And that's just

7   simply improper claim construction.

8          When different words are used, it's presumed

9   to have different meanings, and if you go back a

10  slide -- it's interesting to see the difference in the

11  parties' graphics here, and I think if the Court -- the

12  color-coated things help the Court put it in

13  perspective.

14          This -- well, we have a front view and a

15  side view of hinge member 16, and the preferred

16  embodiment, hinge member 16 that's depicted in this

17  figure, has a hinged attachment, it also has a pivot

18  joint, and it's interesting -- and the -- I think the

19  graphic the Defendants are going to show you doesn't

20  have the entire hinge member 16 filled in.   So it's --

21  it's an incomplete picture for the Court.

22          The hinge member 16 has a pivot element.   So

23  the Defendants -- I got a preview of their slides, and

24  they have a slide with a -- with an old-style phonograph

25  that rotates, and I think they're going to say that that

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2666

CLAIM CONSTRUCTION HEARING

1  can't be included as a hinge member.  I think what's

2  interesting about that is the -- the pivot element

3  that's shown here in the preferred embodiment with this

4  pivot joint, that rotates like a -- like a phonograph

5  does.  So the -- the construction that the Defendants

6  are urging would read out a preferred embodiment,

7  which is presumptively wrong and we say conclusively

8  wrong.

9           I think it's also worth pointing out to the

10  Court that -- and go to the next slide -- the pivot

11  joint to better -- so in this one, we've got hinge

12  member 16, which is this whole structure -- I've pointed

13  out pivot element 80 of hinge member 16, which is this

14  pivot part.

15           And I think the pivot element is an

16  important point in the Court understanding whether

17  these claims are limited to a preferred embodiment or

18  not.  If you look at Claims 8 and 17, Dependent Claims 8

19  and 17, they both have -- they both have a pivot

20  element -- or, excuse me, yeah, a pivot element and a

21  hinge element.  We're getting there, Your Honor.  Yeah,

22  there's 17.  We have a pivot element and a hinge

23  element.

24           And so what we see here is that rotatable

25  attachment is not limited to a hinge joint, and, in

CLAIM CONSTRUCTION HEARING

1  fact, if it was, Claim 17 and Claim 8, which has the

2  same -- the same language there, would be inoperable and

3  a nullity because you couldn't have a pivot element -- a

4  pivot element and a hinge joint are two different

5  things.

6          I think that's basically where the -- where

7  the rubber hits the road there, Your Honor, and

8  whether -- I understand that the patentee used the word

9  hinge member, and I think what the Defendants say at the

10  first instance is, well, they're saying a hinge member

11  isn't a hinge, and perhaps to a certain extent, we are

12  in a sense that the claims and the specifica -- the

13  specification teaches and the claims not only teach but

14  require that you can have at least pivotable attachment

15  here with the hinge member.  So there's no way that it

16  could be limited just to a hinge joint.

17          And I think what -- to put it in perspective

18  for the Court as to, again, why we're -- why these

19  things matter, I presumably -- and I'm going to borrow

20  their webcam.

21          Can I borrow it, or did it disappear?  Thank

22  you.

23          So -- so this helps put it in perspective,

24  this -- this webcam that we -- that they brought with

25  them, this -- this is what's swinging down here is a --

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2668

 1   is a hinge joint.  Everybody agrees on that.  And

 2   presumably what they're going to say is that what is up

 3   here is not a hinge joint, and thus this doesn't

 4   infringe because a hinge joint is required.

 5            But it's funny, when you look at this webcam

 6   and you look at the preferred embodiment, as you can

 7   see, this webcam rotates on a horizontal axis with a

 8   pivot -- it pivots just like the preferred embodiment

 9   does.  So, I mean, fundamentally, what -- what the

10   Court's faced with is it going to have a construction

11   that excludes a preferred embodiment.

12            And then I think the other fundamental point

13   of disagreement between the parties is that the

14   Defendants -- I think what their language is intended to

15   argue is that it can only rotate in one axis.  It can't

16   rotate in more than one axis.

17            And our answer to that is to infringe the

18   claim, it must rotate in a first axis and a second axis,

19   and those axes must be perpendicular to each other, fair

20   enough.  But the webcam can have other -- there can be

21   other axes or rotation.  That's -- what's required to

22   infringe is one thing.  What they're trying to do is

23   trying to say that if -- if we do that and more, then we

24   don't infringe because we're trying to get the Court to

25   limit it to something that is -- is restricted in this

CLAIM CONSTRUCTION HEARING

1   movement, and to that, we say that that's not how claims

2   are interpreted.  To us, that's claim interpretation

3   101.

4           This is comprising.  There's no disclaimer

5   in the patent to say that it can only rotate in one

6   direction.  What it says is that it must rotate in a

7   direction.  It doesn't say that it can't rotate in other

8   directions.  I think that's where the points of

9   disagreement are, and I think that the Plaintiff's

10  construction should -- should prevail for those reasons.

11          If -- in terms of kind of their picking

12  apart our construction, something -- somewhat what we

13  did with our constructions is we -- we took the

14  Defendants' construction and tried to reach as many

15  points of agreement as we could, which I -- which I

16  think helps highlight the points of disagreement for the

17  Court and where it needs to rule.

18          We both agree that a hinge member is a

19  structural element.  We both agree on joining.  We just

20  have joins or maybe joins.  We both agree that there's

21  rotation.  So really where -- where we part ways is

22  they've got another limitation in there that it has to

23  form a hinge joint as opposed to, for example, a

24  preferred embodiment, a pivot joint, or as opposed to,

25  for example, another joint that still meets the

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2670

CLAIM CONSTRUCTION HEARING

1   requirement of the claim that you have two axes that are

2   perpendicular.  I think that's where -- where that one's

3   left.  So I'll take them in turn, so axis of rotation --

4   we'll do them one at a time.  Axis of rotation comes

5   next.

6           THE COURT:  Okay.  Response?

7           MR. ZARIAN:  Thank you, Your Honor.

8           Respectfully, although counsel indicated, as

9   the Court has requested, that the hinge member and

10  rotatably attached terms would be dealt with separately.

11          I submit, Your Honor, that most of the

12  argument that was just given with respect to hinge

13  member actually relied on arguments about rotatably

14  attached.  And, specifically, the statement was made

15  that rotatable attachment was not limited to a hinge

16  joint.

17          What I'd like to do is really focus on hinge

18  member and exactly what hinge member means and what the

19  proper construction of that ought to be.  And we submit,

20  Your Honor, if hinge member means anything at all, it

21  has to do something -- it has something to do with

22  hinge.

23          What the Plaintiff would do is actually read

24  out the hinge functionality, the hinge term completely

25  from the construction of this term, from the definition

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2671

CLAIM CONSTRUCTION HEARING

1  of this term.  So whether or not a hinge element has a

2  pivot, allows for a pivot function at the top and a

3  hinge function on the second axis at the bottom, it has

4  to have a hinge.  That's our position.

5          So ultimately, the central disagreement here

6  is whether or not a hinge is a hinge, Your Honor.

7  That's -- that's our view of it, and Plaintiff's

8  construction in no way addresses or takes into account

9  the term hinge in defining and construing hinge member.

10         The word hinge, Your Honor, is used 66 times

11  in the specification or variations thereof.  And every

12  independent claim in this patent uses hinge, the word

13  hinge to modify member.  The patentee deliberately used

14  the word hinge to modify member in every independent

15  claim.

16         And this slide illustrates that, No. 36,

17  Your Honor.  It is a basic rule, of course, of -- of

18  claim construction that claims must be interpret with an

19  eye toward giving effect to all terms in the claim.  And

20  here we simply must give effect, Your Honor, to the

21  important term hinge and not read that out of the claim

22  as -- as Plaintiff would do.

23         The ordinary meaning of the term hinge is

24  known to those with skill in the art, it's well known.

25  It's a joint that allows a swinging motion about a

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2672

CLAIM CONSTRUCTION HEARING

1  single axis, a single axis, and a door is the most

2  commonly cited example of exactly what that means.

3  There's an illustration here of how it works in a door

4  and how it works in a hinge.  There's a single axis

5  about which a rotation occurs, and the door is a -- is a

6  great example of that, but the hinge is defined by its

7  rotation about that single axis and by the swinging

8  motion that goes along with it.

9           The specification's description here of how

10 the hinge member operates in the context of this camera

11 clip is consistent with how a hinge actually works.

12 This is to say, Your Honor, that the function of this

13 purported invention here requires the hinge

14 functionality.

15          It defines this as being hingedly attached,

16 the hinge element.  The very object and function of this

17 invention shows that the hinge function is central to

18 the definition, and the Court saw the animation of the

19 way in which this moves from the table to the laptop

20 computer.  The way it works is consistent with a

21 construction that requires taking into account the hinge

22 functionality.

23          We got some other animations, Your Honor,

24 that I think will illustrate this point.

25          Is it possible to animate this?

CLAIM CONSTRUCTION HEARING

1              This shows, Your Honor, where the hinge

2    member is located in the -- in the device that we've

3    been animating and illustrating here.  That's the hinge

4    member there, and it's attached to the support frame,

5    and on top, not part of the invention, rests the -- the

6    camera part of the device.  So that's -- that's where

7    the focus is, Your Honor, is on that hinge member and

8    how we ought to construe that.

9              This compares, Your Honor, the animation

10   we've provided, the Court will see compared to exactly

11   what the function of a hinge is and how a hinge rotates

12   about that one axis of rotation.  The Court will see the

13   door and the hinge on the left and then on the right the

14   camera rotating about the second axis of rotation

15   swinging as a hinge.

16             A hinge is a hinge, Your Honor, and

17   Plaintiff's contradiction -- construction contradicts

18   the plain and ordinary meaning of the term hinge.  That

19   proposed construction by Plaintiff has actually changed.

20   It was one thing in the original brief, and it was

21   something slightly different in the reply.

22             I think that first proposed construction,

23   Your Honor, made clear what the object, what the intent

24   of Plaintiff's construction is, which is really to take

25   this invention beyond what the claims describe, what the

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2674

CLAIM CONSTRUCTION HEARING

1  specification taught, which is in every case rotation

2  about a single axis, whether it's the first axis of

3  rotation or the second axis of rotation.  Whether it's a

4  pivot joint, Your Honor, or a hinge joint, it's always

5  one axis of rotation.  I think this shows as much as

6  anything that the original intent here in the

7  constructions advanced by Plaintiff is trying to expand

8  this to broaden this beyond anything the patent ever

9  claim or ever taught.

10         The ordinary meaning of hinge is, in fact, a

11  joint that only permits motion about a single axis and

12  including multiple axes as Plaintiff originally tried to

13  do or perhaps its revised proposed construction would

14  allow contradicts that understanding, effectively

15  erasing hinge from the claims.

16         We did provide examples, Your Honor, of ways

17  in which a full rotation does not in any way address the

18  term hinge in this -- in this term that needs to be

19  construed.  The pin wheel is one, the turn table is

20  another.  The fact that something is joined to something

21  else for rotation in no way describes a hinge.  That is

22  not sufficient and no way gets at the meaning in context

23  in the context of this patent and the claims, and what's

24  taught in the specification, all the intrinsic evidence

25  clearly shows that what's required here is a hinge and

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2675

CLAIM CONSTRUCTION HEARING

1  not just something -- some vague reference to rotation.

2  To construe the term that way would create a great deal

3  of unwarranted and unnecessary ambiguity, Your Honor.

4          The argument was made in the briefs, Your

5  Honor, that perhaps what we really have here is an

6  example of a -- you know, a purported inventor being his

7  own lexicographer, and, Your Honor, just to be clear,

8  that case law does not -- does not allow, as Plaintiff

9  would do here, the patentee to take and try to define a

10  term such as hinge, which is commonly known and

11  understood and has an ordinary meaning, and define it in

12  a way that is inconsistent with -- not just inconsistent

13  but completely fundamentally compatible with the term

14  hinge by excluding that from the definition.

15          The Eon case is a recent case, Your Honor,

16  that was decided by -- by this Court in which I think

17  similar relationships were raised, and as there, here,

18  no clear definition of hinge is provided that would

19  suggest that it means anything other than what the claim

20  asserts and what the specification teaches, which is the

21  working of a hinge.

22          The facts here are that every use of hinge

23  member in the claims in the specification is consistent

24  with the ordinary understanding of exactly what a hinge

25  is and how it operates.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2676

CLAIM CONSTRUCTION HEARING

1          There is a claim differentiation argument
2   that I think was alluded to, as well, Your Honor, and it
3   is that, you know, there's a difference between
4   rotatably attached and hingedly attached.  Hinges
5   rotate; pivots rotate.  There's no fundamental
6   inconsistency between rotatable attachment in the
7   working of a hinge.  The question is how that happens,
8   and I think the discussion about rotatable attachment
9   will speak to that.

10          But, you know, the point we want to stress,
11  Your Honor, in every instance where hinge or hingedly
12  attached is used to describe how an object is joined at
13  the hinge member, the object is simultaneously described
14  as being able to rotate about a second axis.  That's --
15  there's rotation here, but it's rotation as a hinge
16  rotates.

17          And hinge member, I'll just emphasize this
18  point again and rest with this, must require, Your
19  Honor, some acknowledgement that the hinge member is
20  going to involve the workings, the operations, and the
21  term hinge and not to define that term in a way that
22  excludes and in no way acknowledges the term hinge would
23  be fundamentally wrong, Your Honor.

24          THE COURT:  Well, what about their argument
25  that Figure 4 and you're reading out Claim 8, you're not

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2677

CLAIM CONSTRUCTION HEARING

1  providing for the possibility that a hinge member

2  includes a pivot element, pivot element 80, what about

3  that?

4        MR. ZARIAN:  I think that relies on their

5  understanding that our construction of rotatably

6  attached is somehow fundamentally inconsistent with the

7  workings of a hinge, and I think we argue, Your Honor,

8  is that -- that hinges rotate, as well.  They rotate

9  about a single axis, and a swinging motion is rotation

10  about an axis of rotation.

11        I think that's -- I heard that argument that

12  was made, but I don't understand it, Your Honor.  I

13  don't think we read out any preferred embodiment here.

14  All we're saying is that, moreover, Your Honor, whether

15  or not there's a pivot function allowed for at the top

16  where the cam -- webcam attaches, there must be a hinge,

17  and that's exactly what the preferred embodiment shows.

18  There's a hinge at the bottom which rotates about the

19  second and allows the rotation of the support frame

20  about the second axis of rotation.

21        So -- so there must be a hinge and the hinge

22  member, and whether or not there's also a pivot function

23  or, again, I think perhaps what they're alluding to is

24  some -- they're relying on what they think we take

25  rotatably attached to mean and somehow that

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2678

CLAIM CONSTRUCTION HEARING

1    excluding hinge -- that's not correct, Your Honor.

2    That's not our view of that.  Hinges do rotate.

3            THE COURT:  Okay.  Well, go to, I guess,

4    Claim 19.  What's the difference between hingedly

5    attached in the way you're describing it and rotatably

6    attached and the way you're describing it?

7            MR. ZARIAN:  Your Honor, we wrestled with

8    this question, too.  In all candor, this is the only

9    claim in which that distinction is made.  All of the

10   other independent claims use rotatably attached both in

11   the first element and in the second element, and there's

12   a difference in the language there.  We've cited cases

13   that -- that teach, Your Honor, that the fact that, you

14   know, there's different wording doesn't necessarily mean

15   that there's a different definition in terms of the

16   scope of the claim.

17           And maybe more to the point, you know, with

18   respect to whether or not that excludes or includes

19   certain matters in terms of how we define hinge, I mean,

20   this maybe goes more to the question of rotatably

21   attached.  They made a claim differentiation argument

22   with respect to rotatably attached on this point.  But

23   with respect to the definition of hinge, Your Honor, I

24   don't believe this has any impact on the proper

25   definition, which must -- must mean hinged member in

CLAIM CONSTRUCTION HEARING

```
 1  particular must include and account for the presence of
 2  a hinge.  That's our point with respect to hinge member.
 3          This is the point perhaps that goes a little
 4  bit more to -- and I think they've used it to argue for
 5  their construction of rotatably attached, and I do want
 6  to address that, Your Honor.  With respect to hinge
 7  member, Your Honor, that's -- that's our particular
 8  focus.  It's a very discreet element.  It's a very
 9  commonly understood term.  Under all the circumstances,
10  the teachings, and the claims as specifically set forth,
11  what we're saying is a hinge is a hinge, and whatever
12  definition or construction the Court settles on must
13  include and not exclude a hinge.  That's our position,
14  Your Honor.
15          THE COURT:  Okay.  Well, all right.  Okay.
16  Rotatably attached, then, or any response to hinge
17  member, brief response if you desire.
18          MR. EDMONDS:  We -- we will take the Court's
19  comment brief -- brevity here.
20          So -- and what I heard counsel say was, and
21  I think it's telling, in every case it's one axis, and
22  I -- and I think that's -- their argument -- the
23  language they're proposing for the Court is to say that
24  the claims are limited to that, and that's just simply
25  not what the language of the claim says.  That's just an
```

CLAIM CONSTRUCTION HEARING

 1  extra limitation, restriction they're trying to build in

 2  there.

 3          And I think there's -- you know, there's a

 4  difference, as the Court is well aware, between a

 5  preferred embodiment and what's claimed.  And what's

 6  claimed is rotatable attachment, and the Court asked the

 7  right question.  What's the difference between rotatable

 8  attachment, and what's the difference -- and hinged

 9  attachment?

10          A similar question would be what's the

11  difference between a pivot element and a -- and a hinge

12  element.  Clearly, those things are different.  And

13  rotatably attached, as we pointed out in our brief, is

14  broader than a hinge joint.  There are -- there are

15  pivot joints, there are ball and socket joints, there

16  are saddle joints, there are all kinds of joints that

17  provide for rotatable attachment.  And the restriction

18  that the -- yeah, that the Defendants are trying to do

19  is to try to say that -- that rotatable attachment is to

20  be read out of the claims.

21          Those are our -- go ahead, Your Honor.

22          THE COURT:  Okay.  Well, I guess my

23  overall -- overall question is -- I just want to ask you

24  again.  You've mentioned this, but the concern that you

25  are reading hinge out of the claim, it's there, it's, I

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2681

CLAIM CONSTRUCTION HEARING

1  think, a well-understood term.

2          Now, it says that -- Claim 1 says, a hinge

3  member adapted to be rotatably attached to the camera.

4  So I'm not so sure that that rotatably attached term

5  means that it's not a hinge.  It's adapted to be

6  rotatably attached.  Then it goes on to say that the

7  support frame is rotatably attached.

8          Now, their position, as I understand it, I

9  think, is that, well, hinge, rotatably on the hinge --

10  it's rotating on the hinge.  On that -- I think the

11  hinge and single axis go together.  When you've got a

12  hinge, they're saying you got one axis.  They're saying

13  we can't go beyond that to ball and -- ball and socket

14  joint, that kind of thing, because then you're getting

15  away from hinge.  You're now rotating on different axes.

16          I mean, it all goes back to hinge, and my

17  concern is, is that, as the Court, am I just changing

18  hinge, which is definitely there, it's not only in the

19  spec, it's in the claim itself, into something that, you

20  know, without a -- I don't think there's anywhere you

21  can point to where the intrinsic record says, hinge

22  member here or hinge includes this, this, this and this.

23          You're kind of trying to cobble together

24  from rotatably attached and -- and these sorts of things

25  that, well, it could be more than just solely a hinge.

CLAIM CONSTRUCTION HEARING

1            I guess, give me your best argument as to

2    why the Court departs from, you know, hinge when that's

3    clearly the word used here and enlarges it to other

4    possibilities.

5                    MR. EDMONDS:  Yes, Your Honor.  To us, the

6    answer, Your Honor, is that the patentee used the word

7    hinge member.  They didn't use the word hinge.  They

8    didn't use the word hinge joint.  The word hinge joint

9    is not used in the patent at all.  And what we see here

10   with the preferred embodiment is -- and -- and -- and

11   that at a minimum, a hinge member needs to have -- the

12   rotatable attachment you're talking to -- and you say it

13   doesn't say that in the patent.  It does.  It says,

14   specifically in a preferred embodiment, that hinge

15   member 16 has pivot element 80 and hinge element -- I

16   think it's 78 or 82.

17            So what -- what they're doing is -- and what

18   the Court asked me is -- my question is what about pivot

19   element 80?  We can't read that out of the -- it's --

20                    THE COURT:  Okay.

21                    MR. EDMONDS:  Yes.

22                    THE COURT:  Tell me what pivot Element 80

23   does.

24                    MR. EDMONDS:  It -- okay.  A pivot, Your

25   Honor -- and I guess the best way to frame it would be

CLAIM CONSTRUCTION HEARING

1  when a basketball player pivots, so you don't travel,

2  you pivot on your foot.  That's -- that's a pivot, okay?

3  So -- and -- and just like the record player, it -- it's

4  a spin.  It's not a hinge.

5          THE COURT:  Well, it's almost like what

6  we're talking about here are two different things.  I

7  think they're saying, we don't think the hinge member

8  you're talking about does -- has anything to do with the

9  pivoting of the camera.

10          MR. EDMONDS:  Yeah, but hinge member 16

11  includes pivot element 80 by --

12          THE COURT:  Let me stop you.

13          MR. EDMONDS:  Yes.

14          THE COURT:  Do you -- Mr. Zarian, do you

15  agree with that, that pivot element 80 is included in

16  hinge member 16, or are they two different things?

17          MR. ZARIAN:  The pivot element is simply

18  where there's a -- the webcam and the hinge member meet.

19  The point at which they attach I think is what's

20  described by -- by number 80 on that figure.

21          THE COURT:  But so in answer to my question,

22  it's not part of hinge -- the hinge member is the

23  Defendants' position?

24          MR. ZARIAN:  I think that -- I think the

25  hinge member has to allow for -- in fairness, it has to

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2684

CLAIM CONSTRUCTION HEARING

1  allow for a pivot element to be attached there.  But,

2  no, the device that's described is specifically the

3  member.  And what's described to rotate, I think, is

4  pretty clearly is the webcam that rotates at that point,

5  whereas, the support frame, which is part of the device,

6  rotates.  That's part -- that is part of the -- of the

7  invention -- of the alleged invention.

8           THE COURT:  Okay.  Well, I guess -- okay.

9  Let's say it's got this pivot which allows the camera to

10  rotate, but I think their point is, is that your

11  definition of hinge member does not require a hinge,

12  which I think they're saying is required in its

13  attachment to the support frame; is that correct?

14           MR. ZARIAN:  Absolutely, Your Honor, it must

15  have the hinge.

16           THE COURT:  So what about -- let's go away

17  from the 80, the camera attachment, the part that

18  attaches the camera to the support frame, which I think

19  they're saying shows this sort of back and forth action,

20  a hinge on one axis.  I mean, why can we -- why can the

21  Court not incorporate that into the definition of hinge

22  member?

23           MR. EDMONDS:  So -- and as I understand the

24  Court, right, I understood them to say that pivot --

25  that a hinge member couldn't have a pivot element.  Now

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2685

CLAIM CONSTRUCTION HEARING

1  they're saying it can, but it also has to have this

2  hinge element, and I think the Court's question is why

3  doesn't it have to have a hinge element?

4          THE COURT:  Why doesn't it have to have a

5  hinge element?

6          MR. EDMONDS:  Right.  And -- and the answer

7  is that Claim 19 requires hinged attachment.  The other

8  claims do not, and, in addition, Claims 8 and 17 require

9  a hinge element, and the other claims do not.

10         And the -- the -- what we see is that

11  rotatable attachment is, again, broader than hinged

12  attachment.  There are all kinds of rotatable

13  attachments, and if the Court was to restrict it that

14  way, then it's an undue restriction on the claims and

15  hinged attachment becomes meaningless and hinge element

16  becomes meaningless, and that's improper claim

17  construction.  And I -- and I think the key to

18  understanding it is that the patentee didn't -- they

19  said, hinge member.  That's not a word in the art.

20  That's the word the patentee made up.  And he didn't

21  say, hinge joint, like the Defendants keep saying.

22         So what we know from looking at the claims

23  and the structure of the claims is that a hinge member

24  doesn't have to have a hinged attachment and that a

25  hinge member does not have to have a hinge element.  All

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2686

CLAIM CONSTRUCTION HEARING

1   that's really required in Claim 1, Claim 10, Claim 20,

2   the other independent claims is it has to be rotatable

3   attachment.  That's all that the claims require.

4           THE COURT:  Okay.  Now, so what I'm

5   understanding you to say is, is that this hinge member,

6   this rotatable attachment to this support frame, I guess

7   it's like you say, it could be -- the attachment could

8   result in not only -- it doesn't have to be a hinge

9   joint, it could be a ball joint, it could be some --

10  some sort of attachment that allows rotation in some

11  fashion?

12          MR. EDMONDS:  Rotatable attachment means

13  rotatable attachment.  It's that simple.  And had the

14  patentee not used hinged attachment, we might be having

15  a different conversation.  But hinged attachment, I --

16  what I heard counsel say and I think it's correct, they

17  said that a -- a hinged attachment is a type of

18  rotatable attachment.  We agree.  But there are other

19  types rotatable attachments, too, and the claims don't

20  limit themselves, except for Claim 19, to any particular

21  type of rotatable attachment.

22          THE COURT:  Okay.  Anything else on this?

23          MR. EDMONDS:  I think that sums it up, Your

24  Honor.  Thank you.

25          THE COURT:  Okay.  All right.  Are we moving

CLAIM CONSTRUCTION HEARING

```
 1  to -- is the next thing to do is rotatably attached?
 2              MR. ZARIAN:  We're prepared to address that,
 3  Your Honor.
 4              THE COURT:  Okay.  Mr. Edmonds, have you
 5  addressed rotatably attached?
 6              MR. EDMONDS:  I -- have I addressed theirs?
 7  No, I was -- I was responding to hinge member.
 8              THE COURT:  Go ahead and move to rotatably
 9  attached, and that may raise some issues I might have
10  with regard to -- I think they're really, you know, kind
11  of arguing the same thing here, but if there's something
12  specific you want to present on rotatably attached, go
13  ahead.
14              MR. EDMONDS:  Yes, Your Honor.  I think that
15  the rotatably attached, the difference between the
16  parties is that they're saying it's limited to one axis
17  of rotation, and that's just simply not what the claims
18  say.
19              What the claims require to infringe the
20  claim, you have to have rotatable attachment in one
21  axis, you have to have rotatably attachment in a second
22  axis.  That's required to infringe the claim.
23              But what they're saying is that you -- you
24  can only have rotatable attachment in one axis.  And
25  there's nowhere that the patent says that.  There's
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2688

CLAIM CONSTRUCTION HEARING

1  nowhere in the spec, there's nowhere in the claims that

2  say that.  So the question is are we going to limit

3  what's claimed here to the preferred embodiment?  The

4  preferred embodiment has a pivot joint.  The preferred

5  embodiment has a hinge joint on one end, a pivot joint

6  on the other end.  Both of those, fair enough, are --

7  are rotating in one axis.

8          But it's -- as Phillips says, you're not

9  limited to the preferred embodiment.  And the question

10  of whether somebody is limited to the preferred

11  embodiment, if somebody went around saying, the claimed

12  invention, the claimed invention, this is what the

13  claimed invention is, sometimes that happens, and the

14  Courts say, you know, you just -- you just said

15  that's the claimed invention.  That's all you're going

16  to get.

17          That's not how this patent was written.

18  They're referred to as the preferred embodiments, and

19  then, of course, at -- at the end, it made -- to the

20  extent it's not -- it wasn't clear at the end of the

21  patent, the specification says that we're not limited to

22  the preferred embodiment.  We're not intending to limit

23  this to the preferred embodiments.

24          And the case law we cited to the Court says

25  exactly that, that if the patentees are not limited to

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2689

CLAIM CONSTRUCTION HEARING

1  the preferred embodiment, there has to be a special case

2  in which they be limited to the preferred embodiment.

3  Here they're not, and this is very much on point to the

4  case we cited to the Court.  It's very much on point to

5  Phillips for that matter.

6          But I think that's -- that's the issue,

7  and -- and with the webcam we have, I think it

8  illustrates the point.  This -- this webcam, as we can

9  see, it rotates in an axis.  So what -- what the

10  Plaintiff would say is you have an axis of rotation

11  here, you have another axis of rotation that is

12  perpendicular to it, and we say it infringes.

13          What the Defendants say is maybe it does

14  that, maybe it doesn't, but they say but it also moves

15  in other directions, and because it does more than what

16  the claim requires, it doesn't infringe.  The word

17  comprising is including but not limited to.

18          So the only way their argument works is if

19  the claim -- if the Court follows their admonition and

20  restricts the claim to mean that you can only do what --

21  what the claim absolutely requires.  You can't do

22  anything else.  So, for example, we have a car with head

23  lamps, they'd say, this claim is to a car.  If you put

24  head lamps on the car, it doesn't infringe because

25  you're limited to a car.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2690

CLAIM CONSTRUCTION HEARING

1          THE COURT:  Okay.  All right.  Response?

2          MR. ZARIAN:  Thank you, Your Honor.  A

3    couple of quick points, then I'd like to move to the

4    presentation.  But just -- just to distinguish, Your

5    Honor, between the discussion we had about hinge member

6    and rotatably attached, our point with respect to hinge

7    member, and I think the fundamental difference between

8    parties, is that we -- we submit that whatever else the

9    hinge member does, it could have 20 attachments, it's

10   got to have a hinge.  There's got to be a hinge on the

11   hinge member, and if it doesn't, it's got to have a

12   hinge member.  That's -- that's our construction that

13   we've advanced.  It requires a hinge joint.  It's as if

14   the claim required head lamps on a car and there were no

15   head lamps.  That's where they're taking this claim in

16   terms of an attempt to broaden it.

17          The issue with respect to rotatable

18   attachment does turn on -- on the construction -- the

19   difference with the two constructions.  Defendants

20   submit that rotation about an axis means rotation about

21   an axis.  There must be a single axis.  That's all the

22   patent teaches, that's all that's disclosed, and there's

23   no teaching or any suggestion of any kind in terms of

24   these claims and this specification of this patent of

25   anything else.

CLAIM CONSTRUCTION HEARING

1          Now, much has been made about the fact that

2    there's a reference at one point to a pivot joint.  One

3    thing that needs to be clarified, Your Honor, a pivot

4    joint still rotates about a single axis.  It's -- you

5    know, it's the spinning at the top.  It spins about a

6    single axis.  That's what a pivot does.  The hinge joint

7    also pivots about a single axis.

8          I mean, we've seen suggestions here, even in

9    oral argument, about ball joint and saddle joints, and

10   there's just absolutely nothing, nothing at all in this

11   patent that would disclose any kind of a device that

12   incorporates that kind of functionality.  That's not

13   what was claimed, and that's not what was taught by

14   these patents.

15         These patents have a physical meaning, and

16   our -- our construction is faithful to -- to what was

17   disclosed and what was claimed in this patent.  There

18   was an argument made in the papers, Your Honor, about,

19   you know, this being a disclaimer perhaps or disclaimer

20   issue, and there is no disclaimer here.  So just to be

21   clear, Your Honor, we've not argued a disclaimer, but,

22   you know, in terms of the other point made in the reply,

23   there's not teaching that rotation was restricted to a

24   single axis.  In fact, that's not correct.  The only

25   teaching here is about rotation about a single axis.

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2692

CLAIM CONSTRUCTION HEARING

1           I'm going to get later in the argument, Your

2   Honor, to the issue that was made about comprising,

3   but -- but to move ahead to that, Your Honor, what

4   they'd like to do is reach down in the claims and be

5   able to take out the limitation to rotation about a

6   single axis.  That's -- that's not permitted, and that's

7   not what the construction ought to allow here.

8           As used in this claim -- in these claims and

9   as taught in the specification, the term describes a

10  specific type of rotatable attachment, and, Your Honor,

11  in every case -- in every single case, that is, it shows

12  and describes and claims rotation about one axis, one

13  axis of rotation.

14          The -- we've included some of the authority

15  we had in our briefs, Your Honor, but we don't rely on

16  disclaimer, and we instead seek to give rotatable

17  attachment its ordinary meaning in the context of the

18  claims and in the context of the specification.  And the

19  intrinsic record here is completely consistent with our

20  construction and inconsistent with any reading that

21  would allow for all these exotic other types of joints

22  not taught and not claimed in the patent.

23          In this case, wherever the term rotatably

24  attached is used to describe how two objects are

25  connected, they're always described, always, as moving

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2693

CLAIM CONSTRUCTION HEARING

1  about a single axis.  The 21 claims here described

2  objects that are rotatably attached, again, in every

3  single case moving about a single axis of rotation, no

4  deviation from that.

5          The rotatable -- rotatably attached, as used

6  here, whenever that term is used to describe how objects

7  are connected, always describe as moving about a single

8  axis.  Here we have some language in the specification,

9  and here we show the rotation above that -- about that

10  vertical axis.

11          THE COURT:  Well, let me ask you this, I

12  mean -- I mean, the camera is not necessarily always

13  going to be sitting like this.  I mean, if the camera

14  goes forward or back, I mean, that's not the same axis,

15  that's a different axis, and wouldn't the camera go to

16  rotate around that axis?

17          MR. ZARIAN:  Well, we don't think that's

18  what the -- what the patent teaches or discloses or

19  explains.  It talks about the two axes.  I think at one

20  point it refers to them as generally perpendicular, and

21  there's a -- even counsel here today referred to a

22  horizontal axis and a vertical axis.

23          I mean, what is -- what is shown, what is

24  taught, and what is claimed is -- is an axis about which

25  there is rotation and another axis, a second axis about

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2694

CLAIM CONSTRUCTION HEARING

1  which there is also rotation.  In each case, the

2  rotation is about a single axis, and there's nothing

3  else taught in this patent and nothing else claimed,

4  Your Honor.  We think that to try to broaden the claim

5  beyond that is -- is improper and should not be

6  permitted.

7          The -- you know, we've got a few more slides

8  on this, but not to belabor the point, but, again,

9  whether it's pivoting that takes place as shown here or,

10  you know, the rotation is about the second axis, in

11  every instance, it's about a single axis of rotation.

12  We've animated to illustrate, you know, how that

13  occurs, and maybe we can play this for the Court in

14  terms of one illustration of this rotatable attachment,

15  again, about a single axis.  That's what the claims

16  speak to and what the patent teaches is -- is rotation

17  about a single axis.  Here we see the rotation about the

18  second axis.

19          THE COURT:  Yeah, I mean, I get that.  I

20  think the only way, though, that you get that out of

21  this claim is -- and this is a question I'm going to

22  have for the Plaintiff is, is that it says that the

23  first axis and second axis are general -- generally

24  perpendicular.

25          I mean, I think the second axis is always

CLAIM CONSTRUCTION HEARING

 1  going to be essentially horizontal.  I guess my question

 2  would be when the thing pivots, you know, maybe that's

 3  still generally perpendicular.  I'm not sure I'm getting

 4  why that when it says first axis, that means it is just

 5  set in stone, you know, one axis, you know.  I mean, I

 6  don't know why it can't pivot even in the way you're

 7  describing it.  I think they would dispute even that

 8  it's that narrow, the configuration of the camera and

 9  the clip, but why that's restricted to just that

10  one -- one axis.

11              MR. ZARIAN:  Well, Your Honor, in the same

12  way that, you know, the second axis I think is clear and

13  clear to the Court I submitted -- okay.  You know, the

14  second axis is defined not just an axis, but it's the

15  second axis.  The first axis is defined the same way.

16  The camera is said to rotate and claimed to rotate about

17  a first axis of rotation relative to said hinge member.

18  That is language that's used consistently throughout,

19  and I don't think it lends itself to movement or

20  variation or an infinite number of axes or many axes.  I

21  think that's not a fair reading of the language that's

22  used consistently throughout the claims and the

23  specification.

24              THE COURT:  But isn't the first

25  distinguishing it from the second?  I mean, I'm not sure

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2696

CLAIM CONSTRUCTION HEARING

1  that first means locked in, that's the only one we're

2  referring to, but it's an axis that's different from the

3  second.

4            MR. ZARIAN:  And I think Ms. Lu would like

5  to address if it please the Court.

6            THE COURT:  Okay.  Go ahead.  Briefly, and

7  then I want to go to the Plaintiff.

8            MS. LU:  Yes, Your Honor, just to clarify, I

9  think we're all talking kind of about the same thing,

10  but there is a little point of semantic difference here.

11            So there -- the term that we're talking

12  about here is rotatably attached.  That phrase describes

13  how two things are connected together.  Now, once these

14  two things are connected together, they may permissibly

15  move in a certain way.  But essentially what we're

16  talking about is the type of attachment.  Now, we're not

17  talking about what the word rotate means in the

18  abstract.  If we go back into the claims here,

19  Subparagraph 1 of Claim 1 describing the hinge member,

20  it says that the hinge member is adapted to be rotatably

21  attached to the camera, and then when it is so attached,

22  it rotates about an axis.

23            And what Defendants are trying to say here

24  is that when you're rotatably attached, you're -- the

25  motion that's permitted by that type of attachment is

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2697

CLAIM CONSTRUCTION HEARING

1   rotation about an axis.

2             Now, Plaintiff will make an argument here

3   like, well, there's a first axis, and there's a second

4   axis, and there may be different axes, but if

5   Plaintiff's construction is -- the way that Plaintiff

6   seems to be making their argument is that it should also

7   include different types of joints, like ball joints,

8   Your Honor, motion about a ball joint is motion about

9   a spherical plane around a point around a center.

10  That's -- there's no axis.  Defendants are just saying,

11  as in the claims, that when you have a rotatable

12  attachment, you move about an axis.  You can have

13  different things attached --

14            THE COURT:  Well, I think that -- I think

15  that the claim talks about rotating about a first axis.

16  I think you've said an axis.  That's different from a --

17  one axis.  Now, I'm not sure the Plaintiff can get away

18  from the fact, even though they've defined rotatably

19  attached without reference to an axis, that it says

20  rotating about a first axis.  So I would -- they're

21  going to have to deal with that.  I'm not sure -- I

22  mean, their argument as to ball and joint, you know, I

23  mean, we're going to have to look at that and reconcile

24  that with -- first with axis, which I think is clearly

25  called for in the claim.  But I think an axis is

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2698

CLAIM CONSTRUCTION HEARING

1  different from one axis.

2          So let me hear from the Plaintiff on this.

3  And I guess let me ask you, Mr. Edmonds, would you have

4  an objection to the rotatably attached term being such

5  that connected such that the connected object --

6  something like this, connected such that the connected

7  object is capable of being rotated around an axis, an

8  axis of rotation or something of that -- along that

9  line?  What I'm saying is drop the one axis, but put

10 axis of rotation or rotated around an axis in there.

11         MR. EDMONDS:  We don't object to that as

12 long as it's not interpreted back as being one.  I mean,

13 that's the point.  And I think that's a point well

14 taken.  But the question is whether that is needed, and

15 when -- and I don't think it fundamentally changes

16 anything, but just in terms of good and correct claim

17 construction, the first axis of rotation and second axis

18 of rotation are already claim limitations.  So whatever

19 infringes has to meet those.  That's not -- we're not

20 trying to read those limitations out of the claim.

21         We're just saying that there's no reason to

22 shoehorn those into rotatably attached.  There are

23 already separate limitations in the claim.

24         THE COURT:  Okay.  Well, let's go to my --

25 my question about this -- this -- that the camera goes

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2699

CLAIM CONSTRUCTION HEARING

1  back and forth.  Let's say the camera goes forward.  Is
2  it your position that first axis -- the rotation of the
3  camera is -- is around an axis running through the
4  center of the camera, I guess, is my question?  These
5  axes has to be perpendicular, generally perpendicular,
6  correct?
7           MR. EDMONDS:  The -- the first axis and the
8  second axis do have to be generally perpendicular.
9           THE COURT:  Okay.  Well -- well, their
10  question is it's one axis.  If you -- if you look at
11  this figure -- and what I'm saying is I can see a
12  situation where the thing would go off of that axis
13  slightly but still rotate.  Am I --
14           MR. EDMONDS:  You're absolutely correct,
15  Your Honor.
16           THE COURT:  Okay.  So you're -- that to you
17  would still meet the elements of the claim as being a
18  generally perpendicular axes?
19           MR. EDMONDS:  Yes, Your Honor.
20           THE COURT:  Now, we still have this argument
21  about hinge or what's required there as far as -- I
22  mean, I guess the question is can the camera possibly,
23  as you say, you know, pivot or turn or rotate on a ball
24  joint or -- or something along those lines?  I think
25  that's still, you know, a question, but I'm just trying

CLAIM CONSTRUCTION HEARING

1  to get to this understanding of rotatably attached.

2          You know, I have real concerns -- real

3  questions about defining this term at all.  It seems

4  understandable in and of itself.  The claim language has

5  many of the things that are asked to be placed into the

6  definition.  I have real questions about whether this

7  requires a definition at all.

8          MR. EDMONDS:  The Plaintiff would concur, if

9  the Court says ordinary meaning, we agree, because as I

10  said, the other limitations that they're expressing

11  concerns about are -- and the other structure, the other

12  context is already there in the claim.  We concur.

13          THE COURT:  All right.  I guess let me go

14  back, Mr. Edmonds.  I just want to cover one more thing

15  before we adjourn here.

16          Going back to hinge member for a moment, I

17  guess I want to go back to this Claim 19, hingedly

18  attached and rotatably attached.  I guess this is one of

19  those questions that Courts ask sometimes to Plaintiffs'

20  lawyers, and maybe there's no good -- good answer, but I

21  have a real concern with why the patentee would have

22  used hinge member.  Why not use member, connection, I

23  don't know, any number of different things, because when

24  you say that, well, hingedly is different from

25  rotatably, well, the question then becomes, but you said

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2701

CLAIM CONSTRUCTION HEARING

```
 1  hinge member.
 2           Now, you got a hinge member that's rotating,
 3  and you got a hinge member that's acting on a hinge.  I
 4  mean, it's almost like what does it mean if, oh, yeah,
 5  now a hinge can rotate, unless it means, as the
 6  Defendants seems to be saying, well, yeah, a hinge
 7  rotates around, you know, an axis.
 8           You know, I just -- I don't really know --
 9  it's difficult for the Court to see a path to where you
10  can define hinge member in such a way that doesn't
11  require a hinge. I mean, what you proposed is it just
12  joins to another.  Well, I mean, I think there's got to
13  be some pretty strong support for the idea that, you
14  know, that doesn't need to have an element of a hinge in
15  there.
16           I mean, if you take the shoe on the other
17  foot, you know, if the Defendant were saying, oh, well,
18  this doesn't -- I mean, I see Defendants all the time
19  say, well, even though it says this, we want to define
20  it as this.  And it's like you're doing -- you're doing
21  the same thing here, and I just -- I'm having difficulty
22  with, you know, defining this in -- in a way that does
23  not communicate what it seems is clearly called for.
24  Again, there could have been any number of things used,
25  but there wasn't, there was -- the hinge was used.
```

CLAIM CONSTRUCTION HEARING

```
 1              MR. EDMONDS:  If anything, Your Honor, and
 2   if I may borrow -- and I think we -- we feel our
 3   construction is correct, and maybe if Court reflects, it
 4   might agree, but if it doesn't, I think that our primary
 5   concern with the Defendants' construction is that this
 6   reading a hinge joint into it is entirely consistent
 7   with a rotatable attachment and a rotatable attachment
 8   being different than a hinged attachment.
 9              What we see with this webcam is a good
10   example.  There's -- the -- the hinge member here has a
11   hinged attachment, and everybody aggress.  It also has a
12   rotatable attachment that's not a hinge.  I think if the
13   Court felt that it had to impose some hinge-like
14   limitation on it, then the thing would be -- then the
15   thing to do would be to say that the hinge member needs
16   to have at least a pivot element or some kind of hinge
17   to it, but it's not limited to that.  That -- that's the
18   problem.
19              You're saying our construction -- our
20   construction doesn't have a hinge, and we're saying, but
21   their construction excludes rotatable attachment, maybe
22   that's the middle ground the Court may find.
23              THE COURT:  Well, I certainly agree.  This
24   is something I struggled with before the hearing was is
25   this idea that the hinge member is clearly adapted to be
```

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2703

CLAIM CONSTRUCTION HEARING

1    rotatably attached.  So I think there's got to be some,

2    you know, rotatable attachment.  You know, I don't see

3    how that's being -- would be an argument, but it may

4    also need a -- a hinge, a pivot-type of -- hinge-type of

5    joint, but I'm going to look at this and review the

6    briefing and your arguments and reach a conclusion.

7              MR. ZARIAN:  If I can address one very brief

8    point, Your Honor.  With the respect to the last

9    suggestion that was made, a pivot is -- is different

10   from a hinge and -- and just to highlight that point,

11   Your Honor, there's no solution.  It really doesn't fix

12   the problem to define a hinge that pivots any more than

13   it, you know, would be appropriate to exclude -- it

14   still excludes hinge and makes -- and doesn't account

15   any way for hinge.  So we submit, Your Honor, that a

16   hinge is a hinge and requires that the word hinge be

17   accounted for in the construction.

18             THE COURT:  Okay.

19             MR. EDMONDS:  If I may, Your Honor, that's

20   not what I meant to say.  If I said it, I apologize.

21   What I'm saying is on this one, a hinge member does have

22   a pivot element, it does have a hinge to it, but that

23   doesn't mean that it can have another type of rotatable

24   attachment, and that's really where the big problem is,

25   because the preferred embodiment has another type of

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2704

CLAIM CONSTRUCTION HEARING

 1  rotatable attachment.

 2          THE COURT:  Okay.  Okay.  All right.  Well,

 3  thank you for your arguments.  We'll get you a ruling on

 4  this as soon as we can.

 5          Anything further from the Plaintiff?

 6          MR. EDMONDS:  Thank you, Your Honor.  Thank

 7  you for your indulgence.

 8          THE COURT:  Anything further from the

 9  Defendants?

10          MS. LU:  Just one final comment.  Plaintiff

11  seems to like playing with this camera and saying, look,

12  there's a hinge.  Look, there's something.  And we need

13  not belabor the point, but, Your Honor, when you go back

14  and look at the claims, it states that the hinge member

15  is the piece to which the camera attaches and not to

16  which the support frame attaches.  I would request that

17  Your Honor not give too much credence to the particular

18  ways Plaintiff's hands were manipulating this particular

19  model, and, also, ask yourself if this means anything,

20  what -- what the Plaintiff was doing with this camera,

21  where does the hinge member begin, and where does it

22  end?  Where does the support frame begin, and where does

23  it end?

24          THE COURT:  Okay.

25          MS. LU:  Thank you.

Sunbelt Reporting & Litigation Services
Houston  Austin  Bryan/College Station  Corpus Christi  Dallas/Fort Worth  East Texas  San Antonio

A2705

CLAIM CONSTRUCTION HEARING

```
 1                THE COURT:  All right.  Thank you for your
 2   arguments, and we're adjourned.
 3                COURTROOM CLERK:  All rise.
 4                (Hearing concluded.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2706

CLAIM CONSTRUCTION HEARING

```
 1                        CERTIFICATION

 2

 3           I HEREBY CERTIFY that the foregoing is a

 4   true and correct transcript from the stenographic notes

 5   of the proceedings in the above-entitled matter to the

 6   best of my ability.

 7

 8                                           March 2, 2012

 9   _____               _____

10   SHELLY HOLMES                          Date
     Deputy Official Reporter
     State of Texas No.: 7804
11   Expiration Date: 12/31/12

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Job No. 98620
```

Sunbelt Reporting & Litigation Services
Houston   Austin   Bryan/College Station   Corpus Christi   Dallas/Fort Worth   East Texas   San Antonio

A2707

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADJUSTACAM LLC

v.                                          NO. 6:10-cv-329-LED

AMAZON.COM, INC., ET AL.                    JURY

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

Plaintiff AdjustaCam LLC respectfully submits this *Markman* Reply as follows:

Defendants' Response is long on citations to inapplicable case law but lacks citations to

intrinsic support for their meritless attempt, under the guise of proving "context," to import

unwarranted limitations into straight-forward claim terms.

### A.    Support Frame.

| PLAINTIFF: A structural element that supports a hinge member | DEFENDANTS: A physically distinct structural element whose different dispositions enable support of said hinge member |
|---|---|

The parties agree, in essence, that a "support frame" is a structural element that supports

a hinge member.[1] Defendants improperly seek to add a "physically distinct" limitation. Their

justification for adding this unsupported limitation is *Becton Dickenson*, which holds that

"distinct" elements are not the same structure. *See Becton Dickenson v. Tyco Healthcare*, 616

F.3d 1249, 1254 (Fed. Cir. 2010). However, neither side's construction states, or even implies,

that a support frame and hinge member are the same structure.  Thus, the extraneous word

"distinct" is unnecessary and inappropriate. Following Defendants' logic, every structure in an

apparatus claim should be specified as "physically distinct," which would be a senseless practice.

Further, Defendants improperly seek to inject a "different dispositions enable support"

limitation into the construction of "support frame." However, the specification and claims only

---

[1] Although "frame" is a word with plain and ordinary meaning, AdjustaCam has acceded to Defendants'
terminology of "structural element" in order to help simply the issues in dispute.

1

state that the "support frame" is "configured to support" the hinge member, or that it "engagingly support[s]" the hinge member. There is no requirement in the specification or the claims that "different dispositions" of the "support frame" must be the thing that enables support. For example, a camera may be supported merely by virtue of being rotabably attached.

Defendants erroneously argue that Plaintiff leaves "support frame" in a "vacuum." This argument lacks merit. Further, it ignores that ample context and linkage to other structures is provided by the surrounding claim language which explains the relationship between the support frame and the surface, the support frame and the object, and the support frame and the hinge member.  This structural relationship is readily apparent when one views "support frame" in context with other claim terms, including the hinge member, surface and object; and there is no need to inject unnecessary and improper limitations into "support frame."

**B.      Disposition.**

| **Plaintiff:** Plain and ordinary meaning; alternatively, configuration[2] or arrangement | **Defendants:** Configuration of the support frame enabling support of the hinge member, accomplished through rotation about the second axis |
|---|---|

Again, under the guise of "context," Defendants seek to import extraneous and improper limitations into a straight-forward term. Disposition is not a complicated word or technical jargon. It is the act of being disposed, which equates with "arrangement"[3] or "positioning."

Similar to their arguments relative to "support frame," Defendants seek to import an unwarranted limitation into the simple word "disposition," which would require that the configuration of the support frame must be the thing that enables support of the hinge member. As noted above relative to "support frame," this argument is erroneous and lacking in support.

---

[2] Should the Court determine that "disposition" is not a plain meaning word, then AdjustaCam would be agreeable with Defendants' terminology of "configuration" in order to help simply the issues in dispute.
[3] *See* Ex. 1.

The versatile "disposition" of the support frame involves disclosure in the specification and claim limitations whereby the support frame has a first disposition when positioned on a generally horizontal, substantially planar surface, and a second disposition when supported on an object.[4] There is no requirement in the specification or claims that the "disposition" of the support frame must be the thing that enables support of the hinge member.

Further, there is no requirement in the claims or preferred embodiments that "disposition" of the support frame must be "accomplished through rotation about the second axis." In fact, claim 1, which is the only support cited by Defendants, states that the *hinge member* rotates about a second axis relative to the support frame. Further, as noted above, the mere attachment of the support frame and the hinge member can be what supports the hinge member.

Defendants argue that AdjustaCam's construction of "disposition" leaves the word in a vacuum; however, ample context is provided by the surrounding claim language without importing improper limitations into the construction of a straight-forward term.

## C.     Hinge Member.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A structural element that joins to another for rotation | A structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

Defendants improperly seek to limit hinge member to a "hinge joint." However, the term "hinge joint" is not used in the specification or claims. Further, Defendants' overly restrictive construction would eliminate a preferred embodiment pivot joint, which is erroneous and presumptively incorrect. The '343 patent teaches that in a preferred embodiment, "pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74." '343 patent, 5:37-41. This rotatable attachment depicted in Fig. 4 (and elsewhere in the '343 patent), which comprises

---

[4] The '343 patent uses the words "position" and "disposition" interchangeably.



pivot element 80 of hinge member 16, is a pivot joint, as follows:                                  .

The '343 patent teaches and claims that a "hinge member" can be "adapted to be rotatably

attached," "rotatably attached" or "hingedly attached." *See, e.g.,* Claims 1, 10, 19 & 21.

Preferred embodiments disclosed for rotatable and hinged attachment are "pivot element 80" and

"hinge element 82." Further, the parties agree that "hingedly attached" requires a "hinge joint."

"Rotatably attached" is broader than "hingedly attached," and it is broader than a hinge joint.

**D.     Rotatably attached/adapted to be rotatably attached/adapted to rotatably attach.**

| **Plaintiff:** Connected such that the connected object is capable of being rotated | **Defendants:** Connected such that the connected object is capable of being adjusted to different configurations via motion over one axis of rotation |
|---|---|

The term "rotate" and its various permutations, such as rotatable and rotatably, are plain

words that a jury can readily understand. There is no good reason to omit any permutation of

"rotate" out of the definition of "rotatably attached" and instead substitute "adjusted to different

configurations." Further, Defendants' construction improperly suggests that "rotatably" is

limited to "one axis of rotation." However, nothing in the '343 patent suggests or requires this

restriction. Rather, the '343 patent refers to a "first axis of rotation" of the camera relative to the

hinge member in order to distinguish it from the "second axis of rotation" of the hinge member

relative to the support frame. There is no teaching or disclaimer that rotation is restricted to a

single axis. In *Phillips,* the Federal Circuit "expressly rejected the contention that if a patent

describes only a single embodiment, the claims of the patent must be construed as being limited

to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir.2005). "Much of the

time, upon reading the specification in [ ] context, it will become clear whether the patentee is

setting out specific examples of the invention to accomplish those goals, or whether the patentee

instead intends for the claims and the embodiments in the specification to be strictly coextensive." *Id.* Here, the patentee expressly states that, "[h]aving thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached. '343, 6:44-47.  Moreover, the patentee repeatedly refers to the examples in the specification as a "preferred embodiment." As such, the claims are not limited to a preferred embodiment. *See, e.g., Phillips, supra*; *Dealertrack, Inc. v. Huber*, 2012 WL 164439, *5 (Fed. Cir. Jan. 20, 2012). Further, the plain meaning of "rotatably attached," is not limited to rotation on a single axis. If patents were arbitrarily limited to preferred embodiments, then claims would be unnecessary.

Defendants' discussion of "comprising" lacks merit, and appears to be mostly a re-hash of their unfounded argument that claims should be limited to a preferred embodiment. It cannot be reasonably disputed that an apparatus "comprising," i.e., including, but not limited to, rotation about a first axis and a second axis is not limited to rotation only around those two axes,

### E.     Other claim terms not briefed by Defendants.

Inexplicably, Defendants chose not to submit any briefing in support of their prior proposed constructions for (1) hingedly attached / hingedly attaching; (2) maintained adjacent said edge; (3) when said first surface and said second surface are inclined from a generally horizontal orientation; (4) a display screen which can be inclined from a generally horizontal position; (5) body; (6) proximal…end; (7) distal end; (8) pivot element; (9) rotation of said support frame being prevented along an axis substantially parallel to said second axis; or (10) engagingly support. Here, Plaintiff can only assume that Defendants have abandoned their earlier proposed constructions, and that they now agree with Plaintiff's constructions.

January 31, 2012                              Respectfully submitted,

                                             By: /s/ John J. Edmonds
                                             John J. Edmonds – LEAD COUNSEL
                                             Texas State Bar No. 789758
                                             Michael J. Collins
                                             Texas Bar No. 4614510
                                             Stephen F. Schlather
                                             Texas Bar No. 24007993
                                             COLLINS, EDMONDS &
                                             POGORZELSKI, PLLC
                                             1616 S. Voss Rd., Suite 125
                                             Houston, Texas 77057
                                             Telephone: (713) 501-3425
                                             Facsimile: (832) 415-2535
                                             jedmonds@cepiplaw.com
                                             mcollins@cepiplaw.com
                                             sschlather@cepiplaw.com

                                             Andrew W. Spangler
                                             Texas Bar No. 24041960
                                             Spangler Law P.C.
                                             208 N. Green Street, Suite 300
                                             Longview, Texas 75601
                                             (903) 753-9300
                                             (903) 553-0403 (fax)
                                             spangler@spanglerlawpc.com

                                             ATTORNEYS FOR PLAINTIFF
                                             ADJUSTACAM LLC

## CERTIFICATE OF SERVICE

   I hereby certify that all counsel of record who are deemed to have consented to electronic
service are being served with this filing via the Court's CM/ECF system and/or email per Local
Rule CV-5(a)(3).

January 31, 2012                             /s/ John J. Edmonds
                                             John J. Edmonds

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADJUSTACAM LLC

v.

AMAZON.COM, INC., ET AL.

NO. 6:10-cv-329-LED

JURY

## DECLARATION OF JOHN EDMONDS

John J. Edmonds declares as follows:

I am over the age of 18 and I am fully competent to make this declaration. I have personal knowledge of the matters stated herein from my review of the dictionaries.

1.    The dictionary excerpts appended hereto are true and correct copies taken from each respective dictionary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 31, 2012 in Houston, Texas.

John J. Edmonds

# Oxford American Dictionary

**EUGENE EHRLICH**
**STUART BERG FLEXNER · GORTON CARRUTH**
**JOYCE M. HAWKINS**

TTENTION: ORGANIZATIONS AND CORPORATIONS
ost Avon Books paperbacks are available at special quantity
counts for bulk purchases for sales promotions, premiums, or
d-raising. For information, please call or write:

ecial Markets Department, HarperCollins Publishers Inc.
East 53rd Street, New York, New York 10022-5299.
lephone: (212) 207-7528.    Fax: (212) 207-7222.

**AVON BOOKS**
*An Imprint* of HarperCollins*Publishers*

Case: 13-1665    Document: 93-3    Page: 264    Filed: 12/11/2014

Case 6:10-cv-00329-LED    Document 601-1    Filed 01/31/12    Page 3 of 16 PageID #: 4675

# Preface

AVON BOOKS
*An Imprint of* HarperCollins*Publishers*
10 East 53rd Street
New York, New York 10022-5299

Copyright © 1980 by Oxford University Press, Inc.
Based on THE OXFORD PAPERBACK DICTIONARY
Copyright © 1979 by Oxford University Press
Published by arrangement with Oxford University Press, Inc.
Library of Congress Catalog Card Number: 80-16510
ISBN: 0-380-60772-7
www.avonbooks.com

All rights reserved, which includes the right to reproduce this book or
portions thereof in any form whatsoever except as provided by the
U.S. Copyright Law. For information address Oxford University
Press, Inc., 200 Madison Avenue, New York, New York 10016.

First Avon Books Trade Printing: October 1986
First Avon Books Printing: August 1982

Avon Trademark Reg. U.S. Pat. Off. and in Other Countries, Marca
Registrada, Hecho en U.S.A.
HarperCollins® is a trademark of HarperCollins Publishers Inc.

Printed in the U.S.A.

OPM   50 49 48 47 46 45 44

If you purchased this book without a cover, you should be aware that
this book is stolen property. It was reported as "unsold and destroyed"
to the publisher, and neither the author nor the publisher has received
any payment for this "stripped book."

This new member of the Oxford family of di
been prepared especially for those who need a
to-date guide to American English. It contai
phrases likely to be met in reading and everyday
a number of slang, informal, and technical word
Names of states of the United States are incl
their state capitals, terms used to designate the p
state, and names of the provinces of Canada.
countries of the world, including those not yet
are also given, as are names of the capital cities a
used to designate the people of each country.

We take this opportunity to express our gratit
of the Oxford Dictionary Department of the
sity Press for assistance of various kinds, pa
Dr. John B. Sykes, Editor of the *Concise Oxfor*
Edition, and to Dr. Robert Burchfield, Ch
Oxford English dictionaries. We are gratef
members of the staff of Oxford University Press in
particularly to Marjorie Mueller, Janice L
Carollo, for help in all stages of our wor
We wish also to express our gratitude to the ma
The Hudson Group dictionary staff who wor
American Dictionary. In particular we wi
staff members: Ernest S. Hildebrand, Jr.
Felice Levy, Lawrence T. Lorimer, and (
associate staff members: Pamela Dupuis, M
Ehrlich, Raymond V. Hand, Jr., Joan Li
Scott, and Katherine G. Scott; and assistant sta
Jayne Ackerman, Christopher Carruth, Hayde

(a person) and make him lose his bearings.

**dis·o·ri·en·tate** (dis-ohr-i-ĕn-tayt) v. (**dis·o·ri·en·tat·ed, dis·o·ri·en·tat·ing**) to disorient. **dis·o·ri·en·ta·tion** (dis-ohr-i-ĕn-tay-shŏn) n.

**dis·own** (dis-ohn) v. to refuse to acknowledge as one's own, to reject all connection with.

**dis·par·age** (di-spar-ij) v. (**dis·par·aged, dis·par·ag·ing**) to speak of in a slighting way, to belittle. **dis·par·ag·ing·ly** adv. **dis·par·age·ment** n.

**dis·pa·rate** (dis-pă-rit) adj. different in kind. **dis'pa·rate·ly** adv.

**dis·par·i·ty** (di-spar-i-tee) n. (pl. **-ties**) inequality, difference.

**dis·pas·sion** (dis-pash-ŏn) n. freedom from emotion.

**dis·pas·sion·ate** (dis-pash-ŏ-nit) adj. free from emotion, calm, impartial. **dis·pas'sion·ate·ly** adv.

**dis·patch** (di-spach) v. 1. to send off to a destination or for a purpose. 2. to give the deathblow to, to kill. 3. to complete or dispose of quickly. **dispatch** n. 1. dispatching, being dispatched. 2. promptness, speed, she acted with dispatch. 3. an official message or report sent with speed. 4. a news report sent to a newspaper or news agency etc. **dis·patch'er** n. **dispatch case**, a container for carrying official documents.

**dis·pel** (di-spel) v. (**dis·pelled, dis·pel·ling**) to drive away, to scatter, wind dispelled the fog; how can we dispel their fears?

**dis·pen·sa·ble** (di-spen-să-bĕl) adj. 1. not essential. 2. able to be dispensed, a dispensable drug.

**dis·pen·sa·ry** (di-spen-să-ree) n. (pl. **-ries**) a place where medicines are dispensed, the hospital dispensary.

**dis·pen·sa·tion** (dis-pen-say-shŏn) n. 1. dispensing, distributing. 2. ordering or management, especially of the world by divine authority, by the merciful dispensation of Providence. 3. exemption from a penalty or duty, was granted a dispensation.

**dis·pense** (di-spens) v. (**dis·pensed, dis·pens·ing**) 1. to distribute, to deal out; dispense justice, to administer it. 2. to prepare and give out (medicines etc.) according to prescriptions. □**dispense with**, to do without; to make unnecessary.

**dis·pens·er** (di-spen-sĕr) n. 1. a person who dispenses medicines. 2. a device that deals out a quantity of something, a soap dispenser.

**dis·per·sant** (di-spur-sănt) n. a substance that disperses something.

**dis·perse** (di-spers) v. (**dis·persed, dis·pers·ing**) to scatter, to go or drive or send in different directions. **dis·per·sal** n. **dis·per·sion** (di-spur-zhŏn) n. ▷Do not confuse disperse with disburse.

**dis·pir·it** (di-spir-it) v. to make despondent, to depress. **dis·pir'it·ed** adj.

**dis·place** (dis-plays) v. (**dis·placed, dis·plac·ing**) 1. to shift from its place. 2. to take the place of, to oust, weeds tend to displace other plants. **dis·place'ment** n. □**displaced person**, a refugee.

**dis·play** (di-splay) v. 1. to show, to arrange (a thing) so that it can be seen. 2. (of birds and animals) to make a display (see definition 3 below). **display** n. 1. displaying, being displayed. 2. something displayed conspicuously. 3. a special pattern of behavior used by birds and animals as a means of communication.

**dis·please** (dis-pleez) v. (**dis·pleased, dis·pleas·ing**) to offend, to arouse the disapproval or anger of.

**dis·pleas·ure** (dis-plezh-ŭr) n. a displeased feeling, dissatisfaction.

**dis·port** (di-spohrt) v. (formal) to play, to amuse oneself, disporting themselves on the beach.

**dis·pos·a·ble** (di-spoh-ză-bĕl) adj. 1. able to be disposed of. 2. at one's disposal; disposable income, the amount left after taxes have been deducted. 3. designed to be thrown away after being used once, disposable diapers.

**dis·pos·al** (di-spoh-zăl) n. disposing of something. □at one's disposal, available for one's use.

**dis·pose** (di-spohz) v. (**dis·posed, dis·pos·ing**) 1. to place suitably or in order, disposed the troops in two lines. 2. to determine the course of events, man proposes, God disposes. 3. to make willing or ready to do something, to incline, their friendliness disposed us to accept the invitation; we felt disposed to accept. **dis·pos'er** n. □be well disposed toward, to be friendly toward, to favor. **dispose of**, to get rid of; to deal with.

**dis·po·si·tion** (dis-pŏ-zish-ŏn) n. 1. setting in order, arrangement, the dispositions of troops. 2. a person's natural qualities of mind and character, has a cheerful disposition. 3. a natural tendency or inclination, they show a disposition to change jobs frequently.

**dis·pos·sess** (dis-pŏ-zes) v. to deprive (a person) of the possession of something. **dis·pos·ses'sion** n.

**dis·pro·por·tion** (dis-prŏ-pohr-shŏn) n. lack of proper proportion, being out of proportion. **dis·pro·por'tion·ate** adj. **dis·pro·por'tion·ate·ly** adv.

**dis·prove** (dis-proov) v. (**dis·proved, dis·prov·ing**) to show to be false or wrong. **dis** (dis-proof) n.

**dis·put·a·ble** (dis-pyoo-tă-bĕl) adj. able to be disputed, questionable. **dis·put'a·bly** adv.

**dis·pu·tant** (dis-pyoo-tănt) n. a person engaged in a dispute.

**dis·pu·ta·tion** (dis-pyŭ-tay-shŏn) n. argument, debate.

**dis·pu·ta·tious** (dis-pyŭ-tay-shŭs) adj. fond of, or given to, argument.

**dis·pute** (dis-pyoot) v. (**dis·put·ed, dis·put·ing**) 1. to argue, to debate. 2. to quarrel. 3. to question the truth or validity of, dispute a claim; the disputed territory, that which is the subject of a dispute. **dispute** n. 1. an argument or debate. 2. a quarrel. **dis·put'er** n. □in dispute, being argued about.

**dis·qual·i·fy** (dis-kwol-i-fī) v. (**dis·qual·i·fied, dis·qual·i·fy·ing**) 1. to debar from a competition because of an infringement of the rules, that team was disqualified from the race. 2. to make unsuitable or ineligible, weak eyesight disqualifies him for military service. **dis·qual·i·fi·ca·tion** (dis-kwol-i-fi-kay-shŏn) n.

**dis·qui·et** (dis-kwy-ĕt) n. uneasiness, anxiety. **disquiet** v. to make uneasy or anxious.

**dis·qui·et·ing** (dis-kwy-ĕ-ting) adj. causing disquiet.

**dis·qui·e·tude** (dis-kwy-ĕ-tood) n. a state of uneasiness, anxiety.

**dis·qui·si·tion** (dis-kwi-zish-ŏn) n. a long elaborate spoken or written account of something.

**dis·re·gard** (dis-ri-gahrd) v. to pay no attention to, to treat as of no importance. **disregard** n. lack of attention to something, treating it as of no importance, complete disregard for his own safety.

**dis·re·mem·ber** (dis-ri-mem-bĕr) v. (informal) to fail to remember. ▷Careful writers and speakers use this word humorously if at all.

**dis·re·pair** (dis-ri-pair) n. a bad condition caused by lack of repairs, in a state of disrepair.

**dis·rep·u·ta·ble** (dis-rep-yŭ-tă-bĕl) adj. having a bad reputation, not respectable in character or appearance. **dis·rep'u·ta·bly** adv.

**dis·re·pute** (dis-ri-pyoot) n. lack of good repute, discredit, fell into disrepute.

**dis·re·spect** (dis-ri-spekt) n. lack of respect, rudeness. **dis·re·spect'ful** adj. **dis·re·spect'ful·ly** adv.

**dis·robe** (dis-rohb) v. (**dis·robed, dis**

**rob·ing**) to t nial robes, to

**dis·rupt** (dis-ru to throw into flow or contin rupted the coa fic. **dis·rup** **dis·rup·tive** (d ruption.

**dis·sat·is·fac** n. lack of sati **dis·sat·is·fy** ( is·fied, dis satisfy, to l **sat'is·fied** a

**dis·sect** (di-sel cially in order ture, we disse (a theory etc.) n. **dis·sec·ti** the spelling a

**dis·sem·ble** ( bled, dis·se true feelings ▷Do not cor semble.

**dis·sem·i·nat sem·i·nat·e spread (ideas na·tion** (di-s

**dis·sen·sion** ment that giv different opini in opinion.

**dis·sent** (di·se dissents. 2. church that h Church of E

**dis·sent·ient** ing, dissenti sents.

**dis·ser·ta·tio** spoken or wri tial treatise w ments for a d

**dis·serv·ice** ( tion done by help.

**dis·sev·er** (di vide.

**dis·si·dent** ( dissident n. who opposes dence n.

**dis·sim·i·lar dis·sim·i·la**

**dis·sim·u·lat** sim·u·late dissemble. d yŭ-lay-shŏn)

**dis·si·pate** (d ed, dis·si·p

# Webster's New World™ Dictionary

## Fourth Edition

### MICHAEL AGNES
Editor in Chief



POCKET BOOKS

New York   London   Toronto   Sydney   Singapore

A2728

**F(**


POCKET BOOKS, a division of Simon & Schuster, Inc.
1230 Avenue of the Americas, New York, NY 10020

Webster's New World™ Dictionary, Pocket Books Paperback Edition

Copyright © 2003 by Wiley Publishing, Inc.

This edition is based on and includes material from *Webster's New World™ College Dictionary,* Fourth Edition, copyright © 2002 by Wiley Publishing, Inc., Cleveland, Ohio

Published by arrangement with Wiley Publishing, Inc.

All rights reserved, including the right to reproduce
this book or portions thereof in any form whatsoever.
For information address Wiley Publishing, Inc.,
10475 Crosspoint Boulevard, Indianapolis, IN 46256

ISBN: 0-7434-7070-2

First Pocket Books trade paperback printing of this revised edition July 2003

10  9  8  7  6  5  4  3  2  1

POCKET and colophon are registered trademarks of
Simon & Schuster, Inc.

Dictionary Editorial offices:
New World Dictionaries
850 Euclid Avenue
Cleveland, OH 44114

Manufactured in the United States of America

For information regarding special discounts for bulk purchases,
please contact Simon & Schuster Special Sales at 1-800-456-6798
or business@simonandschuster.com

This new Pocket Book:
the acclaimed *Webster'*
*Fourth Edition,* publish
work: the previous pap
1990 and revised in 199
has been edited for rea
date, portable dictionary
in the office.

The dictionary offers b
sions, supplements defir
tive phrases, and provic
and etymologies. Ever
enhance the reader's ur
and connotations. This (
Webster's New World s
combined 150 years of e

This latest edition inc
changes in the politica
during the past decade a
rapidly changing vocabi
terms range from tech
include *anti-lock, band:*
*broadband, HTML, micr*
*utility vehicle, up to spe*
and many others.

Every reader is encour
of the Dictionary, which
explanation of how to ;
stored within the diction

**dismissive** ►                                    **190**

leave 2 to discharge from employment, etc. 3 to put aside mentally 4 *Law* to reject (a claim, etc.) —**dis·mis′al** *n.*

**dis·mis′sive** (-mis′iv) *adj.* condescending in dismissing from consideration

**dis·mount′** (-mount′) *vi.* to get off, as from a horse —*vt.* 1 to remove (a thing) from its mounting 2 to take apart; dismantle

**dis·o·be·di·ence** (dis′ō bē′dē əns) *n.* refusal to obey; insubordination —**dis′o·be′di·ent** *adj.*

**dis′o·bey′** (-ō bā′) *vt., vi.* to refuse to obey

**dis′o·blige′** (-ə blīj′) *vt.* **-bliged′, -blig′ing** 1 to refuse to oblige 2 to offend

**dis·or′der** (-ôr′dər) *n.* 1 a lack of order; confusion 2 a breach of public peace; riot 3 an ailment —*vt.* 1 to throw into disorder 2 to upset the normal functions of

**dis·or′der·ly** *adj.* 1 untidy 2 violating public peace, safety, etc. —**dis·or′der·li·ness** *n.*

**dis·or·gan·ize** (dis ôr′gə nīz′) *vt.* **-ized′, -iz′ing** to break up the order or system of; throw into confusion —**dis·or′gan·i·za′tion** *n.*

**dis·o′ri·ent** (-ôr′ē ent′) *vt.* [see DIS- & ORIENT, *v.*] 1 to cause to lose one's bearings 2 to confuse mentally —**dis·o′ri·en·ta′tion** *n.*

**dis·own′** (-ōn′) *vt.* to refuse to acknowledge as one's own; repudiate

**dis·par·age** (di spar′ij) *vt.* **-aged, -ag·ing** [< OFr *des-* (see DIS-) + *parage*, rank] 1 to discredit 2 to belittle —**dis·par′age·ment** *n.*

**dis·pa·rate** (dis′pə rət) *adj.* [< L *dis-*, not + *par*, equal] distinct or different in kind; unequal —**dis·par·i·ty** (di spar′ə tē), *pl.* **-ties**, *n.*

**dis·pas·sion·ate** (dis pash′ə nət) *adj.* free from passion or bias; impartial —**dis·pas′sion·ate·ly** *adv.*

**dis·patch** (di spach′; *for n., also* dis′ pach′) *vt.* [< L *dis-*, away + *pes*, foot] 1 to send promptly, as on an errand 2 to kill 3 to finish quickly —*n.* 1 a sending off 2 a killing 3 speed; promptness 4 a message 5 a news story sent by a reporter —**dis·patch′er** *n.*

**dis·pel** (di spel′) *vt.* **-pelled′, -pel′ling** [< L *dis-*, apart + *pellere*, to drive] to scatter and drive away

**dis·pen·sa·ble** (di spen′sə bəl) *adj.* 1 that can be dealt out 2 that can be dispensed with; not important

**dis·pen′sa·ry** (-sə rē) *n., pl.* **-ries** a room or place where medicines and first-aid treatment are available

**dis·pen·sa·tion** (dis′pən sā′shən) *n.* 1 a dispensing 2 something dispensed 3 an administrative system 4 a release from an obligation 5 *Theol.* the ordering of events under divine authority

**dis·pense** (di spens′) *vt.* **-pensed′, -pens′ing** [< L *dis-*, out + *pendere*, weigh] 1 to give out; distribute 2 to prepare and give out (medicines) 3 to administer (the law or justice) —**dispense with** 1 to get rid of 2 to do with-

**dis·perse** (-spurs′) *vt.* **-persed′, -pers′ing** [< L *dis-*, out + *spargere*, scatter] 1 to break up and scatter 2 to dispel (mist, etc.) —*vi.* to scatter —**dis·per′sal** *n.* —**dis·per′sion** *n.*

**dis·pir·it** (di spir′it) *vt.* to depress; discourage —**dis·pir′it·ed** *adj.*

**dis·place** (dis plās′) *vt.* **-placed′, -plac′ing** 1 to move from its usual place 2 to remove from office; discharge 3 to replace

**displaced person** one forced from one's country, esp. as a result of war

**dis·place′ment** *n.* 1 a displacing or being displaced 2 the weight or volume of air, water, or other fluid displaced by a floating object

**dis·play** (di splā′) *vt.* [< L *dis-*, apart + *plicare*, to fold] 1 [Obs.] to spread out; unfold 2 to exhibit —*n.* 1 an exhibition 2 anything displayed

**dis·please** (dis plēz′) *vt., vi.* **-pleased′, -pleas′ing** to fail to please; offend

**dis·pleas′ure** (-plezh′ər) *n.* a being displeased

**dis·port** (di spôrt′) *vi.* [< OFr *des-* (see DIS-) + *porter*, carry] to play; frolic —*vt.* to amuse (oneself)

**dis·pos·al** (di spōz′əl) *n.* 1 a disposing 2 a device in the drain of a kitchen sink to grind up garbage

**dis·pose** (-spōz′) *vt.* **-posed′, -pos′ing** [see DIS- & POSITION] 1 to arrange 2 to settle (affairs) 3 to make willing; incline —**dispose of** 1 to settle 2 to give away or sell 3 to get rid of —**dis·pos′a·ble** *adj.*

**dis·po·si·tion** (dis′pə zish′ən) *n.* 1 arrangement 2 management of affairs 3 a selling or giving away 4 the authority to settle, etc.; control 5 a tendency 6 one's temperament

**dis′pos·sess′** (-pə zes′) *vt.* to deprive of the possession of land, a house, etc.; oust

**dis·praise** (-prāz′) *vt.* **-praised′, -prais′ing** [< OFr *despreisier*] to blame; censure —*n.* blame

**dis′pro·por′tion** (-prə pôr′shən) *n.* a lack of proportion —**dis′pro·por′tion·al** or **dis′pro·por′tion·ate** *adj.*

**dis·prove** (-prōōv′) *vt.* **-proved′, -proved′** or **-prov′en, -prov′ing** to prove to be false

**dis·pu·ta·tion** (dis′pyōō tā′shən) *n.* 1 a disputing 2 debate

**dis′pu·ta′tious** (-pyōō tā′shəs) *adj.* inclined to dispute; contentious —**dis′pu·ta′tious·ly** *adv.*

**dis·pute** (di spyōōt′) *vt.* **-put′ed, -put′ing** [< L *dis-*, apart + *putare*, to think] 1 to argue; debate 2 to quarrel —*vt.* 1 to argue (a question) 2 to doubt 3 to oppose in any way —*n.* 1 a disputing; debate 2 a quarrel —**in dispute** not settled —**dis·put′a·ble** *adj.* —**dis·pu′tant** *adj., n.*

**dis·qual·i·fy** (dis kwôl′ə fī′) *vt.* **-fied′, -fy′ing** to make or declare unqualified, unfit, or ineligible —**dis·qual′i·fi·ca′tion** *n.*

**dis·qui·et** (dis kwī′ət) *vt.* to make uneasy; disturb —*n.* restlessness: also

**dis·qui·e·tude** (-ə tōōd′)

**dis·qui·si·tion** (dis′kwi :  *dis-*, apart + *quaerere*, t discussion; treatise

**dis′re·gard** (dis′ri gärd′) tle or no attention to  2 due respect —*n.* 1 lack lack of due regard or r

**dis′re·pair′** (-ri per′) *n.*  needing repairs; state o

**dis′rep′u·ta·ble** (-rep′yə not reputable  2 not fit

**dis′re·pute′** (-ri pyōōt′) :  repute; bad reputation;

**dis′re·spect′** (-ri spel  respect; discourtesy  – *adj.*

**dis·robe** (dis rōb′) *v*  -rob′ing to undress

**dis·rupt** (dis rupt′) *vt.*  apart + *rumpere*, to br  apart  2 to disturb or  rup′tion *n.* —**dis·rup′ti**

**dis·sat·is·fy** (-sat′is fī′)  to fail to satisfy; displ  fac′tion *n.*

**dis·sect** (di sekt′) *vt.* [*  secare*, to cut] 1 to cu  piece, as a body for pur  to examine or analyz  **sec′tion** *n.* —**dis·sec′to**

**dis·sem·ble** (di sem′bə  -bling [< OFr *dessem*  (the truth, one's feelin  under a false  app  sem′blance *n.* —**dis·se**

**dis·sem·i·nate** (di :  -nat′ed, -nat′ing [<  seminare*, to sow] t  spread widely —**dis·se**

**dis·sen·sion** (di sen′sh  ing; disagreement or q

**dis·sent** (di sent′) *vi.* [  sentire*, feel] 1 to dis  doctrines of an establi  a dissenting —**dis·sen**

**dis·ser·ta·tion** (dis′ər  *dis-*, apart + *serere*, jo  course or treatise, es  fulfill the requiremen  from a university

**dis·serv·ice** (dis sur′vi  **dis·sev·er** (di sev′ər)  separate 2 to divide i  separate; disunite

**dis·si·dence** (dis′ə da  apart + *sidere*, sit] d  sent —**dis′si·dent** (-də

**dis·sim·i·lar** (dis sim′ə  lar; different —**dis′si**  tē), *pl.* **-ties**, *n.*

**dis·si·mil·i·tude** (dis′  difference

**dis·sim·u·late** (di sin  -lat′ed, -lat′ing [see D  dissemble —**dis·sim′u**  sim′u·la′tor *n.*

**dis·si·pate** (dis′ə p  -pat′ing [< L *dis-*, a  throw] 1 to scatte  make disappear  3 to  —*vi.* 1 to vanish  2 t  ure to the point of h  dis′si·pa′tion *n.*

# THE AMERICAN HERITAGE
# DICTIONARY
## OF THE ENGLISH LANGUAGE

A2731

Words that are believed to be registered trademarks have been
checked with authoritative sources. No investigation has been
made of common-law trademark rights in any word, because
such investigation is impracticable. Words that are known to
have current registrations are shown with an initial capital and
are also identified as trademarks. The inclusion of any word
in this Dictionary is not, however, an expression of the pub-
lishers' opinion as to whether or not it is subject to proprietary
rights. Indeed, no definition in this Dictionary is to be regarded
as affecting the validity of any trademark.

© 1969, 1970, 1971, 1973, 1975, 1976, 1978, 1979, 1980, 1981 by Houghton Mifflin Company
All correspondence and inquiries should be directed to
Dictionary Division, Houghton Mifflin Company
Two Park Street, Boston, Massachusetts 02107

All rights reserved under Bern and Pan-American Copyright Conventions

ISBN: 0-395-20360-0 (new college edition; thumb-indexed)
0-395-20359-7 (new college edition; plain edges)
0-395-24575-3 (high-school edition)
0-395-09066-0 (larger-format edition)

Library of Congress Catalog Card Number 76–86995

Manufactured in the United States of America

Computer-composed by Inforonics, Inc.
in Maynard, Massachusetts

3



dispenser
Paper-cup dispenser



sink flange
stopper

detergent shield
shredder

disposal
Electric garbage disposal
for a sink drain

minister (laws, for example). **4.** To exempt or release, as from a duty or religious obligation. —*intr.* To grant dispensation or exemption. —**dispense with. 1.** To manage without; forgo. **2.** To dispose of. —See Synonyms at **distribute.** [Middle English *dispensen,* from Medieval Latin *dispensāre,* to grant dispensation to, exempt, condone, from Latin, to pay out, distribute, frequentative of *dispendere,* to weigh out : *dis-,* away + *pendere,* to weigh (see **span-** in Appendix*).]
**dis·pen·ser** (dĭs-pĕn′sər) *n.* One that dispenses or gives out: *a paper-cup dispenser.*

**dis·per·sal** (dĭs-pûr′səl) *n.* The act or process of dispersing or the condition of being dispersed; distribution.

**dis·perse** (dĭs-pûrs′) *v.* **-persed, -persing, -perses.** —*tr.* **1.** To scatter in various directions; distribute widely. **2.** To cause to vanish or disappear; dispel. **3.** To disseminate (knowledge, for example). **4.** To separate (light) into spectral rays. —*intr.* To move or scatter in different directions. —See Synonyms at **scatter.** [Middle English *dispersen,* from Old French *disperser,* from Latin *dispersus* (past participle *dispersus*), to scatter on all sides : *dis-,* in different directions + *spargere,* to strew, scatter (see **spherg-** in Appendix*).] —**dis·pers′ed·ly** (-pûr′sĭd-lē) *adv.* —**dis·pers′er** *n.* —**dis·pers′i·ble** *adj.*
**disperse system.** Any continuous medium containing dispersed entities of any size or state.
**dis·per·sion** (dĭs-pûr′zhən, -shən) *n.* **1. a.** The act or process of dispersing. **b.** The state of being dispersed. **2.** *Statistics.* The degree of scatter of data, usually about some mean or median value. **3.** *Physics.* **a.** The separation of a complex wave into component parts according to some characteristic, such as frequency or wavelength. **b.** The separation of visible light into its color components by refraction or diffraction. **4.** *Chemistry.* A suspension, such as smog or homogenized milk, of solid, liquid, or gaseous particles, of colloidal size or larger, in a liquid, solid, or gaseous medium.
**dis·per·sive** (dĭs-pûr′sĭv, -zĭv) *adj.* **1.** Tending to become dispersed. **2.** Tending to produce dispersion.
**dis·pir·it** (dĭs-pĭr′ĭt) *tr.v.* **-ited, -iting, -its.** To lower in spirit; dishearten. [DIS- (negative) + SPIRIT.] —**dis·pir·it·ed** (dĭs-pĭr′ĭt-ĭd) *adj.* Characterized by low spirits; dejected. —**dis·pir′it·ed·ly** *adv.*
**dis·place** (dĭs-plās′) *tr.v.* **-placed, -placing, -places. 1.** To change the place or position of. **2.** To take the place of; supplant. **3.** To discharge from an office or position. **4.** To cause a displacement of (a body, for example). —See Synonyms at **replace.** —**dis·place′a·ble** *adj.* —**dis·plac′er** *n.*
**displaced person.** *Abbr.* **DP, D.P.** A person living in a foreign country who has been driven from his homeland by war.
**dis·place·ment** (dĭs-plās′mənt) *n.* **1. a.** The act of displacing. **b.** The condition of being displaced. **2.** *Chemistry.* A reaction in which one kind of atom, molecule, or radical is removed from combination and replaced by another. **3.** *Physics.* **a.** The weight or volume of a fluid displaced by a floating body, used especially as a measurement of the weight or bulk of ships. **b.** A vector, or the magnitude of a vector, from the initial position to a subsequent position assumed by a body. **4.** *Psychoanalysis.* The shifting of an emotional affect, as of anger, from an appropriate to an inappropriate object.
**displacement ton.** *Nautical.* A unit for measuring the displacement of a ship afloat, equivalent to one long ton or about 35 cubic feet of salt water.
**dis·play** (dĭs-plā′) *tr.v.* **-played, -playing, -plays. 1.** To hold up to view; make visible; expose; exhibit. **2.** To make manifest or noticeable; show evidence of. **3.** To exhibit ostentatiously or prominently; show off; parade; flaunt. **4.** To spread out; unfurl. **5.** *Printing.* To give prominence to (printed letters or words, for example), as by using large type. —See Synonyms at **show.** —*n.* **1.** The act of displaying; exhibition. **2.** Anything that is exhibited or displayed. **3.** A vulgar ostentation: *She made quite a display of herself.* **4.** *Printing.* **a.** An arrangement or style of type designed to give prominence to printed matter. **b.** Printed matter that is set off prominently. **6.** Designating an advertisement designed to catch the eye, as distinguished from a classified advertisement. [Middle English *displayen,* to unfold, unfurl, exhibit, from Norman French *despleier,* from Medieval Latin *displicāre,* from Latin, to scatter : *dis-* (reversal) + *plicāre,* to fold (see **plek-** in Appendix*).]
**dis·please** (dĭs-plēz′) *v.* **-pleased, -pleasing, -pleases.** —*tr.* To cause annoyance or vexation to; offend. —*intr.* To cause annoyance or displeasure. [Middle English *displesen,* from Old French *desplaisir,* from Vulgar Latin *displacēre* (unattested), variant of Latin *displicēre* : *dis-* (reversal) + *placēre,* PLEASE.] —**dis·pleas′ing·ly** *adv.*
**dis·pleas·ure** (dĭs-plĕzh′ər) *n.* **1.** The condition or fact of being displeased or dissatisfied; annoyance; anger. **2.** *Archaic.* Discomfort; uneasiness. **3.** *Archaic.* An annoying or injurious offense. —*tr.v.* **displeasured, -uring, -ures.** *Archaic.* To displease.
**dis·plode** (dĭs-plōd′) *v.* **-ploded, -ploding, -plodes.** *Archaic.* —*tr.* To explode (something). —*intr.* To explode. [Latin *displōdere,* to spread out, burst asunder : *dis-,* apart + *plaudere,* to beat, strike (see explode).]
**dis·port** (dĭs-pôrt′, -pōrt′) *v.* **-ported, -porting, -ports.** —*intr.* To play; to sport. —*tr.* To occupy (oneself) with diversion or amusement. —*n.* Diversion; play; sport. [Middle English *disporten,* from Old French *desporter,* "to carry away," divert : *des-,* from Latin *dis-,* apart + *porter,* to carry, PORT.]
**dis·pos·a·ble** (dĭs-pō′zə-bəl) *adj.* **1.** Designed to be disposed of after use. **2.** Subject to use; available. —**dis·pos′a·bil′i·ty** *n.*
**dis·pos·al** (dĭs-pō′zəl) *n.* **1.** A particular order, distribution, or

placement: *a pleasing disposal of window trimming.* **2.** A particular method of attending to or settling matters. **3.** The transference of something by gift or sale. **4.** A throwing out or away. **5.** An apparatus or device for disposing of something, as garbage. **6.** The liberty or power to dispose of or use someone or something: *funds at our disposal.*
**dis·pose** (dĭs-pōz′) *v.* **-posed, -posing, -poses.** —*tr.* **1.** To place or set in a particular order; arrange. **2.** To put (business affairs, for example) into correct, definitive, or conclusive form. **3.** To make willing or receptive for; to incline: *"I'm a cheerful sort o' man and very disposed to laughter."* (P.L. Travers). —*intr.* To settle or decide a matter. —**dispose of. 1.** To attend to; arrange; settle. **2.** To transfer or part with, as by giving or selling. **3.** To get rid of; throw out or away. **4.** To eat or drink (food). —*n. Obsolete.* **1.** Disposal. **2.** Disposition; demeanor. [Middle English *disposen,* from Old French *disposer,* reshaped (after *poser,* to POSE), from Latin *dispōnere,* to place here and there, arrange : *dis-,* in different directions + *pōnere,* to put (see **apo-** in Appendix*).] —**dis·pos′er** *n.*
**dis·po·si·tion** (dĭs′pə-zĭsh′ən) *n.* **1.** One's customary manner o' emotional response; temperament: *"She had a lively, playful disposition, which delighted in anything ridiculous."* (Jane Austen). **2.** A tendency or inclination, especially when habitual: *"A disposition to the drink and aversion to humdrum toil was no novelty in early Kenya."* (Robert Ruark). **3. a.** The act or manner o' disposing. **b.** The condition or fact of being disposed. **4.** The power or liberty to control, direct, or dispose: *"some bishops interpreted canon law as giving them disposition of the parish tithes"* (Marshall W. Baldwin).

**Synonyms:** *disposition, temperament, character, personality, nature.* These nouns refer to the sum of traits that identify a person. *Disposition* is approximately equivalent to habitual frame of mind. *Temperament* applies broadly to the sum of one's emotional characteristics. *Character* emphasizes moral and ethical qualities. *Personality* is the sum of distinctive traits or characteristics of a person that give him individuality, especially in his relationships with other persons. *Nature* suggests those inherent qualities that determine characteristic behavior or emotional response in people.
**dis·pos·sess** (dĭs′pə-zĕs′) *tr.v.* **-sessed, -sessing, -sesses.** To deprive (someone) of the possession of something, such as real property. —**dis′pos·ses′sion** *n.* —**dis′pos·ses′sor** (-zĕs′ər) *n.* —**dis′pos·ses′so·ry** (-zĕs′ə-rē) *adj.*
**dis·po·sure** (dĭs-pō′zhər) *n. Rare.* Disposal.
**dis·praise** (dĭs-prāz′) *tr.v.* **-praised, -praising, -praises.** To express disapproval of; disparage; censure. —*n.* Reproach; censure. [Middle English *dispreisen,* from Old French *despreisier,* from Vulgar Latin *dispretiāre* (unattested), variant of Latin *dēpretiāre,* DEPRECIATE.] —**dis·prais′er** *n.* —**dis·prais′ing·ly** *adv.*
**dis·prize** (dĭs-prīz′) *tr.v.* **-prized, -prizing, -prizes.** *Archaic.* To hold or regard in low esteem; to disdain. [Middle English *disprisen, disprisien,* DISPRAISE.]
**dis·proof** (dĭs-prōōf′) *n.* **1.** The act of disproving or refuting or refutes.
**dis·pro·por·tion** (dĭs′prə-pôr′shən) *n.* **1.** The absence of due proportion; disparity. **2.** An instance of a disproportionate relation, as in size. —*tr.v.* **disproportioned, -tioning, -tions.** To make disproportionate.
**dis·pro·por·tion·al** (dĭs′prə-pôr′shən-əl, -pôr′shən-l) *adj.* Disproportionate. —**dis′pro·por′tion·al·ly** *adv.*
**dis·pro·por·tion·ate** (dĭs′prə-pôr′shən-ĭt, -pôr′shən-l) *adj.* Not proportionate out of proportion, as in relative size, shape, or amount. —**dis′pro·por′tion·ate·ly** *adv.* —**dis′pro·por′tion·ate·ness** *n.*
**dis·prove** (dĭs-prōōv′) *tr.v.* **-proved, -proving, -proves.** To prove to be false, invalid, or in error; refute. [Middle English *disproven, disproven,* from Old French *desprover* : *des-,* from Latin *dis-* (reversal) + *prover,* PROVE.] —**dis·prov′a·ble** *adj.* —**dis·prov′al** *n.*
**dis·put·a·ble** (dĭs-pyōō′tə-bəl, dĭs′pyōō-) *adj.* Capable of being disputed; debatable. —**dis·put′a·bil′i·ty** *n.* —**dis·put′a·bly** *adv.*
**dis·pu·tant** (dĭs-pyōō′tənt, dĭs′pyōō-tənt) *adj.* Engaged in argument or dispute. —*n.* A person who disputes; debater.
**dis·pu·ta·tion** (dĭs′pyōō-tā′shən) *n.* **1.** The act of disputing; a debate. **2.** An academic exercise consisting of a formal debate or an oral defense of a thesis.
**dis·pu·ta·tious** (dĭs′pyōō-tā′shəs) *adj.* Inclined to dispute; contentious. —**dis′pu·ta′tious·ly** *adv.* —**dis′pu·ta′tious·ness** *n.*
**dis·pute** (dĭs-pyōōt′) *v.* **-puted, -puting, -putes.** —*tr.* **1.** To argue about; to debate. **2.** To question the truth or validity of; to doubt. **3.** To strive to win (a prize, for example); contest for. **4.** To strive against; oppose; resist. —*intr.* **1.** To argue; discuss; to debate. **2.** To quarrel vehemently. —See Synonyms at **discuss.** —*n.* **1.** A verbal controversy; an argument; a debate. **2.** A quarrel. —See Synonyms at **argument.** [Middle English *disputen,* from Old French *desputer,* from Late Latin *disputāre,* from Latin, to reckon, discuss : *dis-,* separately + *putāre,* to reckon, prune, settle an account, hence to reckon, think (see **peue-** in Appendix*).] —**dis·put′er** *n.*
**dis·qual·i·fi·ca·tion** (dĭs-kwŏl′ə-fĭ-kā′shən) *n.* **1.** The act of disqualifying, or the condition of being disqualified. **2.** Something that disqualifies.
**dis·qual·i·fy** (dĭs-kwŏl′ə-fī′) *tr.v.* **-fied, -fying, -fies. 1.** To render unfit or unqualified; disable. **2.** To declare ineligible or unqualified. **3.** To deprive of legal rights, powers, or privileges.
**dis·qui·et** (dĭs-kwī′ĭt) *tr.v.* **-eted, -eting, -ets.** To deprive of peace or rest; to trouble. —*n.* The absence of mental peace or rest; restlessness; anxiety. —*adj. Rare.* Uneasy; restless. —**dis·qui′et·ing·ly** *adv.* —**dis·qui′et·ly** *adv.* —**dis·qui′et·ness** *n.*

ă pat/ā pay/âr care/ä father/b bib/ch church/d dead/ĕ pet/ē be/f fife/g gag/h hat/hw which/ĭ pit/ī pie/îr pier/j judge/k kick / lī la needle/m mum/n no, sudden/ng thing/ŏ pot/ō toe/ô paw, for/oi noise/ou out/ōō took/ōō boot/p pop/r roar/s sauce/sh ship, dish



# WEBSTER'S
### New
### Collegiate
### Dictionary

Copyright © 1979 by G. & C. Merriam Co.

Philippines Copyright 1979 by G. & C. Merriam Co.

Library of Congress Cataloging in Publication Data
Main entry under title:

Webster's new collegiate dictionary.

   Editions for 1898–1948 have title: Webster's collegiate dictionary.
   Includes index.
   1. English language—Dictionaries.
PE1628.W4M4    1979    423    78-11140
ISBN  0-87779-358-1
ISBN  0-87779-359-X (indexed)
ISBN  0-87779-360-3 (deluxe)

Webster's New Collegiate Dictionary principal copyright 1973

COLLEGIATE trademark Reg. U.S. Pat. Off.

*All rights reserved. No part of this work covered by the copyrights hereon
may be reproduced or copied in any form or by any means—graphic, elec-
tronic, or mechanical, including photocopying, recording, taping, or informa-
tion and retrieval systems—without written permission of the publisher.*

Made in the United States of America


3334RMcN79

Th

Dict

**326**

prehensible b : UNRULY 2 : tioning in a normal order;) lis-or-dered-ness n in a disorderly manner isorder (a ~ pile of clothes ublic order (charged with is n

chiefly against public order able misdemeanor

désorganiser, fr. dés- dis- : interrupt the orderly struc-tion \(\\dis-,o̅rg-(ə-)nə-'zā-

system, or central guiding

désorienter, fr. dés- dis- — 1 a : to cause to lose on or relationship b : to identity 2 : CONFUSE DSORIENT — dis-ori-en-ta-
-\n
acknowledge as one's own-identification with b : to ewn-ment \-mənt\ n

ng [ME disparagen to de-parage, fr. MF desparagier des- dis- + parage extrac-in rank or reputation : DE-ans (as invidious compar-: DECRY and applaud — par-ag-er n — dis-par-ag-
iv
j [L disparatus, pp. of dis-epare — more at PARE ] 1 acter 2 : containing or id often incongruous ele-able, analogous — dis-pa-

MF departité, fr. LL dis-itiat-, paritas parity] : the

tire, fr. L, fr. dis- + partire LATE, DIVIDE
of passion : COOLNESS uenced by strong feeling: lional involvement (a ~ : see FAIR — dis-pas-sion-

or L dispacciare, fr. Prov : to set free, fr. OF, fr. des- — more at IMPEACH] vt 1 or speed esp. on official ency (~ an injured dog: ask) rapidly or efficiently: yn see KILL — dis-patch-

as a obs : DISMISSAL b tlement (as of an item of ending off : SHIPMENT 2 nportant official message ficer (sent a ~ to the wa-t him three mentions in nt in by a correspondent: ciency in performance o:

rts
g [L dispellere, fr. dis- – drive away by scattering

pable of being dispensed -pən(t)-sə-'bil-ət-ē\ n ies 1 : a place where store where liquor is sold

n -1 a : a general state revealed commands and particular arrangement: : 2 a : an exemption : or oath b : a formal-ing b : something dis-t\-shnəl, -'shən-[1\ adj -\ n, pl -ries 1 : a me-:eeping medical supplies dis-pens-ing [ME dis-at dispensation, fr. L to to weigh out, fr. dis-a : to deal out or por-to give dispensation to sedication) ~ vi, archaic — dispense with 1 at has dispensed with its nse with his assistants) nses: as a : a container enient units b : a usu.

ult of dispersing; speci:
of organisms from one

ng agent; esp : a sub-tionalization of a disper-:ant adj

**327**

dis-perse \dis-'pərs\ vb dis-persed; dis-pers-ing [ME dysparsen, fr. MF disperser, fr. L dispersus, pp. of dispergere to scatter, fr. dis- + spargere to scatter — more at SPARK] vt 1 a : to cause to break up (the meeting was dispersed) b : to cause to become spread widely c : to cause to evaporate or vanish (sunlight dispersing the vapor) 2 : to spread or distribute from a fixed or constant source: as a archaic : DISSEMINATE b : to subject (as light) to dispersion : : to distribute (as fine particles) more or less evenly throughout a medium ~ vi 1 : to break up in random fashion (the crowd dis-persed at the policeman's request) 2 a : to become dispersed b : DISSIPATE, VANISH (the fog dispersed toward morning) syn see SCATTER — dis-persed-ly \-'pər-səd-lē, -'pərst-lē\ adv — dis-pers-er n — dis-per-sive \-'pər-sə-bəl\ adj

dis-per-sion n : DISPERSION 5b

dis-per-sion \dis-'pər-zhən, -shən\ n 1 cap : DIASPORA 1a 2 : the act or process of dispersing : the state of being dispersed 3 : the scattering of the values of a frequency distribution from an average 4 : the separation of light into colors by refraction or diffraction with formation of a spectrum; also : the separation of nonhomo-geneous radiation into components in accordance with some char-acteristic (as energy) 5 a : a dispersed substance b : a system consisting of a dispersed substance and the medium in which it is dispersed : COLLOID 1b

dis-per-sive \-'pər-siv, -ziv\ adj 1 : of or relating to dispersion (a ~ medium) (the ~ power of a lens) 2 : tending to disperse — dis-per-sive-ly adv — dis-per-sive-ness n

dis-per-soid \-'pər-ˌsȯid\ n : finely divided particles of one sub-stance dispersed in another

dispir-it \(')dis-'pir-ət\ vt [dis- + spirit] : to deprive of morale or enthusiasm — dispir-it-ed adj — dispir-it-ed-ly adv — dispir-it-ed-ness n

dis-pit-eous \dis-'pit-ē-əs\ adj [alter. of despiteous] archaic : CRUEL

dis-place \(')dis-'plās\ vt [prob. fr. MF desplacer, fr. des- dis- + place] 1 a : to remove from the usual or proper place; specif : to expel or force to flee from home or homeland b : to remove from office a obs : to drive out : BANISH 2 a : to remove physi-cally out of position (water displaced by a floating object) b : to eject the place of (as in a chemical reaction) : SUPPLANT syn see REPLACE — dis-place-able \-'plā-sə-bəl\ adj

dis-place-ment \dis-'plā-smənt\ n 1 : the act or process of dis-placing : the state of being displaced 2 a : the volume or weight of a fluid (as water) displaced by a floating body (as a ship) of equal weight b : the difference between the initial position of a body and any later position c : the volume displaced by a piston as in a pump or an engine) in a single stroke; also : the total vol-ume so displaced by all the pistons in an internal-combustion en-gine (as in an automobile) 3 : the substitution of another form of behavior for what is normal or expected esp. when the normal response is nonadaptive

dis-plant \dis-'plant\ vt [MF desplanter, fr. des- + planter to plant, fr. LL plantare] 1 : DISPLACE, REMOVE 2 : SUPPLANT

dis-play \dis-'plā\ vb [ME displaien, fr. AF displeier, fr. L dis-plicare to scatter, fr. dis- + plicare to fold — more at PLY] vt 1 a : to put or spread before the view in display (~ the flag) b : to make evident (~ed great skill) c : to exhibit ostentatiously (liked to ~ his erudition) 2 obs : DESCRY ~ vi 1 obs : to show off 2 : to make a bending display (penguins ~ed and copulated)

display n, often attrib 1 a (1) : a setting or presentation of something in open view (a fireworks ~) (2) : a clear sign or evi-dence : EXHIBITION (a ~ of courage) b : ostentatious show c type composition designed to catch the eye; also : printed matter c composed d : an eye-catching arrangement by which some-thing is exhibited e : a device (as a cathode-ray tube) that gives information in visual form in communications (a computer ~) (a near ~) 2 : a pattern of behavior exhibited esp. by male birds in the breeding season

dis-please \(')dis-'plēz\ vb [ME displesen, fr. MF desplaisir, fr. (as-sumed) VL displicēre, fr. L dis- + placēre to please] vt 1 : to incur the disapproval of esp. as accompanied by annoyance or dislike (fired any employee who displeased him) 2 : to be offen-sive to (abstract art ~ him) ~ vi : to give displeasure (signs of inattention calculated to ~)

dis-plea-sure \(')dis-'plezh-ər, -'plāzh-\ n 1 : the feeling of one that is displeased : DISFAVOR 2 : DISCOMFORT, UNHAPPINESS 3 archaic : OFFENSE, INJURY

dis-plode \dis-'plōd\ vb dis-plod-ed; dis-plod-ing [L displodere, fr. dis- + plaudere to clap, applaud] archaic : EXPLODE — dis-plo-sion \-'plō-zhən\ n

dis-port \dis-'pō(ə)rt, -'pȯ(ə)rt\ n, archaic : SPORT, PASTIME

dis-port vb [ME disporten, fr. MF desporter, fr. des- + porter to carry] vt 1 : DIVERT, AMUSE 2 : DISPLAY ~ vi : to amuse oneself : FROLIC

dis-pose vb [ME disposen, fr. MF disposer, fr. OF, fr. L dispositus, pp. of disponere] vt 1 : to give a tendency to : INCLINE

dispos-able \dis-'pō-zə-bəl\ adj 1 : subject to or available for dis-posal; specif : remaining to an individual after deduction of taxes (~ income) 2 : designed to be used once and then thrown away (~ towels) — dis-pos-abil-i-ty \-ˌpō-zə-'bil-ət-ē\ n

dis-pos-able n : something (as a paper blanket) that is disposable

dis-pos-al \dis-'pō-zəl\ n 1 : the act or process of disposing: as a orderly placement or distribution b : REGULATION, ADMINISTRA-TION c : BESTOWAL d : systematic destruction; esp : destruction or transformation of garbage 2 : the power or authority to dis-pose of (the car was at my ~) 3 [garbage disposal unit] : a device used to reduce waste matter (as by grinding)

dis-pose \dis-'pōz\ vb dis-posed; dis-pos-ing [ME disposen, fr. MF disposer, fr. L disponere to arrange (perf. indic. disposui, fr. dis- + ponere to put — more at POSITION)] vt 1 : to give a tendency to : INCLINE (faulty diet ~s one to sickness) 2 a : to put in place b : to arrange in order : REGULATE c : to settle a matter finally 2 ~ : to come to terms syn see INCLINE — dis-pos-er n — dis-pose of 1 : to place, distribute, or arrange esp. in an orderly way 2 a : to transfer to the control of another (disposing of his personal property) b (1) : to get rid of (waste that is hard to dispose of) (2) : to deal with conclusively (disposed of the matter efficiently)

**disperse ● disrelish**

**2dispose** n 1 obs : DISPOSAL 2 obs : DISPOSITION b : DE-MEANOR

dis-po-si-tion \ˌdis-pə-'zish-ən\ n [ME, fr. MF, fr. L disposition-, dispositio, fr. disponere, pp. of disponere] 1 : the act or the power of disposing or the state of being disposed: as a : ADMINISTRA-TION, CONTROL b : final arrangement : SETTLEMENT (the ~ of the case) c (1) : transfer to the care or possession of another (2) : the power of such transferral d : orderly arrangement 2 a : prevailing tendency, mood, or inclination b : temperamental makeup c : the tendency of something to act in a certain manner under given circumstances

syn DISPOSITION, TEMPERAMENT, TEMPER, CHARACTER, PERSONALITY shared meaning element : the dominant quality or qualities distin-guishing a person or group

dis-pos-i-tive \dis-'päz-ət-iv\ adj : directed towards or effecting disposition (as of a case) (~ evidence)

dis-pos-sess \ˌdis-pə-'zes also -'ses\ vt [MF despossesser, fr. des-dis- + possesser to possess] : to put out of possession or occupancy — dis-pos-ses-sion \ also -'sesh-\ n — dis-pos-ses-sor \-'zes-ər also -'ses-\ n

dis-pos-sessed adj : deprived of homes, possessions, and security

dis-po-sure \dis-'pō-zhər\ n, archaic : DISPOSAL, DISPOSITION

dis-praise \(')dis-'prāz\ vt [ME dispraisen, fr. OF despreisier, fr. des- dis- + preisier to praise] : to comment on with disapproval or censure — dis-prais-er n — dis-prais-ing-ly \-'prā-ziŋ-lē\ adv

dis-praise n : an expression of disapproval : DISPARAGEMENT

dispread \dis-'pred\ vt : to spread abroad or out

dis-prize \(')dis-'prīz\ vt [MF desprisier, fr. OF despreisier to dis-praise] archaic : UNDERVALUE, SCORN

dis-proof \(')dis-'prüf\ n 1 : the action of disproving 2 : evi-dence that disproves

1dis-pro-por-tion \ˌdis-prə-'pōr-shən, -'pȯr-\ n : lack of proportion, symmetry, or proper relation : DISPARITY; also : an instance of such disparity — dis-pro-por-tion-al \-shnəl, -shən-[1\ adj

2disproportion vt : to make out of proportion : MISMATCH

dis-pro-por-tion-ate \ˌesh(ə-)nət\ adj : being out of proportion — dis-pro-por-tion-ate-ly adv

dis-pro-por-tion-a-tion \ˌpōr-shə-'nā-shən, -ˌpȯr-\ n : the transfor-mation of a substance into two or more dissimilar substances usu. by simultaneous oxidation and reduction — dis-pro-por-tion-ate \-'pōr-shə-ˌnāt, -'pȯr-\ vt

dis-prove \(')dis-'prüv\ vt [ME disproven, fr. MF desprover, fr. des- + prover to prove] : to prove to be false : REFUTE — dis-prov-able \-'prü-və-bəl\ adj

syn DISPROVE, REFUTE, CONFUTE, REBUT, CONTROVERT shared mean-ing element : to show or try to show by presenting evidence that something (as a claim, statement, or charge) is not true ant prove, demonstrate

dis-pu-tant \dis-'pyüt-ənt, 'dis-pyət-ənt\ n : one that is engaged in a dispute

dis-pu-ta-tion \ˌdis-pyə-'tā-shən\ n 1 : the act of disputing : DE-BATE 2 : an academic exercise in oral defense of a thesis by formal logic

dis-pu-ta-tious \-shəs\ adj 1 : inclined to dispute 2 : provoking debate : CONTROVERSIAL — dis-pu-ta-tious-ly adv — dis-pu-ta-tious-ness n

1dis-pute \dis-'pyüt\ vb dis-put-ed; dis-put-ing [ME disputen, fr. OF desputer, fr. L disputare to discuss, fr. dis- + putare to think] vi : to engage in argument : DEBATE; esp : to argue irritably or with irritating persistence ~ vt 1 a : to make the subject of disputa-tion b : to call into question (the honesty of his intent was never disputed) 2 a : to struggle against (disputed the advance of the invaders) b : to struggle over : CONTEST (the defending troops disputed every inch of ground) syn see DISCUSS — dis-pu-ta-ble \dis-'pyüt-ə-bəl, 'dis-pyət-\ adj — dis-pu-ta-bly \-blē\ adv — dis-put-er n

2dis-pute \dis-'pyüt, 'dis-,\ n 1 a : verbal controversy : DEBATE b : QUARREL 2 obs : physical combat

dis-qual-i-fi-ca-tion \(ˌ)dis-ˌkwäl-ə-fə-'kā-shən\ n 1 : the act of disqualifying : the state of being disqualified (~ from office) 2 : something that disqualifies or incapacitates

dis-qual-i-fy \(')dis-'kwäl-ə-ˌfī\ vt 1 : to deprive of the required qualities, properties, or conditions : make unfit 2 : to deprive of a power, right, or privilege 3 : to make ineligible for a prize or for further competition because of violations of the rules

dis-qui-et \(')dis-'kwī-ət\ vt : to take away the peace or tranquil-lity of : DISTURB, ALARM syn see DISCOMPOSE ant tranquilize, soothe — dis-quiet-ing adj — dis-quiet-ing-ly \-iŋ-lē\ adv

2disquiet n : lack of peace or tranquillity : ANXIETY

3disquiet adj, archaic : UNEASY, DISQUIETED — dis-qui-et-ly adv

dis-qui-etude \(')dis-'kwī-ə-ˌt(y)üd\ n : AGITATION, ANXIETY

dis-qui-si-tion \ˌdis-kwə-'zish-ən\ n [L disquisition-, disquisitio, fr. disquisitus, pp. of disquirere to inquire diligently, fr. dis- + quaerere to seek — more at QUEST] : a formal inquiry into or discussion of a subject : DISCOURSE

dis-rate \(')dis-'rāt\ vt : to reduce in rank : DEMOTE syn see DE-GRADE

1dis-re-gard \ˌdis-ri-'gärd\ vt : to pay no attention to : treat as unworthy of regard or notice syn see NEGLECT

2disregard n : the act of disregarding : the state of being disre-garded : NEGLECT — dis-re-gard-ful \-fəl\ adj

dis-re-lat-ed \ˌdis-ri-'lāt-əd\ adj : not related

dis-re-la-tion \ˌdis-ri-'lā-shən\ n : lack of a fitting or proportionate con-nection or relationship

1dis-rel-ish \(')dis-'rel-ish\ vt : to find unpalatable or distasteful

| a abut | ᵉ kitten | ər further | a back | ä bake | ä cot, cart |
|--------|----------|-----------|--------|--------|-------------|
| aů out | ch chin | e less | ē easy | g gift | i trip | ī life |
| j joke | ŋ sing | ō flow | ȯ flaw | ȯi coin | th thin | th this |
| ü loot | u̇ foot | y yet | yü few | yu̇ furious | zh vision |

# The
# Merriam-Webster
# Dictionary



MERRIAM-WEBSTER, INCORPORATED
Springfield, Massachusetts, U.S.A.

Case 6:10-cv-00329-LED    Document 601-1    Filed 01/31/12    Page 15 of 16 PageID #: 4687



**A GENUINE MERRIAM-WEBSTER**

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster™* is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 1997 by Merriam-Webster, Incorporated

Philippines Copyright 1997 by Merriam-Webster, Incorporated

ISBN 0–87779–911–3

The Merriam-Webster Dictionary principal copyright 1994

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

MADE IN THE UNITED STATES OF AMERICA

43QPB03

**Preface**

This new edition of THE MERRIAM-WEBSTER DICTIONARY is the fifth in a of Merriam-Webster paperback dictionaries which began in 1947, based on and preserves the best aspects of preceding editions, but it offers much that is new, drawing specifically on *Merriam-Webster's Collegiate Dictionary, Tenth Edition*, which was published after the appearance of the last paperback edition. Every entry and every section has reexamined and revised in light of the most current information available. Every definition has been based on examples of actual use found in Merriam-Webster citation file, which now includes more than 14,500,000 examples of English words used in context.

The 60,000 entries in *The Merriam-Webster Dictionary* give coverage to the most frequently used words in the language. The heart of the dictionary is the A-Z vocabulary section, where readers will find information about meaning, spelling, pronunciation, etymology, and synonymy. This section is followed by several others that users have long found useful: a list of foreign words and phrases that often occur in English texts; a list of places in the United States having 18,000 or more inhabitants; a similar list of places in Canada; and a section devoted to widely used signs and symbols. The A-Z vocabulary is preceded by a set of Explanatory Notes that should be read carefully by every user of the dictionary. An understanding of the information contained in these notes will make the dictionary both easier and more rewarding to use.

*The Merriam-Webster Dictionary* has been created by a company that has been publishing dictionaries for 150 years. It has been edited by a experienced staff of lexicographers, who believe it will serve well those who want a concise and handy guide to the English language of today.

**Editor in Chief**
Frederick C. Mish

**Executive Editor**
John M. Morse

**Director of Defining**
E. Ward Gilman

**Senior Editors**
Robert D. Copeland • James G. Lowe
Victoria E. Neufeldt • Madeline L. Novak
Roger W. Pease • Stephen J. Perrault

**Associate Editors**
Michael G. Belanger • Paul F. Cappellano
Jennifer M. Despres • Kathleen M. Doherty
Daniel J. Hopkins • James L. Rader
Brian M. Sietsema

**Assistant Editors**
Susan L. Brady • Jennifer N. Cislo
Jennifer S. Goss • Eileen M. Haraty
Peter D. Haraty • Amy K. Harris
Joan L. Narmontas • Brett P. Palmer
Donna L. Rickerby • Michael D. Roundy
Maria A. Sansalone
Katherine C. Sietsema • Jennifer B. Tufts
Linda Picard Wood

**Editorial Staff**

**Editorial Assistants**
Rebecca R. Bryer • Jill J. Coon
Karen L. Wilkinson • Amy West

**Librarian**
Francine A. Roberts

**Departmental Secretary**
Georgette B. Boucher

**Head of Typing Room**
Gloria J. Afflitto

**Senior Clerk**
Ruth W. Gaines

**Clerks and Typists**
Ann S. Derby • Mary M. Dunn
Florence A. Fowler
Patricia M. Jensen • Ella L. Johnson
Veronica P. McLymont
Joan E. Matteson

**MERRIAM-WEBSTER, INCORPORATED**
Joseph J. Esposito, President
Thomas E. Stanley, Publisher

A2738

**Left column (p. 224)**

: alarm or — dismay.

**dis·pel** \di-ˈspel\ vb **dis·pelled: dis·pe-ling** : to drive away by scattering : DISSIPATE

vb 1 : to **dis·pens·able** \di-ˈspen-sə-bəl\ adj : ca-pable of being dispensed with

**dis·pen·sa·ry** \di-ˈspen-sə-rē\ n, pl -ries : a place where medicine or medical or dental aid is dispensed

**dis·pen·sa·tion** \dis-pən-ˈsā-shən\ n : a system of rules for ordering affairs 2 : a particular arrangement or provision esp. of nature 3 : an exemption from a rule or from a vow or oath : the act of dispensing 5 : something dispensed or distributed

**dis·pense** \di-ˈspens\ vb **dispensed: dispensing** 1 : to portion out 2 : ADMINISTER (~ justice) 3 : EXEMPT 4 : make up and give out (remedies) — **dis·pens·er** n — **dispense with** 1 : to do without

**dis·perse** \di-ˈspers\ vb **dispersed: dispersing** : to break up and scatter about : SPREAD — **dispersal** \-ˈspər-səl\ n — **dispersion** \-ˈspər-zhən \

**dis·pir·it** \dis-ˈpir-ət\ vb : DEPRESS, DISCOURAGE, DISHEARTEN

**dis·place** \dis-ˈplās\ vb 1 : to remove from the usual or proper place 2 : to expel or force to flee from home or native land (displaced persons) 3 : to move out of position (water is placed by a floating object) 3 : to take the place of : REPLACE

**dis·place·ment** \-mənt\ n 1 : the act of displacing : the state of being displaced 2 : the volume or weight of a fluid (as water) displaced by a floating body (as a ship) 3 : the difference between the initial position of an object and a later position

**dis·play** \di-ˈsplā\ vb 1 : to present to view : make evident

—— **display** n 1 : a displaying of something 2 : an electronic device (as a cathode ray tube) that gives information in visual form; also : the visual information

**dis·please** \(ˌ)dis-ˈplēz\ vb 1 : to arouse the disapproval and dislike of 2 : to be offensive to : give displeasure

**dis·plea·sure** \-ˈple-zhər\ n : a feeling of dislike and irritation

**dis·port** \di-ˈspōrt\ vb 1 : DIVERT, AMUSE 2 : FROLIC 3 : DISPLAY

**dis·pos·able** \di-ˈspō-zə-bəl\ adj 1 : remaining after deduction of taxes (~ income) 2 : designed to be used once and then thrown away (~ diapers) — **disposable** n

**dis·pos·al** \di-ˈspō-zəl\ n 1 : CONTROL, COMMAND 2 : an orderly arrangement 3 : a getting rid of 4 : MANAGEMENT, ADMINISTRATION 5 : presenting or bestowing something (~ of favors) 6 : a device used to reduce waste matter (as by grinding)

**dis·pose** \di-ˈspōz\ vb **disposed: disposing** 1 : to give a tendency to 2 : INCLINE (disposed to accept) 2 : to put in place : ARRANGE (troops disposed for

**Middle column (p. 225)**

withdrawal) 3 : SETTLE — **dis·pos·er** n — **dispose of** 1 : to transfer to the control of another 2 : to get rid of 3 : to deal with conclusively

**dis·po·si·tion** \dis-pə-ˈzi-shən\ n 1 : the act or power of disposing : DISPOSAL 2 : RELINQUISHMENT 3 : ARRANGEMENT 4 : TENDENCY, INCLINATION 5 : natural attitude toward things (a cheerful ~)

**dis·pos·sess** \dis-pə-ˈzes\ vb 1 : to put out of possession or occupancy — **dispossession** \-ˈzes-shən\ n

**dis·praise** \(ˌ)dis-ˈprāz\ vb : DISPARAGE — **dispraise** n — **dis·prais·er** n

**dis·pro·por·tion** \dis-prə-ˈpōr-shən\ n : lack of proportion, symmetry, or proper relation — **dis·pro·por·tion·ate** \-shə-nət\ adj

**dis·prove** \(ˌ)dis-ˈprüv\ vb : to prove to be false — **disproof** \-ˈprüf\ n

**dis·pu·tant** \dis-ˈspyüt-ənt, ˈdis-pyə-tənt\ n : one that is engaged in a dispute

**dis·pu·ta·tion** \dis-pyü-ˈtā-shən\ n 1 : DEBATE 2 : an oral defense of an academic thesis

**dis·pu·ta·tious** \-shəs\ adj : inclined to dispute : ARGUMENTATIVE

**dis·pute** \di-ˈspyüt\ vb **dis·put·ed: disputing** 1 : ARGUE, DEBATE 2 : WRANGLE 3 : to deny the truth or rightness of 4 : to struggle against or over : OPPOSE — **dis·put·able** \di-ˈspyü-tə-bəl, ˈdis-pyə-tə-bəl\ adj — **dis·put·er** n

**dis·pute** n 1 : DEBATE 2 : QUARREL

**dis·qual·i·fy** \(ˌ)dis-ˈkwä-lə-ˌfī\ vb : to make or declare unfit or not qualified — **dis·qual·i·fi·ca·tion** \-ˌkwä-lə-fə-ˈkā-shən\ n

**dis·qui·et** \(ˌ)dis-ˈkwī-ət\ vb : to make uneasy or restless : DISTURB

**dis·qui·et** n : lack of peace or tranquillity : ANXIETY

**dis·qui·e·tude** \(ˌ)dis-ˈkwī-ə-ˌtüd, -ˌtyüd\ n : AGITATION, ANXIETY

**dis·qui·si·tion** \dis-kwə-ˈzi-shən\ n : a formal inquiry or discussion

**dis·re·gard** \dis-ri-ˈgärd\ vb : to pay no attention to : treat as unworthy of notice or regard

**dis·regard** n : the act of disregarding : the state of being disregarded : NEGLECT — **dis·re·gard·ful** adj

**dis·re·pair** \dis-ri-ˈpar\ n : the state of being in need of repair

**dis·rep·u·ta·ble** \dis-ˈre-pyü-tə-bəl\ adj 1 : having a bad reputation

**dis·re·pute** \dis-ri-ˈpyüt\ n : lack or decline of reputation : low esteem

**dis·re·spect** \dis-ri-ˈspekt\ n : DISCOURTESY — **dis·re·spect·ful** adj

**dis·robe** \dis-ˈrōb\ vb : UNDRESS

**dis·rupt** \dis-ˈrəpt\ vb 1 : to break apart 2 : to throw into disorder 3 : INTERRUPT — **dis·rup·tion** \-ˈrəp-shən\ n — **dis·rup·tive** \-ˈrəp-tiv\ adj

**dis·sat·is·fac·tion** \di-sa-təs-ˈfak-shən\ n : DISCONTENT

**dis·sat·is·fy** \di-ˈsa-təs-ˌfī\ vb : to fail to satisfy : DISPLEASE

**dis·sect** \di-ˈsekt\ vb 1 : to divide into

**Right column (p. 224/225)**

parts esp. for examination and study 2 : ANALYZE — **dis·sec·tion** \-ˈsek-shən\ n — **dis·sec·tor** \-ˈsek-tər\ n

**dis·sect·ed** adj : cut deeply into narrow lobes (a ~ leaf)

**dis·sem·ble** \di-ˈsem-bəl\ vb **-bled: -bling** 1 : to hide under or put on a false appearance : conceal facts, intentions, or feelings under some pretense 2 : SIMULATE — **dis·sem·bler** n

**dis·sem·i·nate** \di-ˈse-mə-ˌnāt\ vb **-nat·ed: -nat·ing** : to spread abroad as if sowing seed (~ ideas) — **dis·sem·i·na·tion** \-ˌse-mə-ˈnā-shən\ n

**dis·sen·sion** \di-ˈsen-chən\ n : disagreement in opinion : DISCORD

**dis·sent** \di-ˈsent\ vb 1 : to withhold assent 2 : to differ in opinion

**dis·sent** n 1 : difference of opinion; esp : religious nonconformity 2 : a written statement in which a justice disagrees with the opinion of the majority

**dis·sent·er** \di-ˈsen-tər\ n 1 : one that dissents 2 cap : an English Nonconformist

**dis·ser·ta·tion** \di-sər-ˈtā-shən\ n : an extended sus. written treatment of a subject: esp : one submitted for a doctorate

**dis·ser·vice** \di-ˈsər-vəs\ n : INJURY, HARM, MISCHIEF

**dis·sev·er** \di-ˈse-vər\ vb : SEPARATE, DISUNITE

**dis·si·dent** \ˈdi-sə-dənt\ adj [L dissidens, prp. of dissidēre to sit apart, disagree, fr. dis- apart + sedēre to sit] : disagreeing esp. with an established religious or political system, organization, or belief — **dissidence** \-dəns\ n — **dissident** n

**dis·sim·i·lar** \di-ˈsi-mə-lər\ adj : UNLIKE — **dis·sim·i·lar·i·ty** \di-si-mə-ˈlar-ə-tē\ n

**dis·sim·u·late** \di-ˈsi-myə-ˌlāt\ vb : to hide under a false appearance : DISSEMBLE — **dis·sim·u·la·tion** \di-si-myə-ˈlā-shən\ n

**dis·si·pate** \ˈdi-sə-ˌpāt\ vb **-pat·ed: -pat·ing** 1 : to break up and drive off : DISPERSE, SCATTER (the breeze dissipated the fog) 2 : SQUANDER 3 : to break up and vanish 4 : to be dissolute: esp : to drink alcoholic beverages to excess — **dis·si·pat·ed** adj — **dis·si·pa·tion** \di-sə-ˈpā-shən\ n

**dis·so·ci·ate** \di-ˈsō-shē-ˌāt\ vb **-at·ed: -at·ing** : DISCONNECT, DISUNITE — **dis·so·ci·a·tion** \di-ˌsō-shē-ˈā-shən\ n

**dis·so·lute** \ˈdi-sə-ˌlüt\ adj : loose in morals or conduct — **dis·so·lute·ly** adv — **dis·so·lute·ness** n

**dis·so·lu·tion** \di-sə-ˈlü-shən\ n 1 : the action or process of dissolving 2 : separation of a thing into its parts 3 : DECAY: also : DEATH 4 : the termination or breaking up of (as an assembly)

**dis·solve** \di-ˈzälv\ vb 1 : to separate into component parts 2 : to pass or cause to pass into solution (sugar ~s in water) 3 : TERMINATE, DISPERSE (~

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC<br>*Plaintiff*<br><br>v.<br><br>AMAZON.COM, INC. *et al.*,<br>*Defendants* | Case No. 6:10-cv-329-LED<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADJUSTACAM LLC

v.                                                    NO. 6:10-cv-329-LED

AMAZON.COM, INC., ET AL.                              JURY

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

Plaintiff AdjustaCam LLC ("AdjustaCam"), through its undersigned legal counsel and pursuant to P.R. 4-5(a), respectfully submits its opening Claim Construction Brief.

## I.    INTRODUCTION

Plaintiff is the owner of U.S. Patent No. 5,855,343 (the "'343 patent"). The '343 patent is entitled "Camera clip." Apparatuses which comprise camera clips are often referred to as webcams. The '343 patent generally relates to a novel adjustable camera clip comprising one disposition on a generally horizontal, planar surface (e.g., a table top), and another disposition on an inclined object (e.g., the screen of a laptop computer).

## II.    TECHNOLOGY AT ISSUE

As noted above, the '343 patent generally relates to a novel adjustable camera clip comprising one disposition on a generally horizontal, planar surface (e.g., a table top), and another disposition on an inclined object (e.g., a laptop screen). Exemplary Fig. 2 shows a preferred embodiment webcam in a first disposition on a table top, and exemplary Fig. 4 shows the same webcam in a second disposition when attached to the laptop screen, as follows:



1

The independent claims are 1, 10, 19, 20 and 21. Exemplary claim 1 covers an apparatus comprising a hinge member rotatably attached to a camera, a support frame rotatably attached to the hinge member, the support frame having a first disposition on a surface and a second disposition on an inclined object.[1] To help the Court better envision claim 1, the following color-coded chart compares claim 1 to certain preferred embodiments disclosed in the '343 patent:



1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame,

said first axis of rotation being generally perpendicular to said second axis of rotation,

said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object,

said support frame having a first disposition positioned on said generally horizontal, substantially planar surface,

and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation,

the camera being maintained adjacent said edge in said second disposition of said support frame.[2]

Independent claim 10 is similar to claim 1, except it comprises additional claim limitations related to the support frame being comprised of "a rear support element and a first and a second front support element..."   Independent claim 20 is similar to claim 1, except it comprises additional claim limitations related to "wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar

---

[1] Exhibit 1 hereto is the '343 patent. Although the prosecution history of the '343 patent is not likely material to the claim construction process, in the interest of completeness it is included as Exhibit 2 hereto.
[2] For the Court's convenience, a copy of AdjustaCam's technology tutorial is at Exhibit 3 hereto.

surface ..." Independent claim 21 is similar to claim 1, except that it comprises additional claim limitations related to "wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object..."

Independent claim 19 covers a "camera clip for supporting a camera on a laptop computer ... comprising ... a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and a support frame hingedly attached to said hinge ..." Thus, claims 1, 10, 20 and 21 each comprise a "support frame rotatably attached to said hinge member ..." and claim 19 comprises a "support frame hingedly attached to said hinge member ..."

## III.    APPLICABLE LEGAL PRINCIPLES

Claim construction is a matter of law.[3] The court "indulge[s] a heavy presumption that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution."[4] Claim terms are interpreted from the point of view of a person of ordinary skill in the art who "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."[5] However, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."[6]

---

[3] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).
[4] *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).
[5] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).
[6] *Id.* at 1314.

3

Intrinsic evidence includes the claims, written description, drawings, and the prosecution history."[7] A disputed term should be construed by first examining the intrinsic evidence of record from the perspective of one skilled in the relevant art.[8] "The claims themselves provide substantial guidance as to the meaning of particular claim terms."[9]

Extrinsic evidence is less significant than the intrinsic record in determining the legally operative meaning of claim language.[10] Where the ordinary meaning can be ascertained from the intrinsic evidence, a court does not have to evaluate extrinsic evidence.[11]

Although the specification is relevant to interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.[12] "One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims."[13]

## IV.    CLAIM TERMS REQUIRING CONSTRUCTION

### A.    Hinge Member.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A structural element that joins to another for rotation in at least one axis of rotation | Structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

The term "hinge member" is found in claims 1, 8, 10, 17, 19, 20 and 21.[14]   The term "hinge member" was coined by the inventor of the '343 patent, who acted as his own

---

[7] *Teleflex Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).
[8] *Phillips*, 415 F.3d at 1313-14.
[9] *Id.* at 1314.
[10] *Id.*
[11] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).
[12] *Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323.
[13] *Phillips*, 415 F.3d at 1319-20.
[14] This brief will primarily address the five independent claims.  Dependent claims, which incorporate all the elements of the claims from which they depend, are discussed only when pertinent to a specific issue.

lexicographer for this term.[15] The structure and function of a hinge member is taught by the specification and claims. Most importantly, a hinge member is (1) for rotatable attachment to a camera (claims 1, 10, 19, 20 & 21); and (2) for rotatable attachment (claims 1, 10, 20 & 21) or hinged attachment (claim 19) to a support frame.

Regarding rotatable attachment to a camera, the '343 patent teaches that in a preferred embodiment, "[h]inge member 16 is rotatably attached to camera 12." 4:17-19.[16] Further, each independent claim comprises: "a hinge member adapted to be rotatably attached to the camera."[17]

Regarding rotatable attachment to a support frame, the '343 patent teaches and claims, "a support frame *rotatably attached* to said hinge member and configured to support said hinge member on the surface and the object." Claims 1, 10, 20 & 21. *See also* Figs. 2-4.

Regarding hinged attachment to a support frame, the '343 patent teaches that in a preferred embodiment, "[s]upport frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30." 4:21-20. *See also* 2:14-16; 3:40-41; 5:41-43. Further, independent claim 19 is distinct from the other independent claims in comprising: "a support frame *hingedly* attached to said hinge member."

Plaintiff and Defendants seem to largely agree that a hinge member comprises a structural element that joins[18] to another. The first half of Plaintiff's proposed construction

---

[15] A patentee is free to act as his or her own lexicographer. *See, e.g., MyMail, LTD v. Am. Online, Inc.,* 6:04-CV-189, 2005 WL 6225308 at *2 (E.D. Tex. June 3, 2005); *Acacia Media Technologies Corp. v. New Destiny Internet Group,* 405 F. Supp. 2d 1127, 1133 (N.D. Cal. 2005).  In acting as lexicographer, the patentee may coin a term.  *See, e.g., Acacia Media Technologies,* 405 F. Supp. 2d at 1133-1134.

[16] *See also* rotatable attachment of the hinge member and camera in Figs. 2-4; 3:9-14 & 5:37-41. Note that "4:17-19" is shorthand for column 4, lns. 17-19 of the '343 patent.

[17] "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips,* 415 F.3d at 1314.

[18] A hinge member is "rotatably attached" (claims 1, 10, 20 & 21) or "hingedly attached" (claim 19). "Attach" is commonly defined as (1) "to fasten on or affix to; connect or join. American Heritage Dictionary of the English Language (1981) (Exhibit 4); (2) "to fasten by sticking, tying, etc.; to join. Webster's New World Dictionary (2003)

comprises: "structural element that joins to another," and the first half of Defendants' proposed construction comprises: "structural element that may be joined to another." It is not clear why Defendants use "may be joined," since each claim requires an apparatus, meaning all the "rotatably attached" and "hingedly attached" parts must be attached.

The second half of Plaintiff's proposed construction of hinge element is for rotation in at least one axis of rotation. The '343 patent teaches and claims that a hinge member comprises rotation about a first axis relative to a camera and rotation about a second axis relative to a support frame. Regarding the first axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16." 4:17-19. *See also* 2:12-14; 3:36-40 & 5:38-41. Further, independent claim 1 comprises, "said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member," and independent claims 10, 19, 20 and 21 each comprises: "a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member."

Regarding the second axis of rotation, the '343 patent teaches that, in a preferred embodiment, "[h]inge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18." 4:22-24. *See also* 2:14-18; 3:40-43 & 5:41-44. Further, claim 1 comprises: "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object." Claims 10, 20 and 21 comprise: "said hinge member rotating about a second axis of rotation relative to said support frame." Claim 19

---

(also at Ex. 4); or "connect; to fasten; make fast or join; to fix or fasten itself. Webster's Third New International Dictionary (1961) (also at Exhibit 4).

comprises: "said hinge member rotating over a second axis of rotation relative to said support frame."

Thus, the hinge member of the '343 patent is a structural element that joins to another for rotation in at least one axis of rotation.

Defendants contend that a hinge member must "form a hinge joint and is capable of rotating on that hinge joint." Defendants' proposed construction seeks to unduly restrict hinge member in order to advance a non-infringement position. Defendants' proposed construction is erroneous for multiple reasons.

First, under the guise of claim interpretation, Defendants seek to subvert the straight-forward concept of a hinge member which rotatably attaches into a verbose definition with extra words (i.e., limitations) neither found in the patent nor warranted by the intrinsic evidence.

Second, the only possible justification for Defendants' restrictive definition would be to limit the claims to Defendants' contention of what constitutes a preferred embodiment. However, limiting the claims to a preferred embodiment is a "cardinal sin" of claim construction.[19] Further, the claims unequivocally refer to an apparatus "***comprising***" a "first axis of rotation" relative to the hinge member and camera and "second axis of rotation" relative to the hinge member and support frame. The word "comprising," which in patent lexicography means "including, but not limited to" is "open-ended and does not exclude additional, unrecited elements."[20] While all that is required to infringe the claims is rotation in one axis per rotatable attachment, the claimed invention is not restricted to this embodiment.  Rather it ***comprises*** all types of "rotatable" attachments, including those which permit rotation in more than a single axis.

---

[19] *Phillips*, 415 F.3d at 1319-20.
[20] *CIAS, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356, 1361 (Fed. Cir. 2007); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999).

A2812

Third, as noted above, the specification teaches, and all claims include, that the hinge member is "rotatably attached" to the camera. A "rotatable attachment" is broader than a hinge joint. A few well known examples of rotatable attachments are pivot joints, ball and socket joints and saddle joints. *See, e.g., http://science.howstuffworks.com/environmental/life/human-biology/bone11.htm; http://www.teachpe.com/anatomy/joints.php; http://www.livestrong.com/article/102854-different-types-joints/.*

Fourth, the preferred embodiment rotatable attachment between the hinge member and the camera depicted in Figs. 2, 3 and 4 is a pivot joint, not a hinge joint. "It is elementary that a claim construction that excludes a preferred embodiment is rarely, if ever correct."[21]

Fifth, independent claims 1, 10, 20 and 21 comprise a hinge member which "rotatably" attaches to a support frame, while claim 19 comprises a hinge member which "hingedly" attaches to a support frame. Common sense and the doctrine of claim differentiation[22] dictate that "rotatably" attached is different from, and broader than, "hingedly" attached.  As noted in Section IV.D below, the parties agree that "hingedly attached" comprises a hinge joint. However, Defendants improperly seek to shoehorn a "hinge joint" limitation in their constructions of "hinge member" and "rotatably attached," which would eviscerate the broader "rotatable" aspect of each.

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**B.     Rotatably attached.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Connected such that the connected object is capable of being adjustably rotated | Connected such that the connected object is capable of being adjusted to different configurations via motion over one axis of rotation |

---

[21] *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002).
[22] *See, e.g., Kara Technology, Inc. v. Stamps.com, Inc.*, 582 F.3d 1341 (Fed. Cir. 2009).

As noted in Section IV.A above, the term "rotatably attached" is found in independent claims 1, 10, 19, 20 and 21. Relevant intrinsic evidence, including how the phrase is used in the claims, is noted in Section IV.A. Here, the parties essentially agree that "rotatably attached" means at least "connected such that the connected object is capable of being adjustably rotated." This is Plaintiff's proposed construction, and it is very near the first half of Defendants' proposed construction. However, it is unclear why Defendants seek to substitute "different configurations" for the word "rotatably," or why Defendants omit any permutation of the word "rotate" from their proposed construction. The term "rotate" and its various permutations,  such as rotatable and rotatably, are plain words that a jury can readily understand. There is no good reason to omit any permutation of "rotate" out of the definition of "rotatably attached" and instead substitute "adjusted to different configurations." Plaintiff's use of "adjustably rotated" captures the "rotatably" aspect of "rotatably attached" and should be adopted.

The second half of Defendants' proposed construction again seeks to unduly restrict "rotatably attached" to "one axis of rotation." The five reasons why this restriction is erroneous are discussed in Section IV.A.

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**C.     Adapted to be rotatably attached/ Adapted to rotatably attach.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Formed in a manner to be connected such that the connected object is capable of being adjustably rotated. | Formed in a manner to allow an object connected thereto to be adjusted to different configurations via movement over one axis of rotation |

The term "adapted to be rotatably attached" is found in claims 1, 10, 19, 20 and 21, and "adapted to rotatably attach" is found in claim 8. The issues here are the same as with "rotatably attached" at Section IV.B above. For the reasons stated in Section IV.B, Plaintiff's proposed construction should be adopted.

### D.      Hingedly attached / Hingedly attaching.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Connected or joined via a hinge joint | Connected or joined via a hinge joint so as to allow swinging motion about said hinge joint |

The phrase "hingedly attached" is found in claim 19, and "hingedly attaching" is found in claim 8. The parties agree that these phrases mean at least "connected or joined via a hinge joint." However, Defendants seek to add an additional limitation in the claims of, "so as to allow swinging motion about said hinge joint." The word "swinging" is not included in the claims or specification, nor is it clear what "swinging" is intended by Defendants to mean. The only possible justification for adding this unnecessary limitation to the claims would be to limit the claims to Defendants' contention of what constitutes the preferred embodiment. However, limiting the claims to a preferred embodiment is the "cardinal sin" of claim construction.  Thus, Plaintiff's proposed construction should be adopted.

### C.      Support Frame.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A structural element that supports another structure | A physically distinct structural element attached to the hinge member so as to form a hinge joint, that can take different dispositions via rotation about said hinge joint |

The term "support frame" is found in claims 1 - 8, 10 - 11, 13 - 17 and 19 - 21. The structure and function of a support frame is taught by the specification and claims. The specification teaches that the support frame supports the hinge element on a surface and on an object (for example a display screen for a laptop computer). For example, the specification teaches that, in a preferred embodiment, "[s]upport frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30," and that "when the support frame is in the first position, the object may be the top of a table where the first surface is a top

surface of the table." 4:20-21 & 2:14-37. *See also* 2:14-16: 2:66 – 3:2. Claims 1, 10, 20, 21 and 22 comprise a support frame "configured to support" the hinge member on a "surface" and an "object," and claim 19 comprises a support frame which "engagingly supports" the hinge member on a "surface" and on an "object."

Defendants agree that a support frame is a "structural element," yet they seek to impose a restriction that it be "a physically distinct structural element." The words "physically distinct" are not found in the patent. Further, it is not known what Defendants mean by "physically distinct," or why this limitation would be appropriate to impose. In short, this additional limitation sought to be imposed by Defendants lacks support.

Next, Defendants seek to include "attached to the hinge member" in the definition of "support frame." This is unnecessary and inappropriate because the "attached" aspect of the support frame is addressed elsewhere in the claims. As noted above at Section IV.A, each of independent claims 1, 10, 20 and 21 separately specifies rotatable attachment of the hinge member to the support frame, and independent claim 19 separately specifies hinged attachment of the hinge and the support frame.

Finally, Defendants erroneously seek to import their hinge joint limitation into the definition of support frame. This is erroneous for two reasons. First, as noted in Section IV.A above, the hinge member and support frame are "rotatably attached" in claims 1, 10, 20 and 21, and "rotatably attached" is broader than a hinge joint. Second, the connection between the support frame and the hinge member is already addressed elsewhere in each of the claims. Specifically, claims 1, 10, 20 and 21 separately specifies rotatable attachment (which the Court is going to construe) of the hinge member to the support frame, and independent claim 19 separately specifies hinged attachment (which the Court is also going to construe) of the hinge

and the support frame. Defendants' attempt to slip their unwarranted "hinge joint" limitation into almost every conceivable term, including into "support frame," lacks merit.

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

### F.    Disposition.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Configuration or position. | Configuration of the support frame relative to the hinge member accomplished through rotation about the second axis, enabling support of the hinge member on a surface or edge |

The term "disposition" is found in claims 1, 2, 5, 6 and 10. Although disposition is an easily understandable word that needs no construction, in the interest of compromise, Plaintiff has agreed with Defendants that disposition means "configuration," or "position," which in this context are synonymous. The patent teaches and claims that the support frame has at least one disposition/configuration when positioned on a surface (e.g., "first position 44"), and at least another disposition/configuration when positioned on an inclined object (e.g., second position 52). *See, e.g.,* 2:1-4; 2:24-29; 2:34-37; 2:66-3:4; 3:39-43; 3:63-65; 4:27-30; 4:49-54; 5:2-6; 5:33-37. Further, both independent claims 1 and 10 comprise a support frame having "a first disposition positioned on said generally horizontal, substantially planar surface" and a "second disposition attached to the object" when the object is inclined. Exemplary dispositions are shown at Figs. 2 and 4. Again, "disposition" and "position" are used synonymously.

Defendants' proposed construction seeks to import multiple inappropriate limitations into the simple term "disposition." First, Defendants seek to restrict disposition of the support frame to being "relative to the hinge member" and "accomplished through rotation about the second axis." Neither restriction is required by the claims or any other intrinsic evidence. For example, claims 1 and 10 comprise a support frame having "a first disposition positioned on said generally

horizontal, substantially planar surface" and a "second disposition attached to the object" when the object is inclined. There is no requirement that the differences in these depositions be "relative to the hinge member" or that they be "accomplished through rotation about the second axis." Further, none of the descriptions of preferred embodiments mention the different positioning of the support frame being "relative to the hinge member" or that they be "accomplished through rotation about the second axis." *See, e.g.,* 2:1-4; 2:24-29; 2:34-37; 2:66-3:4; 3:39-43; 3:63-65; 4:27-30; 4:49-54; 5:2-6; 5:33-37. Further, even if either restriction was consistent with a preferred embodiment, which is not apparent, it would be improper to limit the claimed invention to a preferred embodiment.

Defendants' final suggested limitation to impose on "disposition," which is "enabling support of the hinge member on a surface or edge" is confusing. If Defendants mean that the disposition of the support frame must be what enables support of the hinge member, then they are mistaken. Nothing in the intrinsic evidence, including nothing in the claims, requires the disposition of the support frame to be what enables support of the hinge member. For example, the mere attachment (i.e., "rotatably attachment") of the support frame and the hinge member could be what supports the hinge member. Further, the support frame being enabled to support the hinge member is already addressed elsewhere in the claims. Separately from the term "disposition," claims 1, 10, 20, 21 and 22 comprise a support frame "configured to support" the hinge member on a "surface" and an "object," and claim 19 comprises a support frame which "engagingly supports" the hinge member on a "surface" and on an "object."

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**G.    Maintained adjacent said edge.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Plain and ordinary meaning. NCN.[23] Alternatively, positioned near said edge | Positioned near said edge without engaging or contacting the edge |

The phrase "maintained adjacent said edge" is found in claim 1 of the '343 patent, wherein it comprises the "the camera being maintained adjacent said edge in said second disposition of said support frame." This phrase is made up of ordinary words that have a plain and ordinary meaning. It uses non-technical words that can easily be understood by a lay juror. Attempting to construe it would add nothing in the way of clarity for the jury. Thus, no construction is necessary.[24]

Alternatively, in an effort at compromise, Plaintiff would agree with Defendants that the phrase could be interpreted as "positioned near said edge" without any apparent change to its meaning.

However, Defendants seek to add the negative limitation of "without engaging or contacting the edge." It is unclear why this negative limitation is necessary or appropriate. Nothing in the specification says "without engaging or contacting the edge." Further, the "edge" in claim 1 is the "edge intersecting the first surface and the second surface." Further, claim 1 requires a support frame which supports and is rotatably attached to a hinge member, and that the hinge member be adapted to be rotatably attached to the camera. This structure seems to already ensure that the camera supported by the camera clip will not be contacting the edge of the surface; however, in any event, there is no cause for reading the Defendants' proposed negative limitation into the claim.

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

---

[23] "NCN" is short for "no construction necessary."
[24] *See, e.g., CEATS, Inc. v. Continental Airlines,* 2011 WL 2971243, *8  (E.D. Tex. July 21, 2011); *Stragent, LLC v. Amazon.com, Inc.,* 2011 WL 2199498, *8-9 (E.D. Tex. June 07, 2011).

**H.    When said first surface and said second surface are inclined from a generally horizontal orientation.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Plain and ordinary meaning. NCN. Alternatively, when the object is inclined from a generally horizontal orientation | When the object upon which the claimed apparatus rests is not generally horizontal but inclined from the horizontal |

The term "when said first surface and said second surface are inclined from a generally horizontal orientation" is found in claim 1, which comprises "said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation." This phrase is made up of ordinary words that have a plain and ordinary meaning. It uses non-technical words that can easily be understood by a lay juror. Attempting to construe it would add nothing in the way of clarity for the jury. Thus, no construction is necessary.

Alternatively, Plaintiff deems its alternate construction – i.e., when the object is inclined from a generally horizontal orientation – to be acceptable, albeit unnecessary.

Defendants' proposed construction is cumbersome and overly verbose. There is no reason to, or clarity gained from, defining "object" as the "object upon which the claimed apparatus rests." Further, there is no reason to elaborate upon "inclined" by specifying that it is "not generally horizontal." No such clarification is needed to the plain language already present  that the object is "inclined *from* a generally horizontal orientation" (emphasis added). A jury can easily understanding that an object inclined *from* a generally horizontal orientation is "not generally horizontal" once so inclined.

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**I.    A display screen which can be inclined from a generally horizontal position.**

15
A2820

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Plain and ordinary meaning. NCN. Alternatively, a display screen that may be adjusted from a generally horizontal position to a non-generally horizontal position | A display screen that may be adjusted from a generally horizontal position to a non-horizontal position |

The phrase "a display screen which can be inclined from a generally horizontal position" is found in claim 19 of the '343 patent. This phrase is made up of ordinary words that have a plain and ordinary meaning. It uses non-technical words that can easily be understood by a lay juror. Attempting to construe it would add nothing in the way of clarity for the jury. Thus, no construction is necessary.

Alternatively, although unnecessary, Defendants' proposed construction does not seem to materially change the meaning of this phrase, with one caveat. Plaintiff's proposed alternative construction adds the word "non-generally," as in, "a display screen that may be adjusted from a generally horizontal position to a *non-generally* horizontal position." This should be added for clarity and symmetry between "generally horizontal" and "non-generally horizontal."

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**J.      Body.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| A structural element | One unitary structural element |

The term "body" is found in claim 8 of the '343 patent. Its context is "... wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame." Plaintiff and Defendants seem to agree that a body is a structural element. Defendants further propose that a body is "one unitary structural element."

However, the phrase "one unitary structural element" is not used in the claims or specification. Moreover, it is not known what Defendants intend by adding the limitation, "unitary structural element." Does this mean that a body cannot be fabricated out of two or more pieces joined (e.g., glued, fused or screwed) together? Nothing in the claims or specification would support such a limitation. Thus, Plaintiff's proposed construction should be adopted.

### K.    Proximal…end.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Plain and ordinary meaning | One end of the hinge member, distinct from the distal end |

The term "proximal…end" is found in claim 8 of the '343 patent. The context is "wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame..."

This phrase is made up of ordinary words that have a plain and ordinary meaning. It uses non-technical words that can easily be understood by a lay juror. Attempting to construe it would add nothing in the way of clarity for the jury. Thus, no construction is necessary.

The only purpose of Defendants' proposed construction appears to be stating that a proximal end is "distinct" from a distal end. Plaintiff does not know what Defendants mean by "distinct." The claim requires the body of the hinge member, which Defendants' assert is a "one unitary structural element," to have proximal and distal ends.  It is not known what Defendants intend when they argue that the proximal and distal ends of a "unitary structural element" must be "distinct." If anything, Defendants' positions on "body" and "distal end" seem at odds with each other.   Further, the word "distinct" is not found in the specification or the claims.

Defendants proposed addition of "distinct" is either confusing or unnecessary, and in either case is inappropriate.

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**L.     Distal end.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Plain and ordinary meaning.  NCN. | Other end of the hinge member distinct from the proximal end |

The term "distal end" involves the same issues as "proximal ...end" addressed in Section IV.K above. For those reasons, no construction is necessary and Defendants' proposed construction is inappropriate.

**M.     Pivot element.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| An element about which something rotates | One unitary structural element around which an attached camera rotates |

The term "pivot element" is found in claims 8, 9, 17 and 18. The context is that the pivot is "adapted to rotatably attach the camera to the body..." Claims 8 and 17. Further, the specification refers multiple times to pivot elements comprising "pivot element 80." *See* 3:36-40; 3:43-48; 5:38-41; 5:36-49.  Here again, Defendants seek to add "one unitary structural element" as a limitation. However, the phrase "one unitary structural element" is not used in the claims or specification.   Moreover, it is not known what Defendants intend by adding the limitation, "unitary structural element." Does this mean that a body cannot be fabricated out of two or more pieces joined (e.g., glued, fused or screwed) together? Nothing in the claims or specification would support such a limitation. For the foregoing reasons, Plaintiff's proposed construction should be adopted.

**N.     Rotation of said support frame being prevented along an axis substantially parallel to said second axis.**

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Plain and ordinary meaning. NCN. | The support frame, or portions thereof, is prevented from moving about the second axis, and thus remains in one particular disposition relative to said second axis |

The phrase "rotation of said support frame being prevented along an axis substantially parallel to said second axis" is found in claim 19 of the '343 patent. This phrase is made up of ordinary words that have a plain and ordinary meaning. It uses non-technical words that can easily be understood by a lay juror. Attempting to construe it would add nothing in the way of clarity for the jury. Thus, no construction is necessary.

Defendants' proposed construction adds no clarity to the phrase, and instead seeks to depart from its plain language.  First, Defendants inexplicably seek to delete the word "substantially" from the phrase.  Second, Defendants seek to substitute "moving about" for "rotation."  However, "rotation" has a plain and ordinary meaning that would be easily understood by a lay juror.  Third, Defendants seek to create new language of whole cloth and require that the support frame "remains in one particular disposition relative to said second axis." However, the plain language of the claim does not require that the support frame "remains in one particular disposition relative to said second axis."  Rather, the plain language states that "rotation of said support frame being prevented along an axis."  Thus, Defendants improperly seek to rewrite this easily understood phrase under the guise of construing it.  Accordingly, no construction of this phrase is necessary.

## O.     Engagingly support.

| PLAINTIFF'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Maintained in a stable position by physical contact | Maintained in a stable position relative to an object by the support frame via physical contact between the support frame and said object |

19

A2824

The term "engagingly support" is found in claim 19. The context is "a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen." The parties agree that "engagingly support" at least means maintained in a stable position by physical contact. However, Defendants' proposed construction is overly verbose and includes limitations inappropriate for "engagingly support." First, Defendants refer to "support frame" twice in their definition of "engagingly support." However, the plain language of claim 19 already specifies that the support frame provides "engaging support" for the hinge member. Thus, there is no need to refer to "support frame" in the definition of "engagingly support." Second, Defendants refer to "an object" while claim 19 refers to a "display screen." Further, it is unnecessary to refer to "an object" in the definition of "engagingly support."

For the foregoing reasons, Plaintiff's proposed construction should be adopted.

## V.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court adopt Plaintiff's definitions, where proposed.

December 19, 2011                              Respectfully submitted,

                                              INTERNET MACHINES LLC

                                              By: /s/ John J. Edmonds
                                              John J. Edmonds – LEAD COUNSEL
                                              Texas State Bar No. 789758
                                              Michael J. Collins
                                              Texas Bar No. 4614510
                                              Stephen F. Schlather
                                              Texas Bar No. 24007993
                                              COLLINS, EDMONDS &
                                              POGORZELSKI, PLLC
                                              1616 S. Voss Rd., Suite 125
                                              Houston, Texas 77057
                                              Telephone: (713) 501-3425
                                              Facsimile: (832) 415-2535

jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

Andrew W. Spangler
Texas Bar No. 24041960
Spangler Law P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

ATTORNEYS FOR PLAINTIFF
ADJUSTACAM LLC

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with this filing via the Court's CM/ECF system and/or email per Local Rule CV-5(a)(3).

December 19, 2011                          /s/ *John J. Edmonds*
                                           John J. Edmonds

US005855343A

# United States Patent [19]

## Krekelberg

[11] **Patent Number:** 5,855,343

[45] **Date of Patent:** Jan. 5, 1999

[54] **CAMERA CLIP**

[75] Inventor: **David E. Krekelberg**, Minnetonka, Minn.

[73] Assignee: **iREZ Research, Corporation**, Minnetonka, Minn.

[21] Appl. No.: **814,168**

[22] Filed: **Mar. 7, 1997**

[51] **Int. Cl.⁶** .................................................. **A47G 29/00**

[52] **U.S. Cl.** .......................... **248/121**; 248/126; 248/918

[58] **Field of Search** ................... 248/121, 126, 248/440.1, 166, 176.1, 688, 918; 224/908; 396/421, 422, 423, 424, 425, 426, 427, 428

[56] **References Cited**

U.S. PATENT DOCUMENTS

1,208,344   12/1916   McAll ...................................... 248/126

*Primary Examiner*—Ramon O. Ramirez
*Assistant Examiner*—Long Dinh Phan
*Attorney, Agent, or Firm*—Nawrocki, Rooney & Sivertson, P.A.

[57]            **ABSTRACT**

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

**21 Claims, 2 Drawing Sheets**



ADJCAM000001

A2827

**U.S. Patent**     Jan. 5, 1999     Sheet 1 of 2     **5,855,343**



*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*

ADJCAM000002

A2828

Case: 13-1665    Document: 93-3    Page: 302    Filed: 12/11/2014

Case 6:10-cv-00329-LED  Document 575-1  Filed 12/19/11  Page 3 of 8 PageID #:  4366



*Fig. 5*



*Fig. 6*

*Fig. 7*

ADJCAM000003

5,855,343

| 1 | 2 |

## CAMERA CLIP

### FIELD OF THE INVENTION

This invention relates to a clip for holding a camera. More particularly it relates to a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

### BACKGROUND OF THE INVENTION

With portable cameras, it is desirable to have an apparatus which can support the camera in any number of desired configurations. The apparatus must easily accommodate repositioning the camera to new orientations during use, and must be easily transportable. This is especially true when using the camera with a portable computer, such as a laptop computer. With increasing improvements in technology, both the laptop computer and camera have become smaller over time, emphasizing the need for a compatible camera support apparatus. The camera support apparatus must be versatile, light in weight, and be easily transportable to accommodate the new camera and laptop designs, and must desirably facilitate easy and safe storage of the camera. Often times portable computers are stored in carry bags which may be fully loaded with other hardware devices, such as disk drives or printers, as well as with personal effects, making for cramped storage conditions. The camera support apparatus must desirably protect the camera from damage during transport under these cramped storage conditions to avoid the necessity for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

### SUMMARY OF THE INVENTION

Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any

desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on a display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object where the apparatus comprises a hinge member and a support frame. The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member. A support frame is hingedly attached to the hinge member to engagingly support the hinge member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame. The first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object when the hinge member is engagingly supported on the object. In the preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements are engaging the first surface when the first surface is substantially level. In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface. In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top surface of the table. The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge when the first surface is inclined from the substantially level position. The object has a second surface wherein a thickness between the first surface and the second surface defines an edge therebetween. The camera is maintained adjacent to the edge in the second position where the uppermost portion of the object is the edge. The rear support element engages a first surface and the first and second support elements engage the edge and the second surface. The rear support element and the first and second front support elements, in combination, maintain the camera adjacent the edge and prevent rotation of the support frame along an axis substantially parallel to the second axis where the second axis is substantially parallel to the edge. In a preferred embodiment, the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface. A center of gravity of the camera and the hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance prevents rotation of the support frame along the axis substantially parallel to the second axis of rotation. In the preferred embodiment, when the support frame is in the

ADJCAM000004

A2830

5,855,343

**3**

second position, the object may be a display screen for a laptop computer, where the second surface is the front of the display screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position in between and is releasably held by the rear support element and the first and second front support elements. In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second front support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements. The first and second front support elements resiliently and outwardly flex to accommodate passage of the housing. The housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably attaches the camera to the body so that the camera rotates about the first axis relative to the body. A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame. In the preferred embodiment, the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

## BRIEF DESCRIPTION OF THE DRAWINGS

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

**4**

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, FIG. 1 is a perspective view of the camera clip invention. FIG. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16. Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32. Second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30 (see also, FIG. 2). Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42. Housing 20 has a first indentation 25 and a second indentation 27 to slidably and fitably receive distal end 41 of first front support element 40 and distal end 43 of second front support element 42 when first front support element 40 and second front support element 42 are rotated in the direction of arrow 34 to engage housing 20 backside 24.

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in the first position 44, on the first surface 36, when rear support element 38, first front support element 40 and second front support element 42 are engaging first surface 36 and first surface 36 is substantially level. In the first position 44, camera 12 may be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

ADJCAM000005

**A2831**

5,855,343

**5**

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2). In FIG. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween. Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56. Rear support element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60. Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68. Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60. The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18. In the preferred embodiment, object 58 may be a display screen for a laptop computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen. FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18. FIG. 4 further shows camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12. Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12. While the embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated. For example, wiring harness could enter body 74 at a location angularly spaced upward from bore 90.

FIGS. 5–7 show various perspectives of a third mode of the preferred embodiment of the present invention. FIG. 5 is a side view, FIG. 6 is a detailed side view showing the lens of the camera being fitably received by the cover, and FIG. 7 is a front view. The third mode of the preferred embodiment of the present invention is shown when camera 12 is rotated about second axis 32 along the direction shown by arrow 34 in a direction from the first front support element 40 and the second front support element 42 towards rear support element 38 of support frame 18. This rotation is continued in the third mode until camera 12 is in a position 65 between rear support element 38 and first front support element 40 and second front support element 42. In this

**6**

position, distal end 41 of first support element 40 and distal end 43 of second front support element 42 slidably and fittably engage first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. Camera 12 is then releasably held between rear support element 38 and first front support element 40 and second front support element 42. Rear support element 38 further has means to protect a lens 22 of camera 12, which is cover 90. Cover 90 is mounted at a distal end 92 of rear support element 38. Lens 22 of camera 12 faces in the direction of arrow 92, which is the direction of rotation about second axis 32 from first front support element 40 and second front support element 42 to rear support element 38 of support frame 18. Cover 90 fitably receives lens 22 of camera 12. Cover 90 has a raised portion 95 sized to be accommodated by lens 22 of camera 12. Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

FIG. 3 is a detailed front view of the camera clip invention. FIG. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94. Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment. Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20. Housing 20 is releasably held once passing between first front support element 40 and second front support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

What is claimed:

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially

ADJCAM000006

5,855,343

7

planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

**2.** Apparatus according to claim **1** wherein the support frame comprises a first portion and a second portion, the support frame being in the first disposition on the generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, substantially planar surface, and the support frame being in the second disposition on the object when said first portion is engaging the first surface and said second portion is engaging the second surface, said first portion and said second portion in combination maintaining the camera adjacent the edge.

**3.** Apparatus according to claim **2** wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

**4.** Apparatus according to claim **3** wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

**5.** Apparatus according to claim **2** wherein the support frame is in the first disposition when the first portion and the second portion engage the generally horizontal, substantially planar surface at three or more locations in a common plane, thereby preventing rotation of the support frame relative to the generally horizontal, substantially planar surface in any direction.

**6.** Apparatus according to claim **2** wherein the support frame is in the second disposition when a first distance from the edge to a location where the first portion engages the first surface is greater than a second distance from the edge to a location where the second portion engages the second surface, thus preventing rotation of the support frame.

**7.** Apparatus according to claim **1** wherein the object is a display screen for a laptop computer, and the second surface is the front of the display screen and the first surface is the back of the display screen.

**8.** Apparatus according to claim **1** wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame.

**9.** Apparatus according to claim **8** wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

**10.** Apparatus for supporting a camera, having a housing and a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

   a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member; and

   b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support

8

frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, the support frame having a rear support element and a first and a second front support element, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when the first surface is inclined from a substantially horizontal position so that an uppermost extremity of the object is the edge, the support frame being maintained in said second disposition by said rear support element engaging said first surface and said first and second front support elements engaging the second surface, said rear support element and said first and second front support elements in combination preventing rotation of the support frame.

**11.** Apparatus according to claim **10** wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

**12.** Apparatus according to claim **11** wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

**13.** Apparatus according to claim **11** wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

**14.** Apparatus according to claim **10** wherein the support frame is in the first disposition when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface at three or more locations in a common plane of the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

**15.** Apparatus according to claim **10** wherein the support frame is in the first disposition positioned on the generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

**16.** Apparatus according to claim **10** wherein support frame is in the second disposition when a first distance from the edge to a location where the rear support element engages the first surface is greater than a second distance from the edge to a location where the first and second front support elements engage the second surface, the first dis-

ADJCAM000007

5,855,343

**9**

tance being greater than the second distance thus preventing rotation of the support frame.

**17.** Apparatus according to claim **10** wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

**18.** Apparatus according to claim **17** wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

**19.** A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

　　a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

　　b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge.

**20.** Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

　　a. a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

　　b. a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said

**10**

support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

**21.** Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

　　a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member; and

　　b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

*　*　*　*　*

ADJCAM000008

Case 6:10-cv-00329-J PageID #: 4372

08/814168

Subclass 2

Class 248

ISSUE CLASSIFICATION

SCANNED

5855343

| UTILITY SERIAL NUMBER 08/814168 | PATENT DATE JAN 0 5 1999 | PATENT NUMBER |
|---|---|---|

| SERIAL NUMBER 08/814,168 | FILING DATE 03/07/97 | CLASS 248 | SUBCLASS | GROUP ART UNIT 3505 | EXAMINER Pha |
|---|---|---|---|---|---|

**APPLICANTS**

DAVID E. KREKELBERG, MINNETONKA, MN.

**CONTINUING DATA**********************
VERIFIED        NONE

↳ LDP

**FOREIGN/PCT APPLICATIONS************
VERIFIED        NONE

↳ LDP

FOREIGN FILING LICENSE GRANTED 10/06/97        ***** SMALL ENTITY *****

| Foreign priority claimed 35 USC 119 conditions met | ☐ yes ☑ no ☐ yes ☑ no | AS FILED ➤ | STATE OR COUNTRY MN | SHEETS DRWGS. 2 | TOTAL CLAIMS | INDEP. CLAIMS 2 | FILING FEE RECEIVED $516.00 | ATTORNEY'S DOCKET NO. 19239/103; |
|---|---|---|---|---|---|---|---|---|
| Verified and Acknowledged | Examiner's initials | | | | | | | |

**ADDRESS**

LAWRENCE M NAWROCKI
NAWROCKI RODNEY & SIVERTSON
BROADWAY PLACE EAST SUITE
3433 BROADWAY STREET NORTH
MINNEAPOLIS MN 55413

**TITLE**

CAMERA CLIP

U.S. DEPT. OF COMM./ PAT. & TM—PTO-436L (Rev.12-94)

| PARTS OF APPLICATION FILED SEPARATELY | | Applications Examiner |
|---|---|---|
| NOTICE OF ALLOWANCE MAILED | LONG DINH PHAN | CLAIMS ALLOWED |
| 7/15/98 | Assistant Examiner LDP | Total Claims 21 | Print Claim |
| ISSUE FEE | | DRAWING |
| Amount Due 660.00 | Date Paid 10/20/98 | Sheets Drwg. 2 | Figs. Drwg. 7 | Print Fig. 2 |
| | 3632 Primary Examiner | ISSUE BATCH NUMBER 654 |
| Label Area | PREPARED FOR ISSUE | |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only

Form PTO-436A
(Rev. 8/92)

SCAN 6

ADJCAM000009

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 2 of 124 PageID #: 4373

PATENT APPLICATION

08/814168

08814168

APPROVED FOR LICENSE

INITIALS _____

| Date Entered or Counted | | Date Received or Mailed |
|---|---|---|

## CONTENTS

1. *Application* ___ *papers.*
2. ___ 6/25/97
3. ___ 8/21
5. Rej 3 mos. 2/6/98
5. Ext time (1) 6/18/98 grtid
6. Amdt A 1-12-98
7. E/P, S interior Summary 7/
8. E/P, S Amdt B 7/15/98
9. ___ 10/22/98
10. PTO GRANT JAN 05 1999
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.
30.
31.
32.

(FRONT)

ADJCAM000010

A2836

## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 248 | 121 | 12/15/97 | LDP |
|  | 126 |  |  |
|  | 440.1 |  |  |
|  | 166 |  |  |
|  | 176.1 |  |  |
|  | 688 |  |  |
|  | 918 |  |  |
| 224 | 908 |  |  |
| 396 | 421 |  |  |
|  | 422 |  |  |
|  | 423 |  |  |
|  | 424 |  |  |
|  | 425 |  |  |
|  | 426 |  |  |
|  | 427 |  |  |
|  | 428 |  |  |
| SEARCH | UPDATES | 06/30/98 |  |

## SEARCH NOTES

|  | Date | Exmr. |
|------|------|-------|
| DERWENT SEARCH OF CLASS 248 | 12/15/98 | LDP |
| APS SEARCHED (SEE ATTACHED SEARCH LISTING) | 06/30/98 |  |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 248 | 121 | 07/07/98 | LDP |
|  | 126 |  |  |
|  | 440.1 |  |  |
|  | 166 |  |  |
|  | 176.1 |  |  |
|  | 688 |  |  |
|  | 918 |  |  |
| 224 | 908 |  |  |
|  | 421 → |  |  |
|  | → 428 |  |  |

(RIGHT OUTSIDE)

ADJCAM000011

| POSITION | ID NO. | DATE |
|---|---|---|
| CLASSIFIER | | |
| EXAMINER | | |
| TYPIST | | |
| VERIFIER | | |
| CORPS CORR. | | |
| SPEC. HAND | | |
| FILE MAINT. | | |
| DRAFTING | | |

## INDEX OF CLAIMS

| Claim Final | Original | | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | | | | | | | |
| 2 | 2 | | | | | | | | |
| | 3 | | | | | | | | |
| 3 | 4 | | | | | | | | |
| 4 | 5 | | | | | | | | |
| 5 | 6 | | | | | | | | |
| | 7 | | | | | | | | |
| 6 | 8 | | | | | | | | |
| | 9 | | | | | | | | |
| | 10 | | | | | | | | |
| 7 | 11 | | | | | | | | |
| 8 | 12 | | | | | | | | |
| 9 | 13 | | | | | | | | |
| 10 | 14 | | | | | | | | |
| | 15 | | | | | | | | |
| 11 | 16 | | | | | | | | |
| 12 | 17 | | | | | | | | |
| 13 | 18 | | | | | | | | |
| 14 | 19 | | | | | | | | |
| 15 | 20 | | | | | | | | |
| 16 | 21 | | | | | | | | |
| | 22 | | | | | | | | |
| | 23 | | | | | | | | |
| | 24 | | | | | | | | |
| 17 | 25 | | | | | | | | |
| 18 | 26 | | | | | | | | |
| 19 | 27 | | | | | | | | |
| 20 | 28 | | | | | | | | |
| 21 | 29 | | | | | | | | |
| | 30 | | | | | | | | |
| | 31 | | | | | | | | |
| | 32 | | | | | | | | |
| | 33 | | | | | | | | |
| | 34 | | | | | | | | |
| | 35 | | | | | | | | |
| | 36 | | | | | | | | |
| | 37 | | | | | | | | |
| | 38 | | | | | | | | |
| | 39 | | | | | | | | |
| | 40 | | | | | | | | |
| | 41 | | | | | | | | |
| | 42 | | | | | | | | |
| | 43 | | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

| Claim Final | Original | | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |
| | 66 | | | | | | | | |
| | 67 | | | | | | | | |
| | 68 | | | | | | | | |
| | 69 | | | | | | | | |
| | 70 | | | | | | | | |
| | 71 | | | | | | | | |
| | 72 | | | | | | | | |
| | 73 | | | | | | | | |
| | 74 | | | | | | | | |
| | 75 | | | | | | | | |
| | 76 | | | | | | | | |
| | 77 | | | | | | | | |
| | 78 | | | | | | | | |
| | 79 | | | | | | | | |
| | 80 | | | | | | | | |
| | 81 | | | | | | | | |
| | 82 | | | | | | | | |
| | 83 | | | | | | | | |
| | 84 | | | | | | | | |
| | 85 | | | | | | | | |
| | 86 | | | | | | | | |
| | 87 | | | | | | | | |
| | 88 | | | | | | | | |
| | 89 | | | | | | | | |
| | 90 | | | | | | | | |
| | 91 | | | | | | | | |
| | 92 | | | | | | | | |
| | 93 | | | | | | | | |
| | 94 | | | | | | | | |
| | 95 | | | | | | | | |
| | 96 | | | | | | | | |
| | 97 | | | | | | | | |
| | 98 | | | | | | | | |
| | 99 | | | | | | | | |
| | 100 | | | | | | | | |

SYMBOLS

| ✓ | Rejected |
| = | Allowed |
| — (Through numeral) | Canceled |
| N | Restricted |
| | Non-elected |
| I | Interference |
| A | Appeal |
| O | Objected |

(LEFT INSIDE)

ADJCAM000012

☆U.S.GOVERNMENT PRINTING OFFICE 1997-430-220

| PATENT NUMBER | ORIGINAL CLASSIFICATION | |
|---|---|---|
| | CLASS | SUBCLASS |
| | 248 | 121 |

**CROSS REFERENCE(S)**

APPLICATION SERIAL NUMBER

08 / 814, 168

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | |
|---|---|---|---|---|
| 248 | 126 | 918 | | |

APPLICANT'S NAME (PLEASE PRINT)

DAVID E. KREKELBERG

IF REISSUE, ORIGINAL PATENT NUMBER

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |

**INTERNATIONAL CLASSIFICATION**

| A | 4 | 7 | G | 29/00 |
|---|---|---|---|---|
| | | | | / |
| | | | | / |

GROUP ART UNIT

3632

ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME)

LONG DINH PHAN

PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME)

RAMON O. RAMIREZ

PTO-270
(REV. 6-91)

**ISSUE CLASSIFICATION SLIP**

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ADJCAM000013



US005855343A

# United States Patent [19]

## Krekelberg

[11] Patent Number: **5,855,343**

[45] Date of Patent: **Jan. 5, 1999**

[54] **CAMERA CLIP**

[75] Inventor: **David E. Krekelberg**, Minnetonka, Minn.

[73] Assignee: **iREZ Research, Corporation**, Minnetonka, Minn.

[21] Appl. No.: **814,168**

[22] Filed: **Mar. 7, 1997**

[51] Int. Cl.[6] ............................................... **A47G 29/00**

[52] U.S. Cl. .......................... **248/121**; 248/126; 248/918

[58] **Field of Search** ........................... 248/121, 126, 248/440.1, 166, 176.1, 688, 918; 224/908; 396/421, 422, 423, 424, 425, 426, 427, 428

[56] **References Cited**

U.S. PATENT DOCUMENTS

1,208,344   12/1916   McAll ................................... 248/126

Primary Examiner—Ramon O. Ramirez
Assistant Examiner—Long Dinh Phan
Attorney, Agent, or Firm—Nawrocki, Rooney & Sivertson, P.A.

[57]                ABSTRACT

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

21 Claims, 2 Drawing Sheets



ADJCAM000014

**U.S. Patent**       Jan. 5, 1999       Sheet 1 of 2       **5,855,343**



*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*

ADJCAM000015

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 8 of 124 PageID #:  4379

**U.S. Patent**          Jan. 5, 1999          Sheet 2 of 2          **5,855,343**

*Fig. 5*



*Fig. 6*

*Fig. 7*



ADJCAM000016

5,855,343

1

# CAMERA CLIP

## FIELD OF THE INVENTION

This invention relates to a clip for holding a camera. More particularly it relates to a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

## BACKGROUND OF THE INVENTION

With portable cameras, it is desirable to have an apparatus which can support the camera in any number of desired configurations. The apparatus must easily accommodate repositioning the camera to new orientations during use, and must be easily transportable. This is especially true when using the camera with a portable computer, such as a laptop computer. With increasing improvements in technology, both the laptop computer and camera have become smaller over time, emphasizing the need for a compatible camera support apparatus. The camera support apparatus must be versatile, light in weight, and be easily transportable to accommodate the new camera and laptop designs, and must desirably facilitate easy and safe storage of the camera. Often times portable computers are stored in carry bags which may be fully loaded with other hardware devices, such as disk drives or printers, as well as with personal effects, making for cramped storage conditions. The camera support apparatus must desirably protect the camera from damage during transport under these cramped storage conditions to avoid the necessity for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

## SUMMARY OF THE INVENTION

Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any

2

desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on a display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object where the apparatus comprises a hinge member and a support frame. The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member. A support frame is hingedly attached to the hinge member to engagingly support the hinge member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame. The first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object where the hinge member is engagingly supported on the object. In the preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements are engaging the first surface when the first surface is substantially level. In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface. In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top surface of the table. The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge when the first surface is inclined from the substantially level position. The object has a second surface wherein a thickness between the first surface and the second surface defines an edge therebetween. The camera is maintained adjacent to the edge in the second position where the uppermost portion of the object is the edge. The rear support element engages a first surface and the first and second support elements engage the edge and the second surface. The rear support element and the first and second front support elements, in combination, maintain the camera adjacent the edge and prevent rotation of the support frame along an axis substantially parallel to the second axis where the second axis is substantially parallel to the edge. In a preferred embodiment, the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface. A center of gravity of the camera and the hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance prevents rotation of the support frame along the axis substantially parallel to the second axis of rotation. In the preferred embodiment, when the support frame is in the

ADJCAM000017

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 10 of 124 PageID #:  4381

5,855,343

**3**

second position, the object may be a display screen for a laptop computer, where the second surface is the front of the display screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position between and is releasably held by the rear support element and the first and second front support elements. In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements. The first and second front support elements resiliently and outwardly flex to accommodate passage of the housing. The housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably attaches the camera to the body so that the camera rotates about the first axis relative to the body. A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame. In the preferred embodiment, the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

BRIEF DESCRIPTION OF THE DRAWINGS

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

**4**

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, FIG. 1 is a perspective view of the camera clip invention. FIG. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16. Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32. Second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30 (see also, FIG. 2). Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42. Housing 20 has a first indentation 25 and a second indentation 27 to slidably and fittably receive distal end 41 of first front support element 40 and distal end 43 of second front support element 42 when first front support element 40 and second front support element 42 are rotated in the direction of arrow 34 to engage housing backside 24.

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in the first position 44, on the first surface 36, when rear support element 38, first front support element 40 and second front support element 42 are engaging first surface 36 and first surface 36 is substantially level. In the first position 44, camera 12 may be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

ADJCAM000018

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 11 of 124 PageID #:  4382

5,855,343

5

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2). In FIG. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween. Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56. Rear support element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60. Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68. Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60. The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18. In the preferred embodiment, object 58 may be a display screen for a laptop computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen. FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18. FIG. 4 further shows camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12. Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12. While the embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated. For example, wiring harness could enter body 74 at a location angularly spaced upward from bore 90.

FIGS. 5–7 show various perspectives of a third mode of the preferred embodiment of the present invention. FIG. 5 is a side view, FIG. 6 is a detailed side view showing the lens of the camera being fitably received by the cover, and FIG. 7 is a front view. The third mode of the preferred embodiment of the present invention is shown when camera 12 is rotated about second axis 32 along the direction shown by arrow 34 in a direction from the first front support element 40 and the second front support element 42 towards rear support element 38 of support frame 18. This rotation is continued in the third mode until camera 12 is in a position between rear support element 38 and first front support element 40 and second front support element 42. In this

6

position, distal end 41 of first support element 40 and distal end 43 of second front support element 42 slidably and fittably engage first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. Camera 12 is then releasably held between rear support element 38 and first front support element 40 and second front support element 42. Rear support element 38 further has means to protect a lens 22 of camera 12, which is cover 90. Cover 90 is mounted at a distal end 92 of rear support element 38. Lens 22 of camera 12 faces in the direction of arrow 92, which is the direction of rotation about second axis 32 from first front support element 40 and second front support element 42 to rear support element 38 of support frame 18. Cover 90 fitably receives lens 22 of camera 12. Cover 90 has a raised portion 95 sized to be accommodated by lens 22 of camera 12. Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

FIG. 3 is a detailed front view of the camera clip invention. FIG. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94. Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment. Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20. Housing 20 is releasably held once passing between first front support element 40 and second front support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

What is claimed:

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially

ADJCAM000019

5,855,343

7

planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

2. Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, the support frame being in the first disposition on the generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, substantially planar surface, and the support frame being in the second disposition on the object when said first portion is engaging the first surface and said second portion is engaging the second surface, said first portion and second portion in combination maintaining the camera adjacent the edge.

3. Apparatus according to claim 2 wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

4. Apparatus according to claim 3 wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

5. Apparatus according to claim 2 wherein the support frame is in the first disposition when the first portion and the second portion engage the generally horizontal, substantially planar surface at three or more locations in a common plane, thereby preventing rotation of the support frame relative to the generally horizontal, substantially planar surface in any direction.

6. Apparatus according to claim 2 wherein the support frame is in the second disposition when a first distance from the edge to a location where the first portion engages the first surface is greater than a second distance from the edge to a location where the second portion engages the second surface, thus preventing rotation of the support frame.

7. Apparatus according to claim 1 wherein the object is a display screen for a laptop computer, and the second surface is the front of the display screen and the first surface is the back of the display screen.

8. Apparatus according to claim 1 wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame.

9. Apparatus according to claim 8 wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

10. Apparatus for supporting a camera, having a housing and a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support

8

frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, the support frame having a rear support element and a first and a second front support element, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when said rear support element and said first and second front support elements engaging the second surface, said rear support element and said first and second front support elements in combination preventing rotation of the support frame.

11. Apparatus according to claim 10 wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

12. Apparatus according to claim 11 wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

13. Apparatus according to claim 11 wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

14. Apparatus according to claim 10 wherein the support frame is in the first disposition when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface at three or more locations in a common plane to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

15. Apparatus according to claim 10 wherein the support frame is in the first disposition positioned on the generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

16. Apparatus according to claim 10 wherein support frame is in the second disposition when a first distance from the edge to a location where the rear support element engages the first surface is greater than a second distance from the edge to a location where the first and second front support elements engage the second surface, the first dis-

ADJCAM000020

5,855,343

9

tance being greater than the second distance thus preventing rotation of the support frame.

17. Apparatus according to claim 10 wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

18. Apparatus according to claim 17 wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

19. A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge.

20. Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said

10

support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

21. Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

* * * * *

ADJCAM000021

PATENT APPLICATION SERIAL NO. <u>08/874168</u>

U.S. DEPARTMENT OF COMMERCE
PATENT  AND  TRADEMARK  OFFICE
<u>FEE RECORD SHEET</u>

10/31/97

PTO-1556
(5/87)

ADJCAM000022

## Abstract of the Disclosure

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

5   The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer.

10   When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

27

ADJCAM000023

08/814168

US/01/31

## CAMERA CLIP

### Field of the Invention

This invention relates to a clip for holding a camera.
More particularly it relates to a clip for supporting a
5    portable camera either on a surface or on an edge of a
housing, and for protecting the lens of the camera when the
camera is not being supported.

### Background of the Invention

With portable cameras, it is desirable to have an
10    apparatus which can support the camera in any number of
desired configurations.  The apparatus must easily accommodate
repositioning the camera to new orientations during use, and
must be easily transportable.  This is especially true when
using the camera with a portable computer, such as a laptop
15    computer.  With increasing improvements in technology, both
the laptop computer and camera have become smaller over time,
emphasizing the need for a compatible camera support
apparatus.  The camera support apparatus must be versatile,
light in weight, and be easily transportable to accommodate
20    the new camera and laptop designs, and must desirably
facilitate easy and safe storage of the camera.  Often times
portable computers are stored in carry bags which may be fully
loaded with other hardware devices, such as disk drives or
printers, as well as with personal effects, making for cramped
25    storage conditions.  The camera support apparatus must
desirably protect the camera from damage during transport
under these cramped storage conditions to avoid the necessity

ADJCAM000024

A2850

for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the

2

ADJCAM000025

surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

## Summary of the Invention

5      Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.  The clip provides two axis of rotation to position the camera to any

10     desired viewing angle.  The clip may be rotated to a first position to support the camera on a surface of a table or desk.  The clip may be rotated to a second position to support the camera on a display screen of a laptop computer.  When the camera is not being supported in the first position or the

15     second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object

20     where the apparatus comprises a hinge member and a support frame.  The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member.  A support frame is hingedly attached to the hinge member to engagingly support the hinge

25     member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame.  The

3

ADJCAM000026

A2852

first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object when the hinge member is engagingly supported on the object.   In the

5    preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support

10    element and the first and second front support elements are engaging the first surface when the first surface is substantially level.  In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a

15    plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface.  In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top

20    surface of the table.  The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge

25    when the first surface is inclined from the substantially level position.  The object has a second surface wherein a

4

ADJCAM000027

thickness between the first surface and the second surface
defines an edge therebetween.   The camera is maintained
adjacent to the edge in the second position where the
uppermost portion of the object is the edge.  The rear support

5      element engages a first surface and the first and second
support elements engage the edge and the second surface.   The
rear support element and the first and second front support
elements, in combination, maintain the camera adjacent the
edge and prevent rotation of the support frame along an axis

10     substantially parallel to the second axis where the second
axis is substantially parallel to the edge.   In a preferred
embodiment, the rear support element and the first and second
front support elements support the camera in the second
position on the first surface adjacent the edge when a first

15     distance from the edge to the position where the rear support
element engages the first surface is greater than a second
distance from the edge to the position where the first and
second front support elements engage the second surface.   A
center of gravity of the camera and the hinge member being

20     adjacent and external to the first surface in combination with
the first distance being greater than the second distance
prevents rotation of the support frame along the axis
substantially parallel to the second axis of rotation.  In the
preferred embodiment, when the support frame is in the second

25     position, the object may be a display screen for a laptop
computer, where the second surface is the front of the display

5

ADJCAM000028

screen and the first surface is the back of the display
screen.

In the preferred embodiment, the support frame has means
to releasably hold and protect the camera during storage.  The

5    camera may be rotated about the second axis in a direction
from the first and second front support elements towards the
rear support element of the support frame until the camera is
in a position between and is releasably held by the rear
support element and the first and second front support

10    elements.   In the preferred embodiment, the rear support
element has means to protect a lens of the camera which is a
cover mounted at a distal end of the rear support element.
The lens of the camera faces a direction of rotation about the
second axis from the first and second front support elements

15    to the rear support element of the support frame to allow the
lens of the camera to be fitably received into the cover when
the camera is releasably held between the rear support element
and the first and second front support elements.

In the preferred embodiment, the first and second front

20    support elements are spaced a distance apart at a distance
less than a diameter of a housing of the camera, where the
camera is rotated about the second axis in the direction
towards the rear support element so that the housing passes
between the first and second front support elements.   The

25    first and second front support elements resiliently and
outwardly flex to accommodate passage of the housing.   The

6

ADJCAM000029

housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first

5    indentation  and  a  second  indentation  respectively  to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably

10   attaches the camera to the body so that the camera rotates about the first axis relative to the body.  A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame.  In the preferred embodiment,

15   the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

20              Brief Description of the Drawings

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in

25   connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures

7

ADJCAM000030

thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred

5    embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

10    FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

15    FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

Detailed Description of the Preferred Embodiments

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views,

20    Fig. 1 is a perspective view of the camera clip invention.

Fig. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing

25    backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where

8

ADJCAM000031

camera 12 rotates over a first axis 26 in a direction shown by
arrow 28 relative to hinge member 16.  Support frame 18 is
hingedly attached to hinge member 16 to engagingly support
hinge member 16 on an object 30 (see also, Fig. 2).  Hinge

5    member 16 rotates over a second axis 32 in the direction shown
by arrow 34 relative to support frame 18.  First axis 26 is
perpendicular to second axis 32.   Second axis 32 is
substantially parallel to a first surface 36 when hinge member
16 is engagingly supported on object 30 (see also, Fig. 2).

10   Support frame 18 has a first portion consisting of first
support element 38 and a second portion consisting of a first
front support element 40 and a second front support element
42.   Housing 20 has a first indentation 25 and a second
indentation 27 to slidably and fittably receive distal end 41

15   of first front support element 40 and distal end 43 of second
front support element 42 when first front support element 40
and second front support element 42 are rotated in the
direction of arrow 34 to engage housing backside 24.

Fig. 2 is a side view showing a first mode of a preferred

20   embodiment of the present invention.  Rear support element 38,
first front support element 40 and second front support
element 42 support camera 12 in the first position 44, on the
first surface 36, when rear support element 38, first front
support element 40 and second front support element 42 are

25   engaging first surface 36 and first surface 36 is
substantially level.  In the first position 44, camera 12 may

9

be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment,

5    rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a

10   plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front

15   support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame

20   18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

      Fig. 4 is a side view showing a second mode of the

25   preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support

10

ADJCAM000033

element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56.  Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see

5    also, Fig. 2).  In Fig. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween.  Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56.  Rear support

10   element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60.  Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent

15   rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56.  Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the

20   first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68.  Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60.

25   The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to

11

ADJCAM000034

first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18.   In the preferred embodiment, object 58 may be a display screen for a laptop

5    computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen.   Fig. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78.   A pivot element 80 at proximal end 76

10   of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74.   A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18.   Fig. 4 further shows

15   camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12.   Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12.   While the

20   embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated.   For example, wiring harness could enter body 74 at a location angularly spaced upward from

25   bore 90.

Figs. 5-7 show various perspectives of a third mode of

12

ADJCAM000035

the preferred embodiment of the present invention.  Fig. 5 is
a side view, Fig. 6 is a detailed side view showing the lens
of the camera being fitably received by the cover, and Fig. 7
is a front view.  The third mode of the preferred embodiment

5    of the present invention is shown when camera 12 is rotated
about second axis 32 along the direction shown by arrow 34 in
a direction from the first front support element 40 and the
second front support element 42 towards rear support element
38 of support frame 18.  This rotation is continued in the

10    third mode until camera 12 is in a position between rear
support element 38 and first front support element 40 and
second front support element 42.  In this position, distal end
41 of first support element 40 and distal end 43 of second
front support element 42 slidably and fittably engage first

15    indentation 25 and second indentation 27 respectively of
housing 20 at housing backside 24.  Camera 12 is then
releasably held between rear support element 38 and first
front support element 40 and second front support element 42.
Rear support element 38 further has means to protect a lens 22

20    of camera 12, which is cover 90.  Cover 90 is mounted at a
distal end 92 of rear support element 38.  Lens 22 of camera
12 faces in the direction of arrow 92, which is the direction
of rotation about second axis 32 from first front support
element 40 and second front support element 42 to rear support

25    element 38 of support frame 18.  Cover 90 fitably receives
lens 22 of camera 12.  Cover 90 has a raised portion 95 sized

13

ADJCAM000036

to be accommodated by lens 22 of camera 12.  Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

5        Fig. 3 is a detailed front view of the camera clip invention.  Fig. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94.  Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment.

10    Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support

15    element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20.  Housing 20 is releasably held once passing between first front support element 40 and second front

20    support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside

25    24.  When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently

14

ADJCAM000037

urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

5

15

ADJCAM000038

What is Claimed:

1.    An apparatus for supporting a camera on an object,
      comprising:

      a.    a hinge member rotatably attached to the camera,
            said camera rotating over a first axis of rotation
            relative to said hinge member; and

      b.    a support frame hingedly attached to said hinge
            member to engagingly support said hinge member on
            the object, said hinge member rotating over a
            second axis of rotation relative to said support
            frame, said first axis of rotation being
            perpendicular to said second axis of rotation, said
            second axis of rotation being substantially
            parallel to a first surface when said hinge member
            is engagingly supported on the object, said support
            frame supporting said camera in a first position on
            the object when said first surface is substantially
            level, said support frame supporting the camera in
            a second position on the object when said first
            surface is inclined from said substantially level
            position, the object having a second surface
            wherein a thickness between the first surface and
            said second surface defines an edge therebetween,
            the camera being maintained adjacent said edge in
            said second position when the uppermost portion of
            the object is the edge, rotation of said support

16

ADJCAM000039

frame being prevented along an axis substantially
parallel to said second axis, said second axis
being substantially parallel to said edge.

2.    An apparatus according to claim 1 wherein the support
frame comprises a first portion and a second portion,
said first portion and said second portion supporting the
camera in the first position on the first surface when
said first portion and said second portion are engaging
the first surface when the first surface is substantially
level, said first portion and said second portion
supporting the camera in the second position on the first
surface adjacent the edge when said first portion is
engaging the first surface and said second portion is
engaging the edge and the second surface, said first
portion and said second portion in combination
maintaining the camera adjacent the edge and preventing
rotation of the support frame along the axis
substantially parallel to the second axis.

3.    An apparatus according to claim 2 wherein the support
frame has means to releasably hold and protect the camera
during storage.

4.    An apparatus according to claim 3 wherein the means to
releasably hold and protect the camera comprises the

17

ADJCAM000040

camera being rotated around the second axis in a
direction from the second portion towards the first
portion of the support frame until the camera is in a
position between the first portion and the second portion
and is releasably held between the first portion and the
second portion, the first portion having means to protect
a lens of the camera.

5.  An apparatus according to claim 4 wherein the means to
protect the lens of the camera is a cover mounted at the
distal end of the first portion, the lens of the camera
facing in the direction of rotation about the second axis
from the second portion to the first portion of the
support frame to allow the lens of the camera to be
fitably received into said cover when the camera is
releasably held between the first portion and the second
portion.

6.  An apparatus according to claim 2 wherein the first
portion and the second portion support the camera in the
first position on the first surface when the first
portion and the second portion engage the first surface
at three or more locations in a plane of the first
surface to prevent rotation of the support frame relative
to the first surface in any direction within said plane
of the first surface.

18

ADJCAM000041

7.   An apparatus according to claim 2 wherein the first portion and the second portion support the camera in the first position on the first surface when the first portion and the second portion engage the first surface to prevent rotation of the support frame relative to the first surface in any direction within a plane of the first surface.

8.   An apparatus according to claim 2 wherein the first portion and the second portion support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the first portion engages the first surface is greater than a second distance from the edge to the position where the second portion engages the second surface, a center of gravity of the camera and said hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance preventing rotation of the support frame along an axis substantially parallel to the second axis of rotation.

9.   An apparatus according to claim 1 wherein the object is a top of a table when the support frame is in the first position, the first surface being a top surface of the table.

19

ADJCAM000042

A2868

10.  An apparatus according to claim 1 wherein the object is
     a desk top when the support frame is in the first
     position, the first surface being a top surface of the
     desk.

11.  An apparatus according to claim 1 wherein the object is
     a display screen for a laptop computer when the support
     frame is in the second position, the second surface being
     the front of the display screen and the first surface
     being the back of the display screen.

12.  An apparatus according to claim 1 wherein the hinge
     member is comprised of a body having a proximal and a
     distal end, a pivot element at said proximal end of said
     body rotatably attaching the camera to the body so that
     the camera rotates about the first axis relative to the
     body, a hinge element at said distal end of said body
     hingedly attaching said body to the support frame so that
     said body rotates about the second axis relative to the
     support frame.

13.  An apparatus according to claim 12 wherein the camera has
     an electrical wiring harness to couple from an interior
     to an exterior, the pivot element having a bore parallel
     to the first axis of rotation to receive said electrical
     wiring harness to pass said wiring harness from said

                              20

ADJCAM000043

interior to said exterior of the camera.

14. An apparatus for supporting a camera on an object,
    comprising:

    a.   a hinge member rotatably attached to the camera,
         said camera rotating over a first axis of rotation
         relative to said hinge member; and

    b.   a support frame hingedly attached to said hinge
         member to engagingly support said hinge member on
         the object, said hinge member rotating over a
         second axis of rotation relative to said support
         frame, said first axis of rotation being
         perpendicular to said second axis of rotation, said
         second axis of rotation being substantially
         parallel to a first surface when said hinge member
         is engagingly supported on the object, the support
         frame having a rear support element and a first and
         second front support element, said rear support
         element and said first and said second front
         support elements supporting the camera in the first
         position on said first surface when said rear
         support element and said first and second front
         support elements are engaging said first surface
         when said first surface is substantially level,
         said rear support element and said first and said
         second front support elements supporting the camera

                        21

ADJCAM000044

in a second position on said first surface adjacent an edge when said first surface is inclined from said substantially level position, the object having a second surface wherein a thickness between said first surface and said second surface defines said edge therebetween, the camera being maintained adjacent said edge in said second position when the uppermost portion of the object is the edge, said rear support element engaging said first surface and said first and second front support elements engaging the edge and the second surface, said rear support element and said first and second front support elements in combination maintaining the camera adjacent the edge and preventing rotation of the support frame along an axis substantially parallel to the second axis, said second axis being substantially parallel to said edge.

15. An apparatus according to claim 14 wherein the support frame has means to releasably hold and protect the camera during storage.

16. An apparatus according to claim 15 wherein the means to releasably hold and protect the camera comprises the camera being rotated around the second axis in a direction from the first and second front support

22

ADJCAM000045

elements towards the rear support element of the support frame until the camera is in a position between the rear support element and the first and second front support elements and is releasably held between the rear support element and the first and second front support elements, the rear support element having means to protect a lens of the camera.

17. An apparatus according to claim 16 wherein the first and second front support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, the camera being rotated around the second axis in the direction towards the rear support element so that said housing passes between the first and second front support elements, the first and second front support elements resiliently and outwardly flexing to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens, the first and second front support elements engaging said housing backside to resiliently urge said housing towards the rear support element.

18. An apparatus according to claim 16 wherein the means to protect the lens of the camera is a cover mounted at the

23

ADJCAM000046

distal end of the rear support element, the lens of the
camera facing in the direction of rotation about the
second axis from the first and second front support
elements to the rear support element of the support frame
to allow the lens of the camera to be fitably received
into said cover when the camera is releasably held
between the rear support element and the first and second
front support elements.

19. An apparatus according to claim 14 wherein the rear
support element and the first and second front support
elements support the camera in the first position on the
first surface when the rear support element and the first
and second front support elements engage the first
surface at three or more locations in a plane of the
first surface to prevent rotation of the support frame
relative to the first surface in any direction within
said plane of the first surface.

20. An apparatus according to claim 14 wherein the rear
support element and the first and second front support
elements support the camera in the first position on the
first surface when the rear support element and the first
and second front support elements engage the first
surface to prevent rotation of the support frame relative
to the first surface in any direction within a plane of

24

ADJCAM000047

the first surface.

21. An apparatus according to claim 14 wherein the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface, a center of gravity of the camera and said hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance preventing rotation of the support frame along an axis substantially parallel to the second axis of rotation.

22. An apparatus according to claim 14 wherein the object is a top of a table when the support frame is in the first position, the first surface being a top surface of the table.

23. An apparatus according to claim 14 wherein the object is a desk top when the support frame is in the first position, the first surface being a top surface of the desk.

25

ADJCAM000048

24.  An apparatus according to claim 14 wherein the object is a display screen for a laptop computer when the support frame is in the second position, the second surface being the front of the display screen and the first surface being the back of the display screen.

25.  An apparatus according to claim 14 wherein the hinge member is comprised of a body having a proximal and a distal end, a pivot element at said proximal end of said body rotatably attaching the camera to the body so that the camera rotates about the first axis relative to the body, a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

26.  An apparatus according to claim 25 wherein the camera has an electrical wiring harness to couple from an interior to an exterior, the pivot element having a bore parallel to the first axis of rotation to receive said electrical wiring harness to pass said wiring harness from said interior to said exterior of the camera.

26

ADJCAM000049

**COMBINED DECLARATION/POWER OF ATTORNEY FOR PATENT APPLICATION**

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled _CAMERA CLIP_, the specification of which (check one)

<div align="center">

XX is attached hereto

</div>

___ was filed on _____
as U.S. Application
Serial No. _____

___ and was amended on (if
applicable) _____

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefit(s) under Title 35, United States Code §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application(s) for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)

| | | | Priority Claimed | |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which

ADJCAM000050

occurred between the filing date of the prior application and the
national or PCT international filing date of this application:

| (Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |
| --- | --- | --- |

| (Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |
| --- | --- | --- |

**POWER OF ATTORNEY:**  As a named inventor, I hereby appoint the
following attorney(s) and/or agent(s) to prosecute this application
and transact all business in the Patent and Trademark Office
connected therewith.

> John L. Rooney, Reg. No. 28,898;
> Lawrence M. Nawrocki, Reg. No. 29,333;
> Wayne A. Sivertson, Reg. No. 25,645;
> David M. Crompton, Reg. No. 36,772;
> Glenn M. Seager, Reg. No. 36,926;
> Steven E. Dicke, Reg. No. 38,431;
> Brian N. Tufte, Reg. No. 38,638;
> Craig F. Taylor, Reg. No. 40,199;
> Donald A. Jacobson, Reg. No. 22,308; and
> Lew Schwartz, Reg. No. 22,067

Send correspondence to:

> Lawrence M. Nawrocki
> NAWROCKI, ROONEY & SIVERTSON, P.A.
> Suite 401, Broadway Place East
> 3433 Broadway Street Northeast
> Minneapolis, Minnesota 55413
> (612) 331-1464

I hereby declare that all statements made herein of my own
knowledge are true and that all statements made on information and
belief are believed to be true; and further that these statements
were made with the knowledge that willful false statements and the
like so made are punishable by fine or imprisonment, or both, under
Section 1001 of Title 18 of the United States Code and that such
willful false statements may jeopardize the validity of the
application or any patent issued thereon, I further declare that I
understand the content of this declaration.

Full name of sole or first inventor __David E. Krekelberg__
Inventor's Signature _____ Date _____
Residence __15604 Dawn Drive, Minnetonka, Minnesota 55345__
_____ Citizenship _U.S.A._
Post Office Address ___15604 Dawn Drive___
_____ Minnetonka, Minnesota  55345_____

ADJCAM000051

-3-

**1.56 Duty to disclose information material to patentability.**

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability.  Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.  Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application.  There is no duty to submit information which is not material to the patentability of any existing claim.  The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§1.97(b)-(d) and 1.98.  However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.  The Office encourages applicants to carefully examine:

(1) prior art cited in search reports of a foreign patent office in a counterpart application, and

(2) the closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or
(ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application:

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

ADJCAM000052

67137 U.S. PTO



03/07/97

Applicant or Patentee: David E. Krekelberg_____ Attorney's Docket No.:  19139/103/101_____

Serial or Patent No.: N/A_____

Filed or Issued: Herewith_____

For:  CAMERA CLIP_____

## VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) AND 1.27(c)) -- SMALL BUSINESS CONCERN

I hereby declare that I am
      [ ]    the owner of the small business concern identified below:
      [X]   an official of the small business concern empowered to act
           on behalf of the concern identified below:

NAME OF CONCERN  iREZ Research, Corporation_____

ADDRESS OF CONCERN  15604 Dawn Drive, Minnetonka, Minnesota 55345_____

I hereby declare that the above-identified small business concern qualifies as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention, entitled  CAMERA CLIP  by inventor(s) David E. Krekelberg described in

      [X]   the specification filed herewith
      [ ]   application serial no._____, filed_____
      [ ]   patent no._____, issued_____

If the rights held by the above-identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(b) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

*NOTE:        Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME_____
ADDRESS_____
[ ] INDIVIDUAL      [ ] SMALL BUSINESS CONCERN     [ ] NONPROFIT ORGANIZATION

NAME_____
ADDRESS_____
[ ] INDIVIDUAL      [ ] SMALL BUSINESS CONCERN     [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue

ADJCAM000053

fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisionment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING David E. Krekelberg

TITLE OF PERSON OTHER THAN OWNER  CEO and CTO

ADDRESS OF PERSON SIGNING 15604 Dawn Drive, Minnetonka, Minnesota 55345

SIGNATURE_____DATE_____

ADJCAM000054



ADJCAM000055



TOTAL P.03

ADJCAM000056

08/814168

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

67137 U.S. PTO

03/07/97

Serial No.:  N/A

Filing Date:  Herewith

For:  CAMERA CLIP

Docket No.:  19239/103/101

## TRANSMITTAL SHEET

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.10:**  The undersigned hereby certifies that this paper or papers, as described herein, are being deposited in the United States Postal Service, "Express Mail Post Office to Addressee" having an Express Mail mailing label number of :  EM 609 179 413 US, in an envelope address to:  Assistant Commissioner for Patents, Washington, D.C., 20231 on this ___7th___ day of ___March___, 1997
>
> By_____
>           Carolyn I. Erickson

We are transmitting herewith the attached Patent Application including the following:

[XXXX]    ___15___ sheet(s) of specification.

[XXXX]    ___11___ sheet(s) of claim(s).

[XXXX]    ___1___ sheet(s) of Abstract.

[XXXX]    ___2___ sheet(s) of drawings.

[XXXX]    Unexecuted Declaration and Power of Attorney.

[XXXX]    An unexecuted verified statement(s) to establish small entity status under 37 C.F.R. 1.9 and/or 1.27 is enclosed.

[   ]    An Assignment of the invention to iREZ Research, Corporation is being filed contemporaneous with this patent application.

[   ]    A certified copy of a _____ application, serial no. _____, filed _____, 19___, the right of priority of which is claimed under 35 U.S.C. 119.

1

ADJCAM000057

| CLAIMS AS FILED | | | | | | |
|---|---|---|---|---|---|---|
| | **(1)** | **(2)** | **SMALL ENTITY** | | **OTHER** | |
| FOR: | # FILED | # EXTRA | Rate | Fee | Rate | Fee |
| BASIC FEE | | | | $385 | | $770 |
| TOTAL CLAIMS | 26-20 = | 6 | x11= | $ 66 | x22= | $ |
| INDEPENDENT CLAIMS | 2 -3 = | 0 | x40= | $ 0 | x80= | $ |
| (  ) MULTIPLE DEPENDENT CLAIM PRESENTED | | | +130= | $ 0 | +260= | $ |
| TOTAL | | | $451.00 | | $ | |

\*If the difference in Column (1) is less than zero, enter "0" in Column 2.

[    ]    Other _____
_____
_____.

[    ]    Checks in the amounts of $_____ and $_____ are enclosed.

[    ]    Please charge any deficiencies or credit any overpayment in the enclosed fees to Deposit Account 14-0620.

By: _Lawrence M. Nawrocki_____
        Lawrence M. Nawrocki
        Reg. No.  _29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
    Telephone:  (612) 331-1464
    Facsimile:  (612) 331-2239

2

ADJCAM000058



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO./TITLE |
|---|---|---|---|
| 08/781,168 | | | |

HAUGBOOKI ROONEY SILVERTON
BROADWAY PLACE EAST
3930 BROADWAY STREET NE
MINNEAPOLIS MN 55413

DATE MAILED:

### NOTICE TO FILE MISSING PARTS OF APPLICATION
#### *Filing Date Granted*

An Application Number and Filing Date have been assigned to this application. However, the items indicated below are missing. The required items and fees identified below must be timely submitted ALONG WITH THE PAYMENT OF A SURCHARGE for items 1 and 3-6 only of $ _____ for a ☑ large entity ☐ small entity in compliance with 37 CFR 1.27. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE within which to file all required items and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*If all required items on this form are filed within the period set above, the total amount owed by applicant as a* ☑ *large entity* ☐ *small entity (verified statement filed), is $ _____ .*

☒ 1. The statutory basic filing fee is:
   ☒ missing.
   ☐ insufficient.
   *Applicant must submit $ _____ to complete the basic filing fee and/or file a verified small entity statement claiming such status (37 CFR 1.27).*

☒ 2. Additional claim fees of $ _____ , including any multiple dependent claim fees, are required.
   *Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.*

☐ 3. The oath or declaration:
   ☐ is missing.
   ☐ does not cover the newly submitted items.
   ☐ does not identify the application to which it applies.
   ☐ does not include the city and state or foreign country of applicant's residence.
   *An oath or declaration in compliance with 37 CFR 1.63, including residence information and identifying the application by the above Application Number and Filing Date is required.*

☒ 4. The signature(s) to the oath or declaration is/are:
   ☒ missing.
   ☐ by a person other than inventor or person qualified under 37 CFR 1.42, 1.43, or 1.47.
   *A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.*

☐ 5. The signature of the following joint inventor(s) is missing from the oath or declaration:

   _____
   *An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Filing Date, is required.*

☐ 6. A $ _____ processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 7. Your filing receipt was mailed in error because your check was returned without payment.

☐ 8. The application does not comply with the Sequence Rules.
   *See attached "Notice to Comply with Sequence Rules 37 CFR 1.821-1.825."*

☐ 9. OTHER:

Direct the response and any questions about this notice to "Attention: Box Missing Parts."

### *A copy of this notice MUST be returned with the response.*

Customer Service Center
Initial Patent Examination Division (703) 308-1202

FORM PTO-1533 (REV.7-96)        **PART 3 - OFFICE COPY**        *U.S. GPO: 1996-404-496/40515

ADJCAM000059



P A T E N T

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:   08/814,168

Filed:   March 7, 1997

For:  CAMERA CLIP

Docket No.:   19239/103/101

---

### COMMUNICATION

Assistant Commissioner
  for Patents
Washington, D.C.   20231

CERTIFICATE UNDER 37 C.F.R. 1.8
I hereby certify that this correspondence is being
deposited with the United States Postal Service on
the date shown below with sufficient postage as
first class mail in an enveloped addressed to the
Assistant Commissioner for Patents, Washington,
D.C. 20231 on this _____ day of _August_, 1997

By:_____
       Carolyn I. Erickson

Sir:

Applicant filed the application covered by the caption

indicated above on March 7, 1997.  The signature of the inventor

was, however, missing on the DECLARATION.   In response to the

filing, the United States Patent and Trademark Office issued a

NOTICE TO FILE MISSING PARTS OF APPLICATION - FILING DATE GRANTED

document (FORM PTO-1533).  That paper documented the fact that the

filing date was granted for the application.  Further, however, it

documented a requirement that a properly signed Declaration in

compliance with 37 CFR §1.63, identifying the application by

1

ADJCAM000060

Application Number and Filing Date, be submitted.  That paper also required that a surcharge in the amount of $130, for a large entity, or $65, for a small entity, be submitted.  It documented a requirement that the statutory basic filing fee be paid, and that large entity filing fees in the amount of $770 be submitted.  Also, it documented that additional claim fees in the amount of $132.00 for a large entity, including any required multiple dependent claim fees be submitted.

In view of the filing of small entity affidavit contemporaneous with this document, and the other documents filed with this package, the surcharge is in the amount of $65.00, the filing fees are in the amount of $385.00, and the additional claim fees are in the amount of $66.00, for a total amount of $516.00.

The period for response was set to expire two months from the date of that paper.  The unextended deadline for responding is, therefore, August 25, 1997.

Please find enclosed the "RESPONSE" copy of the NOTICE TO FILE MISSING PARTS OF APPLICATION - FILING DATE GRANTED document, a Declaration signed by the named inventor, one (1) VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS, and a check in the amount of $516.00 (the amount of the surcharge for a small entity, the small entity filing fees, and additional claim fees for a small business entity).

In view of the action taken herein, Applicant would submit that the requirements imposed by the NOTICE TO FILE MISSING PARTS OF APPLICATION - FILING DATE GRANTED paper have been complied with.

2

ADJCAM000061

It is, therefore, requested that the application be passed for issuance of the formal FILING RECEIPT document.

Respectfully submitted,

David E. Krekelberg

By his attorney,

Dated: _August 25, 1997_

_Lawrence M. Nawrocki_
Lawrence M. Nawrocki, Reg. No. 29,333
NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street Northeast
Minneapolis, MN 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

3

ADJCAM000062

**COMBINED DECLARATION/POWER OF ATTORNEY FOR PATENT APPLICATION**

a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled _CAMERA CLIP_, the specification of which (check one)

    \_\_ is attached hereto

    XX was filed on <u>March 7, 1997</u>
            as U.S. Application
            Serial No. <u>08/814,168</u>

    \_\_ and was amended on (if
            applicable) _____

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefit(s) under Title 35, United States Code §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application(s) for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

| Prior Foreign Application(s) | | | Priority Claimed | |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |
| (Number) | (Country) | (Day/Month/Year Filed) | YES | NO |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which

ADJCAM000063

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 56 of 124 PageID #:  4427

occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Serial No.) | (Filing Date) | (Status) (patented, pending, abandoned) |

| (Serial No.) | (Filing Date) | (Status-patented, pending, abandoned) |

**POWER OF ATTORNEY:**   As  a  named  inventor,  I  hereby  appoint  the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith.

> John L. Rooney, Reg. No. 28,898;
> Lawrence M. Nawrocki, Reg. No. 29,333;
> Wayne A. Sivertson, Reg. No. 25,645;
> David M. Crompton, Reg. No. 36,772;
> Glenn M. Seager, Reg. No. 36,926;
> Steven E. Dicke, Reg. No. 38,431;
> Brian N. Tufte, Reg. No. 38,638;
> Craig F. Taylor, Reg. No. 40,199;
> Donald A. Jacobson, Reg. No. 22,308; and
> Lew Schwartz, Reg. No. 22,067

Send correspondence to:

> Lawrence M. Nawrocki
> NAWROCKI, ROONEY & SIVERTSON, P.A.
> Suite 401, Broadway Place East
> 3433 Broadway Street Northeast
> Minneapolis, Minnesota 55413
> (612) 331-1464

I  hereby  declare  that  all  statements  made  herein  of  my  own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful  false  statements  may  jeopardize  the  validity  of  the application or any patent issued thereon, I further declare that I understand the content of this declaration.

Full name of sole or first inventor    David E. Krekelberg
Inventor's Signature _____ Date  8-19?
Residence  15604 Dawn Drive, Minnetonka, Minnesota 55345
                                                   Citizenship  U.S.A.
Post Office Address   15604 Dawn Drive
                             Minnetonka, Minnesota   55345

ADJCAM000064

-3-

**1.56 Duty to disclose information material to patentability.**

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

(1) prior art cited in search reports of a foreign patent office in a counterpart application, and

(2) the closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or
(ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application:

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

ADJCAM000065

Applicant or Patentee: David E. Krekelberg_____    Attorney's Docket No.:_19139/103/101_____

Serial or Patent No.: 08/814,168_____

Filed or Issued: March 7, 1997_____

For: CAMERA CLIP_____

## VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) AND 1.27(c)) -- SMALL BUSINESS CONCERN

I hereby declare that I am

    [ ]    the owner of the small business concern identified below:

    [X]    an official of the small business concern empowered to act on behalf of the concern identified below:

NAME OF CONCERN iREZ Research, Corporation_____

ADDRESS OF CONCERN 15604 Dawn Drive, Minnetonka, Minnesota 55345_____

I hereby declare that the above-identified small business concern qualifies as a small business concern as defined in 13 CFR 1.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention, entitled_ CAMERA CLIP_ by inventor(s)_ David E. Krekelberg described in

    [X]    the specification filed herewith

    [ ]    application serial no._____, filed_____

    [ ]    patent no._____, issued_____

If the rights held by the above-identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

*NOTE:    Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME_____

ADDRESS_____

[ ] INDIVIDUAL     [ ] SMALL BUSINESS CONCERN     [ ] NONPROFIT ORGANIZATION

NAME_____

ADDRESS_____

[ ] INDIVIDUAL     [ ] SMALL BUSINESS CONCERN     [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue

ADJCAM000066

fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate.
(37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements
made on information and belief are believed to be true; and further that these statements were made with
the knowledge that willful false statements and the like so made are punishable by fine or imprisionment,
or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements
may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this
verified statement is directed.

NAME OF PERSON SIGNING Michael D. Harris

TITLE OF PERSON OTHER THAN OWNER  President

ADDRESS OF PERSON SIGNING 15604 Dawn Drive, Minnetonka, Minnesota 55345

SIGNATURE_____DATE_____8-13-97_____

ADJCAM000067





**UNITED STA1__ DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO./TITLE |
|---|---|---|---|
| 08/814,168 | 03/07/97 | | |

MAWROCKI ROONEY SIVERTSON
BROADWAY PLACE EAST
3433 BROADWAY STREET N E
MINNEAPOLIS MN 55413

**DATE MAILED:**

## NOTICE TO FILE MISSING PARTS OF APPLICATION
### *Filing Date Granted*

An Application Number and Filing Date have been assigned to this application. However, the items indicated below are missing. The required items and fees identified below must be timely submitted ALONG WITH THE PAYMENT OF A SURCHARGE for items 1 and 3-6 only of $ _130.00_ for a ☒ large entity ☐ small entity in compliance with 37 CFR 1.27. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE within which to file all required items and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

*If all required items on this form are filed within the period set above, the total amount owed by applicant as a*
☒ *large entity* ☐ *small entity (verified statement filed), is $* _____.

☒ 1. The statutory basic filing fee is:
   ☒ missing.
   ☐ insufficient.
   Applicant must submit $ _770.00_ to complete the basic filing fee and/or file a verified small entity
   statement claiming such status (37 CFR 1.27).

☒ 2. Additional claim fees of $ _132.00_ , including any multiple dependent claim fees, are required.
   Applicant must either submit the additional claim fees or cancel additional claims for which fees are due.

☐ 3. The oath or declaration:
   ☐ is missing.
   ☐ does not cover the newly submitted items.
   ☐ does not identify the application to which it applies.
   ☐ does not include the city and state or foreign country of applicant's residence.
   An oath or declaration in compliance with 37 CFR 1.63, including residence information and identifying the application by
   the above Application Number and Filing Date is required.

☒ 4. The signature(s) to the oath or declaration is/are:
   ☒ missing.
   ☐ by a person other than inventor or person qualified under 37 CFR 1.42, 1.43, or 1.47.
   A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above
   Application Number and Filing Date, is required.

☐ 5. The signature of the following joint inventor(s) is missing from the oath or declaration:
_____
_____
   An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by
   the above Application Number and Filing Date, is required.

☐ 6. A $ _____ processing fee is required since your check was returned without payment (37 CFR 1.21(m)).

☐ 7. Your filing receipt was mailed in error because your check was returned without payment.

☐ 8. The application does not comply with the Sequence Rules.
   See attached "Notice to Comply with Sequence Rules 37 CFR 1.821-1.825."

☐ 9. OTHER:

Direct the response and any questions about this notice to "Attention: Box Missing Parts."

### *A copy of this notice MUST be returned with the response.*

_M. R. Green_
Customer Service Center
Initial Patent Examination Division (703) 308-1202

FORM PTO-1533 (REV.7-96)       PART 2 - COPY TO BE RETURNED WITH RESPONSE

*Sector #*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

re Application of:

David E. Krekelberg

Serial No.:  08/814,168

Filing Date:  March 7, 1997

For:  CAMERA CLIP

Docket No.:  19239/103/101

## *TRANSMITTAL SHEET*

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence and the documents described herein are being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the:  Assistant Commissioner for Patents, Washington, D.C. 20231, on this ___ day of _August_, 19_97_
>
> By_____
>        Carolyn J. Erickson

We are transmitting herewith the attached:

[  ]     Amendment

    [  ] No additional fee required
    [  ] The fee has been calculated as shown:

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
| | (3) | (4) | (5) | SMALL ENTITY | | OTHER | |
| | REMAINING CLAIMS | HIGHEST PAID | EXTRA | RATE | ADD'L FEE | RATE | ADD'L FEE |
| TOTAL CLAIMS | – | = | | x11= | $ | x22= | $ |
| INDEPEN-DENT CLAIMS | – | = | | x40= | $ | X80= | $ |
| (  ) FIRST MULTIPLE DEPENDENT CLAIM | | | | +130= | $ | +260= | $ |
| TOTAL | | | | | $ | | $ |

1

ADJCAM000069

[XXXX]     Checks in the amounts of $516.00 and $40.00 are
enclosed.

[   ]       Small entity status of this application under 37 C.F.R.
1.9 and 1.27 has been established by verified statement
previously submitted.

[XXXX]     Other:  Response Copy of Notice to File Missing Parts
of Application-Filing Date Granted; Communication;
Combined Declaration/Power of Attorney for Patent
Application; Verified Statement (Declaration) Claiming
Small Entity Status; Recordation Form Cover Sheet-
Patents Only; Assignment.

[XXXX]     Please charge any deficiencies or credit any over
payment in the enclosed fees to Deposit Account 14-
0620.

By: _Lawrence M. Nawrocki_____
Lawrence M. Nawrocki
Reg. No. __29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

ADJCAM000070

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 63 of 124 PageID #: 4434



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/814,168 | 03/07/97 | KREKELBERG | D | 19239/103/10 |

```
                                    PM31/0206
LAWRENCE M NAWROCKI
NAWROCKI ROONEY & SIVERTSON
BROADWAY PLACE EAST SUITE 401
3433 BROADWAY STREET NORTHEAST
MINNEAPOLIS MN 55413
```

| EXAMINER |
|---|
| PHAN, L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3632 | |

**DATE MAILED:**   02/06/98

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)
*U.S. GPO: 1996-404-496/40510

1- File Copy

ADJCAM000071

| | Application No. 08/814,168 | Applicant(s) David E. Krekelberg |
|---|---|---|
| **Office Action Summary** | Examiner Long Dinh Phan | Group Art Unit 3632 |

☒ Responsive to communication(s) filed on _Mar 7, 1997_                                                    .

☐ This action is **FINAL.**

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____3_____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-26_                                                    is/are pending in the application.

   Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1-26_                                                    is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All ☐ Some* ☐None   of the CERTIFIED copies of the priority documents have been

   ☐ received.

   ☐ received in Application No. (Series Code/Serial Number) _____ .

   ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

ADJCAM000072

Serial Number: 08/814,168                                                      Page 2

Art Unit: 3632

## DETAILED ACTION

This is the first Office Action for serial number 08/814,168, Camera Clip, filed on March

07, 1997.  This application contains 1-26 claims.

### Claim Objections

Claims 2-13 and 15-26 are objected to because of the following informalities: on line 1 of

claims 2-13 and 15-26, before "apparatus", "An" should be replaced with --The--.  Appropriate

correction is required.

### Claim Rejections - 35 USC § 112

Claim 1-26 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for

failing to particularly point out and distinctly claim the subject matter which applicant regards as

the invention.

The preamble of claim 1 is drawn to a subcombination of an apparatus comprising a hinge

member and a support frame per se whereas line 3 appears to positively recite "rotatable attached

to the camera" this implying a combination claim.  On lines 12 and 13, "being substantially parallel

to a first surface" is a combination claim.  On lines 20-28, "the object having a second surface ...,

the camera being maintained ..." is also claiming combination.  It is not clear whether applicant

intends to claim a subcombination or combination.

In claim 2, lines 3-6, "said second portion supporting the camera" and "said second

portion are engaging the first surface" are claiming combination.

In claim 3, line 2, "to releasably hold and protect the camera" is a combination claim.

ADJCAM000073

Serial Number: 08/814,168                                                              Page 3

Art Unit: 3632

On lines 2, 3, 5, 8, and 9 of claim 4, " comprises the camera" and " to protect a lens of the camera" are claiming combination.

On lines 2, 3, 6, and 7 of claim 5, "to protect the lens of the camera" and "the camera" are a combination claim.

In claims 6 and 7, lines 2-7, "support the camera" and "engage the first surface" are claiming combination.

On lines 2, 5, 7, and 8 of claim 8, "support camera", "engage the first and the second surfaces", and "a center gravity of the camera" are not a sucombination claim.

On lines 1 and 3 of claims 9 and 10, "the object" and "the first surface" are not claiming subcombination.

In claim 11, lines 1, 3, and 4, "the object", "the second surface", and "the first surface" are a combination claim.

In claim 12, line 4, "rotatably attaching the camera" is claiming combination.

On lines 1 and 6 of claim 13, "the camera" is a combination claim.

Claims 14-26 are having the same 112 problems of combination and subcombination as indicated in the above claims 1-14.

Applicant is advised to make all the necessary corrections for all the above claims 1-26.

### *Allowable Subject Matter*

Claims 1-26 would be allowable if rewritten or amended to overcome the rejection(s) under 35 U.S.C. 112 set forth in this Office action.

ADJCAM000074

Serial Number: 08/814,168                                                     Page 4

Art Unit: 3632

### Conclusion

The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.  U.S. Patent 1,208,344 to McAll discloses a camera holding device.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Long Dinh Phan whose telephone number is (703) 308-3409.  The examiner

can normally be reached on Tuesday through Friday from 8:00 A.M. to 6:00 P.M. E.S.T.

Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 308-2168.  The fax

number for this Group is (703) 305-3597 or 3598.

Long Dinh Phan   ᴸᴰ ᶠ

January 30, 1998

RAMON O. RAMIREZ
PRIMARY EXAMINER
ART UNIT 355

FORM PTO 948 (REV. 01-97)    U.S. DEPARTMENT OF COMMERCE-Patent and Trademark Office    Application No. _81U168_

## NOTICE OF DRAFTPERSON'S
## PATENT DRAWING REVIEW

The drawing filied (insert date) _3/7/07_ are:

A. _____ not objected to by the Draftperson under 37 CFR 1.84 or 1.152.

B. ___X___ objected to by the Draftperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   _____ Color drawing are not acceptable until petition is granted.
   Fig.(s)_____
   _____ Pencil and non black ink is not permitted. Fig(s)_____

2. PHOTOGRAPHS. 37 CFR 1.84(b)
   _____ Photographs are not acceptable until petition is granted.
   _____ 3 full-tone sets are required. Fig(s)_____
   _____ Photographs not properly mounted (must brystol board or photographic double-weight paper). Fig(s)_____
   _____ Poor quality (half-tone). Fig(s)_____

3. TYPE OF PAPER. 37 CFR 1.84(e)
   _____ Paper not flexible, strong, white and durable.
   Fig.(s)_____
   _____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not acceptable. (too thin)
   _____ Mylar, vellum paper is not acceptable (too thin).
   Fig(s)_____

4. SIZE OF PAPER. 37 CFR 1.84(F): Acceptable sizes:
   _____ 21.0 cm by 29.7 cm (DIN size A4)
   _____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   _____ All drawings sheets not the same size.
   Sheet(s)_____

5. MARGINS. 37 CFR 18.4(g): Acceptable margins:
   _____ Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   _____ Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   Margins not acceptable. Fig(s) _1 - 3_
   __X__ Top (T) __X__ Left (L)
   _____ Right (R) _____ Bottom (B)

6. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   _____ Views connected by projection lines or lead lines.
   Fig.(s)_____
   Partial views. 37 CFR 1.84(h)(2)
   _____ Brackets needed to show figure as one entity.
   Fig.(s)_____
   _____ Views not labeled separately or properly.
   Fig.(s)_____
   _____ Enlarged view not labeled separately or properly.
   Fig.(s)_____

7. SECTIONAL VIEWS. 37 CFR 1.84(h)(3)
   _____ Hatching not indicated for sectional portions of an object.
   Fig.(s)_____
   _____ Sectional designation should be noted with Arabic or Roman numbers. Fig.(s)_____

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   _____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned, so that the top becomes the right side, except for graphs. Fig.(s)_____
   _____ Views not on the same plane on drawing sheet. Fig.(s)_____

9. SCALE. 37 CFR 1.84(k)
   _____ Scale not large enough to show mechansim with crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig.(s)_____

10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
    __X__ Lines, numbers & letters not uniformly thick and well defined, clean, durable and black (poor line quality).
    Fig.(s) _1 - 6_

11. SHADING. 37 CFR 1.84(m)
    _____ Solid black areas pale. Fig.(s)_____
    _____ Solid black shading not permitted. Fig.(s)_____
    _____ Shade lines, pale, rough and blurred. Fig.(s)_____

12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
    37 CFR 1.48(p)
    _____ Numbers and reference characters not plain and legible.
    Fig.(s)_____
    _____ Figure legends are poor. Fig.(s)_____
    _____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(3) Fig.(s)_____
    _____ Englìgh alphabet not used. 37 CFR 1.84(p)(3) Fig.(s)_____
    __X__ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3) Fig.(s) _1 - 6_

13. LEAD LINES. 37 CFR 1.84(q)
    _____ Lead lines cross each other. Fig.(s)_____
    _____ Lead lines missing. Fig.(s)_____

14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.48(t)
    _____ Sheets not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig.(s)_____

15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
    _____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig.(s)_____

16. CORRECTIONS. 37 CFR 1.84(w)
    _____ Corrections not made from PTO-948 dated _____

17. DESIGN DRAWINGS. 37 CFR 1.152
    _____ Surface shading shown not appropriate. Fig.(s)_____
    _____ Solid black shading not used for color contrast.
    Fig.(s)_____

COMMENTS

REVIEWER _Q. Dan_ DATE _10/18/07_ TELEPHONE NO. _7033058400_

ATTACHMENT TO PAPER NO. _4_

ADJCAM000076

| | | |
|---|---|---|
| **Notice of References Cited** | Application No.<br>08/814,168 | Applicant(s)<br>David E. Krekelberg |
| | Examiner<br>Long Dinh Phan | Group Art Unit<br>3632 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 1,208,344 | 12/1916 | McAll | 248 | 126 |
| B | | | | | |
| C | | | | | |
| D | | | | | |
| E | | | | | |
| F | | | | | |
| G | | | | | |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

### NON-PATENT DOCUMENTS

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

U S Patent and Trademark Office
PTO-892 (Rev. 9-95)          Notice of References Cited          Part of Paper No.  4

ADJCAM000077

A2903



#5 *Reg ...*

P A T E N T

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:  08/814,168                    Examiner:  Phan, L.

Filed     :  March 7, 1997              Group Art Unit:  3632

For       :  CAMERA CLIP

Docket No.:  19239/103/101

---

Assistant Commissioner
 for Patents
Washington, D.C.   20231

CERTIFICATE UNDER 37 C.F.R. 1.8
I hereby certify that this correspondence is being
deposited with the United States Postal Service on
the date shown below with sufficient postage as
first class mail in an enveloped addressed to the
Assistant Commissioner for Patents, Washington,
D.C. 20231 on this ___ day of ___June___, 1998

By: _____
            Carolyn I. Erickson

Sir:

### PETITION FOR EXTENSION OF TIME

It is requested that the time for filing the enclosed

AMENDMENT, now set to expire on May 7, 1998, be extended for one

month to now expire on June 7, 1998.  A check in the amount of

$55.00 is enclosed.

                    Respectfully submitted,

                    David E. Krekelberg

                    By his attorney

Date   *June 8, 1998*

                    Lawrence M. Nawrocki
                    Reg. No. 29,333
                    NAWROCKI, ROONEY & SIVERTSON, P.A.
                    Suite 401, Broadway Place East
                    3433 Broadway St. N.E.
                    Minneapolis, MN  55413
                    (612) 331-1464

06/17/1998 NNNNNL  00000025 00814168
02 FC:215                    55.00 OP

Req Ext of Time
Approved / ___
Clerk, Group 350

ADJCAM000078

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 71 of 124 PageID #:  4442

*Gp3632*

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:  08/814,168

Filing Date:  March 7, 1997

For:  CAMERA CLIP

Docket No.:  19239/103/101

Examiner:  Phan, L.

Group Art Unit:  3632

## *TRANSMITTAL SHEET*

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence
> and the documents described herein
> are being deposited with the United States Postal Service on the date shown
> below with sufficient postage as first class mail in an envelope addressed to
> the:  Assistant Commissioner for Patents, Washington, D.C. 20231, on this ___
> day of ___ June ___, 19 9 8
>
> By_____
> Carolyn J. Erickson

We are transmitting herewith the attached:

[XXX]      Amendment

[ ] No additional fee required
[XX] The fee has been calculated as shown:

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
| | (3) | (4) | (5) | SMALL ENTITY | | OTHER | |
| | REMAINING CLAIMS | HIGHEST PAID | EXTRA | RATE | ADD'L FEE | RATE | ADD'L FEE |
| TOTAL CLAIMS | 21 - | 26= | 0 | x11= | $ | x22= | $ |
| INDEPEN-DENT CLAIMS | 5 - | 3= | 2 | x41= | $82 | X82= | $ |
| ( ) FIRST MULTIPLE DEPENDENT CLAIM | | | | +135= | $ | +270 = | $ |
| TOTAL | | | | | $82.00 | | $ |

1

ADJCAM000079

[XXXX]    Checks in the amounts of $55.00 and $82.00 are
          enclosed.

[XXXX]    Small entity status of this application under 37 C.F.R.
          1.9 and 1.27 has been established by verified statement
          previously submitted.

[XXXX]    Other:  Petition for Extension of Time.

[XXXX]    Please charge any deficiencies or credit any over
          payment in the enclosed fees to Deposit Account 14-
          0620.

                    By:  _Lawrence M. Nawrocki_____
                         Lawrence M. Nawrocki
                         Reg. No.  _29,333_____

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

2

ADJCAM000080



P A T E N T

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.:    08/814,168          Examiner:  Phan, L.

Filed      :    March 7, 1997      Group Art Unit:  3632

For        :    CAMERA CLIP

Docket No.:    19239/103/101

Assistant Commissioner for Patents
Washington, D.C. 20231

<table>
<tr><td>CERTIFICATE UNDER 37 C.F.R. 1.8:  I hereby certify that this correspondence is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Assistant Commissioner for Patents, Washington, D.C., 20231 on this _____ day of ____June____ , 19_98___ .<br><br>By_____<br>Carolyn I. Erickson</td></tr>
</table>

Sir:

### AMENDMENT

     This Amendment is being filed in response to the presently outstanding Official Action issued by the Examiner regarding the above-captioned matter.   Please amend the case as follows.

In the claims

     Please amend Claim 1 as follows:

     1.    (Amended)  [An apparatus] Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge

06/17/1998 MKHSHHL  00000005 08814168
01 FC:202                         82.00 OP

ADJCAM000081

A2907

intersecting the first surface and the second surface,
comprising:

a.   a hinge member adapted to be rotatably attached to
the camera, said camera, when the hinge member is
so attached, rotating, [over] about a first axis
of rotation, relative to said hinge member; and

b.   a support frame [hingedly] rotatably attached to
said hinge member [to engagingly support said
hinge member on the object] and configured to
support said hinge member on the surface and the
object, said hinge member rotating [over] about a
second axis of rotation relative to said support
frame, said first axis of rotation being generally
perpendicular to said second axis of rotation,
said second axis of rotation being substantially
parallel to [a] the first surface when said hinge
member is [engagingly] supported on the object,
said support frame [supporting said camera in]
having a first [position] disposition positioned
on [the object when said first surface is] said
generally horizontal, substantially [level] planar
surface, and said support frame [supporting the
camera in] having a second [position on]
disposition attached to the object when said first
surface and said second surface are [is] inclined
from [said] a generally horizontal orientation

2.

ADJCAM000082

[substantially level position], [the object having a second surface wherein a thickness between the first surface and said second surface defines an edge therebetween,] the camera being maintained adjacent said edge in said second disposition of said support frame [position when the uppermost portion of the object is the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge].

Please amend Claim 2 as follows:

2.   (Amended) [An apparatus] Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, [said first portion and said second portion supporting the camera in] the support frame being in the first [position] disposition on the [first] generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, [first surface when the first surface is] substantially [level] planar surface, [said first portion and said second portion supporting the camera in] and the support frame being in the second [position] disposition on the [first surface adjacent the edge] object when said first portion is engaging

3

ADJCAM000083

the first surface and said second portion is engaging
[the edge and] the second surface, said first portion
and said second portion in combination maintaining the
camera adjacent the edge [and preventing rotation of
the support frame along the axis substantially parallel
to the second axis].

Please cancel Claim 3.

Please amend Claim 4 as follows:

(Amended) [An apparatus] Apparatus according to claim
[3] 2 wherein the support frame includes a cover to
[means to releasably hold and] protect the camera
[comprises] lens when the camera [being] is rotated
[around] about the second axis [in a direction from the
second portion towards the first portion of the support
frame] until the camera is [in a position] between the
first portion and the second portion [and is releasably
held between the first portion and the second portion,
the first portion having means to protect a lens of the
camera].

Please amend Claim 5 as follows:

(Amended) [An apparatus] Apparatus according to Claim 4
wherein the [means to] first portion of the support
frame further includes said cover, [protect the lens of

4

ADJCAM000084

the camera is a] said cover being mounted at the distal

end of the first portion[,] and adapted to receive the lens of the

camera [facing in the direction of rotation about the

second axis from the second portion to the first

portion of the support frame to allow the lens of the

camera to be fitably received into said cover when the

camera is releasably held between the first portion and

the second portion].

Please amend Claim 6 as follows:

6. (Amended) [An apparatus] Apparatus according to Claim 2

wherein the [first portion and the second portion

support the camera] support frame is in the first

[position on the first surface] disposition when the

first portion and the second portion engage the [first]

generally horizontal, substantially planar surface at

three or more locations in a common plane [of the first

surface to prevent], thereby preventing rotation of the

support frame relative to the [first] generally

horizontal, substantially planar surface in any

direction [within said plane of the surface].

Please cancel Claim 7.

Please amend Claim 8 as follows:

5

ADJCAM000085

A2911

6  8.  (Amended) [An apparatus] Apparatus according to Claim 2
wherein the [first portion and the second portion
support the camera] support frame is in the second
[position on the first surface adjacent the edge]
disposition when a first distance from the edge to
[the position] a location where the first portion
engages the first surface is greater than a second
distance from the edge to [the position] a location
where the second portion engages the second surface, [a
center of gravity of the camera and said hinge member
being adjacent and external to the first surface in
combination with the first distance being greater than
the second distance] thus preventing rotation of the
support frame [along an axis substantially parallel to
the second axis of rotation].

Please cancel Claims 9-10, inclusive.

Please amend Claim 11 as follows:

7  11.  (Amended) [An apparatus] Apparatus according to Claim 1
wherein the  object is a display screen for a laptop
computer [when the support frame is in the second
position], and the second surface [being] is the front
of the display screen and the first surface [being] is
the back of the display screen.

Please amend Claim 12 as follows:

6

ADJCAM000086

8 12.   (Amended) [An apparatus] Apparatus according to Claim 1
wherein the hinge member [is comprised of] includes a
body having a proximal and a distal end, a pivot
element at said proximal end of said body adapted to
rotatably [attaching] attach the camera to the body so
that the camera rotates about the first axis relative
to the body, and a hinge element at said distal end of
said body hingedly attaching said body to the support
frame so that said body rotates, about the second axis,
relative to the support frame.

Please amend Claim 13 as follows:

9 13.   (Amended) [An apparatus] Apparatus according to Claim
12 wherein [the camera has an electrical wiring harness
to couple from an interior to an exterior,] the pivot
element [having] has a bore[ parallel to] along the
first axis of rotation to receive an electrical wiring
harness [to] and pass said wiring harness [from said
interior] to [said exterior of] the camera.

Please amend Claim 14 as follows:

10 14.   (Amended) [An apparatus] Apparatus for supporting a
camera, having a housing and a lens, on any generally
horizontal, substantially planar surface and on an
object having a first surface and a second surface, and
an edge intersecting the first surface and the second

7

ADJCAM000087

surface, comprising:

a.   a hinge member adapted to be rotatably attached to
     the camera, said camera, when the hinge member is
     so attached, rotating, [over] about a first axis
     of rotation relative to said hinge member; and

b.   a support frame [hingedly] rotatably attached to
     said hinge member [to engagingly support said
     hinge member on the object] and configured to
     support said hinge member on the surface and the
     object, said hinge member rotating [over] about a
     second axis of rotation relative to said support
     frame, said first axis of rotation being generally
     perpendicular to said second axis of rotation,
     said second axis of rotation being substantially
     parallel to [a] the first surface when said hinge
     member is [engagingly] supported on the object,
     the support frame having a rear support element
     and a first and a second front support element,
     said [rear support element and said first and said
     second front support elements supporting the
     camera in the] support frame having a first
     [position] disposition positioned on [said first]
     said generally horizontal, substantially planar
     surface when said rear support element and said
     first and second front support elements are
     engaging said [first] generally horizontal,

8

ADJCAM000088

substantially planar surface [when said first
surface is substantially level], said [rear
support element and said first and said second
front support elements supporting the camera in]
support frame having a second [position]
disposition attached to the object [on said first
surface adjacent an edge] when [said] the first
surface is inclined from [said] a substantially
[level] horizontal position so that an uppermost
extremity of the object is the edge, [the object
having a second surface wherein a thickness
between said first surface and said second surface
defines said edge therebetween, the camera] the
support frame being maintained [adjacent said
edge] in said second [position when the uppermost
portion of the object is the edge,] disposition by
said rear support element engaging said first
surface and said first and second front support
elements engaging [the edge and] the second
surface, said rear support element and said first
and second front support elements in combination
[maintaining the camera adjacent the edge and]
preventing rotation of the support frame [along an
axis substantially parallel to the second axis,
said second axis being substantially parallel to
said edge].

9

ADJCAM000089

Please cancel Claim 15.

Please amend Claim 16 as follows:

16. (Amended) [An apparatus] Apparatus according to claim
[15] 14 wherein the [means to] support frame adapted to protect
[releasably hold and protect] protects the camera
[comprises] when the camera [being] is rotated [around]
about the second axis [in a direction from the first
and second front support elements] towards the rear
support element of the support frame until the camera
is [in a position] between the rear support element and
the first and second front support elements, and is
releasably held between the rear support element and
the first and second front support elements[, the rear
support element having means to protect a lens of the
camera].

Please amend Claim 17 as follows:

17. (Amended) [An apparatus] Apparatus according to Claim
16 wherein the first and second front support elements
are spaced a distance apart [at a], and wherein said
distance is less than a diameter of [a] the housing of
the camera[,] so that as the camera is being rotated
[around] about the second axis in the direction towards
the rear support element, [so that] said housing passes
between the first and second front support elements[,]

10

ADJCAM000090

and the first and second front support elements

resiliently [and outwardly flexing] flex outwardly to

accommodate passage of said housing, said housing being

releasably held once passing between the first and

second front support elements by the rear support

element engaging said housing at the lens[, the first

and second front support elements engaging said housing

backside to resiliently urge said housing towards the

rear support element].

Please amend Claim 18 as follows:

(Amended) [An apparatus] Apparatus according to Claim

wherein the [means to] first portion of the support

frame further has a cover, [protect the lens of the

camera is a] said cover being mounted at [the] a distal

_and adapted_

end of the rear support element[,] to receive the lens

of the camera [facing in the direction of rotation

about the second axis from the first and second front

support elements to the rear support element of the

support frame to allow the lens of the camera to be

fitably received into said cover] when the camera is

releasably held between the rear support element and

the first and second front support elements.

Please amend Claim 19 as follows:

11

ADJCAM000091

14. (Amended) [An apparatus] Apparatus according to Claim
10 wherein the [rear support element and the first and
second front support elements support the camera]
support frame is in the first [position on the first
surface] disposition when the rear support element and
the first and second front support elements engage the
[first] generally horizontal, substantially planar
surface at three or more locations in a common plane of
the [first] generally horizontal, substantially planar
surface to prevent rotation of the support frame
relative to the [first] generally horizontal,
substantially planar surface [in any direction within
said plane of the first surface].

Please amend Claim 20 as follows:

15. (Amended) [An apparatus] Apparatus according to Claim
10 wherein the [rear support element and the first and
second front support elements support the camera]
support frame is in the first [position] disposition
positioned on the [first] generally horizontal,
substantially planar surface when the rear support
element and the first and second front support elements
engage the [first] generally horizontal, substantially
planar surface to prevent rotation of the support frame
relative to the [first] generally horizontal,
substantially planar surface [in any direction within a

12

plane of the first surface].

Please amend Claim 21 as follows:

16. (Amended) [An apparatus] Apparatus according to Claim
10 wherein the [rear support element and the first and
second front support elements support the camera]
support frame is in the second [position on the first
surface adjacent the edge] disposition when a first
distance from the edge to [the position] a location
where the rear support element engages the first
surface is greater than a second distance from the edge
to [the position] a location where the first and second
front support elements engage the second surface, [a
center of gravity of the camera and said hinge member
being adjacent and external to the first surface in
combination with] the first distance being greater than
the second distance thus preventing rotation of the
support frame [along an axis substantially parallel to
the second axis of rotation].

Please cancel Claims 22-24, inclusive.

Please amend Claim 25 as follows:

26. (Amended) [An apparatus] Apparatus according to Claim
10 wherein the hinge member [is comprised of] includes
a body having a proximal and a distal end, a pivot

13

ADJCAM000093

element at said proximal end of said body <u>adapted to</u>
rotatably [attaching] <u>attach</u> the camera to the body so
that the camera rotates about the first axis relative
to the body, <u>and</u> a hinge element at said distal end of
said body hingedly attaching said body to the support
frame so that said body rotates about the second axis
relative to the support frame.

Please amend Claim 26 as follows:

26. (Amended) [An apparatus] <u>Apparatus</u> according to claim
25 wherein [the camera has an electrical wiring harness
to couple from an interior to an exterior,] the pivot
element [having] <u>has</u> a bore [parallel to] <u>along</u> the
first axis of rotation to receive said electrical
wiring harness [to] <u>and</u> pass said wiring harness [from
said interior] to [said exterior of] the camera.

Please add new Claims 27-29 as follows:

27. (Newly presented) A camera clip for supporting a camera
on a laptop computer, the laptop computer having a
display screen which can be inclined from a generally
horizontal position, an uppermost portion of the
display screen defining an edge, comprising:

a.   a hinge member adapted to be rotatably attached to
     the camera, said camera rotating about a first
     axis of rotation relative to said hinge member;

14

ADJCAM000094

and

b.    a support frame hingedly attached to said hinge
member to engagingly support said hinge member on
the display screen, said hinge member rotating
over a second axis of rotation relative to said
support frame, the camera being maintained
adjacent the edge, rotation of said support frame
being prevented along an axis substantially
parallel to said second axis where said second
axis is substantially parallel to said edge.

28.    (Newly presented) Apparatus for supporting a camera
having a lens on a substantially level surface,
comprising:

a.    a hinge member adapted to be rotatably attached to
the camera, the camera rotating about a first axis
of rotation relative to said hinge member; and

b.    a support frame rotatably attached to said hinge
member and configured to support said hinge member
on a generally horizontal, substantially planar
surface, said hinge member rotating about a second
axis of rotation relative to said support frame,
said first axis of rotation being generally
perpendicular to said second axis of rotation,
said second axis of rotation being substantially
parallel to the generally horizontal,

15

ADJCAM000095

substantially planar surface when said hinge
member is supported on the generally horizontal,
substantially planar surface, said support frame
having a first portion and a second portion
wherein said support frame protects the camera
when said hinge member is not supported on the
generally horizontal, substantially planar
surface, and when the camera is rotated around
said second axis in a direction from said second
portion towards said first portion of said support
frame until the camera is between said first
portion and said second portion and is releasably
held between said first portion and said second
portion.

29. (Newly presented) Apparatus for supporting a camera,
having a lens, on an object having a first surface and
a second surface, wherein a thickness measured between
the first surface and the second surface defines an
edge therebetween, comprising:

a.   a hinge member adapted to be rotatably attached to
the camera, said camera, when the hinge member is
so adapted, rotating about a first axis of
rotation relative to said hinge member; and

b.   a support frame rotatably attached to said hinge
member and configured to support said hinge member

16

ADJCAM000096

on the object, said hinge member rotating about a
second axis of rotation relative to said support
frame, said first axis of rotation being generally
perpendicular to said second axis of rotation,
said second axis of rotation being substantially
parallel to the first surface when said hinge
member is supported by said support frame on the
object, said support frame supporting said hinge
member on the object when said first surface is
inclined from a substantially horizontal position,
the camera being maintained adjacent the edge when
an uppermost extremity of the object is the edge,
rotation of said support frame being precluded
about an axis substantially parallel to said
second axis, said second axis being substantially
parallel to said edge, said support frame having a
first portion and a second portion wherein said
support frame releasably holds and protects the
camera when said hinge member is not supported by
said support frame on the object and the camera is
rotated around said second axis in a direction
from said second portion towards said first
portion of said support frame until the camera is
between said first portion and said second portion
and is releasably held between said first portion
and said second portion.

17

ADJCAM000097

A2923

R E M A R K S

The preceding amendment and following remarks are submitted in response to the presently outstanding Official Action of the examiner.  Having fully responded to each objection and ground of rejection of the examiner, all pending claims are believed to be in condition for allowance.  Entry of these amendments and reconsideration by the examiner to that end is respectfully requested.

The examiner objected to claims 2-13 and 15-26 because, at line 1 of claims 2-13 and 15-26, before "apparatus", "An" should be replaced with --The--.  In response, Applicant has amended claims 1-2, 4-6, 8, 11-14, 16-21 and 25-26 to make appropriate correction.

Claims 1-26 were rejected under 35 U.S.C. §112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention.  The Examiner stated that the preamble of claim 1 is drawn to a subcombination of an apparatus comprising a hinge member and a support frame per se whereas line 3 appears to positively recite "rotatable attached to the camera", thus implying a combination claim.  The Examiner further stated that, at lines 12 and 13, "being substantially parallel to a first surface" is a combination claim.  The Examiner further stated that, at lines 20-28, "the object having a second surface . . ., the camera being maintained . . . " is also

18

ADJCAM000098

claiming a combination.  The Examiner stated that it is not clear whether Applicant intends to claim a subcombination or a combination.

In response, Applicant has amended claim 1 to more clearly identify the "work pieces" in the preamble and thereby focus upon the elements of the invention, e.g. the hinge member and the support frame, in the claim body. Applicant has amended the preamble of claim 1 to recite "a camera having a lens on an object, the object having a first surface and a second surface" wherein a thickness between the first surface and the second surface defines an edge therebetween.  Applicant has also amended other portions of claim 1 to be consistent with the above changes.

The Examiner stated that in claim 2, lines 3-6, "said second portion supporting the camera" and "said second portion are engaging the first surface" are claiming combination.  In response, Applicant has amended claim 2 to remove the language "said first portion and said second portions supporting the camera in" and replace it with "the support frame being in...".

The Examiner stated that in claim 3, line 2 "to releasably hold and protect the camera" is a combination claim.  Claim 3 has been cancelled.

The Examiner stated that on lines 2, 3, 5, 8, and 9 of claim 4, "comprises the camera" and "to protect a lens of the camera" are claiming combination.  In response Applicant

19

ADJCAM000099

has amended claim 4 to make it clear that the camera is a "work piece" and to make other clarifications.

The Examiner stated on lines 2, 3, 6, and 7 of claim 5, "to protect the lens of the camera" and "the camera" are a combination claim.  In response, Applicant has amended claim 5, and it is clear that the camera and the lens of the camera are "work pieces" and to make other amendments for clarification.

The Examiner stated that in claims 6 and 7, lines 2-7, "support the camera" and "engage the first surface" are claiming combination.  In response, Applicant has amended claims 6 and 7 to clarify inventive structure and "work pieces".

The Examiner stated on lines 2, 5, 7, and 8 of claim 8, "support camera", "engage the first and the second surfaces", and "a center of gravity of the camera" are not a subcombination claim.  In response, Applicant has amended claim 8 to remove "first portion and the second portion support the camera" to replace it with "support frame". Applicant has amended claim 8 to remove any ambiguity regarding combination/subcombination issues.

The Examiner states in lines 1 and 3 of Claims 9 and 10, "the object" and "the first surface" are not claiming subcombination.  In response, Applicant has cancelled Claims 9 and 10.

The Examiner states that in claim 11, lines 1, 3 and 4,

20

ADJCAM000100

"the object", and "the second surface", and "the first surface" are a combination claim. In response, Applicant has amended claim 11 to make amendments to further clarify the combination/subcombination issues.

The Examiner stated that in claim 12, line 4, "rotatably attaching the camera" is claiming combination. In response, Applicant has amended claim 12 to define the interaction between the work piece, the camera, and the body, an element of the invention.

The Examiner stated on lines 1 and 6 of claim 13, "the camera" is a combination claim.  In response, Applicant has amended claim 13 to remove "the camera" as an element of the invention.

The Examiner stated that claims 14-26 have the same §112 problems of combination and subcombination as indicated in the above claims 1-14.  In response, Applicant has amended these claims to overcome the §112 problems of combination and subcombination as were discussed above.

Applicant has added newly presented claims 27-29. Applicant submits that, in view of the above arguments regarding pending Claims 1-2, 4-6, 8, 11-14, 16-21, and 25-26; Claims 27-29 are also in condition for allowance.

Having thus addressed each objection and ground of rejection of the Examiner, pending claims 1-2, 4-6, 8, 11-14, 16-21, and 25-26, as well as newly presented claims 27-29, are now believed to be in condition for allowance.

21

ADJCAM000101

Entry of the present amendment and reconsideration to that end is respectfully requested.

Please charge any deficiencies or credit any overpayment to Deposit Account 14-0620.

Respectfully submitted,

David E. Krekelberg

By his attorney,

Dated: _June 8, 1998_          _Lawrence M. Nawrocki_
Lawrence M. Nawrocki
Reg. No. 29,333
NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street Northeast
Minneapolis, MN 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

22

ADJCAM000102

| *Interview Summary* | Application No. 08/814,168 | Applicant(s) David E. Krekelberg |
|---|---|---|
| | Examiner Long Dinh Phan | Group Art Unit 3632 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Long Dinh Phan* _____     (3) _____

(2) *Lawrence M. Nawroki* _____     (4) _____

Date of Interview _____ *Jul 7, 1998* _____

Type:   ☒ Telephonic   ☐ Personal (copy is given to   ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.   If yes, brief description:

_____

_____

Agreement   ☒ was reached.   ☐ was not reached.

Claim(s) discussed: *4, 5, 16, and 18* _____

Identification of prior art discussed:
*None* _____

_____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*Applicant agreed to amend the claims to overcome possible 112 problems and pass the case to issue.* ____

_____

_____

_____

_____

_____

_____

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached.  Also, where no copy of the amendents which would render the claims allowable is available, a summary thereof must be attached.)

1.   ☒   It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2.   ☐   Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.  Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note:  You must sign and stamp this form unless it is an attachment to a signed Office action.

U. S. Patent and Trademark Office
PTO-413 (Rev. 10-95)                    Interview Summary                    Paper No.  8    )

ADJCAM000103



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:    COMMISSIONER OF PATENTS AND TRADEMARKS
            Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/814,168 | 03/07/97 | KREKELBERG | D | 19239/103/1 |

```
                              PM31/0715
   LAWRENCE M. NAWROCKI
   NAWROCKI, ROONEY & SIVERTSON
   BROADWAY PLACE EAST SUITE 401
   3433 BROADWAY STREET NORTHEAST
   MINNEAPOLIS MN 55413
```

| EXAMINER |
|---|
| PHAN, L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3632 | 8/B |

DATE MAILED:    07/18/90

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

*U.S. GPO: 1998-437-638/80022

1- File Copy

ADJCAM000104

| *Notice of Allowability* | Application No.<br>08/814,168 | Applicant(s)<br>David E. Krekelberg |
|---|---|---|
| | Examiner<br>Long Dinh Phan | Group Art Unit<br>3632 |

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application.  If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to *amendment filed on 06/12/1998* _____ .

☒ The allowed claim(s) is/are *1, 2, 4-6, 8, 11-14, 16-21, and 25-29.* _____ . _____ .. ___ .

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

     ☐ received.

     ☐ received in Application No. (Series Code/Serial Number) _____ .

     ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action.  Failure to timely comply will result in ABANDONMENT of this application.  Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient.  A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

   ☐ because the originally filed drawings were declared by applicant to be informal.

   ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. _4_ .

   ☐ including changes required by the proposed drawing correction filed on _____ , which has been approved by the examiner.

   ☐ including changes required by the attached Examiner's Amendment/Comment.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings.  The drawings should be filed as a separate paper with a transmittal lettter addressed to the Official Draftsperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

   ☐ Notice of References Cited, PTO-892

   ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

   ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

   ☐ Notice of Informal Patent Application, PTO-152

   ☒ Interview Summary, PTO-413

   ☒ Examiner's Amendment/Comment

   ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

   ☒ Examiner's Statement of Reasons for Allowance

ADJCAM000105

Serial Number: 08/814,168                                          Page 2

Art Unit: 3632

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below.  Should the changes and/or

additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312.

To ensure consideration of such an amendment, it MUST be submitted no later than the payment

of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Mr.

Lawrence M. Nawrocki on July 07, 1998.

The application has been amended as follows:

In the Claims:

**Claim 4**- line 2: after "cover", inserted --adapted--.

**Claim 5**- line 5: before "to receive", inserted --and adapted--.

**Claim 16**- line 3: before "the camera", replaced "protects" with --adapted to protect--.

**Claim 18**- line 5: before "to receive", inserted --and adapted--.

The following is an examiner's statement of reasons for allowance: The prior art of record

does not disclose nor suggest apparatus for supporting a camera, comprising a hinge member

adapted to be rotatably attached to the camera about a first axis of rotation; and a support frame

rotatably attached to the hinge member about a second axis of rotation and configured to support

the hinge member on a surface and an object.  Applicant's invention is deemed to be novel and

unobvious over the prior art of record and thus allowable for patent.

Any comments considered necessary by applicant must be submitted no later than the

ADJCAM000106

Serial Number: 08/814,168                                                     Page 3

Art Unit: 3632

payment of the issue fee and, to avoid processing delays, should preferably accompany the issue

fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Long Dinh Phan whose telephone number is (703) 308-3409.  The examiner

can normally be reached on Tuesday through Friday from 8:00 A.M. to 6:00 P.M. E.S.T.

Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 308-2168.  The fax

number for this Group is (703) 305-3597 or 3598.

Long Dinh Phan

July 14, 1998

RAMON O. RAMIREZ
PRIMARY EXAMINER
ART UNIT 3632

ADJCAM000107



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

## NOTICE OF ALLOWANCE AND ISSUE FEE DUE

LAWRENCE M. NAWROCKI
NAWROCKI, ROONEY & SIVERTSON
BROADWAY PLACE EAST SUITE 401
3433 BROADWAY STREET NORTHEAST
MINNEAPOLIS MN 55413

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/814,168 | 03/07/97 | | PHAN | |

| First Named Applicant | KREKELBERG, | | |
|---|---|---|---|

TITLE OF INVENTION CAMERA CLIP

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3    19239/103/10 | 248-121.000 | | | | $600.00 | |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
_PROSECUTION ON THE MERITS IS CLOSED._**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.  _THIS STATUTORY PERIOD CANNOT BE EXTENDED._**

## HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.
  If the SMALL ENTITY is shown as YES, verify your
  current SMALL ENTITY status:

  A. If the status is changed, pay twice the amount of the
     FEE DUE shown above and notify the Patent and
     Trademark Office of the change in status, or
  B. If the status is the same, pay the FEE DUE shown
     above.

If the SMALL ENTITY is shown as NO:

  A. Pay FEE DUE shown above, or

  B. File verified statement of Small Entity Status before, or with,
     payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your
   ISSUE FEE.  Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal
   should be completed and returned.  If you are charging the ISSUE FEE to your deposit account, section "4b" of Part
   B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number.
    Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.  It is patentee's responsibility to ensure timely payment of maintenance
fees when due.**

PATENT AND TRADEMARK OFFICE COPY

PTOL-85 (REV. 10-96) Approved for use through 08/30/99. (0651-0033)

*U.S. GPO. 1998-437-639/80023

ADJCAM000108

**PART B—ISSUE FEE TRANSMITTAL**

*242 - 6660*
*521 - 30*

Complete and mail this form, together with app. ...e fees, to: **Box ISSUE FEE**
**Assistant Commissioner for Patents**
**Washington, D.C. 20231**

*MAILING INSTRUCTIONS:* This form should be used for transmitting the ISSUE FEE. Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

LAWRENCE M. NAWROCKI
NAWROCKI, ROONEY & SIVERTSON
BRODWAY PLACE EAST SUITE 400
3433 BROADWAY STREET NORTHEA..
MINNEAPOLIS MN 55413

PM31/10715
**RECEIVED**
Publishing Division
**OCT 2 0 1998**
16

Note: The certificate of mailing below can only be used for domestic mailings of the Issue Fee Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

**Certificate of Mailing**

I hereby certify that this Issue Fee Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above on the date indicated below.

Carolyn K. Erickson _____ (Depositor's name)

_____ (Signature)

10/15/98 _____ (Date)

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/814,168 | 03/07/97 | 021 | PHAN, L | 3632 | 07/15/98 |

First Named Applicant **KREKELBERG, DAVID E.**

TITLE OF INVENTION **CAMERA CLIP**

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3   19239/103/10 | 248-121.000 | G54 | UTILITY | YES | $660.00 | 10/15/98 |

1. Change of correspondence address or indication of " Fee Address" (37 CFR 1.363). Use of PTO form(s) and Customer Number are recommended, but not required.

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" indication form PTO/SB/47) attached.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 NAWROCKI, ROONEY & SIVERTSON, P.A.

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a subsitute for filing an assignment.

(A) NAME OF ASSIGNEE
iREZ Research, Corporation

(B) RESIDENCE: (CITY & STATE OR COUNTRY)
Minnetonka, Minnesota
Please check the appropriate assignee category indicated below (will not be printed on the patent)

☐ individual ☒ corporation or other private group entity ☐ government

4a. The following fees are enclosed (make check payable to Comissioner of Patents and Trademarks):
☒ Issue Fee
☒ Advance Order - # of Copies __10__

4b. The following fees or deficiency in these fees should be chrged to:

DEPOSIT ACCOUNT NUMBER _____
(ENCLOSE AN EXTRA COPY OF THIS FORM)
☐ Issue Fee
☐ Advance Order - # of Copies _____

The COMMISSIONER OF PATENTS AND TRADEMARKS IS requested to apply the Issue Fee to the application identified above.

(Authorized Signature) *Lawrence M. Nawrocki* (Date) *Oct 15, 1998*
Lawrence M. Nawrocki

10/23/1998 CASHBY 00000026 08814168
01 FC:242     660.00 OP
02 FC:561      30.00 OP

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

*Burden Hour Statement:* This form is estimated to take 0.2 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND FEES AND THIS FORM TO: Box Issue Fee, Assistant Commissioner for Patents, Washington D.C. 20231

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**TRANSMIT THIS FORM WITH FEE**

PTOL-85B (REV.10-96) Approved for use through 06/30/99. OMB 0651-0033     Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

ADJCAM000109

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.: 08/814,168                          Examiner: L. Phan

Filing Date: March 7, 1997                      Group Art Unit: 3632

For: CAMERA CLIP

Docket No.: 19239/103/101

## TRANSMITTAL SHEET

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

> **CERTIFICATE UNDER 37 C.F.R. 1.8:**  I hereby certify that this correspondence
> and the documents described herein
> are being deposited with the United States Postal Service on the date shown below
> with sufficient postage as first class mail in an envelope addressed to the:
> Assistant Commissioner for Patents, Washington, D.C. 20231, on this /5th day of ____
> October, 1998 /
>
> By_____
>                    Carolyn L. Erickson

We are transmitting herewith the attached:

[ ]        Amendment

        [ ] No additional fee required
        [ ] The fee has been calculated as shown:

| CLAIMS AS AMENDED | | | | | | | |
|---|---|---|---|---|---|---|---|
| | (3) | (4) | (5) | SMALL ENTITY | | OTHER | |
| | REMAINING CLAIMS | HIGHEST PAID | EXTRA | RATE | ADD'L FEE | RATE | ADD'L FEE |
| TOTAL CLAIMS | - | = | | x11= | $ | x22= | $ |
| INDEPEN-DENT CLAIMS | - | = | | x41= | $ | X82= | $ |
| (  ) FIRST MULTIPLE DEPENDENT CLAIM | | | | +135= | $ | +270 = | $ |
| TOTAL | | | | $ | | $ | |

1

ADJCAM000110

[XXXX]      A check in the amount of $ 690.00 is enclosed.

[XXXX]      Small entity status of this application under 37 C.F.R.
            1.9 and 1.27 has been established by verified statement
            previously submitted.

[XXXX]      Other:  Part B-Issue Fee Transmittal (with Certificate of
            Mailing); Letter to Official Draftsperson; Two (2) Sheets
            of Formal Drawings.

[XXXX]      Please charge any deficiencies or credit any over payment
            in the enclosed fees to Deposit Account 14-0620.

                    By: _____
                        Lawrence M. Nawrocki
                        Reg. No.   29,333

NAWROCKI, ROONEY & SIVERTSON, P.A.
Suite 401, Broadway Place East
3433 Broadway Street N.E.
Minneapolis, Minnesota 55413
Telephone:  (612) 331-1464
Facsimile:  (612) 331-2239

2

ADJCAM000111

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 104 of 124 PageID #:  4475

P A T E N T

Serial No.: 08/814,168
Filed: March 7, 1997
Batch No.: G54

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David E. Krekelberg

Serial No.: 08/814,168          **RECEIVED**          Examiner:   L. Phan
                                Publishing Division

Filed: March 7, 1997            OCT 2 0 1998          Group Art: 3632

For:  CAMERA CLIP                    **16**

Docket No.: 19239/103/101

---

Assistant Commissioner          CERTIFICATE UNDER 37 C.F.R. 1.8
  for Patents                   I hereby certify that this correspondence is being
Washington, D.C.   20231        deposited with the United States Postal Service on
                                the date shown below with sufficient postage as
                                first class mail in an enveloped addressed to the
                                Assistant Commissioner for Patents, Washington,
                                D.C. 20231 on this *15*th day of *October*, 19*98*

                                By:_____
                                        Carolyn J. Erickson

Sir:

### LETTER TO OFFICIAL DRAFTSPERSON

Submitted herewith are two (2) sheets of formal drawings for

filing in the above-identified application.

Respectfully submitted,

David E. Krekelberg

By his attorney,

Date *October 15, 1998*        *Lawrence M. Nawrocki*
                               Lawrence M. Nawrocki
                               Reg. No. 29,333
                               NAWROCKI, ROONEY & SIVERTSON, P.A.
                               Suite 401, Broadway Place East
                               3433 Broadway St. N.E.
                               Minneapolis, MN   55413
                               (612) 331-1464

ADJCAM000112

| APPROVED | O.G. FIG. | |
|---|---|---|
| BY | CLASS | SUBCLASS |
| DRAFTSMAN | | |

5855343



*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*

| APPROVED | O.G. FIG. | |
|----------|-----------|---|
| BY | CLASS | SUBCLASS |
| DRAFTSMAN | | |

*Fig. 5*



*Fig. 6*

*Fig. 7*



ADJCAM000114

A2940



**The**
**United**
**States**
**of**
**America**

**PTO UTILITY GRANT**

Paper Number ___10___

## The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America for the term set forth below, subject to the payment of maintenance fees as provided by law.*

*If this application was filed prior to June 8, 1995, the term of this patent is the longer of seventeen years from the date of grant of this patent or twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*If this application was filed on or after June 8, 1995, the term of this patent is twenty years from the U.S. filing date, subject to a statutory extension. If the application contains a specific reference to an earlier filed application or applications under 35 U.S.C. 120, 121 or 365(c), the term of the patent is twenty years from the date on which the earliest application was filed, subject to any statutory extension.*

*Bruce Lehman*

Commissioner of Patents and Trademarks

*Ollie M. Person*

Attest

Form **PTO-1584** (Rev. 2/97)

ADJCAM000115

Text Input HTML page                                                    http://151.207.28.21:457/cgi-bin/text

```
        59116 CAMERA
        58127 CLIP
L1          2 CAMERA CLIP
              (CAMERA(W)CLIP)

=>
```

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 109 of 124 PageID #:  4480

Tex: Input HTML page                                      http://151.207.28.21:457/cgi-bin/text_io

```
US PAT NO:      4,403,717 [IMAGE AVAILABLE]           L1: 1 of 2
TITLE:          Camera carrying device

4,403,717 [IMAGE AVAILABLE]      5 CLASSIFICATIONS    L1: 1 of 2

       1.   224/666          OR
       2.   224/268          XR
       3.   224/269          XR
       4.   224/667          XR
       5.   224/908          XR
US PAT NO:      3,962,711 [IMAGE AVAILABLE]           L1: 2 of 2
TITLE:          Accessory adapter for photographic apparatus

3,962,711 [IMAGE AVAILABLE]      3 CLASSIFICATIONS    L1: 2 of 2

       1.   396/544          OR
       2.   396/529          XR
       3.   D16/211          XR

=>
```

ADJCAM000117

A2943

Te-t Input HTML page                                    http://151.207.162.15:457/cgi-bin/text 10

```
US PAT NO:      5,111,983 [IMAGE AVAILABLE]        L1: 1 of 5

5,111,983 [IMAGE AVAILABLE]     3 CLASSIFICATIONS   L1: 1 of 5

      1.   224/258        OR
      2.   224/908        XR
      3.   248/118        XR
US PAT NO:      5,025,320 [IMAGE AVAILABLE]        L1: 2 of 5

5,025,320 [IMAGE AVAILABLE]     4 CLASSIFICATIONS   L1: 2 of 5

      1.   348/373        OR
      2.   348/335        XR
      3.   348/722        XR
      4.   379/202        XR
US PAT NO:      4,676,622 [IMAGE AVAILABLE]        L1: 3 of 5

4,676,622 [IMAGE AVAILABLE]     2 CLASSIFICATIONS   L1: 3 of 5

      1.   396/428        OR
      2.   248/179.1      XR
US PAT NO:      4,297,756 [IMAGE AVAILABLE]        L1: 4 of 5

4,297,756 [IMAGE AVAILABLE]     2 CLASSIFICATIONS   L1: 4 of 5

      1.   7/127          OR
      2.   81/367         XR
US PAT NO:      4,198,150 [IMAGE AVAILABLE]        L1: 5 of 5

4,198,150 [IMAGE AVAILABLE]     2 CLASSIFICATIONS   L1: 5 of 5

      1.   396/422        OR
      2.   362/3          XR

=>
```

ADJCAM000118

## PATENT APPLICATION FEE DETERMINATION RECORD
Effective October 1, 1996

**Application or Docket Number**  8 1 4 1 6 8

### CLAIMS AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | 385.00 | OR | | 770.00 |
| TOTAL CLAIMS | 26 | minus 20 = * | 6 | x$11= | | OR | x$22= | 132.0 |
| INDEPENDENT CLAIMS | 2 | minus 3 = * | | x40= | | OR | x80= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +130= | | OR | +260= | |
| | | | TOTAL | | OR | TOTAL | 902.0 |

\* If the difference in column 1 is less than zero, enter "0" in column 2

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * 21 | Minus ** 26 | = | x$11= | | OR | x$22= | |
| Independent | * 5 | Minus *** 3 | = 2 | x40= | 12.6 | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | TOTAL ADDIT. FEE | 82.1 | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10/96)

*U.S. Government Printing Office: 1996 - 413-288/49191

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

ADJCAM000119

Case: 13-1665    Page: 419    Document: 93-3

Case 6:10-cv-00329-LED    Document 575-2    Filed 12/19/11    Page 112 of 124 PageID #: 4483

Filed: 12/11/2014

Form PTO 1130
(REV 2/94)

# PACE DATA ENTRY CODING SHEET

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

| 1ST EXAMINER | *W Green* | DATE | *6 23 97* |
|---|---|---|---|
| 2ND EXAMINER | | DATE | |

AD/CAM000120

| APPLICATION NUMBER | TYPE APPL | FILING DATE | | | SPECIAL HANDLING | GROUP ART UNIT | CLASS | SHEETS OF DRAWING |
|---|---|---|---|---|---|---|---|---|
| | | MONTH | DAY | YEAR | | | | |
| 08/874168 | 1 | 0 3 | 0 7 | 9 2 | 0 | 3 5 0 5 | 2 4 8 | 2 |

| TOTAL CLAIMS | INDEPENDENT CLAIMS | SMALL ENTITY? | FILING FEE | FOREIGN LICENSE | ATTORNEY DOCKET NUMBER |
|---|---|---|---|---|---|
| 2 6 | 2 | | | ✓ | 1 9 2 3 9 / 1 0 3 / 1 0 |

## CONTINUITY DATA

| CONT CODE | STATUS CODE | PARENT APPLICATION SERIAL NUMBER | PCT APPLICATION SERIAL NUMBER | PARENT PATENT NUMBER | PARENT FILING DATE |
|---|---|---|---|---|---|
| | | | P C T / / | | MONTH DAY YEAR |
| | | | P C T / / | | |
| | | | P C T / / | | |
| | | | P C T / / | | |
| | | | P C T / / | | |

## PCT/FOREIGN APPLICATION DATA

| FOREIGN PRIORITY CLAIMED | COUNTRY CODE | PCT/FOREIGN APPLICATION SERIAL NUMBER | FOREIGN FILING DATE |
|---|---|---|---|
| | | | MONTH DAY YEAR |

A2946

E. S. McALL.
CAMERA HOLDING DEVICE.
APPLICATION FILED APR. 29, 1915.

**1,208,344.**

Patented Dec. 12, 1916.
2 SHEETS—SHEET 1.



*Fig. 4.*

*Fig. 3.*

*Fig. 2.*

*Fig. I.*

*INVENTOR.*
Edward S. McAll

THE NORRIS PETERS CO., PHOTO-LITHO. WASHINGTON, D. C.

ADJCAM000121

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 114 of 124 PageID #:  4485

E. S. McALL.
CAMERA HOLDING DEVICE.
APPLICATION FILED APR. 29, 1915.

**1,208,344.**

Patented Dec. 12, 1916.
2 SHEETS—SHEET 2.



*Fig. 5.*

*Fig. 6.*

*INVENTOR.*
Edward S. McAll

THE NORRIS PETERS CO. PHOTO-LITHO., WASHINGTON, D. C.

ADJCAM000122

A2948

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 115 of 124 PageID #:  4486

# UNITED STATES PATENT OFFICE.

EDWARD S. McALL, OF ILION, NEW YORK.

CAMERA-HOLDING DEVICE.

**1,208,344.**          Specification of Letters Patent.          **Patented Dec. 12, 1916.**

Application filed April 29, 1915.   Serial No. 24,666.

*To all whom it may concern:*

Be it known that I, EDWARD S. McALL, a citizen of the United States, and a resident of Ilion, in the county of Herkimer and State of New York, have invented a certain new and useful Improvement in Camera-Holding Devices, of which the following is a full, clear, and exact description, reference being made to the accompanying drawings, forming part of this specification.

This invention relates to improvements in camera-holding devices which include means to enable a camera to be adjusted for use by moving it angularly on a horizontal axis, the main object of the invention being to facilitate the operation of cameras under conditions which now are apt to be more or less troublesome.

The invention consists of a camera-holding device comprising the parts, and having the construction and arrangement of parts, which are hereinafter described and specified in the claims.

On the accompanying two sheets of drawings, on which like reference-numerals designate like parts of different views: Figure 1 is a side elevation of a camera-holding device which embodies the invention in its preferred form; Fig. 2, a front elevation of this device; Fig. 3, a plan thereof; Fig. 4, another side elevation thereof; Fig. 5, another plan, the relative positions of the parts differing from those shown in Fig. 3; and Fig. 6, a side and sectional view, the relative positions of the parts being the same as shown in Fig. 5.

The particular camera-holding device shown comprises what is essentially a low tripod, a platform hinged thereto, and a clamp which is effective to hold the platform adjusted with relation to the base in any of a large number of positions. That it differs much in character from ordinary tripods is plainly indicated by its utility in various places where any of them are useless, as well as by peculiarities of its construction and its mode of operation. For example, it will properly support a camera in a desired position when the device is held by the hand against a wall, or post, or trunk of a tree, or the steeply sloping or vertical face of a rock or cliff, as illustrated in Fig. 1, in which the surface against which the device is held is represented by the irregular line *a*, and the camera by broken lines, or when the device stands, as shown in Fig. 4, on a small and inclined surface *b*, such as that of a rock, log, or branch of a tree, or on a flat surface which is too small to enable a common tripod to stand on it and which may be the top of a post, stump of a tree, or something else.

The tripod and platform of this device are made from thin sheet metal, the head of the tripod consisting of a single piece of stock and being the base on which the platform is mounted. This base is an approximately V-shaped frame including the flat portion 1 (Fig. 2), the lateral flanges or sides 2 and 3, which are preferably straight, and the perforated parts 4 and 5 which are continuations of the flanges and form a pair of eyes at the broad end of the base. The projection 6, consisting of a struck up portion of the stock of the frame or base, is one of the feet of the tripod. The platform, which is also a single piece of stock, includes the part 7, the lateral flanges or sides 8 and 9, and the perforated continuations 10 and 11 of the flanges, the part 7 being flat except where it forms the annular struck up camera-seat 12, and the portions 10 and 11 forming eyes similar to the eyes 4 and 5 of the base. The eyes of the platform fit loosely between the eyes of the base and the flanges of the platform between the flanges of the base, so that the platform and base may lie close together as appears by Figs. 5 and 6. The screw 13 having the milled head 14 extends loosely through the part 7 at the center of the seat 12, the cotter pin 15, which passes through the stem of the screw and lies close to the face of the platform, being a keeper for the screw.

The bolt 16, having at one end the head 17 and at the other the winged nut 18, passes through the eyes of the platform and base, and on this bolt are also the spacing-sleeve 19, the friction-washers 20 and 21, and a yoke comprising the bar 22, eyes 23 and 24, and parts 25 and 26 which form both the ends of the yoke and the two other feet of the tripod. The sleeve 19 fits closely between the eyes 10 and 11, each friction-washer is between an eye of the base and the adjacent eye of the platform, and the eyes of the yoke surround the bolt outside of the eyes of the base.

Although the parts of the device might be otherwise arranged, the arrangement shown and described is preferred because it en-

ADJCAM000123

**2**                                           1,208,344

ables the parts to fit together as shown in Figs. 5 and 6, and renders the distance between the feet 25 and 26 greater than the width of the base or frame at its broad
5 end. The bolt and three pairs of eyes constitute means by which the base, platform and yoke are hinged together, each of these three parts being angularly movable on the axis of the bolt with relation to the two
10 others, and the bolt, spacing-sleeve and nut form a clamp by which the parts may be tightly held in various positions to which they may be adjusted.

It will be seen that whether the base is
15 vertical or nearly horizontal the platform may be either horizontal or vertical or may be inclined at any desired angle to the plane of the horizon. The yoke so turns that the feet 25 and 26, which are fast together and
20 turn together on the axis of the bolt, may be located behind the bolt as they are shown in Figs. 1, 3 and 4, or at the sides of the base as they are shown in Figs. 5 and 6, their length being much less than that of the base
25 or that of the bolt, so that they do not project far from the base at the sides thereof and so that when the device either is held against a vertical or steeply sloping surface, or rests on a flat or slightly inclined surface,
30 there is but little space between the base and that surface and the device is far more stable than an ordinary tripod having legs that are many times as long as the head of the tripod. The camera rests on the seat 12
35 and is fastened to the platform by the screw 13, when the holding-device and camera are in use, the screw fitting in a hole in the frame of the camera and engaging with an internal screw-thread formed in that frame.
40 Then the feet 25 and 26 are behind the bolt. The platform may be readily adjusted and clamped in the desired position when the feet rest on the object on which the device is to stand or against which it is to be held.
45 Of course the axis of the bolt will usually be horizontal when the platform is adjusted and the camera operated.

A camera-holding device like that described and suitable to hold a small camera
50 may be conveniently carried in an ordinary coat-pocket.

It will be understood that the invention may be embodied in devices differing in details of construction from the camera-hold-
55 ing device shown and particularly described herein.

Having thus described my invention, what I claim as new and desire to secure by Letters Patent, is:
60 1. A camera-holding device comprising a base, a platform hinged thereto, feet adjacent to the ends of the hinge, and a clamp effective to hold the platform adjusted with relation to the base, these feet being fast to-
65 gether and their length being less than that

of the base and less than the width of that part of the base which is next to the hinge.

2. A camera-holding device comprising a base, a platform hinged thereto, a clamp effective to hold the platform adjusted with 70 relation to the base, and angularly movable feet adjacent to the ends of the hinge, these feet being fast together and their length being less than that of the base and less than the width of that part of the base 75 which is next to the hinge.

3. A camera-holding device comprising a base, a platform hinged thereto, a clamp effective to hold the platform adjusted with relation to the base, and three short feet 80 which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge, and the other being fast on the base.

4. A camera-holding device comprising a base, a platform hinged thereto, a clamp 85 effective to hold the platform adjusted with relation to the base, and three short feet which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge and being pivotally connected 90 with the base, and the other being fast on the base.

5. A camera-holding device comprising a base, a platform hinged thereto, a fastening to secure the camera on the platform, a 95 clamp effective to hold the platform adjusted with relation to the base, and three short feet which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge and the other being fast on 100 the base.

6. A camera-holding device comprising a base, a platform hinged thereto, a screw attached to and extending through the platform, a clamp effective to hold the platform 105 adjusted with relation to the base, and three short feet which with the base form a low tripod, two of the feet being adjacent to the ends of the hinge, and the platform including a camera-seat surrounding the screw 110 and the other being fast on the base.

7. A camera-holding device comprising a base, a platform, a yoke, and a bolt on which the three other parts are mounted and on which they are angularly movable, the ends 115 of the yoke forming feet.

8. A camera-holding device comprising a base, a platform, a yoke, a bolt on which said three other parts are mounted and on which they are angularly movable, a spac- 120 ing-sleeve, and a pair of friction-washers, the ends of the yoke forming feet, the base, platform and yoke each having a pair of eyes through which the bolt extends, the spacing-sleeve being on the bolt between the 125 eyes of each pair, each of the friction-washers being on the bolt between an eye of the base and an eye of the platform, and the eyes of both the base and platform being between those of the yoke. 130

ADJCAM000124

Case 6:10-cv-00329-LED   Document 575-2   Filed 12/19/11   Page 117 of 124 PageID #:  4488

1,208,344    3

9. A camera-holding device comprising a base, a platform hinged thereto, a clamp, and two feet which are pivotally connected with the base, the clamp being effective to hold the platform and feet adjusted with relation to the base.

10. A camera-holding device comprising a base, a platform hinged thereto, a clamp, and three feet which with the base form a tripod, two of the feet being adjacent to the ends of the hinge, the clamp being effective to hold the platform adjusted with relation to the base, and the base and platform each having lateral flanges, those of one part fitting between those of the other.

11. A camera-holding device comprising a base which is narrow at one end and the lateral edges of which are straight and diverge as they recede from that end and which has eyes at its broad end, a platform which is broader at one end than at the other and which has eyes at its broad end and a camera-seat at its narrow end, a bolt which extends through the eyes of the base and platform, a spacing-sleeve on the bolt, and three feet which with the base form a tripod, two of the feet being adjacent to the eyes of the base and the other being on the base close to its narrow end.

12. A camera-holding device comprising a base which is narrow at one end and the lateral edges of which are straight and diverge as they recede from that end and which has eyes at its broad end, a platform which is broader at one end than at the other and which has eyes at its broad end and a camera-seat at its narrow end, a bolt which extends through the eyes of the base and platform and on which at one end is a winged nut, the eyes of the platform being between those of the base, a spacing-sleeve which surrounds the bolt and fits between the eyes of the platform, and three feet which with the base form a tripod, one of the feet being on the base close to its narrow end and the others being on the bolt and being angularly movable thereon, one of them being next to the head of the bolt and the other next to the winged nut.

13. A camera-holding device comprising a base which is narrow at one end and the lateral edges of which diverge as they recede from that end, a platform which is broader at one end than at the other and has on it a camera-seat, the base and platform being pivotally connected together at their broad ends, a fastening to secure a camera on the platform, and a clamp effective to hold the platform adjusted with relation to the base.

14. A camera-holding device comprising a base which is narrow at one end and has lateral flanges which diverge as they recede from that end, a platform which is broader at one end than at the other and has on it a camera-seat, the base and platform being pivotally connected together at their broad ends, a fastening to secure a camera on the platform, and a clamp effective to hold the platform adjusted with relation to the base, the platform being adjustable to a position in which it fits close to the base from end to end and between the flanges of the base.

EDWARD S. McALL.

Copies of this patent may be obtained for five cents each, by addressing the "Commissioner of Patents, Washington, P. C."

ADJCAM000125

Corrections in Letters Patent No. 1,208,344.

It is hereby certified that in Letters Patent No. 1,208,344, granted December 12, 1916, upon the application of Edward S. McAll, of Ilion, New York, for an improvement in "Camera-Holding Devices," errors appear in the printed specification requiring correction as follows: Page 2, line 109, claim 6, after the word "hinge" and before the comma insert the words *and the other being fast on the base;* same page and claim, at the end of line 110 insert a period and strike out line 111; and that the said Letters Patent should be read with these corrections therein that the same may conform to the record of the case in the Patent Office.

Signed and sealed this 9th day of January, A. D., 1917.

[SEAL.]                                         F. W. H. CLAY,

                                         *Acting Commissioner of Patents.*

ADJCAM000126

# MPI Family Report (Family Bibliographic and Legal Status)

In the MPI Family report, all publication stages are collapsed into a single record, based on identical application data. The bibliographic information displayed in the collapsed record is taken from the latest publication.

**Report Created Date:**   2010-02-22

**Name of Report:**

**Number of Families:**   1

**Comments:**

## Table of Contents

1.   US5855343A   19990105   IREZ RESEARCH CORP   US
     Camera clip ................................................................................................................................   1



## Family1

## 1 records in the family.

## US5855343A    19990105



**(ENG) Camera clip**

**Assignee:**  IREZ RESEARCH CORP     US

**Inventor(s):**  KREKELBERG DAVID E   US

**Application No:**  US  81416897   A

**Filing Date:**  19970307

**Issue/Publication Date:**  19990105

**Abstract:**   (ENG) A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

**Priority Data:**  US 81416897 19970307 A I;

**IPC (International Class):**   A47G02900

**ECLA (European Class):**   F16M01302; F16M01112; F16M01120; G06F00116P2C

**US Class:**  248121; 248126; 248918

**Agent(s):**   Nawrocki, Rooney &  Sivertson, P

**Examiner Primary:**  Ramirez, Ramon O.

**Examiner Assistant:**  Phan, Long Dinh

**US Post Issuance:**
--US Litigations: NOTICE OF LITIGATION; NOTICE OF LITIGATION PAR Technologies, Inc. v. Philips Electronics North America Corporation, et al, Filed Jul. 9, 2001, D.C.
Arizona (Phoenix), Doc. No. CIV '01 1273 PHX MHM; NOTICE OF LITIGATION Logitech, Inc. v. Par Technologies, Inc. ,
Filed May 21, 2001, D.C. N.D. California, Doc. No. C01-1983 SI   Order
of dismissal with prejudice pursuant to the parties' settlement agreement,
Filed January 14, 2002,HonorableSusan Illston, United States District
Court, Northern District of California

**Assignments Reported to USPTO:**
**Reel/Frame:**  08730/0592   **Date Signed:**  19970813   **Date Recorded:**  19970827
**Assignee:**  IREZ RESEARCH, CORPORATION SUITE 485 5929 BAKER ROAD MINNETONKA
MINNESOTA 55345

**Assignor:**  KREKELBERG, DAVID E.

**Corres. Addr:**  NAWROCKI, ROONEY & SIVERTSON, P.A. LAWRENCE M. NAWROCKI 3433
BROADWAY STREET N.E., SUITE 401 MINNEAPOLIS, MN 55413
**Brief:**  ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).



**Reel/Frame:** 09669/0507  **Date Signed:** 19981219  **Date Recorded:** 19981231
**Assignee:** ANCHOR BANK NA 1055 E. WAYZATA BLVD. WAYZATA MINNESOTA 55391

**Assignor:** IREZ RESEARCH CORP.

**Corres. Addr:** HUGH D. JAEGER 1000 SUPERIOR BLVD., STE. 302 WAYZATA, MN 55391
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Reel/Frame:** 09671/0084  **Date Signed:** 19981219  **Date Recorded:** 19981231
**Assignee:** PAR TECHNOLOGIES, INC. 14605 AIRPORT DRIVE, SUITE 304 SCOTTSDALE ARIZONA
         85260

**Assignor:** ANCHOR BANK NA

**Corres. Addr:** HUGH D. JAEGER 1000 SUPERIOR BLVD., SUITE 302 WAYZATA, MN 55391
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Reel/Frame:** 12745/0992  **Date Signed:** 20020312  **Date Recorded:** 20020403
**Assignee:** WIYN INVESTMENTS 865 EAST SWEETWATER AVENUE SCOTTSDALE ARIZONA

**Assignor:** PAR TECHNOLOGIES, INC.

**Corres. Addr:** KINNEY & LANGE, P.A. ALANA BERGMAN 312 SOUTH THIRD STREET
         MINNEAPOLIS, MN 55415-1002
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FORDETAILS).

**Reel/Frame:** 12813/0714  **Date Signed:** 20020312  **Date Recorded:** 20020422
**Assignee:** GLOBALMEDIA GROUP 15020 NORTH 74TH STREET SCOTTSDALE ARIZONA 85260

**Assignor:** WIYN INVESTMENTS

**Corres. Addr:** KINNEY & LANGE, P.A. ALANA T. BERGMAN 312 SOUTH THIRD STREET
         MINNEAPOLIS, MN 55415-1002
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENTFOR DETAILS).

**Reel/Frame:** 17198/0952  **Date Signed:** 20060222  **Date Recorded:** 20060222
**Assignee:** WIYN INVESTMENTS, LLC 8665 E. SWEETWATER SCOTTSDALE ARIZONA 85260

**Assignor:** PAR TECHNOLOGIES, INC.

**Corres. Addr:** JOEL E. BARTHELEMY 8281 EAST GELDING DRIVE SCOTTSDALE, AZ 85260
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Reel/Frame:** 17207/0320  **Date Signed:** 20060223  **Date Recorded:** 20060223
**Assignee:** GLOBALMEDIA GROUP, LLC 8281 EAST GELDING DRIVE SCOTTSDALE ARIZONA
         85260

**Assignor:** WIYN INVESTMENTS, LLC

**Corres. Addr:** JOEL E. BARTHELEMY 8281 EAST GELDING DRIVE SCOTTSDALE, AZ 85018
**Brief:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Legal Status:**

| Date | +/- | Code | Description |
|------|-----|------|-------------|
| 19970827 | () | AS | New owner name: IREZ RESEARCH, CORPORATION, MINNESOTA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:KREKELBERG, DAVID E.;REEL/FRAME:008730/0592; Effective date: 19970813; |



| | | | |
|---|---|---|---|
| 19970827 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: IREZ RESEARCH, CORPORATION SUITE 485 5929 BAKER RO; Effective date: 19970813; |
| 19970827 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: KREKELBERG, DAVID E.; Effective date: 19970813; |
| 19970827 | () | AS02 | New owner name: IREZ RESEARCH, CORPORATION SUITE 485 5929 BAKER RO; Effective date: 19970813; |
| 19970827 | () | AS02 | New owner name: KREKELBERG, DAVID E.; Effective date: 19970813; |
| 19981231 | () | AS | New owner name: ANCHOR BANK NA, MINNESOTA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:IREZ RESEARCH CORP.;REEL/FRAME:009669/0507; Effective date: 19981219; |
| 19981231 | () | AS | New owner name: PAR TECHNOLOGIES, INC., ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:ANCHOR BANK NA;REEL/FRAME:009671/0084; Effective date: 19981219; |
| 19981231 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: PAR TECHNOLOGIES, INC. 14605 AIRPORT DRIVE, SUITE; Effective date: 19981219; |
| 19981231 | ( ) | AS02 | ASSIGNMENT OF ASSIGNOR'S INTEREST New owner name: ANCHOR BANK NA; Effective date: 19981219; |
| 19981231 | () | AS02 | New owner name: PAR TECHNOLOGIES, INC. 14605 AIRPORT DRIVE, SUITE; Effective date: 19981219; |
| 19981231 | () | AS02 | New owner name: ANCHOR BANK NA; Effective date: 19981219; |
| 20020403 | ( ) | AS | ASSIGNMENT New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUE SCOTTS; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | ( ) | AS | ASSIGNMENT New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUESCOTTSD; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC. /AR;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | () | AS | New owner name: WIYN INVESTMENTS, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | () | AS | New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUE SCOTTS; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020403 | () | AS | New owner name: WIYN INVESTMENTS 865 EAST SWEETWATER AVENUESCOTTSD; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC. /AR;REEL/FRAME:012745/0992; Effective date: 20020312; |
| 20020422 | ( ) | AS | ASSIGNMENT New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREET SCOTTSDA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS;REEL/FRAME:012813/0714; Effective date: 20020312; |

ADJCAM000130

| 20020422 | ( ) | AS | ASSIGNMENT New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREETSCOTTSDAL; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS /AR;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20020422 | () | AS | New owner name: GLOBALMEDIA GROUP, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20020422 | () | AS | New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREET SCOTTSDA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20020422 | () | AS | New owner name: GLOBALMEDIA GROUP 15020 NORTH 74TH STREETSCOTTSDAL; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS /AR;REEL/FRAME:012813/0714; Effective date: 20020312; |
| 20060222 | ( ) | AS | ASSIGNMENT New owner name: WIYN INVESTMENTS, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:017198/0952; Effective date: 20060222; |
| 20060222 | () | AS | New owner name: WIYN INVESTMENTS, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:017198/0952; Effective date: 20060222; |
| 20060222 | () | AS | New owner name: WIYN INVESTMENTS, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:PAR TECHNOLOGIES, INC.;REEL/FRAME:017198/0952; Effective date: 20060222; |
| 20060223 | ( ) | AS | ASSIGNMENT New owner name: GLOBALMEDIA GROUP, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS, LLC;REEL/FRAME:017207/0320; Effective date: 20060223; |
| 20060223 | () | AS | New owner name: GLOBALMEDIA GROUP, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS, LLC;REEL/FRAME:017207/0320; Effective date: 20060223; |
| 20060223 | () | AS | New owner name: GLOBALMEDIA GROUP, LLC, ARIZONA; : ASSIGNMENT OF ASSIGNORS INTEREST;ASSIGNOR:WIYN INVESTMENTS, LLC;REEL/FRAME:017207/0320; Effective date: 20060223; |

 *MicroPatent Patent Index - an enhanced INPADOC database*

ADJCAM000131

## USPTO Maintenance Report

| Patent Bibliographic Data | | 02/22/2010 05:21 PM | |
|---|---|---|---|
| Patent Number: | 5855343 | Application Number: | 08814168 |
| Issue Date: | 01/05/1999 | Filing Date: | 03/07/1997 |
| Title: | CAMERA CLIP | | |
| Status: | 12th year fee window opens: 01/05/2010 | Entity: | Small |
| Window Opens: | 01/05/2010 | Surcharge Date: 07/07/2010 | Expiration: N/A |
| Fee Amt Due: | $2,055.00 | Surchg Amt Due: $0.00 | Total Amt Due: $2,055.00 |
| Fee Code: | 2553 | MAINTENANCE FEE DUE AT 11.5 YEARS | |
| Surcharge Fee Code: | | | |
| Most recent events (up to 7): | 08/23/2006 08/23/2006 07/26/2006 08/19/2002 08/19/2002 07/23/2002 | Payment of Maintenance Fee, 8th Yr, Small Entity. 7.5 yr surcharge - late pmt w/in 6 mo, Small Entity. Maintenance Fee Reminder Mailed. Payment of Maintenance Fee, 4th Yr, Small Entity. Surcharge for late Payment, Small Entity. Maintenance Fee Reminder Mailed. --- End of Maintenance History --- | |
| Address for fee purposes: | GLOBAL MEDIA GROUP, LLC 15020 N. 74TH STREET, SUITE B SCOTTSDALE, AZ 85260 | | |

ADJCAM000132

*ADJUSTACAM, LLC*
*V.*
*AMAZON.COM, INC., ET AL.*

NO. 6:10-cv-329-LED

PLAINTIFF'S CLAIM CONSTRUCTION TUTORIAL



CEP IP

1

# U.S. PATENT NO. 5,855,343
# CAMERA CLIP





US005855343A

**United States Patent** [19]

Krekelberg

[11] Patent Number: 5,855,343

[45] Date of Patent: Jan. 5, 1999

[54] CAMERA CLIP

[75] Inventor: David E. Krekelberg, Minnetonka, Minn.

[73] Assignee: IREZ Research, Corporation, Minnetonka, Minn.

[21] Appl. No.: 814,168

[22] Filed: Mar. 7, 1997

[51] Int. Cl.⁶ .................................... A47G 29/00
[52] U.S. Cl. ...................... 248/121; 248/126; 248/918
[58] Field of Search .......................... 248/121, 126,
248/440.1, 166, 176.1, 688, 918; 224/908;
396/421, 422, 423, 424, 425, 426, 427,
428

[56] References Cited

U.S. PATENT DOCUMENTS

1,208,344  12/1916  McAll ...................... 248/126

Primary Examiner—Ramon O. Ramirez
Assistant Examiner—Long Dinh Phan
Attorney, Agent, or Firm—Nawrocki, Rooney & Sivertson, P.A.

[57] ABSTRACT

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

21 Claims, 2 Drawing Sheets



2

# U.S. PATENT NO. 5,855,343

- The '343 patent is entitled "Camera Clip."

- Apparatuses which comprise camera clips are often referred to as "webcams."

- At a high level, the invention of the '343 patent comprises a novel adjustable camera clip comprising one disposition on a generally horizontal, planar surface (for example a table top), and another disposition when, for example, attached to the screen of a laptop computer.



3

Case: 13-1665   Document: 93-3   Page: 434   Filed: 12/11/2014

# '343 PATENT – EXEMPLARY FIGS. 2 & 4

Exemplary Fig. 2 shows a preferred embodiment webcam in a first disposition on a table top.



Exemplary Fig. 4 shows the same webcam in a second disposition when (in an exemplary embodiment) attached to the screen of a laptop computer, as follows:





4



Case: 13-1665   Document: 93-3   Page: 436   Filed: 12/1/2014

# '343 PATENT

The '343 patent has five independent claims, which are claims 1, 10, 19, 20 and 21.



6

# '343 Patent, Exemplary Claim 1

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object,

said hinge member rotating about a second axis of rotation relative to said support frame,

said first axis of rotation being generally perpendicular to said second axis of rotation,

said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object,

said support frame having a first disposition positioned on said generally horizontal, substantially planar surface,

and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation,

the camera being maintained adjacent said edge in said second disposition of said support frame.



7

Exemplary Claim 1 vis-a-vis an Exemplary Embodiment

1. Apparatus for supporting a camera . . . comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object,

said hinge member rotating about a second axis of rotation relative to said support frame,

said first axis of rotation being generally perpendicular to said second axis of rotation,

said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object,

said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and

said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation,

the camera being maintained adjacent said edge in said second disposition of said support frame.





CEP IP

8

Case: 13-1665   Document: 93-3   Page: 439   Filed: 12/11/2014

# '343 Patent, Claims 10, 20 & 21

Independent claim 10 is similar to claim 1, except it comprises additional claim limitations related to the support frame being comprised of "a rear support element and a first and a second front support element. . ."

Independent claim 20 is similar to claim 1, except it comprises additional claim limitations related to "wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface . . ."

Independent claim 21 is similar to claim 1, except that it comprises additional claim limitations related to "wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object. . ."



**CEP IP**

9

# '343 Patent, Claim 19

Independent claim 19 covers a "camera clip for supporting a camera on a laptop computer" . . . comprising . . .

a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

a support frame hingedly attached to said hinge  . . .

Claims 1, 10, 20 & 21: "support frame *rotatably attached*  to said hinge member.. ."

Claim 19: "support frame *hingedly attached*  to said hinge member. . ."



10

# Hinge member: rotatable attachment

Hinge member: a structural element that joins to another for rotation in at least one axis of rotation

Including structurally, a hinge member comprises: (1) *for rotatable attachment to a camera*; and (2) for rotatable (claims 1, 10, 20 & 21) or hinged (claim 19) attachment to a support frame.

E.g.,

"a hinge member adapted to *be rotatably attached* to the camera" Claims 1, 10, 19, 20 & 21

"Hinge member 16 is *rotatably attached* to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16." Col. 4, lns. 17-19.

Exemplary embodiment

*Fig. 3*



Case: 13-1665    Document: 93-3    Page: 443    Filed: 12/11/2014

# Hinge member: rotatable and hinged attachment

Hinge member: a structural element that joins to another for rotation in at least one axis of rotation

Including structurally, a hinge member comprises: (1) for rotatable attachment to a camera; and (2) *for rotatable (claims 1, 10, 20 & 21) or hinged (claim 19) attachment to a support frame.*

E.g.,

"a support frame *rotatably attached* to said hinge member and configured to support said hinge member on the surface and the object" Claims 1, 10, 20 & 21

"a support frame *hingedly attached* to said hinge member to engagingly support said hinge member on the display screen" Claim 19

"Support frame 18 is *hingedly attached* to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. ." Col. 4, lns. 120-24



Exemplary embodiment



12

A2970

# Support Frame: structural support

Support frame: a structural element that supports another structure (e.g., supports a hinge)

E.g.,

"a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object" Claims 1, 10, 20 & 21

"a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen" Claim 19

"Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. ." Col. 4, lns. 20-24.

"Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42." Col.; 4, lns. 27-30.



Fig. 2

Fig. 4

Exemplary embodiments



13

Case: 13-1665    Document: 93-3    Page: 444    Filed: 12/1/2014

# Maintained adjacent said edge

Claim 1: Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising: . . . the camera being maintained adjacent said edge in said second disposition of said support frame. . ."

Claim 19: A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising: . . . the camera being maintained adjacent the edge. . ."

Claim 21: Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising: . . . the camera being maintained adjacent the edge . . ."

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Col. 5, lns. 1-6.

Exemplary embodiment:



Fig. 4



14

# Display screen which can be inclined from a generally horizontal position

19. A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen . . .

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position. . . . Col. 5, lns. 1-8.

Exemplary embodiment:



Fig. 4

CEP IP

15



# Display screen which can be inclined from a generally horizontal position

Exemplary embodiment:





CEP **IP**

16

Case: 13-1665    Document: 93-3    Page: 447    Filed: 12/1/2014

# Pivot Element

8. Apparatus according to claim 1 wherein the hinge member includes a body having a proximal and a distal end, a <mark>pivot element</mark> at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body . . .

FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A <mark>pivot element 80</mark> at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. Col. 5, lns. 37-41.

Exemplary embodiment:



Fig. 4

CEP IP

17

# Rotation of said support frame being prevented along an axis substantially parallel to said second axis

19. A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a **second axis** of rotation relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said **second axis** where said second axis is substantially parallel to said edge.

Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Col. 5, lns. 15-20.



Fig. 3

Fig. 4

Exemplary embodiment:



18

Case: 13-1665   Document: 93-3   Page: 449   Filed: 12/11/2014

Case: 13-1665   Document: 93-3   Page: 450   Filed: 12/1/2014

*ADJUSTACAM, LLC*
*V.*
*AMAZON.COM, INC., ET AL.*

NO. 6:10-cv-329-LED

END OF
PLAINTIFF'S CLAIM CONSTRUCTION TUTORIAL



19

A2977

# THE AMERICAN HERITAGE
# DICTIONARY
## OF THE ENGLISH LANGUAGE



Words that are believed to be registered trademarks have been
checked with authoritative sources. No investigation has been
made of common-law trademark rights in any word, because
such investigation is impracticable. Words that are known to
have current registrations are shown with an initial capital and
are also identified as trademarks. The inclusion of any word
in this Dictionary is not, however, an expression of the pub-
lishers' opinion as to whether or not it is subject to proprietary
rights. Indeed, no definition in this Dictionary is to be regarded
as affecting the validity of any trademark.

© 1969, 1970, 1971, 1973, 1975, 1976, 1978, 1979, 1980, 1981 by Houghton Mifflin Company
All correspondence and inquiries should be directed to
Dictionary Division, Houghton Mifflin Company
Two Park Street, Boston, Massachusetts 02107

All rights reserved under Bern and Pan-American Copyright Conventions

ISBN: 0-395-20360-0 (new college edition; thumb-indexed)
0-395-20359-7 (new college edition; plain edges)
0-395-24575-3 (high-school edition)
0-395-09066-0 (larger-format edition)

Library of Congress Catalog Card Number 76–86995

Manufactured in the United States of America

Computer-composed by Inforonics, Inc.
in Maynard, Massachusetts

**a-tom-ic** (ə-tŏm′ĭk) *adj.* **1.** Of or relating to an atom or atoms. **2.** Of or employing atomic energy: *an atomic submarine.* **3.** Very small; infinitesimal. —**a-tom′i-cal-ly** *adv.*

**atomic age.** Also **Atomic Age.** The current era as characterized by the discovery, technological applications, and sociopolitical consequences of atomic energy.

**atomic bomb.** An explosive weapon of great destructive power derived from the rapid release of energy in the fission of heavy atomic nuclei, as of uranium 235. **2.** Any bomb deriving its destructive power from the release of nuclear energy. Also called "atom bomb," "A-bomb." See **hydrogen bomb.**

**atomic clock.** An extremely precise timekeeping device regulated in correspondence with a characteristic invariant frequency of an atomic or molecular system.

**atomic energy. 1.** The energy released from an atomic nucleus in fission or fusion. **2.** This energy regarded as a source of practical power.

**Atomic Energy Commission.** *Abbr.* **AEC, A.E.C.** A five-member advisory board formed in the United States in 1946 for the domestic control of atomic energy.

**at-o-mic-i-ty** (ăt′ə-mĭs′ə-tē) *n.* **1.** The state of being composed of atoms. **2.** *Chemistry.* **a.** The number of atoms in a molecule. **b.** Valence.

**atomic mass.** The mass of an atomic system or constituent, usually expressed in atomic mass units.

**atomic mass unit.** *Abbr.* **amu** A unit of mass equal to $\frac{1}{12}$ the mass of the carbon isotope with mass number 12, approximately $1.6604 \times 10^{-24}$ gram.

**atomic number.** *Symbol* **Z** The number of protons in an atomic nucleus.

**atomic pile.** A **nuclear reactor** (*see*).

**atomic reactor.** A **nuclear reactor** (*see*).

**atomic theory. 1.** The physical theory of the structure, properties, and behavior of the atom. **2.** Atomism.

**atomic weight.** *Abbr.* **at wt** The average weight of an atom of an element, usually expressed relative to one atom of the carbon isotope taken to have a standard weight of 12.

**at-om-ism** (ăt′əm-ĭz′əm) *n.* **1.** The ancient theory of Democritus, Epicurus, and Lucretius, according to which simple, indivisible, and indestructible atoms are the basic components of the entire universe. **2.** *Sociology.* Any theory according to which social institutions and processes arise solely from the acts of individual men. **3.** *Political Science.* **a.** The division or tendency to divide into subclasses, groups, or units of a given society. **b.** The foregoing tendency accompanied by or arising from a strong subjective individualism. —**at′om-ist** *n.* —**at′om-is′tic** (-ĭs′tĭk), **at′om-is′ti-cal** *adj.* —**at′om-is′ti-cal-ly** *adv.*

**at-om-ize** (ăt′əm-īz′) *tr.v.* **-ized, -izing, -izes. 1.** To reduce or separate into atoms. **2. a.** To reduce (a liquid) to a spray. **b.** To spray (a liquid) in this form. **3.** To subject to bombardment with atomic weapons. —**at′om-i-za′tion** *n.*

**at-om-iz-er** (ăt′əm-ī′zər) *n.* A device for producing a fine spray, especially of perfume or medicine.

**atom smasher.** An atomic particle **accelerator** (*see*).

**at-o-my[1]** (ăt′ə-mē) *n., pl. -mies. Archaic. 1.** A tiny particle. **2.** A tiny being. [From Latin *atomī,* plural of *atomus,* ATOM.] (Shakespeare).

**at-o-my[2]** (ăt′ə-mē) *n., pl. -mies. Archaic.* A skeleton or a gaunt person. [From an *atomy,* improper spelling of ANATOMY.]

**a-to-nal** (ă-tō′nəl) *adj. Music.* Lacking a tonal center. —**a-to′-nal-ly** *adv.*

**a-to-nal-ism** (ă-tō′nəl-ĭz′əm) *n. Music.* **1.** The lack of a tonal center or key, as a principle of musical composition. **2.** The theory of atonal composition.

**a-to-nal-i-ty** (ā′tō-năl′ə-tē) *n. Music.* A style of composition in which tonal center or key is disregarded.

**a-tone** (ə-tōn′) *v.* **atoned, atoning, atones.** —*intr.* **1.** To make amends, as for a sin or fault. Used with *for.* **2.** *Archaic.* To agree. —*tr. Archaic.* **1.** To expiate. **2.** To reconcile or harmonize. **3.** To conciliate; appease. [Middle English *atonen,* to be reconciled, from *at one,* of one mind, in accord : AT + ONE.] —**a-ton′a-ble, a-tone′a-ble** *adj.* —**a-ton′er** *n.*

**a-tone-ment** (ə-tōn′mənt) *n.* **1.** Amends or reparation made for an injury or wrong; expiation; recompense. **2.** In the Hebrew Scriptures, man's reconciliation with God after having transgressed the covenant. **3.** *Capital* **A.** *Theology.* **a.** The redemptive life and death of Christ. **b.** The reconciliation of God and man thus brought about by Christ. **4.** *Christian Science.* The radical obedience and purification, exemplified in the life of Jesus, by which humanity finds man's oneness with God. **5.** *Archaic.* Reconciliation; concord.

**a-ton-ic** (ā-tŏn′ĭk) *adj.* **1.** Not accented: *atonic words and syllables.* **2.** *Pathology.* Pertaining to, caused, or characterized by atony. —*n.* **a.** A word, syllable, or sound that is unaccented. [From *atonique,* from Greek *atonos.* See **atony.**] —**at′o-nic′i-ty** (ăt′ə-nĭs′ə-tē) *n.*

**at-o-ny** (ăt′ə-nē) *n. Pathology.* **1.** Insufficient muscular tone. **2.** *Phonetics.* Lack of accent or stress. [Late Latin *atonia,* from Greek, from *atonos,* not stretched : *a-,* without + *tonos,* a stretching, TONE.]

**a-top** (ə-tŏp′) *adv. Archaic.* On or at the top. —*prep.* On top of *—atop′ adj.*

**-ator.** Indicates one who or that which acts or does; for example, **aviator, radiator.** [Middle English *-atour,* from French, from Latin *-ātor : -ātus,* -ATE + -OR.]

**-atory.** Indicates pertinence to, characteristic of, result of, or effect of; for example, **perspiratory, amendatory.** [Middle English, from Latin *-ātōrius : -ātus,* -ATE + -ōrius, -ORY.]

**ATP** *Biochemistry.* adenosine triphosphate.



atomizer
French perfume atomizer

atrium
Inner court of an
ancient Pompeian villa

**at-ra-bil-ious** (ăt′rə-bĭl′yəs) *adj.* Also **at-ra-bil-i-ar** (-bĭl′ē-ər). **1.** Inclined to melancholy. **2.** Having a peevish disposition; surly. [From Latin *ātra bīlis,* black bile (translation of Greek *melankholía,* MELANCHOLY) : *ātra,* feminine of *āter,* black (see *āter-* in Appendix*) + *bīlis,* BILE.] —**at′ra-bil′ious-ness** *n.*

**A-trek** (ä-trĕk′). A river rising in northeastern Iran and forming part of the border between Iran and the Soviet Union on its 300-mile course to the Caspian Sea.

**A-treus** (ā′trŏŏs′, ā′trē-əs). *Greek Mythology.* A king of Mycenae, father of Agamemnon and Menelaus.

**a-tri-o-ven-tric-u-lar** (ā′trē-ō-vĕn-trĭk′yə-lər) *adj. Anatomy.* Pertaining to the atria and the ventricles of the heart.

**a-trip** (ə-trĭp′) *adj.* Just clear of the bottom. Said of an anchor. [A- (on) + TRIP (to raise an anchor).] —**a-trip′** *adv.*

**a-tri-um** (ā′trē-əm) *n., pl.* **atria** (ā′trē-ə) *or* **-ums. 1.** An open central court, especially in an ancient Roman house. **2. A.** bodily cavity or chamber, as in the heart. Also called "auricle." [Latin *ātrium.* See *āter-* in Appendix.*] —**a′tri-al** *adj.*

**a-tro-cious** (ə-trō′shəs) *adj.* **1.** Extremely evil or cruel; monstrous: *an atrocious crime.* **2.** Exceptionally bad; abominable: *atrocious decor; atrocious behavior.* [From Latin *ātrōx* (stem *ātrōc-*), "dark-looking," horrible, cruel. See *āter-* in Appendix.*] —**a-tro′cious-ly** *adv.* —**a-tro′cious-ness** *n.*

**a-troc-i-ty** (ə-trŏs′ə-tē) *n., pl. -ties.* **1.** Atrocious condition, quality, or behavior; monstrousness; vileness. **2.** An atrocious action, situation, or object; outrage.

**at-ro-phy** (ăt′rə-fē) *n., pl. -phies. 1.** *Pathology.* The emaciation or wasting of tissues, organs, or the entire body. **2.** Any wasting away or diminution: *moral atrophy.* —*v.* **atrophied, -phying, -phies.** —*tr.* To cause to wither; affect with atrophy. —*intr.* To waste away; wither. [Late Latin *atrophia,* from Greek, from *atrophos,* ill-nourished : *a-,* without + *trophē,* nourishment (see **throph-** in Appendix*).] —**a-troph′ic** (ā-trŏf′ĭk), **at′ro-phous** (-fəs) *adj.*

**at-ro-pine** (ăt′rə-pēn′, -pĭn) *n.* Also **at-ro-pin** (-pĭn). An extremely poisonous, bitter, crystalline alkaloid, $C_{17}H_{23}NO_3$, obtained from belladonna and related plants. It is used to dilate the pupil of the eye and as an anesthetic and antispasmodic. [German *Atropin,* from New Latin *Atropa,* genus of belladonna, deadly nightshade, from Greek *atropos,* unchangeable, inflexible. See **Atropos.**]

**At-ro-pos** (ăt′rə-pŏs′, -pəs). *Greek Mythology.* One of the three Fates. [Greek, from *atropos,* inexorable, inflexible : *a-,* not + *trop-,* stem of *trepein,* to turn (see **trep-[1]** in Appendix*).]

**A.T.S. 1.** American Temperance Society. **2.** Army Transport Service.

**att. 1.** attached. **2.** attention. **3.** attorney.

**at-tach** (ə-tăch′) *v.* **-tached, -taching, -taches.** —*tr.* **1.** To fasten on or affix to; connect or join. **2.** To connect as an adjunct or associated part. **3.** To affix or append; add, as a signature. **4.** To ascribe or assign: *I attach no significance to the threat.* **5.** To bind by personal ties, as of affection or loyalty: *He's very attached to his mother.* **6.** *Physiology.* **7.** *Military.* To assign (personnel) to a unit on a temporary basis. Compare **assign. 8.** *Law.* To seize (persons or property) by legal writ. —*intr.* To adhere. [Middle English *attachen,* from Old French *atachier, estachier,* to fasten (with a stake), from *estache,* stake, from Frankish *stakka* (unattested). See **steg-[1]** in Appendix.*] —**at-tach′a-ble** *adj.* —**at-tach′er** *n.*

**at-ta-ché** (ăt′ə-shā′, ä-tä′shā′) *n.* A person officially assigned to the staff of a diplomatic mission to serve in some particular capacity: *a cultural attaché.* [French, "one attached (to a diplomatic mission)," past participle of *attacher,* ATTACH.]

**attaché case.** A briefcase resembling a small suitcase, with hinges and flat sides.

**at-tach-ment** (ə-tăch′mənt) *n.* **1.** The act of attaching or the condition of being attached. **2.** Something that serves to attach one thing to another; a tie, band, or fastening. **3.** Fond regard; affection. **4.** A supplementary part; an accessory. **5.** *Law.* **a.** The legal seizure of a person or property. **b.** The writ ordering such a seizure. —See Synonyms at **appendage.**

**at-tack** (ə-tăk′) *v.* **-tacked, -tacking, -tacks.** —*tr.* **1.** To set upon with violent force; begin hostilities against or conflict with. **2.** To bombard with hostile criticism. **3.** To start work on with purpose and vigor: *attack a problem.* **4.** To begin to affect harmfully. —*intr.* To make an attack; launch an assault. —*n.* **1.** The act of attacking; an assault. **2.** Occurrence of or seizure by a disease. **3.** The initial movement in any task or undertaking. **4.** *Music.* The manner in which a passage or phrase is begun. [French *attaquer,* from Old French, from Old Italian *attaccare,* variant of *estaccare* (unattested), to attach, join (battle), from *stacca* (unattested); stake, from Gothic *stakka* (unattested). See **steg-[1]** in Appendix.*] —**at-tack′er** *n.*

*Synonyms: attack, bombard, assail, storm, assault, beset.* These verbs mean to set upon physically or, in some cases, figuratively. *Attack* applies to any offensive action, physical or verbal, and especially to the beginning of planned aggression. *Bombard* suggests showering with bombs or shells or, figuratively, with words; *bombarded with questions: Assail,* literally and figuratively, implies repeated and violent attacks. *Storm* refers to a sudden, sweeping attempt for quick, total victory. *Assault,* almost always implies physical contact and sudden intense violence; *Beset* suggests encirclement by an enemy force or by adversity and attack from all sides.

**at-tain** (ə-tān′) *v.* **-tained, -taining, -tains.** —*tr.* **1.** To gain; reach; or accomplish by mental or physical effort. **2.** To arrive at, as in time. —*intr.* To succeed in gaining or reaching; arrive at: Usually used with *to. He attained to the highest office in the land.* —See Synonyms at **reach.** [Middle English *atteinen,*

Case 6:10-cv-00329-LED   Document 575-4   Filed 12/19/11   Page 4 of 9 PageID #:  4518

# Webster's
# New World™
# Dictionary

## Fourth Edition

### MICHAEL AGNES
#### Editor in Chief



POCKET BOOKS

New York   London   Toronto   Sydney   Singapore

POCKET BOOKS, a division of Simon & Schuster, Inc.
1230 Avenue of the Americas, New York, NY 10020

Webster's New World™ Dictionary, Pocket Books Paperback Edition

Copyright © 2003 by Wiley Publishing, Inc.

This edition is based on and includes material from *Webster's New World™ College Dictionary,* Fourth Edition, copyright © 2002 by Wiley Publishing, Inc., Cleveland, Ohio

Published by arrangement with Wiley Publishing, Inc.

All rights reserved, including the right to reproduce
this book or portions thereof in any form whatsoever.
For information address Wiley Publishing, Inc.,
10475 Crosspoint Boulevard, Indianapolis, IN 46256

ISBN: 0-7434-7070-2

First Pocket Books trade paperback printing of this revised edition July 2003

10 9 8 7 6 5 4 3 2 1

POCKET and colophon are registered trademarks of
Simon & Schuster, Inc.

Dictionary Editorial offices:
New World Dictionaries
850 Euclid Avenue
Cleveland, OH 44114

Manufactured in the United States of America

For information regarding special discounts for bulk purchases,
please contact Simon & Schuster Special Sales at 1-800-456-6798
or business@simonandschuster.com

This new Pocket F
the acclaimed *Web*
*Fourth Edition,* pul
work: the previous
1990 and revised in
has been edited for
date, portable dictic
in the office.

The dictionary offe
sions, supplements
tive phrases, and p
and etymologies. I
enhance the reader'
and connotations. T
Webster's New Wor
combined 150 years
This latest edition
changes in the polit
during the past deca
rapidly changing vo
terms range from
include *anti-lock, ba*
*broadband, HTML, n*
*utility vehicle, up to*
and many others.

Every reader is enc
of the Dictionary, wh
explanation of how
stored within the dict

**prep. 1** across **2** 'rise

tilted
` or L] *suffix* the
lt of *[alteration]*
Fr or L] *suffix* of
to *[informative]*
ipital of Georgia:

cean touching the
and Europe and

≿ New Jersey: an
00

'. [< Gr] legend-
n the Atlantic
. *Myth.* a giant
ens on his shoul-
iaps
*tomated) (teller)*
r terminal that
ner to deposit,
funds automati-

fir') *n.* [< Gr
. sphere] 1 the
rth · 2 a pervad-
· general tone or
assure equal to
q. m —at'mos-
adj. —at'mos-

yalam *atolu*] a
surrounding a

, not + *temnein*,
a; jos **2** *Chem.,*
lest particles of
e with similar
its to form mol-
ar energy
B
l of an atom or
mic energy or
—a·tom'i·cal·ly

ely destructive
s from a chain
a
ENERGY
: number indi-
rotons in the
element
the weight of
ased upon the
element's iso-

a device used
as of medicine

*n. Music* the
hout relation
i'al) *adj.* —a-

, a·ton'ing [<
nake amends

atoning **2**
t *Theol.* the
the death of

it the top —

illergic reac-

---

tions, as a type of dermatitis, thought
to be inherited

**-a·to·ry** (ə tôr'ē) [< L] *suffix* -ORY

**ATP** (ā'tē'pē') *n.* [a(*denosine*)
*tri(phosphate)*] an organic compound
present in, and vital to, all living cells

**a·tri·um** (ā'trē əm) *n., pl.* **a'tri·a** (-ə) or
**a'tri·ums** [L] **1** the central court or
main room of an ancient Roman house
**2** a court or entrance hall, usually of
more than one story **3** either of the
heart's upper chambers

**a·tro·cious** (ə trō'shəs) *adj.* [< L *atrox,*
fierce] **1** very cruel, evil, etc. **2** very
bad or unpleasant; offensive —**a·**
**tro'cious·ly** *adv.* —**a·tro'cious·ness** *n.*

**a·troc·i·ty** (ə träs'ə tē) *n., pl.* **-ties 1**
atrocious behavior **2** an atrocious act
**3** [Inf.] a very displeasing thing

**at·ro·phy** (a'trə fē) *n.* [< Gr *a-,* not +
*trephein,* to feed] a wasting away or
failure to grow, esp. of body tissue, an
organ, etc. —*vt., vi.* **-phied, -phy·ing** to
undergo atrophy —*vt.* to cause atrophy
in

**at·ro·pine** (at'rə pēn', -pin') *n.* [< Gr
*Atropos,* one of the Fates + -INE²] an
alkaloid obtained from belladonna,
used to relieve spasms, etc.

**at·tach** (ə tach') *vt.* [< OFr *estache,* a
post, stake] **1** to fasten by sticking,
tying, etc. **2** to join; often used reflex-
ively **3** to connect by ties of affection,
etc. **4** to add (a signature, etc.) **5** to
ascribe **6** *Law* to take (property) by
writ —**at·tach'a·ble** *adj.*

**at·ta·ché** (at'ə shā'; *chiefly Brit* ə tash'ā)
*n.* [Fr: see prec.] a member of an
ambassador's diplomatic staff

**attaché case** a briefcase

**at·tach'ment** *n.* **1** an attaching or
being attached **2** anything that
attaches; fastening **3** devotion **4** any-
thing attached **5** an accessory for an
electrical appliance, etc. **6** *Law* a tak-
ing of property into custody

**at·tack** (ə tak') *vt.* [< It *attaccare*] **1** to
use force against in order to harm **2** to
speak or write against **3** to begin acting
vigorously **4** to begin acting upon
harmfully —*vi.* to make an assault —*n.*
**1** an attacking **2** any hostile action,
esp. with troops **3** the onset of a dis-
ease **4** a beginning of a task, undertak-
ing, etc. —**at·tack'er** *n.*

**at·tain** (ə tān') *vt.* [< L *ad-,* to + *tangere,*
to. touch] **1** to gain; accomplish;
achieve **2** to reach; arrive at —*vi.*
**tain'a·bil·i·ty** *n.* —**at·tain'a·ble** *adj.*

**at·tain'der** (-dər) *n.* [see prec.] loss of
civil rights and property on one sen-
tenced to death or outlawed

**at·tar** (at'ər) *n.* [< Ar *'itr,* perfume] a
perfume made from flower petals, esp.
of roses (**attar of roses**)

**at·tempt** (ə tempt') *vt.* [< L *ad-,* to +
*temptare,* to try] to try to do, get, etc. —
*n.* **1** a try; endeavor **2** an attack, as on
a person's life

**at·tend** (ə tend') *vt.* [< L *ad-,* to +
*tendere,* to stretch] **1** [Now Rare] to
take care of **2** to go with **3** to accom-
pany as a result **4** to be present at —*vi.*
**1** to pay attention **2** to wait (*on* or
*upon*) **3** to apply oneself (*to*) **4** to give

---

**41** ◄ **attribute**

the required care (*to*)

**at·tend'ance** *n.* **1** an attending **2** the
number of persons attending

**at·tend'ant** *adj.* **1** attending or serving
**2** being present **3** accompanying —*n.*
one who attends or serves

**at·ten·tion** (ə ten'shən) *n.* [see ATTEND]
**1** mental concentration or readiness **2**
notice or observation **3** care or consid-
eration **4** an act of courtesy or devo-
tion: *usually used in pl.* **5** the erect pos-
ture of soldiers ready for a command

**attention-deficit hyperactivity dis-**
**order** a mental disorder marked by
inability to concentrate, impulsiveness,
etc.

**at·ten'tive** (-tiv) *adj.* **1** paying atten-
tion **2** courteous, devoted, etc. —**at.**
**ten'tive·ly** *adv.* —**at·ten'tive·ness** *n.*

**at·ten·u·ate** (ə ten'yōō āt') *vt.* **-at'ed,**
**-at'ing** [< L *ad-,* to + *tenuis,* thin] **1** to
make thin **2** to dilute **3** to lessen or
weaken —*vi.* to become thin; weak, etc.
—**at·ten·u·a'tion** *n.* —**at·ten'u·a'tor** *n.*

**at·test** (ə test') *vt.* [< L *ad-,* to + *testari,*
to bear witness] **1** to declare to be true
or genuine **2** to certify, as by oath **3** to
serve as proof of —*vi.* to bear witness
(*to*) —**at·tes·ta·tion** (at'es tā'shən) *n.*

**at·tic** (at'ik) *n.* [< Gr *Attikos,* of Attica
(ancient Gr state): with reference to
architectural style] the room or space
just below the roof; garret

**At·ti·la** (at''l ə, ə til'ə) A.D. 4067-453;
king of the Huns: called **Attila the Hun**

**at·tire** (ə tīr') *vt.* **-tired', -tir'ing** [< OFr
*a-,* to + *tire,* order, row] to dress, esp. in
fine garments; clothe —*n.* clothes, esp.
fine or rich apparel

**at·ti·tude** (at'ə tōōd') *n.* [ult. < L *aptus,*
apt] **1** a bodily posture showing mood,
action, etc. **2** a manner showing one's
feelings or thoughts **3** one's disposi-
tion, opinion, etc. **4** [Slang] a quarrel-
some or haughty temperament or man-
ner

**at·ti·tu·di·nize** (at'ə tōōd''n īz') *vi.*
**-nized', -niz'ing** to pose for effect

**Attn** or **attn** *abbrev.* attention

**at·tor·ney** (ə tur'nē) *n., pl.* **-neys** [< OFr
*a-,* to + *torner,* to turn] any person
legally empowered to act for another;
esp., a lawyer

**attorney at law** a lawyer

**attorney general** *pl.* **attorneys general**
or **attorney generals** the chief law offi-
cer of a government

**at·tract** (ə trakt') *vt.* [< L *ad-,* to +
*trahere,* to draw] **1** to draw to itself or
oneself **2** to get the admiration, atten-
tion, etc. of; allure —*vi.* to be attractive
—**at·tract'a·ble** *adj.*

**at·trac·tion** (ə trak'shən) *n.* **1** an
attracting or being attracted **2** power
to attract; esp., charm **3** anything that
attracts **4** *Physics* the mutual tendency
of bodies to draw together

**at·trac'tive** (-tiv) *adj.* that attracts; esp.,
pleasing, charming, pretty, etc. —**at·**
**trac'tive·ly** *adv.* —**at·trac'tive·ness** *n.*

**at·trib·ute** (ə trib'yōōt; *for n.* a'trə
byōōt') *vt.* **-ut·ed, -ut·ing** [< L *ad-,* to +

Case 0:10-cv-00329-LED   Document 575-4   Filed 12/19/11   Page 7 of 9 PageID #: 4

_India Paper_

# Webster's
# Third
# New International
# Dictionary

## THE ENGLISH LANGUAGE

## UNABRIDGED

_A Merriam-Webster_

REG. U.S. PAT. OFF.

_...ing all the experience and resources of more than_
_...hundred years of Merriam-Webster dictionaries_

EDITOR IN CHIEF

PHILIP BABCOCK GOVE, Ph.D.

AND

THE MERRIAM-WEBSTER
EDITORIAL STAFF



COPYRIGHT © 1961 BY G. & C. MERRIAM CO.

PREVIOUS EDITIONS
COPYRIGHT © 1909, 1913, 1923, 1924, 1926, 1927, 1930, 1934, 1950, 1953, 1954, 1957, 1959
BY G. & C. MERRIAM CO.


PHILIPPINES COPYRIGHT 1961 BY G. & C. MERRIAM CO.

PREVIOUS EDITIONS PHILIPPINES COPYRIGHT 1950, 1953, 1954, 1957, 1959
BY G. & C. MERRIAM CO.
PREVIOUS EDITION COPYRIGHT 1925 IN PHILIPPINE ISLANDS
BY G. & C. MERRIAM CO.


ALL RIGHTS RESERVED
UNDER INTERNATIONAL AND PAN-AMERICAN COPYRIGHT CONVENTIONS
BY G. & C. MERRIAM CO.


*All rights reserved*

MADE IN THE U. S. A.

R. R. DONNELLEY & SONS COMPANY, THE LAKESIDE PRESS, CHICAGO, ILL., U. S. A.
COMPOSITORS
H. O. HOUGHTON AND COMPANY, THE RIVERSIDE PRESS, CAMBRIDGE, MASS., U. S. A.
PRINTERS AND BINDERS

10

**at·ro·pia** \ə'trōpēə\ *n* -s [NL, fr. *Atropa* + -*ia*] : ATROPINE

**atrop·i·dae** \ə'träpə,dē\ *n pl, cap* [NL, fr. *Atropos*, type genus (fr. Gk *Atropos*) + -*idae*; fr. the belief that the ticking sound made by some species of book lice forebodes a death] : a widely distributed family of wingless insects (order Corrodentia) that include most book lice and that feed on organic debris and often damage processed foods, book bindings, herbarium specimens, and similar stored products

**at·ro·pine** \'a·trə,pēn, -pən\ *n* -s [G *atropin*, fr. NL *Atropa* (genus name of *Atropa belladonna*) + G -*in* -ine] : a poisonous white crystalline alkaloid $C_{17}H_{23}NO_3$ extracted from the belladonna and other plants of the family Solanaceae and used esp. in the form of its sulfate to relieve spasms, to diminish secretions, to relieve pain, and to dilate the pupil of the eye; racemic hyoscyamine

**at·ro·pin·ize** \-pə,nīz\ *vt* -ED/-ING/-S : to bring under the influence of atropine

**at·ro·pous** \'a·trəpəs\ *adj* [Gk *atropos* not to be turned, fr. *a*- [2]a + -*tropos* -trope] *bot* : not inverted : ORTHOTROPOUS

**at·ro·scine** \-,sēn,-sən\ *n* -s [ISV *atro*- (fr. NL *Atropa*) + *hyoscine*] : racemic scopolamine

**atry** \ə'trī\ *adj* [[1]a- + *try* ("to lie to")] : kept bow on to the sea by a balance of sails

**atry·pa** \ə'trīpə\ *n, cap* [NL, fr. [2]a- + Gk *trypa* hole — more at TRYPA] : a genus of extinct Silurian and Devonian plicate-shelled or costate-shelled brachiopods having the plates of the brachidium produced into spirally rolled processes with the apices usu. directed toward the plane of symmetry of the valve

[1]**atry·poid** \-,pȯid\ *adj* [NL *Atrypa* + E -*oid*] : belonging to or characteristic of the genus *Atrypa*

[2]**atrypoid** \"\ *n* -s : a brachiopod of the genus *Atrypa* — see BRACHIOPOD illustration

**ats** *pl of* [4]AT

**ats** *abbr* at the suit of

**atsara** *var of* ACHARA

**at·si·na** \at'sēnə\ *n, pl* **atsina** *or* **atsinas** *usu cap* [Blackfoot, lit., good people] **1 a** : an Indian people in Montana and southern Saskatchewan that are part of the Arapaho **b** : a member of such people **2** : a dialect of Arapaho

**at·su·ge·wi** \,atsü'gāwē\ *n, pl* **atsugewi** *or* **atsugewis** *usu cap* [Atsugewi] **1 a** : an Indian people of the Pit river valley in northern California **b** : a member of such people **2** : a Shastan language of the Atsugewi people

**att** \'at\ *n* -s [Siamese] **1** : an old subsidiary coin of Siam worth 1/64 of a tical issued before 1868 in pewter and after that up to 1906 in copper **2** : a unit of value corresponding to the att ⟨2-*att* postage stamp⟩ ⟨½-*att* coin⟩

**att** *abbr* **1** attaché **2** attached **3** attention **4** *often cap* attorney

[1]**at·ta** \'ä,tä\ *n* -s [Hindi *āṭā*] *India* : unsorted wheat flour or meal

[2]**at·ta** \'ad·ə\ *n, cap* [NL] : a New World genus of typical leaf-cutting chiefly tropical ants often very destructive to crops

**at·ta·boy** \'ad·ə,bȯi, 'atə-, ¦==¦=\ *interj* [alter. of *that's the boy*] — used to express encouragement, approval, or admiration

**attacapa** *usu cap, var of* ATAKAPA

**at·tac·ca** \ə'täkə, -akə\ *v imper* [It, lit., attack, imper. sing. of *attaccare* to attack — more at ATTACK] : attack at once — used as a direction in music at the end of a movement to begin the next without pause

**at·tac·co** \ə'tä(,)kō, -ta-\ *n* -s [It, lit., attachment, connection, fr. *attaccare* to attach, attack] : a motive or short phrase in music presented in contrapuntal imitation and introduced in the course of a composition as development or as the feature of a fugue exposition

**at·tach** \ə'tach\ *vb* -ED/-ING/-ES [ME *attachen*, fr. MF *attacher*, alter. (influenced by *a* to, fr. L *ad*) of *estachier*, fr. OF *atachier*, fr. *estache* stake, of Gmc origin; akin to OE *staca* stake — more at AT, STAKE] *vt* **1** : to take by legal authority: **a** : to arrest by writ and bring before a court (as to answer for a debt or a contempt) — now applied chiefly to a taking of the person by a civil process **b** : to seize or take (property) by virtue of a writ or precept to hold the same to satisfy a judgment that may be rendered in the suit — compare ATTACHMENT 1 **2** *obs* **a** : INDICT, ACCUSE ⟨~ a person of murder⟩ **b** : to lay hold of : SEIZE ⟨be ~*ed* by an illness⟩ ⟨~ the food hungrily⟩ **3 a** : CONNECT : place so as to belong : APPOINT ⟨consider to what branch of the law to ~ himself⟩ **b** : to fasten (itself) — used reflexively ⟨a figure of universal fame, of a kind that scarcely ~*es* itself to anyone in this age —Osbert Sitwell⟩ **c** : to order (an individual or unit in the military) to serve more or less temporarily with another organization **d** : to place (an individual or unit in the military) under the control of another organization for specific purposes (as for rations, quarters, or training) — distinguished from *assign* **4** : to bind by personal ties (as of affection or sympathy) : win to affection or devotion — used with *to* ⟨she undertakes to ~ him to her by strong ties: a child, or marriage —H.M. Parshley⟩ **5** : make fast or join (as by string or glue) : BIND, FASTEN, TIE ⟨~ price tags on each article⟩ **6** : to connect by attribution : ASCRIBE — used with *to* ⟨the fetish worshiper ~*es* magical potency to stones —M.R.Cohen⟩ **7** : to associate as a property or adjunct ⟨to this treasure a curse is ~*ed* —Bayard Taylor⟩ ~ *vi* **1** : to fix or fasten itself : ADHERE ⟨the suspicion that he is guilty ~*es* upon his strange actions⟩ ⟨all the advantages that ~ to the office⟩ **2** : to come into legal operation : VEST ⟨an ancient law ~*ed* in this case⟩

**syn** see FASTEN

**at·tach·a·ble** \-əbəl\ *adj* **1** : liable to arrest or legal seizure ⟨goods that are ~ for debt⟩ **2 a** : capable of being fastened or added to something ⟨a handle ~ by two bolts⟩ **b** : capable of being attributed as an adjunct ⟨complete cooperativeness was not ~ to any of his actions⟩

**at·ta·ché** \,ad·ə'shā, ,atə'shā, ,a,ta'shā *also* ə,ta'shā *sometimes* ə'ta(,)shā *or* a't-\ *n* -s [F, past part. of *attacher* to attach] : one attached to another person or to a group; *specif* : an expert (as in science or aviation) on duty with the diplomatic representative of his country at a foreign capital ⟨a military ~⟩ — see COMMERCIAL ATTACHÉ

**at·ta·ché case** \ə'tashē-, -aash-, -aish-, -(,)shā, *less often one of the other pronunciations at* ATTACHÉ, *sometimes* ə'tachə-\ *n* **1** : a traveling case like a suitcase but smaller **2** : BRIEFCASE

attaché case

**attached** *adj* **1** : permanently fixed when adult ⟨an ~ barnacle⟩ ⟨an ~ oyster⟩ **2** *archit* : ENGAGED

**at·tach·ment** \ə'tachmənt\ *n* -s [ME *attachement*, fr. MF, fr. OF *atachement*, fr. *atachier* to attach + -*ment* — more at ATTACH] **1 a** : a seizure or taking into custody (of persons or property) by virtue of a legal process **b** : the writ or precept commanding such seizure — compare GARNISHMENT **2 a** : the state of being attached (as by affection, sympathy, or self-interest) ⟨~ to a friend⟩ **b** : a feeling of affection) that binds a person ⟨~ to a cause⟩ **b** : a feeling ⟨~ for a person⟩ **3** : a device that is attached (as to a machine) esp. for doing special work ⟨~s for a vacuum cleaner⟩ **4** : the physical connection by which one thing is attached to another : FASTENING ⟨cut the ~s of a muscle to a bone⟩ **5** : an attaching by physical connection ⟨the ~ of a recording device to a telephone⟩

**syn** AFFECTION, LOVE: ATTACHMENT implies strong liking, devotion, or loyalty ⟨the *attachment* which they all so obviously felt for him —W.S.Maugham⟩ ⟨are not to lose their *attach*-

... a screw-shell consisting usu. of a screw-shell body and cap and connecting flexible conductor holder or receptacle

[1]**at·tack** \ə'tak, *chiefly substand* -kt\ *vb* **attacked** \-kt, *chiefly substand* -ktəd\ **attacked**; **attacking**; **attacks** [MF *attaquer*, fr. OIt *attaccare* to attach, attack, alter. (influenced by *a* to, fr. L *ad*) of (assumed) OIt *estaccare* to attach, fr. (assumed) OIt *stacca* stake, of Gmc origin; akin to OE *staca* stake — more at AT, STAKE] *vt* **1 a** : to set upon or work against forcefully ⟨~ a man without warning⟩ ⟨if we study any modern river we note how determinedly it ~*s* its banks —W.E.Swinton⟩ : assail esp. with force and weapons ⟨~ the enemy positions⟩ : ASSAULT **b** : to set upon forcibly with sexual intent : subject to indecent assault : RAPE, RAVISH **2** : to threaten (a piece in chess) with immediate capture ⟨the rook is ~*ing* the queen⟩ **3** : to assail with unfriendly or bitter words : begin a controversy with : attempt to overthrow or bring into disrepute (as by criticism or satire) **4** : to begin to affect : seize upon ⟨the kidneys are ~*ed* by an embryonic tumor —H.R.Litchfield & L.H.Dembo⟩ ⟨~*ed* by a fever⟩ **5 a** : to begin to injure, damage, or eat ⟨worms ~*ed* the cabbage plants⟩ **b** : to act upon destructively : DECOMPOSE ⟨the acid ~*s* the metal cup⟩ **6** : to set to work upon (as a problem or an investigation) esp. vigorously : TACKLE ⟨a plan which ~*s* the four basic problems —*Collier's Yr. Bk.*⟩ ~ *vi* : to make an attack ⟨waiting for the enemy to ~⟩ ⟨they ~*ed* furiously in an effort to score the tying goal⟩

**syn** ATTACK, ASSAIL, ASSAULT, BOMBARD, STORM mean to make a more or less violent onslaught upon, literally or figuratively. ATTACK means to move against with more or less violent intent, implying aggression in any sense and the initiative in the onset ⟨the infantry and air force *attacked* the town in coordinated waves⟩ ⟨he and other union leaders were physically *attacked* —*Current Biog.*⟩ ⟨erosion *attacked* the range and began its relentless work of reducing the land to sea level once more —*Amer. Guide Series: N.Y.*⟩ ASSAIL suggests repeated blows in an attack, as with or as if with shells or sword thrusts ⟨the expedition . . . *assailed* by a fleet of fifty-four war canoes —Tom Marvel⟩ ⟨the rain *assailed* him and thorns tore him —H.G.Wells⟩ ⟨*assailed* by doubts⟩ ASSAULT stresses attack at close quarters, the use of brute strength, suddenness, and violence ⟨pilots hammered a rail marshaling yard, bombing twenty boxcars, while other aircraft *assaulted* supply buildings —*N.Y.Times*⟩ ⟨adult ears are not to be *assaulted* by the sudden screams of childish exuberance —Richard Joseph⟩ BOMBARD means to assail with bombs, suggesting by extension an unremitting importuning or pestering with a series of similar things ⟨naval artillery *bombarded* the shore fortifications⟩ ⟨magazine editors are *bombarded* with manuscripts —L.D.Rubin⟩ ⟨he and his office associates were *bombarded* with requests for box seats —*New Yorker*⟩ STORM stresses a violence, rush, and effectiveness of assault that usu. and summarily clears all opposition out of the way ⟨the waves of light tanks *stormed* the infantry positions —S.L.A.Marshall⟩ ⟨a group of soldiers in the International Brigade *stormed* the jail —*Current Biog.*⟩

[2]**attack** \"\ *n* -s **1** : the act of falling on with force or violence : ONSET, ASSAULT, OFFENSE ⟨retreat before the infantry ~⟩ **2 a** : an offensive or antagonistic movement or action of any kind ⟨television was used in many parts of the country as an instrument of ~, rather than of argument —Gilbert Seldes⟩ ⟨the team launched an ~ that carried deep into enemy territory⟩ **b** : RAPE, INDECENT ASSAULT **3 a** : an assault with unfriendly or bitter words ⟨her vocal ~*s* are less savage than they once were —*Newsweek*⟩ **b** : the beginning of corrosive, decomposing, or destructive action by a chemical agent **4 a** : the setting to work upon some undertaking : beginning or method of procedure ⟨the solution in each problem calls for a different ~⟩ **b** : an often extraordinary Salvationist effort to make converts **5** : the act or manner of beginning a musical tone or phrase: as **a** : unanimity of entrance of several performers ⟨a ragged ~⟩ **b** : suddenness or gradualness of beginning a tone **c** : the initial precision of pitch and quality esp. in singing **6** : the initiation or onset of the articulation of a speech sound **7** : a series of aggressive moves in chess usu. for positional advantage; *also* : a threat to capture an opponent's man **8** : cricket bowling (esp. as contrasted with batting); *also* : the bowlers of a cricket team **9** : an effort to hit in fencing — used also as a word of command **10** : any of three lacrosse positions or players between out home and center — called respectively in their order from the opponents' goal *first attack, second attack, third attack* **11** : the setting in or the duration of a depressive or destructive process: as **a** : an access of disease : fit of sickness ⟨an ~ of bronchitis⟩ **b** : a period of being strongly affected by some particular desire or mood ⟨an ~ of melancholy⟩

[3]**attack** \"\ *adj* [[2]*attack*] : designed, planned, or employed for initiating, supporting, or carrying out a military attack ⟨an ~ formation⟩ ⟨an ~ bomber⟩

**at·tack·a·ble** \-əbəl\ *adj* : that can be attacked esp. with some prospect of success

**attack cargo ship** *n* : a naval ship with specially trained boat crews for landing material in an amphibious assault

**attack plane** *n* : a military airplane designed and armed for attacking the enemy's ground forces

**attack transport** *n* : a naval ship with specially trained boat crews for landing troops in an amphibious assault

**at·ta·cus** \'ad·əkəs\ *n* [LL, fr. Gk *attakos*] **1** -ES : an edible insect mentioned in Lev 11:22(DV) — called *bald locust* in the Authorized and Revised Standard versions **2** *cap* [NL, fr. LL] : a widely distributed genus of large chiefly tropical moths (family Saturniidae) that include the Asiatic Atlas moth

**at·tain** \ə'tān\ *vb* -ED/-ING/-S [ME *atteynen, ateignen*, fr. OF *ataign*-, stem of *ataindre*, fr. (assumed) VL *attangere*, alter. (influenced by L *tangere*) of L *attingere*, fr. *ad*- + *tangere* to touch, reach — more at TANGENT] *vt* **1** : REACH, GAIN, ACHIEVE, ACCOMPLISH ⟨difficult to ~ a realistic effect⟩ ⟨~ repose⟩ ⟨~ his goal⟩ **2** *obs* : to get at the knowledge of : ASCERTAIN ⟨~ the meaning of a statement⟩ **3** : to come into possession of : OBTAIN ⟨~ a kingdom⟩ ⟨~ preferment⟩ **4** *obs* : OVERTAKE : get at : CATCH **5** : to reach or come to by progression or motion : arrive at ⟨~ the top of the hill⟩ ⟨~ a ripe old age⟩ ~ *vi* : to come or arrive by motion, growth, or effort toward a place, object, or state : REACH ⟨to his stature we . . . may in time ~ —C.W.Eliot⟩ — usu. used with *to* or *unto* ⟨this plant ~*s* to a height of 10 feet⟩ ⟨knowledge no man has ~*ed* unto⟩

**syn** see REACH

**at·tain·a·bil·i·ty** \ə,tānə'biləd·ē, -ətē, -i\ *n* -ES : the quality or state of being attainable

**at·tain·a·ble** \ə'tānəbəl\ *adj* : capable of being attained

**at·tain·a·ble·ness** *n* -ES : ATTAINABILITY

**at·tain·der** \ə'tāndə(r)\ *n* -s [ME *attaynder*, fr. MF *ataindre* to accuse, convict, attain] **1** : the act of attainting or state of being attainted : extinction of the civil rights and capacities of a person consequent upon sentence of death or outlawry ⟨an act of ~⟩ ⟨no ~ of treason shall work corruption of blood or forfeiture except during the life of the person attainted —*U.S. Constitution*⟩ **2** *obs* **a** : dishonoring accusation : SENTENCE ⟨a criminal pursued by the ~*s* of his victims⟩ **b** : the stain of dishonor ⟨to live his life free from all ~⟩

**at·tain·ment** \ə'tānmənt\ *n* -s **1** : the act of attaining : the condition of being attained ⟨the ~ of her life ambition⟩ ⟨notions difficult of ~⟩ **2** : something that is attained or attained to (as a mental acquirement or social accomplishment) ⟨famous for his scientific ~*s*⟩

[1]**at·taint** \ə'tānt, a'-\ *vt* **attainted**; **attainted** *or archaic* **attaint**; **attainting**; **attaints** [ME *attaynten*, fr. MF *ataint*, past part. of *ataindre*] **1** *obs* : to prove guilty **2** *obs* : to find guilty : CONVICT — used esp. of a jury on trial for giving a false ...

**at·taint·ment** \-mənt\ *n* -s : ATTAINDER ...

... *obs* : ATTAINDER **2** *obs* : an impu... disgrace : STAIN

**at·ta·lea** \ə'talēə\ *n, cap* [NL, after *Attalus* I †197 B.C. ... Pergamum] : a genus of tropical American pinna... palms with ringed stems and immense leaves — see ... NUT, PIASSAVA

**at·ta·lid** \'ad·ə·ləd, -,lid\ *n, pl* **attalids** \-dz\ *or* **at...** \ə'talə,dē, a'-\ *cap* [*Attalus* I †197 B.C. king of P... victor in a decisive battle with the Gauls of Asia M... first of his line to bear the title of king + E -*id*] : a me... Hellenistic dynasty that ruled Pergamum from abo... 133 B.C.

**attap** *var of* ATAP

**at·ta·pul·gite** \,ad·ə'pəl,jīt\ *n* -s [*Attapulgus*, Ga. ...] : a fibrous clay mineral typically $(OH_2)_4Mg_5Si_8O...4H_2O$

**at·tar** *also* **at·ar** \'ad·ə(r), 'atə-, 'a,tär, 'a,tä(r *also* '... 'ä[,] *or* |tə-\ *or* **ath·ar** \'athə(r), -,thär, -,thä(r\ ... *or* **ot·to** \'äd·(,)ō, '... \'äd·ə(r), 'ätə-, 'ä,tär, 'ä,tä(r\ *or* ... [Per '*aṭir* perfumed, fr. '*iṭr* perfume, fr. Ar] : a pe... tained from flowers; *specif* : ATTAR OF ROSES

**attar of roses** : a fragrant essential oil obtained by ... from petals esp. of damask rose and with geraniol ar... lol as its principal odorous constituents : ROSE OIL

**attas** *pl of* ATTA

**attask** *vt* -ED/-ING/-S [[1]*a*- + *task*] *obs* : to take to ta...

**at·tem·per** \ə'tempə(r), a'-\ *vt* -ED/-ING/-S [ME *at*... MF *atemprer*, fr. L *attemperare* to adjust, accom... *ad*- + *temperare* to temper — more at TEMPER] **1** ... LATE, CONTROL, ORDER ⟨as God the good governor ... —Geoffrey Chaucer⟩ **2** *archaic* **a** : SOFTEN... **b** : SOOTHE, APPEASE ⟨~ an angry crowd⟩ **3** *archa*... duce, modify, or moderate by mixture **b** : to ... temperature of : make (as air) warmer or colder ... : to make suitable : ACCOMMODATE, ADAPT **5** ... bring into harmony : ATTUNE **syn** see MODERATE

**at·tem·per·a·ment** \-p(ə)rəmənt\ *n* -s [fr. *attem*... *temper*: *temperament*] : a mixing in proper propo...

**at·tem·per·ate** \-pə,rāt, *usu* -ād + V\ *vt* -ED/-IN... *temperatus*, past part. of *attemperare*] : ATTEMPE...

**tem·per·a·tion** \-,==ə'rāshən\ *n* -s

**at·tem·per·a·tor** \-ād·ə(r), -ātə-\ *n* -s : one tha... *specif* : a coil of pipe through which hot or cold w... run for regulating temperature

[1]**at·tempt** \ə'tem(p)t *also* a'-\ *vb* -ED/-ING/-S [L *at*... *ad*- + *temptare* to touch, try — more at TEMPT] *vt* ... an effort to do, accomplish, solve, or effect ⟨~ to... problem⟩ — often used in venturous or experimen... sometimes with implications of failure ⟨I dou... whether I should ~ the creation of a being like m... W.Shelley⟩ **2 a** *archaic* : to try to win over by ... : TEMPT **b** : to try to seduce or ravish **3** *obs* **a** : t... win (as by tempting) ⟨~ a woman's love⟩ **b** : t... suade : seek to influence (as by entreaty or rea... friend that he stay to dinner⟩ **4** *archaic* : to tr... overcome, or take by force : ATTACK, ASSAIL ... make an attempt — used with *on* or *upon* **syn** se...

[2]**attempt** \"\ *n* -s **1** : the act of attempting : ... ENDEAVOR, UNDERTAKING; *esp* : an unsucc... **2** *archaic* : an effort to achieve something by forc... TACK ⟨the enemy's ~ against our lines⟩ **b** : a ... upon a person's life or a woman's honor **3** *ob*... attempted : AIM

**at·tempt·a·ble** \-əbəl\ *adj* : capable of being at...

**at·tend** \ə'tend *also* a'-\ *vb* -ED/-ING/-S [ME *att*... *atendre*, fr. L *attendere* to stretch, apply the min... *tendere* to stretch — more at THIN] *vt* **1** *archaic* ... attention to : fix the mind upon : give heed to ... the warning of the soothsayer⟩ ⟨~ my words⟩ ... after : take charge of : watch over the workin... oners were ~*ed* by guards⟩ **3** *archaic* **a** : to ... person or the arrival of a person) ⟨the committ... rival of the president⟩ **b** : to be in store for ⟨th... all men after this —John Locke⟩ **4** : to go or ... companion, nurse, or servant : visit professiona... cian : accompany in order to do service : ESC... ⟨fawning ministers who ~ the king⟩ **5** *obs* ... : CONJOIN, ASSOCIATE **6** : to be present with ... : be united or consequent to ⟨the immense an... that has ~*ed* the creation of these lists —C.C... Traver⟩ ⟨what cares must then ~ the toiling ... Dryden⟩ **7** : to be present at ⟨~ a meeting⟩ ~... one's energies : apply oneself ⟨~ to your work... business⟩ **2** : to apply the mind or pay attenti... to perceiving, understanding, or complying ... : HEED, LISTEN — usu. followed by *to* ⟨one is lu... or seven people who know how to ~; the re... ears —J.M.Barzun⟩ ⟨~ to the voice of my... —Ps 86: 6(AV)⟩ **3** : to be present or near a... suance of duty ⟨the good lord was dismissed, a... in the drawing room since —Mary W. Monta... for service : wait or be in waiting — often used ... ⟨ministers who ~ upon the king⟩ **4** *obs* : WA... — often used with *for* **5** : to direct one's ca... with *to* ⟨producers should ~ to the followin... pects of marketing —*Farmer's Weekly (So. Af...*

**at·tend·ance** \ə'tendən(t)s\ *n* -s [ME *atten*... *atendance*, fr. OF, fr. *atendre* to attend + -*an*... or fact of attending: as **a** : the act or state of ... : service esp. at court or at a hospital ⟨a p... **b** : a being present : PRESENCE ⟨~ at a play⟩ ... attending: as **a** *obs* : a body of attendants : RE... with his ~ of court officials⟩ **b** : the perso... persons present (as at a public performance ... school⟩ ⟨the broadcasting of plays . . . do... diminish the ~*s* at original performances —Jo...

**attendance area** *n* : the territory served by ... school

**attendance officer** *n* : one employed by a p... tem to investigate the continued absences of ... also *truant officer*

**attendancy** *n* -ES *obs* : ATTENDANCE

[1]**at·tend·ant** \ə'tendənt\ *adj* [ME, fr. MF ... part. of *atendre*] **1** : accompanying, waiting ... ing in order to perform service ⟨the defensiv... of the fleet's ~ aircraft —S.L.A.Marshall⟩ — ... *on* or *upon* ⟨Cherub and Seraph . . . ~ on th... Milton⟩ **2** *law* : owing duty or service : DE... with *on* or *to* ⟨the widow ~ to the heir⟩ **3** ... connected with, or immediately following ... : CONSEQUENT ⟨the raising of silkworms and ... tion, the culture of mulberry trees —Tom ... used with *on* or *upon* ⟨the disadvantages ~ ... ous —F.R.Leavis⟩

[2]**attendant** \"\ *n* -s **1** *law* : one owing dut... depending on another **2** : one who attend... another in order to render a service (as a co... keeper, or agent) ⟨the bride's ~*s* at the we... in a hospital⟩; *esp* : an employee who wa... ⟨a gasoline-station ~⟩ **3** : something that ... circumstance : ACCOMPANIMENT, CONCOMIT... luxury and its literary and artistic ~*s* —E... **4** : one who is present on a given occasion ... ⟨~*s* at the festival⟩

**attendant term** *n* : a mortgage or long leas... form to protect the title of the owner of ...

**attended** *past of* ATTEND

**at·tend·ee** \ə,ten'dē, ,a,t-; ə'ten,dē\ *n* -s : A...

US005855343A

# United States Patent [19]

## Krekelberg

[11] **Patent Number:** **5,855,343**

[45] **Date of Patent:** **Jan. 5, 1999**

[54] **CAMERA CLIP**

[75] Inventor: **David E. Krekelberg**, Minnetonka, Minn.

[73] Assignee: **iREZ Research, Corporation,** Minnetonka, Minn.

[21] Appl. No.: **814,168**

[22] Filed: **Mar. 7, 1997**

[51] **Int. Cl.⁶** ................................................ **A47G 29/00**
[52] **U.S. Cl.** ........................... **248/121;** 248/126; 248/918
[58] **Field of Search** .................... 248/121, 126, 248/440.1, 166, 176.1, 688, 918; 224/908; 396/421, 422, 423, 424, 425, 426, 427, 428

[56] **References Cited**

U.S. PATENT DOCUMENTS

1,208,344   12/1916   McAll ...................................... 248/126

Primary Examiner—Ramon O. Ramirez
Assistant Examiner—Long Dinh Phan
Attorney, Agent, or Firm—Nawrocki, Rooney & Sivertson, P.A.

[57]                **ABSTRACT**

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

**21 Claims, 2 Drawing Sheets**



**U.S. Patent**        Jan. 5, 1999        Sheet 1 of 2        5,855,343



*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*

**U.S. Patent**     *Jan. 5, 1999*     **Sheet 2 of 2**     **5,855,343**

*Fig. 5*



*Fig. 6*

*Fig. 7*



5,855,343

## 1

## CAMERA CLIP

### FIELD OF THE INVENTION

This invention relates to a clip for holding a camera. More particularly it relates to a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

### BACKGROUND OF THE INVENTION

With portable cameras, it is desirable to have an apparatus which can support the camera in any number of desired configurations. The apparatus must easily accommodate repositioning the camera to new orientations during use, and must be easily transportable. This is especially true when using the camera with a portable computer, such as a laptop computer. With increasing improvements in technology, both the laptop computer and camera have become smaller over time, emphasizing the need for a compatible camera support apparatus. The camera support apparatus must be versatile, light in weight, and be easily transportable to accommodate the new camera and laptop designs, and must desirably facilitate easy and safe storage of the camera. Often times portable computers are stored in carry bags which may be fully loaded with other hardware devices, such as disk drives or printers, as well as with personal effects, making for cramped storage conditions. The camera support apparatus must desirably protect the camera from damage during transport under these cramped storage conditions to avoid the necessity for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

### SUMMARY OF THE INVENTION

Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any

## 2

desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on a display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object where the apparatus comprises a hinge member and a support frame. The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member. A support frame is hingedly attached to the hinge member to engagingly support the hinge member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame. The first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object when the hinge member is engagingly supported on the object. In the preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements are engaging the first surface when the first surface is substantially level. In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface. In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top surface of the table. The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge when the first surface is inclined from the substantially level position. The object has a second surface wherein a thickness between the first surface and the second surface defines an edge therebetween. The camera is maintained adjacent to the edge in the second position where the uppermost portion of the object is the edge. The rear support element engages a first surface and the first and second support elements engage the edge and the second surface. The rear support element and the first and second front support elements, in combination, maintain the camera adjacent the edge and prevent rotation of the support frame along an axis substantially parallel to the second axis where the second axis is substantially parallel to the edge. In a preferred embodiment, the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface. A center of gravity of the camera and the hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance prevents rotation of the support frame along the axis substantially parallel to the second axis of rotation. In the preferred embodiment, when the support frame is in the

5,855,343

| 3 | 4 |

second position, the object may be a display screen for a laptop computer, where the second surface is the front of the display screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position in between and is releasably held by the rear support element and the first and second front support elements. In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second front support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements. The first and second front support elements resiliently and outwardly flex to accommodate passage of the housing. The housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably attaches the camera to the body so that the camera rotates about the first axis relative to the body. A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame. In the preferred embodiment, the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

BRIEF DESCRIPTION OF THE DRAWINGS

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, FIG. 1 is a perspective view of the camera clip invention. FIG. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16. Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32. Second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30 (see also, FIG. 2). Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42. Housing 20 has a first indentation 25 and a second indentation 27 to slidably and fittably receive distal end 41 of first front support element 40 and distal end 43 of second front support element 42 when first front support element 40 and second front support element 42 are rotated in the direction of arrow 34 to engage housing backside 24.

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in the first position 44, on the first surface 36, when rear support element 38, first front support element 40 and second front support element 42 are engaging first surface 36 and first surface 36 is substantially level. In the first position 44, camera 12 may be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

5,855,343

5

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2). In FIG. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween. Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56. Rear support element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60. Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68. Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60. The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18. In the preferred embodiment, object 58 may be a display screen for a laptop computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen. FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18. FIG. 4 further shows camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12. Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12. While the embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated. For example, wiring harness could enter body 74 at a location angularly spaced upward from bore 90.

FIGS. 5–7 show various perspectives of a third mode of the preferred embodiment of the present invention. FIG. 5 is a side view, FIG. 6 is a detailed side view showing the lens of the camera being fitably received by the cover, and FIG. 7 is a front view. The third mode of the preferred embodiment of the present invention is shown when camera 12 is rotated about second axis 32 along the direction shown by arrow 34 in a direction from the first front support element 40 and the second front support element 38 of support frame 18. This rotation is continued in the third mode until camera 12 is in a position 65 between rear support element 38 and first front support element 40 and second front support element 42. In this

6

position, distal end 41 of first support element 40 and distal end 43 of second front support element 42 slidably and fittably engage first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. Camera 12 is then releasably held between rear support element 38 and first front support element 40 and second front support element 42. Rear support element 38 further has means to protect a lens 22 of camera 12, which is cover 90. Cover 90 is mounted at a distal end 92 of rear support element 38. Lens 22 of camera 12 faces in the direction of arrow 92, which is the direction of rotation about second axis 32 from first front support element 40 and second front support element 42 to rear support element 38 of support frame 18. Cover 90 fitably receives lens 22 of camera 12. Cover 90 has a raised portion 95 sized to be accommodated by lens 22 of camera 12. Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

FIG. 3 is a detailed front view of the camera clip invention. FIG. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94. Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment. Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20. Housing 20 is releasably held once passing between first front support element 40 and second front support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

What is claimed:

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially

5,855,343

7

planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the same being maintained adjacent said edge in said second disposition of said support frame.

2. Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, the support frame being in the first disposition on the generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, substantially planar surface, and the support frame being in the second disposition on the object when said first portion is engaging the first surface and said second portion is engaging the second surface, said first portion and said second portion in combination maintaining the camera adjacent the edge.

3. Apparatus according to claim 2 wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

4. Apparatus according to claim 3 wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

5. Apparatus according to claim 2 wherein the support frame is in the first disposition when the first portion and the second portion engage the generally horizontal, substantially planar surface at three or more locations in a common plane, thereby preventing rotation of the support frame relative to the generally horizontal, substantially planar surface in any direction.

6. Apparatus according to claim 2 wherein the support frame is in the second disposition when a first distance from the edge to a location where the first portion engages the first surface is greater than a second distance from the edge to a location where the second portion engages the second surface, thus preventing rotation of the support frame.

7. Apparatus according to claim 1 wherein the object is a display screen for a laptop computer, and the second surface is the front of the display screen and the first surface is the back of the display screen.

8. Apparatus according to claim 1 wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame.

9. Apparatus according to claim 8 wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

10. Apparatus for supporting a camera, having a housing and a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support

8

frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, the support frame having a rear support element and a first and a second front support element, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when the first surface is inclined from a substantially horizontal position so that an uppermost extremity of the object is the edge, the support frame being maintained in said second disposition by said rear support element engaging said first surface and said first and second front support elements engaging the second surface, said rear support element and said first and second front support elements in combination preventing rotation of the support frame.

11. Apparatus according to claim 10 wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

12. Apparatus according to claim 11 wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

13. Apparatus according to claim 11 wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

14. Apparatus according to claim 10 wherein the support frame is in the first disposition when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface at three or more locations in a common plane of the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

15. Apparatus according to claim 10 wherein the support frame is in the first disposition positioned on the generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

16. Apparatus according to claim 10 wherein support frame is in the second disposition when a first distance from the edge to a location where the rear support element engages the first surface is greater than a second distance from the edge to a location where the first and second front support elements engage the second surface, the first dis-

5,855,343

**9**

tance being greater than the second distance thus preventing rotation of the support frame.

**17.** Apparatus according to claim **10** wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

**18.** Apparatus according to claim **17** wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

**19.** A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge.

**20.** Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said

**10**

support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

**21.** Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

* * * * *

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| PLAINTIFF, | Civil Action No. _____ |
| v. | |
| AMAZON.COM, INC.; | |
| AUDITEK CORPORATION; | |
| BALTIC LATVIAN UNIVERSAL | |
| ELECTRONICS, LLC D/B/A BLUE | |
| MICROPHONES, LLC D/B/A BLUE | |
| MICROPHONE; | |
| BLUE MICROPHONES, LLC; | |
| CDW CORPORATION F/K/A CDW | |
| COMPUTER CENTERS, INC.; | |
| CDW, INC.; | |
| CDW, LLC; | |
| COMPUSA.COM, INC.; | |
| COBRA DIGITAL, LLC; | |
| CREATIVE TECHNOLOGY LTD.; | |
| CREATIVE LABS, INC.; | |
| DELL, INC.; | |
| DIGITAL INNOVATIONS, LLC; | |
| EASTMAN KODAK COMPANY; | |
| EZONICS CORPORATION D/B/A EZONICS | |
| COPORATION USA D/B/A EZONICS; | |
| FRY'S ELECTRONICS, INC.; | |
| GEAR HEAD, LLC; | |
| GENERAL ELECTRIC COMPANY; | |
| HEWLETT-PACKARD COMPANY; | |
| INTCOMEX, INC.; | |
| JASCO PRODUCTS COMPANY LLC D/B/A | |
| JASCO PRODUCTS COMPANY D/B/A | |
| JASCO; | |
| JWIN ELECTRONICS CORPORATION; | |
| KLIP XTREME LLC; | |
| KMART CORPORATION; | |
| LIFEWORKS TECHNOLOGY GROUP, LLC; | |
| MACALLY PERIPHERALS, INC. D/B/A | |
| MACALLY U.S.A; | |
| MACE GROUP, INC.; | |
| MICRO ELECTRONICS, INC. DBA MICRO | |

## <u>CERTIFICATE OF SERVICE</u>

I, John J. Edmonds, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On December 11, 2014, a copy of the foregoing **CORRECTED NON-CONFIDENTIAL JOINT APPENDIX – VOLUME III OF III (A2449 – A3670)** was filed electronically with the Clerk of the Court using the CM/ECF System, which will serve via electronic mail notice of such filing to all counsel registered as CM/ECF users.

Upon acceptance by the Court of the electronically filed document, six paper copies will be filed with the Court via courier within the time provided by the Court's rules.

Dated: December 11, 2014          /s/ *John J. Edmonds*
                                   John J. Edmonds

                                   COLLINS, EDMONDS, POGORZELSKI,
                                   SCHLATHER & TOWER, PLLC