## VOLUME I OF III (PAGES A0001 – A0578)

---

### 2013-1665, -1666, -1667

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADJUSTACAM, LLC,

Plaintiff-Appellant,

v.

NEWEGG INC., NEWEGG.COM, INC., & ROSEWILL, INC.,

Defendants-Cross-Appellants,

and

SAKAR INTERNATIONAL, INC.,

Defendants-Cross-Appellant,

---

*Appeals from the United States District Court for the Eastern District of Texas in Case No. 10-cv-329, Chief Judge Leonard Davis*

---

### CORRECTED NON-CONFIDENTIAL JOINT APPENDIX

---

Date: December 11, 2014

| | |
|---|---|
| John J. Edmonds | Kent E. Baldauf, Jr. |
| Stephen F. Schlather | Daniel H. Brean |
| Shea N. Palavan | Anthony W. Brooks |
| COLLINS, EDMONDS, POGORZELSKI, | THE WEBB LAW FIRM |
| SCHLATHER & TOWER, PLLC | One Gatewar Center |
| 1616 South Voss Road, Suite 125 | 420 Fort Duquesne Blvd., Suite 1200 |
| Houston, Texas 77057 | Pittsburgh, PA 15222 |
| Telephone: (281) 501-3425 | Telephone: (412) 471-885 |

*Attorneys for Plaintiff-Appellant*
*AdjustaCam, LLC*

*Attorneys for Defendant-Cross-*
*Appellants Newegg, Inc., Newegg.com,*
*Inc. and Rosewill, Inc.*

Ezra Sutton
EZRA SUTTON, P.A.
900 Route 9, Suite 201
Woodbridge, NJ 07095
Telephone: (732) 634-3520

*Attorneys for Defendant-Cross-*
*Appellants Sakar International, Inc.*

*AdjustaCam LLC v. Newegg, Inc., et al.*

Fed. Cir. Appeal Nos. 2013-1665, -1666, -1667

### INDEX OF NON-CONFIDENTIAL JOINT APPENDIX

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|------|---------|-------|---------------|
| 08/20/2013 | 762 | FINAL JUDGMENT that the parties take nothing and that all pending motions are DENIED AS MOOT | **A0001** |
| 08/19/2013 | 761 | ORDER denying 727 Sealed Motion for Declaration of Exceptional Case; denying 748 Sealed Motion for Declaration of Exceptional Case | **A0004** |
| 06/07/2012 | 650 | ORDER overruling pltf's objections 629 and defts' objections 632 , and adopting 627 Memorandum Opinion and Order of the US Magistrate Judge as the Opinion of this Court | **A0012** |
| 04/10/2012 | 627 | MEMORANDUM OPINION AND ORDER. The Court interprets the claim language in this case in the manner set forth in this Order | **A0013** |
|  |  | Entire Docket Sheet from the Proceedings Below | **A0028** |
|  |  | U.S. Patent No. 5,855,343 | **A0164** |
| 03/31/2014 | 782 | ORDER Granting Motion to Withdraw Motion to Correct or to Amend Judgment | **A0176** |
| 09/17/2013 | 765 | NOTICE OF APPEAL - FEDERAL CIRCUIT as to 650 Order, 627 Order, 762 Judgment, by AdjustaCam LLC | **A0193** |
| 09/17/2013 | 764 | NOTICE OF APPEAL - FEDERAL | **A0195** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|------|---------|-------|---------------|
| | | CIRCUIT as to 761 Order on Sealed Motion, 762 Judgment, by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. | |
| 02/05/2013 | 749 | SEALED RESPONSE to Motion re 748 SEALED MOTION DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES filed by AdjustaCam LLC | **A0257** |
| 01/16/2013 | 748 | SEALED MOTION DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES by Sakar International, Inc. with attachments | **A0285** |
| 12/14/2012 | 744 | Unopposed MOTION to Dismiss claims and counterclaims involving Defendants/Counter-claimants Sakar International, Inc., Kohls Illinois, Inc., Kohls Corporation, Inc. and Kohls Department Stores, Inc. by AdjustaCam LLC | **A0319** |
| 11/07/2012 | 736 | SEALED ADDITIONAL ATTACHMENTS to Main Document | **A0340** |
| 11/07/2012 | 735 | SEALED RESPONSE to Motion re 727 SEALED MOTION For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses filed by AdjustaCam LLC | **A1190** |
| 10/11/2012 | 728 | SEALED ADDITIONAL ATTACHMENTS to Main Document: 727 SEALED MOTION | **A1224** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|------|---------|-------|---------------|
| | | For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses | |
| 10/11/2012 | 727 | SEALED MOTION For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. | **A1776** |
| 10/03/2012 | 724 | NOTICE by AdjustaCam LLC of Supplemental Authority in support of its opposed Motion to Dismiss | **A1867** |
| 10/02/2012 | 723 | Proposed Pretrial Order (Joint) by AdjustaCam LLC | **A1873** |
| 09/30/2012 | 721 | Opposed MOTION to Dismiss Remaining Defendants Sakar and Kohl's by AdjustaCam LLC | **A1955** |
| 09/27/2012 | 719 | Unopposed MOTION to Dismiss involving Defendants/Counter-claimants Newegg Inc., Newegg.com Inc., and Rosewill, Inc. by AdjustaCam LLC | **A1986** |
| 08/27/2012 | 678 | Opposed SEALED MOTION TO DISMISS CLAIMS AND COUNTERCLAIMS INVOLVING NEWEGG AND ROSEWILL by AdjustaCam LLC | **A2136** |
| 05/17/2012 | 642 | RESPONSE to 635 Response to Non-Motion,, PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS OBJECTIONS TO THE MAGISTRATES ORDER ON CLAIM CONSTRUCTION by AdjustaCam LLC | **A2171** |
| 05/07/2012 | 635 | RESPONSE to 629 Appeal of Magistrate Judge Decision to District Court by Best Buy | **A2348** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|------|---------|-------|---------------|
|  |  | Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW, LLC, Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Wal-Mart Stores, Inc. |  |
| 04/24/2012 | 629 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by AdjustaCam LLC re 627 Order | **A2436** |
| 03/02/2012 | 614 | OFFICIAL TRANSCRIPT of CLAIM CONSTRUCTION HEARING held on 2/9/12 before Judge John D. Love | **A2610** |
| 01/31/2012 | 601 | REPLY to 595 Claim Construction Brief,,, filed by AdjustaCam LLC | **A2718** |
| 01/17/2012 | 595 | CLAIM CONSTRUCTION BRIEF filed by Amazon.com, Inc., Auditek Corporation, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., | **A2740** |

| DATE | ECF NO. | TITLE | BEG APP'X NO. |
|---|---|---|---|
| | | Wal-Mart Stores, Inc. | |
| 12/19/2011 | 575 | CLAIM CONSTRUCTION BRIEF filed by AdjustaCam LLC | **A2806** |
| 07/02/2010 | 1 | COMPLAINT | **A3670** |

**CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Federal Circuit Rule 28(d)(1)(B), material subject to a protective order entered by a United States District Court has been redacted. Pages noted with "THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE" contain information derived from confidential third party settlement agreements.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ADJUSTACAM LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **CASE NO. 6:10-CV-329** |
| | § | |
| AMAZON.COM, INC., et al, | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT

Pursuant to the Orders granting the parties' Joint Motions to Dismiss, the Court hereby

enters Final Judgment.  Plaintiff Adjustacam LLC filed suit against fifty-nine Defendants in this

case on July 2, 2012.  Since that time, all Defendants have been dismissed: Amazon.com, Inc.

(Docket No. 630); Auditek Corporation (Docket No. 647); Blue Microphones, LLC (Docket No.

492); Baltic Latvian Universal Electronics, LLC d/b/a Blue Microphones, LLC d/b/a Blue

Microphone (Docket No. 492); CDW Corporation f/k/a CDW Computer Centers, Inc. (Docket

No. 658); CDW, Inc. (Docket No. 658); CDW, LLC (Docket No. 10); Compusa.com, Inc.

(Docket No. 620); Cobra Digital, LLC (Docket No. 420); Creative Technology Ltd. (Docket No.

348); Creative Labs, Inc. (Docket No. 560); Dell, Inc. (Docket No. 563); Digital Innovations,

LLC (Docket No. 651); Eastman Kodak Company (Docket No. 217); Ezonics Corporation d/ba/

Ezonics Corporation USA d/b/a Ezonics (Docket No. 361); Fry's Electronics Inc. (Docket No.

675); Gear Head, LLC (Docket No. 665); General Electric Company (Docket No. 8); Hewlett-

Packard Company (Docket No. 677); Incomex, Inc. (Docket No. 342); Jasco Products Company

LLC d/b/a Jasco Products Company d/b/a Jasco (Docket No. 410); Jwin Electronics Corporation

(Docket No. 419); Klip Extreme LLC (Docket No. 341); Kmart Corporation (Docket No. 445);

Lifeworks Technology Group, LLC (Docket No. 522); Macally Peripherals, Inc. d/b/a Macally U.S.A. (Docket No. 562); Mace Group, Inc. (Docket No. 562); Micro Electronics, Inc. d/b/a Micro Center (Docket No. 671); New Compusa Corporation (Docket No. 620); Newegg, Inc. (Docket No. 720); Newegg.com, Inc. (Docket No. 720); Office Depot, Inc. (Docket No. 672); Overstock.com, Inc. (Docket No. 535); Phoebe Micro Inc. (Docket No. 412); Prolynkz, LLC (Docket No. 367); Radioshack Corporation (Docket No. 493); Rosewill Inc. (Docket No. 720); Sears Brands, LLC (Docket No. 445); Sears Holdings Corporation d/b/a Sears (Docket No. 445); Sakar International, Inc. (Docket No. 745); Sakar, Inc. (Docket No. 349); SDI Technologies, Inc. (Docket No. 127); Intcomex, Inc. (Docket No. 342); Software Brokers of America Inc. d/b/a Intcomex Corporation d/b/a Intcomex (Docket No. 343); Systemax, Inc. d/b/a Compusa (Docket No. 620); Target Corp. (Docket No. 615); Tigerdirect, Inc. (Docket No. 620); Trippe Manufacturing Company d/b/a Tripp Lite (Docket No. 312); Wal-Mart Stores, Inc. (Docket No. 674); Sears, Roebuck and Company (Docket No. 445); Best Buy Co., Inc. (Docket No. 673); Best Buy Stores, LP (Docket No. 673); BestBuy.com, LLC (Docket No. 673); Conns, Inc. d/b/a Conns (Docket No. 411); J&R Electronics, Inc. d/b/a J&R (Docket No. 586); Kohls Corporation d/b/a Kohl's (Docket No. 745); Kohl's Illinois, Inc. (Docket No. 745); Solid Year Co., Ltd. (Docket No. 350); and Walgreen Co. d/b/a Walgreens (Docket No. 184).

It is therefore **ORDERED**, **ADJUDGED** and **DECREED** that the parties take nothing and that all pending motions are **DENIED AS MOOT**.  All costs are to be borne by the party that incurred them.

It is further **ORDERED**, **ADJUDGED** and **DECREED** that all claims, counterclaims, and third-party claims in the instant suit be **DISMISSED** in their entirety.

The Clerk of the Court is directed to close this case.

**So ORDERED and SIGNED this 20th day of August, 2013.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ADJUSTACAM, LLC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:10-CV-329** |
| | § | **PATENT CASE** |
| | § | |
| **AMAZON.COM, INC., ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Defendants NewEgg Inc., NewEgg.Com Inc. and Rosewill Inc.'s Opposed Motion for Declaration of Exceptional Case (Docket No. 727) and Defendant Sakar International, Inc.'s Opposed Motion for Declaration of Exceptional Case (Docket No. 748). The Court heard arguments regarding the motions on June 28, 2013. Having considered the parties' written submissions and oral arguments, the Court **DENIES** Defendants' Motions.

## BACKGROUND

On July 2, 2010, AdjustaCam, LLC ("AdjustaCam") brought suit against 58 defendants including NewEgg, Inc., NewEgg.Com, Inc., Rosewill Inc. (collectively, "NewEgg"), and Sakar International, Inc. ("Sakar"), alleging the infringement of U.S. Patent No. 5,855,343 ("the '343 Patent"). The '343 Patent, entitled "Camera Clip," is directed to a clip for supporting a portable webcam. AdjustaCam eventually settled with all the defendants prior to trial; however, Sakar and NewEgg reserved the right to seek and obtain attorney fees after their dismissal. Docket No. 720; Docket No. 744. Both parties elected to exercise this right and filed motions to obtain attorney fees pursuant to 35 U.S.C. § 285.

## APPLICABLE LAW

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285 (2006).  When determining whether to award attorney fees, a court engages in a two-step process.  *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).  First, a court determines whether the prevailing party has proved by clear and convincing evidence that the case is exceptional; and second, if the case is exceptional, a court must then determine "whether an award of attorney fees is justified."  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915–16 (Fed. Cir. 2012).

A case may be considered exceptional when there is "some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."  *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Absent such conduct, an exceptional case may only be found if "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."  *Id.*

## ANALYSIS

As an initial matter, the Court notes that NewEgg and Sakar (collectively, "the Defendants") present nearly identical arguments as to why this case is exceptional.  Therefore, the Court will address both parties' motions together.

### Subjective Bad Faith & Objectively Baseless

NewEgg and Sakar contend this case is exceptional because AdjustaCam brought this lawsuit in bad faith and the action was objectively baseless.  Docket No. 727 at 3–8; Docket No. 748 at 4–7.  Specifically, Defendants argue that AdjustaCam's infringement claims were

untenable in light of the Court's claim construction.  The Court defined "rotatably attached" as "limited to a single axis of rotation."  Docket No. 627 at 10.  Defendants contend that because their products do not rotate about a single axis of rotation, they could never infringe the asserted claims of the '343 Patent under any reasonable interpretation.

Defendants argue their cameras do not rotate about a single axis of rotation because their products use a "ball-and-socket joint, which facilitates rotation about multiple axes."  Docket No. 727 at 8; Docket No. 748 at 7–8.  However, Plaintiff argues Defendants are misrepresenting the nature of the accused products, since the products do not have a pure ball-and-socket joint but rather a modified ball-and-socket joint with a channel that restricts movement.  Docket No. 735 at 13; Docket No. 749 at 15.  As one can see in the following picture, Defendants' products appear to contain a constrained ball and socket joint:



Docket No. 735 at 4; Docket No. 749 at 5.  If the ball and socket joint truly restricts the range of movement such that it cannot rotate about multiple axes, the constrained ball and socket joint could meet the claim limitation which requires the hinge member being rotatably attached to the camera in a single axis of rotation.  Since one could reasonably argue Defendants' products meet the "rotatably attached" limitation, AdjustaCam's infringement theories are not objectively baseless.

Furthermore, there is insufficient evidence that the action was brought in bad faith and for an improper purpose.  Defendants argue AdjustaCam filed this action to obtain nuisance

value settlements, as evidenced by its settlements with other parties to this action for amounts far less than the cost of litigation to encourage quick settlements.  For example, several of the defendants settled for $225,000 or less.  Defendants argue these settlements do not comport with AdjustaCam's minimum target royalty of $1.25–$1.50 per unit, therefore AdjustaCam must have sued simply to obtain a settlement.

While the smaller settlements suggest this case was a settlement driven case, AdjustaCam noted that its damage model for many of the defendants was small.  *See* Docket No. 735, Exhibit 11, Expert Report of Walt Bratic at 18–32.  Therefore, other defendants in this action would have necessarily settled for small amounts.  While practically speaking a plaintiff may not choose to file a patent infringement lawsuit when the damages are small, there is no minimum damages requirement to bring such a case.  Here, there is no other evidence that AdjustaCam was merely exploiting the high cost of defending a patent case to obtain a nuisance value settlement, therefore AdjustaCam did not act in bad faith in bringing this action.[1]

### *Litigation Misconduct*

NewEgg and Sakar also argue this case is exceptional because AdjustaCam engaged in litigation misconduct.  Specifically, Defendants allege AdjustaCam acted inappropriately during this litigation because it continued to assert frivolous infringement claims after the Court's claim construction, it maintained baseless invalidity defenses during the litigation, served an untimely amended infringement report, and fabricated a per-unit royalty to justify its nuisance value settlements.  Docket No. 72 at 8–14; Docket No. 748 at 9–14.  AdjustaCam counters that there has been no litigation misconduct, since AdjustaCam's infringement and validity arguments were not baseless, it did not fabricate a per-unit royalty, and it did not serve an untimely expert report.

---

[1] The Court notes that it seriously considers when a Defendant alleges a case was merely brought as a nuisance lawsuit, and will not hesitate to award attorney fees if the facts support doing so.  However, in this case, the facts did not support such an award.

Defendants have failed to prove AdjustaCam acted inappropriately in this case. The Court has already addressed the merits of AdjustaCam's infringement arguments, therefore AdjustaCam's continued assertion of its infringement claims post–*Markman* do not amount to litigation misconduct. Defendants also have failed to demonstrate that AdjustaCam's validity arguments were baseless. Defendants contend AdjustaCam committed litigation misconduct by dragging out the co-pending reexamination proceeding of the '343 Patent with meritless validity arguments until September 2012 in order to collect more nuisance value settlements. Docket No. 727 at 11-14. However, a review of the reexamination proceedings demonstrates there was no delay attributable to the patent owner.[2] While the initial request for reexamination was filed in December 2010, the USPTO did not issue an office action until August 12, 2011. *See* docket No. 727, Exhibit 16, USPTO Office Action dated August 12, 2011. Since the initial office action though, the reexamination has proceeded normally with another non-final office action issued by the USPTO prior to its final rejection on August 30, 2012. Additionally, Defendants contend it was inappropriate for AdjustaCam to raise the same validity arguments in this litigation that it raised in the reexamination proceedings; however, Defendants have failed to articulate why AdjustaCam cannot do this, let alone why this is litigation misconduct.

Defendants further allege AdjustaCam acted inappropriately because AdjustaCam served a substantively different "supplemental" infringement report the day of its' infringement expert's deposition, without an explanation for the delay. Defendants claim the supplemental report significantly changed AdjustaCam's infringement theories, and because Plaintiff failed to disclose the modified report sooner, AdjustaCam is guilty of misconduct. AdjustaCam contends that it inadvertently disclosed a draft infringement expert report to Defendants, and did not

---

[2] AdjustaCam was not a party to the reexamination proceedings because it is not the owner but rather the exclusive licensee of the '343 Patent. Global Media Group LLC is the patent owner. *See* Docket No. 727 at 11.

realize the mistake until the time of its expert's deposition.  Docket No. 735 at 14; Docket No. 749 at 15.  AdjustaCam argues it made every attempt to remedy the situation, before the case was dismissed.  In the absence of any other dubious behavior, there is no reason to find AdjustaCam acted inappropriately here. *Cf. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–26 (Fed. Cir. 2011) (finding destruction of relevant documents, a failure to institute a document retention plan, a lack of regard for judicial system, and failure to engage in the claim construction process in good faith warranted an exceptional case finding).

Lastly, Defendants argue AdjustaCam fabricated a per-unit royalty of $1.25–$1.50 to justify their nuisance value settlements.  Docket No. 727 at 14–15.  Defendants cite to settlements wherein parties implicitly paid between $.10 per unit and $161.29 per unit as evidence AdjustaCam's royalty was simply "bogus."  AdjustaCam counters that its target royalty was based on prior licenses to the '343 Patent, which is an acceptable method of calculating damages, and that Defendants misinterpret the settlement values since some of the settlements were not pure lump sum payments for units sold.  Docket No. 735 at 18.  While the Defendants may disagree with AdjustaCam's methodology of calculating damages, there is no evidence this theory was so outrageous and unreliable to support an award of attorney fees.  *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (unreliable expert testimony will not support a finding of litigation misconduct unless the circumstances are sufficiently egregious).

Accordingly, Defendants have failed to demonstrated this case is exceptional because AdjustaCam engaged in litigation misconduct.

### *Rule 11 Violations*

Additionally, Sakar argues Adjustcam's Rule 11 violations provide an additional basis for finding this case to be exceptional under 34 U.S.C. § 285.[3]  Sakar argues AdjustaCam violated Rule 11, because AdjustaCam failed to adequately prepare its 30(b)(6) to answer questions regarding AdjustaCam's pre-filing investigations, its pleadings, and its infringement contentions. Docket No. 748 at 14.  Sakar also argues AdjustaCam admitted to violating Rule 11 when its corporate representative stated he has failed to review: (1) the '343 Patent before suing Sakar; (2) the complaint against Sakar before it was filed; and (3) its infringement contentions against Sakar.  *Id.* at 15.  Sakar further contends AdjustaCam violated Rule 11 because its corporate representative had no knowledge of: (1) a pre-suit investigation; (2) the Defendants in the case; and (3) evidence demonstrating the accused products infringed the '343 Patent.  *Id.*

AdjustaCam counters that it never admitted to violating Rule 11.  AdjustaCam argues Sakar misconstrues AdjustaCam's 30(b)(6) witness' inability to answer questions  regarding any Rule 11 investigation as admitting wrongdoing.   Docket No. 749 at 21.   Additionally, AdjustaCam contends its outside counsel did comply with Rule 11, since it conducted pre-suit investigations, reviewed the '343 Patent and its prosecution history, discussed the claim scope of the asserted claims, and reconsidered its infringement positions post-*Markman*.  *Id.* at 21–22.

While a Rule 11 violation may be a basis for finding a case exceptional under § 285, Sakar has failed to demonstrate AdjustaCam violated Rule 11 any time during this action.  Sakar cites to deposition testimony wherein AdjustaCam's Chief Financial Officer (CFO), Mr. Haynes, stated outside counsel reviewed the '343 Patent, reviewed the complaint, gathered evidence regarding the accused products, and prepared infringement contentions, to support its contention that AdjustaCam failed to comply with Rule 11.   Docket No. 748, Exhibit 9, Deposition Testimony at 35:12–21; 35:23–36:19; 31:6–24; 111:8–19; 112:24–113:8.  However, Sakar fails

---

[3] NewEgg did not raise this argument in its Motion for Declaration of Exceptional Case.  *See* Docket No. 727.

to explain why it is a Rule 11 violation if only outside counsel performs these functions.  In the context of patent infringement actions, Rule 11 requires an attorney to review the claims of the patent before filing a complaint, interpret the asserted patent claims, and compare the accused products to the asserted patent claims before filing a suit alleging patent infringement. *See Antonious v. Spalding & Evenflo Cos.*, 275 F. 3d 1066, 1072 (Fed. Cir. 2002); *Q-Pharma, Inc. v. The Andrew Jergens Co.*, 360 F.3d 1295, 1295 (Fed. Cir. 2004).  Here, there is evidence that AdjustaCam's outside counsel did review the claims of the '343 Patent, interpreted the asserted patent claims and compared the accused products to those asserted claims prior to filing the action against Sakar.  Accordingly, there was no Rule 11 violation which supports finding this case to be exceptional.

**CONCLUSION**

Accordingly, the Court **DENIES** Defendants' NewEgg Inc., NewEgg.Com Inc. and Rosewill Inc.'s Opposed for Declaration of Exceptional Case and Defendant Sakar International, Inc.'s Opposed Motion for Declaration of Exceptional Case.

**So ORDERED and SIGNED this 19th day of August, 2013.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ADJUSTACAM, LLC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:10-CV-329** |
| | § | **PATENT CASE** |
| | § | |
| **AMAZON.COM, INC., ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

The above entitled and numbered civil action has been referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636.  The Memorandum Opinion and Order (Doc. No. 627) containing the Magistrate Judge's claim construction ruling has been presented for consideration.  Plaintiff and Defendants' have filed Objections (Doc. Nos. 629, 632) to the Memorandum Opinion and Order.  However, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and are not "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  Therefore, the Court hereby overrules Plaintiff's and Defendants' objections and adopts the Memorandum Opinion and Order of the United States Magistrate Judge as the Opinion and Order of this Court.

   **So ORDERED and SIGNED this 7th day of June, 2012.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| ADJUSTACAM, LLC. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CASE NO. 6:10-CV-329** |
| | § | **PATENT CASE** |
| | § | |
| AMAZON.COM, INC., ET AL. | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patent No. 5,855,343 ("the '343 patent").  Plaintiff Adjustacam, LLC ("Adjustacam") and Defendants[1] have presented their claim construction positions.  (Doc. Nos. 575, "PL.'S BR.;" 595, "DEF.'S RESP.," 601, "PL.'S REPLY").  On February 9, 2012, the Court held a claim construction hearing and heard further argument (Doc. No. 614).  For the reasons stated herein, the Court adopts the constructions set forth below.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The Court examines a patent's intrinsic evidence to define the patented invention's scope.  *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad*

---

[1]  Amazon.com, Inc., Auditek Corp., Best Buy Co., Inc., Best Buy Stores, LP, Bestbuy.com, CDW LLC, CompUSA.com, Inc., Digital Innovations, LLC, Fry's Electronics, Inc., Gear Head, LLC, Hewlett-Packard Co., Kohls, Corp., Kohl's Illinois, Inc., Micro Electronics, Inc. d/b/a Micro Center, New Compusa Corp., Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc., Target Corp., Tigerdirect, Inc., and Wal-Mart Stores, Inc. are referred to collectively as "Defendants."

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims, the rest of the specification and the prosecution history.  *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267.  The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms.  *Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Id.*  Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent."  *Id.*  Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.  Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).  This presumption does not arise when the patentee acts as his own

lexicographer.  *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct."  *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).  But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims."  *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent.  *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent").  The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."  *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).  The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance.  *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).  "Indeed, by distinguishing the claimed invention over the prior art, an applicant is

indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted).  "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted).  Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318.  Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

### A.    Overview of Patents-in-Suit

The '343 patent, entitled "Camera Clip," is directed at a clip for supporting a portable webcam. *See* '343 patent at ABSTRACT.  The claimed apparatus is specifically directed to a structure supporting a webcam both on a flat surface, like a tabletop, and on an edge of a housing, like a laptop computer screen. *Id.* at 1:4–9.  The camera clip is also intended to protect the camera lens when the clip is not used as support. *Id.*  Figures 2 and 4 of the patent illustrate

the two different configurations of the camera clip, *i.e.*, on a flat surface (Fig. 2) and on an inclined object (Fig. 4):



### B.    Disputed Terms

"Hinge Member" [cls. 1, 8, 10, 17, 19, 20, and 21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that joins to another for rotation | A structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

The parties generally agree that the "hinge member" is "a structural element that joins to another."  The parties, however, disagree whether the hinge member must form a "hinge joint" or can include any form of "joint."

5

Plaintiff's proposed construction evolved over the course of the briefing. Plaintiff ultimately argues that the "hinge member" is not limited to hinge *joints*. Specifically, Plaintiff contends that the claims and specification describe the "hinge member" as both "rotatably attached" and "hingedly attached." Therefore, an object that is "rotatably attached" is necessarily broader than a "hingedly attached" object. PL.'S BR. at 4–8; PL.'S REPLY at 3–4. Plaintiff raises secondary arguments regarding the "rotatably attached" terms and their interplay with the hinge member (*Id*. at 7–8), however, those arguments are discussed in more detail in the section below construing the "rotatably attached" terms.

The claims and the specification of the '343 patent disclose the hinge member as both "rotatably" and "hingedly" attached to another object. For example, claim 1 of the '343 patent describes the support frame as "rotatably attached" to the hinge member. '343 patent at 58–60. On the other hand, claim 19 of the '343 patent describes the support frame as "hingedly attached" to the hinge member. '343 patent at 9:24–26. A plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments.

The specification, moreover, describes embodiments of the hinge member incorporating the concept of pivots and pivoting. *See, e.g.*, 4:44–48 ("It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34."); 5:37–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26."). Therefore, Defendants' proposed

construction limiting the hinge member to hinge *joints* would improperly read out the foregoing preferred embodiments.  *See Globetrotter Software, Inc.*, 362 F.3d at 1381.

Defendants' proposed construction would also render the "rotatably attached" terms superfluous by limiting all claimed attachments to "hinged" attachments.  Such a result is untenable.  *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of claim construction that would render additional, or different, language in another independent claim superfluous.") (quoting *Fantasy Sports Props. v. Sportsline.com*, 287 F.3d 1108, 1115-16(Fed. Cir. 2002)).  Defendants' proposed construction is also unnecessarily permissive because it describes the hinge member as a structural element that *may* be joined to another.  Neither the specification nor claims teach a permissive attachment and such a construction would not meaningfully limit the claims.

As Defendants advocate, the claimed "hinge member" indeed may include a hinge joint.  However, the claims and the specification disclose that the hinge member is not limited to hinge joints.  Had the patentee intended to limit the patent in such a way, he or she: (1) could have simply used the term hinge *joint*, and not the broader term *member*; or (2) would have used "hingedly" to describe all the attachments in the claims.  Therefore, the Court construes "hinge member" as "a structural element that joins to another for rotation."

"Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach" [cls. 1, 10, 19, 20, and 21]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Connected such that the connected object is capable of being rotated | Connected such that the connected object is capable of being adjusted to different configurations via motion over one axis of rotation |

The crux of the parties disagreement is whether the '343 patent claims allow for a "rotatably attached" object to rotate over more than a single axis.  Plaintiff contends that "rotatably attached" objects are not limited to one axis of rotation, while Defendants advocate for the contrary.

The Court finds that the claims of the '343 patent describe "rotatably attached" objects as rotating over a single axis.  For example, claim 1 explains that when the hinge member is "rotatably attached" to the camera, it rotates "about a first axis of rotation." '343 patent at 6:54–57.  Claim 1 further describes that when the hinge member is rotatably attached to the support frame, it rotates "about a second axis of rotation." *Id.* at 6:58–65.  In other words, in claim 1, the hinge member may rotate about a single axis relative to the camera and a single axis relative to the support frame, and the two axes are "generally perpendicular" to one another. *Id.* All of the remaining claims that discuss "rotatably attached" objects are consistent with this understanding. *See, e.g.*, '343 patent at 7:60–67 ("[A] hinge member . . . rotatably attached to the camera . . . rotating[] about a first axis of rotation" and "a support frame rotatably attached [to the] hinge member . . . [with] the hinge member rotating about a second axis of rotation to said support frame."); 9:20–32 ("[A] hinge member adapted to be rotatably attached to the camera . . . rotating about a first axis of rotation."); 9:35–47 (same); 10:16–45 (same).

8

The specification is consistent with the claims in disclosing the camera and support frame rotating over a first and second axis of rotation. *See, e.g.*, 2:12–18 ("The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation"); 4:17–19 ("Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26."). Every reference to a "rotatably attached" object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.

Plaintiff contends that that claims refer to the apparatus as "comprising" a first and second axis of rotation; therefore, Plaintiff argues that the use of "comprising" broadens the claims to allow attachments which rotate over multiple axes. PL.'S BR. at 7. Plaintiff is mistaken. For example, claim 1 recites:

> **1**. Apparatus for supporting a camera, having a lens, on
> 50  any generally horizontal, substantially planar surface and on
> an object having a first surface and a second surface and an
> edge intersecting the first surface and the second surface,
> comprising:
> a. a hinge member adapted to be rotatably attached to the
> 55      camera, said camera, when the hinge member is so
> attached, rotating, about a first axis of rotation, relative
> to said hinge member; and
> b. a support frame rotatably attached to said hinge mem-
> ber and configured to support said hinge member on the
> 60      surface and the object, said hinge member rotating
> about a second axis of rotation relative to said support
> frame, said first axis of rotation being generally per-
> pendicular to said second axis of rotation, said second
> axis of rotation being substantially parallel to the first
> 65      surface when said hinge member is supported on the
> object, said support frame having a first disposition
> positioned on said generally horizontal, substantially
> planar surface, and said support frame having a second
> disposition attached to the object when said first surface
> and said second surface are inclined from a generally
> horizontal orientation, the camera being maintained
> adjacent said edge in said second disposition of said
> support frame.

'343 patent at 6:49–7:6.  "Comprising" appears before the individual elements of the claimed camera clip, *i.e.*, the hinge member and support frame.  Therefore, the word "comprising" may suggest that other elements exist beyond the *hinge member* and *support frame*.  However, the term "comprising" does not render each and every word in the claim open-ended as Plaintiff suggests.  Plaintiff's position would render the claim language meaningless.

Plaintiff further contends that the rotatable attachment between the hinge member and the camera is a "pivot joint"; therefore, limiting the rotation about a single axis would exclude a preferred embodiment.  PL.'S BR. at 8.  Even assuming the specification does disclose a pivot joint, limiting the *rotation* around a single axis would not read out the embodiment.  A pivot joint allows for rotation and the specification explicitly describes the "pivot element" as rotating around a *single* axis of rotation.  *See, e.g.*, '343 patent at 5:38–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about *first axis* 26.") (emphasis added).

On the other hand, Defendants' proposed construction merely restates what is already contained in the claims.  The claims plainly describe each "rotatably attached" object as rotating about a single axis and any further construction would only serve to confuse the jury. In other words, Defendants' construction merely repeats the claim language.  Therefore, the Court finds that the "rotatably attached" terms do not require construction beyond what is contained in the claims.  While the Court has not explicitly construed the "rotatably attached" terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, *i.e.*, "rotatably attached" objects in the patent-in-suit are limited to a single axis of rotation.  *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When

the parties raise an actual dispute regarding the proper scope of the claims, the court, not the jury, must resolve that dispute."). Therefore, the parties may not contradict the Court's resolution of that dispute.

"Support Frame" [cls. 1–8, 10, 11, 13–17, and 19–21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that supports a hinge member | A physically distinct structural element whose different dispositions enable support of said hinge member |

Plaintiff and Defendants both propose functional constructions to the extent that they agree that the intended purpose of the support frame is to support the hinge member.[2]  Indeed, the function of the support frame is explicitly recited in the claims.  *See, e.g.*, 6:57–59 ("[A] support frame rotatably attached to said hinge member and configured to support said hinge member.").  Defendants, however, argue that the claim language specifically links the ability of the support frame to provide support on particular structural arrangements, specifically the "first disposition" and "second disposition."  DEF.'S RESP. at 8.  Plaintiff disagrees that the different dispositions enable support of the hinge member and argues that the specification and claims generally provide the relevant structure of the support frame.  PL.'S REPLY at 1–2.

The claims of the '343 patent describe two general structural arrangements of the support frame.  For example, claim 1 of the '343 patent describes the support frame as supporting the camera on a horizontal surface and an inclined object. '343 patent at 6:58–7:2.  The specification is consistent with this understanding of the claims. *See, e.g.*, '343 patent at 2:1–2 ("The clip may be rotated to a first position to support the camera on a surface of a table or desk.  The clip may

---

[2] The parties agree that the "support frame" is a "structural element that supports" the claimed hinge member. PL.'S REPLY at 1.  While not explicitly contained in Plaintiff's proposed construction, Plaintiff also agrees that the support frame is distinct from and not part of the hinge member. *Id.*  Thus, the parties only dispute is related to the whether the support frame is limited to specific structural arrangements, namely, the "different dispositions."

A0023

be rotated to a second position to support the camera on a display screen of a laptop computer."); 2:24–26 ("[T]he rear support element and the first and second front support elements support the camera in the first position"); 2:39–41 ("[T]he rear support element and the first and second front support elements support the camera in a second position on the first surface"); 4:48–54 (same); 5:2–14 (same).   Therefore, the claims and the specification identify the first and second disposition as particular structural arrangements of the support frame.

Plaintiff and Defendants generally agree that the structure of the support frame is provided in the specification and claims. PL.'S BR. at 10; PL.'S REPLY at 1–2.  Plaintiff, however, proposes a construction that ignores the different structural arrangements of the support frame, *i.e.* different dispositions.   On the other hand, Defendants' construction unnecessarily requires the actual dispositions of the support frame to functionally provide the support frame its ability to "support."  The claims are not limited to the extent that "the different dispositions *enable* support" of the hinge member.

Support frame is an easily understood term and its function and structure are defined in the claims.  While the support frame must allow for two structural arrangements as described in the claims, the ability to support the hinge member is not directly linked to the two structural arrangements.  As such, the Court finds that "support frame" is sufficiently defined in the claims and no construction is necessary.  Nevertheless, the Court has resolved the parties' dispute regarding the scope of the claims.  *See O2 Micro*, 521. F.3d at 1360.

"Disposition" [cls. 1, 2, 5, 6, and 10]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning; alternatively, configuration or arrangement | Configuration of the support frame enabling support of the hinge member, accomplished through rotation about the second axis |

Beyond an agreement that a disposition is a "configuration," the parties' proposed constructions wildly diverge.  Plaintiff contends that "disposition" is an easily understood term and does not require construction beyond its plain and ordinary meaning.  Defendants argue that a "disposition" is a functional configuration of the "support frame" and such function can only be accomplished through rotational motion through the second axis.  DEF.'S RESP. at 11–13.

A plain reading of the claims discloses that the support frame has two "dispositions" or configurations, one allowing for the apparatus to be placed on a generally flat surface, the second allowing for the apparatus to be attached to an inclined object.  Defendants appear to contend that these "dispositions" may only be functionally accomplished through rotational motion of the support frame about the second axis.  DEF.'S RESP. at 12.  On the contrary, the claims describe the hinge member, not the support frame, as rotating about the second axis.  *See, e.g.*, '343 patent at 6:60–61 ("[S]aid hinge member rotating about a second axis of rotation.").  Further, the first clause of Defendants' proposed construction is merely a second bite at the same argument they advanced in construing "support frame."  The claims, however, do not require the specific *dispositions* of the support frame to enable support of the hinge member.

Defendants appear to be masquerading a noninfringement position as an issue of claim construction by injecting rotation into an easily understood structural term. Accordingly, the Court construes "disposition" as "a configuration or arrangement of the support frame."

13

**CONCLUSION**

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above.  For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.


**So ORDERED and SIGNED this 10th day of April, 2012.**


_____

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Claim Term | Court's Construction |
|---|---|
| Hinge member | a structural element that joins to another for construction |
| Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Support Frame | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Disposition | a configuration or arrangement of the support frame |

15

APPEAL,JURY,LED1,PATENT,PROTECTIVE-ORDER

# U.S. District Court [LIVE]
## Eastern District of TEXAS (Tyler)
## CIVIL DOCKET FOR CASE #: 6:10-cv-00329-LED

Adjustacam LLC v. Amazon.com, Inc. et al          Date Filed: 07/02/2010
Assigned to: Judge Leonard Davis                   Date Terminated: 08/20/2013
Case in other court: USCA-FEDERAL CIRCUIT, 13-01665   Jury Demand: Both
          USCA-FEDERAL CIRCUIT, 13-01666   Nature of Suit: 830 Patent
          USCA-FEDERAL CIRCUIT, 13-01667   Jurisdiction: Federal Question
Cause: 35:271 Patent Infringement

**Mediator**

**James W Knowles**                    represented by  **James W Knowles**
                                      Knowles Mediations
                                      909 East South East Loop 323
                                      Ste 410
                                      Tyler, TX 75701
                                      903/534-3800
                                      Fax: 903/534-3806
                                      Email: jimk@knowlesmed.com
                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
                                      Spangler Law P.C. - Longview
                                      208 N. Green Street
                                      Ste 300
                                      Longview, TX 75601
                                      903-753-9300
                                      Fax: 903-553-0403
                                      Email: spangler@spanglerlawpc.com
                                      *ATTORNEY TO BE NOTICED*

                                    **Andrew Patrick Tower**
                                    Collins Edmonds & Pogorzelski
                                      1616 S. Voss
                                      Ste 125
                                      Houston, TX 77057
                                      713/364-4701
                                      Fax: 832-415-2535
                                      Email: atower@cepiplaw.com

*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
Red Hat, Inc
1801 Varsity Drive
Raleigh, NC 27606
713-256-3879
Email: erobinson@redhat.com
*TERMINATED: 10/11/2011*

**James A Fussell , III**
Weisbrod Matteis & Copley PLLC
1900 M Street NW
Ste 850
Washington, DC 20036
202-499-7900
Email: jfussell@wmclaw.com
*ATTORNEY TO BE NOTICED*

**Johnathan K Yazdani**
Collins Edmonds & Pogorzelski
1616 S. Voss
Ste 125
Houston, TX 77057
281-501-3425
Fax: 832-415-2535
Email: jyazdani@cepiplaw.com
*ATTORNEY TO BE NOTICED*

**Joshua Brooks Long**
Collins Edmonds & Pogorzelski
1616 S. Voss
Ste 125
Houston, TX 77057
281-501-3425
Fax: 832-415-2535
Email: jlong@cepiplaw.com
*TERMINATED: 06/11/2013*

**Michael James Collins**
Collins Edmonds & Pogorzelski
1616 S. Voss
Ste 125
Houston, TX 77057
281-501-3490

Fax: 832-415-2535
Email: mcollins@cepiplaw.com
*ATTORNEY TO BE NOTICED*

**Stephen F Schlather**
Collins Edmonds Pogorzelski Schlather &
Tower, PLLC
1616 S. Voss
Ste 125
Houston, TX 77057
713-364-2371
Fax: 832-415-2535
Email: sschlather@cepiplaw.com
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
Collins Edmonds Pogorzelski Schlather &
Tower, PLLC
1616 South Voss
Suite 125
Houston, TX 77057
713-364-5291
Fax: 832-415-2535
Email: jedmonds@cepiplaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Amazon.com, Inc.**                    represented by   **Eric Hugh Findlay**
*TERMINATED: 04/24/2012*                               Findlay Craft PC
                                                       102 N College Avenue
                                                       Suite 900
                                                       Tyler, TX 75702
                                                       903/534-1100
                                                       Fax: 903/534-1137
                                                       Email: efindlay@findlaycraft.com
                                                       *ATTORNEY TO BE NOTICED*

                                                       **James E Geringer**
                                                       Klarquist Sparkman LLP
                                                       One World Trade Center
                                                       121 SW Salmon Street, Suite 1600
                                                       Portland, OR 97204
                                                       503-595-5300

Fax: 503-595-5301
Email: James.Geringer@klarquist.com
*ATTORNEY TO BE NOTICED*

**Roger Brian Craft**
Findlay Craft PC
102 N College Avenue
Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: bcraft@findlaycraft.com
*ATTORNEY TO BE NOTICED*

**Salumeh R Loesch**
Klarquist Sparkman LLP
121 SW Salmon Street
Suite 1600
Portland, OR 97204
503/595-5300
Fax: 503/595-5301
Email: salumeh.loesch@klarquist.com
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
Farney Daniels, PC
800 South Austin Ave
Ste 200
Georgetown, TX 78626
512-582-2820
Fax: 512-582-2829
Email: SDaniels@farneydaniels.com
*ATTORNEY TO BE NOTICED*

**Walter Wayne Lackey , Jr.**
Findlay Craft PC
102 N College Avenue
Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: wlackey@findlaycraft.com
*ATTORNEY TO BE NOTICED*

**Defendant**

A0031

**Auditek Corporation**
*TERMINATED: 05/30/2012*

represented by **Jen-Feng Lee**
LT Pacific Law Group LLP
17800 Castleton Street
Suite 560
City of Industry, CA 91748
626/810-7200
Fax: 626/810-7300
Email: jflee@ltpacificlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent Jerome Allen**
Carstens & Cahoon LLP
P O Box 802334
13760 Noel Rd
Suite 900
Dallas, TX 75240
972-367-2001
Fax: 972-367-2002
Email: allen@cclaw.com

**Zachary Wade Hilton**
Braxton, Hilton & Perrone, PLLC
4975 Preston Park Blvd.
Suite 490
Plano, TX 75093
469-814-0035
Fax: 469-814-0023
Email: hilton@bhp-ip.com

**Defendant**

**Blue Microphones, LLC**
*TERMINATED: 08/22/2011*

represented by **Michael D Harris**
SoCal IP Law Group LLP
310 N Westlake Blvd
Suite 120
Westlake Village, CA 91362
805/230-1350
Fax: 805/230-1355
Email: mharris@socalip.com
*LEAD ATTORNEY*
*PRO HAC VICE*

**Allen Franklin Gardner**
Potter Minton, a Professional Corporation
110 N College Avenue
Suite 500
Tyler, TX 75702
903/597-8311
Fax: 903-593-0846
Email: allengardner@potterminton.com

**Daniel Alan Noteware , Jr.**
Potter Minton, a Professional Corporation
110 N College Avenue
Suite 500
Tyler, TX 75702
903/597-8311
Fax: 9035930846
Email: dannynoteware@potterminton.com
*ATTORNEY TO BE NOTICED*

**John Frederick Bufe**
Potter Minton, a Professional Corporation
110 N College Avenue
Suite 500
Tyler, TX 75702
903/597/8311
Fax: 9035930846
Email: johnbufe@potterminton.com
*ATTORNEY TO BE NOTICED*

**M Kala Sarvaiya**
SoCal IP Law Group LLP
310 N Westlake Blvd
Suite 120
Westlake Village, CA 91362
805/230-1350
Fax: 805/230-1355
Email: ksarvaiya@socalip.com
*PRO HAC VICE*

**Michael E Jones**
Potter Minton PC
110 N College
Suite 500
PO Box 359

A0033

Tyler, TX 75710-0359
903-597-8311
Fax: 903-593-0846
Email: mikejones@potterminton.com

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Baltic Latvian Universal Electronics,**          represented by **Michael D Harris**
**LLC D/B/A Blue Microphones, LLC**                            (See above for address)
**D/B/A Blue Microphone**                                      *LEAD ATTORNEY*
*TERMINATED: 08/22/2011*                                       *PRO HAC VICE*

                                                              **Allen Franklin Gardner**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Daniel Alan Noteware , Jr.**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **John Frederick Bufe**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **M Kala Sarvaiya**
                                                              (See above for address)
                                                              *PRO HAC VICE*

                                                              **Michael E Jones**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Steven Robert Daniels**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**CDW Corporation F/K/A CDW**          represented by **Anthony S Gabrielson**
**Computer Centers, Inc.**                            Marshall Gerstein & Borun
*TERMINATED: 07/27/2012*                              233 S Wacker Dr
                                                      6300 Sears Tower
                                                      Chicago, IL 60606-6357

312/474-6300
Fax: 312/474-0448
Email: agabrielson@marshallip.com

**Benjamin T Horton**
Marshall Gerstein & Borun LLP
233 S Wacker Dr
6300 Willis Tower
Chicago, IL 60606-6357
312/474-6300
Fax: 312/474-0448
Email: bhorton@marshallip.com
*PRO HAC VICE*

**Bryan Donivan Atkinson**
Farney Daniels, LLP
800 S. Austin Ave
Ste 200
Georgetown, TX 78626
512-582-2836
Fax: 512-582-2829
Email: BAtkinson@farneydaniels.com
*ATTORNEY TO BE NOTICED*

**Eric Hugh Findlay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
Farney Daniels, PC
800 South Austin Ave
Ste 200
Georgetown, TX 78626
512-582-2828
Fax: 512-528-2829
Email: jlu@farneydaniels.com
*ATTORNEY TO BE NOTICED*

**Roger Brian Craft**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas L Duston**
Marshall Gerstein & Borun LLP
233 S Wacker Dr
6300 Willis Tower
Chicago, IL 60606-6357
312/474-6300
Fax: 312/474-0448
Email: tduston@marshallip.com

**Defendant**

**CDW, Inc.**                    represented by **Anthony S Gabrielson**
*TERMINATED: 07/27/2012*                    (See above for address)

                                             **Benjamin T Horton**
                                             (See above for address)
                                             *PRO HAC VICE*

                                             **Bryan Donivan Atkinson**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Eric Hugh Findlay**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Jia-Geng Lu**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Roger Brian Craft**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Steven Robert Daniels**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Thomas L Duston**
                                             (See above for address)

**Defendant**

**CDW, LLC**                    represented by **Anthony S Gabrielson**
*TERMINATED: 07/20/2010*                    (See above for address)

**Bryan Donivan Atkinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas L Duston**
(See above for address)

**Defendant**

**Compusa.com, Inc.**                    represented by   **David W Denenberg**
*TERMINATED: 03/22/2012*                                  Davidoff Hutcher & Citron, LLP - Garden
                                                          City NY
                                                          200 Garden City Plaza
                                                          Suite 315
                                                          Garden City, NY 11530
                                                          516-248-6400
                                                          Fax: 516-248-6422
                                                          Email: dwd@dhclegal.com
                                                          *PRO HAC VICE*

                                                          **Steven Robert Daniels**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Cobra Digital, LLC**                    represented by   **Allison Standish Miller**
*TERMINATED: 04/05/2011*                                  Shepherd, Scott, Clawater & Houston, LLP
                                                          2777 Allen Parkway
                                                          7th Floor
                                                          Houston, TX 77019
                                                          713-650-6600
                                                          Fax: 713-650-1720
                                                          Email: amiller@sschlaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven Robert Daniels**
                                                          (See above for address)

*ATTORNEY TO BE NOTICED*

**Walter Wayne Lackey , Jr.**
(See above for address)
*TERMINATED: 03/22/2011*

**Defendant**

**Creative Technology Ltd**
*TERMINATED: 12/06/2010*

**Defendant**

**Creative Labs, Inc.,**                represented by  **Eric Hugh Findlay**
*TERMINATED: 11/29/2011*                              (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Roger Brian Craft**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steven Robert Daniels**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Dell, Inc.,**                        represented by  **Roger Joseph Fulghum**
*TERMINATED: 12/05/2011*                              Baker Botts - Houston
                                                      910 Louisiana
                                                      Suite 3000 One Shell Plaza
                                                      Houston, TX 77002-4995
                                                      713/229-1707
                                                      Fax: 713/229-2707
                                                      Email: roger.fulghum@bakerbotts.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Deron R Dacus**
                                                      The Dacus Firm, PC
                                                      821 ESE Loop 323
                                                      Suite 430
                                                      Tyler, TX 75701
                                                      903/705-1117
                                                      Fax: 9037051117
                                                      Email: ddacus@dacusfirm.com
                                                      *ATTORNEY TO BE NOTICED*

**Paula Diane Heyman**
Baker Botts LLP - Austin
1500 San Jacinto Center
98 San Jacinto Blvd
Austin, TX 78701-4087
512-322-2555
Fax: 512-322-3610
Email: paula.heyman@bakerbotts.com
*ATTORNEY TO BE NOTICED*

**Scott F Partridge**
Baker Botts LLP
910 Louisiana
Suite 3000 One Shell Plaza
Houston, TX 77002-4995
713/229-1569
Fax: 713/229-7769
Email: scott.partridge@bakerbotts.com
*TERMINATED: 05/05/2011*

**Shannon Marie Dacus**
The Dacus Firm, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
9037051117
Fax: 9037051117
Email: sdacus@dacusfirm.com
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Digital Innovations, LLC**            represented by   **Bradley Wayne Hoover**
*TERMINATED: 06/07/2012*                                 Bradley W. Hoover, PC
                                                         937 E. Mulberry Street
                                                         Angleton, TX 77515
                                                         979-583-9663
                                                         Fax: 888-651-5317
                                                         Email: bhoover@bradleywhoover.com
                                                         *TERMINATED: 01/09/2012*

                                                         **Gary Y Leung**

McGuire Woods - Chicago
77 West Wacker Dr
41st Floor
Chicago, IL 60601
312/849-8100
Fax: 312/641-2742
Email: gleung@mcguirewoods.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Phillip Brett Philbin**
Haynes and Boone
2323 Victory Avenue
Suite 700
Dallas, TX 75219
214/651-5000
Fax: 12142000672
Email: phillip.philbin@haynesboone.com
*TERMINATED: 07/29/2011*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamara Danielle Stiner Toomer**
McGuireWoods LLP-Houston
600 Travis
Suite 7500
Houston, TX 77002
713-353-6661
Fax: 832-214-9925
Email: tstinertoomer@mcguirewoods.com

**Defendant**

**Eastman Kodak Company**          represented by **Jennifer Parker Ainsworth**
*TERMINATED: 09/20/2010*                        Wilson Robertson & Cornelius PC
                                                909 ESE Loop 323
                                                Suite 400
                                                P.O. Box 7339
                                                Tyler, TX 75711-7339
                                                903-509-5000
                                                Fax: 903-509-5092
                                                Email: jainsworth@wilsonlawfirm.com

**Defendant**

**Ezonics Corporation D/B/A Ezonics**
**Corporation USA D/B/A Ezonics**
*TERMINATED: 12/21/2010*
*also known as*
Ezonics Corporation USA
*TERMINATED: 12/21/2010*

## Defendant

**Fry's Electronics Inc**                    represented by **Ezra Sutton**
*TERMINATED: 08/22/2012*                     Ezra Sutton & Associates PA
                                             900 Route 9 North
                                             Woodbridge, NJ 07095
                                             732-634-3520
                                             Fax: 732-634-3511
                                             Email: esutton@ezrasutton.com
                                             *LEAD ATTORNEY*
                                             *PRO HAC VICE*
                                             *ATTORNEY TO BE NOTICED*

                                             **Bryan Donivan Atkinson**
                                             (See above for address)
                                             *TERMINATED: 05/10/2012*

                                             **Eric Hugh Findlay**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Jia-Geng Lu**
                                             (See above for address)
                                             *TERMINATED: 05/10/2012*

                                             **Roger Brian Craft**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **Steven Robert Daniels**
                                             (See above for address)
                                             *TERMINATED: 05/10/2012*

## Defendant

**Gear Head, LLC**                           represented by **Patricia L Davidson**
*TERMINATED: 08/17/2012*                     Mirick, O'Connell, DeMallie & Lougee,
                                             LLP
                                             100 Front Street
                                             Worcester, MA 01608

508-791-8500
Fax: 508-983-6240
Email: pdavidson@mirickoconnell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Herbert J Hammond**
Thompson & Knight - Dallas
1722 Routh Street
Ste 1500
Dallas, TX 75201-2533
214/969-1607
Fax: 12149691751
Email: herbert.hammond@tklaw.com

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vishal Hemant Patel**
Thompson & Knight - Dallas
1722 Routh Street
Ste 1500
Dallas, TX 75201-2533
214-969-124
Fax: 214-880-3224
Email: vishal.patel@tklaw.com

**Defendant**

**General Electric Company**
*TERMINATED: 07/13/2010*

**Defendant**

**Hewlett-Packard Company**          represented by **Bryan Donivan Atkinson**
*TERMINATED: 08/27/2012*                              (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Eric Hugh Findlay**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **George Walton Webb , III**
                                                      Ahmad, Zavitsanos, Anaipakos, Alavi &
                                                      Mensing P.C.
                                                      3460 One Houston Center

1221 McKinney St
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: gwebb@azalaw.com
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Roger Brian Craft**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Intcomex, Inc.**                     represented by **Russell T. Wong**
*TERMINATED: 12/02/2010*                              Wong Cabello Lutsch, Rutherford &
                                                      Brucculeri
                                                      20333 SH 249
                                                      Ste 600
                                                      Houston, TX 77070
                                                      832/446-2420
                                                      Email: rwong@counselip.com
                                                      *TERMINATED: 12/07/2010*

**Defendant**

**Jasco Products Company LLC D/B/A**     represented by **Michael Charles Smith**
**Jasco Products Company D/B/A Jasco**                  Siebman Burg Phillips & Smith, LLP-
*TERMINATED: 03/23/2011*                                Marshall
*also known as*                                         P O Box 1556
Jacso Products Company LLC                              Marshall, TX 75671-1556
*TERMINATED: 03/23/2011*                                903-938-8900
                                                        Fax: 19727674620
                                                        Email: michaelsmith@siebman.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Peter I Sanborn**
                                                        Holland & Knight LLP - Boston
                                                        10 St James Avenue
                                                        11th Floor

Boston, MA 02116
617/523-2700
Fax: 617/523-6850
Email: peter.sanborn@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**R David Donoghue**
Holland & Knight - Chicago
131 South Dearborn Street
30th Floor
Chicago, IL 60603
312/578-6553
Fax: 312/578-6666
Email: david.donoghue@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jwin Electronics Corporation**          represented by **Allen Franklin Gardner**
*TERMINATED: 04/05/2011*                                   (See above for address)
                                                           *TERMINATED: 09/16/2010*

                                                           **Michael E Jones**
                                                           (See above for address)
                                                           *TERMINATED: 09/16/2010*

                                                           **Philip A Werner**
                                                           Werner Ayers LLP
                                                           1800 Bering Drive
                                                           Suite 305
                                                           Houston, TX 77057
                                                           713/626-2233
                                                           Fax: 713-626-9708
                                                           Email: pwerner@wernerayers.com
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Steven Robert Daniels**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Klip Extreme LLC**                      represented by **Russell T. Wong**
*TERMINATED: 12/02/2010*                                   (See above for address)

*TERMINATED: 12/07/2010*

**Defendant**

**KMart Corporation**                    represented by    **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                                    Bracewell & Giuliani - Houston
                                                            711 Louisiana St
                                                            Suite 2300
                                                            Houston, TX 77002-2770
                                                            713/221-1242
                                                            Fax: 17132223206
                                                            Email: john.barr@bgllp.com
                                                            *LEAD ATTORNEY*

                                                            **Christopher Schenck**
                                                            Kilpatrick Townsend & Stockton LLP
                                                            1420 Fifth Avenue
                                                            Ste 4400
                                                            Seattle, WA 98101
                                                            206-516-3081
                                                            Fax: 206-623-6793
                                                            Email: CSchenck@kilpatricktownsend.com
                                                            *PRO HAC VICE*

                                                            **Christopher Aaron Shield**
                                                            Bracewell & Giuliani - Houston
                                                            711 Louisiana St
                                                            Suite 2300
                                                            Houston, TX 77002-2770
                                                            713/221-1115
                                                            Fax: 713/222-3225
                                                            Email: chris.shield@bracewellgiuliani.com

                                                            **John Allen Yates**
                                                            Bracewell & Giuliani - Houston
                                                            711 Louisiana St
                                                            Suite 2300
                                                            Houston, TX 77002-2770
                                                            713-221-1375
                                                            Fax: 713-222-3296
                                                            Email: jay.yates@bgllp.com

                                                            **Robert Dean Ayers , Jr**
                                                            Bracewell & Giuliani - Houston
                                                            711 Louisiana St
                                                            Suite 2300

Houston, TX 77002-2770
713-221-1146
Fax: 713-221-1212
Email: robert.ayers@bgllp.com

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lifeworks Technology Group, LLC**                represented by   **Bryan Donivan Atkinson**
*TERMINATED: 09/15/2011*                                            Farney Daniels, PC
                                                                    800 South Austin Ave
                                                                    Ste 200
                                                                    Georgetown, TX 78626
                                                                    512-582-2836
                                                                    Fax: 512-582-2829
                                                                    Email: BAtkinson@farneydaniels.com
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Collin Michael Maloney**
                                                                    Ireland Carroll & Kelley
                                                                    6101 S Broadway
                                                                    Suite 500
                                                                    Tyler, TX 75703
                                                                    903/561-1600
                                                                    Fax: 9035811071
                                                                    Email: cmaloney@icklaw.com
                                                                    *TERMINATED: 04/27/2011*

                                                                    **Jennifer Huang**
                                                                    Kaplan, Massamillo & Andrews, LLC
                                                                    70 East 55th Street
                                                                    25th Floor
                                                                    New York, NY 10022
                                                                    212/922-0450
                                                                    Fax: 212/922-0530
                                                                    Email: jhuang@kmalawfirm.com
                                                                    *TERMINATED: 04/27/2011*

                                                                    **Steven Robert Daniels**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Thomas Carulli**

Kaplan, Massamillo & Andrews, LLC
70 East 55th Street
25th Floor
New York, NY 10022
212/922-0450
Fax: 212/922-0530
Email: tcarulli@kmalawfirm.com
*TERMINATED: 04/27/2011*

**William Bryan Farney**
Farney Daniels, PC
800 South Austin Ave
Ste 200
Georgetown, TX 78626
512/582-2828
Fax: 512/582-2829
Email: bfarney@farneydaniels.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Macally Peripherals, Inc. D/B/A**          represented by   **Steven Robert Daniels**
**Macally U.S.A.**                                            (See above for address)
*TERMINATED: 12/01/2011*                                      *ATTORNEY TO BE NOTICED*

**Peter M Lukevich**
Apex Juris LLC
12733 Lake City Way, NE
Seattle, WA 98125
206/664-0314
Fax: 206/664-0329
Email: peter@apexjuris.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mace Group, Inc.**                         represented by   **Steven Robert Daniels**
*TERMINATED: 12/01/2011*                                      (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Peter M Lukevich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Micro Electronics, Inc. DBA Micro**        represented by   **Bryan Donivan Atkinson**
**Center**                                                    (See above for address)

*TERMINATED: 08/22/2012*                          *ATTORNEY TO BE NOTICED*

**Eric Hugh Findlay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**George Walton Webb , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert J Hammond**
Thompson & Knight LLP - Dallas
1722 Routh Street
Ste 1500
Dallas, TX 75201-2533
214/969-1607
Fax: 12149691751
Email: herbert.hammond@tklaw.com
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Roger Brian Craft**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**New Compusa Corporation**          represented by **David W Denenberg**
*TERMINATED: 03/22/2012*                          (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *PRO HAC VICE*

                                                  **Steven Robert Daniels**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Newegg, Inc.**                     represented by **John N Zarian**
*TERMINATED: 09/27/2012*                          Parsons Behle & Latimer

960 Broadway Ave
Ste 250
Boise, ID 83706
208-562-4900
Fax: 208/562-4901
Email: JZarian@parsonsbehle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher J Cuneo**
Parsons Behle & Latimer - Boise
800 W. Main Street
Suite 1300
Boise, ID 83706
(208) 562-4900
Fax: (208) 562-4901
Email: ccuneo@parsonsbehle.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dana M Herberholz**
Parsons Behle & Latimer - Boise
800 W. Main Street
Suite 1300
Boise, ID 83706
208-562-4900
Fax: 2085624901
Email: DHerberholz@parsonsbehle.com
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**
Findlay Craft PC
102 N College Avenue
Suite 900
Tyler, TX 75702
903.534.1100
Fax: 903.534.1137
Email: dgunter@findlaycraft.com
*TERMINATED: 06/16/2014*

**Herbert A Yarbrough , III**
Attorney at Law
100 E Ferguson
Suite 1015
Tyler, TX 75702

903/595-3111
Fax: 19035950191
Email: trey@yw-lawfirm.com
*ATTORNEY TO BE NOTICED*

**Justin Neil Stewart**
Parsons Behle & Latimer - Boise
800 W. Main Street
Suite 1300
Boise, ID 83706
208-562-4900
Fax: 208-562-4901
*TERMINATED: 12/30/2010*

**Robert A Matson**
Parsons Behle & Latimer
960 Broadway Ave
Ste 250
Boise, ID 83706
208/562-4900
Fax: 208/562-4901
Email: rmatson@parsonsbehle.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Newegg.com, Inc.**          represented by **John N Zarian**
*TERMINATED: 09/27/2012*                    (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

**Christopher J Cuneo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dana M Herberholz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Debra Elaine Gunter**

(See above for address)
*TERMINATED: 06/16/2014*

**Herbert A Yarbrough , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Neil Stewart**
(See above for address)
*TERMINATED: 12/30/2010*
*ATTORNEY TO BE NOTICED*

**Robert A Matson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Office Depot, Inc.**                    represented by **Bryan Donivan Atkinson**
*TERMINATED: 08/22/2012*                   (See above for address)
*TERMINATED: 04/30/2012*
*ATTORNEY TO BE NOTICED*

**Eric Hugh Findlay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Herbert J Hammond**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
(See above for address)
*TERMINATED: 04/30/2012*
*ATTORNEY TO BE NOTICED*

**Patricia L Davidson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Roger Brian Craft**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*TERMINATED: 04/30/2012*
*ATTORNEY TO BE NOTICED*

**Vishal Hemant Patel**
Thompson & Knight LLP - Dallas
1722 Routh Street
Ste 1500
Dallas, TX 75201-2533
214-969-124
Fax: 214-880-3224
Email: vishal.patel@tklaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Overstock.com, Inc.**                 represented by **John Hanson Barr , Jr**
*TERMINATED: 09/21/2011*                (See above for address)
                                        *LEAD ATTORNEY*

                                        **Christopher Schenck**
                                        (See above for address)
                                        *PRO HAC VICE*

                                        **Christopher Aaron Shield**
                                        (See above for address)

                                        **John Allen Yates**
                                        (See above for address)

                                        **Robert Dean Ayers , Jr**
                                        (See above for address)

                                        **Steven Robert Daniels**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Phoebe Micro Inc.**                   represented by **Phoebe Micro Inc.**
*TERMINATED: 03/24/2011*                c/o Peter Sedyuen Lui
                                        Phoebe Micro Inc
                                        47606 Kato Road

Fremont, CA 94538
510-933-1683
Fax: 510-360-0818
Email: peter.lui@phoebemicro.com
PRO SE

**Nena W Wong**
Attorney at Law
6080 Center Drive
Suite 600
Los Angeles, CA 90045
310/704-6603
Fax: 310/689-2339
Email: nenawong@earthlink.net
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Prolynkz, LLC**                    represented by **Prolynkz, LLC**
*TERMINATED: 01/10/2011*                    c/o Sean Pate
                                    2010 Main Street
                                    Suite 1250
                                    Irvine, CA 92614
                                    949-307-3223
                                    Fax: 949-271-4565
                                    Email: seanpate@gmail.com
                                    PRO SE

**Defendant**

**Radioshack Corporation**            represented by **Christopher Michael Joe**
*TERMINATED: 08/22/2011*                    Buether Joe & Carpenter, LLC
                                    1700 Pacific Avenue
                                    Suite 2390
                                    Dallas, TX 75201
                                    (214) 466-1272
                                    Fax: (214) 635-1828
                                    Email: Chris.Joe@bjciplaw.com
                                    *TERMINATED: 10/28/2010*

**Daniel L Farris**
Holland & Knight - Chicago

131 South Dearborn Street
30th Floor
Chicago, IL 60603
(312) 715-5765
Fax: (312) 578-6666
Email: daniel.farris@hklaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Charles Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter I Sanborn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**R David Donoghue**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rosewill Inc.**                    represented by  **John N Zarian**
*TERMINATED: 09/27/2012*                            (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Christopher J Cuneo**
                                                    (See above for address)
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Dana M Herberholz**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Debra Elaine Gunter**
                                                    (See above for address)
                                                    *TERMINATED: 06/16/2014*

                                                    **Herbert A Yarbrough , III**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Justin Neil Stewart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert A Matson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Sears Brands, LLC**                    represented by    **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                                   (See above for address)
                                                           *LEAD ATTORNEY*

                                                           **Christopher Schenck**
                                                           (See above for address)
                                                           *PRO HAC VICE*

                                                           **Christopher Aaron Shield**
                                                           (See above for address)

                                                           **John Allen Yates**
                                                           (See above for address)

                                                           **Robert Dean Ayers , Jr**
                                                           (See above for address)

                                                           **Steven Robert Daniels**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Sears Holdings Corporation D/B/A**     represented by    **John Hanson Barr , Jr**
**Sears**                                                  (See above for address)
*TERMINATED: 05/24/2011*                                   *LEAD ATTORNEY*
*also known as*
Sears, Roebuck and Company                                 **Christopher Schenck**
*TERMINATED: 05/24/2011*                                   (See above for address)
                                                           *PRO HAC VICE*

                                                           **Christopher Aaron Shield**

(See above for address)

John Allen Yates
(See above for address)

Robert Dean Ayers , Jr
(See above for address)

Steven Robert Daniels
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sakar International, Inc.**
*TERMINATED: 12/17/2012*

represented by **Ezra Sutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Steven Robert Daniels
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sakar, Inc.**
*TERMINATED: 12/06/2010*

represented by **Ezra Sutton**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**SDI Technologies, Inc.**
*TERMINATED: 09/01/2010*

represented by **Collin Michael Maloney**
(See above for address)

**Defendant**

**Software Brokers of America Inc. DBA
Intcomex Corporation D/B/A Intcomex**
*TERMINATED: 12/02/2010*

represented by **Russell T. Wong**
(See above for address)
*TERMINATED: 12/07/2010*

**Defendant**

**Systemax, Inc. D/B/A Compusa**
*TERMINATED: 03/22/2012*

represented by **David W Denenberg**
(See above for address)
*PRO HAC VICE*

Steven Robert Daniels
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Target Corp.**                    represented by **Bryan Donivan Atkinson**
*TERMINATED: 03/05/2012*                            (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jia-Geng Lu**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Michael Charles Smith**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Peter I Sanborn**
                                                    (See above for address)
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **R David Donoghue**
                                                    (See above for address)
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Steven Robert Daniels**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**Tigerdirect, Inc.**                represented by **David W Denenberg**
*TERMINATED: 03/22/2012*                             (See above for address)
                                                     *PRO HAC VICE*

                                                     **Steven Robert Daniels**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Trippe Manufacturing Company D/B/A**   represented by **David L De Bruin**
**Tripp Lite**                                          Michael Best & Freidrich LLP
*TERMINATED: 10/25/2010*                                180 N Stetson Avenue
                                                        Suite 2000
                                                        Chicago, IL 60601
                                                        312-222-0800
                                                        Fax: 312-222-0818
                                                        Email: dldebruin@michaelbest.com

*PRO HAC VICE*

**Larry Saret**
Michael Best & Freidrich LLP
180 N Stetson Avenue
Suite 2000
Chicago, IL 60601
312-661-2116
Fax: 312-222-0818
Email: llsaret@michaelbest.com
*PRO HAC VICE*

**Defendant**

**Wal-Mart Stores, Inc.**                    represented by **Laura Lindsay Chapman**
*TERMINATED: 08/22/2012*                    Sheppard Mullin Richter & Hampton, LLP
                                            - San Francisco
                                            Four Embarcadero Center
                                            17th Floor
                                            San Francisco, CA 94111
                                            415-774-3215
                                            Fax: 415-434-3947
                                            Email: lchapman@sheppardmullin.com
                                            *LEAD ATTORNEY*

                                            **Michael Charles Smith**
                                            (See above for address)

                                            **Steven Robert Daniels**
                                            (See above for address)

                                            **Victor DeGyarfas**
                                            Foley & Lardner - Los Angeles
                                            555 S Flower Street
                                            Suite 3500
                                            Los Angeles, CA 90071
                                            213/972-4500
                                            Fax: 213/486-0065
                                            Email: vdegyarfas@foley.com

**Defendant**

**Sears, Roebuck and Company**               represented by **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                    (See above for address)
                                            *LEAD ATTORNEY*

**Christopher Schenck**
(See above for address)
*PRO HAC VICE*

**Christopher Aaron Shield**
(See above for address)

**John Allen Yates**
(See above for address)

**Robert Dean Ayers , Jr**
(See above for address)

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Co Inc**                          represented by   **Bryan Donivan Atkinson**
*D/B/A Best Buy D/B/A Rocketfish*                            (See above for address)
*TERMINATED: 08/22/2012*                                    *ATTORNEY TO BE NOTICED*

**George Walton Webb , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Best Buy Stores, LP**                      represented by   **Bryan Donivan Atkinson**
*TERMINATED: 08/22/2012*                                     (See above for address)
*ATTORNEY TO BE NOTICED*

**George Walton Webb , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jia-Geng Lu**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BestBuy.com, LLC**                    represented by **Bryan Donivan Atkinson**
*TERMINATED: 08/22/2012*                    (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **George Walton Webb , III**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **Jia-Geng Lu**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **Steven Robert Daniels**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**CONNS, INC. D/B/A CONNS**              represented by **J Thad Heartfield**
*TERMINATED: 03/24/2011*                    The Heartfield Law Firm
                                            2195 Dowlen Rd
                                            Beaumont, TX 77706
                                            409/866-3318
                                            Fax: 14098665789
                                            Email: thad@heartfieldlawfirm.com

                                            **M. Dru Montgomery**
                                            The Heartfield Law Firm
                                            2195 Dowlen Road
                                            Beaumont, TX 77706
                                            409/866-3318
                                            Fax: 409/866-5789
                                            Email: dru@heartfieldlawfirm.com

                                            **Kent Morrison Adams**
                                            Lewis Brisbois Bisgaard & Smith - Houston
                                            3355 West Alabama
                                            Suite 400
                                            Houston, TX 77098

713-659-6767
Fax: 713/759-6830
Email: kadams@lbbslaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**J&R ELECTRONICS INC. D/B/A**                represented by  **Allen Franklin Gardner**
**J&R**                                                      (See above for address)
*TERMINATED: 01/04/2012*

                                                            **Daniel Alan Noteware , Jr.**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John Frederick Bufe**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Michael E Jones**
                                                            (See above for address)

                                                            **Steven Robert Daniels**
                                                            Farney Daniels, LLP
                                                            800 S. Austin Ave
                                                            Ste 200
                                                            Georgetown, TX 78626
                                                            512-582-2820
                                                            Fax: 512-582-2829
                                                            Email: SDaniels@farneydaniels.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Walter Thomas Henson**
                                                            Ramey & Flock
                                                            100 E Ferguson
                                                            Suite 500
                                                            Tyler, TX 75702-0629
                                                            903/597-3301
                                                            Fax: 9035972413
                                                            Email: thenson@rameyflock.com

**Defendant**

**KOHLS CORPORATION D/B/A**                  represented by  **Ezra Sutton**
**KOHL'S**                                                   (See above for address)
*TERMINATED: 12/17/2012*                                     *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kohl's Illinois, Inc.**          represented by **Ezra Sutton**
*TERMINATED: 12/17/2012*                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SOLID YEAR CO., LTD.**
*TERMINATED: 12/06/2010*

**Defendant**

**WALGREEN CO. D/B/A
WALGREENS**
*TERMINATED: 09/14/2010*

**Counter Claimant**

**Dell, Inc.,**               represented by **Roger Joseph Fulghum**
*TERMINATED: 12/05/2011*               (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paula Diane Heyman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott F Partridge**
(See above for address)
*TERMINATED: 05/05/2011*

V.

**Counter Defendant**

**AdjustaCam LLC**            represented by **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**

(See above for address)
*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Amazon.com, Inc.**                    represented by **James E Geringer**
*TERMINATED: 04/24/2012*                (See above for address)
                                        *ATTORNEY TO BE NOTICED*

                                        **Salumeh R Loesch**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                      represented by **Andrew W. Spangler**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

                                        **Erick Scott Robinson**
                                        (See above for address)
                                        *TERMINATED: 10/11/2011*

                                        **John J Edmonds**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Systemax, Inc. D/B/A Compusa**        represented by **David W Denenberg**
*TERMINATED: 03/22/2012*                (See above for address)
                                        *PRO HAC VICE*

**Counter Claimant**

**Tigerdirect, Inc.**                   represented by **David W Denenberg**
*TERMINATED: 03/22/2012*                (See above for address)
                                        *PRO HAC VICE*

**Counter Claimant**

**New Compusa Corporation**             represented by **David W Denenberg**
*TERMINATED: 03/22/2012*                (See above for address)
                                        *LEAD ATTORNEY*

*PRO HAC VICE*

**Counter Claimant**

**Compusa.com, Inc.**                  represented by  **David W Denenberg**
*TERMINATED: 03/22/2012*                     (See above for address)
                                               *PRO HAC VICE*

V.

**Counter Defendant**

**AdjustaCam LLC**                     represented by  **Andrew W. Spangler**
                                                 (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Erick Scott Robinson**
                                               (See above for address)
                                               *TERMINATED: 10/11/2011*

                                               **John J Edmonds**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Newegg.com, Inc.**                   represented by  **Christopher J Cuneo**
*TERMINATED: 09/27/2012*                     (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Justin Neil Stewart**
                                               (See above for address)
                                               *TERMINATED: 12/30/2010*
                                               *ATTORNEY TO BE NOTICED*

                                               **Robert A Matson**
                                               (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Newegg, Inc.**                       represented by  **Christopher J Cuneo**
*TERMINATED: 09/27/2012*                     (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Justin Neil Stewart**

(See above for address)
*TERMINATED: 12/30/2010*
*ATTORNEY TO BE NOTICED*

**Robert A Matson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**<u>Counter Defendant</u>**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Counter Claimant</u>**

**Rosewill Inc.**                    represented by  **Christopher J Cuneo**
*TERMINATED: 09/27/2012*                             (See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Neil Stewart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert A Matson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**<u>Counter Defendant</u>**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**CONNS, INC. D/B/A CONNS**                 represented by  **Kent Morrison Adams**
*TERMINATED: 03/24/2011*                                    (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**AdjustaCam LLC**                          represented by  **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)
                                                            *TERMINATED: 10/11/2011*

                                                            **John J Edmonds**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Sakar International, Inc.**               represented by  **Ezra Sutton**
*TERMINATED: 12/17/2012*                                    (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**AdjustaCam LLC**                          represented by  **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)

*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kohl's Illinois, Inc.**                    represented by **Ezra Sutton**
*TERMINATED: 12/17/2012*                                    (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**KOHLS CORPORATION D/B/A**                  represented by **Ezra Sutton**
**KOHL'S**                                                  (See above for address)
*TERMINATED: 12/17/2012*                                    *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                           represented by **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)
                                                            *TERMINATED: 10/11/2011*

                                                            **John J Edmonds**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sakar International, Inc.**                 represented by **Ezra Sutton**
*TERMINATED: 12/17/2012*                                    (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                           represented by **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Kohl's Illinois, Inc.**                    represented by **Ezra Sutton**
*TERMINATED: 12/17/2012*                       (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**KOHLS CORPORATION D/B/A**          represented by **Ezra Sutton**
**KOHL'S**                                     (See above for address)
*TERMINATED: 12/17/2012*                       *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*


V.

<u>**Counter Defendant**</u>

**AdjustaCam LLC**                         represented by **Andrew W. Spangler**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Erick Scott Robinson**
                                               (See above for address)
                                               *TERMINATED: 10/11/2011*

                                               **John J Edmonds**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Sakar International, Inc.**              represented by **Ezra Sutton**
*TERMINATED: 12/17/2012*                       (See above for address)
                                               *ATTORNEY TO BE NOTICED*


V.

<u>**Counter Defendant**</u>

A0068

AdjustaCam LLC                              represented by  **Andrew W. Spangler**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Erick Scott Robinson**
                                                           (See above for address)
                                                           *TERMINATED: 10/11/2011*

                                                           **Michael James Collins**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **John J Edmonds**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kohl's Illinois, Inc.**                  represented by  **Ezra Sutton**
*TERMINATED: 12/17/2012*                                  (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**KOHLS CORPORATION D/B/A**                represented by  **Ezra Sutton**
**KOHL'S**                                                (See above for address)
*TERMINATED: 12/17/2012*                                  *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                         represented by  **Andrew W. Spangler**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Erick Scott Robinson**
                                                           (See above for address)
                                                           *TERMINATED: 10/11/2011*

                                                           **Michael James Collins**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **John J Edmonds**
                                                           (See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**KMart Corporation**                    represented by  **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                             (See above for address)
*LEAD ATTORNEY*

                                          **Christopher Aaron Shield**
                                          (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                          represented by  **Andrew W. Spangler**
                                            (See above for address)
                                          *ATTORNEY TO BE NOTICED*

                                          **Erick Scott Robinson**
                                          (See above for address)
                                          *TERMINATED: 10/11/2011*

                                          **Michael James Collins**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

                                          **John J Edmonds**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Overstock.com, Inc.**                    represented by  **John Hanson Barr , Jr**
*TERMINATED: 09/21/2011*                              (See above for address)
*LEAD ATTORNEY*

                                            **Christopher Aaron Shield**
                                          (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                          represented by  **Andrew W. Spangler**
                                              (See above for address)
                                          *ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sears Holdings Corporation D/B/A Sears**
*TERMINATED: 05/24/2011*

represented by **John Hanson Barr , Jr**
(See above for address)
*LEAD ATTORNEY*

**Christopher Aaron Shield**
(See above for address)

**Counter Claimant**

**Sears, Roebuck and Company**
*TERMINATED: 05/24/2011*

represented by **John Hanson Barr , Jr**
(See above for address)
*LEAD ATTORNEY*

**Christopher Aaron Shield**
(See above for address)

**Counter Claimant**

**Sears Brands, LLC**
*TERMINATED: 05/24/2011*

represented by **John Hanson Barr , Jr**
(See above for address)
*LEAD ATTORNEY*

**Christopher Aaron Shield**
(See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**

represented by **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)

*TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Overstock.com, Inc.**                    represented by   **John Hanson Barr , Jr**
*TERMINATED: 09/21/2011*                                    (See above for address)
                                                            *LEAD ATTORNEY*

                                                            **Christopher Aaron Shield**
                                                            (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                         represented by   **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)
                                                            *TERMINATED: 10/11/2011*

                                                            **Michael James Collins**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John J Edmonds**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**KMart Corporation**                      represented by   **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                                    (See above for address)
                                                            *LEAD ATTORNEY*

                                                            **Christopher Aaron Shield**
                                                            (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                          represented by  **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)
                                                            *TERMINATED: 10/11/2011*

                                                            **Michael James Collins**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John J Edmonds**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sears Holdings Corporation D/B/A**        represented by  **John Hanson Barr , Jr**
**Sears**                                                   (See above for address)
*TERMINATED: 05/24/2011*                                    *LEAD ATTORNEY*

                                                            **Christopher Aaron Shield**
                                                            (See above for address)

**Counter Claimant**

**Sears, Roebuck and Company**              represented by  **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                                    (See above for address)
                                                            *LEAD ATTORNEY*

                                                            **Christopher Aaron Shield**
                                                            (See above for address)

**Counter Claimant**

**Sears Brands, LLC**                       represented by  **John Hanson Barr , Jr**
*TERMINATED: 05/24/2011*                                    (See above for address)
                                                            *LEAD ATTORNEY*

                                                            **Christopher Aaron Shield**
                                                            (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Macally Peripherals, Inc. D/B/A**      represented by  **Peter M Lukevich**
**Macally U.S.A.**                      (See above for address)
*TERMINATED: 12/01/2011*                *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Auditek Corporation**                 represented by  **Jen-Feng Lee**
*TERMINATED: 05/30/2012*                (See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vincent Jerome Allen**

(See above for address)

**Zachary Wade Hilton**
(See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                          represented by **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)
                                                            *TERMINATED: 10/11/2011*

                                                            **Michael James Collins**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John J Edmonds**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Macally Peripherals, Inc. D/B/A**          represented by **Peter M Lukevich**
**Macally U.S.A.**                                          (See above for address)
*TERMINATED: 12/01/2011*                                    *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Mace Group, Inc.**                         represented by **Peter M Lukevich**
*TERMINATED: 12/01/2011*                                    (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                          represented by **Andrew W. Spangler**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Erick Scott Robinson**
                                                            (See above for address)
                                                            *TERMINATED: 10/11/2011*

Michael James Collins
(See above for address)
*ATTORNEY TO BE NOTICED*

John J Edmonds
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Digital Innovations, LLC**            represented by    Bradley Wayne Hoover
*TERMINATED: 06/07/2012*                                 (See above for address)
                                                         *TERMINATED: 01/09/2012*

                                                         Gary Y Leung
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         Phillip Brett Philbin
                                                         (See above for address)
                                                         *TERMINATED: 07/29/2011*

                                                         Tamara Danielle Stiner Toomer
                                                         (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                      represented by    Andrew W. Spangler
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         Erick Scott Robinson
                                                         (See above for address)
                                                         *TERMINATED: 10/11/2011*

                                                         Michael James Collins
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         John J Edmonds
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sakar International, Inc.**                    represented by    **Ezra Sutton**
*TERMINATED: 12/17/2012*                                        (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Steven Robert Daniels**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                              represented by    **Andrew W. Spangler**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Andrew Patrick Tower**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Erick Scott Robinson**
                                                                (See above for address)
                                                                *TERMINATED: 10/11/2011*

                                                                **Michael James Collins**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **John J Edmonds**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Newegg, Inc.**                                represented by    **Christopher J Cuneo**
*TERMINATED: 09/27/2012*                                        (See above for address)
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Justin Neil Stewart**
                                                                (See above for address)
                                                                *TERMINATED: 12/30/2010*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Robert A Matson**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Newegg.com, Inc.**                  represented by  **Christopher J Cuneo**
*TERMINATED: 09/27/2012*                              (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Debra Elaine Gunter**
                                                      (See above for address)
                                                      *TERMINATED: 06/16/2014*

                                                      **Herbert A Yarbrough , III**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Justin Neil Stewart**
                                                      (See above for address)
                                                      *TERMINATED: 12/30/2010*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Robert A Matson**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steven Robert Daniels**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Erick Scott Robinson**
                                                      (See above for address)
                                                      *TERMINATED: 10/11/2011*

                                                      **John J Edmonds**
                                                      (See above for address)

*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Rosewill Inc.**                        represented by   **Christopher J Cuneo**
*TERMINATED: 09/27/2012*                                 (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Justin Neil Stewart**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Robert A Matson**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

**V.**

**Counter Defendant**

**AdjustaCam LLC**                       represented by   **Andrew W. Spangler**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Charles Van Cleef**
                                                         Charles van Cleef, Attorney at Law, PC
                                                         PO Box 2432
                                                         Longview, TX 75606-2432
                                                         903-248-8244
                                                         Fax: 903-248-8249
                                                         Email: charles@vancleef.pro
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Erick Scott Robinson**
                                                         (See above for address)
                                                         *TERMINATED: 10/11/2011*

                                                         **John J Edmonds**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Wal-Mart Stores, Inc.**                represented by   **Laura Lindsay Chapman**
*TERMINATED: 08/22/2012*                                 (See above for address)

*LEAD ATTORNEY*

**Victor DeGyarfas**
(See above for address)
*LEAD ATTORNEY*

**Michael Charles Smith**
(See above for address)

**Steven Robert Daniels**
(See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew Patrick Tower**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Overstock.com, Inc.**                    represented by **John Hanson Barr , Jr**
*TERMINATED: 09/21/2011*                    (See above for address)
*LEAD ATTORNEY*

**Christopher Schenck**
(See above for address)
*PRO HAC VICE*

**Christopher Aaron Shield**

(See above for address)

**John Allen Yates**
(See above for address)

**Robert Dean Ayers , Jr**
(See above for address)

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by  **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Digital Innovations, LLC**          represented by  **Bradley Wayne Hoover**
*TERMINATED: 06/07/2012*                (See above for address)
*TERMINATED: 01/09/2012*

**Gary Y Leung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip Brett Philbin**
(See above for address)
*TERMINATED: 07/29/2011*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamara Danielle Stiner Toomer**

(See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by   **Andrew W. Spangler**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Andrew Patrick Tower**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Erick Scott Robinson**
                                                       (See above for address)
                                                       *TERMINATED: 10/11/2011*

                                                       **Michael James Collins**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **John J Edmonds**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Dell, Inc.,**                       represented by   **Roger Joseph Fulghum**
*TERMINATED: 12/05/2011*                               (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Deron R Dacus**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Paula Diane Heyman**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Scott F Partridge**
                                                       (See above for address)
                                                       *TERMINATED: 05/05/2011*

                                                       **Shannon Marie Dacus**
                                                       (See above for address)

*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by   **Andrew W. Spangler**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Andrew Patrick Tower**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Erick Scott Robinson**
                                                      (See above for address)
                                                      *TERMINATED: 10/11/2011*

                                                      **Michael James Collins**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **John J Edmonds**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Auditek Corporation**               represented by   **Jen-Feng Lee**
*TERMINATED: 05/30/2012*                              (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steven Robert Daniels**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Vincent Jerome Allen**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Zachary Wade Hilton**
                                                      (See above for address)

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by **Andrew W. Spangler**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Erick Scott Robinson**
                                      (See above for address)
                                      *TERMINATED: 10/11/2011*

                                      **John J Edmonds**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Dell, Inc.,**                       represented by **Roger Joseph Fulghum**
*TERMINATED: 12/05/2011*              (See above for address)
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

                                      **Deron R Dacus**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Paula Diane Heyman**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Scott F Partridge**
                                      (See above for address)
                                      *TERMINATED: 05/05/2011*

                                      **Shannon Marie Dacus**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

                                      **Steven Robert Daniels**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                    represented by **Andrew W. Spangler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew Patrick Tower**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Amazon.com, Inc.**                    represented by **Eric Hugh Findlay**
*TERMINATED: 04/24/2012*                (See above for address)
*ATTORNEY TO BE NOTICED*

**Roger Brian Craft**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Salumeh R Loesch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Walter Wayne Lackey , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**AdjustaCam LLC**                                 represented by  **Andrew W. Spangler**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Andrew Patrick Tower**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Erick Scott Robinson**
                                                                 (See above for address)
                                                                 *TERMINATED: 10/11/2011*

                                                                 **Michael James Collins**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **John J Edmonds**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sakar International, Inc.**                     represented by  **Ezra Sutton**
*TERMINATED: 12/17/2012*                                         (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Steven Robert Daniels**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                                represented by  **Andrew W. Spangler**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Andrew Patrick Tower**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Erick Scott Robinson**
                                                                 (See above for address)
                                                                 *TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**KOHLS CORPORATION D/B/A**              represented by **Ezra Sutton**
**KOHL'S**                                                (See above for address)
*TERMINATED: 12/17/2012*                                  *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Steven Robert Daniels**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**AdjustaCam LLC**                       represented by **Andrew W. Spangler**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Andrew Patrick Tower**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erick Scott Robinson**
(See above for address)
*TERMINATED: 10/11/2011*

**Michael James Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John J Edmonds**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/02/2010 | 1 | COMPLAINT against Amazon.com, Inc., Auditek Corporation, Baltic Latvian |

| | | |
|---|---|---|
| | | Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Cobra Digital, LLC, Compusa.com, Inc., Creative Labs, Inc.,, Creative Technology Ltd, Dell, Inc.,, Digital Innovations, LLC, Eastman Kodak Company, Ezonics Corporation USA, Fry's Electronics Inc, Gear Head, LLC, General Electric Company, Hewlett-Packard Company, Intcomex, Inc., Jacso Products Company LLC, Jwin Electronics Corporation, KMart Corporation, Klip Extreme LLC, Lifeworks Technology Group, LLC, Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Overstock.com, Inc., Phoebe Micro Inc., Prolynkz, LLC, Radioshack Corporation, Rosewill Inc., SDI Technologies, Inc., Sakar International, Inc., Sakar, Inc., Sears Brands, LLC, Sears, Roebuck and Company, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Trippe Manufacturing Company D/B/A Tripp Lite, Wal-Mart Stores, Inc. ( Filing fee $ 350 receipt number 0540-2559879.), filed by AdjustaCam LLC. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Edmonds, John) (Entered: 07/02/2010) |
| 07/02/2010 | | Judge Leonard Davis added. (mll, ) (Entered: 07/06/2010) |
| 07/07/2010 | 2 | E-GOV SEALED SUMMONS Issued as to Amazon.com, Inc., Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Cobra Digital, LLC, Compusa.com, Inc., Dell, Inc.,, Digital Innovations, LLC, Eastman Kodak Company, Ezonics Corporation D/B/A Ezonics Corporation USA D/B/A Ezonics, Fry's Electronics Inc, Gear Head, LLC, General Electric Company, Hewlett-Packard Company, Intcomex, Inc., Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco, Jwin Electronics Corporation, KMart Corporation, Klip Extreme LLC, Lifeworks Technology Group, LLC., and emailed to pltf for service. (mll, ) (Entered: 07/07/2010) |
| 07/07/2010 | 3 | E-GOV SEALED SUMMONS Issued as to Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Overstock.com, Inc., Phoebe Micro Inc., Prolynkz, LLC, Radioshack Corporation, Rosewill Inc., SDI Technologies, Inc., Sakar International, Inc., Sakar, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Trippe Manufacturing Company D/B/A Tripp Lite, Wal-Mart Stores, Inc., and emailed to pltf for service. (mll, ) (Entered: 07/07/2010) |
| 07/07/2010 | 4 | CORPORATE DISCLOSURE STATEMENT filed by AdjustaCam LLC identifying Corporate Parent Acacia Patent Acquisition LLC for AdjustaCam LLC. (Edmonds, John) (Entered: 07/07/2010) |

| 07/07/2010 | 5 | NOTICE of Attorney Appearance by Erick Scott Robinson on behalf of AdjustaCam LLC (Robinson, Erick) (Entered: 07/07/2010) |
| 07/08/2010 | 6 | NOTICE of Attorney Appearance by Andrew W. Spangler on behalf of AdjustaCam LLC (Spangler, Andrew) (Entered: 07/08/2010) |
| 07/12/2010 | 7 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 07/12/2010) |
| 07/13/2010 | 8 | ORDER granting 7 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft General Electric Company are DISMISSED without prejudice. Signed by Judge Leonard Davis on 07/13/10. cc:attys 7-14-10(mll, ) (Entered: 07/14/2010) |
| 07/19/2010 | 9 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 07/19/2010) |
| 07/20/2010 | 10 | ORDER granting 9 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against CDW LLC are dismissed without prejudice. Signed by Judge Leonard Davis on 07/20/10. cc:attys 7-20-10(mll, ) (Entered: 07/20/2010) |
| 07/22/2010 | 11 | APPLICATION to Appear Pro Hac Vice by Attorney David W Denenberg for Compusa.com, Inc., Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc.. (mll, ) (Additional attachment(s) added on 7/22/2010: # 1 Exhibit) (mll, ). (Entered: 07/22/2010) |
| 07/26/2010 | 12 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Trippe Manufacturing Company D/B/A Tripp Lite.( Saret, Larry) (Entered: 07/26/2010) |
| 07/26/2010 | 13 | NOTICE of Attorney Appearance by David W Denenberg on behalf of Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. (Denenberg, David) (Entered: 07/26/2010) |
| 07/27/2010 | 14 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Radioshack Corporation.( Joe, Christopher) (Entered: 07/27/2010) |
| 07/27/2010 | 15 | ORDER that plaintiff file a notice that the case is ready for scheduling conference when all of the defendants have either answered or filed a motion to transfer or dismiss. The notice shall be filed within five days of the last remaining defendant's answer or motion. Signed by Judge Leonard Davis on 07/27/10. cc:attys 7-28-10(mll, ) (Entered: 07/28/2010) |
| 07/29/2010 | 16 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Systemax, Inc. D/B/A Compusa.( Denenberg, David) (Entered: 07/29/2010) |
| 07/29/2010 | 17 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Compusa.com, Inc..( Denenberg, David) (Entered: 07/29/2010) |
| 07/29/2010 | 18 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re New Compusa Corporation.( Denenberg, David) (Entered: 07/29/2010) |

| | | |
|---|---|---|
| 07/29/2010 | 19 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Tigerdirect, Inc..( Denenberg, David) (Entered: 07/29/2010) |
| 07/30/2010 | 20 | APPLICATION to Appear Pro Hac Vice by Attorney Larry Saret for Trippe Manufacturing Company D/B/A Tripp Lite. (mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | 21 | APPLICATION to Appear Pro Hac Vice by Attorney David L De Bruin for Trippe Manufacturing Company D/B/A Tripp Lite. (mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | 22 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Hewlett-Packard Company.(Daniels, Steven) (Entered: 07/30/2010) |
| 07/30/2010 | 23 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Micro Electronics, Inc. DBA Micro Center.(Daniels, Steven) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 12 is granted pursuant to Local Rule CV-12 for Trippe Manufacturing Company D/B/A Tripp Lite to 9/4/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 14 is granted pursuant to Local Rule CV-12 for Radioshack Corporation to 9/6/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 16 is granted pursuant to Local Rule CV-12 for Systemax, Inc. D/B/A Compusa to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 17 is granted pursuant to Local Rule CV-12 for Compusa.com, Inc. to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 18 is granted pursuant to Local Rule CV-12 for New Compusa Corporation to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 19 is granted pursuant to Local Rule CV-12 for Tigerdirect, Inc. to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 22 is granted pursuant to Local Rule CV-12 for Hewlett-Packard Company to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 07/30/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 23 is granted pursuant to Local Rule CV-12 for Micro Electronics, Inc. DBA Micro Center to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 07/30/2010) |
| 08/02/2010 | 24 | E-GOV SEALED SUMMONS REISSUED as to Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone. (mll, ) (Entered: |

| | | 08/02/2010) |
|---|---|---|
| 08/02/2010 | 25 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco. (Smith, Michael) (Entered: 08/02/2010) |
| 08/02/2010 | 26 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Target Corp..(Smith, Michael) (Entered: 08/02/2010) |
| 08/02/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 25 is granted pursuant to Local Rule CV-12 for Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/02/2010) |
| 08/02/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 26 is granted pursuant to Local Rule CV-12 for Target Corp. to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/02/2010) |
| 08/02/2010 | 27 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Office Depot, Inc..(Daniels, Steven) (Entered: 08/02/2010) |
| 08/02/2010 | 28 | NOTICE of Attorney Appearance by Justin Neil Stewart on behalf of Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Stewart, Justin) (Entered: 08/02/2010) |
| 08/02/2010 | 29 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Rosewill Inc..( Stewart, Justin) (Entered: 08/02/2010) |
| 08/02/2010 | 30 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Newegg, Inc..( Stewart, Justin) (Entered: 08/02/2010) |
| 08/02/2010 | 31 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Newegg.com, Inc..( Stewart, Justin) (Entered: 08/02/2010) |
| 08/02/2010 | 32 | Return of Service Executed as to Wal-Mart Stores, Inc. on 7/14/2010, by cert mail; answer due: 8/4/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 33 | Return of Service Executed as to Trippe Manufacturing Company D/B/A Tripp Lite on 7/15/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 34 | Return of Service Executed as to Target Corp. on 7/14/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 35 | Return of Service Executed as to Systemax, Inc. D/B/A Compusa on 7/16/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 36 | Return of Service Executed as to Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 37 | Return of Service Executed as to SDI Technologies, Inc. on 7/14/2010, by cert mail; answer due: 8/4/2010. (mll, ) (Entered: 08/03/2010) |

A0091

| | | |
|---|---|---|
| 08/02/2010 | 38 | Return of Service Executed as to Sakar, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 39 | Return of Service Executed as to Sakar International, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 40 | Return of Service Executed as to Rosewill Inc. on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 41 | Return of Service Executed as to Radioshack Corporation on 7/14/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 42 | Return of Service Executed as to Phoebe Micro Inc. on 7/14/2010, by cert mail; answer due: 8/4/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 43 | Return of Service Executed as to Overstock.com, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 44 | Return of Service Executed as to Office Depot, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 45 | Return of Service Executed as to Newegg.com, Inc. on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 46 | Return of Service Executed as to Newegg, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 47 | Return of Service Executed as to New Compusa Corporation on 7/15/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 48 | Return of Service Executed as to Micro Electronics, Inc. DBA Micro Center on 7/14/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 49 | Return of Service Executed as to Mace Group, Inc. on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 50 | Return of Service Executed as to Macally Peripherals, Inc. D/B/A Macally U.S.A. on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 51 | Return of Service Executed as to Klip Extreme LLC on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 52 | Return of Service Executed as to Jwin Electronics Corporation on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 53 | Return of Service Executed as to Intcomex, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 54 | Return of Service Executed as to Hewlett-Packard Company on 7/14/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 55 | Return of Service Executed as to General Electric Company on 7/15/2010, by cert mail; |

A0092

| | | answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
|---|---|---|
| 08/02/2010 | 56 | Return of Service Executed as to Gear Head, LLC on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 57 | Return of Service Executed as to Fry's Electronics Inc on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 58 | Return of Service Executed as to Eastman Kodak Company on 7/14/2010, by cert mail; answer due: 8/4/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 59 | Return of Service Executed as to Dell, Inc., on 7/14/2010, by cert mail; answer due: 8/4/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 60 | Return of Service Executed as to Compusa.com, Inc. on 7/14/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 61 | Return of Service Executed as to CDW, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 62 | Return of Service Executed as to CDW Corporation F/K/A CDW Computer Centers, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 64 | Return of Service Executed as to Auditek Corporation on 7/14/2010, by cert mail; answer due: 8/4/2010. (mll, ) (Entered: 08/03/2010) |
| 08/02/2010 | 65 | Return of Service Executed as to Amazon.com, Inc. on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 63 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Fry's Electronics Inc.(Daniels, Steven) (Entered: 08/03/2010) |
| 08/03/2010 | 66 | NOTICE of Attorney Appearance by Salumeh R Loesch on behalf of Amazon.com, Inc. (Loesch, Salumeh) (Entered: 08/03/2010) |
| 08/03/2010 | 67 | CORPORATE DISCLOSURE STATEMENT filed by Amazon.com, Inc. (Loesch, Salumeh) (Entered: 08/03/2010) |
| 08/03/2010 | 68 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Amazon.com, Inc..( Loesch, Salumeh) (Entered: 08/03/2010) |
| 08/03/2010 | 69 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Wal-Mart Stores, Inc..( deGyarfas, Victor) (Entered: 08/03/2010) |
| 08/03/2010 | 70 | NOTICE of Attorney Appearance by Jennifer Parker Ainsworth on behalf of Eastman Kodak Company (Ainsworth, Jennifer) (Entered: 08/03/2010) |
| 08/03/2010 | 71 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Eastman Kodak Company.( Ainsworth, Jennifer) (Entered: 08/03/2010) |
| 08/03/2010 | 72 | NOTICE of Attorney Appearance by Roger Joseph Fulghum on behalf of Dell, Inc., (Fulghum, Roger) (Entered: 08/03/2010) |
| | | |

| 08/03/2010 | 73 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Dell, Inc.,.( Fulghum, Roger) (Entered: 08/03/2010) |
|---|---|---|
| 08/03/2010 | 74 | Return of Service Executed as to Blue Microphones, LLC on 7/22/2010, by cert mail; answer due: 8/12/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 75 | Return of Service Executed as to KMart Corporation on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 76 | Return of Service Executed as to Sears Holdings Corporation D/B/A Sears on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 77 | Return of Service Executed as to Sears, Roebuck and Company on 7/16/2010, by cert mail; answer due: 8/6/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 78 | Return of Service Executed as to Cobra Digital, LLC on 7/15/2010, by cert mail; answer due: 8/5/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 79 | Return of Service Executed as to Sears Brands, LLC on 7/20/2010, by cert mail; answer due: 8/10/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 80 | Return of Service Executed as to Lifeworks Technology Group, LLC on 7/23/2010, by cert mail; answer due: 8/13/2010. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 81 | Return of Service Executed as to Tigerdirect, Inc. on 7/23/2010, by cert mail. (mll, ) (Entered: 08/03/2010) |
| 08/03/2010 | 82 | NOTICE of Attorney Appearance by Victor deGyarfas on behalf of Wal-Mart Stores, Inc. (deGyarfas, Victor) (Entered: 08/03/2010) |
| 08/04/2010 | 83 | NOTICE of Attorney Appearance by Paula Diane Heyman on behalf of Dell, Inc., (Heyman, Paula) (Entered: 08/04/2010) |
| 08/04/2010 | 84 | NOTICE of Attorney Appearance by Scott F Partridge on behalf of Dell, Inc., (Partridge, Scott) (Entered: 08/04/2010) |
| 08/04/2010 | 85 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for Phoebe Micro Inc. to 9/4/2010. 30 Days Granted for Deadline Extension. ( mll, ) (mll, ). (Entered: 08/04/2010) |
| 08/04/2010 | 86 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Intcomex, Inc..( Wong, Russell) (Entered: 08/04/2010) |
| 08/04/2010 | 87 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Klip Extreme LLC.( Wong, Russell) (Entered: 08/04/2010) |
| 08/04/2010 | 88 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex.( Wong, Russell) (Entered: 08/04/2010) |
| 08/04/2010 | 89 | APPLICATION to Appear Pro Hac Vice by Attorney Ezra Sutton for Fry's Electronics Inc, Sakar International, Inc.. (mll, ) (Entered: 08/04/2010) |

| 08/04/2010 | 90 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sakar International, Inc., Sakar, Inc..( Sutton, Ezra) (Entered: 08/04/2010) |
|---|---|---|
| 08/04/2010 | 91 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Fry's Electronics Inc.( Sutton, Ezra) (Entered: 08/04/2010) |
| 08/04/2010 | 92 | APPLICATION to Appear Pro Hac Vice by Attorney Peter I Sanborn for Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco, Target Corp.. (mll, ) (Entered: 08/04/2010) |
| 08/04/2010 | 93 | APPLICATION to Appear Pro Hac Vice by Attorney R David Donoghue for Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco, Target Corp.. (mll, ) (Entered: 08/04/2010) |
| 08/04/2010 | 94 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Overstock.com, Inc..( Shield, Christopher) (Entered: 08/04/2010) |
| 08/05/2010 | 95 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re SDI Technologies, Inc..( Maloney, Collin) (Entered: 08/05/2010) |
| 08/05/2010 | 96 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Lifeworks Technology Group, LLC.( Maloney, Collin) (Entered: 08/05/2010) |
| 08/05/2010 | 97 | NOTICE of Attorney Appearance by Anthony S Gabrielson on behalf of CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC (Gabrielson, Anthony) (Entered: 08/05/2010) |
| 08/05/2010 | 98 | MOTION to Dismiss by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order) (Gabrielson, Anthony) (Entered: 08/05/2010) |
| 08/06/2010 | 99 | ***Filed In Error. Please See Entry 100 For Correction.*** CORPORATE DISCLOSURE STATEMENT filed by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC (Gabrielson, Anthony) Modified on 8/6/2010 (gsg). (Entered: 08/06/2010) |
| 08/06/2010 | | ***FILED IN ERROR. Document #99, Corporate Disclosure. PLEASE IGNORE.*** (gsg) (Entered: 08/06/2010) |
| 08/06/2010 | 100 | CORPORATE DISCLOSURE STATEMENT filed by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC identifying Corporate Parent VH Holdings, Inc. for CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC. (Gabrielson, Anthony) (Entered: 08/06/2010) |
| 08/06/2010 | 101 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Jwin Electronics Corporation.( Jones, Michael) (Entered: 08/06/2010) |
| 08/09/2010 | 102 | APPLICATION to Appear Pro Hac Vice by Attorney Benjamin T Horton for CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc.. (mll, ) (Entered: |

| | | 08/09/2010) |
|---|---|---|
| 08/09/2010 | 103 | APPLICATION to Appear Pro Hac Vice by Attorney Thomas L Duston for CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc.. (mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 27 is granted pursuant to Local Rule CV-12 for Office Depot, Inc. to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 29 is granted pursuant to Local Rule CV-12 for Rosewill Inc. to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 30 is granted pursuant to Local Rule CV-12 for Newegg, Inc. to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 31 is granted pursuant to Local Rule CV-12 for Newegg.com, Inc. to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 63 is granted pursuant to Local Rule CV-12 for Fry's Electronics Inc to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 68 is granted pursuant to Local Rule CV-12 for Amazon.com, Inc. to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 69 is granted pursuant to Local Rule CV-12 for Wal-Mart Stores, Inc. to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 71 is granted pursuant to Local Rule CV-12 for Eastman Kodak Company to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 73 is granted pursuant to Local Rule CV-12 for Dell, Inc., to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 86 is granted pursuant to Local Rule CV-12 for Intcomex, Inc. to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 87 is granted pursuant to Local Rule CV-12 for Klip Extreme LLC to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint |

| | | |
|---|---|---|
| | | 88 is granted pursuant to Local Rule CV-12 for Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 90 is granted pursuant to Local Rule CV-12 for Sakar International, Inc. to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 91 is granted pursuant to Local Rule CV-12 for Fry's Electronics Inc. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 94 is granted pursuant to Local Rule CV-12 for Overstock.com, Inc. to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 95 is granted pursuant to Local Rule CV-12 for SDI Technologies, Inc. to 9/3/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 96 is granted pursuant to Local Rule CV-12 for Lifeworks Technology Group, LLC to 9/13/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 101 is granted pursuant to Local Rule CV-12 for Jwin Electronics Corporation to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/09/2010) |
| 08/09/2010 | 104 | APPLICATION to Appear Pro Hac Vice by Attorney James E Geringer for Amazon.com, Inc.. (mll, ) (Entered: 08/10/2010) |
| 08/10/2010 | 105 | NOTICE of Change of Address by John J Edmonds (Edmonds, John) (Entered: 08/10/2010) |
| 08/10/2010 | 106 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re KMart Corporation.( Shield, Christopher) (Entered: 08/10/2010) |
| 08/10/2010 | 107 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sears Brands, LLC.( Shield, Christopher) (Entered: 08/10/2010) |
| 08/10/2010 | 108 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sears, Roebuck and Company.( Shield, Christopher) (Entered: 08/10/2010) |
| 08/10/2010 | 109 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Sears Holdings Corporation D/B/A Sears.( Shield, Christopher) (Entered: 08/10/2010) |
| 08/11/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 106 is granted pursuant to Local Rule CV-12 for KMart Corporation to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/11/2010) |
| | | |

| 08/11/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint [107](#) is granted pursuant to Local Rule CV-12 for Sears Brands, LLC to 9/9/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/11/2010) |
|---|---|---|
| 08/11/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint [108](#) is granted pursuant to Local Rule CV-12 for Sears, Roebuck and Company to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/11/2010) |
| 08/11/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint [109](#) is granted pursuant to Local Rule CV-12 for Sears Holdings Corporation D/B/A Sears to 9/7/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/11/2010) |
| 08/13/2010 | [110](#) | NOTICE of Attorney Appearance by Allen Franklin Gardner on behalf of Jwin Electronics Corporation (Gardner, Allen) (Entered: 08/13/2010) |
| 08/16/2010 | [111](#) | AMENDED COMPLAINT against Amazon.com, Inc., Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Cobra Digital, LLC, Compusa.com, Inc., Creative Labs, Inc.,, Creative Technology Ltd, Dell, Inc.,, Digital Innovations, LLC, Eastman Kodak Company, Ezonics Corporation D/B/A Ezonics Corporation USA D/B/A Ezonics, Fry's Electronics Inc, Gear Head, LLC, General Electric Company, Hewlett-Packard Company, Intcomex, Inc., Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco, Jwin Electronics Corporation, KMart Corporation, Klip Extreme LLC, Lifeworks Technology Group, LLC, Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Overstock.com, Inc., Phoebe Micro Inc., Prolynkz, LLC, Radioshack Corporation, Rosewill Inc., SDI Technologies, Inc., Sakar International, Inc., Sakar, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Trippe Manufacturing Company D/B/A Tripp Lite, Wal-Mart Stores, Inc., filed by AdjustaCam LLC.(Edmonds, John) (Entered: 08/16/2010) |
| 08/18/2010 | [112](#) | E-GOV SEALED SUMMONS Issued as to Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, CONNS, INC. D/B/A CONNS, Cobra Digital, LLC, Creative Labs, Inc.,, Creative Technology Ltd, Digital Innovations, LLC, Ezonics Corporation D/B/A Ezonics Corporation USA D/B/A Ezonics, Gear Head, LLC, J&R ELECTRONICS INC. D/B/A J&R, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Phoebe Micro Inc., Prolynkz, LLC, SOLID YEAR CO., LTD., WALGREEN CO. D/B/A WALGREENS, and emailed to pltf for service. (mll, ) (Entered: 08/18/2010) |
| 08/23/2010 | [113](#) | E-GOV SEALED SUMMONS REISSUED as to Systemax, Inc. D/B/A Compusa. |

| | | |
|---|---|---|
| | | (mll, ) (Entered: 08/23/2010) |
| 08/23/2010 | 114 | RESPONSE to Motion re 98 MOTION to Dismiss *of CDW filed by AdjustaCam LLC*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Edmonds, John) (Additional attachment(s) added on 8/26/2010: # 3 Text of Proposed Order) (kls, ). (Entered: 08/23/2010) |
| 08/23/2010 | 115 | Return of Service Executed as to Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco on 8/2/2010, by cert mail. (mll, ) (Entered: 08/24/2010) |
| 08/25/2010 | 116 | Defendant's Unopposed first Application for Extension of Time to Answer Complaint re Blue Microphones, LLC.( Harris, Michael) (Entered: 08/25/2010) |
| 08/26/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 116 is granted pursuant to Local Rule CV-12 for Blue Microphones, LLC to 9/13/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 08/26/2010) |
| 08/26/2010 | 117 | E-GOV SEALED SUMMONS REISSUED as to CDW, Inc.. (mll, ) (Entered: 08/26/2010) |
| 08/30/2010 | 118 | Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing* by Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order for Expedited Breifing, # 2 Text of Proposed Order Proposed Order for Extension of Time)(Daniels, Steven) (Entered: 08/30/2010) |
| 08/30/2010 | 119 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 08/30/2010) |
| 08/31/2010 | 120 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Intcomex, Inc..( Wong, Russell) (Entered: 08/31/2010) |
| 08/31/2010 | 121 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Klip Extreme LLC.( Wong, Russell) (Entered: 08/31/2010) |
| 08/31/2010 | 122 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex.( Wong, Russell) (Entered: 08/31/2010) |
| 08/31/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 120 is granted pursuant to Local Rule CV-12 for Intcomex, Inc. to 9/21/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 08/31/2010) |
| 08/31/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 121 is granted pursuant to Local Rule CV-12 for Klip Extreme LLC to 9/21/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 08/31/2010) |
| 08/31/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 122 is granted pursuant to Local Rule CV-12 for Software Brokers of |

| | | |
|---|---|---|
| | | America Inc. DBA Intcomex Corporation D/B/A Intcomex to 9/21/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 08/31/2010) |
| 08/31/2010 | 123 | ORDER granting 118 Motion for Expedited Briefing. Pltf's responsive brief shall be due 9-01-2010, and defts' reply is due before 12:00 p.m. on 9-02-2010. Signed by Judge Leonard Davis on 08/31/10. cc:attys 8-31-10 (mll, ) (Entered: 08/31/2010) |
| 08/31/2010 | 124 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone.( Harris, Michael) (Entered: 08/31/2010) |
| 09/01/2010 | 125 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re: KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., and Sakar International, Inc..( Sutton, Ezra) (Entered: 09/01/2010) |
| 09/01/2010 | 126 | RESPONSE to Motion re 118 Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing*Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing filed by AdjustaCam LLC.* (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 09/01/2010) |
| 09/01/2010 | 127 | ORDER granting 119 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft SDI Technologies Inc are dismissed without prejudice. Signed by Judge Leonard Davis on 09/01/10. cc:attys 9-02-10(mll, ) (Entered: 09/02/2010) |
| 09/02/2010 | 128 | REPLY to Response to Motion re 118 Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing*Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing filed by Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc..* (Daniels, Steven) (Entered: 09/02/2010) |
| 09/02/2010 | 129 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of Fry's Electronics Inc (Craft, Roger) (Entered: 09/02/2010) |
| 09/02/2010 | 130 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of Hewlett-Packard Company (Craft, Roger) (Entered: 09/02/2010) |
| 09/02/2010 | 131 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of Micro Electronics, Inc. DBA Micro Center (Craft, Roger) (Entered: 09/02/2010) |
| 09/02/2010 | 132 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of Office Depot, Inc. (Craft, Roger) (Entered: 09/02/2010) |
| 09/02/2010 | 133 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of Fry's Electronics Inc (Findlay, Eric) (Entered: 09/02/2010) |
| 09/02/2010 | 134 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of Hewlett-Packard Company (Findlay, Eric) (Entered: 09/02/2010) |
| 09/02/2010 | 135 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of Micro Electronics, |

A0100

| | | |
|---|---|---|
| | | Inc. DBA Micro Center (Findlay, Eric) (Entered: 09/02/2010) |
| 09/02/2010 | 136 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of Office Depot, Inc. (Findlay, Eric) (Entered: 09/02/2010) |
| 09/02/2010 | 137 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Eastman Kodak Company.( Ainsworth, Jennifer) (Entered: 09/02/2010) |
| 09/02/2010 | 138 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Overstock.com, Inc..( Shield, Christopher) (Entered: 09/02/2010) |
| 09/02/2010 | 139 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Sears Brands, LLC.( Shield, Christopher) (Entered: 09/02/2010) |
| 09/02/2010 | 140 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Sears Holdings Corporation D/B/A Sears.( Shield, Christopher) (Entered: 09/02/2010) |
| 09/02/2010 | 141 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Sears, Roebuck and Company.( Shield, Christopher) (Entered: 09/02/2010) |
| 09/02/2010 | 142 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re KMart Corporation.( Shield, Christopher) (Entered: 09/02/2010) |
| 09/02/2010 | 143 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc.( Horton, Benjamin) (Entered: 09/02/2010) |
| 09/02/2010 | 144 | SUR-REPLY to Reply to Response to Motion re 118 Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing*Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *and Request for Expedited Briefing filed by AdjustaCam LLC.* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Edmonds, John) (Entered: 09/02/2010) |
| 09/02/2010 | 145 | ORDER **GRANTING** 118 Emergency MOTION for Extension of Time to File Answer re 111 Amended Complaint *and Request for Expedited Briefing* filed by Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc., Fry's Electronics Inc, Hewlett-Packard Company. Signed by Judge Leonard Davis on 9/2/2010. (gsg) (Entered: 09/03/2010) |
| 09/03/2010 | 146 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Trippe Manufacturing Company D/B/A Tripp Lite.( Saret, Larry) (Entered: 09/03/2010) |
| 09/03/2010 | 147 | MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* by Wal-Mart Stores, Inc.. (Attachments: # 1 Affidavit of Victor de Gyarfas, # 2 Exhibit 1 to de Gyarfas Decl, # 3 Exhibit 2 to de Gyarfas Decl, # 4 Exhibit 3 to de Gyarfas Decl, # 5 Exhibit 4 to de Gyarfas Decl, # 6 Exhibit 5 to de Gyarfas Decl, # 7 |

| | | Exhibit 6 to de Gyarfas Decl, # 8 Exhibit 7 to de Gyarfas Decl, # 9 Exhibit 8 to de Gyarfas Decl, # 10 Text of Proposed Order)(deGyarfas, Victor) (Entered: 09/03/2010) |
|---|---|---|
| 09/03/2010 | 148 | NOTICE of Disclosure by Wal-Mart Stores, Inc. (deGyarfas, Victor) (Entered: 09/03/2010) |
| 09/03/2010 | 149 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Jwin Electronics Corporation.( Jones, Michael) (Entered: 09/03/2010) |
| 09/03/2010 | 150 | *Defendant Dell Inc's* ANSWER to 111 Amended Complaint,,,,, *and,* COUNTERCLAIM against AdjustaCam LLC by Dell, Inc.,.(Fulghum, Roger) (Entered: 09/03/2010) |
| 09/03/2010 | 151 | CORPORATE DISCLOSURE STATEMENT filed by Dell, Inc., (Fulghum, Roger) (Entered: 09/03/2010) |
| 09/03/2010 | 152 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** MOTION to Join Defendant Wal-Mart Stores, Inc.s Partial Motion to Dismiss for Failure to State a Claim re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* by Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco. (Attachments: # 1 Text of Proposed Order)(Smith, Michael) Modified on 9/7/2010 (mjc, ). (Entered: 09/03/2010) |
| 09/03/2010 | 153 | ANSWER to 111 Amended Complaint,,,,, by Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco.(Smith, Michael) (Entered: 09/03/2010) |
| 09/03/2010 | 154 | CORPORATE DISCLOSURE STATEMENT filed by Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco identifying Corporate Parent Jasco Products Company for Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco. (Smith, Michael) (Entered: 09/03/2010) |
| 09/03/2010 | 155 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** MOTION to Join Defendant Wal-Mart Stores, Inc.s Partial Motion to Dismiss for Failure to State a Claim re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* by Target Corp.. (Attachments: # 1 Text of Proposed Order)(Smith, Michael) Modified on 9/7/2010 (mjc, ). (Entered: 09/03/2010) |
| 09/03/2010 | 156 | ANSWER to 111 Amended Complaint,,,,, by Target Corp..(Smith, Michael) (Entered: 09/03/2010) |
| 09/03/2010 | 157 | CORPORATE DISCLOSURE STATEMENT filed by Target Corp. identifying Corporate Parent Target Corporation for Target Corp.. (Smith, Michael) (Entered: 09/03/2010) |
| | | |

| 09/03/2010 | 158 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim* by Dell, Inc.,. (Attachments: # 1 Text of Proposed Order)(Fulghum, Roger) Modified on 9/8/2010 (mjc, ). (Entered: 09/03/2010) |
|---|---|---|
| 09/03/2010 | 159 | ANSWER and AFFIRMATIVE DEFENSES to 111 Amended Complaint, by Phoebe Micro Inc..(mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | 160 | E-GOV SEALED SUMMONS REISSUED as to J&R ELECTRONICS INC. D/B/A J&R. (mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | NOTICE of Deficiency regarding the 152 Motion to Join submitted by Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco. Document does not contain a Certificate of Conference. Correction should be made by one business day. (mjc, ) (Entered: 09/07/2010) |
| 09/07/2010 | | NOTICE of Deficiency regarding the 155 Motion to Join submitted by Target Corp. Document does not contain a Certificate of Conference. Correction should be made by one business day. (mjc, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 124 is granted pursuant to Local Rule CV-12 for Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone to 10/6/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 125 is granted pursuant to Local Rule CV-12 for KOHLS CORPORATION D/B/A KOHL'S to 9/17/2010; Sakar, Inc. to 9/17/2010; Kohl's Illinois, Inc. to 9/17/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 137 is granted pursuant to Local Rule CV-12 for Eastman Kodak Company to 9/17/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 138 is granted pursuant to Local Rule CV-12 for Overstock.com, Inc. to 9/17/2010. 13 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 139 is granted pursuant to Local Rule CV-12 for Sears Brands, LLC to 9/17/2010. 8 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 140 is granted pursuant to Local Rule CV-12 for Sears Holdings Corporation D/B/A Sears to 9/17/2010. 12 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer |

| | | |
|---|---|---|
| | | Complaint 141 is granted pursuant to Local Rule CV-12 for Sears, Roebuck and Company to 9/17/2010. 12 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 142 is granted pursuant to Local Rule CV-12 for KMart Corporation to 9/17/2010. 12 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 143 is granted pursuant to Local Rule CV-12 for CDW, Inc. to 9/17/2010; CDW Corporation F/K/A CDW Computer Centers, Inc. to 9/17/2010. 15 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 146 is granted pursuant to Local Rule CV-12 for Trippe Manufacturing Company D/B/A Tripp Lite to 9/14/2010. 7 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 149 is granted pursuant to Local Rule CV-12 for Jwin Electronics Corporation to 9/14/2010. 7 Days Granted for Deadline Extension.( mll, ) (Entered: 09/07/2010) |
| 09/07/2010 | 161 | NOTICE by Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6) (NOTICE OF JOINDER)* (Smith, Michael) (Entered: 09/07/2010) |
| 09/07/2010 | 162 | NOTICE by Target Corp. re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6) (NOTICE OF JOINDER)* (Smith, Michael) (Entered: 09/07/2010) |
| 09/07/2010 | 163 | *Defendant Amazon.com, Inc.'s* ANSWER to 111 Amended Complaint,,,,, *For Patent Infringement*, COUNTERCLAIM against AdjustaCam LLC by Amazon.com, Inc..(Geringer, James) (Entered: 09/07/2010) |
| 09/08/2010 | | **\*\*\*FILED IN ERROR. Document # 158 , Motion to Dismiss. CORRECTED DOCUMENT TO BE FILED BY ATTY. PLEASE IGNORE.\*\*\*** (mjc, ) (Entered: 09/08/2010) |
| 09/08/2010 | 164 | MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)* by Dell, Inc.,. (Attachments: # 1 Text of Proposed Order)(Fulghum, Roger) (Entered: 09/08/2010) |
| 09/08/2010 | 165 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of |

| | | Proposed Order)(Robinson, Erick) (Entered: 09/08/2010) |
|---|---|---|
| 09/08/2010 | 166 | NOTICE of Disclosure by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *Fed.R.Civ.P. 7.1 Disclosure Statement* (Denenberg, David) (Entered: 09/08/2010) |
| 09/08/2010 | 167 | ***DISREGARD ENTRY - NOT SEARCHABLE PDF***<br><br>*Defendants COMPUSA.COM, INC.'S, NEW COMPUSA CORP.'S, SYSTEMAX INC.'S AND TIGERDIRECT, INC.'S* ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc., New Compusa Corporation, Compusa.com, Inc..(Denenberg, David) Modified on 9/10/2010 (kls, ). (Entered: 09/08/2010) |
| 09/08/2010 | 168 | NOTICE by Radioshack Corporation re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6) (Notice of Joinder)* (Smith, Michael) (Entered: 09/08/2010) |
| 09/08/2010 | 169 | ANSWER to 111 Amended Complaint,,,,, by Radioshack Corporation.(Smith, Michael) (Entered: 09/08/2010) |
| 09/08/2010 | 170 | CORPORATE DISCLOSURE STATEMENT filed by Radioshack Corporation identifying Corporate Parent None for Radioshack Corporation. (Smith, Michael) (Entered: 09/08/2010) |
| 09/09/2010 | 171 | *Newegg Inc. and Newegg.com Inc.'s* ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM *and Affirmative Defenses* against AdjustaCam LLC by Newegg.com, Inc., Newegg, Inc..(Stewart, Justin) (Entered: 09/09/2010) |
| 09/09/2010 | 172 | *Rosewill Inc.'s* ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM *and Affirmative Defenses* against AdjustaCam LLC by Rosewill Inc..(Stewart, Justin) (Entered: 09/09/2010) |
| 09/09/2010 | 173 | CORPORATE DISCLOSURE STATEMENT filed by Newegg, Inc., Newegg.com, Inc. (Stewart, Justin) (Entered: 09/09/2010) |
| 09/09/2010 | 174 | CORPORATE DISCLOSURE STATEMENT filed by Rosewill Inc. identifying Corporate Parent Newegg Inc., Corporate Parent Magnell Associate Inc. for Rosewill Inc., Rosewill Inc.. (Stewart, Justin) (Entered: 09/09/2010) |
| 09/09/2010 | 175 | NOTICE by Newegg, Inc., Newegg.com, Inc. re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)* (Stewart, Justin) (Entered: 09/09/2010) |
| 09/09/2010 | 176 | NOTICE by Rosewill Inc. re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)* (Stewart, Justin) (Entered: 09/09/2010) |

A0105

| 09/10/2010 | 177 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Lifeworks Technology Group, LLC.( Maloney, Collin) (Entered: 09/10/2010) |
|---|---|---|
| 09/10/2010 | 178 | CORPORATE DISCLOSURE STATEMENT filed by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. (Denenberg, David) (Entered: 09/10/2010) |
| 09/10/2010 | 179 | RESPONSE to 111 Amended Complaint,,,,, *Defendants' Compusa.com, Inc.'s, New Compusa Corp.'s, Systemax Inc.'s and Tigerdirect, Inc.'s Answer to Plaintiff's First Amended Complaint* by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc.. (Denenberg, David) (Entered: 09/10/2010) |
| 09/13/2010 | 180 | NOTICE by Dell, Inc., re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected) Notice of Additional Authority* (Attachments: # 1 Exhibit A)(Fulghum, Roger) (Entered: 09/13/2010) |
| 09/13/2010 | 181 | *Conn's, Inc., d/b/a Conn's* ANSWER to 1 Complaint,,,,, *Defenses and,* COUNTERCLAIM against AdjustaCam LLC by CONNS, INC. D/B/A CONNS. (Adams, Kent) (Entered: 09/13/2010) |
| 09/13/2010 |  | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 177 is granted pursuant to Local Rule CV-12 for Lifeworks Technology Group, LLC to 9/17/2010. 5 Days Granted for Deadline Extension.( mll, ) (Entered: 09/13/2010) |
| 09/14/2010 | 182 | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint re Trippe Manufacturing Company D/B/A Tripp Lite.( Saret, Larry) (Entered: 09/14/2010) |
| 09/14/2010 | 183 | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint re Jwin Electronics Corporation.( Jones, Michael) (Entered: 09/14/2010) |
| 09/14/2010 | 184 | ORDER granting 165 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Walgreen Co are dismissed without prejudice. Signed by Judge Leonard Davis on 09/14/10. cc:attys 9-15-10(mll, ) (Entered: 09/15/2010) |
| 09/15/2010 | 185 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Prposed Order)(Edmonds, John) (Entered: 09/15/2010) |
| 09/15/2010 | 186 | Unopposed MOTION to Withdraw as Attorney *Michael E. Jones and Allen F. Gardner of the Potter Minton, PC law firm* by Jwin Electronics Corporation. (Attachments: # 1 Text of Proposed Order)(Jones, Michael) (Entered: 09/15/2010) |
| 09/15/2010 | 187 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Creative Labs, Inc.,.(Daniels, Steven) (Entered: 09/15/2010) |
| 09/16/2010 |  | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint |

|   |   |   |
|---|---|---|
|   |   | 182 is granted pursuant to Local Rule CV-12 for Trippe Manufacturing Company D/B/A Tripp Lite to 9/20/2010. 6 Days Granted for Deadline Extension.( mll, ) (Entered: 09/16/2010) |
| 09/16/2010 |   | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint 183 is granted pursuant to Local Rule CV-12 for Jwin Electronics Corporation to 9/21/2010. 7 Days Granted for Deadline Extension.( mll, ) (Entered: 09/16/2010) |
| 09/16/2010 |   | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 187 is granted pursuant to Local Rule CV-12 for Creative Labs, Inc., to 9/23/2010. 7 Days Granted for Deadline Extension.( mll, ) (Entered: 09/16/2010) |
| 09/16/2010 | 188 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** *Defendant Sakar International, Inc.'s Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Sakar International, Inc..(Sutton, Ezra) Modified on 9/20/2010 (mjc, ). (Entered: 09/16/2010) |
| 09/16/2010 | 189 | ORDER granting 186 Motion to Withdraw as Attorney. Attorney Allen Franklin Gardner and Michael E Jones terminated. Signed by Judge Leonard Davis on 09/16/10. cc:attys 9-16-10 (mll, ) (Entered: 09/16/2010) |
| 09/16/2010 | 190 | Unopposed MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, by KMart Corporation, Overstock.com, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company. (Attachments: # 1 Text of Proposed Order proposed Order)(Barr, John) (Entered: 09/16/2010) |
| 09/17/2010 | 191 | *Defendant jWIN Electronics Corp's Original* ANSWER to 111 Amended Complaint,,,,, by Jwin Electronics Corporation.(Werner, Philip) (Entered: 09/17/2010) |
| 09/17/2010 | 192 | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint re Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex.( Wong, Russell) (Entered: 09/17/2010) |
| 09/17/2010 | 193 | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint re Intcomex, Inc..( Wong, Russell) (Entered: 09/17/2010) |
| 09/17/2010 | 194 | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint re Klip Extreme LLC.( Wong, Russell) (Entered: 09/17/2010) |
| 09/17/2010 | 195 | E-GOV SEALED SUMMONS Issued as to SOLID YEAR CO., LTD. (kls, ) (Entered: 09/17/2010) |
| 09/17/2010 | 196 | NOTICE by Fry's Electronics Inc re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 197 | NOTICE by Hewlett-Packard Company re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Daniels, |

|  |  | Steven) (Entered: 09/17/2010) |
|---|---|---|
| 09/17/2010 | 198 | NOTICE by Micro Electronics, Inc. DBA Micro Center re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 199 | NOTICE by Office Depot, Inc. re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 200 | *Defendants Kohl's Illinois, Inc. and Kohl's Corporation's Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 1 Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Kohl's Illinois, Inc., KOHLS CORPORATION D/B/A KOHL'S.(Sutton, Ezra) (Entered: 09/17/2010) |
| 09/17/2010 | 201 | ANSWER to 111 Amended Complaint,,,,, by Fry's Electronics Inc.(Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 202 | ANSWER to 111 Amended Complaint,,,,, by Office Depot, Inc..(Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 203 | ANSWER to 111 Amended Complaint,,,,, by Hewlett-Packard Company.(Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 204 | ANSWER to 111 Amended Complaint,,,,, by Micro Electronics, Inc. DBA Micro Center.(Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 205 | CORPORATE DISCLOSURE STATEMENT filed by Micro Electronics, Inc. DBA Micro Center (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 206 | CORPORATE DISCLOSURE STATEMENT filed by Hewlett-Packard Company (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 207 | CORPORATE DISCLOSURE STATEMENT filed by Fry's Electronics Inc (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 208 | ORDER granting 190 Motion for Extension of Time to Answer. Defts Overstock.com, Kmart Corporation, and Sears defendants shall have to 10-01-2010 to answer or otherwise respond to pltf's First Amended Complaint. Signed by Judge Leonard Davis on 09/17/10. cc:attys 9-17-10 (mll, ) (Entered: 09/17/2010) |
| 09/17/2010 | 209 | ANSWER to 1 Complaint,,,,, by Gear Head, LLC.(Hammond, Herbert) (Entered: 09/17/2010) |
| 09/17/2010 | 210 | CORPORATE DISCLOSURE STATEMENT filed by Office Depot, Inc. identifying Other Affiliate AllianceBernstein L.P. for Office Depot, Inc.. (Daniels, Steven) (Entered: 09/17/2010) |
| 09/17/2010 | 211 | ANSWER to 111 Amended Complaint,,,,, by Lifeworks Technology Group, LLC. |

|  |  | (Maloney, Collin) (Entered: 09/17/2010) |
|---|---|---|
| 09/17/2010 | 212 | NOTICE of Attorney Appearance by Vishal Hemant Patel on behalf of Gear Head, LLC (Patel, Vishal) (Entered: 09/17/2010) |
| 09/17/2010 | 213 | NOTICE by Lifeworks Technology Group, LLC re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Of Joinder* (Maloney, Collin) (Entered: 09/17/2010) |
| 09/17/2010 | 214 | ANSWER to 111 Amended Complaint,,,,, by CDW, LLC.(Duston, Thomas) (Entered: 09/17/2010) |
| 09/17/2010 | 215 | CORPORATE DISCLOSURE STATEMENT filed by CDW, LLC identifying Corporate Parent VH Holdings, Inc. for CDW, LLC. (Duston, Thomas) (Entered: 09/17/2010) |
| 09/17/2010 | 216 | Consent MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *up to and including October 6, 2010* by Blue Microphones, LLC. (Attachments: # 1 Text of Proposed Order)(Jones, Michael) (Entered: 09/17/2010) |
| 09/20/2010 | 217 | ORDER granting 185 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Eastman Kodak Company are DISMISSED without prejudice. Signed by Judge Leonard Davis on 09/20/10. cc:attys 9-20-10(mll, ) (Entered: 09/20/2010) |
| 09/20/2010 | 218 | ORDER granting 216 Motion for Extension of Time to Answer. The deadline for deft Blue Microphones LLC to answer, move or otherwise respond to pltf's First Amended Complaint is extended to 10-06-2010. Signed by Judge Leonard Davis on 09/20/10. cc:attys 9-20-10 (mll, ) (Entered: 09/20/2010) |
| 09/20/2010 | 219 | Unopposed MOTION for Extension of Time to File Response/Reply as to 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 09/20/2010) |
| 09/20/2010 |  | NOTICE of Deficiency regarding the 188 Answer to Amended Complaint submitted by Sakar International, Inc. Document does not contain a Certificate of Service. Correction should be made by one business day. (mjc, ) (Entered: 09/20/2010) |
| 09/21/2010 |  | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint 192 is granted pursuant to Local Rule CV-12 for Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex to 10/5/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 09/21/2010) |
| 09/21/2010 |  | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint 193 is granted pursuant to Local Rule CV-12 for Intcomex, Inc. to 10/5/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 09/21/2010) |

| 09/21/2010 | | Defendant's Unopposed Third Application for Extension of Time to Answer Complaint 194 is granted pursuant to Local Rule CV-12 for Klip Extreme LLC to 10/5/2010. 14 Days Granted for Deadline Extension.( mll, ) (Entered: 09/21/2010) |
|---|---|---|
| 09/21/2010 | 220 | *Defendant Sakar International, Inc.'s Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 1 Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Sakar International, Inc..(Sutton, Ezra) (Entered: 09/21/2010) |
| 09/21/2010 | 221 | ***DISREGARD ENTRY - NOT .pdf SEARCHABLE FORMAT*** <br><br> *Defendant Kohl's Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Kohl's Illinois, Inc., KOHLS CORPORATION D/B/A KOHL'S.(Sutton, Ezra) Modified on 9/23/2010 (kls, ). (Entered: 09/21/2010) |
| 09/21/2010 | 222 | ORDER granting 219 Motion for Extension of Time to File Response/Reply re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)*; Responses due by 9/24/2010. Signed by Judge Leonard Davis on 09/21/10. cc:attys 9-21-10 (mll, ) (Entered: 09/21/2010) |
| 09/21/2010 | 223 | CORPORATE DISCLOSURE STATEMENT filed by Gear Head, LLC (Hammond, Herbert) (Entered: 09/21/2010) |
| 09/21/2010 | 224 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** <br> Unopposed MOTION for Extension of Time to File Answer *of Defendant Trippe Manufacturing Company* by AdjustaCam LLC. (Robinson, Erick) Modified on 9/23/2010 (mjc, ). (Entered: 09/21/2010) |
| 09/23/2010 | 225 | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint re Trippe Manufacturing Company.( Robinson, Erick) (Entered: 09/23/2010) |
| 09/23/2010 | 226 | NOTICE by Creative Labs, Inc., re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Daniels, Steven) (Entered: 09/23/2010) |
| 09/23/2010 | 227 | ANSWER to 111 Amended Complaint,,,,, by Creative Labs, Inc.,.(Daniels, Steven) (Entered: 09/23/2010) |
| 09/23/2010 | 228 | CORPORATE DISCLOSURE STATEMENT filed by Creative Labs, Inc., identifying Corporate Parent Creative Holdings, Inc., Other Affiliate Creative Technology Ltd. for Creative Labs, Inc.,. (Daniels, Steven) (Entered: 09/23/2010) |
| 09/23/2010 | | NOTICE of Deficiency regarding the 224 Unopposed Motion for Extension of Time submitted by Trippe Manufacturing Company D/B/A Tripp Lite. Document is the Unopposed Application for Extension of Time. Correction should be made by one business day (mjc, ) (Entered: 09/23/2010) |

| | | |
|---|---|---|
| 09/24/2010 | | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint 225 is granted pursuant to Local Rule CV-12 for Trippe Manufacturing Company D/B/A Tripp Lite to 9/24/2010. 4 Days Granted for Deadline Extension. (Filed by pltf on behalf of deft.)( mll, ) (Entered: 09/24/2010) |
| 09/24/2010 | 229 | NOTICE of Attorney Appearance by Michael James Collins on behalf of AdjustaCam LLC (Collins, Michael) (Entered: 09/24/2010) |
| 09/24/2010 | 230 | *Defendant Sakar International, Inc.'s Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 220 Answer to Complaint, Counterclaim, COUNTERCLAIM against AdjustaCam LLC by Sakar International, Inc..(Sutton, Ezra) (Entered: 09/24/2010) |
| 09/24/2010 | 231 | *Defendant Kohl's Answer to Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 221 Answer to Amended Complaint, Counterclaim,,, COUNTERCLAIM against AdjustaCam LLC by Kohl's Illinois, Inc., KOHLS CORPORATION D/B/A KOHL'S.(Sutton, Ezra) (Entered: 09/24/2010) |
| 09/24/2010 | 232 | *Amended* ANSWER to 111 Amended Complaint,,,,, by Gear Head, LLC.(Hammond, Herbert) (Entered: 09/24/2010) |
| 09/24/2010 | 233 | NOTICE of Attorney Appearance by Herbert A Yarbrough, III on behalf of Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Yarbrough, Herbert) (Entered: 09/24/2010) |
| 09/24/2010 | 234 | NOTICE of Attorney Appearance by Debra Elaine Gunter on behalf of Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Gunter, Debra) (Entered: 09/24/2010) |
| 09/24/2010 | 235 | RESPONSE in Opposition re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6) filed by AdjustaCam LLC.* (Attachments: # 1 Text of Proposed Order)(Robinson, Erick) (Entered: 09/24/2010) |
| 09/24/2010 | 236 | APPLICATION to Appear Pro Hac Vice by Attorney M Kala Sarvaiya for Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC. (mll, ) (Entered: 09/27/2010) |
| 09/24/2010 | 237 | APPLICATION to Appear Pro Hac Vice by Michael D Harris for Blue Microphones, LLC and Latvian Universal Electronics, LLC. (mll, ) (Entered: 09/27/2010) |
| 09/27/2010 | 238 | Unopposed MOTION to Withdraw as Attorney *and Substitute Counsel* by Radioshack Corporation. (Attachments: # 1 Text of Proposed Order)(Smith, Michael) (Entered: 09/27/2010) |
| 09/27/2010 | 239 | ANSWER and AFFIRMATIVE DEFENSES to 1 Complaint by Phoebe Micro Inc.. (mll, ) (Entered: 09/27/2010) |
| 09/27/2010 | 240 | ANSWER to 150 Answer to Amended Complaint, Counterclaim *of Defendant Dell, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/27/2010) |

| 09/27/2010 | 241 | STIPULATION of Dismissal *of Defendant Trippe Manufacturing Company* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order) (Robinson, Erick) (Entered: 09/27/2010) |
| 09/27/2010 | 242 | RESPONSE in Opposition re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected) filed by AdjustaCam LLC.* (Attachments: # 1 Text of Proposed Order) (Robinson, Erick) (Entered: 09/27/2010) |
| 09/27/2010 | 243 | APPLICATION to Appear Pro Hac Vice by Attorney Jen-Feng Lee for Auditek Corporation. (mll, ) (Entered: 09/28/2010) |
| 09/28/2010 | 244 | ANSWER to 171 Answer to Amended Complaint, Counterclaim *of Defendants Newegg Inc. and Newegg.com Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/28/2010) |
| 09/28/2010 | 245 | ANSWER to 172 Answer to Amended Complaint, Counterclaim *of Defendant Rosewill, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/28/2010) |
| 09/28/2010 | 246 | ANSWER to 167 Answer to Amended Complaint, Counterclaim,, *of Defendants CompUSA, Inc., New CompUSA Corp., TigerDirect, Inc. and Systemax, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/28/2010) |
| 09/28/2010 | 247 | ANSWER to 163 Answer to Amended Complaint, Counterclaim *of Defendant Amazon.com, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/28/2010) |
| 09/29/2010 | 248 | APPLICATION to Appear Pro Hac Vice by Attorney Nena W Wong for Phoebe Micro Inc.. (mll, ) (Entered: 09/29/2010) |
| 09/30/2010 | 249 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re J&R ELECTRONICS INC. D/B/A J&R.( Henson, Walter) (Entered: 09/30/2010) |
| 10/01/2010 | 250 | *Original* ANSWER to 111 Amended Complaint,,,,, *and,* COUNTERCLAIM against AdjustaCam LLC by KMart Corporation.(Barr, John) (Entered: 10/01/2010) |
| 10/01/2010 | 251 | NOTICE of Disclosure by CONNS, INC. D/B/A CONNS *Corporate Disclosure Statement* (Adams, Kent) (Entered: 10/01/2010) |
| 10/01/2010 | 252 | *Original* ANSWER to 111 Amended Complaint,,,,, *and,* COUNTERCLAIM against AdjustaCam LLC by Overstock.com, Inc..(Barr, John) (Entered: 10/01/2010) |
| 10/01/2010 | 253 | *Original* ANSWER to 111 Amended Complaint,,,,, *and,* COUNTERCLAIM against AdjustaCam LLC by Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Sears Brands, LLC.(Barr, John) (Entered: 10/01/2010) |
| 10/01/2010 | 254 | NOTICE of Disclosure by Overstock.com, Inc. (Barr, John) (Entered: 10/01/2010) |
| 10/01/2010 | 255 | CORPORATE DISCLOSURE STATEMENT filed by KMart Corporation, Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company (Barr, John) (Entered: 10/01/2010) |

| 10/01/2010 | 257 | APPLICATION to Appear Pro Hac Vice by Attorney Thomas Carulli for Lifeworks Technology Group, LLC. (mll, ) (Entered: 10/04/2010) |
| --- | --- | --- |
| 10/01/2010 | 258 | APPLICATION to Appear Pro Hac Vice by Attorney Jennifer Huang for Lifeworks Technology Group, LLC. (mll, ) (Entered: 10/04/2010) |
| 10/04/2010 | 256 | REPLY to Response to Motion re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* filed by Wal-Mart Stores, Inc.. (deGyarfas, Victor) (Entered: 10/04/2010) |
| 10/05/2010 | 259 | ***MOTION WITHDRAWN BY DOCUMENT #289***<br><br>Unopposed MOTION for Extension of Time to File Response/Reply as to 179 Response to Non-Motion, by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) Modified on 10/8/2010 (kls, ). (Entered: 10/05/2010) |
| 10/05/2010 | 260 | ANSWER to 181 Answer to Complaint, Counterclaim by AdjustaCam LLC. (Edmonds, John) (Entered: 10/05/2010) |
| 10/05/2010 | 261 | NOTICE by Overstock.com, Inc. re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *of Joinder* (Barr, John) (Entered: 10/05/2010) |
| 10/05/2010 | 262 | NOTICE by KMart Corporation re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *of Joinder* (Barr, John) (Entered: 10/05/2010) |
| 10/05/2010 | 263 | SUPPLEMENTAL CORPORATE DISCLOSURE STATEMENT filed by CDW, LLC identifying Corporate Parent CDW Corporation of Delaware for CDW, LLC. (Horton, Benjamin) (Entered: 10/05/2010) |
| 10/05/2010 | 264 | NOTICE by Sears Brands, LLC re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Barr, John) (Entered: 10/05/2010) |
| 10/05/2010 | 265 | NOTICE by Sears Holdings Corporation D/B/A Sears re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Barr, John) (Entered: 10/05/2010) |
| 10/05/2010 | 266 | NOTICE by Sears, Roebuck and Company re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other) *Notice of Joinder* (Barr, John) (Entered: 10/05/2010) |

| 10/05/2010 | 267 | AMENDED ANSWER to *Plaintiff's First* 111 Amended Complaint,,,,, *and First, Amended* COUNTERCLAIM against AdjustaCam LLC by Overstock.com, Inc.. (Barr, John) (Entered: 10/05/2010) |
|---|---|---|
| 10/05/2010 | 268 | AMENDED ANSWER to *Plaintiff's First* 111 Amended Complaint,,,,, *and First, Amended* COUNTERCLAIM against AdjustaCam LLC by KMart Corporation. (Barr, John) (Entered: 10/05/2010) |
| 10/05/2010 | 269 | AMENDED ANSWER to *Plaintiff's First* 111 Amended Complaint,,,,, *and First, Amended* COUNTERCLAIM against AdjustaCam LLC by Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Sears Brands, LLC. (Barr, John) (Entered: 10/05/2010) |
| 10/05/2010 | 270 | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint re Intcomex, Inc..( Wong, Russell) (Entered: 10/05/2010) |
| 10/05/2010 | 271 | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint re Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex.( Wong, Russell) (Entered: 10/05/2010) |
| 10/05/2010 | 272 | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint re Klip Extreme LLC.( Wong, Russell) (Entered: 10/05/2010) |
| 10/06/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 249 is granted pursuant to Local Rule CV-12 for J&R ELECTRONICS INC. D/B/A J&R to 11/1/2010. 30 Days Granted for Deadline Extension.( mll, ) (Entered: 10/06/2010) |
| 10/06/2010 | | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint 270 is granted pursuant to Local Rule CV-12 for Intcomex, Inc. to 10/6/2010. 1 Days Granted for Deadline Extension.( mll, ) (Entered: 10/06/2010) |
| 10/06/2010 | | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint 271 is granted pursuant to Local Rule CV-12 for Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex to 10/6/2010. 1 Days Granted for Deadline Extension.( mll, ) (Entered: 10/06/2010) |
| 10/06/2010 | | Defendant's Unopposed Fourth Application for Extension of Time to Answer Complaint 272 is granted pursuant to Local Rule CV-12 for Klip Extreme LLC to 10/6/2010. 1 Days Granted for Deadline Extension.( mll, ) (Entered: 10/06/2010) |
| 10/06/2010 | 273 | REPLY to Response to Motion re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected) filed by Dell, Inc.,.* (Attachments: # 1 Exhibit)(Fulghum, Roger) (Entered: 10/06/2010) |
| 10/06/2010 | 274 | MOTION to Dismiss *for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim or in the Alternative to Transfer to the Southern District of Florida* by Intcomex, Inc., Klip Extreme LLC, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex. (Attachments: # 1 Declaration of Russell |

| | | A. Olson)(Wong, Russell) (Additional attachment(s) added on 10/8/2010: # 2 Text of Proposed Order) (mjc, ). (Entered: 10/06/2010) |
|---|---|---|
| 10/06/2010 | 275 | CORPORATE DISCLOSURE STATEMENT filed by Intcomex, Inc., Klip Extreme LLC, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex (Wong, Russell) (Entered: 10/06/2010) |
| 10/06/2010 | 276 | MOTION to Dismiss *and Notice of Joinder in Defendant Wal-Mart Stores, Inc.'s and Dell, Inc.'s Motions to Dismiss Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim* by Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphones, LLC. (Attachments: # 1 Text of Proposed Order)(Gardner, Allen) (Entered: 10/06/2010) |
| 10/06/2010 | 277 | CORPORATE DISCLOSURE STATEMENT filed by Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC identifying Corporate Parent None for Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC. (Gardner, Allen) (Entered: 10/06/2010) |
| 10/06/2010 | 278 | Defendant's Unopposed first Application for Extension of Time to Answer Complaint re Best Buy Co Inc.(Daniels, Steven) (Entered: 10/06/2010) |
| 10/06/2010 | 279 | Defendant's Unopposed first Application for Extension of Time to Answer Complaint re Best Buy Stores, LP.(Daniels, Steven) (Entered: 10/06/2010) |
| 10/06/2010 | 280 | Defendant's Unopposed first Application for Extension of Time to Answer Complaint re BestBuy.com, LLC.(Daniels, Steven) (Entered: 10/06/2010) |
| 10/07/2010 | 281 | CORPORATE DISCLOSURE STATEMENT filed by Jwin Electronics Corporation (Werner, Philip) (Entered: 10/07/2010) |
| 10/07/2010 | 282 | NOTICE by Hewlett-Packard Company re 273 Reply to Response to Motion, *Notice of Joinder* (Daniels, Steven) (Entered: 10/07/2010) |
| 10/07/2010 | 283 | NOTICE by Creative Labs, Inc., re 273 Reply to Response to Motion, *Notice of Joinder* (Daniels, Steven) (Entered: 10/07/2010) |
| 10/07/2010 | 284 | NOTICE by Fry's Electronics Inc re 273 Reply to Response to Motion, *Notice of Joinder* (Daniels, Steven) (Entered: 10/07/2010) |
| 10/07/2010 | 285 | NOTICE by Office Depot, Inc. re 273 Reply to Response to Motion, *Notice of Joinder* (Daniels, Steven) (Entered: 10/07/2010) |
| 10/07/2010 | 286 | NOTICE by Micro Electronics, Inc. DBA Micro Center re 273 Reply to Response to Motion, *Notice of Joinder* (Daniels, Steven) (Entered: 10/07/2010) |
| 10/07/2010 | 287 | NOTICE by Newegg, Inc., Newegg.com, Inc. re 273 Reply to Response to Motion, *Notice of Joinder* (Stewart, Justin) (Entered: 10/07/2010) |
| 10/07/2010 | 288 | NOTICE by Rosewill Inc. re 273 Reply to Response to Motion, *Notice of Joinder* (Stewart, Justin) (Entered: 10/07/2010) |

| | | |
|---|---|---|
| 10/08/2010 | 289 | NOTICE by AdjustaCam LLC re 259 Unopposed MOTION for Extension of Time to File Response/Reply as to 179 Response to Non-Motion, *Notice of WIthdrawal* (Edmonds, John) (Entered: 10/08/2010) |
| 10/08/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 278 is granted pursuant to Local Rule CV-12 for Best Buy Co Inc to 10/13/2010. 26 Days Granted for Deadline Extension.( mll, ) (Entered: 10/08/2010) |
| 10/08/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 279 is granted pursuant to Local Rule CV-12 for Best Buy Stores, LP to 10/13/2010. 26 Days Granted for Deadline Extension.( mll, ) (Entered: 10/08/2010) |
| 10/08/2010 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint 280 is granted pursuant to Local Rule CV-12 for BestBuy.com, LLC to 10/13/2010. 26 Days Granted for Deadline Extension.( mll, ) (Entered: 10/08/2010) |
| 10/08/2010 | 290 | ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Macally Peripherals, Inc. D/B/A Macally U.S.A..(Lukevich, Peter) (Entered: 10/08/2010) |
| 10/11/2010 | 291 | NOTICE by CONNS, INC. D/B/A CONNS re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other), 273 Reply to Response to Motion, *Joinder Thereof* (Adams, Kent) (Entered: 10/11/2010) |
| 10/12/2010 | 292 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Best Buy Co Inc.(Daniels, Steven) (Entered: 10/12/2010) |
| 10/12/2010 | 293 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Best Buy Stores, LP.(Daniels, Steven) (Entered: 10/12/2010) |
| 10/12/2010 | 294 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re BestBuy.com, LLC.(Daniels, Steven) (Entered: 10/12/2010) |
| 10/14/2010 | 295 | NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *OF JOINDER IN DEFENDANT DELL INC.'S CORRECTED MOTION TO DISMISS PLAINTIFF'S ALLEGATIONS OF INDIRECT INFRINGEMENT AND WILLFUL INFRINGEMENT FOR FAILURE TO STATE A CLAIM* (Denenberg, David) (Entered: 10/14/2010) |
| 10/14/2010 | 296 | SUR-REPLY to Reply to Response to Motion re 147 MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6)* MOTION to Dismiss *[PARTIAL] FOR FAILURE TO STATE A CLAIM, F.R.C.P. 12(B)(6) filed by AdjustaCam LLC.* (Attachments: # 1 Exhibit Exhibit A)(Robinson, Erick) (Entered: 10/14/2010) |
| 10/15/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 292 is granted pursuant to Local Rule CV-12 for Best Buy Co Inc to 10/25/2010. 10 Days Granted for Deadline Extension.( mll, ) (Entered: 10/15/2010) |

| 10/15/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 293 is granted pursuant to Local Rule CV-12 for Best Buy Stores, LP to 10/25/2010. 10 Days Granted for Deadline Extension.( mll, ) (Entered: 10/15/2010) |
| --- | --- | --- |
| 10/15/2010 | 297 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of Amazon.com, Inc. (Craft, Roger) (Entered: 10/15/2010) |
| 10/15/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 294 is granted pursuant to Local Rule CV-12 for BestBuy.com, LLC to 10/25/2010. 16 Days Granted for Deadline Extension.( mll, ) (Entered: 10/15/2010) |
| 10/15/2010 | 298 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of Amazon.com, Inc. (Findlay, Eric) (Entered: 10/15/2010) |
| 10/15/2010 | 299 | Unopposed MOTION for Extension of Time to File Answer re 200 Answer to Complaint, Counterclaim,, by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 10/15/2010) |
| 10/15/2010 | 300 | Unopposed MOTION for Extension of Time to File Answer re 230 Answer to Counterclaim,,, by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 10/15/2010) |
| 10/15/2010 | 301 | SUR-REPLY to Reply to Response to Motion re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected) filed by AdjustaCam LLC.* (Attachments: # 1 Exhibit A) (Robinson, Erick) (Entered: 10/15/2010) |
| 10/18/2010 | 302 | Unopposed MOTION for Extension of Time to File Response/Reply as to 231 Answer to Counterclaim,,, by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 10/18/2010) |
| 10/18/2010 | 303 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 10/18/2010) |
| 10/19/2010 | 304 | ORDER granting 299 Motion for Extension of Time to Answer. Pltf's time to respond to Kohl's Illinois Inc and Kohl's Corporation's Counterclaims is extended to 10-18-2010. Signed by Judge Leonard Davis on 10/19/10. cc:attys 10-20-10 (mll, ) (Entered: 10/20/2010) |
| 10/19/2010 | 305 | ORDER granting 300 Motion for Extension of Time to Answer. Pltf's time to respond to Sakar International's Counterclaims is extended to 10-18-2010. Signed by Judge Leonard Davis on 10/19/10. cc:attys 10-20-10 (mll, ) (Entered: 10/20/2010) |
| 10/20/2010 | 306 | ORDER granting 302 Motion for Extension of Time to File Response/Reply. Pltf's time to respond to Kohl's Illinois Inc and Kohl's Corporation's Counterclaims is extended until such time as Kohl defts amend their Counterclaims to remove inequitable conduct allegations. Signed by Judge Leonard Davis on 10/20/10. cc:attys 10-20-10 (mll, ) (Entered: 10/20/2010) |
| 10/21/2010 | 307 | Unopposed MOTION for Extension of Time to File Response/Reply as to 274 |

| | | |
|---|---|---|
| | | MOTION to Dismiss *for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim or in the Alternative to Transfer to the Southern District of Florida* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 10/21/2010) |
| 10/21/2010 | 308 | E-GOV SEALED SUMMONS REISSUED as to Digital Innovations, LLC. (mll, ) (Entered: 10/21/2010) |
| 10/25/2010 | 309 | NOTICE by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC re 164 MOTION to Dismiss *Plaintiff's Allegations of Indirect Infringement and Willful Infringement for Failure to State a Claim (Corrected)*, 180 Notice (Other), Notice (Other), 273 Reply to Response to Motion, *Notice of Joinder* (Daniels, Steven) (Entered: 10/25/2010) |
| 10/25/2010 | 310 | ANSWER to 111 First Amended Complaint by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC.(mll, ) (Entered: 10/25/2010) |
| 10/25/2010 | 311 | CORPORATE DISCLOSURE STATEMENT filed by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC identifying Corporate Parent Best Buy Stores, L.P. for BestBuy.com, LLC; Corporate Parent BBC Property Co. for Best Buy Stores, LP. (Daniels, Steven) (Entered: 10/25/2010) |
| 10/25/2010 | 312 | ORDER granting 303 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Trippe Manufacturing Company are DISMISSED with prejudice. Signed by Judge Leonard Davis on 10/25/10. cc:attys 10-25-10(mll, ) (Entered: 10/25/2010) |
| 10/25/2010 | 313 | RESPONSE to 250 Answer to Amended Complaint, Counterclaim *of KMart* by AdjustaCam LLC. (Edmonds, John) (Entered: 10/25/2010) |
| 10/25/2010 | 314 | RESPONSE to 253 Answer to Amended Complaint, Counterclaim *of Sears* by AdjustaCam LLC. (Edmonds, John) (Entered: 10/25/2010) |
| 10/25/2010 | 315 | RESPONSE to 252 Answer to Amended Complaint, Counterclaim *of Overstock* by AdjustaCam LLC. (Edmonds, John) (Entered: 10/25/2010) |
| 10/26/2010 | 316 | ORDER granting 307 Motion for Extension of Time to File Response/Reply re 274 MOTION to Dismiss *for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim or in the Alternative to Transfer to the Southern District of Florida*; Responses due by 11/8/2010. Signed by Judge Leonard Davis on 10/26/10. cc:attys 10-26-10 (mll, ) (Entered: 10/26/2010) |
| 10/27/2010 | 317 | Unopposed MOTION for Discovery by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 10/27/2010) |
| 10/27/2010 | 318 | Unopposed MOTION for Extension of Time to File Response/Reply as to 274 MOTION to Dismiss *for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim or in the Alternative to Transfer to the Southern District of Florida* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 10/27/2010) |

| 10/28/2010 | 319 | ORDER granting 238 Motion to Withdraw as Attorney. Added attorney R David Donoghue,Peter I Sanborn for Radioshack Corporation. Attorney Christopher Michael Joe terminated. Signed by Judge Leonard Davis on 10/28/10. cc:attys 10-28-10 (mll, ) (Entered: 10/28/2010) |
| --- | --- | --- |
| 10/28/2010 | 320 | ORDER granting 318 Motion for Extension of Time to File Response/Reply re 274 MOTION to Dismiss *for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim or in the Alternative to Transfer to the Southern District of Florida*; Responses due by 12/27/2010. Signed by Judge Leonard Davis on 10/28/10. cc:attys 10-28-10 (mll, ) (Entered: 10/28/2010) |
| 10/29/2010 | 321 | ORDER granting 317 Motion for Discovery. Signed by Judge Leonard Davis on 10/28/10. cc:attys 10-29-10(mll, ) (Entered: 10/29/2010) |
| 11/01/2010 | 322 | RESPONSE to 111 Amended Complaint,,,,, *--- Answer to Plaintiff's First Amended Complaint for Patent Infringement* by J&R ELECTRONICS INC. D/B/A J&R. (Jones, Michael) (Entered: 11/01/2010) |
| 11/01/2010 | 323 | CORPORATE DISCLOSURE STATEMENT filed by J&R ELECTRONICS INC. D/B/A J&R identifying Corporate Parent None for J&R ELECTRONICS INC. D/B/A J&R. (Jones, Michael) (Entered: 11/01/2010) |
| 11/01/2010 | 324 | RESPONSE to 290 Answer to Amended Complaint, Counterclaim *of Macally* by AdjustaCam LLC. (Edmonds, John) (Entered: 11/01/2010) |
| 11/08/2010 | 325 | Unopposed MOTION for Extension of Time to File Answer re 230 Answer to Counterclaim,,, by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Robinson, Erick) (Entered: 11/08/2010) |
| 11/09/2010 | 326 | ORDER granting 325 Motion for Extension of Time to Answer re 230 Answer to Counterclaim. ORDERED that Plaintiff AdjustaCam, LLCs time to respond to Defendant Sakar International Inc.s Counterclaims is extended until such time Defendant Sakar International Inc. amends its Counterclaims to remove its inequitable conduct allegations. Signed by Judge Leonard Davis on 11/9/2010. (gsg) (Entered: 11/09/2010) |
| 11/15/2010 | 327 | MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, by Digital Innovations, LLC. (Attachments: # 1 Text of Proposed Order)(Philbin, Phillip) (Entered: 11/15/2010) |
| 11/17/2010 | 328 | ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Auditek Corporation.(Lee, Jen-Feng) (Entered: 11/17/2010) |
| 11/17/2010 | 329 | ORDER granting 327 Motion for Extension of Time to Answer. Deft Digital Innovations LLC shall have until 12-16-2010 to answer or otherwise respond to pltf's Complaint. Signed by Judge Leonard Davis on 11/17/10. cc:attys 11-17-10 (mll, ) (Entered: 11/17/2010) |
| 11/17/2010 | 330 | *1st Amended* ANSWER to 111 Amended Complaint,,,,, *Affirmative Defenses*, COUNTERCLAIM against AdjustaCam LLC by Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc..(Lukevich, Peter) (Entered: 11/17/2010) |

| | | |
|---|---|---|
| 11/19/2010 | 331 | Unopposed MOTION for Extension of Time to File Answer re 111 Amended Complaint,,,,, *or Otherwise Respond* by Cobra Digital, LLC. (Attachments: # 1 Text of Proposed Order)(Lackey, Walter) (Entered: 11/19/2010) |
| 11/22/2010 | 332 | ORDER granting 331 Motion for Extension of Time to Answer. Deft Cobra Digital LLC shall have to 11-26-2010 to move, answer, or otherwise respond to pltf's Complaint. Signed by Judge Leonard Davis on 11/22/10. cc:attys 11-22-10 (mll, ) (Entered: 11/22/2010) |
| 11/29/2010 | 333 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 11/29/2010) |
| 11/29/2010 | 334 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc. (Findlay, Eric) (Entered: 11/29/2010) |
| 11/29/2010 | 335 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc. (Craft, Roger) (Entered: 11/29/2010) |
| 11/29/2010 | 336 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 11/29/2010) |
| 11/29/2010 | 337 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 11/29/2010) |
| 12/02/2010 | 338 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 12/02/2010) |
| 12/02/2010 | 339 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 12/02/2010) |
| 12/02/2010 | 340 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 12/02/2010) |
| 12/02/2010 | 341 | ORDER granting 333 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Klip Xtreme LLC are dismissed with prejudice. Signed by Judge Leonard Davis on 12/02/10. cc:attys 12-03-10(mll, ) (Entered: 12/03/2010) |
| 12/02/2010 | 342 | ORDER granting 336 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Intcomex Inc are DISMISSED with prejudice. Signed by Judge Leonard Davis on 12/02/10. cc:attys 12-03-10(mll, ) (Entered: 12/03/2010) |
| 12/02/2010 | 343 | ORDER granting 337 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Software Brokers of America Inc are DISMISSED with prejudice. Signed by Judge Leonard Davis on 12/02/10. cc:attys 12-03-10(mll, ) (Entered: 12/03/2010) |
| 12/03/2010 | 344 | NOTICE by J&R ELECTRONICS INC. D/B/A J&R *for Termination of Electronic Notices* (Henson, Walter) (Entered: 12/03/2010) |

| 12/03/2010 | 345 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 12/03/2010) |
|---|---|---|
| 12/06/2010 | 346 | NOTICE by Intcomex, Inc., Klip Extreme LLC, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex *Withdrawal* (Wong, Russell) (Entered: 12/06/2010) |
| 12/06/2010 | 347 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for Prolynkz, LLC to 1/5/2011. 30 Days Granted for Deadline Extension.( mll, ) (mll, ). (Entered: 12/06/2010) |
| 12/06/2010 | 348 | ORDER granting 338 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Creative Technology Ltd are DISMISSED without prejudice. Signed by Judge Leonard Davis on 12/06/10. cc:attys 12-06-10(mll, ) (Entered: 12/06/2010) |
| 12/06/2010 | 349 | ORDER granting 339 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Sakar Inc are DISMISSED without prejudice. Signed by Judge Leonard Davis on 12/06/10. cc:attys 12-06-10(mll, ) (Entered: 12/06/2010) |
| 12/06/2010 | 350 | ORDER granting 340 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Solid Year Co, Ltd are DISMISSED without prejudice. Signed by Judge Leonard Davis on 12/06/10. cc:attys 12-06-10 (mll, ) (Entered: 12/06/2010) |
| 12/08/2010 | 351 | ANSWER to 330 Answer to Amended Complaint, Counterclaim *of Defendants Macally Peripherals, Inc. d/b/a Macally U.S.A. and Mace Group, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 12/08/2010) |
| 12/08/2010 | 352 | ANSWER to 328 Answer to Amended Complaint, Counterclaim *of Defendant Auditek Corp.* by AdjustaCam LLC.(Edmonds, John) (Entered: 12/08/2010) |
| 12/09/2010 | 353 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD,*** Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Cobra Digital, LLC.( Miller, Allison) Modified on 12/10/2010 (mjc, ). (Entered: 12/09/2010) |
| 12/09/2010 | 354 | ANSWER to 111 Amended Complaint,,,,, by Cobra Digital, LLC.(Miller, Allison) (Entered: 12/09/2010) |
| 12/09/2010 | 355 | Unopposed MOTION for Extension of Time to File Answer re 354 Answer to Amended Complaint *, as well as Motion to File Instanter Answer to First Amended Complaint* by Cobra Digital, LLC. (Attachments: # 1 Text of Proposed Order GRANTING Motion to File Instanter Answer to First Amended Complaint)(Miller, Allison) (Additional attachment(s) added on 12/10/2010: # 2 Text of Proposed Order Corrected) (mjc, ). (Entered: 12/09/2010) |
| 12/10/2010 | | NOTICE of Deficiency regarding the 353 Unopposed Application for Extension of Time submitted by Cobra Digital, LLC. The party's name is incorrect on the application. Correction should be made by one business day. (mjc, ) (Entered: 12/10/2010) |
| 12/10/2010 | 356 | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Cobra Digital, LLC.( Miller, Allison) (Entered: 12/10/2010) |

| 12/13/2010 | | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint 356 is granted pursuant to Local Rule CV-12 for Cobra Digital, LLC to 12/9/2010. 13 Days Granted for Deadline Extension.( mll, ) (Entered: 12/13/2010) |
|---|---|---|
| 12/13/2010 | 357 | ORDER granting 355 Motion for Extension of Time to Answer. Deft Cobra Digial's answer is deemed timely filed as of 12-09-2010. Signed by Judge Leonard Davis on 12/13/10. cc:attys 12-13-10 (mll, ) (Entered: 12/13/2010) |
| 12/16/2010 | 358 | ANSWER to 111 Amended Complaint,,,,,, COUNTERCLAIM against AdjustaCam LLC by Digital Innovations, LLC.(Philbin, Phillip) (Entered: 12/16/2010) |
| 12/20/2010 | 359 | NOTICE of Voluntary Dismissal by AdjustaCam LLC (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 12/20/2010) |
| 12/20/2010 | 360 | NOTICE by AdjustaCam LLC re 15 Order, *regarding Notice of Readiness for Scheduling Conference* (Edmonds, John) (Entered: 12/20/2010) |
| 12/21/2010 | 361 | ORDER granting 359 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against deft Ezonics Corporation are dismissed without prejudice. Signed by Judge Leonard Davis on 12/21/10. cc:attys 12-21-10(mll, ) (Entered: 12/21/2010) |
| 12/22/2010 | 362 | Unopposed MOTION to Withdraw as Attorney by Newegg, Inc., Newegg.com, Inc.. (Attachments: # 1 Text of Proposed Order)(Stewart, Justin) (Entered: 12/22/2010) |
| 12/30/2010 | 363 | ORDER granting 362 Motion to Withdraw as Attorney. Attorney Justin Neil Stewart terminated as counsel of record for defts Newegg Inc and Newegg.com Inc. Signed by Judge Leonard Davis on 12/30/10. cc:attys 12-30-10 (mll, ) (Entered: 12/30/2010) |
| 01/06/2011 | 364 | NOTICE of Attorney Appearance by Christopher Schenck on behalf of KMart Corporation, Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company (Schenck, Christopher) (Entered: 01/06/2011) |
| 01/06/2011 | 365 | NOTICE of Attorney Appearance by Christopher Schenck on behalf of Overstock.com, Inc. (Schenck, Christopher) (Entered: 01/06/2011) |
| 01/06/2011 | 366 | ANSWER to 358 Answer to Amended Complaint, Counterclaim *of Defendant Digital Innovations, LLC* by AdjustaCam LLC.(Edmonds, John) (Entered: 01/06/2011) |
| 01/10/2011 | 367 | ORDER granting 345 Notice of Voluntary Dismissal filed by AdjustaCam LLC. Pltf's claims against Prolynkz LLC are dismissed without prejudice. Signed by Judge Leonard Davis on 01/10/11. cc:attys 1-10-11(mll, ) (Entered: 01/10/2011) |
| 01/12/2011 | 368 | NOTICE of Attorney Appearance by John Allen Yates on behalf of Overstock.com, Inc. (Yates, John) (Entered: 01/12/2011) |
| 01/12/2011 | 369 | NOTICE of Attorney Appearance by John Allen Yates on behalf of KMart Corporation, Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company (Yates, John) (Entered: 01/12/2011) |
| 01/13/2011 | 370 | MOTION to Stay *and Sever Claims as to Reseller Defendants Based on the* |

*Customer Suit Exception* by Amazon.com, Inc., Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Cobra Digital, LLC, Compusa.com, Inc., Creative Labs, Inc.,, Dell, Inc.,, Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, Jwin Electronics Corporation, KMart Corporation, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Lifeworks Technology Group, LLC, Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Overstock.com, Inc., Phoebe Micro Inc., Rosewill Inc., Sakar International, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Wal-Mart Stores, Inc.. (Attachments: # [1] Affidavit Declaration of B. Atkinson, # [2] Exhibit A, # [3] Exhibit B, # [4] Exhibit C, # [5] Exhibit D, # [6] Exhibit E, # [7] Text of Proposed Order) (Daniels, Steven) (Entered: 01/13/2011)

| 01/13/2011 | [371] | ORDER re Agreed Docket Control and Discovery Orders. Signed by Judge Leonard Davis on 1/13/2010. (gsg) (Entered: 01/14/2011) |
| 01/24/2011 | [372] | NOTICE of Attorney Appearance by J Thad Heartfield on behalf of CONNS, INC. D/B/A CONNS (Heartfield, J) (Entered: 01/24/2011) |
| 01/24/2011 | [373] | NOTICE of Attorney Appearance by M. Dru Montgomery on behalf of CONNS, INC. D/B/A CONNS (Montgomery, M.) (Entered: 01/24/2011) |
| 01/24/2011 | [374] | NOTICE of Attorney Appearance by Deron R Dacus on behalf of Dell, Inc., (Dacus, Deron) (Entered: 01/24/2011) |
| 01/26/2011 | [375] | ***DISREGARD ENTRY - DEFICIENT FILING*** <br><br> Unopposed MOTION to Withdraw as Attorney *of Record* by Jwin Electronics Corporation. (Attachments: # [1] Text of Proposed Order)(Werner, Philip) Modified on 1/26/2011 (kls, ). (Entered: 01/26/2011) |
| 01/26/2011 | | NOTICE of Deficiency regarding the #375 Motion to Withdraw as Attorney submitted by Jwin Electronics Corporation. Motion/Proposed Order not in searchable.pdf format. Date and Signature line must be removed from proposed order. Correction should be made by Next Business Day (kls, ) (Entered: 01/26/2011) |
| 01/26/2011 | [376] | Unopposed MOTION to Withdraw as Attorney *of Record* by Jwin Electronics Corporation. (Attachments: # [1] Text of Proposed Order)(Werner, Philip) (Entered: 01/26/2011) |
| 01/28/2011 | [377] | APPLICATION to Appear Pro Hac Vice by Attorney Christopher J Cuneo for Newegg, Inc., Newegg.com, Inc. (mll, ) (Entered: 01/28/2011) |
| 01/31/2011 | [378] | RESPONSE in Opposition re [370] MOTION to Stay *and Sever Claims as to Reseller Defendants Based on the Customer Suit Exception* filed by AdjustaCam LLC. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Edmonds, John) (Additional attachment(s) added on 2/3/2011: # 8 Text of Proposed Order) (kls, ). (Entered: 01/31/2011) |
| 02/02/2011 | 379 | NOTICE of Attorney Appearance by Andrew Patrick Tower on behalf of AdjustaCam LLC (Tower, Andrew) (Entered: 02/02/2011) |
| 02/07/2011 | 380 | NOTICE of Attorney Appearance by Eric Hugh Findlay on behalf of Creative Labs, Inc., (Findlay, Eric) (Entered: 02/07/2011) |
| 02/07/2011 | 381 | NOTICE of Attorney Appearance by Roger Brian Craft on behalf of Creative Labs, Inc., (Craft, Roger) (Entered: 02/07/2011) |
| 02/07/2011 | 382 | NOTICE of Attorney Appearance by Michael Charles Smith on behalf of Wal-Mart Stores, Inc. (Smith, Michael) (Entered: 02/07/2011) |
| 02/07/2011 | 385 | **2.7.11 Minute Entry - Status Conference:** for proceedings held before Judge Leonard Davis and Judge John Love: Status Conference held on 2/7/2011. (Court Reporter Shea Sloan.) (Attachments: # 1 Attorney Sign-In Sheet) (rlf, ) (Entered: 02/11/2011) |
| 02/07/2011 | 386 | **2.7.11 Minute Entry - Status Conference:** for proceedings held before Judge Leonard Davis: Status Conference held on 2/7/2011. (Court Reporter Shea Sloan.) (Attachments: # 1 Attorney Sign-In Sheet) (rlf, ) (Entered: 02/11/2011) |
| 02/07/2011 | | ELECTRONIC Minute Entry for proceedings held before Magistrate Judge John D. Love and Judge Davis: Status Conference held on 2/7/2011. (refer to document #385) (Court Reporter Shea Sloan.) (mjm, ) (Entered: 02/14/2011) |
| 02/08/2011 | 383 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** NOTICE of Attorney Appearance by Herbert J Hammond on behalf of Gear Head, LLC (Hammond, Herbert) Modified on 2/11/2011 (mjc, ). (Entered: 02/08/2011) |
| 02/11/2011 | | ***FILED IN ERROR. Document # 383 , Notice of Appearance. PLEASE IGNORE. TO BE REFILED USING CORRECT PASSWORD AND LOGIN.*** (mjc, ) (Entered: 02/11/2011) |
| 02/11/2011 | 384 | REPLY to Response to Motion re 370 MOTION to Stay *and Sever Claims as to Reseller Defendants Based on the Customer Suit Exception filed by Amazon.com, Inc., Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Cobra Digital, LLC, Compusa.com, Inc., Creative Labs, Inc.,, Dell, Inc.,, Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, Jwin Electronics Corporation, KMart Corporation, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Lifeworks Technology Group, LLC, Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc.,* |

| | | |
|---|---|---|
| | | *Office Depot, Inc., Overstock.com, Inc., Phoebe Micro Inc., Rosewill Inc., Sakar International, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Wal-Mart Stores, Inc.*. (Attachments: # [1] Exhibit Table of Accused Products)(Daniels, Steven) (Entered: 02/11/2011) |
| 02/11/2011 | [387] | STIPULATION of Dismissal *of Defendant Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco* by AdjustaCam LLC. (Attachments: # [1] Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 02/11/2011) |
| 02/11/2011 | [388] | APPLICATION to Appear Pro Hac Vice by Attorney Gary Y Leung for Digital Innovations, LLC (mll, ) (Entered: 02/14/2011) |
| 02/15/2011 | [389] | NOTICE of Attorney Appearance by Patricia L Davidson on behalf of Gear Head, LLC (Davidson, Patricia) (Entered: 02/15/2011) |
| 02/18/2011 | [390] | ORDER denying [376] Motion to Withdraw as Attorney. Signed by Judge Leonard Davis on 02/18/11. cc:attys 2-18-11 (mll, ) (Entered: 02/18/2011) |
| 02/21/2011 | [391] | Joint MOTION for Extension of Time to File *Proposed Docket Control Order and Discovery Order* by Amazon.com, Inc., CDW Corporation F/K/A CDW Computer Centers, Inc., Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc.. (Attachments: # [1] Text of Proposed Order) (Craft, Roger) (Entered: 02/21/2011) |
| 02/22/2011 | [392] | SUR-REPLY to Reply to Response to Motion re [370] MOTION to Stay *and Sever Claims as to Reseller Defendants Based on the Customer Suit Exception filed by AdjustaCam LLC*. (Edmonds, John) (Entered: 02/22/2011) |
| 02/23/2011 | [393] | ORDER granting [391] Motion for Extension of Time. Parties are given 14 days after the follow up status conference to file an agreed Docket Control Order and Discovery Order or competing versions. Signed by Judge Leonard Davis on 02/23/11. cc:attys 2-23-11 (mll, ) (Entered: 02/23/2011) |
| 02/28/2011 | [394] | NOTICE by AdjustaCam LLC *OF COMPLIANCE AND REQUEST TO RESCHEDULE CASE MANAGEMENT CONFERENCE* (Edmonds, John) (Entered: 02/28/2011) |
| 03/01/2011 | [395] | ORDER setting Status Conference for 3/24/2011 09:00 AM before Judge Leonard Davis. Signed by Judge Leonard Davis on 03/01/11. cc:attys 3-02-11(mll, ) (Entered: 03/02/2011) |
| 03/17/2011 | [396] | NOTICE by Amazon.com, Inc., Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Cobra Digital, LLC, Compusa.com, Inc., Creative Labs, Inc.,, Dell, Inc.,, Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, Jwin Electronics Corporation, KMart Corporation, KOHLS CORPORATION D/B/A KOHL'S, |

Kohl's Illinois, Inc., Lifeworks Technology Group, LLC, Macally Peripherals, Inc.
D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center,
New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc.,
Overstock.com, Inc., Phoebe Micro Inc., Rosewill Inc., Sakar International, Inc., Sears
Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and
Company, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Wal-Mart
Stores, Inc. re 370 MOTION to Stay *and Sever Claims as to Reseller Defendants
Based on the Customer Suit Exception*, 384 Reply to Response to Motion,,,,,
(Attachments: # 1 Exhibit A (Itex, Inc. v. Westex, Inc. et al. (N.D. Ill. 2011) Order), #
2 Exhibit B (Mitutoyo Corp. v. Central Purchasing, LLC (Fed. Cir. 2007) opinion))
(Daniels, Steven) (Entered: 03/17/2011)

| | | |
|---|---|---|
| 03/21/2011 | 397 | Unopposed MOTION to Withdraw as Attorney by Cobra Digital, LLC. (Attachments: # 1 Text of Proposed Order)(Lackey, Walter) (Entered: 03/21/2011) |
| 03/22/2011 | 398 | NOTICE of Attorney Appearance by John Frederick Bufe on behalf of Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC, J&R ELECTRONICS INC. D/B/A J&R (Bufe, John) (Entered: 03/22/2011) |
| 03/22/2011 | 399 | NOTICE of Attorney Appearance by Michael E Jones on behalf of Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone (Jones, Michael) (Entered: 03/22/2011) |
| 03/22/2011 | 403 | ORDER granting 397 Motion to Withdraw as Attorney. Attorney Walter Wayne Lackey, Jr terminated. Signed by Judge Leonard Davis on 03/22/11. cc:attys 3-23-11 (mll, ) (Entered: 03/23/2011) |
| 03/23/2011 | 400 | NOTICE of Attorney Appearance by Shannon Marie Dacus on behalf of Dell, Inc., (Dacus, Shannon) (Entered: 03/23/2011) |
| 03/23/2011 | 401 | NOTICE of Attorney Appearance by Vincent Jerome Allen on behalf of Auditek Corporation (Allen, Vincent) (Entered: 03/23/2011) |
| 03/23/2011 | 402 | NOTICE of Attorney Appearance by Zachary Wade Hilton on behalf of Auditek Corporation (Hilton, Zachary) (Entered: 03/23/2011) |
| 03/23/2011 | 404 | NOTICE of Attorney Appearance by Robert Dean Ayers, Jr on behalf of Overstock.com, Inc. (Ayers, Robert) (Entered: 03/23/2011) |
| 03/23/2011 | 405 | NOTICE of Attorney Appearance by Robert Dean Ayers, Jr on behalf of KMart Corporation, Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company (Ayers, Robert) (Entered: 03/23/2011) |
| 03/23/2011 | 406 | Unopposed MOTION to Substitute Attorney *and Withdraw Counsel* by Lifeworks Technology Group, LLC. (Attachments: # 1 Text of Proposed Order)(Daniels, Steven) (Entered: 03/23/2011) |
| 03/23/2011 | 407 | STIPULATION of Dismissal *WITHOUT PREJUDICE of Defendant Conns, Inc. d/b/a Conns* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order) |

|  |  | (Edmonds, John) (Entered: 03/23/2011) |
|---|---|---|
| 03/23/2011 | 408 | STIPULATION of Dismissal *With Prejudice of Defendant Phoebe Micro Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 03/23/2011) |
| 03/23/2011 | 410 | ORDER granting 387 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and deft Jasco Products Company LLC are dismissed with prejudice, with each party to bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 03/23/11. cc:attys 3-24-11(mll, ) (Entered: 03/24/2011) |
| 03/24/2011 | 409 | NOTICE by AdjustaCam LLC re 396 Notice (Other), Notice (Other), Notice (Other), Notice (Other), Notice (Other), Notice (Other) *re Supplemental Movant's Authority* (Attachments: # 1 Exhibit Ex. 1 - Bratic Declaration)(Edmonds, John) (Entered: 03/24/2011) |
| 03/24/2011 | 411 | ORDER granting 407 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and deft Conn's Inc are dismissed without prejudice, with each party to bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 03/24/11. cc:attys 3-24-11(mll, ) (Entered: 03/24/2011) |
| 03/24/2011 | 412 | ORDER granting 408 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and deft Phoebe Micro Inc are dismissed with prejudice, with each party to bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 03/24/11. cc:attys 3-24-11(mll, ) (Entered: 03/24/2011) |
| 03/24/2011 | 413 | **3.24.11 Minute Entry - Status Conference:** for proceedings held before Judge Leonard Davis: Status Conference held on 3/24/2011. (Court Reporter Shea Sloan.) (Attachments: # 1 Attorny Sign-In Sheets) (rlf, ) (Entered: 03/29/2011) |
| 03/30/2011 | 414 | STIPULATION of Dismissal *With Prejudice of Defendant jWIN Electronics Corporation* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order) (Edmonds, John) (Entered: 03/30/2011) |
| 03/30/2011 | 415 | STIPULATION of Dismissal *Without Prejudice of Defendant Cobra Digital, LLC* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 03/30/2011) |
| 03/30/2011 | 416 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Status Conference Proceedings held on 2/7/11 before Judge Leonard Davis. Court Reporter: Shea Sloan, shea_sloan@txed.uscourts.gov. 20 pages.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov** |

| | | |
|---|---|---|
| | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 4/25/2011. Redacted Transcript Deadline set for 5/5/2011. Release of Transcript Restriction set for 7/1/2011. (sms, ) (Entered: 03/30/2011) |
| 03/31/2011 | 417 | MEMORANDUM OPINION AND ORDER granting in part 98 Motion to Dismiss. Pltf is granted leave to amend its complaint within 15 days. Signed by Judge Leonard Davis on 03/31/11. cc:attys 3-31-11 (mll, ) (Entered: 03/31/2011) |
| 03/31/2011 | 418 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Status Conference Proceedings held on 3/24/11 before Judge Leonard Davis. Court Reporter: Shea Sloan. 27 pages.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 4/25/2011. Redacted Transcript Deadline set for 5/5/2011. Release of Transcript Restriction set for 7/5/2011. (sms, ) (Entered: 03/31/2011) |
| 04/05/2011 | 419 | ORDER re 414 Stipulation of Dismissal filed by AdjustaCam LLC, dismissing with prejudice all claims and counterclaims between plaintiff, Adjustacam LLC, and defendant, Jwin Electronics Corporation. Each party to bear its own costs. Signed by Judge Leonard Davis on 4/4/11. (mjc, ) (Entered: 04/05/2011) |
| 04/05/2011 | 420 | ORDER re 415 Stipulation of Dismissal filed by AdjustaCam LLC, dismissing without prejudice all claims and counterclaims asserted between plaintiff, AdjustaCam LLC, and defendant, Cobra Digital, LLC. Each party to bear its own costs. Signed by Judge Leonard Davis on 4/4/11. (mjc, ) (Entered: 04/05/2011) |
| 04/07/2011 | 421 | Joint MOTION for Extension of Time to File *Proposed Docket Control Order and Discovery Order* by Amazon.com, Inc., CDW Corporation F/K/A CDW Computer Centers, Inc., Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc.. (Attachments: # 1 Text of Proposed Order) (Craft, Roger) (Entered: 04/07/2011) |
| 04/14/2011 | 422 | Joint MOTION for Extension of Time to File *Proposed Docket Control Order and Discovery Order* by Amazon.com, Inc., CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc.. (Attachments: # 1 Text of Proposed Order)(Craft, Roger) (Entered: 04/14/2011) |
| 04/18/2011 | 423 | APPLICATION to Appear Pro Hac Vice by Attorney Daniel L Farris for Radioshack |

Corporation. (mll, ) (Entered: 04/18/2011)

| 04/20/2011 | 424 | ORDER granting 422 Motion for Extension of Time. Parties shall have to 4-27-2011 to file an agreed Docket Control Order and Discovery Order or competing versions if agreement cannot be reached. Signed by Judge Leonard Davis on 04/20/11. cc:attys 4-20-11 (mll, ) (Entered: 04/20/2011) |
| --- | --- | --- |
| 04/27/2011 | 425 | ORDER granting 406 Motion to Substitute Attorney. Added attorneys Steven Daniels, William Bryan Farney, and Bryan Donivan Atkinson for Lifeworks Technology Group, LLC. Attorneys Collin Michael Maloney; Thomas Carulli and Jennifer Huang terminated. Signed by Judge Leonard Davis on 04/27/11. cc:attys 4-27-11 (mll, ) (Entered: 04/27/2011) |
| 04/27/2011 | 426 | ORDER denying 370 Motion to Stay and Sever Claims as to Reseller Defendants Based on the Customer Suit Exception; granting parties' request for leave to file an early summary judgment motion regarding damages. Parties are to submit agreed Docket Control and Discovery Orders to the Court by 5-09-2011. For purposes of computing the time deadlines under the local patent rules, the Court deems 5-09-2011 as the effective Rule 16 Initial Case Management Conference date, and thus plaintiff's PR 3-1 and 3-2 disclosures will be due 4-29-2011. Signed by Judge Leonard Davis on 04/27/11. cc:attys 4-27-11 (mll, ) (Entered: 04/27/2011) |
| 05/03/2011 | 427 | Unopposed MOTION to Withdraw as Attorney *and Substitute Roger Fulghum as Lead Attorney,* by Dell, Inc.,. (Attachments: # 1 Text of Proposed Order)(Partridge, Scott) (Entered: 05/03/2011) |
| 05/05/2011 | 428 | ORDER granting 427 Motion to Withdraw as Attorney. Attorney Scott F Partridge terminated; Roger Fulghum is substituted as Lead Attorney. Signed by Judge Leonard Davis on 05/05/11. cc:attys 5-05-11 (mll, ) (Entered: 05/05/2011) |
| 05/09/2011 | 429 | Submission of Proposed Agreed Docket Control/Scheduling order by AdjustaCam LLC. (Attachments: # 1 Proposed Docket Control Order, # 2 Proposed Discovery Order)(Edmonds, John) (Entered: 05/09/2011) |
| 05/16/2011 | 430 | NOTICE of Disclosure by Gear Head, LLC *Initial* (Davidson, Patricia) (Entered: 05/16/2011) |
| 05/20/2011 | 431 | STIPULATION of Dismissal *Without Prejudice of defendants Sears Brands, LLC; Sears, Roebuck and Company; Sears Holdings Corporation d/b/a Sears; and Kmart Corporation* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order) (Edmonds, John) (Entered: 05/20/2011) |
| 05/23/2011 | 432 | NOTICE by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc. *Notice of Service of Initial Disclosures* (Findlay, Eric) (Entered: 05/23/2011) |
| 05/23/2011 | 433 | NOTICE by Wal-Mart Stores, Inc. *of Compliance of Service of Its Initial Disclosures* (DeGyarfas, Victor) (Entered: 05/23/2011) |
| 05/23/2011 | 434 | Unopposed MOTION for Extension of Time to Complete Discovery *and Serve Initial Disclosures* by Amazon.com, Inc.. (Attachments: # 1 Text of Proposed Order) |

| | | (Findlay, Eric) (Entered: 05/23/2011) |
|---|---|---|
| 05/23/2011 | 435 | NOTICE by Digital Innovations, LLC *of Compliance* (Leung, Gary) (Entered: 05/23/2011) |
| 05/23/2011 | 436 | NOTICE by Creative Labs, Inc.,, Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc. *Notice of Service of Initial Disclosures* (Findlay, Eric) (Entered: 05/23/2011) |
| 05/24/2011 | 437 | NOTICE by Overstock.com, Inc. re 429 Proposed Agreed Docket Control/Scheduling, Protective or Discovery Order (Barr, John) (Entered: 05/24/2011) |
| 05/24/2011 | 438 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *Defendants COMPUSA.COM, INC.S, NEW COMPUSA CORP.S, SYSTEMAX INC.S and TIGERDIRECT, INC.S Notice of Compliance* (Denenberg, David) Modified on 5/24/2011 (mjc, ). (Entered: 05/24/2011) |
| 05/24/2011 | 439 | NOTICE by Sakar International, Inc. *Notice of Compliance* (Sutton, Ezra) (Entered: 05/24/2011) |
| 05/24/2011 | | NOTICE of Deficiency regarding the 438 Notice submitted by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. Document does not contain a Certificate of Service. Correction should be made by one business day. (mjc, ) (Entered: 05/24/2011) |
| 05/24/2011 | 440 | NOTICE by Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC *Notice of Compliance* (Sarvaiya, M) (Entered: 05/24/2011) |
| 05/24/2011 | 441 | NOTICE by Lifeworks Technology Group, LLC *Notice of Service of Initial Disclosures* (Atkinson, Bryan) (Entered: 05/24/2011) |
| 05/24/2011 | 442 | NOTICE by Dell, Inc., *Service of Initial Disclosures,* (Fulghum, Roger) (Entered: 05/24/2011) |
| 05/24/2011 | 443 | NOTICE by Auditek Corporation *Service of Initial Disclosures* (Lee, Jen-Feng) (Entered: 05/24/2011) |
| 05/24/2011 | 444 | ORDER granting 434 Motion for Extension of Time to Complete Discovery. Amazon shall have to 5-27-2011 to serve its Initial Disclosures. Signed by Judge Leonard Davis on 05/24/11. cc:attys 5-25-11 (mll, ) (Entered: 05/25/2011) |
| 05/24/2011 | 445 | ORDER granting 431 Stipulation of Dismissal, filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and defts Sears Brands LLC, Sears Roebuck and Company, Sears Holdings Corporation, and Kmart Corporation are dismissed without prejudice, with each party to bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 05/24/11. cc:attys 5-25-11(mll, ) (Entered: 05/25/2011) |
| 05/25/2011 | 446 | NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A |

| | | |
|---|---|---|
| | | Compusa, Tigerdirect, Inc. *Defendants COMPUSA.COM.S, NEW COMPUSA CORP.S, SYSTEMAX INC.S and TIGERDIRECT, INC.S Notice of Compliance* (Denenberg, David) (Entered: 05/25/2011) |
| 05/26/2011 | 447 | NOTICE by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Creative Labs, Inc.,, Hewlett-Packard Company, Lifeworks Technology Group, LLC, Target Corp. *of change of Firm Name and Address for W. Bryan Farney, Steven R. Daniels, and Bryan D. Atkinson* (Atkinson, Bryan) (Entered: 05/26/2011) |
| 05/26/2011 | 448 | NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *Defendants COMPUSA.COM.S, NEW COMPUSA CORP.S, SYSTEMAX INC.S, and TIGERDIRECT, INC.S Notice of Compliance* (Denenberg, David) (Entered: 05/26/2011) |
| 05/26/2011 | 449 | ORDER denying as moot 421 Motion for Extension of Time to Submit Agreed Docket Control Order and Discovery Order. Signed by Judge Leonard Davis on 05/26/11. cc:attys 5-27-11 (mll, ) (Entered: 05/27/2011) |
| 05/26/2011 | 450 | DISCOVERY ORDER. Signed by Judge Leonard Davis on 05/26/11. cc:attys 5-27-11(mll, ) (Entered: 05/27/2011) |
| 05/26/2011 | 451 | DOCKET CONTROL ORDER. Signed by Judge Leonard Davis on 05/26/11. cc:attys 5-27-11(mll, ) (Entered: 05/27/2011) |
| 05/26/2011 | | Deadlines set per 451 Docket Control Order: Amended Pleadings due by 11/9/2011; Respond to Amended Pleadings due by 11-23-2011. Discovery due by 6/25/2012. Expert Witness List due by 4/23/2012; Rebuttal expert witnesses designated by 5-23-2012. Identify trial witnesses by 7/25/2012; Rebuttal Trial Witnesses identified by 8-08-2012. Joinder of Parties due by 7/23/2011, for defts. Jury instructions due by 10/2/2012. Mediation Completion due by 2/2/2012. **James Knowles is appointed as Mediator in this cause.** Dispositive Motions due by 8/8/2012. Response to Dispositive Motions due 9-10-2012. Proposed Pretrial Order due by 10/2/2012. Motions in Limine due 12-7-2012; Responses to Motions in Limine due 12-10-2012. Jury Selection set for 1/7/2013 09:00AM before Judge Leonard Davis. Jury Trial set for 1/14/2013 09:00 AM before Judge Leonard Davis. Markman Hearing set for 2/9/2012 09:00 AM before Judge Leonard Davis. Pretrial Conference set for 12/18/2012 09:00 AM before Judge Leonard Davis. Estimated length of trial is 5 days. (mll, ) (Entered: 05/31/2011) |
| 05/27/2011 | 452 | NOTICE of Discovery Disclosure by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Yarbrough, Herbert) (Entered: 05/27/2011) |
| 05/27/2011 | 453 | NOTICE by Digital Innovations, LLC *of Compliance* (Leung, Gary) (Entered: 05/27/2011) |
| 05/27/2011 | 454 | NOTICE by Overstock.com, Inc. re 451 Order *Notice of Compliance* (Barr, John) (Entered: 05/27/2011) |
| 05/27/2011 | 455 | NOTICE of Discovery Disclosure by Amazon.com, Inc. (Craft, Roger) (Entered: |

| | | 05/27/2011) |
|---|---|---|
| 05/27/2011 | 456 | NOTICE of Discovery Disclosure by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc. (Craft, Roger) (Entered: 05/27/2011) |
| 05/27/2011 | 457 | NOTICE by Wal-Mart Stores, Inc. *of Compliance of Service of Damages Disclosures* (DeGyarfas, Victor) (Entered: 05/27/2011) |
| 05/27/2011 | 458 | NOTICE by Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC *of Compliance of Damages Disclosures* (Sarvaiya, M) (Entered: 05/27/2011) |
| 05/27/2011 | 459 | NOTICE by Amazon.com, Inc. *of Service of Initial Disclosures* (Craft, Roger) (Entered: 05/27/2011) |
| 06/01/2011 | 460 | NOTICE by Dell, Inc., *Service of Damages Disclosures* (Fulghum, Roger) (Entered: 06/01/2011) |
| 06/01/2011 | 461 | NOTICE of Discovery Disclosure by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Creative Labs, Inc.,, Fry's Electronics Inc, Hewlett-Packard Company, Lifeworks Technology Group, LLC, Office Depot, Inc., Target Corp. *re Damages Disclosures* (Atkinson, Bryan) (Entered: 06/01/2011) |
| 06/01/2011 | 462 | NOTICE by Auditek Corporation *of Damages Disclosure* (Lee, Jen-Feng) (Entered: 06/01/2011) |
| 06/10/2011 | 463 | NOTICE of Attorney Appearance by Walter Wayne Lackey, Jr on behalf of Amazon.com, Inc. (Lackey, Walter) (Entered: 06/10/2011) |
| 06/14/2011 | 464 | NOTICE of Attorney Appearance by Allen Franklin Gardner on behalf of J&R ELECTRONICS INC. D/B/A J&R (Gardner, Allen) (Entered: 06/14/2011) |
| 06/22/2011 | 465 | Unopposed MOTION for Extension of Time to File *Initial Disclosures* by J&R ELECTRONICS INC. D/B/A J&R. (Attachments: # 1 Text of Proposed Order) (Jones, Michael) (Entered: 06/22/2011) |
| 06/24/2011 | 466 | ORDER granting 465 Motion for Extension of Time. Deft J&R Electronics Inc shall have to 6-21-2011 to serve its Initial Disclosures. Signed by Judge Leonard Davis on 06/24/11. cc:attys 6-27-11 (mll, ) (Entered: 06/27/2011) |
| 07/26/2011 | 467 | **\*\*\*DOCUMENT FILED IN ERROR. PLEASE DISREGARD.\*\*\*** Unopposed MOTION to Withdraw as Attorney *Phillip Philbin*, Unopposed MOTION to Substitute Attorney *Bradley W. Hoover* by Digital Innovations, LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Hoover, Bradley) Modified on 7/27/2011 (mjc, ). (Entered: 07/26/2011) |
| 07/27/2011 | 468 | Unopposed MOTION to Withdraw as Attorney *Phillip Philbin*, Unopposed MOTION to Substitute Attorney *Bradley W. Hoover* by Digital Innovations, LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Hoover, Bradley) (Entered: 07/27/2011) |

| | | |
|---|---|---|
| 07/27/2011 | | NOTICE of Deficiency regarding the 467 Unopposed Motion to Withdraw submitted by Digital Innovations, LLC. Document is not in searchable pdf format. Correction should be made by one business day. (mjc, ) (Entered: 07/27/2011) |
| 07/28/2011 | 469 | AMENDED COMPLAINT *(Second)* against Amazon.com, Inc., Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, CONNS, INC. D/B/A CONNS, Cobra Digital, LLC, Compusa.com, Inc., Creative Labs, Inc.,, Creative Technology Ltd, Dell, Inc.,, Digital Innovations, LLC, Eastman Kodak Company, Ezonics Corporation D/B/A Ezonics Corporation USA D/B/A Ezonics, Fry's Electronics Inc, Gear Head, LLC, General Electric Company, Hewlett-Packard Company, Intcomex, Inc., J&R ELECTRONICS INC. D/B/A J&R, Jasco Products Company LLC D/B/A Jasco Products Company D/B/A Jasco, Jwin Electronics Corporation, KMart Corporation, KOHLS CORPORATION D/B/A KOHL'S, Klip Extreme LLC, Kohl's Illinois, Inc., Lifeworks Technology Group, LLC, Macally Peripherals, Inc. D/B/A Macally U.S.A., Mace Group, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Overstock.com, Inc., Phoebe Micro Inc., Prolynkz, LLC, Radioshack Corporation, Rosewill Inc., SDI Technologies, Inc., SOLID YEAR CO., LTD., Sakar International, Inc., Sakar, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company, Software Brokers of America Inc. DBA Intcomex Corporation D/B/A Intcomex, Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Trippe Manufacturing Company D/B/A Tripp Lite, WALGREEN CO. D/B/A WALGREENS, Wal-Mart Stores, Inc., filed by AdjustaCam LLC.(Edmonds, John) (Entered: 07/28/2011) |
| 07/29/2011 | 470 | ORDER granting 468 Motion to Withdraw as Attorney. Attorney Phillip Brett Philbin terminated; granting 468 Motion to Substitute Attorney, and substituting Bradley Hoover as attorney for Digital Innovations LLC. Signed by Judge Leonard Davis on 07/29/11. cc:attys 7-29-11 (mll, ) (Entered: 07/29/2011) |
| 07/29/2011 | 471 | Unopposed MOTION to Seal Document by Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, J&R ELECTRONICS INC. D/B/A J&R, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Office Depot, Inc., Overstock.com, Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc.. (Attachments: # 1 Text of Proposed Order)(Daniels, Steven) (Additional attachment(s) added on 8/1/2011: # 2 Certificate of Service) (mjc, ). (Entered: 07/29/2011) |
| 07/29/2011 | 472 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. SEALED BY COURT.*** <br> Opposed MOTION for Summary Judgment by Auditek Corporation, Baltic Latvian |

|  |  | Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, J&R ELECTRONICS INC. D/B/A J&R, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Office Depot, Inc., Overstock.com, Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc.. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Daniels, Steven) Modified on 8/1/2011 (mjc, ). (Entered: 07/29/2011) |
|---|---|---|
| 08/01/2011 | 473 | Opposed SEALED MOTION *for Partial Summary Judgment* by Auditek Corporation, Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Blue Microphones, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, J&R ELECTRONICS INC. D/B/A J&R, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Office Depot, Inc., Overstock.com, Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc.. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order) (Daniels, Steven) (Additional attachment(s) added on 8/4/2011: # 3 Certificate of Authorization to File Under Seal) (mjc, ). (Entered: 08/01/2011) |
| 08/01/2011 | 474 | **\*\*\*NOTICE OF DOCKET CORRECTION. ATTACHED CERTIFICATE OF SERVICE TO Document # 471 Motion to Seal. PLEASE NOTE.\*\*\*** (mjc, ) (Entered: 08/01/2011) |
| 08/03/2011 | 475 | ANSWER to 469 Amended Complaint,,,,,, *Defendant Sakar International, Inc.'s Answer to Second Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand*, COUNTERCLAIM against AdjustaCam LLC by Sakar International, Inc..(Sutton, Ezra) (Entered: 08/03/2011) |
| 08/04/2011 | 476 | NOTICE by Dell, Inc., re 473 Opposed SEALED MOTION *for Partial Summary Judgment - Notice of Joinder in Motion* (Attachments: # 1 Exhibit 1 - Declaration of Anthony Peterman, # 2 Text of Proposed Order Granting Motion as to Dell Inc.) (Fulghum, Roger) (Entered: 08/04/2011) |
| 08/04/2011 | 477 | NOTICE of Attorney Appearance by Daniel Alan Noteware, Jr on behalf of J&R ELECTRONICS INC. D/B/A J&R (Noteware, Daniel) (Entered: 08/04/2011) |
| 08/04/2011 | 478 | NOTICE of Attorney Appearance by Daniel Alan Noteware, Jr on behalf of Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC (Noteware, Daniel) (Entered: 08/04/2011) |
| 08/04/2011 | 479 | **\*\*\*NOTICE OF DOCKET CORRECTION. ATTACHED CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL TO Document # 473 Sealed Motion. PLEASE NOTE.\*\*\*** (mjc, ) (Entered: 08/04/2011) |
| 08/08/2011 | 480 | MOTION to Seal Document *Declaration of Defendants Newegg Inc. and Rosewill* |

| | | |
|---|---|---|
| | | *Inc.* by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Attachments: # 1 Text of Proposed Order)(Cuneo, Christopher) (Additional attachment(s) added on 8/9/2011: # 2 Certificate of Service) (mjc, ). (Entered: 08/08/2011) |
| 08/08/2011 | 481 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. ATTACHED CERTIFICATE OF SERVICE TO DOCKET ENTRY 480 .*** NOTICE by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. re 480 MOTION to Seal Document *Declaration of Defendants Newegg Inc. and Rosewill Inc. Certificate of Service* (Cuneo, Christopher) Modified on 8/9/2011 (mjc, ). (Entered: 08/08/2011) |
| 08/08/2011 | 482 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** MOTION for Joinder *in Defendants Motion for Partial Summary Judgment that AdjustaCam is Not Entitled to Pre-Suit Damages Pursuant to 35 U.S.C. § 287(a)* by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Cuneo, Christopher) Modified on 8/8/2011 (mjc, ). (Entered: 08/08/2011) |
| 08/08/2011 | | ***FILED IN ERROR. Document # 482 Motion for Joinder. PLEASE IGNORE.*** (mjc, ) (Entered: 08/08/2011) |
| 08/08/2011 | 483 | NOTICE by Newegg, Inc., Newegg.com, Inc. re 473 Opposed SEALED MOTION *for Partial Summary Judgment Notice of Joinder* (Cuneo, Christopher) (Entered: 08/08/2011) |
| 08/08/2011 | 484 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** SEALED Declaration of Defendants Newegg Inc. and Rosewill Inc. in support of 483 Notice of Joinder. (Cuneo, Christopher) Modified on 8/9/2011 (mjc, ). (Entered: 08/08/2011) |
| 08/09/2011 | | NOTICE of Deficiency regarding the 484 Sealed Declaration submitted by Newegg, Inc., Rosewill Inc. Document does not contain a Certificate of Authorization to File Under Seal or a Certificate of Service. Correction should be made by one business day. (mjc, ) (Entered: 08/09/2011) |
| 08/09/2011 | 485 | AMENDED COMPLAINT *(THIRD)* against All Defendants, filed by AdjustaCam LLC.(Edmonds, John) (Entered: 08/09/2011) |
| 08/10/2011 | 486 | NOTICE by Digital Innovations, LLC *Notice of Request for Termination of Electronic Notices* (Philbin, Phillip) (Entered: 08/10/2011) |
| 08/10/2011 | 487 | ORDER granting 471 Motion to Seal Document. Signed by Judge Leonard Davis on 08/10/11. cc:attys 8-10-11 (mll, ) (Entered: 08/10/2011) |
| 08/10/2011 | 488 | SEALED Declaration of Defendants Newegg Inc. and Rosewill Inc. in support of 483 Notice of Joinder. (Cuneo, Christopher) (Entered: 08/10/2011) |
| 08/17/2011 | 489 | RESPONSE in Opposition re 473 Opposed SEALED MOTION *for Partial Summary Judgment and re Motions/Notices of Joinder at Dkt Nos. 476 and 483 filed by AdjustaCam LLC.* (Attachments: # 1 Text of Proposed Order, # 2 Text of |

| | | |
|---|---|---|
| | | Proposed Order)(Edmonds, John) (Entered: 08/17/2011) |
| 08/18/2011 | 490 | STIPULATION of Dismissal *of Defendants Baltic Latvian Universal Electronics,LLC and Blue Microphones, LLC* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 08/18/2011) |
| 08/19/2011 | 491 | STIPULATION of Dismissal *of Defendant, RadioShack Corporation* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order) (Edmonds, John) (Entered: 08/19/2011) |
| 08/22/2011 | 492 | ORDER granting 490 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and defts Baltic Latvian Universal Electronics LLC and Blue Microphones LLC are dismissed with prejudice. Each party shall bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 08/22/11. cc:attys 8-23-11(mll, ) (Entered: 08/23/2011) |
| 08/22/2011 | 493 | ORDER granting 491 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff and defendant, RadioShack Corporation, are hereby dismissed without prejudice until 10-04-2011, at which time, unless earlier withdrawn, the dismissal shall become WITH PREJUDICE. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 08/22/11. cc:attys 8-23-11 (mll, ) (Entered: 08/23/2011) |
| 08/26/2011 | 494 | *Defendants COMPUSA.com, Inc.s, New COMPUSA Corp.s, Systemax Inc.s and Tigerdirect, Inc.s* ANSWER to 485 Amended Complaint *(Third)* by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc.. (Denenberg, David) (Entered: 08/26/2011) |
| 08/26/2011 | 495 | *Defendants Newegg Inc. and Newegg.com Inc.'s* ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by Newegg, Inc., Newegg.com, Inc..(Cuneo, Christopher) (Entered: 08/26/2011) |
| 08/26/2011 | 496 | *Defendant Rosewill Inc.'s* ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by Rosewill Inc..(Cuneo, Christopher) (Entered: 08/26/2011) |
| 08/26/2011 | 497 | ANSWER to 485 Amended Complaint *[THIRD]*, COUNTERCLAIM against AdjustaCam LLC by Wal-Mart Stores, Inc..(DeGyarfas, Victor) (Entered: 08/26/2011) |
| 08/26/2011 | 498 | *Second* ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by Overstock.com, Inc..(Yates, John) (Entered: 08/26/2011) |
| 08/29/2011 | 499 | ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by Digital Innovations, LLC.(Leung, Gary) (Entered: 08/29/2011) |
| 08/29/2011 | 500 | *Dell Inc.'s* ANSWER to 485 Amended Complaint *Third Amended Complaint*, COUNTERCLAIM *for Patent Infringement* against AdjustaCam LLC by Dell, Inc.,. (Fulghum, Roger) (Entered: 08/29/2011) |
| 08/29/2011 | 501 | ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC |

by Auditek Corporation.(Lee, Jen-Feng) (Entered: 08/29/2011)

| | | |
|---|---|---|
| 08/29/2011 | 502 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD. DUPLICATE ENTRY.*** <br><br> ANSWER to Complaint *Dell Inc.'s Answer to Adjustacam LLC's Third Amended Complaint and*, COUNTERCLAIM against AdjustaCam LLC by Dell, Inc.,. (Fulghum, Roger) Modified on 8/29/2011 (mjc, ). (Entered: 08/29/2011) |
| 08/29/2011 | 503 | ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by Amazon.com, Inc..(Findlay, Eric) (Entered: 08/29/2011) |
| 08/29/2011 | 504 | *Defendant's* ANSWER to 485 Amended Complaint by J&R ELECTRONICS INC. D/B/A J&R.(Jones, Michael) (Entered: 08/29/2011) |
| 08/29/2011 | 505 | ANSWER to 485 Amended Complaint by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC.(Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 506 | ANSWER to 485 Amended Complaint by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC.(Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 507 | ANSWER to 485 Amended Complaint by Creative Labs, Inc.,.(Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 508 | ANSWER to 485 Amended Complaint by Fry's Electronics Inc.(Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 509 | ANSWER to 485 Amended Complaint by Hewlett-Packard Company.(Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 510 | ANSWER to 485 Amended Complaint by Micro Electronics, Inc. DBA Micro Center. (Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 511 | ANSWER to 485 Amended Complaint by Office Depot, Inc..(Daniels, Steven) (Entered: 08/29/2011) |
| 08/29/2011 | 512 | ANSWER to 485 Amended Complaint by Target Corp..(Daniels, Steven) (Entered: 08/29/2011) |
| 08/30/2011 | 513 | *Defendant, Gear Head, LLC's* ANSWER to 485 Amended Complaint *[Third] for Patent Infringement* by Gear Head, LLC.(Davidson, Patricia) (Entered: 08/30/2011) |
| 08/30/2011 | 514 | ORDER granting 480 Motion to Seal Document. Signed by Judge Leonard Davis on 8/30/2011. (gsg) (Entered: 08/30/2011) |
| 08/30/2011 | 515 | ORDER denying as moot 276 Motion to Dismiss. Signed by Judge Leonard Davis on 08/30/11. cc:attys 8-31-11 (mll, ) (Entered: 08/31/2011) |
| 09/01/2011 | 516 | NOTICE by Baltic Latvian Universal Electronics, LLC D/B/A Blue Microphones, LLC D/B/A Blue Microphone, Blue Microphones, LLC *Requesting Termination of Electronic Notices* (Sarvaiya, M) (Entered: 09/01/2011) |
| 09/08/2011 | 517 | ORDER denying as moot 147 Motion to Dismiss; denying as moot 164 Motion to |

| | | Dismiss. Signed by Judge Leonard Davis on 09/08/11. cc:attys 9-08-11 (mll, ) (Entered: 09/08/2011) |
|---|---|---|
| 09/09/2011 | 518 | NOTICE by CDW, LLC re 473 Opposed SEALED MOTION *for Partial Summary Judgment - Notice of Joinder in Motion* (Attachments: # 1 Exhibit 1 - Declaration of CDW LLC, # 2 Text of Proposed Order Granting Motion as to CDW LLC)(Daniels, Steven) (Entered: 09/09/2011) |
| 09/13/2011 | 519 | STIPULATION of Dismissal *of Defendant Lifeworks Technology Group, LLC* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order) (Edmonds, John) (Entered: 09/13/2011) |
| 09/14/2011 | 520 | *Defendant Sakar International, Inc.'s Answer to the Third Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by Sakar International, Inc..(Sutton, Ezra) (Entered: 09/14/2011) |
| 09/14/2011 | 521 | *Defendant Kohl's Illinois, Inc. & Kohls Corporation's Answer to Third Amended Complaint, Affirmative Defenses, Counterclaims, and Jury Demand* ANSWER to 485 Amended Complaint, COUNTERCLAIM against AdjustaCam LLC by KOHLS CORPORATION D/B/A KOHL'S.(Sutton, Ezra) (Entered: 09/14/2011) |
| 09/15/2011 | 522 | ORDER granting 519 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and deft Lifeworks Technology Group, LLC are dismissed with prejudice, with each party to bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 09/15/11. cc:attys 9-15-11(mll, ) (Entered: 09/15/2011) |
| 09/19/2011 | 523 | ANSWER to 503 Answer to Amended Complaint, Counterclaim *of Defendant Amazon.com, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 524 | ANSWER to 501 Answer to Amended Complaint, Counterclaim *of Defendant Auditek Corp.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 525 | ANSWER to Complaint */Counterclaim of Defendants CompUSA.com, Inc., New CompUSA Corp., TigerDirect, Inc. and Systemax, Inc.* by AdjustaCam LLC. (Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 526 | ANSWER to 500 Answer to Amended Complaint, Counterclaim *of Defendant Dell, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 527 | ANSWER to 499 Answer to Amended Complaint, Counterclaim *of Defendant Digital Innovations, LLC* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 528 | ANSWER to 521 Answer to Amended Complaint, Counterclaim,, *of Defendants Kohls Illinois, Inc. and Kohls Corporation* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 529 | ANSWER to 495 Answer to Amended Complaint, Counterclaim *of Defendants Newegg Inc. and Newegg.com Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: |

| | | 09/19/2011 |
|---|---|---|
| 09/19/2011 | 530 | ANSWER to 498 Answer to Amended Complaint, Counterclaim *of Defendant Overstock.com, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 531 | ANSWER to 496 Answer to Amended Complaint, Counterclaim *of Defendant Rosewill, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 532 | ANSWER to 520 Answer to Amended Complaint, Counterclaim,, *of Defendant Sakar International, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/19/2011 | 533 | ANSWER to 497 Answer to Amended Complaint, Counterclaim *of Defendant Wal-Mart Stores, Inc.* by AdjustaCam LLC.(Edmonds, John) (Entered: 09/19/2011) |
| 09/20/2011 | 534 | STIPULATION of Dismissal *of Defendant Overstock.com, Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 09/20/2011) |
| 09/21/2011 | 535 | ORDER granting 534 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims in this action between pltf and deft Overstock.com Inc are dismissed with prejudice, with each party to bear their own costs, expenses, and attorney's fees. Signed by Judge Leonard Davis on 09/21/11. cc:attys 9-21-11(mll, ) (Entered: 09/21/2011) |
| 09/30/2011 | 536 | RESPONSE in Opposition re 473 Opposed SEALED MOTION *for Partial Summary Judgment - Defendant CDW's Notice of Joinder filed by AdjustaCam LLC.* (Attachments: # 1 Text of Proposed Order Order No. 1, # 2 Text of Proposed Order Order No. 2)(Edmonds, John) (Entered: 09/30/2011) |
| 10/04/2011 | 537 | Unopposed MOTION to Withdraw as Attorney by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 10/04/2011) |
| 10/04/2011 | 538 | ORDER that parties meet and confer and resubmit an agreed Docket Control Order incorporating letter brief deadlines. Signed by Judge Leonard Davis on 10/04/11. cc:attys 10-04-11(mll, ) (Entered: 10/04/2011) |
| 10/11/2011 | 539 | ORDER granting 537 Motion to Withdraw as Attorney. Attorney Erick Scott Robinson terminated. Signed by Judge Leonard Davis on 10/11/11. cc:attys 10-11-11 (mll, ) (Entered: 10/11/2011) |
| 10/28/2011 | 540 | NOTICE by J&R ELECTRONICS INC. D/B/A J&R re 451 Order *OF COMPLIANCE REGARDING PRIVILEGE LOG* (Gardner, Allen) (Entered: 10/28/2011) |
| 11/01/2011 | 541 | NOTICE by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. *Notice of Change of Firm Name* (Cuneo, Christopher) (Entered: 11/01/2011) |
| 11/01/2011 | 542 | NOTICE by Wal-Mart Stores, Inc. *of Compliance Regarding Privilege Log* (DeGyarfas, Victor) (Entered: 11/01/2011) |
| 11/02/2011 | 543 | NOTICE by Creative Labs, Inc., *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |

| 11/02/2011 | 544 | NOTICE by Hewlett-Packard Company *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
|---|---|---|
| 11/02/2011 | 545 | NOTICE by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
| 11/02/2011 | 546 | NOTICE by Target Corp. *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
| 11/02/2011 | 547 | NOTICE by Office Depot, Inc. *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
| 11/02/2011 | 548 | NOTICE by Micro Electronics, Inc. DBA Micro Center *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
| 11/02/2011 | 549 | NOTICE by CDW, LLC *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
| 11/02/2011 | 550 | NOTICE by Fry's Electronics Inc *of Compliance Regarding Privilege Log* (Daniels, Steven) (Entered: 11/02/2011) |
| 11/02/2011 | 551 | NOTICE by Amazon.com, Inc. *of Compliance Regarding Privilege Log* (Craft, Roger) (Entered: 11/02/2011) |
| 11/02/2011 | 552 | NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *Notice Of Compliance Regarding Privliege Log For Defendants COMPUSA.COM, INC., NEW COMPUSA CORP., SYSTEMAX INC., and TIGERDIRECT, INC.* (Denenberg, David) (Entered: 11/02/2011) |
| 11/10/2011 | 553 | REPORT of Mediation by James W Knowles. Mediation result: Partial Settlement / Suspended(Knowles, James) (Entered: 11/10/2011) |
| 11/11/2011 | 554 | Unopposed MOTION for Extension of Time to File */Comply with P.R. 4-3* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order) (Edmonds, John) (Entered: 11/11/2011) |
| 11/15/2011 | 555 | ORDER granting 554 Motion for Extension of Time to Comply with P.R. 4-3 from November 11, 2011 to November 16, 2011. Signed by Judge Leonard Davis on 11/14/11. (mjc, ) (Entered: 11/15/2011) |
| 11/16/2011 | 556 | NOTICE of Attorney Appearance by Dana M Herberholz on behalf of Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Herberholz, Dana) (Entered: 11/16/2011) |
| 11/16/2011 | 557 | CLAIM CONSTRUCTION BRIEF filed by AdjustaCam LLC. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Edmonds, John) (Entered: 11/16/2011) |
| 11/28/2011 | 558 | STIPULATION of Dismissal *of Defendant Creative Labs, Inc.,* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 11/28/2011) |
| 11/29/2011 | 560 | ORDER granting 558 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Creative Labs, Inc., |

| | | |
|---|---|---|
| | | are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 11/29/11. cc:attys 11-30-11(mll, ) (Entered: 11/30/2011) |
| 11/30/2011 | 559 | STIPULATION of Dismissal *of Defendants MACE GROUP, Inc and MACALLY PERIPHERALS, INC. d/b/a MACALLY U.S.A.,* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 11/30/2011) |
| 12/01/2011 | 561 | STIPULATION of Dismissal *of Defendant Dell, Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 12/01/2011) |
| 12/01/2011 | 562 | ORDER granting 559 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, MACE GROUP, Inc and MACALLY PERIPHERALS, INC. d/b/a MACALLY U.S.A., are hereby dismissed without prejudice until 7-07-2012, at which time, unless earlier withdrawn, the dismissal shall become with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 12/01/11. cc:attys 12-01-11(mll, ) (Entered: 12/01/2011) |
| 12/05/2011 | 563 | ORDER granting 561 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Dell, Inc., are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 12/05/11. cc:attys 12-06-11(mll, ) (Entered: 12/06/2011) |
| 12/14/2011 | 564 | NOTICE by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Fry's Electronics Inc, Hewlett-Packard Company, Office Depot, Inc., Target Corp. *re: Technical Tutorial* (Atkinson, Bryan) (Entered: 12/14/2011) |
| 12/14/2011 | 565 | NOTICE by Wal-Mart Stores, Inc. *re Technology Tutorial* (DeGyarfas, Victor) (Entered: 12/14/2011) |
| 12/14/2011 | 566 | NOTICE by AdjustaCam LLC *(MARKMAN TUTORIAL)* (Edmonds, John) (Entered: 12/14/2011) |
| 12/15/2011 | 567 | NOTICE by Amazon.com, Inc. *of Joinder Regarding Technical Tutorial* (Craft, Roger) (Entered: 12/15/2011) |
| 12/15/2011 | 568 | NOTICE by Digital Innovations, LLC *of Joinder Regarding Technical Tutorial* (Leung, Gary) (Entered: 12/15/2011) |
| 12/15/2011 | 569 | NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *Defendants' Notice of Joinder Regarding Technical Tutorial* (Denenberg, David) (Entered: 12/15/2011) |
| 12/15/2011 | 570 | NOTICE by J&R ELECTRONICS INC. D/B/A J&R re 564 Notice (Other), Notice (Other) *of Joinder regarding Technical Tutorial* (Gardner, Allen) (Entered: 12/15/2011) |

| 12/15/2011 | 571 | NOTICE by Compusa.com, Inc., New Compusa Corporation, Systemax, Inc. D/B/A Compusa, Tigerdirect, Inc. *Defendants' Notice of Compliance* (Denenberg, David) (Entered: 12/15/2011) |
|------------|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 12/15/2011 | 572 | NOTICE by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. *of Joinder Regarding Technical Tutorial* (Yarbrough, Herbert) (Entered: 12/15/2011) |
| 12/16/2011 | 573 | Unopposed MOTION for Extension of Time to File *its opening brief and any evidence supporting its claim construction* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 12/16/2011) |
| 12/19/2011 | 574 | ORDER granting 573 Motion for Extension of Time. Plaintiffs deadline to file its opening brief and any evidence supporting its claim construction is extended to 12-19-2011. Signed by Judge Leonard Davis on 12/19/11. cc:attys 12-19-11 (mll, ) (Entered: 12/19/2011) |
| 12/19/2011 | 575 | CLAIM CONSTRUCTION BRIEF filed by AdjustaCam LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Edmonds, John) (Additional attachment(s) added on 12/21/2011: # 5 Exhibit 1 Searchable) (mjc, ). (Entered: 12/19/2011) |
| 12/22/2011 | 576 | ORDER that by 1-02-2012, parties are to meet and confer and submit: (1) an agreed Docket Control Order incorporating letter brief deadlines and (2)a proposed technical advisor or a statement that they have failed to reach agreement as to any potential technical advisor. Signed by Judge Leonard Davis on 12/22/11. cc:attys 12-22-11(mll, ) (Entered: 12/22/2011) |
| 12/23/2011 | 577 | ***DOCUMENT FILED IN ERROR. PLEASE DISREGARD.*** NOTICE by Gear Head, LLC *Defendant Gear Head, LLC's Notice of Joinder Regarding Technical Tutorial* (Davidson, Patricia) Modified on 12/27/2011 (mjc, ). (Entered: 12/23/2011) |
| 12/27/2011 |     | NOTICE of Deficiency regarding the 577 Notice submitted by Gear Head, LLC. Document does not contain a Certificate of Service. Correction should be made by one business day. (mjc, ) (Entered: 12/27/2011) |
| 12/27/2011 | 578 | NOTICE by Gear Head, LLC *of Joinder Regarding Technical Tutorial* (Davidson, Patricia) (Entered: 12/27/2011) |
| 01/03/2012 | 579 | Joint MOTION FOR DISMISSAL WITH PREJUDICE by AdjustaCam LLC, J&R ELECTRONICS INC. D/B/A J&R. (Attachments: # 1 Text of Proposed Order) (Gardner, Allen) (Entered: 01/03/2012) |
| 01/03/2012 | 580 | NOTICE of Attorney Appearance by John N Zarian on behalf of Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Zarian, John) (Entered: 01/03/2012) |
| 01/03/2012 | 581 | NOTICE by Newegg, Inc. re 451 Order *Notice of Compliance Regarding Privilege Log* (Herberholz, Dana) (Entered: 01/03/2012) |

| 01/03/2012 | 582 | NOTICE by Newegg.com, Inc. re 451 Order *Notice of Compliance Regarding Privilege Log* (Herberholz, Dana) (Entered: 01/03/2012) |
| 01/03/2012 | 583 | NOTICE by Rosewill Inc. re 451 Order *Notice of Compliance Regarding Privilege Log* (Herberholz, Dana) (Entered: 01/03/2012) |
| 01/03/2012 | 584 | Joint MOTION to Amend/Correct *Docket Control Order (re Letter Briefs)* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 01/03/2012) |
| 01/03/2012 | 585 | NOTICE by AdjustaCam LLC *(re Technical Advisor)* (Edmonds, John) (Entered: 01/03/2012) |
| 01/04/2012 | 586 | ORDER granting 579 Motion to Dismiss. The claims and counterclaims between Adjustacam LLC and Defendant J&R Electronics Inc. are hereby dismissed with prejudice, and each party is to bear its own attorneys fees and costs. Signed by Judge Leonard Davis on 01/04/12. cc:attys 1-05-12 (mll, ) (Entered: 01/05/2012) |
| 01/05/2012 | 587 | Unopposed MOTION to Substitute Attorney by Digital Innovations, LLC. (Attachments: # 1 Text of Proposed Order)(Leung, Gary) (Additional attachment(s) added on 1/9/2012: # 2 Text of Proposed Order Corrected) (mjc, ). (Entered: 01/05/2012) |
| 01/05/2012 | 588 | AMENDED DOCKET CONTROL ORDER. Discovery due by 6/25/2012. Expert Witness List due by 4/23/2012; Rebuttal Expert Witnesses designated by 5-23-2012. Identify trial witnesses by 7/25/2012; Rebuttal Trial Witnesses identified by 8-08-2012. Jury instructions due by 10/2/2012. Dispositive Motions due by 8/8/2012; Response to Dispositive Motions due 9-10-2012. Proposed Pretrial Order due by 10/2/2012. Jury Selection set for 1/7/2013 09:00AM before Judge Leonard Davis. Jury Trial set for 1/14/2013 09:00 AM before Judge Leonard Davis. Markman Hearing set for 2/9/2012 09:00 AM before Judge Leonard Davis. Pretrial Conference set for 12/18/2012 09:00 AM before Judge Leonard Davis. Expected Length of Trial 5 days. Signed by Judge Leonard Davis on 01/04/12. cc:attys 1-05-12(mll, ) (Entered: 01/05/2012) |
| 01/05/2012 | 589 | Unopposed MOTION for Extension of Time to File *responsive brief and supporting evidence under P.R. 4-5(b)* by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc., Target Corp.. (Attachments: # 1 Text of Proposed Order) (Daniels, Steven) (Entered: 01/05/2012) |
| 01/06/2012 | 590 | ORDER granting 589 Motion for Extension of Time. Defendants deadline to file their responsive brief and supporting evidence is extended to 1-17-2012. Signed by Judge Leonard Davis on 01/06/12. cc:attys 1-06-12 (mll, ) (Entered: 01/06/2012) |
| 01/09/2012 | 591 | NOTICE of Attorney Appearance by Bryan Donivan Atkinson on behalf of Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc., |

| | | |
|---|---|---|
| | | Target Corp. (Atkinson, Bryan) (Entered: 01/09/2012) |
| 01/09/2012 | 592 | NOTICE of Attorney Appearance by Jia-geng Lu on behalf of Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Fry's Electronics Inc, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center, Office Depot, Inc., Target Corp. (Lu, Jia-geng) (Entered: 01/09/2012) |
| 01/09/2012 | 593 | ORDER granting 587 Motion to Substitute Attorney. Added attorney Tamara Danielle Stiner Toomer for Digital Innovations, LLC. Attorney Bradley Wayne Hoover terminated. Signed by Judge Leonard Davis on 01/09/12. cc:attys 1-10-12 (mll, ) (Entered: 01/10/2012) |
| 01/17/2012 | 594 | NOTICE by CONNS, INC. D/B/A CONNS - *Request for Termination of Electronic Notices* (Heartfield, J) (Entered: 01/17/2012) |
| 01/17/2012 | 595 | CLAIM CONSTRUCTION BRIEF filed by Amazon.com, Inc., Auditek Corporation, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Wal-Mart Stores, Inc.. (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E) (Daniels, Steven) (Entered: 01/17/2012) |
| 01/18/2012 | 596 | NOTICE by Blue Microphones, LLC, J&R ELECTRONICS INC. D/B/A J&R *Request for Termination of Electronic Notices* (Gardner, Allen) (Entered: 01/18/2012) |
| 01/27/2012 | 597 | NOTICE by Amazon.com, Inc., Auditek Corporation, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Wal-Mart Stores, Inc. *Regarding Time for Markman Hearing* (Lu, Jia-geng) (Entered: 01/27/2012) |
| 01/28/2012 | 598 | NOTICE by AdjustaCam LLC *re Time Requested for Markman Hearing* (Edmonds, John) (Entered: 01/28/2012) |
| 01/30/2012 | 599 | ORDER referring this case for claim construction only to United States Magistrate Judge John D. Love for disposition. The undersigned will continue to oversee all other matters. Signed by Judge Leonard Davis on 01/30/12. cc:attys 1-30-12(mll, ) (Entered: 01/30/2012) |

| 01/31/2012 | 600 | Joint MOTION *to request an extension of the Courts mediation deadline* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order) (Edmonds, John) (Entered: 01/31/2012) |
|---|---|---|
| 01/31/2012 | 601 | REPLY to 595 Claim Construction Brief,,, *filed by AdjustaCam LLC.* (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 01/31/2012) |
| 02/01/2012 | 602 | ORDER granting 600 Motion for Extension of Time. The mediation deadline for this case is extended to 3-06-2012. Signed by Judge Leonard Davis on 02/01/12. cc:attys 2-01-12 (mll, ) (Entered: 02/01/2012) |
| 02/02/2012 | 603 | NOTICE by KMart Corporation, Overstock.com, Inc., Sears Brands, LLC, Sears Holdings Corporation D/B/A Sears, Sears, Roebuck and Company *of Request for Termination of Electronic Notices* (Barr, John) (Entered: 02/02/2012) |
| 02/02/2012 | 604 | JOINT CLAIM CONSTRUCTION CHART filed by AdjustaCam LLC. (Attachments: # 1 Exhibit Chart)(Edmonds, John) (Entered: 02/02/2012) |
| 02/08/2012 | 605 | NOTICE by Digital Innovations, LLC *of Joinder Regarding Claim Construction Hearing* (Leung, Gary) (Entered: 02/08/2012) |
| 02/08/2012 | 606 | NOTICE by KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Sakar International, Inc. *NOTICE OF JOINDER REGARDING CLAIM CONSTRUCTION HEARING* (Sutton, Ezra) (Entered: 02/08/2012) |
| 02/08/2012 | 607 | NOTICE by Auditek Corporation *OF JOINDER RE CLAIM CONSTRUCTION* (Lee, Jen-Feng) (Entered: 02/08/2012) |
| 02/08/2012 | 608 | Opposed MOTION for Extension of Time to File *Reply* by AdjustaCam LLC. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Edmonds, John) (Entered: 02/09/2012) |
| 02/09/2012 | 609 | Minute Entry for proceedings held before Magistrate Judge John D. Love: Markman Hearing held on 2/9/2012. (Court Reporter Shelly Holmes) (Attachments: # 1 Attorney Sign-In Sheet) (mjm) (Entered: 02/10/2012) |
| 02/15/2012 | 610 | RESPONSE to Motion re 608 Opposed MOTION for Extension of Time to File *Reply filed by Auditek Corporation, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Compusa.com, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc. D/B/A Compusa, Target Corp., Tigerdirect, Inc., Wal-Mart Stores, Inc..* (Atkinson, Bryan) (Additional attachment(s) added on 2/16/2012: # 1 Text of Proposed Order) (mjc, ). (Entered: 02/15/2012) |
| 02/28/2012 | 611 | NOTICE of Attorney Appearance by Charles Van Cleef on behalf of AdjustaCam LLC (Van Cleef, Charles) (Entered: 02/28/2012) |

| 03/01/2012 | 612 | NOTICE by AdjustaCam LLC *of Change of Firm Name* (Spangler, Andrew) (Entered: 03/01/2012) |
|---|---|---|
| 03/02/2012 | 613 | Joint MOTION to Dismiss *Target Corporation* by AdjustaCam LLC, Target Corp.. (Attachments: # 1 Text of Proposed Order)(Daniels, Steven) (Entered: 03/02/2012) |
| 03/02/2012 | 614 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of CLAIM CONSTRUCTION HEARING held on 2/9/12 before Judge John D. Love. Court Reporter/Transcriber: Shelly Holmes, CSR,Telephone number: (903) 593-3213. (98 Pages)<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/26/2012. Redacted Transcript Deadline set for 4/5/2012. Release of Transcript Restriction set for 6/4/2012. (tja, ) (Entered: 03/02/2012) |
| 03/05/2012 | 615 | ORDER granting 613 Motion to Dismiss. All claims and counterclaims asserted in this suit between plaintiff, and defendant Target Corporation are hereby dismissed WITHOUT PREJUDICE. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 03/05/12. cc:attys 3-05-12 (mll, ) (Entered: 03/05/2012) |
| 03/06/2012 | 616 | NOTICE of Attorney Appearance by Johnathan K. Yazdani on behalf of AdjustaCam LLC (Yazdani, Johnathan) (Entered: 03/06/2012) |
| 03/08/2012 | 617 | REPORT of Mediation by James W Knowles. Mediation result: Partial Settlements(Knowles, James) (Entered: 03/08/2012) |
| 03/21/2012 | 618 | STIPULATION of Dismissal *of Defendants CompUSA.com Inc., New CompUSA Corp., Systemax Inc.,and TigerDirect, Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Additional attachment(s) added on 3/22/2012: # 2 Corrected Proposed Order) (gsg, ). (Entered: 03/21/2012) |
| 03/22/2012 | 619 | NOTICE of Attorney Appearance by Laura Lindsay Chapman on behalf of Wal-Mart Stores, Inc. (Chapman, Laura) (Entered: 03/22/2012) |
| 03/22/2012 | 620 | ORDER granting 618 Stipulated Motion for Dismissal With Prejudice. It is ordered that all claims and counterclaims asserted in this suit between Plaintiff Adjustacam LLC and Defendants CompUSA.com, New CompUSA Corporation, Systemax Inc, and Tiger Direct Inc, are hereby dismissed with prejudice. All costs, expenses and attorney's fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 3/22/2012. (leh, ) (Entered: 03/22/2012) |

| 03/23/2012 | 621 | Joint MOTION To Amend Docket Control Order and For Extension Of Certain Deadlines by Newegg, Inc., Newegg.com, Inc.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 03/23/2012) |
| 03/26/2012 | 622 | REPORT of Mediation by James W Knowles. Mediation result: Settlement - Auditek(Knowles, James) (Entered: 03/26/2012) |
| 03/26/2012 | 623 | ORDER granting 621 Motion to Amend Docket Control Order and Extension of Certain Deadlines. Signed by Judge Leonard Davis on 03/26/12. cc:attys 3-26-12 (mll, ) (Entered: 03/26/2012) |
| 03/30/2012 | 624 | Unopposed MOTION for Protective Order by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Fry's Electronics Inc, Hewlett-Packard Company, Office Depot, Inc.. (Attachments: # 1 Text of Proposed Order)(Atkinson, Bryan) (Entered: 03/30/2012) |
| 04/02/2012 | 625 | AGREED PROTECTIVE ORDER. Signed by Judge Leonard Davis on 4/2/2012. (leh, ) (Entered: 04/02/2012) |
| 04/04/2012 | 626 | NOTICE of Attorney Appearance by Joshua Brooks Long on behalf of AdjustaCam LLC (Long, Joshua) (Entered: 04/04/2012) |
| 04/10/2012 | 627 | MEMORANDUM OPINION AND ORDER. The Court interprets the claim language in this case in the manner set forth in this Order. Signed by Magistrate Judge John D. Love on 04/10/12. cc:attys 4-10-12(mll, ) (Entered: 04/10/2012) |
| 04/23/2012 | 628 | STIPULATION of Dismissal *of Defendant, Amazon.com, Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 04/23/2012) |
| 04/24/2012 | 629 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by AdjustaCam LLC re 627 Order (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3(I), # 4 Exhibit 3(II), # 5 Text of Proposed Order)(Edmonds, John) (Entered: 04/24/2012) |
| 04/24/2012 | 630 | ORDER granting 628 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Amazon.com, Inc. are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 04/24/12. cc:attys 4-25-12(mll, ) (Entered: 04/25/2012) |
| 04/27/2012 | 631 | Unopposed MOTION to Substitute Attorney by Office Depot, Inc.. (Attachments: # 1 Text of Proposed Order)(Patel, Vishal) (Entered: 04/27/2012) |
| 04/27/2012 | 632 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Wal-Mart Stores, Inc. re 627 Order (Attachments: # 1 Affidavit B. Atkinson in Support |

| | | |
|---|---|---|
| | | of Objections, # 2 Exhibit A (United States Patent No. 5,855,343), # 3 Exhibit B (excerpts - Claim Construction Hearing), # 4 Exhibit C (Photographs), # 5 Text of Proposed Order)(Daniels, Steven) (Entered: 04/27/2012) |
| 04/30/2012 | 633 | ORDER granting 631 Motion to Substitute Counsel. Mirick, O'Connell, Demallie & Lougee, LLP and Thompson & Knight are substituted as attorneys of record for deft Office Depot. Signed by Judge Leonard Davis on 04/30/12. cc:attys 4-30-12 (mll, ) (Entered: 04/30/2012) |
| 05/07/2012 | 634 | Joint MOTION To Amend Docket Control Order and For Extension Of Certain Deadlines by AdjustaCam LLC, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC, Digital Innovations, LLC, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Target Corp., Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 05/07/2012) |
| 05/07/2012 | 635 | RESPONSE to 629 Appeal of Magistrate Judge Decision to District Court by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW, LLC, Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Wal-Mart Stores, Inc.. (Attachments: # 1 Exhibit A)(Daniels, Steven) (Additional attachment(s) added on 5/8/2012: # 2 Text of Proposed Order) (leh, ). (Entered: 05/07/2012) |
| 05/07/2012 | 636 | RESPONSE to 632 Appeal of Magistrate Judge Decision to District Court,,, by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit 1- Markman Order, # 3 Exhibit 2- 343 Patent, # 4 Exhibit 3- 343 file history- Part I, # 5 Exhibit 3- 343 file history- Part II)(Edmonds, John) (Entered: 05/07/2012) |
| 05/08/2012 | 637 | NOTICE of Attorney Appearance by George Walton Webb, III on behalf of Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Hewlett-Packard Company, Micro Electronics, Inc. DBA Micro Center (Webb, George) (Entered: 05/08/2012) |
| 05/08/2012 | 638 | ORDER granting 634 Motion to extend deadlines. Discovery Deadline reset to 8-06-2012. Expert Witnesses designated by 6-25-2012; Rebuttal Expert Witnesses designated by 7-25-2012. Signed by Judge Leonard Davis on 05/08/12. cc:attys 5-08-12 (mll, ) (Entered: 05/08/2012) |
| 05/08/2012 | 639 | Unopposed MOTION to Withdraw as Attorney and Substitute Counsel by Fry's Electronics Inc. (Attachments: # 1 Text of Proposed Order)(Daniels, Steven) (Entered: 05/08/2012) |
| 05/10/2012 | 640 | ORDER granting 639 Motion to Withdraw as Attorney. Attorney Jia-geng Lu; Bryan Donivan Atkinson and Steven Robert Daniels terminated as counsel for deft Fry's |

| | | |
|---|---|---|
| | | Electronics Inc. Signed by Judge Leonard Davis on 05/10/12. cc:attys 5-10-12 (mll, ) (Entered: 05/10/2012) |
| 05/16/2012 | 641 | NOTICE of Attorney Appearance by Herbert J Hammond on behalf of Micro Electronics, Inc. DBA Micro Center (Hammond, Herbert) (Entered: 05/16/2012) |
| 05/17/2012 | 642 | RESPONSE to 635 Response to Non-Motion,, *PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS OBJECTIONS TO THE MAGISTRATES ORDER ON CLAIM CONSTRUCTION* by AdjustaCam LLC. (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 05/17/2012) |
| 05/18/2012 | 643 | NOTICE by Systemax, Inc. D/B/A Compusa *Request to Terminate Electronic Notice* (Denenberg, David) (Entered: 05/18/2012) |
| 05/18/2012 | 644 | RESPONSE to 636 Response to Non-Motion, *DEFENDANTS REPLY TO PLAINTIFFS RESPONSE TO DEFENDANTS OBJECTIONS TO CLAIM CONSTRUCTION ORDER* by Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., Digital Innovations, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Sakar International, Inc., Wal-Mart Stores, Inc.. (Daniels, Steven) (Entered: 05/18/2012) |
| 05/29/2012 | 645 | ORDER granting 608 Motion for Extension of Time to File Markman Reply. Signed by Judge Leonard Davis on 05/29/12. cc:attys 5-29-12 (mll, ) (Entered: 05/29/2012) |
| 05/29/2012 | 646 | STIPULATION of Dismissal *with Prejudice between Plaintiff Adjustacam LLC and Defendant Auditek Corporation* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 05/29/2012) |
| 05/30/2012 | 647 | ORDER granting 646 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Auditek Corporation, are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 05/30/12. cc:attys 5-30-12(mll, ) (Entered: 05/30/2012) |
| 06/06/2012 | 648 | ***FILED IN ERROR PER ATTORNEY. SEE ENTRY 649 FOR CORRECTED FILING.*** STIPULATION of Dismissal *with Prejudice between Plaintiff Adjustacam LLC and Defendant Digital Innovations, LLC* by Digital Innovations, LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) Modified on 6/6/2012 (gsg). (Entered: 06/06/2012) |
| 06/06/2012 | 649 | STIPULATION of Dismissal *with Prejudice between Plaintiff Adjustacam LLC and Defendant Digital Innovations, LLC* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 06/06/2012) |
| 06/06/2012 | | ***FILED IN ERROR PER ATTORNEY. Document # 648, Stipulation of Dismissal. PLEASE SEE ENTRY 649 FOR CORRECTED FILING.*** |

| | | |
|---|---|---|
| | | (gsg) (Entered: 06/06/2012) |
| 06/07/2012 | 650 | ORDER overruling pltf's objections 629 and defts' objections 632 , and adopting 627 Memorandum Opinion and Order of the US Magistrate Judge as the Opinion of this Court. Signed by Judge Leonard Davis on 06/07/12. cc:attys 6-07-12(mll, ) (Entered: 06/07/2012) |
| 06/07/2012 | 651 | ORDER granting 649 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Digital Innovations, LLC, are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 06/07/12. cc:attys 6-07-12(mll, ) (Entered: 06/07/2012) |
| 06/07/2012 | 652 | Joint MOTION to Amend/Correct 588 Order, Set Scheduling Order Deadlines, Set Hearings,,,,,,,,, *and For Extension of Certain Deadlines* by AdjustaCam LLC, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, CDW, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 06/07/2012) |
| 06/11/2012 | 653 | ORDER granting 652 Motion to Amend/Correct Docket Control Order. Signed by Judge Leonard Davis on 06/11/12. cc:attys 6-11-12 (mll, ) (Entered: 06/11/2012) |
| 06/11/2012 | | Scheduling Order Deadlines reset per 653 Order: Identify trial witnesses by 8/13/2012; Rebuttal Trial Witnesses identified by 8-27-2012. Dispositive Motions due by 10/12/2012; Response to Dispositive Motions due 11-02-2012. Submit opening letter briefs by 8-13-2012; Submit answering letter briefs by 8-27-2012; Submit reply letter briefs by 9-03-2012. (mll, ) (Entered: 06/12/2012) |
| 06/18/2012 | 654 | NOTICE by Auditek Corporation *Request for Termination of Electronic Notices* (Hilton, Zachary) (Entered: 06/18/2012) |
| 07/13/2012 | 655 | Joint MOTION to Dismiss *CDW with Prejudice* by AdjustaCam LLC, CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc.. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 07/13/2012) |
| 07/25/2012 | 656 | Unopposed MOTION for Extension of Time to Complete Discovery *of their Rebuttal Expert Witness Report* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 07/25/2012) |
| 07/26/2012 | 657 | ORDER granting 656 Motion for Extension of Time to Complete Discovery. Plaintiff and Defendants deadline to submit their Rebuttal Expert Witness Report is extended to 7-26-2012. Signed by Judge Leonard Davis on 07/26/12. cc:attys 7-26-12 (mll, ) (Entered: 07/26/2012) |
| 07/27/2012 | 658 | ORDER granting 655 Motion to Dismiss. All claims and counterclaims asserted in this suit between plaintiff, and defendant, CDW Corporation and CDW Inc, are hereby |

| | | |
|---|---|---|
| | | dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 07/27/12. cc:attys 7-27-12 (mll, ) (Entered: 07/27/2012) |
| 08/02/2012 | 659 | Joint MOTION to Amend/Correct 588 Order, Set Scheduling Order Deadlines, Set Hearings,,,,,,,,,, 653 Order on Motion to Amend/Correct - *to Amend Docket Control Order and For Extension of Certain Deadlines* by AdjustaCam LLC, Best Buy Co Inc, Best Buy Stores, LP, BestBuy.com, LLC, Fry's Electronics Inc, Gear Head, LLC, Hewlett-Packard Company, KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Micro Electronics, Inc. DBA Micro Center, Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Wal-Mart Stores, Inc.. (Attachments: # 1 Text of Proposed Order)(Yarbrough, Herbert) (Entered: 08/02/2012) |
| 08/03/2012 | 660 | ORDER granting 659 Joint Motion to Amend 588 Docket Control Order and for Extension of Certain Deadlines. Signed by Judge Leonard Davis on 8/2/2012. (leh, ) (Entered: 08/03/2012) |
| 08/03/2012 | 661 | APPLICATION (APPROVED) to Appear Pro Hac Vice by Attorney Robert A Matson for Newegg, Inc.,Newegg.com, Inc. and for Rosewill Inc.. (pkb, ) (Entered: 08/03/2012) |
| 08/06/2012 | 662 | NOTICE by CDW Corporation F/K/A CDW Computer Centers, Inc., CDW, Inc., CDW, LLC *Request for Termination of Electronic Notices* (Horton, Benjamin) (Entered: 08/06/2012) |
| 08/15/2012 | 663 | REPORT of Mediation by James W Knowles. Mediation result: Follow-Up Report of Settlements(Knowles, James) (Entered: 08/15/2012) |
| 08/15/2012 | 664 | STIPULATION of Dismissal *of Defendant PC Gear Head, LLC f/k/a Gear Head LLC* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Order) (Edmonds, John) (Entered: 08/15/2012) |
| 08/17/2012 | 665 | ORDER granting 664 Stipulated Motion for Dismissal With Prejudice. It is ordered that all claims and counterclaims asserted in this suit between Plaintiff Adjustacam LLC and Defendant PC Gear Head f/k/a Gear Head LLC, are dismissed with prejudice. All costs, expenses and attorney fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 8/17/2012. (leh, ) (Entered: 08/17/2012) |
| 08/20/2012 | 666 | STIPULATION of Dismissal *of Defendant Micro Electronics, Inc., d/b/a Micro Center* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Order) (Edmonds, John) (Entered: 08/20/2012) |
| 08/20/2012 | 667 | STIPULATION of Dismissal *of Defendant Office Depot, Inc.,* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Order)(Edmonds, John) (Entered: 08/20/2012) |
| 08/20/2012 | 668 | STIPULATION of Dismissal *of Defendant Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC.,* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed |

|  |  | Order Order)(Edmonds, John) (Entered: 08/20/2012) |
|---|---|---|
| 08/20/2012 | 669 | STIPULATION of Dismissal *of Defendant Wal-Mart Stores, Inc* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Order)(Edmonds, John) (Entered: 08/20/2012) |
| 08/21/2012 | 670 | STIPULATION of Dismissal *between AdjustaCam LLC and Fry's Electronics Inc.* by AdjustaCam LLC, Fry's Electronics Inc. (Attachments: # 1 Text of Proposed Order) (Edmonds, John) (Entered: 08/21/2012) |
| 08/22/2012 | 671 | ORDER granting 666 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Micro Electronics, Inc., d/b/a Micro Center, are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by theparty that incurred them. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12(mll, ) (Entered: 08/22/2012) |
| 08/22/2012 | 672 | ORDER granting 667 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Office Depot, Inc., are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12(mll, ) (Entered: 08/22/2012) |
| 08/22/2012 | 673 | ORDER granting 668 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendants, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC., are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12(mll, ) (Entered: 08/22/2012) |
| 08/22/2012 | 674 | ORDER granting 669 Stipulation of Dismissal filed by AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Wal-Mart Stores, Inc., are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12(mll, ) (Entered: 08/22/2012) |
| 08/22/2012 | 675 | ORDER granting 670 Stipulation of Dismissal filed by Fry's Electronics Inc, AdjustaCam LLC. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Frys Electronics, Inc., are hereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 08/22/12. cc:attys 8-22-12(mll, ) (Entered: 08/22/2012) |
| 08/24/2012 | 676 | Joint MOTION to Dismiss *HP* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 08/24/2012) |
| 08/27/2012 | 677 | ORDER granting 676 Motion to Dismiss. All claims and counterclaims asserted in this suit between plaintiff, and defendant, Hewlett-Packard Company, arehereby dismissed with prejudice. All costs, expenses and attorneys fees are to be borne by the party that incurred them. Signed by Judge Leonard Davis on 08/27/12. cc:attys 8-27-12 (mll, ) (Entered: 08/27/2012) |

A0152

| 08/27/2012 | 678 | Opposed SEALED MOTION *TO DISMISS CLAIMS AND COUNTERCLAIMS INVOLVING NEWEGG AND ROSEWILL* by AdjustaCam LLC. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order Order re Expedited Briefing and Oral Hearing, # 3 Text of Proposed Order Order Granting Motion to Dismiss)(Edmonds, John) (Entered: 08/27/2012) |
|---|---|---|
| 08/31/2012 | 679 | Letter Brief filed by Sakar International, Inc. (Sutton, Ezra) (Entered: 08/31/2012) |
| 08/31/2012 | 680 | Letter Brief filed by KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Newegg, Inc., Newegg.com, Inc., Rosewill Inc., Sakar International, Inc. (Attachments: # 1 Exhibit 1)(Yarbrough, Herbert) (Entered: 08/31/2012) |
| 08/31/2012 | 682 | Letter Brief filed by Newegg, Inc. (Herberholz, Dana) (Entered: 08/31/2012) |
| 08/31/2012 | 683 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit A (Letter Brief), # 2 Exhibit A(1), # 3 Exhibit A(2), # 4 Exhibit A(3), # 5 Exhibit A(4))(Edmonds, John) (Entered: 08/31/2012) |
| 08/31/2012 | 684 | SEALED NOTICE OF COMPLIANCE Re Letter Brief Filed by AdjustaCam LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit A(1), # 3 Exhibit A(2))(Edmonds, John) (Entered: 08/31/2012) |
| 08/31/2012 | 685 | Letter Brief filed by Newegg, Inc. (Attachments: # 1 Exhibit)(Herberholz, Dana) (Entered: 08/31/2012) |
| 09/04/2012 | 686 | SEALED Letter Brief filed by KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Newegg, Inc., Newegg.com, Inc., Rosewill Inc., Sakar International, Inc. (Attachments: #(1) Exhibit 1)(Yarbrough, Herbert) (Entered: 09/04/2012) |
| 09/05/2012 | 687 | NOTICE of Attorney Appearance by Stephen F Schlather on behalf of AdjustaCam LLC (Schlather, Stephen) (Entered: 09/05/2012) |
| 09/06/2012 | 688 | NOTICE by Gear Head, LLC *of Request for Termination of Electronic Notices* (Hammond, Herbert) (Entered: 09/06/2012) |
| 09/06/2012 | 689 | NOTICE by Digital Innovations, LLC *of Request for Termination of Electronic Notices* (Stiner Toomer, Tamara) (Entered: 09/06/2012) |
| 09/07/2012 | 690 | Trial Witness List by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Zarian, John) (Entered: 09/07/2012) |
| 09/07/2012 | 691 | ***DEFICIENT DOCUMENT. DISREGARD.*** NOTICE by Sakar International, Inc. *Designation of Trial Witnesses* (Sutton, Ezra) Modified on 9/11/2012 (gsg). (Entered: 09/07/2012) |
| 09/08/2012 | 692 | Plaintiff's Trial Witness List by AdjustaCam LLC. (Edmonds, John) (Entered: 09/08/2012) |
| 09/11/2012 | 693 | NOTICE by Sakar International, Inc. *Revised Designation of Trial Witnesses of Sakar International, Inc., Kohl's Illinois, Inc., and Kohl's Corporation* (Sutton, Ezra) (Entered: 09/11/2012) |

| | | |
|---|---|---|
| 09/14/2012 | 694 | Rebuttal Witness List by AdjustaCam LLC. (Schlather, Stephen) (Entered: 09/14/2012) |
| 09/14/2012 | 695 | NOTICE by KOHLS CORPORATION D/B/A KOHL'S, Sakar International, Inc. *Designation of Rebuttal Trial Witnesses of Sakar International, Inc., Kohl's Illinois, Inc., and Kohl's Corporation* (Sutton, Ezra) (Entered: 09/14/2012) |
| 09/14/2012 | 696 | Letter Brief filed by KOHLS CORPORATION D/B/A KOHL'S, Sakar International, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Sutton, Ezra) (Entered: 09/14/2012) |
| 09/14/2012 | 697 | Letter Brief filed by KOHLS CORPORATION D/B/A KOHL'S, Sakar International, Inc. (Sutton, Ezra) (Entered: 09/14/2012) |
| 09/14/2012 | 698 | Rebuttal Trial Witness List by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Herberholz, Dana) (Entered: 09/14/2012) |
| 09/14/2012 | 699 | RESPONSE to Motion re 678 Opposed SEALED MOTION *TO DISMISS CLAIMS AND COUNTERCLAIMS INVOLVING NEWEGG AND ROSEWILL filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Zarian, John) (Entered: 09/14/2012) |
| 09/14/2012 | 700 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 09/14/2012) |
| 09/14/2012 | 701 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 09/14/2012) |
| 09/14/2012 | 702 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 09/14/2012) |
| 09/14/2012 | 703 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 09/14/2012) |
| 09/14/2012 | 704 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 09/14/2012) |
| 09/14/2012 | 705 | SEALED Letter Brief filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Attachments: # 1 Exhibit 1 - Letter Brief, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C) (Matson, Robert) (Entered: 09/14/2012) |
| 09/14/2012 | 706 | SEALED Letter Brief filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Attachments: # 1 Exhibit 1 - Letter Brief, # 2 Errata A, # 3 Exhibit B)(Matson, Robert) (Entered: 09/14/2012) |
| 09/17/2012 | 707 | REPLY to Response to Motion re 678 Opposed SEALED MOTION *TO DISMISS CLAIMS AND COUNTERCLAIMS INVOLVING NEWEGG AND ROSEWILL filed by AdjustaCam LLC.* (Attachments: # 1 Text of Proposed Order Order) (Edmonds, John) (Entered: 09/17/2012) |
| 09/18/2012 | 708 | NOTICE by Wal-Mart Stores, Inc. *Of Request For Termination Of Electronic Notices* (Chapman, Laura) (Entered: 09/18/2012) |

| 09/19/2012 | 709 | Unopposed MOTION for Extension of Time to File Response/Reply as to 705 SEALED Notice of Compliance - Letter Brief, 706 SEALED Notice of Compliance - Letter Brief by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order) (Edmonds, John) (Entered: 09/19/2012) |
|---|---|---|
| 09/20/2012 | 710 | ORDER granting 709 Motion for Extension of Time to File Response/Reply. Signed by Judge Leonard Davis on 09/20/12. cc:attys 9-20-12 (mll, ) (Entered: 09/20/2012) |
| 09/20/2012 | 711 | NOTICE by AdjustaCam LLC *of Cancellation of Asserted Claims* (Attachments: # 1 Exhibit 1)(Edmonds, John) (Entered: 09/20/2012) |
| 09/21/2012 | 712 | Letter Brief filed by Kohl's Illinois, Inc., Sakar International, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Sutton, Ezra) (Entered: 09/21/2012) |
| 09/21/2012 | 713 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit A)(Edmonds, John) (Entered: 09/21/2012) |
| 09/21/2012 | 714 | SEALED Letter Brief filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. (Attachments: # 1 Exhibit 1 - Letter Brief)(Zarian, John) (Entered: 09/21/2012) |
| 09/21/2012 | 715 | REPLY to Notice of Compliance - Letter Brief re 680 Notice of Compliance - Letter Brief filed by Rosewill Inc., Newegg.com, Inc., KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Sakar International, Inc., Newegg, Inc. Filed by Newegg.com, Inc., Rosewill Inc., Newegg, Inc. by Newegg.com, Inc., Rosewill Inc., Newegg, Inc.. (Attachments: # 1 Exhibit 1 - Letter Brief)(Zarian, John) (Entered: 09/21/2012) |
| 09/21/2012 | 716 | REPLY to Notice of Compliance - Letter Brief re 685 Notice of Compliance - Letter Brief filed by Newegg, Inc. Filed by Newegg.com, Inc., Rosewill Inc., Newegg, Inc. by Newegg.com, Inc., Rosewill Inc., Newegg, Inc.. (Attachments: # 1 Exhibit 1 - Letter Brief)(Zarian, John) (Entered: 09/21/2012) |
| 09/21/2012 | 717 | Letter Brief filed by KOHLS CORPORATION D/B/A KOHL'S, Kohl's Illinois, Inc., Newegg, Inc., Rosewill Inc., Sakar International, Inc. (Attachments: # 1 Exhibit 1) (Zarian, John) (Entered: 09/21/2012) |
| 09/24/2012 | 718 | Letter Brief filed by AdjustaCam LLC (Attachments: # 1 Exhibit A)(Edmonds, John) (Entered: 09/25/2012) |
| 09/27/2012 | 719 | Unopposed MOTION to Dismiss *involving Defendants/Counter-claimants Newegg Inc., Newegg.com Inc., and Rosewill, Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 09/27/2012) |
| 09/27/2012 | 720 | ORDER granting 719 Motion to Dismiss. Plaintiffs claims against defts Newegg Inc., Newegg.com Inc., and Rosewill, Inc are DISMISSED WITH PREJUDICE; defts' counterclaims are DISMISSED WITHOUT PREJUDICE. Signed by Judge Leonard Davis on 09/27/12. cc:attys 9-27-12 (mll, ) (Entered: 09/27/2012) |
| 09/30/2012 | 721 | Opposed MOTION to Dismiss *Remaining Defendants Sakar and Kohl's* by AdjustaCam LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed |

| | | |
|---|---|---|
| | | Order Proposed Order for Oral Hearing and Expedited Briefing, # 4 Text of Proposed Order Proposed Order Granting Motion to Dismiss)(Edmonds, John) (Entered: 09/30/2012) |
| 10/01/2012 | 722 | ORDER that Defendants Sakar International, Inc., Kohls Illinois, Inc., and Kohls Corporation, Inc. file a response to AdjustaCams 721 Motion to Dismiss by 10-08-2012. AdjustaCams Reply, if any, SHALL be due on 10-12-2012,and Defendants Sur-Reply, if any, SHALL be due on 10-16-2012. Signed by Judge Leonard Davis on 10/01/12. cc:attys 10-02-12(mll, ) (Entered: 10/02/2012) |
| 10/02/2012 | 723 | Proposed Pretrial Order *(Joint)* by AdjustaCam LLC. (Attachments: # 1 Exhibit 1 (Plaintiff's Witness List), # 2 Exhibit 2 (Defendants' Witness List), # 3 Exhibit 3 (Plaintiff's Exhibit List), # 4 Exhibit 4 (Defendants' Exhibit List), # 5 Exhibit 5 (Proposed Jury Charge), # 6 Exhibit 6 (Proposed Jury Verdict Form))(Edmonds, John) (Additional attachment(s) added on 10/3/2012: # 7 Text of Proposed Order) (gsg, ). (Entered: 10/02/2012) |
| 10/03/2012 | 724 | NOTICE by AdjustaCam LLC *of Supplemental Authority in support of its opposed Motion to Dismiss* (Attachments: # 1 Exhibit A)(Edmonds, John) (Entered: 10/03/2012) |
| 10/08/2012 | 725 | RESPONSE in Opposition re 721 Opposed MOTION to Dismiss *Remaining Defendants Sakar and Kohl's Counterclaims filed by Sakar International, Inc..* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Sutton, Ezra) (Additional attachment(s) added on 10/26/2012: # 5 Text of Proposed Order) (gsg, ). (Entered: 10/08/2012) |
| 10/11/2012 | 726 | PROPOSED BILL OF COSTS filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Herberholz, Dana) (Entered: 10/11/2012) |
| 10/11/2012 | 727 | SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Attachments: # 1 Text of Proposed Order)(Herberholz, Dana) (Entered: 10/11/2012) |
| 10/11/2012 | 728 | SEALED ADDITIONAL ATTACHMENTS to Main Document: 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31)(Herberholz, Dana) (Entered: 10/11/2012) |
| 10/12/2012 | 729 | REPLY to Response to Motion re 721 Opposed MOTION to Dismiss *Remaining Defendants Sakar and Kohl's filed by AdjustaCam LLC*. (Attachments: # 1 Exhibit A)(Edmonds, John) (Entered: 10/12/2012) |
| | | |

| 10/18/2012 | 730 | NOTICE of Attorney Appearance by James A Fussell, III on behalf of AdjustaCam LLC (Fussell, James) (Entered: 10/18/2012) |
| 10/29/2012 | 731 | Unopposed MOTION for Extension of Time to File *to Defendants Newegg Sealed Motion For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Edmonds, John) (Entered: 10/29/2012) |
| 10/29/2012 | 732 | Joint MOTION to Amend/Correct *(Amend) Docket Control Order* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Order)(Edmonds, John) (Entered: 10/29/2012) |
| 10/29/2012 | 733 | ORDER granting 731 Motion for Extension of Time. Plaintiffs deadline to file its Response to Defendants Newegg Inc., Newegg.com Inc., and Rosewill Inc. Sealed Motion For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses 727 is extended to 11-05-2012. Signed by Judge Leonard Davis on 10/29/12. cc:attys 10-29-12 (mll, ) (Entered: 10/29/2012) |
| 11/05/2012 | 734 | Unopposed MOTION for Extension of Time to File *Response to Defendants Newegg Sealed Motion For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order Order)(Edmonds, John) (Entered: 11/05/2012) |
| 11/07/2012 | 735 | SEALED RESPONSE to Motion re 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* filed by AdjustaCam LLC. (Edmonds, John) (Entered: 11/07/2012) |
| 11/08/2012 | 736 | SEALED ADDITIONAL ATTACHMENTS to Main Document:. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19 (part 1), # 20 Exhibit 19 (part 2), # 21 Exhibit 20, # 22 Exhibit 21 (part 1), # 23 Exhibit 21 (part 2), # 24 Exhibit 22, # 25 Text of Proposed Order)(Edmonds, John) (Entered: 11/08/2012) |
| 11/08/2012 | 737 | ORDER granting 734 Motion for Extension of Time. Signed by Judge Leonard Davis on 11/08/12. cc:attys 11-08-12 (mll, ) (Entered: 11/08/2012) |
| 11/13/2012 | 738 | ORDER Setting Hearing on Motion 721 Opposed MOTION to Dismiss *Remaining Defendants Sakar and Kohl's* : Motion Hearing set for 12/5/2012 02:00 PM before Judge Leonard Davis. Signed by Judge Leonard Davis on 11/13/12. cc:attys 11-13-12(mll, ) (Entered: 11/13/2012) |
| 11/13/2012 | 739 | Unopposed MOTION to Amend/Correct 737 Order on Motion for Extension of Time to File *Reply Brief* by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Attachments: # 1 Text of Proposed Order)(Herberholz, Dana) (Entered: 11/13/2012) |
| 11/13/2012 | 740 | ORDER denying as moot 678 Sealed Motion to Dismiss. Signed by Judge Leonard Davis on 11/13/12. cc:attys 11-13-12 (mll, ) (Entered: 11/13/2012) |

| 11/14/2012 | 741 | ORDER granting 739 Motion to Amend/Correct Order. Newegg Defendants' deadline to file their reply in support of their Sealed Motion For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses 727 is correctly identified as 11-26-2012. Signed by Judge Leonard Davis on 11/14/12. cc:attys 11-14-12 (mll, ) (Entered: 11/14/2012) |
|---|---|---|
| 11/26/2012 | 742 | SEALED REPLY to Response to Motion re 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Herberholz, Dana) (Entered: 11/26/2012) |
| 12/04/2012 |  | NOTICE of Hearing on Motion 721 Opposed MOTION to Dismiss *Remaining Defendants Sakar and Kohl's :* **Motion Hearing set 12/5/2012 02:00 PM has been RESCHEDULED and will be heard at Pretrial Conference on 12/18/2012 09:00 AM before Judge Leonard Davis.** (cwk) (Entered: 12/04/2012) |
| 12/06/2012 | 743 | SEALED SUR-REPLY to Motion re 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* filed by AdjustaCam LLC. (Edmonds, John) (Entered: 12/06/2012) |
| 12/14/2012 | 744 | Unopposed MOTION to Dismiss *claims and counterclaims involving Defendants/Counter-claimants Sakar International, Inc., Kohls Illinois, Inc., Kohls Corporation, Inc. and Kohls Department Stores, Inc.* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 12/14/2012) |
| 12/17/2012 | 745 | ORDER granting 744 Motion to Dismiss. Plaintiffs claims against defts Sakar International, Inc., Kohls Illinois, Inc., Kohls Corporation, Inc. and Kohls Department Stores, Inc are DISMISSED WITH PREJUDICE; Defendants' counterclaims are DISMISSED WITHOUT PREJUDICE. Signed by Judge Leonard Davis on 12/17/12. cc:attys 12-17-12 (mll, ) (Entered: 12/17/2012) |
| 12/21/2012 | 746 | Unopposed MOTION for Extension of Time to File by Sakar International, Inc.. (Sutton, Ezra) (Entered: 12/21/2012) |
| 12/21/2012 | 747 | ORDER granting 746 Motion for Extension of Time. Deft's Deadline to file a Motion for Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses is extended to 1-16-2013. Signed by Judge Leonard Davis on 12/21/12. cc:attys 12-21-12 (mll, ) (Entered: 12/21/2012) |
| 01/16/2013 | 748 | SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES* by Sakar International, Inc.. (Attachments: # 1 Declaration of Ezra Sutton, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 5A, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 9A, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exhibit 16, # 20 Exhibit 17, # 21 Exhibit 18, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Exhibit 22)(Sutton, Ezra) (Additional attachment(s) added on 1/18/2013: # 26 Text of Proposed Order) (gsg, ). (Entered: |

| | | 01/16/2013) |
|---|---|---|
| 02/05/2013 | 749 | SEALED RESPONSE to Motion re 748 SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES* filed by AdjustaCam LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, part 1, # 11 Exhibit 10, part 2, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Errata 20, part 1, # 22 Exhibit 20, part 1, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Text of Proposed Order) (Edmonds, John) (Entered: 02/05/2013) |
| 02/11/2013 | 750 | SEALED REPLY to Response to Motion re 748 SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES* filed by Sakar International, Inc.. (Attachments: # 1 Exhibit A)(Sutton, Ezra) (Entered: 02/11/2013) |
| 02/22/2013 | 751 | SEALED SUR-REPLY to Motion re 748 SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES* filed by AdjustaCam LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Edmonds, John) (Entered: 02/22/2013) |
| 03/04/2013 | 752 | ORDER denying as moot 721 Motion to Dismiss. Signed by Judge Leonard Davis on 03/04/13. cc:attys 3-04-13 (mll, ) (Entered: 03/04/2013) |
| 04/18/2013 | 753 | ORDER Setting Hearing on Motion 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses*, 748 SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES* :Motion Hearing set for 5/22/2013 01:30 PM before Judge Leonard Davis. Parties shall meet and confer in good faith to resolve these issues prior to the hearing. The parties are ORDERED to file a status report regarding which motions are still pending by noon on 5-17-2013. Signed by Judge Leonard Davis on 04/18/13. (mll, ) (Entered: 04/18/2013) |
| 04/27/2013 | 754 | Unopposed MOTION to Continue *Hearing* by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 04/27/2013) |
| 04/30/2013 | 755 | ORDER granting 754 Motion to Continue. The hearing is rescheduled for 6-26-2013 at 1:30 p.m. Signed by Judge Leonard Davis on 04/30/13. (mll, ) (Entered: 04/30/2013) |
| 05/07/2013 | | Set/Reset Deadlines as to 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses*, 748 SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND* |

|  |  | *NONTAXABLE EXPENSES.* **Motion Hearing set for 6/26/2013 at 01:30 PM before Judge Leonard Davis.** (rlf) (Entered: 05/07/2013) |
|---|---|---|
| 05/17/2013 | 756 | STATUS REPORT *(Joint) Regarding Motions At Doc Nos. 727 And 748* by AdjustaCam LLC. (Edmonds, John) (Entered: 05/17/2013) |
| 06/06/2013 | 757 | Unopposed MOTION to Withdraw as Attorney by AdjustaCam LLC. (Attachments: # 1 Text of Proposed Order)(Long, Joshua) (Entered: 06/06/2013) |
| 06/11/2013 | 758 | ORDER granting 757 Motion to Withdraw as Attorney. Attorney Joshua Brooks Long terminated. Signed by Judge Leonard Davis on 06/11/13. (mll, ) (Entered: 06/11/2013) |
| 06/26/2013 | 759 | Minute Entry for proceedings held before Judge Leonard Davis: Motion Hearing held on 6/26/2013 re 727 SEALED MOTION *For Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses* filed by Rosewill Inc., Newegg.com, Inc., Newegg, Inc., 748 SEALED MOTION *DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NONTAXABLE EXPENSES* filed by Sakar International, Inc. (Court Reporter Shea Sloan.) (Attachments: # 1 Sign in sheet) (cwk) (Entered: 06/26/2013) |
| 08/15/2013 | 760 | ORDER denying as moot 732 Motion to Amend/Correct Docket Control Order. Signed by Judge Leonard Davis on 08/15/13. (mll, ) (Entered: 08/15/2013) |
| 08/19/2013 | 761 | ORDER denying 727 Sealed Motion for Declaration of Exceptional Case; denying 748 Sealed Motion for Declaration of Exceptional Case. Signed by Judge Leonard Davis on 8/19/13. (mjc, ) (Entered: 08/19/2013) |
| 08/20/2013 | 762 | FINAL JUDGMENT that the parties take nothing and that all pending motions are DENIED AS MOOT. All costs are to be borne by the party that incurred them. All claims, counterclaims, and third-party claims in the instant suit are DISMISSED in their entirety. The Clerk of the Court is directed to close this case. Signed by Judge Leonard Davis on 08/20/13. (mll, ) (Entered: 08/20/2013) |
| 09/05/2013 | 763 | **WITHDRAWN PER 782 ORDER** MOTION to Amend/Correct 762 Judgment, by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Attachments: # 1 Exhibit 1)(Herberholz, Dana) (Additional attachment(s) added on 9/16/2013: # 2 Text of Proposed Order, # 3 Proposed Final Judgment) (gsg, ). Modified on 3/31/2014 (mll, ). (Entered: 09/05/2013) |
| 09/17/2013 | 764 | NOTICE OF APPEAL - FEDERAL CIRCUIT as to 761 Order on Sealed Motion, 762 Judgment, by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. Filing fee $ 455, receipt number 0540-4319110. (Herberholz, Dana) (Entered: 09/17/2013) |
| 09/17/2013 | 765 | NOTICE OF APPEAL - FEDERAL CIRCUIT as to 650 Order, 627 Order, 762 Judgment, by AdjustaCam LLC. Filing fee $ 455, receipt number 0540-4319236. Appeal Record due by 10/1/2013. (Edmonds, John) (Entered: 09/17/2013) |
| 09/18/2013 |  | Transmission of Notice of Appeal by Newegg Inc., et al, 761 Order, 762 Judgment and Certified Copy of Docket Sheet to US Court of Appeals, Federal Circuit by separate |

| | | |
|---|---|---|
| | | email. re 764 Notice of Appeal - FEDERAL CIRCUIT (dlc, ) (Entered: 09/18/2013) |
| 09/18/2013 | | Transmission of Notice of Appeal by AdjustaCam LLC, 650 Order, 627 Opinion and Order, 762 Judgment and Certified Copy of Docket Sheet to US Court of Appeals, Federal Circuit by separate email. re 765 Notice of Appeal - FEDERAL CIRCUIT (dlc, ) (Entered: 09/18/2013) |
| 09/18/2013 | 766 | ACKNOWLEDGMENT OF RECEIPT on 9/18/13, by USCA-FEDERAL CIRCUIT as to 761 Order on Sealed Motion, 764 Notice of Appeal - FEDERAL CIRCUIT, 762 Judgment, and Certified Copy of Docket Sheet. (dlc, ) (Entered: 09/18/2013) |
| 09/18/2013 | 767 | ACKNOWLEDGMENT OF RECEIPT on 9/18/13, by USCA-FEDERAL CIRCUIT as to 650 Order, 765 Notice of Appeal - FEDERAL CIRCUIT, 627 Memorandum Opinion and Order, 762 Final Judgment, and Certified Copy of Docket Sheet. (dlc, ) (Entered: 09/18/2013) |
| 09/18/2013 | 768 | NOTICE OF APPEAL - FEDERAL CIRCUIT as to 761 Order on Sealed Motion, 762 Judgment, by Sakar International, Inc.. Filing fee $ 455. Appeal Record due by 9/19/2013. (Sutton, Ezra) (Entered: 09/18/2013) |
| 09/18/2013 | | USCA Appeal Fees received $ 455.00 receipt number 6-15472 re 768 Notice of Appeal - FEDERAL CIRCUIT filed by Sakar International, Inc. (mjc, ) (Entered: 09/18/2013) |
| 09/18/2013 | | Transmission of Notice of Appeal, 761 Order, 762 Judgment and Certified Copy of Docket Sheet to US Court of Appeals, Federal Circuit by separate email. re 768 Notice of Appeal - FEDERAL CIRCUIT by Sakar International, Inc. (dlc, ) (Entered: 09/18/2013) |
| 09/18/2013 | 769 | ACKNOWLEDGMENT OF RECEIPT on 9/18/13, by USCA-FEDERAL CIRCUIT as to 768 Notice of Appeal - FEDERAL CIRCUIT by Sakar, 761 Order on Sealed Motion, 762 Final Judgment, and Certified Copy of Docket Sheet. (dlc, ) (Entered: 09/19/2013) |
| 09/20/2013 | 770 | NOTICE of Docketing Notice of Appeal from USCA-FEDERAL CIRCUIT re 765 Notice of Appeal - FEDERAL CIRCUIT filed by AdjustaCam LLC. USCA Case Number 13-1665 (Attachments: # 1 Official Caption)(dlc, ) (Entered: 09/20/2013) |
| 09/20/2013 | 771 | NOTICE of Docketing Notice of Appeal from USCA-FEDERAL CIRCUIT re 764 Notice of Appeal - FEDERAL CIRCUIT filed by Rosewill Inc., Newegg.com, Inc., Newegg, Inc. USCA Case Number 13-1666 (dlc, ) (Entered: 09/20/2013) |
| 09/20/2013 | 772 | NOTICE of Docketing Notice of Appeal from USCA-FEDERAL CIRCUIT re 768 Notice of Appeal - FEDERAL CIRCUIT filed by Sakar International, Inc. USCA Case Number 13-1667 (dlc, ) (Entered: 09/20/2013) |
| 09/23/2013 | 773 | RESPONSE in Opposition re 763 MOTION to Amend/Correct 762 Judgment, *filed by AdjustaCam LLC*. (Attachments: # 1 Text of Proposed Order)(Edmonds, John) (Entered: 09/23/2013) |
| | | |

| 09/25/2013 | 774 | TRANSCRIPT REQUEST by AdjustaCam LLC (Edmonds, John) (Entered: 09/25/2013) |
|---|---|---|
| 09/26/2013 | 775 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing Proceedings held on 6/26/13 before Chief Judge Leonard Davis. Court Reporter: Shea Sloan, shea_sloan@txed.uscourts.gov<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 10/21/2013. Redacted Transcript Deadline set for 10/31/2013. Release of Transcript Restriction set for 12/30/2013. (sms, ) (Entered: 09/26/2013) |
| 10/01/2013 | 776 | TRANSCRIPT REQUEST by Newegg, Inc., Newegg.com, Inc., Rosewill Inc. for proceedings held on 2/7/11 and 6/26/13 before Judge Love and Davis, (Herberholz, Dana) (Entered: 10/01/2013) |
| 10/01/2013 | 777 | REPLY to Response to Motion re 763 MOTION to Amend/Correct 762 Judgment, *filed by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.*. (Attachments: # 1 Exhibit 1) (Herberholz, Dana) (Entered: 10/01/2013) |
| 10/02/2013 | 778 | USCA-FEDERAL CIRCUIT - NOTICE to the Lower Court or Agency. (dlc, ) (Entered: 10/02/2013) |
| 10/02/2013 | | Transmission of Certified Copy of Updated Docket Sheet to US Court of Appeals, Federal Circuit by separate email pursuant to 778 USCA NOTICE to the Lower Court or Agency. re 764 Notice of Appeal - FEDERAL CIRCUIT, 768 Notice of Appeal - FEDERAL CIRCUIT, 765 Notice of Appeal - FEDERAL CIRCUIT (dlc, ) (Entered: 10/02/2013) |
| 10/02/2013 | 779 | ACKNOWLEDGMENT OF RECEIPT on 10/2/13, by USCA-FEDERAL CIRCUIT of Certified copy of Updated Docket Sheet. (dlc, ) (Entered: 10/02/2013) |
| 10/11/2013 | 780 | SUR-REPLY to Reply to Response to Motion re 763 MOTION to Amend/Correct 762 Judgment, *filed by AdjustaCam LLC*. (Edmonds, John) (Entered: 10/11/2013) |
| 03/28/2014 | 781 | Unopposed MOTION to Withdraw 763 MOTION to Amend/Correct 762 Judgment, by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Attachments: # 1 Text of Proposed Order)(Herberholz, Dana) (Entered: 03/28/2014) |
| 03/31/2014 | 782 | ORDER granting 781 Motion to Withdraw; withdrawing 763 Motion to Amend/Correct Judgment. Signed by Judge Leonard Davis on 03/31/14. (mll, ) (Entered: 03/31/2014) |

| 05/22/2014 | | Transmission of Certified Copy of Updated Docket Sheet to US Court of Appeals, Federal Circuit per 782 Order. (mll, ) (Entered: 05/22/2014) |
|---|---|---|
| 06/10/2014 | 783 | ORDER of USCA-FEDERAL CIRCUIT reactivating the appeal effective June 10, 2014, as to 768 Notice of Appeal - FEDERAL CIRCUIT filed by Sakar International, Inc., 765 Notice of Appeal - FEDERAL CIRCUIT filed by AdjustaCam LLC, 764 Notice of Appeal - FEDERAL CIRCUIT filed by Rosewill Inc., Newegg.com, Inc., Newegg, Inc. The appellant's brief is due on August 11, 2014. (dlc, ) (Entered: 06/10/2014) |
| 06/13/2014 | 784 | Unopposed MOTION to Withdraw as Attorney *Debby E. Gunter* by Newegg, Inc., Newegg.com, Inc., Rosewill Inc.. (Attachments: # 1 Text of Proposed Order) (Yarbrough, Herbert) (Entered: 06/13/2014) |
| 06/16/2014 | 785 | ORDER granting 784 Motion to Withdraw as Attorney. Attorney Debra Elaine Gunter terminated. Signed by Judge Leonard Davis on 06/16/14. (mll, ) (Entered: 06/16/2014) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/30/2014 14:00:20 | | | |
| **PACER Login:** | hp1253 | **Client Code:** | Adjustacam |
| **Description:** | Docket Report | **Search Criteria:** | 6:10-cv-00329-LED |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |



US005855343A

# United States Patent [19]

## Krekelberg

[11] **Patent Number:** **5,855,343**

[45] **Date of Patent:** **Jan. 5, 1999**

[54] **CAMERA CLIP**

[75] Inventor: **David E. Krekelberg**, Minnetonka, Minn.

[73] Assignee: **iREZ Research, Corporation**, Minnetonka, Minn.

[21] Appl. No.: **814,168**

[22] Filed: **Mar. 7, 1997**

[51] **Int. Cl.⁶** .................................................. **A47G 29/00**
[52] **U.S. Cl.** .......................... **248/121**; 248/126; 248/918
[58] **Field of Search** .................... 248/121, 126, 248/440.1, 166, 176.1, 688, 918; 224/908; 396/421, 422, 423, 424, 425, 426, 427, 428

[56] **References Cited**

U.S. PATENT DOCUMENTS

1,208,344  12/1916  McAll ...................................... 248/126

Primary Examiner—Ramon O. Ramirez
Assistant Examiner—Long Dinh Phan
Attorney, Agent, or Firm—Nawrocki, Rooney & Sivertson, P.A.

[57]                    **ABSTRACT**

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

**21 Claims, 2 Drawing Sheets**





*Fig. 1*

*Fig. 2*

*Fig. 3*

*Fig. 4*

**Fig. 5**



**Fig. 6**

**Fig. 7**



5,855,343

<table>
<tr><td>1</td><td>2</td></tr>
</table>

## CAMERA CLIP

### FIELD OF THE INVENTION

This invention relates to a clip for holding a camera. More particularly it relates to a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported.

### BACKGROUND OF THE INVENTION

With portable cameras, it is desirable to have an apparatus which can support the camera in any number of desired configurations. The apparatus must easily accommodate repositioning the camera to new orientations during use, and must be easily transportable. This is especially true when using the camera with a portable computer, such as a laptop computer. With increasing improvements in technology, both the laptop computer and camera have become smaller over time, emphasizing the need for a compatible camera support apparatus. The camera support apparatus must be versatile, light in weight, and be easily transportable to accommodate the new camera and laptop designs, and must desirably facilitate easy and safe storage of the camera. Often times portable computers are stored in carry bags which may be fully loaded with other hardware devices, such as disk drives or printers, as well as with personal effects, making for cramped storage conditions. The camera support apparatus must desirably protect the camera from damage during transport under these cramped storage conditions to avoid the necessity for separate storage means in order to maintain camera portability.

In the past, camera support apparatus were not easily transportable. Often times these apparatus utilized designs which incorporated a tripod approach, or which used one or more telescoping arms to support the camera. These designs attempted to support the camera during use, and then collapse to a smaller size to facilitate storage or transportation. While these designs were transportable, often times even the collapsed size of the prior art camera support apparatus could not be easily accommodated by a laptop computer bag. These prior art apparatus also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.

Another problem with prior art camera support apparatus was that they could not easily accommodate the variety of applications desired for portable cameras. These applications ranged from supporting the camera on the surface of a desk or table to supporting the camera on the upright display screen of a laptop computer. With the prior art, often times more than one camera support apparatus was necessary in order to support the desired range of applications. This unfortunately adversely impacted portability of the camera.

Thus, a desire was created within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage and transport.

### SUMMARY OF THE INVENTION

Accordingly, it is an object of the invention to provide a clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on a display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.

In a preferred embodiment of the present invention, an apparatus is provided for supporting a camera on an object where the apparatus comprises a hinge member and a support frame. The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation relative to the hinge member. A support frame is hingedly attached to the hinge member to engagingly support the hinge member on the object, where the hinge member rotates over a second axis of rotation relative to the support frame. The first axis of rotation is perpendicular to the second axis of rotation, and the second axis of rotation is substantially parallel to a first surface of the object when the hinge member is engagingly supported on the object. In the preferred embodiment, the support frame further has a rear support element and first and second front support elements. In the preferred embodiment, the rear support element and the first and second front support elements support the camera in the first position on the first surface when the rear support element and the first and second front support elements are engaging the first surface when the first surface is substantially level. In the preferred embodiment, the rear support element and the first and second front support elements engage the first surface at three locations in a plane of the first surface to prevent rotation of the support frame relative to the first surface in any direction within the plane of the first surface. In the preferred embodiment, when the support frame is in the first position, the object may be the top of a table where the first surface is a top surface of the table. The object may also be a desk top where the first surface is a top surface of the desk.

In the preferred embodiment, the rear support element and the first and second front support elements support the camera in a second position on the first surface adjacent an edge when the first surface is inclined from the substantially level position. The object has a second surface wherein a thickness between the first surface and the second surface defines an edge therebetween. The camera is maintained adjacent to the edge in the second position where the uppermost portion of the object is the edge. The rear support element engages a first surface and the first and second support elements engage the edge and the second surface. The rear support element and the first and second front support elements, in combination, maintain the camera adjacent the edge and prevent rotation of the support frame along an axis substantially parallel to the second axis where the second axis is substantially parallel to the edge. In a preferred embodiment, the rear support element and the first and second front support elements support the camera in the second position on the first surface adjacent the edge when a first distance from the edge to the position where the rear support element engages the first surface is greater than a second distance from the edge to the position where the first and second front support elements engage the second surface. A center of gravity of the camera and the hinge member being adjacent and external to the first surface in combination with the first distance being greater than the second distance prevents rotation of the support frame along the axis substantially parallel to the second axis of rotation. In the preferred embodiment, when the support frame is in the

5,855,343

**3**

second position, the object may be a display screen for a laptop computer, where the second surface is the front of the display screen and the first surface is the back of the display screen.

In the preferred embodiment, the support frame has means to releasably hold and protect the camera during storage. The camera may be rotated about the second axis in a direction from the first and second front support elements towards the rear support element of the support frame until the camera is in a position between and is releasably held by the rear support element and the first and second front support elements. In the preferred embodiment, the rear support element has means to protect a lens of the camera which is a cover mounted at a distal end of the rear support element. The lens of the camera faces a direction of rotation about the second axis from the first and second front support elements to the rear support element of the support frame to allow the lens of the camera to be fitably received into the cover when the camera is releasably held between the rear support element and the first and second front support elements.

In the preferred embodiment, the first and second front support elements are spaced a distance apart at a distance less than a diameter of a housing of the camera, where the camera is rotated about the second axis in the direction towards the rear support element so that the housing passes between the first and second front support elements. The first and second front support elements resiliently and outwardly flex to accommodate passage of the housing. The housing is releasably held after passing between the first and second front support elements by the rear support element engaging the housing at the lens, where the first and second front support elements engage the housing backside at a first indentation and a second indentation respectively to resiliently urge the housing towards the rear support element.

In the preferred embodiment, the hinge member is further comprised of a body having a proximal and a distal end where a pivot element at the proximal end of the body rotatably attaches the camera to the body so that the camera rotates about the first axis relative to the body. A hinge element at the distal end of the body hingedly attaches the body to the support frame so that the body rotates about the second axis relative to the support frame. In the preferred embodiment, the camera has an electrical wiring harness to couple from an interior to an exterior of the camera, and the pivot element has a bore parallel to the first axis of rotation to receive the electrical wiring harness to pass the wiring harness from the interior to the exterior of the camera.

## BRIEF DESCRIPTION OF THE DRAWINGS

Other objects of the present invention and many of the attendant advantages of the present invention will be readily appreciated as the same becomes better understood by reference to the following detailed description when considered in connection with the accompanying drawings, in which like reference numerals designate like parts throughout the figures thereof and wherein:

FIG. 1 is a perspective view of the "Camera Clip" invention;

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention;

FIG. 3 is a detailed front view of the "Camera Clip" invention;

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention;

FIG. 5 is a side view showing a third mode of the preferred embodiment of the present invention;

**4**

FIG. 6 is a detailed side view showing the third mode wherein the lens of the camera is being fitably received by the cover; and

FIG. 7 is a front view showing the third mode of the preferred embodiment of the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like reference numerals refer to like elements throughout the several views, FIG. 1 is a perspective view of the camera clip invention. FIG. 1 shows generally a camera apparatus 10 having a camera 12 and a camera clip 14. Camera clip 14 is further comprised of a hinge member 16 and a support frame 18. Camera 12 is comprised of housing 20 and lens 22, and has a housing backside 24 which is the side of the housing opposite of lens 22. Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26 in a direction shown by arrow 28 relative to hinge member 16. Support frame 18 is hingedly attached to hinge member 16 to engagingly support hinge member 16 on an object 30 (see also, FIG. 2). Hinge member 16 rotates over a second axis 32 in the direction shown by arrow 34 relative to support frame 18. First axis 26 is perpendicular to second axis 32. Second axis 32 is substantially parallel to a first surface 36 when hinge member 16 is engagingly supported on object 30 (see also, FIG. 2). Support frame 18 has a first portion consisting of first support element 38 and a second portion consisting of a first front support element 40 and a second front support element 42. Housing 20 has a first indentation 25 and a second indentation 27 to slidably and fittably receive distal end 41 of first front support element 40 and distal end 43 of second front support element 42 when first front support element 40 and second front support element 42 are rotated in the direction of arrow 34 to engage housing backside 24.

FIG. 2 is a side view showing a first mode of a preferred embodiment of the present invention. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in the first position 44, on the first surface 36, when rear support element 38, first front support element 40 and second front support element 42 are engaging first surface 36 and first surface 36 is substantially level. In the first position 44, camera 12 may be pivoted upon support frame 18 from a position 46 to a position 48. It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34. In the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 support the camera in first position 44, on first surface 36, when rear support element 38, first front support element 40 and second front support element 42 engage first surface 36 at three locations in a plane 50 of first surface 36. Engagement of first surface 36 at three or more locations prevents rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. It is understood that in the preferred embodiment, rear support element 38, first front support element 40 and second front support element 42 may utilize any number of desired geometries to engage first surface 36 to prevent rotation of support frame 18 relative to first surface 36 in any direction within plane 50 of first surface 36. In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table. Likewise, object 30 may be a desk top, where first surface 36 is a top surface of the desk.

5,855,343

FIG. 4 is a side view showing a second mode of the preferred embodiment of the present invention. The second mode occurs when rear support element 38, first front support element 40 and second front support element 42 support camera 12 in a second position 52 on a first surface 54 adjacent an edge 56. Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2). In FIG. 4, object 58 has a second surface 60, where a thickness d1 between first surface 54 and second surface 60 defines the edge 56 therebetween. Camera 12 is maintained adjacent edge 56 in second position 52 when the uppermost portion of object 58 is edge 56. Rear support element 38 engages first surface 54, and first front support element 40 and second front support element 42 engage edge 56 and second surface 60. Rear support element 38, first front support element 40 and second front support element 42, in combination, maintain camera 12 adjacent edge 56 and prevent rotation of support frame 18 along an axis substantially parallel to second axis 32, where second axis 32 is substantially parallel to edge 56. Rear support element 38, first front support element 40 and second front support element 42 support camera 12 in second position 52 on the first surface 54 adjacent edge 56 when a first distance 64 measured between edge 56 and position 66 is greater than a second distance 68. Second distance 68 is measured between edge 56 and position 70, where first front support element 40 and second front support element 42 engage second surface 60. The center of gravity shown in the direction of arrow 72 of camera 12 and hinge member 16 being adjacent and external to first surface 54 in combination with first distance 64 being greater than second distance 68 prevent rotation in the direction of arrow 62 of support frame 18. In the preferred embodiment, object 58 may be a display screen for a laptop computer when support frame 18 is in second position 52, where second surface 60 is the front of the display screen and first surface 54 is the back of the display screen. FIG. 4 shows hinge member 16 comprised of a body 74 having a proximal end 76 and a distal end 78. A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26 relative to body 74. A hinge element 82 at distal end 78 of body 74 hingedly attaches body 74 to support frame 18 so body 74 rotates about second axis 32 relative to support frame 18. FIG. 4 further shows camera 12 having an electrical wiring harness 84 to couple from an interior 86 to an exterior 88 of camera 12. Pivot element 80 has a bore 90 parallel to first axis 26 to receive electrical wiring harness 84 to pass wiring harness 84 from interior 86 to exterior 88 of camera 12. While the embodiments shown in the drawing figures and discussed herein illustrate a wiring harness 84 passing through a bore 90 parallel to first axis 26, it will be understood that other embodiments are contemplated. For example, wiring harness could enter body 74 at a location angularly spaced upward from bore 90.

FIGS. 5–7 show various perspectives of a third mode of the preferred embodiment of the present invention. FIG. 5 is a side view, FIG. 6 is a detailed side view showing the lens of the camera being fitably received by the cover, and FIG. 7 is a front view. The third mode of the preferred embodiment of the present invention is shown when camera 12 is rotated about second axis 32 along the direction shown by arrow 34 in a direction from the first front support element 40 and the second front support element 38 of support frame 18. This rotation is continued in the third mode until camera 12 is in a position between rear support element 38 and first front support element 40 and second front support element 42. In this

position, distal end 41 of first support element 40 and distal end 43 of second front support element 42 slidably and fittably engage first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. Camera 12 is then releasably held between rear support element 38 and first front support element 40 and second front support element 42. Rear support element 38 further has means to protect a lens 22 of camera 12, which is cover 90. Cover 90 is mounted at a distal end 92 of rear support element 38. Lens 22 of camera 12 faces in the direction of arrow 92, which is the direction of rotation about second axis 32 from first front support element 40 and second front support element 42 to rear support element 38 of support frame 18. Cover 90 fitably receives lens 22 of camera 12. Cover 90 has a raised portion 95 sized to be accommodated by lens 22 of camera 12. Support frame 14, in a third mode of the preferred embodiment of the present invention, releasably holds and protects camera 12 during storage.

FIG. 3 is a detailed front view of the camera clip invention. FIG. 3 shows first front support element 40 and second front support element 42 being spaced a distance apart by a distance 94. Camera 12 further has a housing 20 which may be spherical in shape in the preferred embodiment. Housing 20 has a diameter shown as distance 96, wherein the preferred embodiment, distance 96 is greater than distance 94. When camera 12 is rotated about the second axis 32 in the direction towards rear support element 38 in the direction of arrow 92 so that housing 20 passes between first front support element 40 and second front support element 42, first front support element 40 and second front support element 42 resiliently and outwardly flex to accommodate passage of housing 20. Housing 20 is releasably held once passing between first front support element 40 and second front support element 42 by rear support element 38 engaging housing 20 at lens 22 and distal end 41 of first front support element 40 and distal end 43 of second front support element 42 slidably and fittably engaging first indentation 25 and second indentation 27 respectively of housing 20 at housing backside 24. When housing 20 is releasably held, first front support element 40 and second front support element 42 resiliently urge housing 20 towards rear support element 38 so that lens 22 of camera 12 is fitably received into cover 90.

Having thus described the preferred embodiments of the present invention, those of skill in the art will readily appreciate that yet other embodiments may be made and used within the scope of the claims hereto attached.

What is claimed:

1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially

Case: 13-1665    Document: 97-1    Page: 177    Filed: 12/11/2014

5,855,343

7

planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

2. Apparatus according to claim 1 wherein the support frame comprises a first portion and a second portion, the support frame being in the first disposition on the generally horizontal, substantially planar surface when distal extremities of said first portion and said second portion are engaging the generally horizontal, substantially planar surface, and the support frame being in the second disposition on the object when said first portion is engaging the first surface and said second portion is engaging the second surface, said first portion and said second portion in combination maintaining the camera adjacent the edge.

3. Apparatus according to claim 2 wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

4. Apparatus according to claim 3 wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

5. Apparatus according to claim 2 wherein the support frame is in the first disposition when the first portion and the second portion engage the generally horizontal, substantially planar surface at three or more locations in a common plane, thereby preventing rotation of the support frame relative to the generally horizontal, substantially planar surface in any direction.

6. Apparatus according to claim 2 wherein the support frame is in the second disposition when a first distance from the edge to a location where the first portion engages the first surface is greater than a second distance from the edge to a location where the second portion engages the second surface, thus preventing rotation of the support frame.

7. Apparatus according to claim 1 wherein the object is a display screen for a laptop computer, and the second surface is the front of the display screen and the first surface is the back of the display screen.

8. Apparatus according to claim 1 wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates, about the second axis, relative to the support frame.

9. Apparatus according to claim 8 wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

10. Apparatus for supporting a camera, having a housing and a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support

8

frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, the support frame having a rear support element and a first and a second front support element, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when the first surface is inclined from a substantially horizontal position so that an uppermost extremity of the object is the edge, the support frame being maintained in said second disposition by said rear support element engaging said first surface and said first and second front support elements engaging the second surface, said rear support element and said first and second front support elements in combination preventing rotation of the support frame.

11. Apparatus according to claim 10 wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

12. Apparatus according to claim 11 wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

13. Apparatus according to claim 11 wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

14. Apparatus according to claim 10 wherein the support frame is in the first disposition when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface at three or more locations in a common plane of the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

15. Apparatus according to claim 10 wherein the support frame is in the first disposition positioned on the generally horizontal, substantially planar surface when the rear support element and the first and second front support elements engage the generally horizontal, substantially planar surface to prevent rotation of the support frame relative to the generally horizontal, substantially planar surface.

16. Apparatus according to claim 10 wherein support frame is in the second disposition when a first distance from the edge to a location where the rear support element engages the first surface is greater than a second distance from the edge to a location where the first and second front support elements engage the second surface, the first dis-

5,855,343

**9**

tance being greater than the second distance thus preventing rotation of the support frame.

**17**. Apparatus according to claim **10** wherein the hinge member includes a body having a proximal and a distal end, a pivot element at said proximal end of said body adapted to rotatably attach the camera to the body so that the camera rotates about the first axis relative to the body, and a hinge element at said distal end of said body hingedly attaching said body to the support frame so that said body rotates about the second axis relative to the support frame.

**18**. Apparatus according to claim **17** wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

**19**. A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge.

**20**. Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said

**10**

support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

**21**. Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

  a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member; and

  b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

\* \* \* \* \*



US005855343C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (9454th)

# United States Patent

Krekelberg

(10) **Number:**     US 5,855,343 C1

(45) **Certificate Issued:**     Dec. 26, 2012

(54) **CAMERA CLIP**

(75) Inventor: **David E. Krekelberg**, Minnetonka, MN (US)

(73) Assignee: **Globalmedia Group, LLC**, Scottsdale, AZ (US)

**Reexamination Request:**
No. 90/011,366, Dec. 6, 2010
No. 90/011,316, Dec. 30, 2010

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **5,855,343** |
| Issued: | **Jan. 5, 1999** |
| Appl. No.: | **08/814,168** |
| Filed: | **Mar. 7, 1997** |

(51) **Int. Cl.**
*A47G 29/00*     (2006.01)
*F16L 3/00*     (2006.01)

(52) **U.S. Cl.** ......................... **248/121**; 248/126; 248/918

(58) **Field of Classification Search** ........................ None
See application file for complete search history.

(56)                 **References Cited**

To view the complete listing of prior art documents cited during the proceedings for Reexamination Control Numbers 90/011,366 and 90/011,316, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — William Doerrler

(57)                 **ABSTRACT**

A clip for supporting a portable camera either on a surface or on an edge of a housing, and for protecting the lens of the camera when the camera is not being supported. The clip provides two axis of rotation to position the camera to any desired viewing angle. The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may be rotated to a second position to support the camera on the display screen of a laptop computer. When the camera is not being supported in the first position or the second position, the camera may be rotated to be releasably held by the clip to protect the camera and lens during storage.



US 5,855,343 C1

<table>
<tr><td>

**1**

**EX PARTE
REEXAMINATION CERTIFICATE
ISSUED UNDER 35 U.S.C. 307**

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims 1, 2, 5-8, 10, 14-17 and 19 are cancelled.

New claims **22-48** are added and determined to be
patentable.

Claims 3, 4, 9, 11-13, 18, 20 and 21 were not reexamined.

*22. Apparatus for supporting a camera, having a lens, on
any generally horizontal, substantially planar surface and on
an object having a first surface and a second surface and an
edge intersecting the first surface and the second surface,
comprising:*

*a. a hinge member adapted to be rotatably and perma-
nently attached to the camera, said camera, when the
hinge member is so permanently attached, rotating,
about a first axis of rotation, relative to said hinge mem-
ber; and*

*b. a support frame rotatably attached to said hinge member
and configured to support said hinge member on the
surface and the object, said hinge member rotating
about a second axis of rotation relative to said support
frame, said first axis of rotation being generally perpen-
dicular to said second axis of rotation, said second axis
of rotation being substantially parallel to the first sur-
face when said hinge member is supported on the object,
said support frame having a first disposition positioned
on said generally horizontal, substantially planar sur-
face, and said support frame having a second disposi-
tion attached to the object when said first surface and
said second surface are inclined from a generally hori-
zontal orientation, the camera being maintained adja-
cent said edge in said second disposition of said support
frame.*

*23. The apparatus of claim 22, wherein said hinge member
consists of a single, unitary body.*

*24. The apparatus of claim 22, wherein said hinge member
consists of a single piece of material.*

*25. The apparatus of claim 22, wherein said hinge member
consists of a unitary piece of material.*

*26. The apparatus of claim 22, wherein said hinge member
is adapted to be inserted inside a housing of said camera for
rotatably attaching said hinge member to said camera.*

*27. The apparatus of claim 22, wherein said hinge member
comprises a lip adapted for rotatably attaching said hinge
member to said camera.*

*28. The apparatus of claim 22, wherein said hinge member
comprises a neck having a lip, with said lip adapted for
rotatably attaching said hinge member to said camera,
wherein said lip has a wider circumference than said neck.*

*29. The apparatus of claim 22, wherein said hinge member
supports said camera from the bottom of said camera.*

*30. The apparatus of claim 22, wherein said hinge member
is rotatably attached to said camera at the bottom of said*

</td><td>

**2**

*camera, and wherein said hinge member is rotatably attached
to said support frame at the top of said support frame.*

*31. Apparatus for supporting a camera, having a lens, on
any generally horizontal, substantially planar surface and on
an object having a first surface and a second surface and an
edge intersecting the first surface and the second surface,
comprising:*

*a. a hinge member adapted to be rotatably attached to the
camera, said camera, when the hinge member is so
attached, rotating, about a first axis of rotation, relative
to said hinge member, wherein said hinge member con-
sists of a single, unitary body; and*

*b. a support frame rotatably attached to said hinge member
and configured to support said hinge member on the
surface and the object, said hinge member rotating
about a second axis of rotation relative to said support
frame, said first axis of rotation being generally perpen-
dicular to said second axis of rotation, said second axis
of rotation being substantially parallel to the first sur-
face when said hinge member is supported on the object,
said support frame having a first disposition positioned
on said generally horizontal, substantially planar sur-
face, and said support frame having a second disposi-
tion attached to the object when said first surface and
said second surface are inclined from a generally hori-
zontal orientation, the camera being maintained adja-
cent said edge in said second disposition of said support
frame.*

*32. The apparatus of claim 30, wherein said hinge member
is rotatably and permanently attached to the camera.*

*33. The apparatus of claim 30, wherein said hinge member
consists of a single piece of material.*

*34. The apparatus of claim 31, wherein said hinge member
consists of a unitary piece of material.*

*35. The apparatus of claim 31, wherein said hinge member
is adapted to be inserted inside a housing of said camera for
rotatably attaching said hinge member to said camera.*

*36. The apparatus of claim 31, wherein said hinge member
comprises a lip adapted for rotatably attaching said hinge
member to said camera.*

*37. The apparatus of claim 31, wherein said hinge member
comprises a neck having a lip, with said lip adapted for
rotatably attaching said hinge member to said camera,
wherein said lip has a wider circumference than said neck.*

*38. The apparatus of claim 31, wherein said hinge member
supports said camera from the bottom of said camera.*

*39. The apparatus of claim 31, wherein said hinge member
is rotatably attached to said camera at the bottom of said
camera, and wherein said hinge member is rotatably attached
to said support frame at the top of said support frame.*

*40. Apparatus for supporting a camera, having a lens, on
any generally horizontal, substantially planar surface and on
an object having a first surface and a second surface and an
edge intersecting the first surface and the second surface,
comprising:*

*a. a hinge member adapted to be permanently rotatably
attached to the camera, said camera, when the hinge
member is so permanently rotatably attached, rotating,
about a first axis of rotation, relative to said hinge mem-
ber; and*

*b. a support frame permanently rotatably attached to said
hinge member and configured to support said hinge
member on the surface and the object, said hinge mem-
ber rotating about a second axis of rotation relative to
said support frame, said first axis of rotation being gen-
erally perpendicular to said second axis of rotation, said
second axis of rotation being substantially parallel to*

</td></tr>
</table>

US 5,855,343 C1

**3**

the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

41. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

    a. a hinge member adapted to be permanently rotatably joined to the camera, said camera, when the hinge member is so permanently rotatably joined, rotating, about a first axis of rotation, relative to said hinge member; and

    b. a support frame permanently rotatably joined to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

42. The apparatus of claim 1, wherein said hinge member is adapted to be inserted inside a housing of said camera for permanently rotatably attaching said hinge member to said camera.

43. The apparatus of claim 1, wherein said hinge member is adapted to be inserted inside a joint within a housing of said camera for rotatably attaching said hinge member to said camera.

44. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

    a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member, wherein said hinge member comprises a lip adapted for rotatably attaching said hinge member to said camera.; and

    b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally hori-

**4**

zontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

45. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface, and an edge intersecting the first surface and the second surface, comprising:

    a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member, wherein said hinge member comprises a neck having a lip, with said lip adapted for rotatably attaching said hinge member to said camera, wherein said lip has a wider circumference than said neck; and

    b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

46. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

    a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

    b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, wherein the support frame has a front support element and rear support element, and wherein the front support element is configured to engage the object at the intersection of the first surface and the edge, and at the intersection of the second surface and the edge, when said first surface and said second surface are inclined from a generally horizontal orientation, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

47. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on

US 5,855,343 C1

| 5 | 6 |

an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, wherein the support frame has a front support element and rear support element, and wherein the front support element is configured to engage the object at the intersection of the first surface and the edge, at the intersection of the second surface and the edge, and at the second surface, when said first surface and said second surface are inclined from a generally horizontal orientation, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

48. The hinge member of claim 1, wherein the support frame has a front support element and rear support element, wherein the front support element is configured to sit atop a portion of a length of the edge between the first surface and the second surface when said first surface and said second surface are inclined from a generally horizontal orientation.

* * * * *

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ADJUSTACAM LLC, | |
| Plaintiff, | Case No. 6:10-CV-329-LED |
| vs. | |
| AMAZON.COM, INC., ET AL., | JURY TRIAL DEMANDED |
| Defendants. | |

## ORDER GRANTING MOTION TO WITHDRAW

The Unopposed Motion to Withdraw Motion to Correct or, in the Alternative, to Amend Judgment ("Motion"), having been filed by Defendants Newegg Inc., Newegg.com Inc., and Rosewill Inc., and the Court, having reviewed the Motion and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that Defendants' Motion is granted and Defendants' Opposed Motion to Correct or, in the Alternative, to Amend Judgment (Dkt. 763) is hereby withdrawn.

IT IS FURTHER ORDERED that the Clerk shall transmit to the United States Court of Appeals for the Federal Circuit a certified copy of the docket entries showing that the Defendants' Opposed Motion to Correct or, in the Alternative, to Amend Judgment has been resolved in order that this matter may proceed to appeal.

**So ORDERED and SIGNED this 31st day of March, 2014.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

A0176

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC., ET AL. | |

### PLAINTIFF'S NOTICE OF APPEAL

Notice is hereby given that Plaintiff AdjustaCam LLC in the above named case hereby appeals to the United States Court of Appeals for the Federal Circuit from the following:

1. Memorandum Opinion and Order filed April 10, 2012 (Doc. No. 627) regarding claim construction, including construction relative to the following terms: rotatably attached / adapted to be rotatably attached / adapted to rotatably attach.

2. Order filed June 7, 2012 (Doc. No. 650) overruling Plaintiff's objections to claim construction ruling and adopting the foregoing Memorandum Opinion and Order; and

3. Final Judgment, entered in this action on August 20, 2013 (Doc. No. 762).

Plaintiff also appeals to the United States Court of Appeals for the Federal Circuit all other opinions, orders, findings, or rulings prior to, during, or after the trial of the above-named case that were adverse to Plaintiff.

September 17, 2013                          Respectfully submitted,

                                           /s/ *John J. Edmonds*
                                           John J. Edmonds – LEAD COUNSEL
                                           Texas Bar No. 789758
                                           Stephen F. Schlather
                                           Texas Bar No. 24007993

Johnathan K. Yazdani
Texas Bar No. 24079616
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (713) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
sschlather@cepiplaw.com
jyazdani@cepiplaw.com

ATTORNEYS FOR PLAINTIFF
ADJUSTACAM LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record are being served with a copy of this document pursuant to Fed R. App. P. 3(d) and that all who are deemed to have consented to electronic service are being served with a copy of this document via the District Court's CM/ECF system per Local Rule CV-5(a)(3).

September 17, 2013

/s/ *John J. Edmonds*
John J. Edmonds

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC, | |
| Plaintiff, | Case No. 6:10-CV-329-LED |
| vs. | |
| AMAZON.COM, INC., ET AL., | |
| Defendants. | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that defendants Newegg Inc., Newegg.com Inc., and Rosewill, Inc.

appeal to the United States Court of Appeals for the Federal Circuit from the following orders and

judgments:

  i.    Final Judgment, entered in this action on August 20, 2013 (Dkt. # 762); and

  ii.   Order denying Newegg Inc., Newegg.com Inc., and Rosewill Inc.'s Sealed Motion for
        Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses, entered
        in this action on August 19, 2013 (Dkt. # 761).

DATED THIS 17th day of September, 2013.

Respectfully submitted,

By _/s/ Dana M. Herberholz_____
   John N. Zarian (*Admitted E.D. Texas*)
   Dana M. Herberholz (*Admitted E.D. Texas*)
   960 Broadway, Suite 250
   Boise, Idaho 83706
   Telephone:  (208) 562-4900
   Facsimile:  (208) 562-4901
   E-mail:  jzarian@parsonsbehle.com

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC.;  ET AL. | JURY |

**PLAINTIFF'S RESPONSE TO SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR
DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND
NON-TAXABLE EXPENSES**

*FILED UNDER SEAL*

Plaintiff AdjustaCam, LLC ("AdjustaCam")[1] submits this response to the above-styled motion filed by Sakar International, Inc. ("Sakar"), as follows:

## I.    Introduction.

During the pendency of this case, the U.S. Patent & Trademark Office ("USPTO") concluded lengthy[2] reexamination proceedings by finding the Asserted Claims of U.S. Patent No. 5,855,343 (the "'343 patent")[3] to be unpatentable over certain prior art. Exhibit 1; Exhibit 4.   However, the USPTO also held that multiple new and amended claims were patentable. *Id.*  Rather than pursue lengthy and expensive appellate proceedings, which might exhaust most of the remaining term[4] of the '343 patent, Plaintiff canceled the rejected claims so that a reexamination certificate could issue with the new and amended claims. Exhibit 1; Exhibit 5.   In view of the fact that the asserted claims of the patent-in-suit were canceled, in good faith Plaintiff promptly sought to dismiss Sakar from the case.   However, Sakar was not content at being dismissed.   Instead it demanded a covenant not to sue on the canceled claims (which was unnecessary, since they were being canceled and since Sakar would be dismissed with prejudice) Sakar also sought a covenant not to sue on the soon to be issued reexamination claims (which Sakar was not entitled to receive).   After a lengthy negotiation process that spanned over two months, Sakar finally agreed to be dismissed.   Sakar now seeks to take advantage of its good fortune in benefitting from reexamination proceedings filed by an unrelated party, and to distort its good fortune – and AdjustaCam's good faith dismissal – into an unwarranted exceptional case finding.

---

[1] In its Motion, Sakar points out that AdjustaCam has affiliated entities which have also filed unrelated patent suits on unrelated patents.   That is wholly irrelevant to any issues in this case, and if anything, shows the lengths to which Sakar must sink in an unsuccessful attempt to support its legally and factually meritless motion.

[2] Reexamination proceedings lasted from December 10, 2010 through December 26, 2012. Exhibit 1.

[3] The patent-in-suit is the '343 patent. Exhibit 2.

[4] The '343 patent expires on March 17, 2017, which is approximately fifty-two (52) months from the issuance of the reexamination certificate.   The appellate process for reexaminations is notoriously lengthy.   For example, in FY 2012 the average pendency of an appeal in the Patent & Trademark Appeal Board (formerly known as the Board of Appeals & Patent Interferences) was *thirty-six (36)* months. *See* http://www.uspto.gov/ip/boards/bpai/stats/perform/fy2012_perform.jsp.   Further, appeals from the PTAB to the Federal Circuit currently take approximately 10 months from filing to disposition. *See* Chart entitled "*Median Disposition Time for Cases Decided by Merits Panels*" at http://www.cafc.uscourts.gov/the-court/statistics.html.

1

ATTORNEY'S EYES ONLY

In essence, Sakar alleges that it should have been dismissed earlier – either in April, when the Court issued its *Markman* Order, or at some unspecified time prior to the final office action in the lengthy reexamination proceedings. Sakar's arguments and allegations lack both factual and legal support. Sakar has not shown that its arguments are factually correct, or that this is an exceptional case, and it certainly has not met its burden of proving an exceptional case by clear and convincing evidence.

## II.    Factual background.

### A.    The '343 patent.

The two previously asserted independent claims of the '343 patent (nos. 1 and 19), each cover an apparatus comprising a hinge member rotatably attached to a camera, and a support frame rotatably (claim 1) or hingedly (claim 19) attached to the hinge member, the support frame having a first disposition on a surface and a second disposition on an inclined object. *Id.*

### B.    The Court's *Markman* Order.

Sakar's Motion appears to focus on the "rotatably attached" element in claims 1 and 19. On April 10, 2012, the Court issued a Memorandum Opinion and Order (Dkt. No. 627 & Exhibit 3). In its *Markman* Order, the Court rejected both sides proposed construction of "rotatably attached," and found that, "[w]hile the Court has not explicitly construed the 'rotatably attached' terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, i.e., 'rotatably attached' objects in the patent-in-suit are limited to a single axis of rotation." *Id.* at 10. Due to the Court's construction of "rotatably attached," AdjustaCam dropped sixteen (16) webcams from the suit because the rotatable attachment between the hinge member and camera was not limited to a single axis of rotation.[5] Exhibit 1.

### C.    The dismissal of Sakar was not based upon any weakness in AdjustaCam's claims. Rather, AdjustaCam made the difficult decision to cancel the Asserted Claims – thus mooting the claims against Sakar – so that a Reexamination Certificate could issue with multiple new and amended claims.

---

[5] The dropped webcams were the HP 3100, Gearhead WC 740, Gearhead WC 745, Gearhead WC 750, Gearhead WC 740I, Gearhead WC 1100, Gearhead WC 1200, Gearhead WC 1300, Gearhead WC 1400, Gearhead WC 1500, Gearhead WCF 2600, Gearhead WCF 2750, Gearhead WC 4750 and Gearhead WC 8301. Exhibit 1 (Edmonds Declaration).

2

ATTORNEY'S EYES ONLY

On August 30, 2012, at the culmination of reexamination proceedings involving the '343 patent, the USPTO issued a Final Office Action rejecting the Asserted Claims as being unpatentable but allowing additional new and amended claims. Exhibit 4.  On September 20, 2012, in response to that Final Office Action, AdjustaCam canceled the Asserted Claims of the '343 patent, Exhibit 5, so that a certificate of reexamination could issue concerning the multiple new and amended claims deemed allowable. Exhibit 1.[6]

After a week of unsuccessful negotiations wherein AdjustaCam sought to dismiss Sakar due to the cancelation of the Asserted Claims, on September 30, 2012, AdjustaCam filed an opposed motion to dismiss Sakar. Dkt. No. 721.  As noted in AdjustaCam's Motion to Dismiss:

> The cancellation of the Asserted Claims in reexamination proceedings moots or near moots[7] the issues remaining in this case – e.g., infringement of the Asserted Claims, validity of the Asserted Claims and damages due for infringement of the Asserted Claims. At this point, all Defendants except Sakar/Kohl's have been dismissed either by settlement or mutual agreement. See, e.g., Orders of Dismissal at Doc Nos. 665, 671, 672, 673, 674, 675, 677 and 720. The most recent dismissal, which was also brought about by the cancelation of the Asserted Claims, occurred two days ago and was handled by agreement. See Doc Nos. 719 & 720.
>
> Despite the foregoing, for reasons that perhaps it can explain to the Court, Sakar/Kohl's will not agree to being dismissed from this case with prejudice.
>
> In order to overcome Sakar/Kohl's opposition to being dismissed with prejudice relative to canceled asserted claims that are no longer in dispute, AdjustaCam has taken the further step of granting Sakar/Kohl's a covenant not to sue under the '343 patent. Exhibit 2. Irrespective of the canceled claims and irrespective of Sakar/Kohl's opposition to being dismissed with prejudice, AdjustaCam's covenant not to sue under the '343 patent divests the Court of subject matter jurisdiction with respect to Sakar/Kohl's First and Second counterclaims in this matter, since they relate solely to Sakar/Kohl's claims that it does not infringe the '343 patent and that the '343 patent is invalid.

Dkt. No. 721, pp. 2-3.

On October 8, 2012, Sakar responded to AdjustaCam's Motion to Dismiss.  It made several criticisms of the covenant-not-to sue, none of which were legally supported, and also asserted its real issue, which was that, "Plaintiff's proposed covenant does not prevent Plaintiff from suing Sakar/Kohl's for infringement of the allowed reexamined claims of the '343 patent (which will issue imminently)." Dkt. No.

---

[6] The Reexamination Certificate ultimately issued on December 26, 2012. Exhibit 1.

[7] Although the Asserted Claims were canceled on September 20, 2012, under USPTO regulations in effect at the time, although the patentee cancels claims in an office action response, the actual cancelation (although inevitable) does not occur until the certificate of reexamination issues.

3

ATTORNEY'S EYES ONLY

725, p. 2. *See also* Sakar's Proposed Order at Dkt. No. 725-5, p. 2 (seeking to have the Covenant amended as "including any new claims that issue as a result of reexamination."). Sakar had no legal support for this demand.  On October 12, 2012, AdjustaCam filed a Reply pointing out the lack of legal support for Sakar's positions. Dkt. No. 729. The Court ultimately set AdjustaCam's Motion to Dismiss Sakar for hearing on December 18, 2012.  Finally, on December 14, 2012, the parties agreed on language for a covenant not-to-sue and the claims and counterclaims between Plaintiff and Sakar were mutually dismissed by agreement. Dkt. No. 744. The covenant-not-to sue Sakar did not include the broad rights under the reexamined claims that Sakar/Kohl's demanded. <u>Exhibit 1</u>.[8]  Sakar finally relented on that issue because it knew all along that it had no legal ground to stand on.

### D.    AdjustaCam's infringement claims against Sakar were never baseless.  Sakar's non-infringement argument lacks merit.

As noted above, AdjustaCam dismissed Sakar because it had to cancel the Asserted Claims so that a reexamination certificate could issue which provided for multiple new and amended claims which the USPTO determined were patentable. <u>Exhibit 1</u>.  Although AdjustaCam respectfully disagreed with the USPTO's determination that the asserted claims were unpatentable, it canceled those claims in the interest of avoiding expensive and protracted appellate proceedings which would have resulted in the loss of most, if not all, of the remaining patent term of the '343 patent. *Id.* Sakar's allegation that they were dismissed because AdjustaCam's infringement case lacked merit is baseless. Apparently, Sakar contends that its accused Kodak S101 and Kodak T130 webcams have "ball and socket" joints, which it alleges lack a rotatable attachment limited to a single axis between the hinge member and the camera and that, as such, AdjustaCam should have dismissed Sakar in April (when the Court issued its *Markman* Order) instead of September.

---

[8] The only mention of reexamined claims in the final version of the covenant was that Sakar/Kohl's could sell off existing inventory; however, they already had that "intervening right" under 35 USC § 307(b). <u>Exhibit 1</u>. Sakar/Kohl's dropped their longstanding demand for a full covenant not to sue under the reexamined claims, for which – despite multiple requests – they never provided any legal basis. *Id.*

ATTORNEY'S EYES ONLY

In the first instance, Sakar's newfound indignance over non-infringement is inconsistent with its conduct during this litigation.  First, Sakar did not articulate this non-infringement theory in its response to AdjustaCam's interrogatory requesting the basis for its contention of non-infringement.  Exhibit 6, pp. 14-16.  Second, Sakar's Rule 30(b)(6) designee had no factual basis to support its non-infringement position.  Exhibit 7, pp. 49-52 & 54. Third, if the issue of infringement had been so cut and dried after the Court issued its *Markman* Order in April 2012, Sakar presumably would have promptly raised the issue with either AdjustaCam or the Court (for example, via a letter brief or motion).  However, it did neither.

Irrespective of the foregoing, Sakar's motion alleging non-infringement by its Kodak S101 and Kodak T130 webcams, and that AdjustaCam went "against" the Court's Claim Construction Order, lacks factual or technical merit.  The only non-infringement argument raised by Sakar is the limitation in the two independent Asserted Claims (claims 1 and 19) that the "hinge member" is "adapted to be rotatably attached" to the camera. As noted above, in its *Markman* Order, the Court construed "rotatably attached" as "rotating over a single axis."  As AdjustaCam's technical expert Dr. Muskivitch has explained in detail, AdjustaCam's infringement positions are entirely consistent with the Court's construction.  Exhibit 8, pp. 143-45, 149-54, 154-55, 158-59, 287-88 & 327-29. *See also* Exhibit 9 (Muskivitch CV).

What Sakar alleges is a "ball and socket joint" is actually a *modified* joint with a socket and no ball.  *See Id.* at pp. 71.  It is modified because there is a channel that restricts movement, as noted by the following red arrows:



ATTORNEY'S EYES ONLY

Exhibit 1 & Exhibit 8, p. pp. 143-45, 94-95, 151-52, 154-55 & 159. This restricted movement results in two functionally independent joints which have ranges of movement independent of each other. *Id.*, pp. 94-95, 143-45, 149-50, 287-88 & 327-29. One of these joints – the one which allows the camera to pan left and right relative to its base – meets the claim limitation of the hinge member being rotatably attached to the camera in a single axis of rotation. *Id.* at pp. 69-70, 91, 97-98, 143, 149-50, 151-52, 287-88 & 327-29.

Further, there is no "ball" in the joints for the Kodak S101 and Kodak T130 webcams. There is, instead, a semi-circular disk, as follows:[9]



Although what matters is the physical behavior of a joint – not its physical configuration that causes such behavior – it is notable that Sakar is so misguided or mistaken that it wholly mischaracterizes the physical configuration of its own products as a "ball."

Not only is AdjustaCam's infringement position entirely consistent with the Court's *Markman* Order and properly supported by AdjustaCam's technical expert, but it is also consistent with the preferred embodiment of the '343 patent. As can be seen, the preferred embodiment webcam has essentially the same configurability and range of movement as Kodak webcams:

---

[9] Exhibit 1. Sakar's own technical expert Dr. Hamilton described this semicircular piece as a "hemisphere," not a ball. Exhibit 10, p. 63.

6

ATTORNEY'S EYES ONLY



Fig. 4

Sakar's allegation that the Kodak S101 and Kodak T130 webcams do not meet the "rotatably attached" element (as construed by the Court) lacks merit. AdjustaCam's infringement position (1) is correct from a technical perspective; (2) follows the Court's construction; (3) is properly supported by reasoned analysis from AdjustaCam's technical expert; and (4) accords with the preferred embodiment.

Sakar's allegations of "admissions" by AdjustaCam's technical expert Dr. Muskivitch are meritless and evidence a fundamental misunderstanding of the '343 patent as construed by the Court. On the one hand, Sakar argues (meritlessly) that Kodak S101 and Kodak T130 webcams allow rotation around "multiple axes" at the hinge member. Sakar's Motion at pp. 7-8.On the other hand, Sakar argues that these alleged "admissions" show that the same webcams do not rotate around *any* axis relative to the hinge member. Sakar's Motion at pp. 8-9.

Further, AdjustaCam's technical expert Dr. Muskivitch explained that the webcams, via their stem appendage, rotate about a single axis of rotation around the hinge member. *See, e.g.,* Exhibit 8, pp. 287-88; Exhibit 10, part 2, pp. MV000138-39 & MV000146-47. Moreover, the USPTO agrees that a camera can be rotatably attached to a hinge member via an appendage. As stated by the USPTO when it finally rejected the Asserted Claims in view of the Irifune publication, "Irifune shows a hinge (around shaft 1) which is rotatably attached to the camera using threaded camera attachment shaft 9." Exhibit 4, p. 7. Camera attachment shaft 9 (although AdjustaCam disagreed with the USPTO that it was rotatably attached to the hinge member because it had to be firmly screwed down to work), is analogous to the stem appended to the Kodak webcams at issue. Further, although the USPTO ultimately withdrew its objections

7

ATTORNEY'S EYES ONLY

based upon the Ma '783 patent for different reasons, the USPTO took the position that "support frame (3) [is] rotatably attached to the hinge member (via 2 and 21) about a second axis of rotation (2)." Exhibit 12, p. 6.  The foregoing are illustrated by Figure 2 from Irifune and Figure 1 from Ma, as follows:



*See* Exhibit 13 (Irifune), Fig. 2,[10] and Exhibit 14 (Ma), Fig. 1. Notably, Sakar cites no expert support for its argument that AdjustaCam's technical expert somehow "admitted" a non-infringement theory that Sakar contradicts in its own Motion, and which Sakar does not even appear to understand or even explain.

### E.     AdjustaCam did not file this case for the purpose of obtaining "nuisance value" settlements.

Sakar's allegation that AdjustaCam has obtained "nuisance value settlements" is baseless hyperbole and speculation.  The amounts of AdjustaCam's settlements with the various defendants are directly related to its target royalty of $1.25 - $1.50 per webcam.  This royalty rate was established many years before this suit and before AdjustaCam even obtained rights in the '343 patent.

AdjustaCam's damages expert Mr. Bratic issued an extensive, well-reasoned report opining that the reasonable royalty for infringement of the '343 patent is $1.25 - $1.50 per webcam. Exhibit 15; *See* Exhibit 16 (Bratic CV); Exhibit 17 (Bratic depo).  As discussed in the Bratic damages report, on October 22, 2001, AdjustaCam's predecessor PAR Technologies entered into a Settlement and License Agreement with Philips. Exhibit 15 at pp. 15-16.  This agreement called for running royalties on webcam sales as follows:

_____

[10] The camera of Irifuni is connected with attachment screw 9 is demonstrated by Fig. 9 of Irifune:

8

ATTORNEY'S EYES ONLY

0 – 20,000 units: $1.00 / unit; 20,001 - 40,000: $2.00 / unit; 40,001 - 60,000: $6.00 / unit; and more than 60,000: $8.00 / unit. *Id.* at p. 16. Using the unit ranges of 0 - 20,000 ($1.00 / unit) and 20,001 - 40,000 ($2.00 / unit) as a conservative baseline, PAR was expected to receive an average royalty payment of approximately $1.50 per licensed product. *Id.* at p. 17.

Further, as detailed in the Bratic damages report, on December 31, 2001, PAR entered into a Settlement and License Agreement with ███ involving rights to the '343 Patent. *Id.* That agreement called for running royalties of $1.25 per webcam for total aggregate royalties up to $2 million. *Id.* In fact, to date ███ has paid post-suit running royalties on over 2.2 million units, Exhibit 17, p. 52, which is far from "nuisance value."

In its licensing program for this litigation, AdjustaCam used this $1.25 - $1.50 per webcam royalty rate as a baseline for licensing the various defendants. Exhibit 15, pp. 18-32; Exhibit 17, pp. 36-40 & 44; & Exhibit 18 (AdjustaCam Rule 30(b)(6) depo), pp. 4, 67-68 & 72-74. Specifically, AdjustaCam entered into six (6) settlement and license agreements for rights to the '343 Patent that included both a lump-sum payment relating to a certain number of units of webcams and also a running royalty rate for sales of webcams that exceed the units sold that were covered by the lump-sum payment. Exhibit 15, p. 18. The implied royalty rate related to the lump-sum payments was approximately $1.50 per unit for five license agreements and $1.25 per unit for one license agreement. *Id.* The running royalty rates for sales of units exceeding the volume included in the lump-sum payments for each of the six (6) licenses were $1.50 per unit. *Id.*

Further, AdjustaCam entered into 14 settlement and license agreements for rights to the '343 Patent that included only a paid up, lump-sum payment. *Id.* at p. 22. For these licenses AdjustaCam also considered, and negotiated using the benchmark of, the same $1.25 to $1.50 per unit royalty rates its predecessor had obtained from the Philips and ███ licenses discussed above. *Id.*

AdjustaCam's use of the $1.25 - $1.50 benchmark for its licensing negotiations with the various defendants was explained in detail in the deposition of AdjustaCam's Rule 30(b)(6) designee and by

9

ATTORNEY'S EYES ONLY

AdjustaCam's damages expert Mr. Bratic. <u>Exhibit 15</u>, pp. 18-32. & <u>Exhibit 17</u>, pp. 4, 67-68 & 72-74. Further, Mr. Bratic's report explains in detail how the sums paid to AdjustaCam in settlement tie directly to this $1.25 - $1.50 benchmark. <u>Exhibit 15</u>, pp. 18-32. The amounts of settlement agreements with AdjustaCam are tied to the value of the patented technology, not to any "nuisance value."

Sakar's Motion relies upon the hearsay opinions of a damages expert that Sakar did not even designate,[11] without laying any predicate for those opinions being well founded or reliable. In fact, they are deeply flawed. For example, Dr. Sullivan's purported "imputed royalty" calculations (1) improperly include sales volumes for webcam sales for which no royalties were recoverable due to the lack of pre-suit marking, *see* <u>Exhibit 22</u>, pp. 114-115 & <u>Exhibit 17</u>, p. 45; (2) improperly fail to account for the fact that some defendants' infringing sales numbers declined via the doctrine of exhaustion once companies upstream of them took licenses, <u>Exhibit 22</u>, pp. 104-05; (3) improperly include sales numbers which were not provided to AdjustaCam when the licenses were negotiated, *see id.* at p. 117 & <u>Exhibit 17</u>, p. 50; and (4) improperly include assumptions of linear sales into the future, <u>Exhibit 22</u>, at pp. 118-19, despite the fact that Dr. Sullivan also opines that webcam sales are in a decline. *Id.* at pp. 34-35.

## III.    Legal Standards.

Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." Once it is determined that the party seeking fees is a prevailing party, determining whether to award attorneys' fees under 35 U.S.C. § 285 is a two-step process. *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012). First, a prevailing party must establish by clear and convincing evidence that the case is "exceptional." *Id.* "It is established law under section 285 that absent misconduct in the course of the litigation or in securing the patent, sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* The requirement that the litigation be

---

[11] <u>Exhibit 11</u>, p. 3 ("Quant Economics has been retained by counsel on behalf of Best Buy Co., Inc. ("Best Buy"); Gear Head, LLC ("Gear Head"); Hewlett-Packard Company ("Hewlett-Packard" or "HP"); Micro Electronics, Inc. ("Micro Center"); Newegg, Inc. ("Newegg"); Rosewill Inc. ("Rosewill"); and Wal-Mart Stores, Inc. ("Walmart") (collectively, "Defendants").").

10

ATTORNEY'S EYES ONLY

objectively baseless "does not depend on the state of mind of the [party] at the time the action was commenced, but rather requires an objective assessment of the merits." *Id*. at 1308-09. "To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." *Id.* at 1309. This is known as the subjective prong of the inquiry. *Id.* This same objective/subjective standard applies for both patentees asserting claims of infringement and alleged infringers defending against claims of infringement. *Id.* With respect to the subjective prong, "there is a presumption that an assertion of infringement of a duly granted patent is made in good faith." *Id.*

Even if a case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. *Id.* "[T]he amount of the attorney fees [awarded] depends on the extent to which the case is exceptional." *Id.*

## IV.    Argument.

### A.    Sakar's reliance upon the Eon-Net case is misplaced, because that case has no meaningful similarities to this one.

Sakar's reliance upon the *Eon-Net* case is misplaced. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011).  In *Eon-Net*, the Federal Circuit affirmed a District Court's exceptional case finding based upon the totality of (1) Eon-Net destroying relevant documents from a prior lawsuit prior to filing suit; (2) Eon–Net failing to engage in the claim construction process in good faith; (3) Eon-Net displaying a "lack of regard for the judicial system" and a "cavalier attitude" towards the "patent litigation process as a whole," as evidenced by an interrogatory response which "snidely stated" that "the skill in the art required is that sufficient to converse meaningfully with [Eon-Net's president] Mitchell Medina," and statements by Mr. Median at his deposition that it was "an inconvenience and a bother"; (4) because the written description of the patent-in-suit repeatedly defined the invention as a system for processing information that originates from hard copy documents, which the Defendant Fisher did not do; and (5) Eon-Net had had filed over 100 lawsuits, with each complaint being followed by a "demand for a quick settlement … using a license fee schedule based on the defendant's annual sales: $25,000 for sales less

ATTORNEY'S EYES ONLY

THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE

than $3,000,000; $50,000 for sales between $3,000,000 and $20,000,000; and $75,000 for sales between $20,000,000 and $100,000,000." *Eon-Net* is an extreme case. None of these facts, or anything close to them, are present in this case.

Sakar alleges that this case is exceptional because "Plaintiff employed the strategy of exploiting the high cost of defending." This allegation is baseless because, as explained above (and further below), AdjustaCam's settlement numbers were tied to a pre-established unit royalty of $1.25 - $1.50 per infringing device and the size of its settlements were directly related to the amount of infringement by each defendant, not to any cost of litigation considerations. This allegation is also meritless because, as explained above, AdjustaCam's settlements were not premised upon "baseless infringement claims."

**B.      AdjustaCam did not extract nuisance settlements from any defendants. AdjustaCam's settlements were directly related to each Defendants' number of infringing units and an established royalty.**

As explained in Section II.E above and in further detail in the expert report of AdjustaCam's damages expert, Mr. Bratic, AdjustaCam's settlements in this case followed the $1.25 - $1.50 per webcam royalty which had been established years prior with the Philips and ███████ licenses. AdjustaCam's settlements with the various defendant are directly linked to their sales volumes and to this $1.25 - $1.50 per unit royalty.

There has been no "extortion" of "nuisance value settlements." This case is far different from *Eon-Net*, in which the plaintiff would file complaints followed by a "demand for a quick settlement … using a license fee schedule based on the defendant's annual sales: $25,000 for sales less than $3,000,000; $50,000 for sales between $3,000,000 and $20,000,000; and $75,000 for sales between $20,000,000 and $100,000,000."

In one line, Sakar makes the bold and baseless assertion that Mr. Bratic's expert opinions in this case "clearly do[] not meet the requirements of Rule 702 of the Federal Rules of Evidence." To the contrary, Mr. Bratic's Report contains a detailed and reasoned analysis of the facts and the *Georgia-Pacific* factors. Notably, Sakar did not raise this issue during the litigation, for instance by filing a motion

ATTORNEY'S EYES ONLY

to strike Mr. Bratic's opinions. This is likely because Mr. Bratic's report properly takes into account the best measure of the value of the patented technology -- what prior licensees paid as a unit royalty for similar infringing products. When, as here, "the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 589 F.3d 1246, 2009 WL 4911950, at \*14 (Fed. Cir. Dec. 22, 2009). Sometimes – as Sakar has mistakenly done here – litigants "conflate the question of whether the methodology involved is proper with whether the expert's conclusions are proper." *Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180757, \*2 (E.D. Tex. April 28, 2008). The role of the court under *Daubert* is to "ensure that a theory or technique ... can be (and has been) tested," [citation omitted], "not to evaluate the correctness of facts underlying one expert's testimony." *Anascape, Ltd.*, 2008 WL 7180757, \*2. When defendants attack the "data relied on" by an expert, rather than the "methodology he relied upon to reach his results," this "goes to the weight to be given to, rather than the admissibility of, the expert's testimony." *Id. See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006) (an attack on the underlying data of an expert's report goes to its weight rather than admissibility). Further, factual disputes concerning the data underlying an expert's opinions are not grounds for exclusion under *Daubert. Anascape, Ltd.*, 2008 WL 7180757, \*2. *See State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1072 (Fed.Cir.2003). In short, Sakar's allegations of litigation misconduct are built on a house of cards that relies upon baseless allegations that AdjustaCam's damages expert's opinions should somehow be ignored. The fact that Sakar disagreed with the licensed relied upon Mr. Bratic in calculating a reasonable royalty was a factual dispute that could have only been resolved by a jury informed by direct and cross examination. *See, e.g., Harris Corp. vv. Ruckus Wireless, Inc.,* No. 6:11-cv-00618-CEH-KRS, p. 5 (M.D. Fla. Jan. 16, 2013) (denying *Daubert* challenge because complaints about licensed relied upon "go[] to the weight to be accorded Ostiller's opinions and not the admissibility of the opinions."); *Gen-Probe Inc. v. Becton Dickinson & Co.,* No. 09-CV-2319 BEN NLS, 10-CV-0602 BEN NLS (S.D. Cal.

13

ATTORNEY'S EYES ONLY

Nov. 26, 2012) (denying *Dauber*t challenge and holding that complaints about licensed relied upon by damages expert were "appropriate fodder for cross-examination").

Sakar also alleges in a footnote that AdjustaCam's damage expert Mr. Bratic violated *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), because he did not argue that "the webcam clip was the basis of consumer demand for the accused products." To the contrary, Mr. Bratic opined that "a reasonable royalty rate of $1.25 represents the contribution of the Accused Feature to the overall device." Exhibit 13, p. 5. Further, Mr. Bratic was relying upon prior licenses for the exact *same* technology. When an expert is relying upon prior licenses with unit royalties for the exact same technology for a running royalty, there is no need to conduct any further apportionment. The running royalty has already accomplished that.

Sakar also complains that Mr. Bratic "admitted that his opinion was not influenced by the cost or sales price of the accused products or the cost of the patented feature (a clip) of the accused products on the grounds that the cost of the patented feature is 'not relevant.'" However, Sakar fails to explain why the manufacturing cost of an infringing product should be considered in the reasonable royalty analysis. Mr. Bratic was entirely correct in deeming manufacturing costs irrelevant to the reasonable royalty determination. *See* Exhibit 17, p. 77 (Bratic Depo). Further, Mr. Bratic's determination of the appropriate reasonable royalty relied substantially on an established royalty rate and the number of infringing units sold.

Sakar also complains that Mr. Bratic and AdjustaCam's Rule 30(b)(6) designee were "unaware of the number of units that any defendant sold prior to settling with AdjustaCam." Motion at p. 7. However, this ignores the fact that both Mr. Bratic and AdjustaCam's Rule 30(b)(6) designee relied upon conversations they had with Mr. Steve Wong, the person who was directly involved with the disputed settlement negotiations. Exhibit 17, (Bratic Depo), pp. 41-42 & 44-45; Exhibit 18 (Haynes Depo), pp. 73-74. Mr. Bratic and Mr. Haynes – just like a jury – were entitled to rely upon the clear recollection of Mr. Wong – the person with direct knowledge of settlement negotiations, and the person who Sakar never

14

ATTORNEY'S EYES ONLY

bothered to depose – of the unit volumes provided by the settling defendants being consistent with an implied royalty of $1.25 - $1.50 per webcam.  Further, the ████ and Phillips licenses that formed the foundation of the reasonable royalty contained express unit royalty provisions, Exhibit 13, p. 17, so there was no need to calculate sales volumes for purposes of an implied royalty rate.

**C.**    **AdjustaCam's infringement claims were not brought in bad faith nor were they objectively baseless.**

Sakar's motion alleging non-infringement by the Kodak S101 and T130 webcams lacks factual or technical merit.  The only non-infringement argument raised by Sakar is the limitation in the two independent Asserted Claims (claims 1 and 19) that the "hinge member" is "adapted to be rotatably attached" to the camera.  However, as explained in detail in Section II.E above, AdjustaCam's technical expert Dr. Muskivitch's infringement positions are entirely consistent with the Court's construction of "rotatably attached."

In sum, what Sakar alleges is a ball and socket joint is actually a constrained socket joint because there is a channel that restricts movement of a hemisphere.  Exhibit 8, p. pp. 143-45,  94-95, 151-52, 154-55 & 159.  This restricted movement results in two functionally independent joints which have ranges of movement independent of each other. *Id.*, pp. 94-95, 143-45, 149-50, 287-88 & 327-29.  As stated by Dr. Muskivitch, there are "two distinct joints," and "[i]t's a separate motion; it's a separate functional joint." *Id.* at pp. 96 & 150.  One of these independent joints – the one which allows the camera to pan left and right relative to its base – meets the claim limitation of the hinge member being rotatably attached to the camera in a single axis of rotation. *Id.*  at pp. 69-70, 91, 97-98, 143, 149-50, 151-52, 287-88 & 327-29.

Sakar's allegation that its Kodak webcams do not meet the "rotatably attached" element as construed by the Court is also baseless.  AdjustaCam's infringement position (1) is correct from a technical perspective; (2) follows the Court's construction; (3) is properly supported by AdjustaCam's technical expert; and (4) accords with the preferred embodiment.

**D.**    **There has been no litigation misconduct by AdjustaCam.**

ATTORNEY'S EYES ONLY

Rehashing its non-infringement argument, Sakar argues that AdjustaCam should have dismissed its claims in April due to the Court's Construction of "rotatably attached" instead of dismissing them in August for strategic reasons.  However, as established above, AdjustaCam's infringement position is well founded and meritorious.  Thus, Sakar's allegations of "misconduct" due to not being earlier dismissed are baseless.

**E.     AdjustaCam did not serve a "new" infringement report at the deposition of its technical expert.**

Apparently in an effort to throw mud and distract from the merits, Sakar alleges that AdjustaCam served a "new" infringement report at the deposition of its technical expert.  This allegation is unfounded and misleading.  During his deposition, AdjustaCam's technical expert Dr. Muskivitch realized that Exhibit D of his report was not the final version of Exhibit D to his final report.  Exhibit 8, pp.  12-16.  Neither AdjustaCam nor Dr. Muskivitch were aware that an early version of Exhibit D had inadvertently been served until that point in time.  In order to remedy the situation, Dr. Muskivich provided the correct version of Exhibit D and counsel for Sakar was given every opportunity to review it and to question Dr. Muskivitch about it.

No "new" infringement report was ever generated.  Rather, the correct version of Exhibit D to the Muskivitch report was substituted for the incorrect earlier version that had inadvertently been served due to a version control mistake.  An honest mistake in which versions of an Exhibit are confused does not constitute generating a "new" report nor does it constitute litigation misconduct.  The parties were in the process of meeting and conferring over this issue when the case was dismissed, so it never required court action.

Dr. Muskivitch explained the version control issue over Exhibit D to his report during a sworn deposition.  Exhibit 8, pp.  12-16.  Sakar's allegation that "Plaintiff has yet to provide any justification" for the version confusion with Exhibit D is baseless.

**F.     AdjustaCam's validity arguments were not baseless.  In fact, they were meritorious.**

16

The claims of the '343 patent duly issued from the USPTO and they are presumed valid by law. Sakar complains that AdjustaCam worked to protect its intellectual property rights by traversing rejections during reexamination proceedings for the '343 patent. However, AdjustaCam had every right to traverse the USPTO's rejections, including because the USPTO's reasoning was flawed. Here, Sakar appears to focus upon its contention that the alleged Irifune publication (which Sakar has never proven up as a publication) meets the "rotatably attached" limitation in claims 1 and 19.

However, Irifune does not meet the "rotatably attached" limitation in the Asserted Claims for the reasons set forth in the Report of AdjustaCam's technical expert Dr. Muskivitch. Exhibit 19. *See* Exhibit 13 (Irifune). This is illustrated by Fig. 2 of Irifune and by the illustration of screw (9) as follows:



As stated in Dr. Muskivitch's report, a camera partially threaded onto camera attachment shaft 9 is not "rotatably attached" because:

> camera attachment shaft 9 can freely pass through the opening of the camera fixed part 2. Thus, camera fixed part merely has a hole that allows the camera attachment shaft 9 to cleanly pass through and be screwed into a camera. Thus, Irifune merely disclose a hole that allows a camera attachment shaft 9 to pass there through and provide for secure tightening of the camera to be in contact with the camera fixed part 2 so that it is in a tight, stable, fixed position when fully screwed to the camera attachment shaft.

Exhibit 19, pp. 18-19. Further, the Muskivitch report describes how Irifune fails to disclose how a camera fully screwed down is "rotatably attached," including as follows:

> Irifune discloses that a camera can be screwed onto a mounting device using a camera attachment shaft 9 and camera attachment screws 10 and 11. The purpose of the camera attachment shaft and screws is to attach the camera to the camera fixed part 2. Once the camera is attached to the camera fixed part 2, the camera cannot rotate about a first axis relative to the hinge member ... the purpose of the camera attachment shaft 2 is to tightly

17

ATTORNEY'S EYES ONLY

secure the camera to the camera fixed part so that it does not rotate ... Thus, for the camera to be rotatable, it must be un-tightened and thus unattached and unstable.

Exhibit 19, pp. 18-20.  To summarize, Irifuni lacks a "rotatable attachment" because the camera either has to be screwed tightly down, in which case it is not rotatable, or it has to be loosely appended via an unthreaded hole, in which case it is not attached. As set forth in detail in the Muskivitch Report, AdjustaCam had ample basis, in fact meritorious basis, to contend that Irifune was not invalidating.

Although the USPTO issued final rejections based upon Irifuni in September 2012, the USPTO took many months to reach a final decision, it is not perfect, and those final rejections were erroneous. Nonetheless, since the appellate process is lengthy and expensive, AdjustaCam made the strategic decision to cancel the asserted claims in order to expedite the issuance of a reexamination certificate containing new and amended claims, all of which were deemed patentable over Irifune. *See* Exhibit 4 (Office Action Response canceling claims).

Moreover, AdjustaCam had already filed a motion to dismiss Sakar before the final rejection by the USPTO as a result of the GearHead and HP licenses, and AdjustaCam renewed that motion once the asserted claims had been canceled.  If anything, the voluntary dismissal of Sakar shows a lack of bad faith and a lack of litigation misconduct.

Sakar alleges that AdjustaCam's distinctions of Irifuni were "objectively baseless" because "if the camera disclosed in the '343 Patent was 'permanently fixed to,' or had to be 'fully tightened down to' the hinge member, then the camera could not rotate about the first axis of rotation as the Asserted Claims and specification require." Sakar is both mistaken and confused.  Sakar is mistaken because a permanently attached camera can rotate about a first axis of rotation.  In fact, the USPTO has acknowledged this.  In particular, as a result of the reexamination proceedings instituted by Defendants, the USPTO has allowed multiple new claims, including independent claims 20 and 44, both of which comprise: "a hinge member adapted to be rotatably and permanently attached to the camera, said camera, when the hinge member is so

18

ATTORNEY'S EYES ONLY

permanently attached, rotating, about a first axis of rotation, relative to said hinge member . . ." Exhibit 5, pp. 5 & 8-10 & Exhibit 4, p. 12.  As stated by the USPTO,

> Claim 22 requires "a hinge member adapted to be rotatably and permanently attached to the camera". Similarly, claim 40 requires "a hinge member adapted to be permanently rotatably attached to the camera" and claim 41 requires "a hinge member adapted to be permanently rotatably joined to the camera". This type of connection is not shown by the cited art.

Exhibit 4, p. 12.  In the second part of its argument – which asserts that if a camera was "fully tightened down" to the hinge member, then the "camera could not rotate about the first axis of rotation as the Asserted Claims and specification require" – Sakar is confused as this is one of the reasons that Irifuni does not meet the "rotatably attached" limitation.   Apparently, in its confusion, Sakar agrees with AdjustaCam's position distinguishing Irifune.

Finally Sakar argues that "the arguments advanced by Plaintiff and its expert contradicted Plaintiff's proposed construction of 'rotatably attached' in this very litigation because an object 'permanently fixed' to another object is not 'capable of being rotated.'"   Here again, as noted above, the USPTO has agreed with AdjustaCam that being permanently attached is not inconsistent with being rotatably attached.

## G.   AdjustaCam did not maintain any "frivolous" arguments against the Ma Patent.  In fact, the USPTO has agreed with AdjustaCam's arguments.

Sakar's allegations regarding the Ma patent are mistaken.  As set forth in detail the report of AdjustaCam's technical expert Dr. Muskivitch, Ma is not anticipatory because:

> Ma discloses a camera with moveable parts.  On a horizontal surface, the camera is supported on circuit box 3.  On a laptop display screen, the camera is supported with a combination of circuit box 3 and sliding hook plate 31.  As noted in Ma's title and throughout the patent, the invention described in Ma is a "camera."  For example, claim 1 of Ma is directed to "[a] digital camera for a computer comprising: a photographic lens assembly . . . an adjustment block . . . steering element[s] . . . [and] "a circuit box." … Contrary to the assertions in the Klopp Report, the camera of Ma cannot be rotated relative to the hinge member, because the camera of MA is the combination of photographic lens assembly (1), adjustment block (2), circuit box (3), tubular revolving shaft (11) and tubular revolving shaft (21).  In the illustration below, the various parts of the camera are noted in red:

19

ATTORNEY'S EYES ONLY



Exhibit 19, pp. 28-30. *See* <u>Exhibit 14</u> (Ma).  Not only is AdjustaCam's assessment of Ma correct, but the USPTO agrees with it. During reexamination proceedings, the USPTO initially rejected the Asserted Claims as being anticipated by Ma. *See* <u>Exhibit 12</u>, p. 6 & <u>Exhibit 20</u>, p.10.  However, AdjustaCam made the same arguments noted above to the USPTO. <u>Exhibit 21</u>, pp. 27-28.  Acknowledging the merit of AdjustaCam's arguments, the USPTO dropped Ma as an anticipatory reference, and wrote that "The rejections that relied on Ma in the prior Office action have been overcome." <u>Exhibit 21</u>, p. 16.  Moreover, Sakar's apparent belief that every dispute it advocates (including when disputed by experts applying reasoned analysis), constitutes a "frivolous" argument is unfounded.

### H.    AdjustaCam did not "fabricate" a per-unit royalty to "justify nuisance value settlements."

As set forth in detail in Section II.E, AdjustaCam's target royalty of $1.25 - $1.50 per webcam was established <u>years</u> prior to this lawsuit in the Phillips and ███████ Licenses.  AdjustaCam did not "fabricate" anything.  Its damages expert Mr. Bratic performed a detailed, reasoned and well founded analysis. The running royalties in those licenses set the precedent that AdjustaCam used throughout this case.  In fact, twenty settling defendants agreed with AdjustaCam's royalty metric and paid lump sums according to that established royalty rate. Here again, Sakar has not shown that the methodology employed by AdjustaCam's damages expert is unsound.  Sakar's criticisms involve a battle of the experts (although Sakar did not bother to designate a damages expert), and they go, if anything, to the weight that a jury would be entitled to give to Mr. Bratic's opinions. Again, Sakar's apparent belief that every point of disagreement, including among experts applying reasoned analysis, constitutes something "fabricated" is unfounded.

### I.    AdjustaCam has not "admitted" to any Rule 11 violations – nor has there been any.

20

ATTORNEY'S EYES ONLY

Sakar's allegation that AdjustaCam's Rule 30(b)(6) designee "admitted" that no Rule 11 investigation was conducted is baseless. First, AdjustaCam's designee had never been noticed relative to any Rule 11 investigation of Sakar. *See* Exhibit 23 (deposition notice). Moreover, regarding the pre-suit investigation of Newegg – which was a deposition topic -- AdjustaCam's Rule 30(b)(6) designee testified that, "[o]utside counsel prepared claim charts for each of the accused products prior to filing the suit. And I believe anything else associated with that pre-suit investigation conducted by outside counsel would be privileged, I believe." Exhibit 18 (Haynes Depo), p. 92. Far from "admitting" that no Rule 11 analysis was conducted, AdjustaCam's designee testified that "AdjustaCam deferred its Rule 11 analysis to its outside attorneys." *Id.* at p. 91.[12]

Without waiving privilege, but in order to address Sakar's spurious allegations, additional details of the Rule 11 analysis are as follows. Prior to filing suit against Sakar, AdjustaCam's outside counsel John Edmonds purchased a Kodak S100 webcam. *Exhibit 1*. In addition, Mr. Edmonds and co-counsel at the Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC firm, primarily Steve Schlather[13], studied the '343 patent and its prosecution history. *Id.* Further, firm attorneys, primarily Messrs. Edmonds and Schlather, discussed and agreed upon the scope of claims 1 and 19 of the '343 patent, which involved construing terms such as "rotatably attached," "hinge member" and "support frame." *Id.* Outside counsel's original claim constructions relative to claims 1 and 19 are the same as those reflected in AdjustaCam's P.R. 4-2 disclosures for this case. *Id. See* Ex. 24 (P.R. 4-2 disclosure). Finally, firm attorneys, primarily Messrs. Edmonds and Schlather, prepared infringement charts with an element by element matching of product features to claim 1 of the '343 patent, including a claim chart for the Kodak S100 webcam. *Id.*

---

[12] As noted above, Sakar's Rule 30(b)(6) designee deferred to its expert(s) with respect to Sakar's basis for alleging non-infringement and invalidity. Exhibit 7, pp. 49-52 & 54. By Sakar's flawed logic that designees cannot defer to those more knowledgeable, it's Rule 30(b)(6) designee has likewise "admitted" that Sakar has no basis for contending non-infringement or invalidity.

[13] Both Messrs. Edmonds and Schlather are registered patent attorneys.

21

ATTORNEY'S EYES ONLY

As for "reevaluating" AdjustaCam's positions in the case, promptly upon issuance of the this Court's June 7, 2012 Order overruling both sides' objections to the Claim Construction Order, *see* Dkt. No. 650, AdjustaCam's outside counsel Mr. Edmonds and Mr. Joshua long, reviewed the webcams in the case for any that should be dropped in view of the Claim Construction Order, primarily in view of the Court's construction of "rotatably attached." *Id.* Due to the Court's construction of "rotatably attached," AdjustaCam dropped sixteen (16) webcams from the suit because the rotatable attachment between the hinge member and camera was not limited to a single axis of rotation.[14] This decision was made in consultation with AdjustaCam's technical expert Dr. Muskivitch, who was consulted on June 8, 2012. *Id.*

The cases relied upon by Sakar are entirely off point. As stated by the Federal Circuit, "[i]n the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004). The Federal Circuit has never held that clients cannot rely upon their patent counsel to conduct the Rule 11 investigation. To the contrary, it should be conducted by a patent attorney. *Id.* In the present case, AdjustaCam was entirely reasonably in relying upon the Rule 11 analysis of its outside counsel, including because AdjustaCam's lead counsel, Mr. Edmonds, has almost eighteen years of litigation experience, he is a member of the Patent Bar, and he has an L.LM. in intellectual property law. Exhibit 1.

Aside from its misrepresentation of the facts and misunderstanding of the law applicable to Rule 11, Sakar's allegations of a Rule 11 violation are fundamentally flawed because they merely assume that AdjustaCam's claims against Sakar lacked a good faith basis in fact or law. However, as demonstrated in Section II.D above, AdjustaCam's infringement positions in this case were reasonable and in fact are correct. As noted in Sections I and II.C above, AdjustaCam dismissed Sakar from this case only because

---

[14] The dropped webcams were the HP 3100, Gearhead WC 740, Gearhead WC 745, Gearhead WC 750, Gearhead WC 740I, Gearhead WC 1100, Gearhead WC 1200, Gearhead WC 1300, Gearhead WC 1400, Gearhead WC 1500, Gearhead WCF 2600, Gearhead WCF 2750, Gearhead WC 4750 and Gearhead WC 8301. Exhibit 1 (Edmonds Declaration).

ATTORNEY'S EYES ONLY

AdjustaCam was faced with the difficult decision of accepting the USPTO's rejection of the Asserted Claims, in order to facilitate the issuance of a reexamination certificate with new and amended claims, in lieu of potentially wasting the remaining term of the '343 patent in appealing the USPTO's determination.

### J.    Sakar has not met its burden of showing this is an exceptional case, and it is not entitled to any award of fees.

There is nothing exceptional about this case.  AdjustaCam dismissed its claims against Sakar because AdjustaCam was faced with the difficult decision of accepting the USPTO's rejection of the Asserted Claims, in order to facilitate the issuance of a reexamination certificate with new and amended claims, in lieu of potentially wasting the remaining term of the '343 patent in appealing the USPTO's determination. Sakar has not shown, much less shown by clear and convincing evidence, that AdjustaCam's claims were frivolous or that there has been any litigation misconduct.  For the most part, Sakar is simply narcissistic and naïve in arguing that disputed points, based upon the reasoned and sound analysis of experts, are "frivolous" solely because Sakar disagrees with them. Moreover, at best, Sakar's motion argues that AdjustaCam should have dismissed Sakar in April 2012 instead of August 2012.

Even if Sakar's arguments had factual merit, which they do not, its claim for *all* fees expended over the lengthy course of this case is unfounded. Further, Sakar incurred approximately $89,000 of its $143,933 in alleged attorney's fees post-*Markman* (*i.e.,* post the April 10, 2012 time entry for "reviewing the Court's decision on meaning of patent claims).[15] However, if the infringement issues with the "rotatably attached" element were as cut and dry as Sakar has represented, Sakar could have and should have sought summary judgment immediately following receipt of the Court's *Markman* Order.  Rather, Sakar chose to continue this litigation, incurring more attorney's fees (62% of the total) in the seven months post-*Markman* than it did in the almost two years prior. The reality is that these issues are not as Sakar has represented and, in addition to being incorrect as to the facts, Sakar has cited nothing more than

---

[15] The sums involved are $6,927.50 for April 13 – 30, 2012; $16,035 for May 2012; $5,233 for June 2012; $4,048 for July 2012; $19,335 for August 2012; $18,081 for September 2012; $17,916 for October 2012; and $1,485 for November 2012. *See* Exhibit 20 to Sakar's Motion (billing records).  These numbers collectively total $89,060.50.

23

ATTORNEY'S EYES ONLY

a dispute between competing experts – a situation common to each and every patent case.  Nothing Sakar has shown supports a finding that this case is exceptional.

Further, Sakar's claim for reimbursement of fees includes multiple hours of time spent by Sakar's counsel, Messrs. Sutton and Morano, representing other defendants, namely Kohl's[16] and Fry's,[17] who did not move for reimbursement of attorney's fees.[18]  For example, the April 26, 2012 time entry for which Sakar seeks reimbursements states, on August 4, 2011, Mr. Sutton charged 2 hours for preparing Kohl's answer to the complaint, on April 26, 2012 Mr. Sutton charged 2 hours for preparing objections for Kohl's to a deposition notice, on May 17, 2012, Mr. Sutton charged 4 hours for preparing a Kohl's witness, and on May 22, 2012 Mr. Sutton charged 8 hours for defending the Kohl's deposition. *See* Ex. 20 to Sakar's Motion. Also for example, on June 4-5, 2012, Mr. Sutton charged 5 hours for work on Fry's deposition. *Id*. Further, although it is not clear exactly what Sakar's counsel did in this case except ride the coat-tails of other defendants until Sakar became the last man standing and the beneficiary of the reexamination proceedings, even a cursory review of the Sutton firm's billing records shows serious padding of bills.  For example, on August 3, 2011, Mr. Sutton somehow billed 4 hours to prepare a boilerplate answer to the amended complaint that was almost identical to Sakar's September 16, 2010 answer to the complaint.[19] Then on August 4, 2011, Mr. Sutton billed his client Kohl's 2 hours for preparing and filing an answer and counterclaims, even though *none was filed*.[20]   Then on September 14, 2011, Mr. Sutton again billed four hours for drafting new answers for Sakar and Kohl's that are identical to each other, and are almost identical to Sakar's August 2001 answer.[21]

---

[16] *See, e.g.,* Exhibit 20 to Sakar's Motion at time entries dated 8/31/2010, 9/15/2010, 9/16/2010, 1/31/2011, 4/11/2011, 5/31/2011, 6/9/2011, 6/21/2011, 8/4/2011, 8/10/2011, 8/31/2011, 9/23/2011, 9/26/2011, 10/3/2011, 10/10/2011, 3/12/2012, 4/23/12, 4/25/12, 4/26/12, 5/11/2012, 5/17/2012, 5/31/2012, 5/18/2012 and 5/22/12.
[17] *See, e.g.,* Exhibit 20 to Sakar's Motion at time entries dated 7/28/2010, 1/31/2011, 1/25/2012, 5/10/2012, 5/11/2012, 6/4/2012, 6/5/2012, 6/21/2012, 7/31/2012 and 8/20/2012.
[18] Indeed the Court's dismissal of Fry's at Dkt No. 675 provides that "All costs, expenses and attorneys fees are to be borne by the party that incurred them."
[19] *See* Ex. 20; and *compare* Dkt No. 230 *with* Dkt No. 230.
[20] *See* Ex. 20.  There is no docket entry for Kohl's answering the amended complaint in August 2011 because it never happened.
[21] *See* Ex. 20; and *compare* 457 *with* Doc Nos. 520 & 521.

24

ATTORNEY'S EYES ONLY

Finally, Sakar's claim for reimbursement of expert expenses constitutes a gross and unfounded overreach. A court has inherent authority "to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc*., 549 F.3d 1381, 1391 (Fed.Cir.2008). However, use of this inherent authority is reserved for cases where the district court makes a "finding of fraud or bad faith whereby the 'very temple of justice has been defiled.' " *Amsted Indus. Inc. v. Buckeye Steel Castings Co*., 23 F.3d 374, 378 (Fed.Cir.1994). Sakar has not even argued this very high standard because it has not been met. Further, all of Sakar's expert fees were incurred post-*Markman*. Again, if the infringement issues with the "rotatably attached" element were as cut and dry as Sakar has led the Court to believe, then it begs the question of why Sakar paid so much for experts when the case against it was allegedly frivolous and could have been disposed of summarily by summary judgment at an earlier stage

## V.     Conclusion.

For at least the foregoing reasons, Sakar has failed to meet its burden of proving this is an exceptional case, or proving any entitlement to fees, and Sakar's Motion should be denied.


February 4, 2013                                    Respectfully submitted,

                                                   By: /s/ *John J. Edmonds*
                                                   John J. Edmonds – LEAD COUNSEL
                                                   Texas State Bar No. 789758
                                                   Michael J. Collins
                                                   Texas Bar No. 4614510
                                                   Stephen F. Schlather
                                                   Texas Bar No. 24007993
                                                   COLLINS,   EDMONDS,   POGORZELSKI,
                                                   SCHLATHER & TOWER, PLLC
                                                   1616 S. Voss Rd., Suite 125
                                                   Houston, Texas 77057
                                                   Telephone: (713) 501-3425
                                                   Facsimile: (832) 415-2535
                                                   jedmonds@cepiplaw.com
                                                   mcollins@cepiplaw.com
                                                   sschlather@cepiplaw.com

25

ATTORNEY'S EYES ONLY

Andrew W. Spangler
Texas Bar No. 24041960
Spangler & Fussell P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

ATTORNEYS FOR PLAINTIFF
ADJUSTACAM LLC

26

ATTORNEY'S EYES ONLY

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I hereby certify that authority to file this document under seal is found in the protective order governing this case.

February 4, 2013                                    /s/ *John J. Edmonds*
                                                    John J. Edmonds

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

February 4, 2013                                    /s/ *John J. Edmonds*
                                                    John J. Edmonds

ATTORNEY'S EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC.;  ET AL. | JURY |

## DECLARATION OF JOHN EDMONDS IN SUPPORT OF PLAINTIFF'S RESPONSE TO SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NON-TAXABLE EXPENSES

I, **JOHN J. EDMONDS**, declare under penalty of perjury as follows:

1.  My name is John J. Edmonds, I am over the age of twenty-one (21) years, am competent to testify on the matters stated herein. I am a shareholder at the law firm of Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC and am counsel of record for AdjustaCam, LLC in the above-referenced matter. I have personal knowledge of the facts set forth herein, and they are true and correct, and I could and would testify competently thereto if called as a witness.

2.  Exhibit 2 to PLAINTIFF'S RESPONSE TO SAKAR INTERNATIONAL, INC.'S OPPOSED MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND NON-TAXABLE EXPENSES (the "Response") is a true and correct copy of the '343 patent-in-suit.

3.  Exhibit 3 to Plaintiff's Response is a true and correct copy of the Court's *Markman* Ruling from this case.

4.  Exhibit 4 to Plaintiff's Response is a true and correct response to a final office action during reexamination proceedings for the patent-in-suit.

5.  Exhibit 5 to Plaintiff's Response is a true and correct copy of an office action response during reexamination proceedings for the patent-in-suit.

6.  Exhibit 6 to Plaintiff's Response is a true and correct copy of Sakar's interrogatory responses.

7.  Exhibit 7 to Plaintiff's Response is a true and correct copy of excerpts from the Rule 30(b)(6) deposition of Sakar from this case.

8. Exhibit 8 to Plaintiff's Response is a true and correct copy of excerpts from the deposition of Plaintiff's technical expert Dr. John Muskivitch from this case.

9. Exhibit 9 to Plaintiff's Response is a true and correct copy of Dr. Muskivitch's CV.

10. Exhibit 10 to Plaintiff's Response is a true and correct copy of the as-written infringement expert report of Plaintiff's technical expert in this case, Dr. Muskivitch, which was Exhibit 4 to his deposition.

11. Exhibit 11 to Plaintiff's Response is a true and correct copy of excerpts from the report of NewEgg/Rosewill's damages expert Dr. Sullivan from this case.

12. Exhibit 11 to Plaintiff's Response is a true and correct copy of an Order Granting Ex Parte Request for Reexamination of the patent-in-suit.

13. Exhibit 13 to Plaintiff's Response is a true and correct copy of the Irifune reference that has been at issue in this case and in the reexamination proceedings involving the patent-in-suit.

14. Exhibit 14 to Plaintiff's Response is a true and correct copy of the Ma '783 patent.

15. Exhibit 15 to Plaintiff's Response is a true and correct copy of the original expert report of Plaintiff's damages expert in this case, Mr. Walt Bratic.

16. Exhibit 16 to Plaintiff's Response is a true and correct copy of Mr. Bratic's CV.

17. Exhibit 17 to Plaintiff's Response is a true and correct copy of excerpts from the deposition of Mr. Bratic from this case.

18. Exhibit 18 to Plaintiff's Response is a true and correct copy of excerpts from the Rule 30(b)(6) deposition of Plaintiff from this case.

19. Exhibit 19 to Plaintiff's Response is a true and correct copy of the invalidity expert report of Plaintiff's technical expert in this case, Dr. Muskivitch.

20. Exhibit 20 to Plaintiff's Response is a true and correct copy of an office action from the reexamination proceedings involving the patent-in-suit.

21. Exhibit 22 to Plaintiff's Response is a true and correct copy of excerpts from the deposition of NewEgg/Rosewill's damages expert Dr. Sullivan from this case.

2

ATTORNEY'S EYES ONLY

22. Exhibit 23 to Plaintiff's Response is a true and correct copy of the Rule 30(b)(6) notice for Plaintiff which took place on August 30, 2012.

23. Exhibit 24 to Plaintiff's Response is a true and correct copy of Plaintiff's Patent Rule 4-2 disclosures from this case.

24. The reexamination proceedings involving the patent-in-suit lasted from approximately December 10, 2012 through December 26, 2012, when a reexamination certificate issued. Once the USPTO issued its August 30, 2012 Final Office Action in the reexamination proceedings involving the patent-in-suit, rather than pursue lengthy and expensive appellate proceedings, which might exhaust most of the remaining term of the '343 patent, on September 20, 2012 AdjustaCam canceled the rejected claims so that a reexamination certificate could issue with the new and amended claims. In view of the fact that the asserted claims of the patent-in-suit would inevitably be canceled upon issuance of the reexamination certificate, AdjustaCam promptly sought to dismiss Sakar from the case.

25. The covenant-not-to sue that AdjustaCam granted to Sakar to facilitate the agreed dismissal of Sakar from this suit did not include the broad rights under the reexamined claims that Sakar had been demanding.

26. The following images:



are cut from true and correct photos of disassembled Kodak S101 and Kodak T130 webcams. The red arrows, which were added by me, point to channels in the housing.

27. The following images:

ATTORNEY'S EYES ONLY



are cut from true and correct photos of disassembled Kodak S101 and Kodak T130 webcams. The red arrows, which were added by me, point to the semi-circular members that Sakar erroneously refers to as "balls."

28. Without waiving privilege, but in order to address Sakar's allegations, certain details of the Rule 11 analysis are as follows: Prior to filing suit against Sakar, I purchased a Kodak S100 webcam.. In addition, I and co-counsel at the Collins, Edmonds, Pogorzelski, Schlather & Tower PLLC firm, primarily Steve Schlather, studied the '343 patent and its prosecution history. Further, firm attorneys, primarily me and Mr. Schlather discussed and agreed upon the scope of claims 1 and 19 of the '343 patent, which involved construing terms such as "rotatably attached," "hinge member" and "support frame." Our original claim constructions relative to claims 1 and 19 are the same as those reflected in AdjustaCam's P.R. 4-2 disclosures for this case. Finally, firm attorneys, primarily me and Mr. Schlather, prepared infringement charts with an element by element matching of product features to claim 1 of the '343 patent, including a claim chart for the Kodak S100 webcam.

29.     As for "reevaluating" AdjustaCam's positions in the case, promptly upon issuance of the this Court's June 7, 2012 Order overruling both sides' objections to the Claim Construction Order, me and my co-counsel Mr. Joshua Long reviewed the webcams in the case for any that should be dropped in view of the Claim Construction Order, primarily in view of the Court's construction of "rotatably attached." Due to the Court's construction of "rotatably attached," AdjustaCam dropped sixteen (16) webcams from the suit because the rotatable attachment between the hinge member and camera was not limited to a single axis of rotation. The dropped webcams were the HP 3100, Gearhead WC 740, Gearhead WC 745,

4

ATTORNEY'S EYES ONLY

Gearhead WC 750, Gearhead WC 740I, Gearhead WC 1100, Gearhead WC 1200, Gearhead WC 1300, Gearhead WC 1400, Gearhead WC 1500, Gearhead WCF 2600, Gearhead WCF 2750, Gearhead WC 4750 and Gearhead WC 8301. This decision was made in consultation with AdjustaCam's technical expert Dr. Muskivitch, who was consulted on June 8, 2012.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Houston, TX on February 4, 2013.

John J. Edmonds

ATTORNEY'S EYES ONLY

Case: 13-1665    Document: 97-1    Page: 220    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1                UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF TEXAS

3                     TYLER DIVISION

4

5    ADJUSTACAM, LLC,

6                   Plaintiff(s),

7           vs.                    NO: 6:10-CV-329-LED

8    AMAZON.COM, INC., et al.,

9                   Defendant(s).

10   _____/

11

12

13      DEPOSITION OF JOHN CONRAD MUSKIVITCH, Ph.D.

14

15   DATE:        Friday, August 24, 2012

16   TIME:        9:11 A.M.

17   LOCATION:    TALTY COURT REPORTERS, INC.
                  2131 The Alameda
18                Suite D
                  San Jose, CA 95126
19
     REPORTER:    Patricia Hope Sales, CRR
20                CSR License Number C-4423

21

22

23

24

25

A284.114

Case: 13-1665    Document: 97-1    Page: 221    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    standpoint, yes.

2        Q.  All right.

3            And you said you could infer that there was a

4    ball-and-socket joint in some of those products?

5        A.  Something that behaved like a ball-and-socket

6    joint, yes.

7        Q.  Okay.

8            Can you give me an example of something that

9    behaves like a ball-and-socket joint but is not a

10   ball-and-socket joint?

11       A.  Well, the issue really is the complexity of

12   each of these joints.  I cannot say for certain that

13   there is a ball-and-socket joint in most of those

14   cameras, but the type of behavior that you might get

15   from a ball and socket is indicative of the behavior

16   that I saw in the -- in manipulating the webcams.

17       Q.  Okay.

18           Let me try asking my question again.

19           Do you understand how something can behave like

20   a ball-and-socket joint yet not be a ball-and-socket

21   joint?  And if so, can you give me an example of that?

22       A.  Well, in the -- in the case of the webcams, if

23   you have basically what we are calling a rotatable

24   connection between the webcam and the -- the hinge

25   member, the fact that you can rotate the camera about

Case: 13-1665    Document: 97-1    Page: 222    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    the one axis is indicative of something that may be a

2    ball-and-socket joint.

3         When it's coupled with an independent axis for

4    other types of motion, it could be a -- it could be a

5    ball and socket, but with restricted motion.  So you

6    could have an independent rotation as we do with the

7    rotatable connections, but you can also have a hingedly

8    attached device at the same joint.

9    Q.  So are you saying --

10   A.  So --

11   Q.  I'm sorry.  Go ahead.

12   A.  So there is -- I don't -- I can't think of

13   anything off the top of my head that would behave like

14   a ball-and-socket joint that's not a ball-and-socket

15   joint, but I could give it some thought, and certainly

16   I could probably -- there is probably some design

17   somewhere that somebody has come up with that makes it

18   behave that way over a certain range of motion.

19   Q.  But as you sit here today you can't recall

20   anything that behaves like a ball-and-socket joint that

21   is not a ball-and-socket joint, right?

22   A.  Let's be clear.  I want to make sure that -- a

23   joint can have a number of different behaviors.  So a

24   ball-and-socket joint can have a rotational behavior,

25   and a ball-and-socket joint can also have a -- a

Case: 13-1665    Document: 97-1    Page: 223    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        Q.    I think so.

2        A.    I can rotate my hands -- my upper hand to the

3    right let's say ten degrees, or I can rotate my upper

4    hand to the right five degrees and my left hand to the

5    left ten degrees -- or five degrees and I'll have the

6    same effect.

7        Q.    Right.

8              In other words, though, a rotatable attachment

9    has to have some rotation, right?

10       A.    That's correct.  Otherwise it wouldn't be

11   called a "rotational attachment."

12       Q.    Exactly.

13             You are aware that the court construed the term

14   "rotatable attachment" in this case; is that right?

15       A.    Yes.

16       Q.    And did you apply the court's construction of

17   "rotatable attachment" for purposes of your

18   infringement report, which is Exhibit 3?

19       A.    I believe I did.

20       Q.    Okay.

21             Did you apply that same construction to the

22   opinions that you formed in your invalidity report --

23   excuse me -- validity report, I should say?

24       A.    Yes.

25       Q.    Okay.

Case: 13-1665    Document: 97-1    Page: 224    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

```
 1             In other words, you didn't apply one
 2   understanding of "rotatably attached" for purposes of
 3   your infringement report --
 4        A.   No.
 5        Q.   -- and a separate --
 6        A.   No, that's --
 7        Q.   Let me finish my question.  Sorry.
 8        A.   Okay.
 9        Q.   -- and a separate interpretation of "rotatably
10   attached" for purposes of your validity report; is that
11   correct?
12        A.   That's correct.
13        Q.   Okay.
14             You used the same --
15        A.   It's same -- same term.  It's defined -- I
16   believe it's defined in the patent and it was
17   consistent.
18        Q.   Same for both reports?
19        A.   Yes.
20        Q.   Okay.
21             Let's turn to your supplemental report, which
22   is Exhibit Number 5.
23        A.   Okay.
24        Q.   Your supplemental report is -- consists of
25   three pages; is that right?
```

Case: 13-1665    Document: 97-1    Page: 225    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      A.   That's correct.

2      Q.   There is the cover page; page two, which is an

3   introduction; and then there is page three, which sets

4   forth Exhibit A.  Is that correct?

5      A.   That's correct.

6      Q.   Okay.

7           And it's your understanding that the products

8   that are listed on Exhibit A to your supplemental

9   report were dropped, for lack of a better word, from

10  this litigation; is that right?

11     A.   Well, I -- I believe they were withdrawn, my --

12  I would imagine because they have -- they have reached

13  some kind of agreement, but --

14     Q.   Okay.

15          And that was my next --

16     A.   I'm not sure that I'm aware --

17     Q.   I'm sorry.

18          So there was --

19     A.   -- specifically.

20          I believe, reading something, that there was

21  some kind of settlements in some of the -- some of the

22  defendants, but I -- I don't recall specifically which

23  ones.

24     Q.   Okay.

25     A.   But I believe that these were removed, because

Case: 13-1665    Document: 97-1    Page: 226    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    some reason to discontinue the litigation came up.

2        Q.   Okay.

3            So there is eight products listed on Exhibit A.

4    You are not exactly sure why those eight products were

5    withdrawn from this litigation?

6        A.   I -- I don't remember ever hearing specifically

7    the reason for that.

8        Q.   Okay.

9        A.   I was just told that they had -- that it would

10   be best to remove them from the original report because

11   they were no longer part of the case.

12       Q.   Okay.

13           But you didn't instruct anybody to remove those

14   from this case, did you?

15       A.   Oh, no.   I was -- I was depending upon counsel

16   to, you know, deal with the litigants.   I was really

17   just there for technical reasons, not for legal

18   reasons.

19       Q.   Well, I hate to do this, but we have got to go

20   back to Exhibit D --

21       A.   Yeah.

22       Q.   -- to your --

23       A.   Sure.

24       Q.   -- infringement report.

25           MR. EDMONDS:   So the record is clear, you are

Case: 13-1665    Document: 97-1    Page: 227    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    talking about Exhibit D to Exhibit 3, or Exhibit D --

2        MR. HERBERHOLZ:  Correct.

3        THE WITNESS:  Okay.

4        So this one.  Okay.

5    BY MR. HERBERHOLZ:

6        Q.  Turn your attention to the HP Pro claim chart.

7    I don't know if this helps, Dr. Muskivitch, but the

8    chart I'm looking at, the camera looks like that

9    (indicating).

10       A.  Oh, you have got it.  Okay.

11           (Reviewing document(s).)

12           Okay.

13       Q.  You found it?

14       A.  Yes, sir.

15       Q.  Great.

16           You had an opportunity to inspect the HP Pro

17   webcam as part of your opinions in this case,

18   correct?

19       A.  Yes.

20       Q.  I'll ask you to flip to the next page of this

21   claim chart for me, page two.

22           We talked earlier about ball-and-socket joints.

23       A.  Um-hmm.

24       Q.  Is it your understanding that the HP Pro webcam

25   contains a ball-and-socket joint?

Case: 13-1665   Document: 97-1   Page: 228   Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    A.   Well, I'm aware that -- let's step back just a

2    sec.

3         From a standpoint of someone skilled in the

4    art, I think by looking at and examining the behavior

5    of this device and the way the structure is put

6    together, it has two distinct joints, even though they

7    are at the same location.

8         And one joint allows the rotational -- the

9    rotate -- the rotatable -- the rotatable connection.

10   The other allows for movement away from that axis, and

11   it's sort of a hinge.

12        So it's a combination of a biaxial joint or a

13   two-joint mechanism that has two independent and

14   distinct, separate motions.

15        So to say that that joint is a ball-and-socket

16   joint is -- is incomplete --

17   Q.   Okay.

18   A.   -- because --

19   Q.   So as a Ph.D. in engineering, and as a person

20   of ordinary skill in the art, you understand what a

21   ball-and-socket joint is, don't you?

22   A.   I do.

23   Q.   Okay.

24        So my question is does the HP Pro contain a

25   ball-and-socket joint as you understand that term?

Case: 13-1665     Document: 97-1     Page: 229     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      A.  Being that -- as I just mentioned, that there

2  are two separate behaviors, two distinct behaviors, I

3  cannot be sure that the ball-and-socket joint is the

4  only mechanism.

5      Q.  Well, I'm not --

6      A.  Or is the mechanism there.

7      Q.  Well, I'm not asking if it's the mechanism.

8  You did say the ball-and-socket joint, and that's my

9  question.  Is there a ball-and-socket joint in the HP

10  Pro camera?

11      A.  I don't know for certain.

12      Q.  Is your answer the same for the HP Pro for

13  Notebooks webcam; you don't know if that particular

14  product has a ball-and-socket joint?

15      A.  Again, I didn't -- when I -- when I did my

16  analysis, I didn't necessarily look at the individual

17  components that were included or contained within the

18  cameras.  I looked at the overall behavior that was

19  called out in the claims, claims one, seven and

20  nineteen of the -- of the patent.

21          So the -- the rotatably attached part was the

22  first part that I looked at.  And whether or not the

23  mechanism of that was a ball-and-socket joint or

24  whether it was -- whatever it was, you know, how -- how

25  that was implemented was really not the point.

Case: 13-1665    Document: 97-1    Page: 230    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1              The fact that it had that capability to move in
2     that direction is the major -- is the major issue.  The
3     fact that it could move in another direction is really
4     in my mind irrelevant because any other motion in any
5     other direction would be independent motion.
6         Q.   Okay.
7              So going back to the issue of a ball-and-socket
8     joint, correct me if I'm wrong, but my understanding is
9     that a ball-and-socket joint needs to have at least two
10    things:  One, a ball; two, a socket.
11             Is that fair?
12             MR. EDMONDS:  Objection.  Form.
13             THE WITNESS:  Um-hmm.  Probably need some kind
14    of transmittal device that would transfer the motion
15    from the ball to the socket.
16    BY MR. HERBERHOLZ:
17        Q.   How about a stem?
18        A.   Stem or structure, sure.
19        Q.   Okay.
20             So you could have a stem connected to a ball,
21    and then that stem-and-ball configuration within a
22    socket, and that stem, ball and socket could be
23    referred to as a "ball-and-socket joint"; is that
24    fair?
25        A.   That's correct.

Case: 13-1665    Document: 97-1    Page: 231    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          Here we go.  It's Exhibit Number 7-1.  I'm

2    handing that to you.

3          A.  Okay.

4          Q.  So is it your opinion that the camera of the

5    Rosewill 8163 webcam is rotatably attached to what

6    you've identified as a hinge member?

7          A.  Yes.

8          Q.  And what's the basis for that opinion?

9          A.  The basis, there seems to be a -- a ball that's

10   connected, as I mentioned earlier, to the base of the

11   camera, and it seems to be placed into a slot of some

12   sort, a slot that has a direction to it.  But the

13   rotatable attachment in terms of the patent would be as

14   you -- as you stated it.

15         Q.  You applied the court's claim construction as

16   part of your analysis in this case, didn't you?

17         A.  Yes.

18         Q.  And you understand -- and this is on page nine

19   of your report if you need to turn there -- that the

20   court said that rotatably attached objects in the

21   patent in suit are limited to a single axis of

22   rotation.

23         Do you remember that?

24         A.  Yes.

25         Q.  Are you saying that the camera of the Rosewill

Case: 13-1665    Document: 97-1    Page: 232    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    8163 that you have identified is limited to a single

2    axis of rotation with respect to the hinge member?

3        A.   No.   What I'm saying is there are two possible

4    motions here that are independent motions.   So by

5    looking at this camera, I can -- I can take that camera

6    and I can place it into that -- that slot or whatever,

7    whatever channel or whatever you'd like to call it.

8    And I can rotate it about what's called in the patent

9    axis one, and it's independent of anything else that's

10   going on.   But it only along that axis can move in that

11   direction, so it's independent.

12       If I -- if I move it to the side, as I think

13   you are trying to get at, is -- what you are doing is

14   you are imposing or you are imploring or utilizing a

15   second element, which is a hinge, and the hinge behaves

16   to allow motion in a single plane.   And it's

17   independent.

18       So the fact that there is -- the fact that this

19   axis one is made up -- now, this is a ball and this is

20   a socket (indicating), but it's not -- in my opinion,

21   it's not a true ball-and-socket joint.

22       Q.   Why is it not a true ball-and-socket joint?

23       A.   Because this can't move in every direction.

24   It's limited in the directionality which it can move.

25       A true ball-and-socket joint would move this

Case: 13-1665    Document: 97-1    Page: 233    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    way, rotate any way you wanted it to (demonstrating).

2        Q.  All right.

3        A.  Here it can only rotate about the axis, and it

4    can bend almost like your elbow and your arm and your

5    forearm.

6            If you take the -- the rotatable attachment and

7    you rotate it vertical this way (demonstrating), it

8    doesn't matter whether your arm is -- your elbow is

9    bent or straight.  It still has that rotatable

10   attachment ability.

11       Q.  I just want --

12       A.  Because it's independent of any kind of hinge

13   member.

14           So this is really a dual -- basically it has

15   two axes of motion that are independent of one

16   another.

17       Q.  What has two axes?  The camera relative to the

18   hinge member?

19       A.  Yes.

20       Q.  It has two axes?

21       A.  Two separate axes that -- two separate,

22   independent axes that allow it to move to -- within

23   certain bounds --

24       Q.  Okay.

25       A.  -- on the camera.

Case: 13-1665    Document: 97-1    Page: 234    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      Q.  So the camera is not limited to a single axis

2  of rotation with respect to the hinge member?

3      A.  Correct.  But they are independent.  So one can

4  have -- I can spin this all day and it does not have to

5  move as a hinge.  It doesn't have to move down this

6  slot, move forward, so it's called "forward tilt."

7      Q.  Okay.

8      A.  And I can move it forward tilt back and forth

9  as much as I want and it doesn't have to be -- it

10 doesn't -- nothing is forcing it to rotate.

11         So those are two independent motions.

12     Q.  Okay.

13         I have here an exemplar of the Rosewill 8163

14 camera.

15     A.  Right.

16     Q.  And just for purposes of the record, I want to

17 try to be as clear as I can about what I'm going to do

18 when I'm manipulating this.  But if --

19     A.  Right.  Okay.

20     Q.  -- something is inaccurate, let me know.

21         I'm setting the camera down here.  I'm going to

22 put it on a flat surface on the table.

23     A.  Sure.

24     Q.  Okay?

25         And I'm trying to configure the casing,

Case: 13-1665    Document: 97-1    Page: 235    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    whatever you want to call this, the camera, to be

2    upright.

3        A.   Right.  Okay.

4        Q.   And I want the axis to be perpendicular to the

5    table.  Do you follow me?

6        A.   Yes.

7        Q.   Okay.

8             I have configured it that way.

9             So I'm now taking the camera and I am going to

10   rotate it.  Okay?

11       A.   Okay.

12       Q.   I'm rotating it to that configuration

13   (demonstrating).

14            How many degrees have I rotated that camera?

15       A.   It looks like approximately ninety degrees.

16       Q.   Okay.

17       A.   About that central axis.

18       Q.   Okay.

19            So I have rotated it about a single axis of

20   rotation, correct?

21       A.   That's correct.

22       Q.   Okay.

23            Now I'm going to turn it back to the

24   configuration that I had it.  Okay?  Are you with me?

25       A.   Yes.

Case: 13-1665    Document: 97-1    Page: 236    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      Q.   Now, here's what I'm going to do.  I'm going to

2  move the camera at this angle directly toward me

3  (demonstrating).

4           Do you see that I just tilted it?

5      A.   Um-hmm.

6           (Nods head.)

7      Q.   Okay.

8           Now I'm going to do the same rotation that I

9  did a moment ago, but on this other angle.  And I'm

10  going to turn the camera that way (demonstrating).

11           Do you follow me?

12      A.   Yes.

13      Q.   How many degrees did I rotate the camera?

14      A.   Well, you rotated it in two -- about two

15  axes.

16      Q.   Okay.

17           So what I --

18      A.   So I -- it looks like from a -- if I use a

19  vertical -- a vertical axis, it looks like it's ninety

20  degrees.  Well, not even quite ninety.  More than

21  ninety degrees.  No, ninety degrees.  And if I look at

22  the rotation about the horizontal axes, it looks to be

23  a little bit less.

24           But those are both independent motions.  They

25  do not depend on one another.

Case: 13-1665    Document: 97-1    Page: 237    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          To get to -- if we -- if we go back to basic

2    engineering, to get from one point to another is a

3    combination of three displacements and three rotations,

4    any part in -- any point in space.

5          So if I take this bottle and I move it here, I

6    have translated it.  And if I rotate it this way, I

7    have rotated it (demonstrating).

8          Now, those are independent of one another.  I

9    can translate it first and then rotate it.  I can

10   rotate it first and then translate it.  It doesn't

11   matter, because when I -- okay.

12         Let's take an example of two springs together.

13   If I have a spring that's fixed, like a Slinky -- do

14   you follow where I'm going?

15   Q.  Um-hmm.

16   A.  -- and I hold it at this one end, we'll say the

17   left end, and there is a connection in between them,

18   between two Slinkys.

19         When I talk about independent motion, I -- in

20   that configuration, I -- I have what's called

21   "dependent motion," because if I move one, the other is

22   forced to move with it.

23   Q.  Okay.

24   A.  Okay?

25         In this case, if I rotate it around to the

Case: 13-1665    Document: 97-1    Page: 238    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    center, there is nothing that forces it to move, to

2    tilt or to sway to either side.  It's a separate

3    motion; it's a separate functional joint.  It may be

4    the same location, but it's the same function joint.

5        Q.  Okay.

6            Regardless of whether it's a separate motion --

7        A.  Well, it's --

8        Q.  -- if I go back and do the same thing that I

9    just did -- so I'm just going to configure the camera

10   so the first axis of rotation, as you described it, is

11   perpendicular to the table.

12           Is that fair?  Is that how I have it placed

13   right now?

14       A.  The first axis of rotation is straight up

15   (demonstrating).

16       Q.  All right.

17           So, again, and I'm going to tilt the camera as

18   far toward me as I can.  Do you see that?

19       A.  Sure.

20       Q.  Okay.

21           Now I'm going to rotate it again ninety

22   degrees.

23           Do you follow me?  (Demonstrating.)

24       A.  Yes.

25       Q.  Just to be clear, when I rotated that, it

Case: 13-1665    Document: 97-1    Page: 239    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    rotated about two axis (sic) of rotation.  Is that

2    right?  They might be separate, but they are two axis

3    of --

4          A.  Well, there is a --

5          Q.  -- rotation, correct?

6          A.  -- part that -- they are separate, yes.  There

7    is two axes, but they are separate --

8          Q.  Okay.

9          A.  -- and independent -- and independent, and I

10   want to be clear on that.

11         Q.  Okay.

12         A.  Because you did have to -- you did have to move

13   it -- well, I -- maybe -- maybe you didn't have to do

14   it.  But the way you demonstrated it is you moved it in

15   one direction, meaning that there's a joint that allows

16   it to move in that direction --

17         Q.  Okay.

18         A.  -- and then you rotated it, which means that

19   there is some functional capability that allows it to

20   do that.

21         Q.  Okay.

22             But, in any event, it rotated in two axes?

23         A.  In two independent -- about two independent

24   axes, yes.

25         Q.  Okay.

Case: 13-1665    Document: 97-1    Page: 240    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        Now, is there --

2     A.   It doesn't necessarily have to correspond.   In

3  this particular case they happen to go through the

4  center of the camera and the center of the base.

5     Q.   Okay.

6        I'm not going to go through demonstrations with

7  each of these products here, but can you take a look at

8  the Hercules Classic drawing that you have.

9     A.   Okay.

10    Q.   Is it your understanding that the lens, or more

11  particularly the part that you have colored as the

12  camera, you know, rotates in a similar manner relative

13  to the hinge member as the Rosewill camera that we have

14  demonstrated?

15    A.   Yes, that's correct.

16    Q.   Okay.

17    A.   It's a -- it may be a ball, it may be a socket,

18  but it's a -- a constrained ball-and-socket joint.

19        So just the fact that you have a ball and you

20  have a socket does not in itself satisfy the condition

21  of being a true ball-and-socket joint.

22    Q.   Okay.

23    A.   This happens to be a constrained

24  ball-and-socket joint.   So it can spin about the axis,

25  it can move forward, it may be able to move to the

Case: 13-1665    Document: 97-1    Page: 241    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    side.

2        Q.   Okay.

3        A.   But each of those motions are independent.

4        Q.   Okay.

5             So Hercules Classic has what you identified as

6    a constrained ball-and-socket joint?

7        A.   Yes.

8        Q.   Okay.

9             And just to make sure I understand, the camera

10   that you have identified in the Hercules Classic

11   rotated about at least one axis of rotation; maybe it's

12   a separate axis of rotation, but nevertheless it

13   rotated about more than one axis.  Is that right?

14       MR. EDMONDS:   Objection.   Form.

15       THE WITNESS:   Well, it depends on how -- you

16   know, how it's positioned.

17   BY MR. HERBERHOLZ:

18       Q.   Okay.

19            Let's say hypothetically if I had that same

20   device and went through the same analysis that we did

21   with the Rosewill camera, in other words --

22       A.   Sure.

23       Q.   -- I set it upright, pull it to the side,

24   rotate it ninety degrees like I did with the Rosewill

25   camera --

Case: 13-1665    Document: 97-1    Page: 242    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      A.   Right.

2      Q.   -- that particular rotation has been about more

3  than one axis, right?

4      A.   Well, you moved it to the side?   If you are

5  just moving it around its central axis, that's just one

6  rotation.

7      Q.   Okay.

8      A.   But taking it and moving it in another

9  direction in addition to rotating it about its axis,

10  that's two separate, independent motions.

11      Q.   Okay.

12          Two separate, independent motions between the

13  camera and the hinge member?

14      A.   Yes.

15      Q.   Okay.

16          Is that the same -- handing you the Exhibit

17  8-1, which is the Hercules Dualpix.

18      A.   Um-hmm.

19      Q.   Is what you have -- is what you have identified

20  as a camera there -- does that also rotate -- well,

21  first let me back up.   Strike that.

22          Does the Hercules Dualpix have a constrained

23  ball-and-socket joint as well?

24      A.   I believe it does.

25      Q.   Okay.

Case: 13-1665    Document: 97-1    Page: 243    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          And does the rotation of the camera in the

2    Hercules Dualpix relative to the hinge member -- does

3    that occur over more than one axis of rotation?

4          A.  Well, it very well could, but, again, they are

5    independent motions.

6          Q.  Okay.

7          A.  So the fact that -- that you have it rotatably

8    attached is an independent issue from whether it's

9    hingedly attached in the other direction.  Those are --

10   those are two independent issues.

11         Q.  Now, "hingedly attached" means connected by a

12   hinge joint, doesn't it?

13         A.  Right.  And that's what -- that's what that

14   channel is creating.  It's creating -- it's limiting

15   the motion from side to side.  It's forcing it to go

16   along that channel.

17         Q.  So are you -- you said earlier the Hercules

18   Dualpix has a modified ball-and-socket joint?

19         A.  Right.

20         Q.  Is that modified ball-and-socket joint in the

21   same location as what you have identified as the hinge

22   joint?

23         A.  No.

24         Q.  Okay.

25              Where were the modified ball-and- --

Case: 13-1665    Document: 97-1    Page: 244    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      A.  Well, again, there is really -- in this

2  particular case there could be as many as three.

3  But -- but I think when I did play with this -- this

4  camera, essentially it was really two axes that it

5  allowed rotation.  It allowed rotation about the

6  central axis, or corresponding to axis one in both the

7  patent and in the preferred embodiment, and the second

8  axis was dependent upon the orientation -- well,

9  actually, let me take that back.

10          The motion itself is independent, and that

11  would be the motion that would be along that channel.

12  But the direction of the motion is a combination of the

13  two.

14          So by rotating it and then -- rotating it about

15  its rotational axis and then rotating it about a hinge

16  axis, it reaches any of the possible limits of the

17  motate (sic) -- of the motion you have.  And, again,

18  those are independent.  One does not require the other

19  to occur.

20      Q.  You see the door here in the conference room?

21      A.  Um-hmm.

22      Q.  Would you -- do you see the hinge on the

23  door?

24      A.  Yes.

25      Q.  Would you understand that to be a hinge

Case: 13-1665    Document: 97-1    Page: 245    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    joint?

2        A.   Yes.

3        Q.   Do you see anything that looks like that hinge

4    joint in the Hercules Dualpix webcam?

5        A.   Doesn't matter.

6        Q.   No, I'm just asking a question.  Is there --

7        A.   No, I don't see anything in there, but what it

8    looks like really doesn't matter, because it's a

9    behavior that's -- it's displaying that's the important

10   thing.  However the engineer decided to do it is -- is

11   really irrelevant because the overall characteristic of

12   that joint is to allow that hinged rotation.

13            So that could be -- it could have drills in it,

14   it could extend four feet out into this room, and as

15   long it allowed that motion, it really doesn't matter

16   what it looks like.

17       Q.   But that motion is in a single axis of

18   rotation; is that correct?

19       A.   That's correct.

20       Q.   Is there anything in this modified

21   ball-and-socket joint in the Hercules Dualpix cam --

22            (Reporter clarification.)

23            MR. HERBERHOLZ:  Sure.

24   BY MR. HERBERHOLZ:

25       Q.   Is there any structure in this Hercules Dualpix

Case: 13-1665    Document: 97-1    Page: 246    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    webcam, at least in the modified ball-and-socket

2    portion of it, where the -- where there is rotation

3    about a single axis relative to the hinge member?

4        A.    To the -- rotation about a single -- well,

5    actually, there is two axes.  Again, there is one

6    independent motion which allows rotation about the

7    central axis.  There is another motion which is more

8    like the door hinge (demonstrating).

9            And what I'm saying is -- maybe for the court

10    reporter -- is I have my hand, my right hand,

11    vertically upward, and if I rotate that down, that's --

12    and if I rotate it about my elbow, that's my rotational

13    connection.

14            When I take my hand and I move it down towards

15    the table, rotating it in my -- looking at it here

16    counterclockwise to reach the table, that's an

17    independent hinge motion.  And, again, however that's

18    configured internally is -- is basically irrelevant in

19    my mind, because the motion is allowed to occur only in

20    that direction.

21            Now, if I rotate my hand forty-five degrees and

22    then I use the hinge, I can -- I can duplicate that

23    motion, which gives me -- which puts me in a different

24    position in space.

25            But, again, there is nothing that -- that

Case: 13-1665    Document: 97-1    Page: 247    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    forces the rotational motion or the hinge motion to

2    occur simultaneously, or have any kind of -- other than

3    the bounds that are put on any kind of limits on it.

4        Q.   So I want you to envision a traditional

5    ball-and-socket joint.  Okay?  Do you have that in

6    mind?

7        A.   Um-hmm.

8        Q.   Okay.

9             Is it your testimony that every ball-and-socket

10   joint also includes a hinge joint?

11       A.   Depending upon the way that it is configured,

12   it can -- it can -- if it's limited, it can have

13   hingelike behavior.

14            And that's what I'm saying.  The fact that it's

15   a ball and the fact that it's a socket is really

16   irrelevant.  It has constraints on it that force it to

17   move a certain way.

18       Q.   Well, I'm not a professional engineer, so

19   correct me if I'm wrong.

20       A.   No, that's all right.

21       Q.   I'm just a lawyer trying to --

22       A.   That's fine.

23       Q.   -- understand.

24       A.   Sure.  That's fine.

25       Q.   The way I envision a ball-and-socket joint is

Case: 13-1665    Document: 97-1    Page: 248    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

 1          And same here (indicating).  So that's an edge.

 2          MR. HERBERHOLZ:  I don't have any other

 3    questions at the present time.  I'm going to go over my

 4    notes, but in the meantime, I'm going to pass the

 5    witness.  I think Mr. Sutton had some questions he

 6    wanted to ask.

 7          MR. SUTTON:  Okay.  Did you want to take a

 8    quick break, or are you okay?

 9          THE WITNESS:  No, I'm -- I'm okay.

10          MR. SUTTON:  All right.  Good.

11          THE WITNESS:  Yes.

12          EXAMINATION BY MR. SUTTON

13      Q.  Do you have the '343 patent in front of you, or

14    can you get that in front of you?

15      A.  Yes, I do.

16      Q.  And can you look at figure four of that patent.

17      A.  What was that?  What was that again?

18      Q.  Can you please look at figure four of the '343

19    patent.

20      A.  Yes.

21      Q.  Okay.

22          And, by the way, have you looked at any Kodak

23    webcams?

24      A.  I believe so.

25      Q.  Okay.  All right.

Case: 13-1665    Document: 97-1    Page: 249    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    Q.   Therefore, the support frame, eighteen, rotates

2    about the single axis of rotation, which is pivot

3    element, eighty-two; is that correct?

4    A.   Yes.

5    Q.   Is it also correct --

6    A.   Oh.

7    Q.   -- that the pivot pin is -- I think we -- I

8    asked you this one before, and it's repetitive, but is

9    it also correct that the pivot pin, eighty-two, is the

10   second axis of rotation in the patent, which is labeled

11   "axis thirty-two" in figure three?

12   A.   I believe that's correct.

13   Q.   Okay.

14        Now, can you please look again at the Kodak

15   webcam.

16   A.   Okay.

17        Yes.

18   Q.   And I'm referring again to the stem and ball

19   which are affixed to the bottom part of the camera.

20   A.   Yes.

21   Q.   Now, the stem and ball that you are looking at,

22   is it your understanding that it has a single axis of

23   rotation or more than one axis of rotation relative to

24   the support frame?

25   A.   Relative to --

Case: 13-1665    Document: 97-1    Page: 250    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          MR. EDMONDS:  Objection.  Form.

2          THE WITNESS:  Do you mean relative to the hinge

3    member?

4    BY MR. SUTTON:

5       Q.  Well, I'm going to say relative to -- let me

6    back up and --

7          Do you understand that the Kodak web- -- the

8    Kodak webcam has two legs which we can call a support

9    frame, similar to the patent?

10      A.  Yes.

11      Q.  Or I should say to use the wording of the

12   patent.

13      A.  (Nods head.)

14      Q.  So does the -- does the stem and ball of the

15   Kodak webcam which is fixed to the bottom of the

16   camera -- does the stem and ball have a single axis of

17   rotation relative to the support frame or more -- or

18   more than one axis of rotation relative to the support

19   frame?

20          MR. EDMONDS:  Objection.  Form.

21          THE WITNESS:  Well, I think we discussed this

22   before.

23          Looking at the photograph, I think that the --

24   the structure is such that one skilled in the art could

25   somewhat independently of the actual structure of that

Case: 13-1665    Document: 97-1    Page: 251    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    joint come to the conclusion that you have two

2    independent rotations possible, and they are distinct

3    independent rotations which correspond -- at least the

4    rotatably attached one, which would be corresponding

5    to -- essentially what is axis one in the patent would

6    be the rotatable attachment part.

7         And as part of that same structure -- and,

8    again, this is -- this is based on the behavior -- it

9    has a separate and distinct joint which allows forward

10   rotation such as very similar to a hinge.

11   BY MR. SUTTON:

12        Q.  All right.

13             Well, let me go back and clarify something.

14             You understand looking at the photograph of the

15   Kodak webcam -- do you understand that you can tilt the

16   support frame forward relative to the stem and ball?

17        A.  The support frame could be rotated forward,

18   yeah, through the hinge, yes.

19        Q.  Through the stem and ball?

20             MR. EDMONDS:  Objection.  Form.

21             THE WITNESS:  I don't follow the question.  Are

22   you asking me if the stem and ball can be -- well, let

23   me ask -- let me let you ask the question.  I didn't

24   understand the question the way it was posed.

25   / / /

Case: 13-1665    Document: 97-1    Page: 252    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

```
 1   BY MR. SUTTON:

 2        Q.  Okay.

 3            You understand that you can tilt the support

 4   frame of the Kodak webcam forward relative to the stem

 5   and ball?

 6            MR. EDMONDS:  Objection.  Form.

 7            THE WITNESS:  Well --

 8   BY MR. SUTTON:

 9        Q.  Do you understand that part of the question?

10        A.  No, I don't, because I -- the support frame --

11        Q.  Okay.

12            Let me -- okay.  So let me clarify that for

13   you.

14            The support frame that I'm referring to are the

15   two legs at the bottom of the stem and ball.  Two

16   hinged legs.

17        A.  Okay.

18            So that's your -- you are -- okay.  That's not

19   what we have been calling the support frame.  But what

20   you are saying is the base of the camera.

21        Q.  No, no.

22        A.  I'm sorry.  The base -- where the -- where

23   the -- there is a base that connects to the camera.

24        Q.  Well, okay.

25        A.  I'm sorry.
```

Case: 13-1665    Document: 97-1    Page: 253    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    holding the camera still in space, and moving it in

2    either the predominantly forward or predominantly

3    backward direction, rotating it.

4            Is that fair?

5        Q.   What was that last part?  I'm doing what?

6        A.   And rotating it essentially.

7        Q.   I'm sorry.  Rotating the -- rotating what?

8        A.   Rotating the hinge member while holding the

9    camera essentially in its vertical position.  And

10   rocking -- basically rocking it back and forth in that

11   connection.

12           Is that -- is that what you are asking?

13       Q.   I think so, but let me restate it so we are --

14   it's going to be clear on the record.

15       A.   Okay.

16       Q.   When you tilt forward and back the upper leg

17   member, which you call the "hinge member," and when

18   you tilt it forward and back relative to the ball and

19   stem, you can do that, correct, with the Kodak webcam,

20   right?

21       A.   Yes, that's correct.

22       Q.   Now -- and let's take -- I want to ask you what

23   happens -- can you rotate the -- the hinge member in

24   either of those positions?  So it's the forward

25   position and the -- tilted forward position and the

Case: 13-1665    Document: 97-1    Page: 254    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    tilted back position.

2         Can you rotate the hinge member in either of

3    those positions?

4    A.   I believe so, yeah.

5    Q.   Okay.

6         That's fine.

7    A.   Yeah.   Okay.

8    Q.   And if you can do that, is there a single axis

9    of rotation or more than one axis of rotation?

10   A.   If those -- if those motions of rocking it back

11   and forth are essentially in the same direction -- and

12   by that I mean if they -- central axis from side to

13   side is pointing directly frontwards or directly

14   backwards, then that is an axis -- that is one axis of

15   rotation.

16        MR. SUTTON:   I'm sorry.   Could you read back

17   that answer.

18        (The record was read as follows:

19        "A.   If those -- if those motions

20        of rocking it back and forth are

21        essentially in the same

22        direction -- and by that I mean if

23        they -- central axis from side to

24        side is pointing directly

25        frontwards or directly backwards,

A284.157

Case: 13-1665    Document: 97-1    Page: 255    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          then that is an axis -- that is one

2          axis of rotation.")

3    BY MR. SUTTON:

4        Q.  All right.

5            Let me break it into two parts because it's --

6    let's look at the -- the tilting the legs or what you

7    call the upper -- I call it the "upper leg"; you are

8    calling it the "hinge member."

9        A.  Correct.

10       Q.  I'm talking about tilting the hinge member back

11   relative to the stem and ball, right?

12       A.  Yes.  So that the -- so that the right side of

13   the photograph would be higher than the left side --

14   the right side of the hinge member would be higher than

15   the left side of the hinge member.  Is that correct?

16       Q.  Well, I don't have the photograph you are

17   looking at, so I'm --

18       A.  I'm essentially looking at a side view, what I

19   would call the side view --

20       Q.  Yeah.

21       A.  -- where the lens is protruding toward the

22   left, and the -- the cable is potuding (sic) --

23   protruding towards the -- towards the right.

24       Q.  Well, I'm not looking at the photograph, so I'm

25   not --

Case: 13-1665    Document: 97-1    Page: 256    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1       A.   Well, I'm trying to describe it to you.

2       Q.   Well, no.   It's okay.   It's not necessary for

3  my question.

4            Let me ask you:   If you tilt the upper leg of

5  the Kodak webcam let's say forward so that the front of

6  it is close to the bottom of the camera and the back of

7  it is far away from the camera --

8       A.   Okay.

9       Q.   Do you follow what I'm saying?

10      A.   Yes, yes.

11      Q.   Okay.

12           And now can you rotate -- in that position can

13 you rotate the -- the upper leg or hinge member

14 relative to the ball and stem?

15      A.   Yes.

16           In what -- in what particular direction are

17 you -- are you thinking of?

18      Q.   Well, I -- I just -- I have it in my hand and I

19 can rotate it -- rotate it to the left or right.

20           Yeah, I'm talking about the upper leg or hinge

21 member, I can rotate it about the stem and ball to the

22 left or right.

23      A.   Okay.

24      Q.   Now, can we call that rotation in that position

25 one axis of rotation?

Case: 13-1665    Document: 97-1    Page: 257    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        A.    If it's about the vector that would cause that

2    one axis of rotation, yes.    And it would be independent

3    of any other rotations that you -- that you would

4    apply.

5        Q.    All right.

6              Well, I'm going to come to another axis of

7    rotation.

8        A.    Yeah.    Okay.

9        Q.    But that would be one -- that would be one axis

10   of rotation, right?

11       A.    Okay.    Yes.

12       Q.    Now, if we just pivot it -- or tilt it, I

13   should say, the leg, or what you call the "hinge

14   member" -- if we tilt it in the opposite direction so

15   that now the -- looking at the front of the camera, the

16   leg or hinge member is now facing down, so that the

17   back end is sort of closer to the camera --

18       A.    Okay.

19       Q.    So now let's call that a "rear tilt."    Okay?

20       A.    Okay.

21       Q.    Now, in that rear tilt position, I can still

22   rotate the upper leg or hinge member to the left or

23   right, correct?

24       A.    I don't have the camera, and to be honest,

25   that's not one of the motions that we -- well, it's one

Case: 13-1665    Document: 97-1    Page: 258    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    that we looked at.  And I can't remember the camera

2    specifically, but are you just saying rocking it side

3    to side?

4        Q.  No.  I'm rocking -- I just rocked the -- no.

5            First of all, I didn't say "rocking"; I said

6    "rotate."

7        A.  Right, right.  Okay.  Right.

8        Q.  So my question was in that rear tilt

9    position --

10       A.  Right.

11       Q.  -- you can rotate the upper leg or hinge member

12   relative to the ball and stem, correct?

13       A.  Yes.  It's an independent rotation, but it can

14   be done, yes.

15       Q.  Okay.

16           And in that second position or rear tilt

17   position, when we do that rotation of the upper leg or

18   hinge member relative to the ball and stem, is that a

19   different axis of rotation than the one we were talking

20   about when we tilt it forward?

21       A.  As long as it's symmetric, then it would be the

22   same axis of rotation.  In other words, as long as the

23   center line of the -- of the device in all directions,

24   the three directions, were essentially oriented the

25   same way, then that would be the -- a single axis of

Case: 13-1665    Document: 97-1    Page: 259    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1   rotation.

2       Q.   So you are saying in both the rear position --

3   rear tilt position and the forward tilt position, it's

4   the same axis of rotation?

5       A.   If I understand your question correctly, yes.

6       Q.   Okay.

7            Let me ask you another question.  Let me give

8   you a third example.

9       A.   Okay.

10      Q.   Let's assume that the camera and ball and stem

11  are totally vertical and perpendicular to the upper leg

12  or hinge --

13      A.   The hinge --

14      Q.   -- member.

15      A.   -- member.  Okay.

16      Q.   Now, in that position obviously you can rotate

17  the upper leg or hinge member relative to the ball and

18  stem, right?

19      A.   Holding the camera still, yes.

20      Q.   Okay.  Yes.

21           And that would -- I think we could call that a

22  vertical axis of rotation?

23      A.   Yes.  That's correct.

24      Q.   Okay.

25           And, now, is that vertical axis of rotation the

Case: 13-1665    Document: 97-1    Page: 260    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    same or different from the two axes of rotation that we

2    just talked about when we talked about the rear tilt

3    position and the forward tilt position?

4         A.  Well, actually, they are different.  One,

5    because the -- the axis -- the origin of the axis is --

6    is probably the same, or could be the same, but the

7    vertical axes and the -- I'll say sort of the

8    horizontal axes are -- are independent and pretty much

9    orthogonal.

10        Q.  Okay.

11            But --

12        A.  So I can -- I can rotate the camera or the

13   base, whichever way you want to do it, about that axis

14   independently of any forward, backward or side

15   motion.

16        Q.  Okay.

17            But the question I was trying to get at was --

18   and I think you have agreed, but let me just clarify it

19   just so that there is no misunderstanding.

20        A.  Yes.

21        Q.  The vertical axis of rotation that we talked

22   about was -- I think you agreed a moment ago was

23   different from the two axes of rotation when the --

24        A.  Yes.

25        Q.  -- upper leg or hinge member has tilted forward

Case: 13-1665    Document: 97-1    Page: 261    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    or back, correct?

2         A.   That's correct.

3         Q.   Okay.

4         A.   One is horizontal and one is vertical.

5         Q.   One --

6         A.   I'm sorry.   One of the axes is vertical.

7         Q.   Which one?

8         A.   The one that goes -- I think it is the first

9    one you talked about, where it's rotating about the

10   center axis.

11        Q.   Yeah.   But which -- the one I called the

12   vertical axis of rotation?

13        A.   That's correct.

14        Q.   Okay.

15             And the other one --

16        A.   And then the other one for the other situation,

17   that's more of a horizontal axis.

18        Q.   Well, I'm looking -- I have it in my hand, and

19   when I tilt the -- when I tilt it forward and back,

20   the -- the angle -- the rotational axis appears to me

21   to be tilting either forward or back relative to the

22   vertical axis.   So I see three different vertical axes.

23        A.   Well, that's -- that's kind of the discussion

24   and is covered in my report, is that that -- when you

25   move that -- the -- that particular joint that you are

Case: 13-1665    Document: 97-1    Page: 262    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    talking about at the base of the webcam that goes into

2    I guess you called it a ball and socket maybe, or it's

3    been called a ball and socket, where the post of the

4    webcam goes into the hinge member, that allows for

5    three independent rotations, as far as we have

6    discussed, so far as -- as I understand it.

7        Q.   And when you say "we discussed," you are

8    talking about the discussion we just had?

9        A.   Yeah, you and I.

10       Q.   Okay.

11       A.   Or you and me.

12       Q.   So there is three independent axes of

13   rotation?

14       A.   Yes.   And the -- the only important one from my

15   view in my -- in my evaluation is that vertical axis.

16   That's what we call the rotatably attached connection

17   to the -- to the hinge member.

18       Q.   Between the support frame and the hinge member?

19       A.   No.   The one that goes from the bottom of the

20   plug on the bottom of the camera to the hinge member

21   where that -- that raised section is?   The bottom --

22   the bottom of the camera and the post that goes into

23   that -- that frame below it?

24       Q.   Yes.

25       A.   Okay.

Case: 13-1665    Document: 97-1    Page: 263    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        When you rotate about the vertical axis, that

2   essentially is axis number one in the patent, and also

3   in the preferred embodiment, which I guess is the

4   Critter cam.  And that's independent from any other --

5   any other motion.

6       Q.  All right.

7        Well, when I was asking you questions about

8   forward tilt, the rear tilt, and then keeping the

9   camera in a vertical position relative to the base or

10  hinge member --

11      A.  Right.

12      Q.  -- I was talking about the relationship between

13  the -- the hinge member and the -- and the -- and the

14  ball and stem.

15      A.  Right.  So it has three -- in general, it would

16  have three possible motions.

17      Q.  Well, are those -- you say "motions."  Are

18  those different axes of rotation?

19      A.  Yes.

20      Q.  Okay.

21        I mean -- all right.  All right.

22        So now --

23      A.  And --

24      Q.  -- do you understand that the court has ruled

25  that the -- with regard to the patent claims that

Case: 13-1665    Document: 97-1    Page: 264    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    the -- that the rotational -- the rotational connection

2    between the ball and socket and the --

3        A.   And the hinge member.

4        Q.   -- and the hinge member is limited to a single

5    axis of rotation?

6        A.   And I agree with that, and my opinion is based

7    on that.

8        Q.   Excuse me, but you just said there is three

9    axes of rotation, and not a single --

10       A.   Because there is three -- three independent

11   behaviors.

12       Q.   Well, no, no.  A moment ago you said three axes

13   of rotation.

14       A.   Right.  And they are independent of one

15   another.

16       Q.   Okay.  Fine.

17            But three axes of rotation is not a single axis

18   of rotation of which the court limited that terminology

19   of the claim to.

20            MR. EDMONDS:  Objection.  Form.

21            THE WITNESS:  Let me look at the --

22   BY MR. SUTTON:

23       Q.   In other words, you have said -- based on the

24   three positions that I had asked you about, you said

25   that there is a vertical axis of rotation, and it's

Case: 13-1665     Document: 97-1     Page: 265     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    different from the forward tilt axis of rotation and

2    the rear tilt axis of rotation.  And if there is a

3    different axis of rotation, that means you have got

4    more than a single axis of rotation between the ball

5    and socket and the support member.  Is that correct?

6           MR. EDMONDS:  Objection.  Form.  Where is the

7    question there?  That was a speech.

8           MR. SUTTON:  I made a statement and I said, "Is

9    that correct?"

10          MR. EDMONDS:  Okay.  Objection.  Form.

11   BY MR. SUTTON:

12     Q.  Did you understand my question?

13     A.  I believe so.  But, again, it's -- it's in the

14   context of whether or not those -- those axes of

15   rotation -- let me go back and look at the judge's

16   ruling, if I may.

17          (Reviewing document(s).)

18          Well, actually, you know, just off the top of

19   my head, consistent -- those are three separate joints

20   even though they are in one location.  So --

21   BY MR. SUTTON:

22     Q.  Which -- which structure are you referring to

23   now?

24     A.  The -- the bottom of the post.

25     Q.  Are you looking at the Kodak webcam?

Case: 13-1665    Document: 97-1    Page: 266    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        A.    Yes, I am.

2        Q.    Okay.

3              So I'm sorry.   What are you saying now?

4        A.    Because of the three independent motions that

5    you are allowed, essentially you are talking about

6    three separate joints that allow different independent

7    motions.

8        Q.    Where are the three separate joints that you

9    are talking about in the Kodak webcam?

10       A.    At the base of -- of the post.

11       Q.    At the base of the post we have assumed that

12   there is some kind of spherical structure, right?

13       A.    Right.   But that doesn't mean it's -- that

14   doesn't mean functionally it's not a joint, or it's not

15   a multiple joint.

16             If you look at your elbow and you hold your

17   elbow -- or your elbow out, can you move your hand up

18   and down like if you were curling?

19       Q.    I can't talk about my elbow right now.   It's

20   not related to the camera.   I'm trying to stick to the

21   camera.

22       A.    No, but I'm trying to demonstrate the concept

23   that I'm trying to get across.

24       Q.    Okay.

25             But if you could do it in terms of the Kodak

A284.169

Case: 13-1665    Document: 97-1    Page: 267    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    webcam, it would be helpful.

2        A.    Okay.

3            The fact that you have -- let's take -- we

4    start with axis one as defined by -- in the patent.

5        Q.    Well, now you are going back -- the axis of

6    rotation -- the first axis of rotation as defined in

7    the patent is the axis of rotation between the camera

8    and the stem and ball in our case, you know.   That's a

9    different axis of rotation.

10       A.    Not if you take -- not if you choose the

11   vertical axis.

12       Q.    Well, we have -- we have already talked about

13   the relationship between the camera and the stem and

14   ball, and we have agreed earlier -- or you agreed

15   earlier that -- that in a Kodak webcam, there is no

16   rotational movement between the -- the camera and the

17   ball and stem that fits together.

18           Do you remember that?

19       A.    Yeah, sure, sure.

20       Q.    In the Kodak webcam there is no first axis of

21   rotation as defined in the patent, correct?

22           MR. EDMONDS:   Objection.   Form.

23           THE WITNESS:   No, I don't -- I don't agree with

24   that.

25   / / /

Case: 13-1665   Document: 97-1   Page: 268   Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1   BY MR. SUTTON:

2       Q.  Well, we went through it about ten minutes ago.

3   I asked you was the -- was the stem and ball of the

4   Kodak webcam fixed to the bottom of the camera, and you

5   said, "Yes."

6       A.  Correct.

7       Q.  And then I said, "Correct?"

8       A.  Correct.

9       Q.  And then I -- and then I said to you is there

10  any -- therefore -- let me just go back now, look at my

11  question.

12          I then said to you, "So that the camera stem

13  and ball move together as a unit?" and you said, "Yes."

14  Correct?

15      A.  Correct.

16      Q.  And, therefore, the Kodak camera does not

17  rotate relative to the stem and ball, and I said, "Is

18  that correct?" and you said, "Yes."

19      A.  Okay.

20      Q.  So, therefore, in the Kodak webcam there is no

21  first axis of rotation, as defined in the patent,

22  between the camera and the stem and ball in the Kodak

23  webcam?

24      A.  Oh, true.  Sure.  It's the -- it's the stem and

25  ball with the -- with the hinge member that's the

Case: 13-1665    Document: 97-1    Page: 269    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    issue.

2         Q.   Well, you love to -- let me -- yeah, you have

3    made two answers there.   I want to break them up.

4         A.   Okay.

5         Q.   I think you agreed -- you first agreed to my

6    statement that in the Kodak webcam, the Kodak camera

7    does not rotate relative to the stem and ball, and you

8    have said yes to that, correct?

9         A.   I agree, yes.

10        Q.   Okay.

11             And, therefore, you also said there is not a

12   first axis of rotation in the Kodak webcam.

13             MR. EDMONDS:   Objection.   Form.

14             THE WITNESS:   I don't believe I said that.   I

15   mean that's -- that's fundamental to my opinion is that

16   there is -- when you consider the -- the camera with

17   the attached ball and stem, and its connection with the

18   hinge member, there absolutely is a -- a rotational

19   axis that corresponds to axis one in the patent.

20   BY MR. SUTTON:

21        Q.   Okay.

22             But if the ball -- let me clarify something.

23             If the ball and stem are fixed to the bottom of

24   the camera in the Kodak webcam, how can there be -- and

25   they all move together, right?

Case: 13-1665    Document: 97-1    Page: 270    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          Those three elements move together.   The
2    camera, the ball and the stem all move together.
3    You've established that, correct?
4        A.   I agree, yes.
5        Q.   Okay.
6             So how could there be an axis of rotation
7    between the bottom of the camera, or the camera itself,
8    and the ball and stem that are fixed to it?
9        A.   No.   Maybe I -- I was misunderstood, I'm sure.
10            I'm talking about the rotation being at the
11   base of the ball and stem, where it connects to the
12   hinge member.
13       Q.   Okay.
14            But there is no relative movement between the
15   ball and stem, which are -- and the camera, which are
16   fixed together, correct?
17       A.   I agree.   Right.
18       Q.   Okay.
19            All right.   So, now, going back to this -- to
20   the other axis of rotation, which is the second axis
21   of -- second axis of rotation called for in the patent.
22       A.   Right.
23       Q.   All right?   Which the judge has defined as
24   limited to a single axis of rotation, correct?
25       A.   Yes.

Case: 13-1665    Document: 97-1    Page: 271    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1           Okay.  And is it correct that the support arms

2    that are shown on the log there are the support arms,

3    and they rotate about that single pivot axis between

4    the arms?

5        A.  I believe it's described in -- it's disclosed

6    in the -- in the disclosure.

7        Q.  Is the answer yes?

8        A.  Yes.

9        Q.  Okay.

10           MR. SUTTON:  I have no further questions.

11           THE WITNESS:  Okay.

12                 EXAMINATION BY MR. EDMONDS

13       Q.  Dr. Muskivitch, during the lunch break did you

14   go through the version of your report that has the

15   erroneous Exhibit D and the version of your report that

16   has the correct Exhibit D and tab where the textual

17   changes were?

18       A.  For the first couple -- the first camera, which

19   would be -- I believe would be carried through the

20   entire report.

21           And I also put one on the incorrect pict- --

22   the incorrect picture of the camera.

23       Q.  Okay.  So you --

24       A.  And I mean that was the -- where of the Gear

25   Head was figured.

Case: 13-1665    Document: 97-1    Page: 272    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1              (Reporter clarification.)

2              THE WITNESS:  One of the Gear Head cameras.

3    BY MR. EDMONDS:

4        Q.  When you say "carried through the entire

5    report," are you saying that where there had been a

6    correction in the draft in that chart that you tabbed,

7    you looked to the same place --

8        A.  Yes.

9        Q.  -- in the other chart to see the same

10   correction?

11       A.  Yes.

12           Well, the corrections that I thought I made

13   based on the draft were in the copy you had this

14   morning.

15       Q.  Okay.

16           So if counsel chooses to ask you about those

17   changes that were made, and what's different about

18   Exhibit 3 and Exhibit 4, are you able to answer those

19   questions today if asked?

20       A.  I believe so, sure.  Yes.

21           MR. EDMONDS:  Pass the witness.

22            FURTHER EXAMINATION BY MR. HERBERHOLZ

23       Q.  Dr. Muskivitch, you were just asked questions

24   about whether or not -- about the fact that you tabbed

25   the changes from your earlier draft --

Case: 13-1665    Document: 97-1    Page: 273    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    you see as the hinge member?

2        A.  Yes.

3        Q.  Okay.

4            You are saying there is three independent

5    joints where the ball attaches to the hinge member?

6        A.  In a -- in a general sense.  In this one there

7    might only be two.

8        Q.  Okay.

9        A.  Which would be the -- this axis and then the

10   forward/backward (demonstrating).

11       Q.  Okay.

12           This --

13       A.  I don't know how much side to side is --

14       Q.  So it at least has two axes, correct?

15       A.  Yes.  They are independent axes.  They are

16   independent axes associated with independent joints.

17       Q.  Okay.

18           So the ball of the Rosewill 8163 webcam

19   connects to the hinge member by at least two axes of

20   rotation that may be independent, but they are still

21   two axes of rotation, right?

22           MR. EDMONDS:  Objection.  Form.

23           THE WITNESS:  The -- well, the important

24   distinction there is they're -- is they're really

25   functionally two independent joints.

Case: 13-1665    Document: 97-1    Page: 274    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    BY MR. HERBERHOLZ:

2        Q.   Are there --

3        A.   And this is the discussion that we talked about

4    this morning with my arm.

5            I can -- and my -- my elbow is a -- is a

6    biaxial joint, as that would be considered, and it

7    can -- it rotate backward and forward, and it also can

8    rotate side to side (demonstrating), independently of

9    one another.

10       Q.   Okay.

11           So going back to --

12       A.   So it's not -- it's not just the axis of

13   rotation.  It's the -- the joint motion that's

14   associated with that axial rotation.

15       Q.   Okay.

16           So going back to the Rosewill 8163 webcam, I'm

17   looking at specifically the connection between the ball

18   and what you have identified as the hinge member.

19           Do you see that?

20       A.   Yes.

21       Q.   How many joints are there?

22       A.   Depends on the kind of behavior you are seeing.

23       Q.   So --

24       A.   It's one connection, but it can -- it can

25   manifest itself in many types of behavior.

Case: 13-1665    Document: 97-1    Page: 275    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    Q.    So it's one connection, and the number of

2    joints at that connection depends on how I orient the

3    ball relative to the hinge member?

4    A.    And any constraints that are placed on them,

5    yes.

6    Q.    Okay.

7         But, again, I can rotate the ball relative to

8    the hinge member about more than one axis, correct?

9    Even though they are independent axes, it's more than

10   one?

11   A.    Well, because -- because they are independent

12   joints.

13   Q.    Okay.

14   A.    The joints are the things that allow that

15   independent motion.  Same way your elbow joint --

16   Q.    So the answer is yes?

17   A.    -- has two.

18        Yes.  I'm sorry.

19        MR. HERBERHOLZ:  I don't have anything further

20   at this time.

21        I just want to reiterate our point on the

22   record this morning that Exhibit 4 that we received was

23   the first time we have received that report.  Our

24   experts haven't had a chance to consider that report.

25        I don't think it's fair that I should be

ADJUSTACAM LLC v. AMAZON.COM, INC., ET AL.

NO. 6:10-cv-329-LED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

**EXPERT REPORT OF JOHN C. MUSKIVITCH REGARDING INFRINGEMENT OF
U.S. PATENT NO. 5,855,343**

Dated:  June 25, 2012

Respectfully submitted,

JOHN C. MUSKIVITCH



1

A284.186

HIGHLY CONFIDENTIAL
ATTORNEY'S EYES ONLY

MV000001

Case: 13-1665    Document: 97-1    Page: 277    Filed: 12/11/2014

| 1(p) | Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising: | As noted in the photos below, the KODAK S101 is an apparatus (i.e., a camera clip) for supporting a camera, namely a webcam.<br><br>As noted in the photos below, the camera supported by the KODAK S101 has a lens.<br><br>The KODAK S101 is an apparatus for supporting a camera on a generally horizontal, substantially planar surface, for example, a table top or desk top. For example:<br><br><br><br>The KODAK S101 is an apparatus for supporting a camera on an object, for example the display screen of a laptop or notebook (collectively "laptop") computer, having a first surface and a second surface and an edge intersecting the first surface and the second surface. For example, with a laptop computer, the first surface is the back of the display screen, the second surface is the front of the display screen, and an edge intersects those surfaces. |
| 1(a) | a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and | The KODAK S101 comprises a hinge member (noted with a green arrow) adapted to be rotatably attached to the camera. |

MV000139

Case: 13-1665     Document: 97-1     Page: 278     Filed: 12/11/2014



When the hinge member is so attached the camera rotates about a first axis of rotation (noted with a blue circular arrow) relative to the hinge member. The axis of rotation is a single axis of rotation which is defined by a vector from the center of the connector through the central axis of the camera.

| 1(b) | b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, | The KODAK S101 comprises a support frame (noted with a red arrow) which is configured to support, and which does support, the hinge member on the surface (see above re surface) and the object (see above re object).

The support frame of the KODAK S101 is rotatably attached to the hinge member. The hinge member rotates about a second axis of rotation (noted with a yellow arrow), relative to the support frame. This axis of rotation is defined by the axis of the hinge connection to the support frame. Thus, it is a single axis of rotation.

The first axis of rotation (noted with a blue arrow) is at least generally perpendicular to the second axis of rotation (noted with a yellow arrow). In particular, the camera always rotates around a vector defined from the center of the connector through the central axis of the camera.

For example: |
|---|---|---|

2

MV000140

As noted in the photo above, the second axis of rotation (noted with a yellow arrow) is at least substantially parallel to the first surface (see above re first surface) when the hinge member (see above re hinge member) is supported on the object (see above re object).

| | | |
|---|---|---|
| 1(c) | said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and | The support frame (see above re support frame) of the KODAK S101 has a first disposition when positioned on the generally horizontal, substantially planar surface (see above re generally horizontal, substantially planar surface). <br><br> For example, see the above photos at the preamble and elements (a) and (b) of claim 1. |
| 1(d) | said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame. | The support frame (see above re support frame) of the KODAK S101 has a second disposition when attached to the object (see above re object) when the first surface (see above re first surface) of the object (see above re object) and the second surface of the object (see above re second surface) are inclined from a generally horizontal orientation, for example when a laptop computer's display screen is opened. <br><br> For example: <br><br>  <br><br> As noted in the photo above, in this second disposition the |

MV000141

| | | camera is maintained adjacent the edge (see above re edge) of the object (see above re object). |
|---|---|---|
| 7(p) | Apparatus according to claim 1 | The KODAK S101 is an apparatus according to claim 1. See above re claim 1. |
| 7(a) | wherein the object is a display screen for a laptop computer, | As noted above at the preamble of claim 1 and at element d of claim 1, the KODAK S101 is an apparatus for supporting a camera on a display screen for a laptop computer.<br><br>For example:<br><br> |
| 7(b) | and the second surface is the front of the display screen | As noted above at the preamble of claim 1 and at element d of claim 1, the KODAK S101 is an apparatus for supporting a camera on a display screen for a laptop computer, wherein the second surface (noted with a dark purple arrow) is the front of the display screen.<br><br>For example:<br><br> |
| 7(c) | and the first surface is the back of the display screen. | As noted above at the preamble of claim 1 and at claim 1, element (d) (and in the photo at claim 7, element (a)), the KODAK S101 is an apparatus for supporting a camera on a display screen for a laptop computer, wherein the first surface |

4

MV000142

| | | (noted with a light purple arrow) is the back of the display screen.  |
|---|---|---|
| 19(p) | A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising: | As noted above at the preamble of claim 1 and at claim 1, element (d), the KODAK S101 is a camera clip for supporting a camera on a laptop computer having a display screen which can be inclined from a generally horizontal position (i.e., when opened) with the uppermost portion of the display screen defining an edge.<br><br>For example:<br> |
| 19(a) | a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and | See 1(a) above. |
| 19(b) | b. a support frame hingedly attached to said hinge member to engagingly support said hinge member on the display screen, | The KODAK S101 comprises a support frame (see above re support frame) which engages and supports the hinge member (see above re hinge member) on the display screen.<br><br>For example: |

5

A284.328

MV000143

As depicted in the graphic above, the support frame (see above re support frame) is hingedly attached to the hinge member (see above re hinge member).

| 19(c) | said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, | The KODAK S101 comprises the hinge member (see above re hinge member) rotating over a second axis of rotation (see above re second axis of rotation), as noted with a yellow arrow, relative to the support frame (see above re support frame).<br><br>For example:<br><br><br><br>As exemplified by the photo above, the KODAK S101 comprises the camera being maintained adjacent the edge (see above re edge) of the laptop computer. |
| 19(d) | rotation of said support frame being prevented along an axis substantially parallel to said second axis where said second axis is substantially parallel to said edge. | As exemplified by the photo above below, the KODAK S101 comprises the support frame (see above re support frame) being supported on the display screen, and its movement constrained by a front lip on the hinge member, and thus rotation of the support frame is prevented along an axis which is at least substantially horizontal. |



As noted in the above photo, this at least substantially horizontal axis is at least substantially parallel to the second axis (see above re second axis) and the second axis is at least substantially parallel to the edge.

A284.330                                        MV000145

| 1(p) | Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising: | As noted in the photos below, the KODAK T130 is an apparatus (i.e., a camera clip) for supporting a camera, namely a webcam. |
|---|---|---|
| | | As noted in the photos below, the camera supported by the KODAK T130 has a lens. |
| | | The KODAK T130 is an apparatus for supporting a camera on a generally horizontal, substantially planar surface, for example, a table top or desk top. For example: |
| | |  |
| | | The KODAK T130 is an apparatus for supporting a camera on an object, for example the display screen of a laptop or notebook (collectively "laptop") computer, having a first surface and a second surface and an edge intersecting the first surface and the second surface. For example, with a laptop computer, the first surface is the back of the display screen, the second surface is the front of the display screen, and an edge intersects those surfaces. |
| 1(a) | a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and | The KODAK T130 comprises a hinge member (noted with a green arrow) adapted to be rotatably attached to the camera.<br><br> |

Case: 13-1665    Document: 97-1    Page: 284    Filed: 12/11/2014

| | | |
|---|---|---|
| | | When the hinge member is so attached the camera rotates about a first axis of rotation (noted with a blue circular arrow) relative to the hinge member. The axis of rotation is a single axis of rotation which is defined by a vector from the center of the connector through the central axis of the camera. |
| 1(b) | b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, | The KODAK T130 comprises a support frame (noted with a red arrow) which is configured to support, and which does support, the hinge member on the surface (see above re surface) and the object (see above re object).  The support frame of the KODAK T130 is rotatably attached to the hinge member. The hinge member rotates about a second axis of rotation (noted with a yellow arrow), relative to the support frame. This axis of rotation is defined by the axis of the hinge connection to the support frame. Thus, it is a single axis of rotation. The first axis of rotation (noted with a blue arrow) is at least generally perpendicular to the second axis of rotation (noted with a yellow arrow In particular, the camera always rotates around a vector defined from the center of the connector through the central axis of the camera. For example: |

MV000147

As noted in the photo above, the second axis of rotation (noted with a yellow arrow) is at least substantially parallel to the first surface (see above re first surface) when the hinge member (see above re hinge member) is supported on the object (see above re object).

| 1(c) | said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and | The support frame (see above re support frame) of the KODAK T130 has a first disposition when positioned on the generally horizontal, substantially planar surface (see above re generally horizontal, substantially planar surface).<br><br>For example, see the above photos at the preamble and elements (a) and (b) of claim 1. |
|---|---|---|
| 1(d) | said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame. | The support frame (see above re support frame) of the KODAK T130 has a second disposition when attached to the object (see above re object) when the first surface (see above re first surface) of the object (see above re object) and the second surface of the object (see above re second surface) are inclined from a generally horizontal orientation, for example when a laptop computer's display screen is opened.<br><br>For example:<br><br><br><br>As noted in the photo above, in this second disposition the |

A284.333

MV000148

| | | camera is maintained adjacent the edge (see above re edge) of the object (see above re object). |
|---|---|---|
| 7(p) | Apparatus according to claim 1 | The KODAK T130 is an apparatus according to claim 1. See above re claim 1. |
| 7(a) | wherein the object is a display screen for a laptop computer, | As noted above at the preamble of claim 1 and at element d of claim 1, the KODAK T130 is an apparatus for supporting a camera on a display screen for a laptop computer.<br><br>For example:<br><br> |
| 7(b) | and the second surface is the front of the display screen | As noted above at the preamble of claim 1 and at element d of claim 1, the KODAK T130 is an apparatus for supporting a camera on a display screen for a laptop computer, wherein the second surface (noted with a dark purple arrow) is the front of the display screen.<br><br>For example:<br><br> |
| 7(c) | and the first surface is the back of the display screen. | As noted above at the preamble of claim 1 and at claim 1, element (d) (and in the photo at claim 7, element (a)), the KODAK T130 is an apparatus for supporting a camera on a |

4

MV000149

| | | |
|---|---|---|
| | | display screen for a laptop computer, wherein the first surface (noted with a light purple arrow) is the back of the display screen.<br><br> |
| 19(p) | A camera clip for supporting a camera on a laptop computer, the laptop computer having a display screen which can be inclined from a generally horizontal position, an uppermost portion of the display screen defining an edge, comprising: | As noted above at the preamble of claim 1 and at claim 1, element (d), the KODAK T130 is a camera clip for supporting a camera on a laptop computer having a display screen which can be inclined from a generally horizontal position (i.e., when opened) with the uppermost portion of the display screen defining an edge.<br><br>For example:<br><br> |
| 19(a) | a. a hinge member adapted to be rotatably attached to the camera, said camera rotating about a first axis of rotation relative to said hinge member; and | See 1(a) above. |
| 19(b) | b. a support frame hingedly attached to said hinge member to engagingly support said | The KODAK T130 comprises a support frame (see above re support frame) which engages and supports the hinge member (see above re hinge member) on the display screen. |

5

| | | |
|---|---|---|
| | hinge member on the display screen, | For example:<br><br><br><br>As depicted in the graphic above, the support frame (see above re support frame) is hingedly attached to the hinge member (see above re hinge member). |
| 19(c) | said hinge member rotating over a second axis of rotation relative to said support frame, the camera being maintained adjacent the edge, | The KODAK T130 comprises the hinge member (see above re hinge member) rotating over a second axis of rotation (see above re second axis of rotation), as noted with a yellow arrow, relative to the support frame (see above re support frame).<br><br>For example:<br><br><br><br>As exemplified by the photo above, the KODAK T130 comprises the camera being maintained adjacent the edge (see above re edge) of the laptop computer. |
| 19(d) | rotation of said support frame being prevented along an axis substantially parallel to said | As exemplified by the photo above below, the KODAK T130 comprises the support frame (see above re support frame) being supported on the display screen, and its movement constrained |

| | |
|---|---|
| second axis where said second axis is substantially parallel to said edge. | by a front lip on the hinge member, and thus rotation of the support frame is prevented along an axis which is at least substantially horizontal.<br><br><br><br>As noted in the above photo, this at least substantially horizontal axis is at least substantially parallel to the second axis (see above re second axis) and the second axis is at least substantially parallel to the edge. |

A284.337

MV000152

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADJUSTACAM LLC,
                Plaintiff,

vs.

AMAZON.COM, INC., ET AL.,
                Defendants.

Case No. 6:10-CV-329-LED
JURY TRIAL DEMANDED

**DEFENDANT SAKAR INTERNATIONAL, INC.'S OPPOSED  MOTION FOR
DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES AND
NONTAXABLE EXPENSES**

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARDS ...................................................................................... 2

III.  THIS CASE IS EXCEPTIONAL BECAUSE IT WAS BROUGHT IN BAD FAITH
      AND WAS OBJECTIVELY BASELESS ......................................................... 4

      A. Plaintiff Filed This Case for The Improper Purpose of Obtaining Nuisance-
         Value Settlements ..................................................................................... 4

            1. AdjustaCam Extracted Nuisance-Value Settlements From Multiple ..........
               Defendants Before Voluntarily Dismissing Sakar ............................... 5

            2. Plaintiff's Nuisance-Value Settlements and Settlement Demands Had
               No Relationship to Defendants' Exposure ........................................... 5

      B. Plaintiff's Infringement Claims Were Brought in Bad Faith and Were Objectively
         Baseless ..................................................................................................... 7

IV.   PLAINTIFF'S LITIGATION MISCONDUCT PROVIDES ADDITIONAL AND
      SUFFICIENT EVIDENCE TO ESTABLISH THIS CASE AS EXCEPTIONAL ............. 9

      A. Plaintiff Continued to Maintain Its Frivolous Infringement Claims Even After the
         Court's Claim Construction Order ............................................................... 9

      B. Plaintiff Served a New and Untimely Infringement Report At the Deposition of Its
         Technical Expert and Near the End of Fact Discovery ............................... 10

      C. Plaintiff Continued to Maintain Objectively Baseless Invalidity Defenses ............. 11

            1.    The Prior Art Irifune Publication ................................................. 12

            2.    The Prior Art Ma Patent ............................................................ 13

      D. Plaintiff Fabricated a Per-Unit Royalty In An Attempt to Justify its Nuisance-Value
         Settlements ............................................................................................. 13

      E. Adjustacam's Admissions Establish Rule 11 Violations that Independently Warrant
         An Award of Attorneys' Fees .................................................................. 14

            1. Defendants take Adjustacam's Rule 30(b)(6) Deposition regarding Adjustacam's
               pre-filing investigations and its review of the pleadings .................... 15

            2. Adjustacam admits that it failed to review the pleading and failed to perform an
               Adequate pre-filing investigation ................................................. 15

i

3.  Adjustacam Cannot Now Walk Away From its Binding Admissions of Rule 11
Violations..................................................................................................16

V.      CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1073–74 (Fed.Cir.2002)....................15

*Automated Business Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000)....................2

*Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed.Cir.1990)......................................3

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed.Cir. 2005)............3

*Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)....................2

*Clark v. The Walt Disney Co.*, 748 F.Supp.2d 792, 798 (S.D.Ohio 2010)............................15

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990)......................10, 16

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011)...................................4,5

*FDIC v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir.2008)...............................................14

*Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007)...................................................16

*Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 336 (6th Cir.1988)...................................14

*Hoffmann–La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363 (Fed.Cir.2000)....................14

*iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed.Cir.2011)......................................3

*In re: Echoster Communications Corp.*, 448 F.3d 1294, 1303 (Fed.Cir.2006).......................16

*In re Neurontin Antitrust Litigation*, No. 02-1390, MDL No. 1479, 2011 WL 253434 (D.N.J. Jan.
25, 2011)....................................................................................................16

*Kori Corporation v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649 (Fed.Cir.1985).......16

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)...............................................6

*Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584 (7th Cir. 1981).....................................14

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).........................6

*MarcTec v. Johnson & Johnson,* 664 F.3d 907, 921 (Fed. Cir. 2012)............................3, 9, 14

*Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 543–44 (Fed. Cir. 2011)...........3

ii

*Pharmacia & Upjohn Co. v. Mylan Pharms.*, Inc., 182 F.3d 1356, 1359 (Fed. Cir. 1999)............3

*Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390 (Fed.Cir.1983).........16

    **Statutes**

35 U.S.C. § 285....................................................................................................2, 3, 18

F.R.C.P. 11.........................................................................................................3, 14, 15, 16

Fed. R. Civ. P. 30(b)(6)....................................................................... . 14, 15, 16

2

## I.    **INTRODUCTION**

Very early in this litigation, this Court expressed concern over the possibility that plaintiff filed its Complaint with the purpose of extracting "cost-of-defense type settlements" divorced from the merits of the case. (Sutton Decl., ¶15, Ex.10, at 10-12, *et seq.*). As discussed below, the Court's expression of concern was entirely accurate. Plaintiff AdjustaCam LLC ("Plaintiff" or "AdjustaCam") is a non-practicing entity and a wholly-owned subsidiary of Acacia Research Group LLC. [1] In this case, Plaintiff was formed for this purpose, Plaintiff sued more than 30 defendants (including suppliers and retailers) for infringement of U.S. Patent 5,855,343 entitled "Camera Clip" (the `343 Patent). Shortly after filing its Complaint, Plaintiff began its pattern of extorting nuisance-value settlements from defendants in amounts far below the costs of defense. Plaintiff continued this pattern over the next two years, and by August 2012, Plaintiff had settled for nuisance value with nearly all of the defendants in this case. (This was just prior to expert depositions and motions for summary judgment – when litigation expenses for defendants really build up.)

This case was exceptional. As described below, this lawsuit was objectively baseless and was brought for no other reason than to extract nuisance-value settlements for sums divorced from the merits of the case and far below the costs of defense. (Plaintiff entered into

---

[1] "A study commissioned by the Government Accountability Office (as part of the America Invents Act) has found that almost 40 percent of all patent infringement suits filed in the past five years were filed by **companies or individuals known as non-practicing entities (i.e., patent trolls)**. The study, which deems these entities "patent monetizers," states that the percentage of cases filed by patent monetizers has risen from about 22 percent five years ago. The study notes that most of the cases filed by patent monetizers settle before the court makes a summary judgment ruling. In fact, the study found that 90 percent of such cases settled. Results of the study will be published in Duke Law and Technology Journal. Lex Machina, a Palo Alto startup company, performed the study, using a random sample of cases. Specifically, Lex Machina studied 500 lawsuits, including 100 from each year between 2007 and 2011. **Among the five litigants that filed the most lawsuits, four were non-practicing entities**: Jens Erik Sorensen, Arrivalstar, **Acacia**, and Guardian Media Technologies. **According to a recent study by Boston University, patent monetizers cost companies a total of $29 billion last year. Suits by patent monetizers also disproportionately target small businesses**." *See "Patent Monetizers" Now File Forty Percent of Patent Suits*, Intellectual Property News (Oct. 17, 2012), JurisNotes.com, Inc. (emphasis added).

1

these settlements before it decided to drop its asserted `343 patent claims which had been reexamined and finally rejected by the U.S. Patent Office ("PTO").) Plaintiff had no reasonable chance of success on its patent infringement claims against Defendant Sakar International, Inc. ("Sakar"), particularly after the Court's Claim Construction Order and after Plaintiff's reexamined claims were rejected by the PTO early in the case. Even so, Plaintiff continued to assert untenable infringement claims, to demand unjustified settlement sums, and to prolong this litigation in bad faith, all in the hopes of extorting money from Sakar and other defendants.

Sakar refused to participate in the shakedown by simply buying their way out of this lawsuit, but instead vigorously defended this case on the merits, convinced by the fact that Plaintiff's infringement claims and validity defenses were baseless. Two years into the case, on Sept. 20, 2012, Plaintiff finally conceded the meritless nature of the claims asserted against Sakar, and dismissed its patent claims with prejudice. But by the time Plaintiff finally surrendered, Sakar had incurred more than two years of attorney's fees, expert witness fees, and costs defending this baseless lawsuit. Under the circumstances, Sakar submits that reimbursement for its attorneys' fees, expert witness fees, and costs is just and proper under 35 U.S.C. § 285, and/or Rule 11, and under the Court's inherent authority.

## II.  **LEGAL STANDARDS**

District courts are authorized to award reasonable attorney fees to a prevailing party in a patent case if the court determines that the case is "exceptional." 35 U.S.C. § 285. Section 285 serves "to compensate the prevailing party for its monetary outlays in the prosecution or defense of" a "clearly unwarranted" and "improperly brought" patent infringement suit. *Automated Business Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000); *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). Those monetary outlays

include all "sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Id.* District courts also have the inherent authority to award expert fees in cases where an award of attorneys' fees under § 285 is an insufficient sanction. *MarcTec v. Johnson & Johnson,* 664 F.3d 907, 921 (Fed. Cir. 2012).

Federal Circuit law applies in determining whether an award of attorney's fees is appropriate in a patent case. *See Pharmacia & Upjohn Co. v. Mylan Pharms.*, Inc., 182 F.3d 1356, 1359 (Fed. Cir. 1999). Under § 285, first, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional, then if the Court factually finds the case to be exceptional under § 285, (*i.e.*, where there has been "…fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates F.R.C.P. 11, or like infractions"), it must determine whether an award of attorney fees is justified. *MarcTec,* 664 F.3d at 915-16; *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed.Cir.1990).

However, even without misconduct, district courts may award attorney fees under § 285 if the litigation is: (1) brought in subjective bad faith; and (2) objectively baseless. *Old Reliable Wholesale, Inc. v. Cornell Corp.,* 635 F.3d 539, 543–44 (Fed. Cir. 2011)*(quoting Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed.Cir. 2005)). Under this standard, a patentee's case "must have no objective foundation, and the plaintiff must actually know this." *iLOR, LLC v. Google, Inc.,* 631 F.3d 1372, 1377 (Fed.Cir.2011). Infringement allegations are objectively baseless when "no reasonable litigant could reasonably expect success on the merits." *Brooks Furniture,* 393 F.3d at 1382.

3

### III. THIS CASE IS EXCEPTIONAL BECAUSE IT WAS BROUGHT IN BAD FAITH AND WAS OBJECTIVELY BASELESS

#### A. Plaintiff Filed This Case for The Improper Purpose of Obtaining Nuisance-Value Settlements.

Plaintiff's campaign to extract monies based on the `343 Patent consisted of suing dozens of defendants in multiple lawsuits and settling with those defendants for nuisance value to avoid exposing its baseless infringement claims and invalidity defenses. The foregoing conduct makes this case exceptional. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011). In *Eon-Net*, the Federal Circuit affirmed an exceptional case finding and award of attorneys' fees to the accused infringer (Flagstar) where Eon-Net filed its infringement complaint against Flagstar "to extract a nuisance value settlement by exploiting the high cost imposed on Flagstar to defend against EonNet's baseless claims." *Eon-Net LP,* 653 F.3d at 1327. Like AdjustaCam, Eon-Net filed complaints against several defendants and, in each case, made a "demand for a quick settlement at a price [from $25,000 to $75,000] far lower than the cost of litigation...." *Id.* (internal quotations omitted.) The Federal Circuit was critical of this practice:

> Viewed against Eon-Net's $25,000 to $75,000 settlement range, it becomes apparent why the vast majority of those that Eon-Net accused of infringement chose to settle early in the litigation rather than expend the resources required to [prove non-infringement]. Thus, those low settlement offers—less than ten percent of the cost that Flagstar expended to defend the suit—effectively ensured that Eon-Net's baseless infringement allegations remained unexposed, allowing Eon-Net to continue to collect additional nuisance value settlements.

*Id.*

Here, as in *Eon-Net*, Plaintiff settled with dozens of defendants for substantially less than the costs to defend against Plaintiff's baseless infringement allegations. Plaintiff was able to extract more settlements by **delaying** the final rejection of its claims during the reexamination proceeding in the Patent Office until August 20, 2012 (2 years into the case). These facts render this case exceptional.

4

### 1.   **AdjustaCam Extracted Nuisance-Value Settlements From Multiple Defendants Before Voluntarily Dismissing Sakar.**

Just two months after filing this lawsuit, Plaintiff executed its first nuisance-value settlement with defendant ▮▮▮▮▮▮▮▮▮ in the amount of $25,000. (Sutton Decl. ¶ 9; Sullivan Rpt. ¶¶ 62-63, Attachment 7.) On November 22, 2012, Plaintiff also settled with defendants ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮ for $25,000, and in March 2011, Plaintiff settled with defendants ▮▮▮▮▮ and ▮▮ for $15,000 and $18,000, respectively. (*Id.*) By the time Plaintiff's claims were finally rejected by the Patent Office during reexamination, Plaintiff settled with at least 22 defendants as follows:

- Twelve defendants for $25,000 or less;
- Three defendants for an amount between $25,001 and $50,000;
- Five defendants for an amount between $50,001 and $100,000; and
- Two defendants for an amount between $100,001 and $225,000.

(*Id.*; Sutton Decl. ¶ 10).

AdjustaCam's settlements are consistent with the nuisance-value settlements in the range of $25,000 to $75,000 in *Eon-Net*. Like the patent owner in *Eon-Net*, Plaintiff employed the strategy of exploiting the high cost of defending against Plaintiff's baseless claims, effectively ensuring that the frivolous nature of those claims was not exposed to most of the defendants. *Eon-Net LP*, 653 F.3d at 1327.

### 2.   **Plaintiff's Nuisance-Value Settlements and Settlement Demands Had No Relationship to Defendants' Exposure.**

As further evidence that Plaintiff filed this litigation in bad faith and for an improper purpose, the amounts that defendants agreed to pay AdjustaCam under the 22 settlement agreements have no connection to those defendants' sales of accused products. To be sure, Plaintiff and its damages expert maintained that AdjustaCam's settlement agreements (and

5

demands) were based on a minimum target royalty of $1.25/unit.[2] However, this assertion was objectively baseless. For example, the implied royalty [3] for 15 of the settlement agreements for which sales data was disclosed ranged from a minimum of $0.10/unit to a maximum of $161.29/unit. (Sutton Decl. ¶¶ 9, 10; Sullivan Rpt. Attachment 12.) Of those 15 settlement agreements, not a single agreement recited an implied royalty of $1.25 per unit, (*id.*), as asserted by Plaintiff and its damages expert.

Indeed, Plaintiff's own damages expert admitted that his opinion concerning the appropriate per-unit royalty was not calculated based on the number of units sold by any of the defendants that settled with AdjustaCam. (Sutton Decl. ¶ 12, Bratic Dep. at 97:6-98:17; 118:8-119:7; 146:6-24; 177:20-178:16; 231:16-234:3). He also admitted that his opinion was not influenced by the cost or sales price of the accused products or the cost of the patented feature (a clip) of the accused products on the grounds that the cost of the patented feature is "not relevant." [4] (*Id.* at 74:25-75:3; 77:8-15; 79:4-19.) Rather, his opinions were based on his understanding of what someone else viewed as a "target royalty" based (allegedly) on two settlement agreements executed in 2001by the prior owner of the `343 Patent (PAR Technologies). (*Id.* at 36:23-39:22; 41:17-42:16; 229:1-4; 233:18-234:3; 235:24-236:15.) Of course, this clearly does not meet the requirements of Rule 702 of the Federal Rules of Evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

Similarly, Plaintiff was unable to point to any evidence to support the claim that the 22 settlement agreements were based on a "target" royalty of $1.25. In fact, Plaintiff's 30(b)(6)

---

[2] Expert Report of Walt Bratic, dated June 25, 2012 at ¶ 107 (Sutton Decl. ¶ 3; Exh. 1.)

[3] "Implied Royalty" = (Settlement amount / units sold). For example, one defendant sold 6,584 accused units and settled for $40,000 for an implied royalty of $6.08/unit. (Sutton Decl. ¶ 9; Sullivan Rpt., Attachment 12.)

[4] Plaintiff's potential damages were limited to the value of the patented feature, absent a showing that the patented feature constitutes the basis for consumer demand. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). At no point did Plaintiff or its expert argue that the webcam clip was the basis of consumer demand for the accused products.

6

representative, AdjustaCam's CFO, Mr. Clayton Haynes, was unaware of the number of units that any defendant sold prior to settling with AdjustaCam and, therefore, was unable to verify whether any of the 22 defendants paid a minimum per-unit royalty of $1.25. (Sutton Decl. ¶ 13; Exh. 9, AdjustaCam 30(b)(6) Depo. at 69:6-70:21.)

**B.    Plaintiff's Infringement Claims Were Brought in Bad Faith and Were Objectively Baseless.**

This lawsuit was frivolous from the very outset because, as explained below, Sakar simply could not infringe the Asserted Claims under any reasonable interpretation. Unlike the accused Sakar's Kodak webcam products, the `343 Patent claims a camera clip with two separate and distinct axes of rotation. The camera disclosed in the `343 Patent is "rotatably attached" to the "hinge member" of the claimed apparatus such that the camera rotates about a *single axis of rotation* (the **"first** axis of rotation"). The "support frame" of the claimed apparatus is "rotatably attached" to the "hinge member" such that the support frame rotates relative to the hinge member about a separate, *single axis of rotation* (the **"second** axis of rotation"). (Sutton Decl. ¶ 16; Exh. 11, `343 Patent, Col.6, ll.57-57; Col.7, ll.39-42; Col.9, ll.20-22 (emphasis added.)) Thus, as illustrated by Figures 1 and 2 of the `343 Patent, the claimed apparatus is aimed by rotating the camera in a left-to-right direction about the "first axis of rotation" (28) and in an up-and-down direction by rotating the support frame and hinge member about the "second axis of rotation" (32). (*Id.* at Figs. 1, 2.)

Unlike the camera disclosed in the `343 Patent, none of the Sakar's accused Kodak webcams (Model Nos. Kodak S101 and Kodak T130) rotate about a *single axis of rotation*, as the claims of the `343 Patent require. Instead, these accused products (the "Accused Ball-and-Socket Products") include a camera connected to a clip via a **ball-and-socket joint**, which facilitates

7

rotation about *multiple axes*.[5] The substantial and material structural differences between the Accused Ball-and-Socket Products and the Asserted Claims are illustrated by the following photographs of Sakar's accused Kodak webcams, which are representative of the Accused Ball-and-Socket Products: (*See* **Appendix A**).

Comparing the Accused Products to the claims and specification of the `343 Patent shows that Plaintiff's infringement allegations were spurious. Indeed, as the Court explained in its Claim Construction Order, "[e]very reference to a 'rotatably attached' object in the specification and claims describes the attachment as permitting motion over a *single axis of rotation*," and "[t]he claims plainly describe each 'rotatably attached' object as rotating about a single axis." (April 10, 2012 Claim Construction Order (Dkt. 627) at 9-10.) Accordingly, Plaintiff's infringement allegations against Sakar, as well as other defendants were objectively baseless.

In addition, Plaintiff's own infringement expert, Dr. Muskivitch, admitted three times during his deposition on cross-examination that Sakar's Kodak webcams with a ball and stem fixed to the camera DO NOT rotate about a single axis of rotation as required by asserted claims 1(a) and 19(a):

> **1) First Admission**
> A. Yes. The stem and the ball and the camera all are -- if you are going to rotate it, they will all rotate together.
> Q. Okay. So am I correct, would you be -- is it correct to say that the **Kodak camera does not rotate relative** to the stem and ball because **they are fixed** to each other?
> A. That's correct. (Sutton Decl. ¶ 11; Exh. 7, Muskivitch Deposition, p. 280, ll.4-12);
> **2) Second Admission**
> Q. Well, we have -- we have already talked about the relationship between the camera    and the stem and ball, and we have agreed earlier -- or you agreed earlier that -- that in a Kodak webcam, **there is no rotational movement** between the -- the camera and the ball and stem  that fits  [are fixed] together. Do you remember that?
> A. Yeah, sure, sure. (*Id.* at 308, ll.12-19); and
> **3) Third Admission**

---

[5]   *See* Expert Report of John H. Hamilton Re Non-Infringement, Claim Charts, Exh. 9 claim limitation 1(a), attached as Exhibit 5A to the Sutton Decl.

8

> Q. Okay. But there is **no relative movement** between the ball and stem, which are -- and the camera, which are **fixed together**, correct?
> A. I agree. Right. (*Id.* at 311, ll.14-17).

Thus, these three admissions proved there was no infringement as a matter of law. Most of the 22 cases were settled before these non-infringement admissions were made on August 24, 2012, which was more than 2 years into the case. (Also, as explained below, the Patent Office finally rejected the patentablilty of Plaintiff's asserted claims on August 30, 2012, also more than 2 years into the case.)

## IV.    PLAINTIFF'S LITIGATION MISCONDUCT PROVIDES ADDITIONAL AND SUFFICIENT EVIDENCE TO ESTABLISH THIS CASE AS EXCEPTIONAL.

### A.    Plaintiff Continued to Maintain Its Frivolous Infringement Claims Even After the Court's Claim Construction Order.

If a party maintains infringement claims after an unfavorable claim construction, that may constitute litigation misconduct and provide additional grounds for declaring a case exceptional. *MarcTec*, 664 F.3d at 919. Thus, in *MarcTec*, the Court affirmed the district court's finding that the case was exceptional where the patent owner (MarcTec):

> [N]ot only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused [defendant] to incur needleless litigation expenses. This vexatious conduct is, by definition, litigation misconduct, and provides a separate and independent basis supporting the district court's determination that this case is exceptional.

*Id.* at 921-22.

Here, as in *MarcTec*, Plaintiff continued with its already unsustainable infringement claims against Sakar's even though the Court's Claim Construction Order was fatal to those claims. In fact, the Court resolved the parties' dispute concerning the scope of the Asserted Claims, holding that "rotatably attached" objects are "limited to a single axis of rotation." (April 10, 2012 Claim Construction Order Dkt. 627 at 10). As described above, the Accused Ball-

9

and-Socket Products which has multiple axes of rotation do not and cannot have a camera "limited to a single axis of rotation." Thus, after claim construction, no reasonable litigant could realistically have expected to avoid summary judgment, when there is such a clear structural distinction.

Nevertheless, despite the Court's warning that the parties were not to "contradict the Court's resolution of the proper scope of the claims" (April 10, 2012 Claim Construction Order (Dkt. 627) at 11), Plaintiff pressed on. Indeed, on June 25, 2012, Plaintiff served the expert report of John C. Muskivitch who—despite the Court's clarification that "rotatably attached" objects are "limited to a single axis of rotation"— opined that the Accused Ball-and-Socket Products included a hinge member "adapted to be rotatably attached to the camera." (*See generally*, June 25 Report of John C. Muskivitch, Exh. D, attached as Exh. 3 to Sutton Decl.) By continuing to press its frivolous infringement arguments, and by forcing Sakar's to retain a testifying expert to respond to such arguments, Plaintiff's bad faith is evident. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990)("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith....").

**B.    Plaintiff Served a New and Untimely Infringement Report At the Deposition of Its Technical Expert and Near the End of Fact Discovery.**

Dr. Muskivitch was deposed on August 24, 2012, after the depositions of Sakar's non-infringement expert (Mr. Hamilton), Sakar's invalidity expert (Dr. Klopp), and damages expert (Dr. Sullivan). At deposition, when asked foundational questions about his June 25, 2012 infringement report, Dr. Muskivitch claimed that the June 25 Infringement Report was merely a "draft" that did not contain the final statement of his opinions. (Sutton Decl. at ¶11; Exh. 7, Muskivitch Dep. at 11:10-13:6; 15:12-24.) Then, during the deposition, Plaintiff's counsel

10

disclosed and produced to Defendants' counsel for the first time an entirely new infringement report from Dr. Muskivitch (the "August 24 Report"), claiming that this August 24 Report was the correct report. (*Id.* at 52:12- 53:15.)

Dr. Muskivitch's August 24 Report was substantively different from the June 25 Report and contained entirely new opinions. Even Dr. Muskivitch acknowledged that the claim charts attached to the August 24 Report contained *different text* and a *different identification of the claim limitations* with respect to each of the accused products. (*See id.* at 14:2-15:4; 80:2-18.) For example, Dr. Muskivitch moved his identification of the "hinge member" of the Accused Ball-and-Socket Products from the ball and stem to the top half of the clip. In addition, he moved the "second axis of rotation" from the ball-and-socket joint to an entirely separate joint where the top half of the clip connects to the bottom half of the clip: (*See* **Appendix B**)

Underscoring the significance of these changes, Dr. Muskivitch acknowledged that Sakar's expert (Mr. Hamilton) would not be able even to understand his infringement opinions absent the so-called "final" August 24 Report. (Muskivitch Dep. at 34:16-35:4.) Plaintiff has yet to provide any justification for serving the untimely report. Plaintiff has suggested an apparent "mistake," but this argument strains credulity. If Plaintiff's counsel truly served an earlier draft of Dr. Muskivitch's opinion on June 25, this error would have come to Plaintiff's attention when Mr. Hamilton served his rebuttal report on July 27, 2012 and certainly before Plaintiff's counsel examined Mr. Hamilton at his deposition on August 17, 2012.

### C.    Plaintiff Continued to Maintain Objectively Baseless Invalidity Defenses

On several occasions, including as early as August 12, 2011, Examiner Doerrler of the USPTO rejected the Asserted Claims during reexamination as anticipated and/or obvious based on Japanese Utility Model Publication No. H2-19997 to Irifune (the "Irifune Publication") and

11

U.S. Patent No. 5,880,783 to Ma entitled "Digital Camera for a Computer" (the "Ma Patent"). (Sutton Decl. at ¶ 19; Exh. 14, OA dated August 12, 2011). Plaintiff's attorney (Edmonds)[6], was able to delay and prolong the reexamination until Examiner Doerrler issued a Final Office Action on August 30, 2012 rejecting the Asserted Claims for the third time on the same grounds. (*Id.* at ¶ 23; Exh. 18, OA dated Aug 30, 2012, at 7-12.) This was more than 2 years into the case, and most of the defendants had already settled except for Sakar, Newegg Inc., Newegg.com Inc., and Rosewill, Inc. Then, on September 20, 2012, Mr. Edmonds finally responded to the Patent Office by cancelling the Asserted Claims from the `343 patent. (*Id.* at ¶24; Exh. 19; Resp. to OA dated Sep 20, 2012.) AdjustaCam should have cancelled the Asserted Claims (or at least withdrawn them from this litigation) long before September 20. Instead, it kept advancing frivolous responses to Examiner Doerrler's rejections, in order to buy additional time to enter into another one-dozen nuisance-value settlements.

## 1.    The Prior Art Irifune Publication

As illustrated by the following annotated figures, the Irifune Publication clearly discloses **a camera rotatably attached to a hinge member** (mounting device (2)) vis-à-vis the "camera attachment shaft (9)": (*See* **Appendix C**) (Sutton Decl. ¶ 17; Exh. 12, Irifune Pub. Figs. 1, 2, 9-2.) Nevertheless, Mr. Edmonds argued that the camera of the Irifune device is not *rotatably attached* to the hinge member (9) because the camera "is not attached to the hinge member until *fully screwed or threaded to the hinge member*." (*Id.* at ¶ 20; Exh. 15, Resp. to OA, dated Feb 10, 2012, at 18 (emphasis added).) Also, the arguments concocted by Plaintiff and its expert were objectively baseless for a number of reasons.

---

[6]  Plaintiff has represented that Global Media Group LLC is the owner of the `343 Patent and AdjustaCam is the exclusive licensee of the `343 Patent.

12

### 2.     The Prior Art Ma Patent

Plaintiff and its expert also advanced and maintained frivolous arguments concerning the Ma Patent. As illustrated in the annotated figure from the Ma Patent (*See* **Appendix D,** on the left), and as the USPTO correctly concluded, the Ma Patent discloses a camera (1) rotatably attached to a hinge member (2), a support frame (3), and the claimed first and second axes of rotation. (Sutton Decl. at ¶ 18; Exh. 13.) As shown in the figure (below right) excerpted from Dr. Muskivitch's report, remarkably, Dr. Muskivitch opined that the Ma device does not disclose a camera and a support frame, but instead "a camera with moveable parts."[7] (Muskivitch Rebuttal Report at 28, 29 (showing alleged "camera" in red)). **(*See* Appendix D).** The `343 Patent does not ascribe a unique definition of a camera that would include structures used to *support* a camera.

### D.     Plaintiff Fabricated a Per-Unit Royalty In An Attempt to Justify its Nuisance-Value Settlements.

As described above, Plaintiff lacked a good faith basis for asserting that AdjustaCam's settlements were based on a minimum royalty of $1.25/unit. Neither Plaintiff, nor its damages expert, could identify any reliable evidence in support of such an alleged royalty. Indeed, Mr. Bratic ignored the obvious fact that the implied royalty rate for at least 15 of AdjustaCam's settlement agreements ranged from $0.10/unit to $161.29/unit. In addition, Mr. Bratic did not even take into consideration the costs or profits associated with the accused feature of the webcam. Evidently, Plaintiff simply had Mr. Bratic "proffer junk science" and "bogus theories" to justify its pattern of extracting nuisance-value settlements. Such conduct

---

[7]  Dr. Muskivitch maintained that the circuit box (3) of the Ma device was not a support frame because it was part of the camera, despite conceding that "circuit box (3) does support tubular shaft 21, which in turn supports adjustment block (2)." (*Id.* at 31).

13

makes this case exceptional and warrants reimbursement for Sakar's expert fees. *See MarcTec*, 664 F.3d 907, 921-22 (affirming exceptional case finding and award of expert fees and expenses in excess of $800,000 where MarcTec offered unreliable and irrelevant expert testimony and "had its experts proffer junk science," which unnecessarily extended the litigation).

### E.    AdjustaCam's Admissions Establish Rule 11 Violations that Independently Warrant an Award of Attorneys' Fees.

Under Rule 11, both the attorney and the litigant "have a continuing obligation to review and reevaluate their pleadings… at the risk of inviting the imposition of Rule 11 sanctions." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 336 (6th Cir.1988). In determining whether Rule 11 has been violated, the court must "objectively," *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir.2008), consider factual questions regarding the adequacy "of the attorney's pre-filing inquiry and the factual basis of the pleading." A patentee's failure to perform an adequate pre-filing investigation is grounds for an exceptional case finding, *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584 (7th Cir. 1981), that independently supports an award of attorneys' fees under Rule 11. *See Hoffmann–La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363 (Fed.Cir.2000).

In this case, AdjustaCam violated Rule 11 by admitting (via its 30(b)(6) witness) that it: (a) failed to properly review or even consider any of the pleadings filed by its outside counsel, including its amended Complaint and infringement contentions, and (b) failed to properly conduct and had no knowledge of a pre-filing investigation of Sakar's accused webcam devices. Accordingly, Rule 11 sanctions against AdjustaCam are appropriate in this case. (*See* **Appendix E**, excerpts from deposition testimony of Clayton Haynes.)

14

1.    **Defendants take AdjustaCam's Rule 30(b)(6) Deposition regarding AdjustaCam's pre-filing investigations and its review of the pleadings.**

On August 28, 2012, co-defendants Newegg Inc., Newegg.Com Inc. and Rosewill Inc.'s counsel ("Newegg/Rosewill") served a notice of deposition directed to AdjustaCam. (Sutton Decl. ¶ 14; Exh. 9A, at 3-6) that included relevant topics concerning AdjustaCam's pre-suit investigations and analyses (topics 1-3, 25), its knowledge of and notification of the defendants' infringement (topics 4-6, 8-10 and 11), and its enforcement of the `343 patent (topic 17), etc. (*Id.*). In response to this notice, AdjustaCam produced Clayton Haynes who was deposed on Aug. 30, 2012. Mr. Haynes testified that he had been designated by AdjustaCam to testify on the foregoing deposition subjects, (Sutton Decl. ¶ 13; Exh. 9, Haynes Dep. at 4.) and stated that he is the CFO of Acacia Research Group LLC and AdjustaCam LLC (a subsidiary of Acacia Research Group ("ARG"), and an officer of at least 50 other subsidiaries of Acacia Research Corporation (ARG's parent company). (*Id.* at 4-14.)

2.    **AdjustaCam admits that it failed to review the pleading and failed to perform an adequate pre-filing investigation.**

AdjustaCam admitted (*see* **Appendix E**) through the testimony of Mr. Haynes that it violated Rule 11: (1) by failing to review the `343 patent before filing its Complaint against Sakar; (2) by failing to review the Complaint before filing it against Sakar; (3) by failing to review its Infringement Contentions; (4) having no knowledge of and not being provided the results of any pre-filing investigation; (5) having no knowledge of which defendants were sued and playing no part in the decisions of which defendants to sue; and (6) having no knowledge of and failing to gather any evidence regarding why the accused products infringed the `343 Patent. *Clark v. The Walt Disney Co.*, 748 F.Supp.2d 792, 798 (S.D.Ohio 2010)(*citing Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1073–74 (Fed.Cir.2002))(A plaintiff and

15

his or her attorneys have a duty under Rule 11 to conduct a pre-filing claim construction analysis, comparing the accused product to the properly construed claim.); *Herron*, 858 F.2d at 335-36 (An attorney and the litigant are obligated to review all filed pleadings).

### 3. **AdjustaCam Cannot Now Walk Away From its Binding Admissions of Rule 11 Violations.**

Mr. Haynes' testimony regarding AdjustaCam's undisclosed and conclusory reliance on "advice of counsel" is insufficient to sustain an advice of counsel defense; *Eltech Systems Corp. v. PPG Industries, Inc.*, 710 F.Supp. 622, 637-38 (W.D.La. 1988)(*citing Kori Corporation v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656–7 (Fed.Cir.1985); *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390 (Fed.Cir.1983)); *In re: Echoster Communications Corp.*, 448 F.3d 1294, 1303 (Fed.Cir.2006)(a plaintiff cannot rely on undisclosed advice of counsel to protect against a claim for Rule 11 violations, *e.g.*, claim of lack of pre-filing investigation.), waived the attorney-client privilege, *id.* at 1300 (asserting the advice of counsel as a defense waives the attorney-client privilege for all communications on the subject matter and documents memorializing such communications), and conflicts with the overriding theme of AdjustaCam's testimony -- AdjustaCam's outside counsel litigated this case completely divorced from the knowledge and/or approval of AdjustaCam. AdjustaCam now remains bound by such testimony. *In re Neurontin Antitrust Litigation*, No. 02-1390, MDL No. 1479, 2011 WL 253434, at *6 (D.N.J. Jan. 25, 2011)(*citing Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007))(Rule 30(b)(6) testimony "is binding on the organizational entity and goes beyond the deponent's personal knowledge about the topics.").

### V.    **CONCLUSION**

Based on the foregoing, Sakar respectfully requests the Court to declare this case exceptional and to award it $143,933 in attorney's fees + $19,589 in expert witness fees =

$163,522, which amount equals a reasonable portion of Sakar attorney fees and expert witness fees incurred in the defense of this litigation. (*See* Sutton Decl., ¶¶ 25-35)

DATED THIS 16th day of January, 2013.

Respectfully submitted,

*/s/ Ezra Sutton*
EZRA SUTTON, Esq.
EZRA SUTTON, P. A.
Plaza 9, 900 Route 9
Woodbridge, New Jersey 07095
Tel:  732-634-3520/3511
Fax:  732-634-3511
Email:  esutton@ezrasutton.com

*Attorneys for Defendant Sakar*
*International, Inc.*

17

## APPENDIX A







18

**APPENDIX B**

 

*Excerpts from Dr. Muskivitch's June 25 Report (left) and August 24 Report (right) identifying the "second axis of rotation" of the accused Rosewill RCM-8163 (yellow arrow) and "support frame" (red arrow) (Sutton Decl. at ¶¶ 5, 7; Exhs. 3, 5.)*

 

*Excerpts from Dr. Muskivitch's June 25 Report (left) and August 24 Report (right) identifying the "hinge member" of the accused Rosewill RCM-8163 (green arrow) and first axis of rotation" (blue arrow) (Sutton Decl. at ¶¶ 5, 7; Exhs. 3, 5.)*

20

A0308

## APPENDIX C (the Irifune Publication)





(Sutton Decl. ¶ 20; Exh. 14, Irifune Pub. Figs. 1, 2, 9-2.)

20

**APPENDIX D**



FIG. 1

(Sutton Decl. ¶ 6; Exh. 4, Muskivitch Rebuttal Report at 28, 29 (showing alleged "camera" in red)).

21

## APPENDIX E

- **AdjustaCam Admitted that it Failed to Review the `343 Patent before filing its Complaint against Sakar.**

   Q. (BY MR. HEBERHOLZ) I'm going to hand you what's been marked as Exhibit Number 6. I will represent that this is a copy of the `343 Patent. Have you seen the `343 Patent before today?

   A. **I don't believe that I've – I've actually looked at this particular document, no.**

   Q. Okay. Is it your understanding that AdjustaCam is accusing Newegg, Rosewill and a number of additional defendants of infringing the `343 Patent?

   A. Again, not being an attorney, but that's my high level understanding.

   Q. But you don't recall reviewing the `343 Patent before today?

   A. Not this specific document.

   Q. Are you aware of which of the claims of the `343 Patent are being asserted in this litigation?

   A. Again, you know, that's – that's not my area, so no.

   Q. You said that's not your area. Is there somebody else at AdjustaCam whose area that is?

   A. I believe AdjustaCam defers to its outside counsel with respect to those matters.

   (Sutton Decl. ¶ 13; Exh. 9, Haynes Dep. 35:23-36:19)(emphasis added).

- **AdjustaCam Admitted that it Failed to Review the Complaint before filing it against Sakar.**

   Q. Yeah, I'm asking if AdjustaCam reviewed the complaint to ensure that the factual representations were accurate prior to its filing on July 2nd of 2010?

   　　　　　　*　　　　　　　　　　　　　　　*

   A. Well, I believe it was prepared by AdjustaCam's external counsel. I guess all I can testify to is that I -- I don't believe that I reviewed it. I don't know to what extent anybody else working on behalf of AdjustaCam reviewed it or not. I just don't have the information regarding that.

   Q. (BY MR. HEBERHOLZ) So you don't recall reviewing Exhibit 4 before it was filed?

   A. I don't believe that I did. I -- I believe that it was prepared by AdjustaCam's external counsel.

   Q. Other than AdjustaCam's external counsel are you aware of anybody else that had a role in preparing the complaint?

   A. **I'm unaware of whether anybody else did or did not.**

   (*Id.* at 31:6-24)(emphasis added);

   Q. (BY MR. HEBERHOLZ) I'm going to hand you what's been marked as Deposition Exhibit number 5. I will represent that this is the third amended complaint that was filed in this case. Specifically, this document was filed on August 9th of 2011. Are you familiar with this document, Mr. Haynes?

   A. I don't specifically recall reviewing this particular document.

   Q. You don't recall reviewing this document in preparation for your deposition today?

   A. I don't specifically recall, although it does look similar to the previous document that we looked at. But I don't recall specifically reviewing this particular document.

   Q. Other than outside counsel for AdjustaCam, to your knowledge did AdjustaCam review the third amended complaint before it was filed on August 9th, 2011?

   A. Outside of external counsel, **I'm not aware of anybody**.

   (*Id.* at 33:7-25)(emphasis added);

   Q. Did you review -- did you or anyone at AdjustaCam review the complaint before it was filed

22

with the Court?
*                              *                              *
A. **I did not review the complaint** and I don't know to what extent anybody did or did not at AdjustaCam, as it was handled by outside counsel.
(*Id.* at 100:25-101:12)(emphasis added); and

Q. .... Did you or any of the persons that we've just been talking about [all of the officers of AdjustaCam] review the complaint in this case before it was filed with the Court?
*                              *                              *
A. **I did not review the complaint** and I don't know to what extent any of the other individuals did or did not review the complaint.
(*Id.* at 108:25-109:11)(emphasis added);

- **AdjustaCam Admitted that it Failed to Review its Infringement Contentions.**
  Q. (BY MR. HEBERHOLZ) Do you recall reviewing infringement contentions in this particular case?
  A. I don't specifically recall reviewing infringement contentions in the case.
  Q. Okay. Excluding outside counsel for AdjustaCam, to your knowledge did anyone at AdjustaCam have any role in preparing infringement contentions that were served in this case?
  A. Other than outside -- other than outside counsel, **I'm not aware of anybody**.
(*Id.* at 35:12-21)(emphasis added).

- **AdjustaCam Admitted that it had No Knowledge of and Was Not Provided Results of any Pre-Filing Investigation.**
  Q. Was any reports [regarding pre-filing investigations] sent to AdjustaCam from the outside law firm?
  *                              *                              *
  A. **Not to my knowledge**.
  *                              *                              *
  Q. All right. Well, to be more clear, do you know if a report was -- report from your counsel, a report from your outside counsel was sent to AdjustaCam?
  A. I do not --
  *                              *                              *
  A. I do not know whether one was or was not.
(*Id.* at 95:10-96:16)(emphasis added);

Q. Do you know if any of those claim charts were sent to AdjustaCam?
*                              *                              *
A. I -- I do not know whether they were or were not.
(*Id.* at 97:20-24);

Q. .... Do you know if a written report was given to you or -- was given to you or Mr. Ryan or Mr. Harris or Mr. Lee regarding any pre-filing investigation that was performed by outside counsel.
*                              *                              *
A. **A written report was not given to me**. And as part of my preparation for this particular deposition I didn't investigate whether a report was or was not provided to the other individuals you mentioned.
Q. (BY MR. SUTTON) You didn't check into that?
A. No.

23

(*Id.* at 113:9-22)(emphasis added);

> Q. (BY MR. SUTTON) Now, to the extent that you said earlier that outside counsel gathered evidence on the accused products, do you know if a written report was prepared on the evidence that was gathered on those accused products?
>
> \*                                  \*                                  \*
>
> A. Sitting here today **I don't know whether one was or was not prepared**.

(*Id.* at 114:9-16)(emphasis added);

> Q. (BY MR. SUTTON) And with regard to the aspect of testing and viewing the -- these accused products that are in the complaint, are you aware of any report that was prepared by outside counsel as to that aspect of the accused products?
>
> \*                                  \*                                  \*
>
> A. **I'm not aware of whether one was or was not produced or prepared**.

(*Id.* at 115:14-21);

> Q. You said that -- that your understanding that the pre-filing investigation was conducted by outside counsel in the few months prior to the filing of the lawsuit, correct?
> A. May, June 2010.
> Q. All right. And you obtained that information from outside counsel in preparing for this deposition, right?
> A. Correct.
> Q. And were you aware of that information prior to being advised by counsel that it was -- that the pre-filing investigation was conducted in May and June of 2010?
> A. **No, I was not**.

(*Id.* at 130:2-15)(emphasis added);

> A. With respect to the pre-suit investigation and Newegg and Rosewill.
> Q. (BY MR. SUTTON) **And so [you] don't have any knowledge**, sitting here today, **as to whether that happened or not, correct?**
>
> \*                                  \*                                  \*
>
> A. Correct.

(*Id.* at 134:2-8)(emphasis added); and

> Q. (BY MR. SUTTON) Now, the information that you just gave in answer to that request [concerning AdjustaCam's counsel's alleged pre-filing investigation], was that information obtained from counsel in preparing for this deposition?
> A. Yes.
> **Q. Did you know about that information in the two months prior to filing of the lawsuit, which was May and June of 2010?**
> **A. I did not.**
> Q. So the first time you heard about it was in your preparation for this deposition?
> A. Correct.
> **Q. And have you ever seen any documents relating to pre-filing investigations between April and -- April of 2010 and up to the present time just prior to preparing for this deposition?**
>
> \*                                  \*                                  \*
>
> **A. I do not believe so.**

(*Id.* at 148:13-149:5)(emphasis added);

24

- **AdjustaCam Admitted that it Had No Knowledge of Which Defendants Were Sued and Admitted that AdjustaCam Did Not Decide Which Defendants to Sue.**

Q. (BY MR. SUTTON) Do you know who decided which defendants to sue?
*                                    *                                    *
A. It's my understanding that was all held -- all handled by external counsel.
Q. (BY MR. SUTTON) External counsel made the decisions as to who to sue?
A. That is my understanding.
Q. Do you know if outside counsel consulted with anyone at AdjustaCam to discuss which defendants would be sued?
*                                    *                                    *
A. Yeah, the extent of my knowledge is that those types of matters were handled by outside counsel.
Q. (BY MR. SUTTON) Well, but my question was, do you know if outside counsel discussed with anyone at AdjustaCam which defendants would be sued?
*                                    *                                    *
A. Yeah, the extent of my knowledge or all that I'm aware of is that those types of matters are handled by outside counsel.

(*Id.* at 99:5-25);

Q. (BY MR. SUTTON) So is it your understanding that **outside counsel made the decisions as to** which defendants to sue and include in the complaint?
*                                    *                                    *
A. It's my understanding that all those matters were handled by outside counsel.
Q. (BY MR. SUTTON) I'm asking you, were they handled only by outside counsel? Were they ever discussed with AdjustaCam?
*                                    *                                    *
A. It's my understanding that they were handled by outside counsel.

(*Id.* at 100:8-19)(emphasis added); and

**Q. (BY MR. SUTTON) Did you discuss with outside counsel which defendants were going to be accused in the complaint?**
*                                    *                                    *
**A. No.**
Q. (BY MR. SUTTON) I couldn't hear you. Was it no?
A. No.

(*Id.* at 110:6-14).

- **AdjustaCam Admitted that it No Knowledge of and Did Not Gather Any Evidence Regarding Why the Accused Products Infringed the `343 Patent.**

Q. (BY MR. SUTTON) Were you involved in gathering any evidence on the accused products alleged in the complaint?
*                                    *                                    *
A. No.
Q. (BY MR. SUTTON) Do you know who was?
*                                    *                                    *
A. It's my understanding that that analysis was conducted by outside counsel.
**Q. (BY MR. SUTTON) Was it conducted only by them?**
**A. That's my understanding.**

(*Id.* at 111:8-19); and

25

Q. Okay. Did you or Mr. Ryan or Mr. Harris or Mr. Lee participate in gathering evidence on the accused products included in this complaint?

\*                                    \*                                    \*

A. Not to my knowledge.

Q. (BY MR. SUTTON) Not to your knowledge? So to your knowledge, is it correct to say that only outside counsel performed that function?

A. It is AdjustaCam's understanding that that was performed by outside counsel.

(*Id.* at 112:24-113:8).

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of January, 2013, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

*/s/ Ezra Sutton*
Ezra Sutton

## CERTIFICATE OF CONFERENCE

This is to certify that counsel have complied with the meet-and-confer requirement set forth in Local Rule CV-7(h) and this motion is opposed. The personal conference required by the rule was conducted on January 8, 2012 by telephone. Counsel participating in the conference on behalf of the movant/defendant, Sakar International, Inc. ("Sakar") was Ezra Sutton. Counsel participating on behalf of the plaintiff/nonmovant, AdjustaCam LLC, was John Edmonds.

Counsel for the movants articulated the basic components of the motion and counsel for the non-movant expressed disagreement with the motion and any basis for it, such that agreement could not be reached. The discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve. On more than one occasion prior to January 8, 2012, Mr. Sutton and Mr. Edmonds, on the calls, had discussed the likelihood of the movant filing this motion with counsel for the non-movant taking exception to it on those occasions as well.

*/s/ Ezra Sutton*
Ezra Sutton

27

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that this motion is being filed under seal pursuant to the provisions and authorization of the Protective Order entered by the Court in this case.

/s/ Ezra Sutton
Ezra Sutton

28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC.;  ET AL. | JURY |

### UNOPPOSED MOTION TO DISMISS SAKAR AND KOHL'S

Plaintiff AdjustaCam LLC respectfully submits this unopposed motion to dismiss the claims and counterclaims involving Defendants/Counter-claimants Sakar International, Inc., Kohl's Illinois, Inc., Kohl's Corporation, Inc. and Kohl's Department Stores, Inc. (collectively "Sakar/Kohl's"), pursuant to Fed.R.Civ.P. 41(a)(2) as follows:

I.

This is a patent infringement case involving asserted claims 1, 7 and 19 (the "Asserted Claims") of U.S. Patent No. 5,855,343 (the "'343 patent").   On August 30, 2012, at the culmination of reexamination proceedings involving the '343 patent, the U.S.P.T.O. issued a Final Office Action rejecting the Asserted Claims for being unpatentable over prior art but allowing additional new and amended claims. Ex. 1.  On September 20, 2012, in response to that Final Office Action, Plaintiff canceled the Asserted Claims of the '343 patent, Ex. 2, so that a certificate of reexamination can issue concerning the multiple new and amended claims deemed allowable.

Moreover, on September 30, 2012, Plaintiff granted Sakar/Kohl's a covenant not to sue under the '343 Patent (Dkt. No. 721, Ex. 2).  Due to disputes over the wording of the covenant, Plaintiff provided an amended covenant not to sue on October 12, 2012 (Dkt No. 729, Ex. A), and a second amended covenant not to sue on this date.  The second amended covenant not to sue was mutually agreeable to Plaintiff and Sakar/Kohl's.

In view of the foregoing, the following issues in this case are now moot or near moot: (1) infringement of the Asserted Claims; (2) validity of the Asserted Claims; and (3) damages from infringement of the Asserted Claims.   Accordingly, Plaintiff hereby moves for an order dismissing its claims against Sakar/Kohl's **with prejudice**.  In addition, Sakar/Kohl's does not oppose, and Plaintiff hereby moves for, an order dismissing Sakar/Kohl's counterclaims **without prejudice**.

II.

Sakar/Kohl's does not oppose dismissal of AdjustaCam's claims and Sakar/Kohl's counterclaims as set forth herein, with the exception of Sakar/Kohl's right to seek to obtain and recover costs and/or attorneys' fees pursuant to Fed.R.Civ.P. 54(d)(1) and/or (2) and 35 U.S.C. § 285 (which AdjustaCam would oppose if sought).

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the foregoing relief.

December 14, 2012                              Respectfully submitted,

                                              By: /s/ *John J. Edmonds*
                                              John J. Edmonds – LEAD COUNSEL
                                              Texas State Bar No. 789758
                                              Michael J. Collins
                                              Texas Bar No. 4614510
                                              Stephen F. Schlather
                                              Texas Bar No. 24007993
                                              COLLINS,   EDMONDS,   POGORZELSKI,
                                              SCHLATHER & TOWER, PLLC
                                              1616 S. Voss Rd., Suite 125
                                              Houston, Texas 77057
                                              Telephone: (713) 501-3425
                                              Facsimile: (832) 415-2535
                                              jedmonds@cepiplaw.com
                                              mcollins@cepiplaw.com
                                              sschlather@cepiplaw.com

                                              Andrew W. Spangler
                                              Texas Bar No. 24041960
                                              Spangler & Fussell P.C.

208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

ATTORNEYS FOR PLAINTIFF
ADJUSTACAM LLC

### CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Plaintiff have conferred with counsel for Sakar/Kohl's in accordance with L.R. CV-7, and that Sakar/Kohl's does not oppose this motion.

December 14, 2012                             /s/ *John J. Edmonds*
                                             John J. Edmonds

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

December 14, 2012                             /s/ *John J. Edmonds*
                                             John J. Edmonds

Case 6:10-cv-00329-LED   Document 744-1   Filed 12/14/12   Page 1 of 1 PageID #:  8070

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC.;  ET AL. | JURY |

### ORDER

CAME BEFORE THE COURT the Unopposed Motion (the "Motion") of Plaintiff AdjustaCam LLC to dismiss the claims and counterclaims involving Defendants/Counter-claimants Sakar International, Inc., Kohl's Illinois, Inc., Kohl's Corporation, Inc. and Kohl's Department Stores, Inc. (collectively "Sakar/Kohl's"), and the Court being of the opinion that said motion should be GRANTED, it is hereby

ORDERED that Plaintiff's claims against Sakar/Kohl's are DISMISSED WITH PREJUDICE.  It is further ORDERED that Sakar/Kohl's counterclaims are DISMISSED WITHOUT PREJUDICE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADJUSTACAM LLC | | |
| v. | | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC.;  ET AL. | | JURY |

**PLAINTIFF'S RESPONSE TO NEWEGG/ROSEWILL'S MOTION FOR DECLARATION OF
EXCEPTIONAL CASE
AND REQUEST FOR ORAL HEARING**

*FILED UNDER SEAL*

**ADDITIONAL ATTACHMENTS**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ADJUSTACAM LLC

v.                                          NO. 6:10-cv-329-LED

AMAZON.COM, INC.;  ET AL.                    JURY

## DECLARATION OF JOHN EDMONDS IN SUPPORT OF PLAINTIFF'S RESPONSE TO NEWEGG/ROSEWILL'S MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND REQUEST FOR ORAL HEARING

I, **JOHN J. EDMONDS**, declare under penalty of perjury as follows:

1.  My name is John J. Edmonds, I am over the age of twenty-one (21) years, am competent to testify on the matters stated herein. I am a shareholder at the law firm of Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC and am counsel of record for AdjustaCam, LLC in the above-referenced matter. I have personal knowledge of the facts set forth herein, and they are true and correct, and I could and would testify competently thereto if called as a witness.

2.  Exhibit 2 to PLAINTIFF'S RESPONSE TO NEWEGG/ROSEWILL'S MOTION FOR DECLARATION OF EXCEPTIONAL CASE (the "Response") is a true and correct copy of the '343 patent-in-suit.

3.  Exhibit 3 to Plaintiff's Response is a true and correct copy of the Court's *Markman* Ruling from this case.

4.  Exhibit 4 to Plaintiff's Response is a true and correct response of a final office action during reexamination proceedings for the patent-in-suit.

5.  Exhibit 5 to Plaintiff's Response is a true and correct copy of an office action response during reexamination proceedings for the patent-in-suit.

6.  Exhibit 6 to Plaintiff's Response is a true and correct copy of NewEgg's interrogatory responses.

7.  Exhibit 7 to Plaintiff's Response is a true and correct copy of excerpts from the Rule 30(b)(6) deposition of NewEgg from this case.

8. Exhibit 8 to Plaintiff's Response is a true and correct copy of excerpts from the Rule 30(b)(6) deposition of Rosewill from this case.

9. Exhibit 9 to Plaintiff's Response is a true and correct copy of excerpts from the deposition of Plaintiff's technical expert Dr. John Muskivitch from this case.

10. Exhibit 10 to Plaintiff's Response is a true and correct copy of Dr. Muskivitch's CV.

11. Exhibit 11 to Plaintiff's Response is a true and correct copy of the original expert report of Plaintiff's damages expert in this case, Mr. Walt Bratic.

12. Exhibit 12 to Plaintiff's Response is a true and correct copy of Mr. Bratic's CV.

13. Exhibit 13 to Plaintiff's Response is a true and correct copy of excerpts from the deposition of Mr. Bratic from this case.

14. Exhibit 14 to Plaintiff's Response is a true and correct copy of excerpts from the Rule 30(b)(6) deposition of Plaintiff from this case.

15. Exhibit 15 to Plaintiff's Response is a true and correct copy of the original expert report of Plaintiff's damages expert in this case, Mr. Walt Bratic.

16. Exhibit 16 to Plaintiff's Response is a true and correct copy of the Irifune reference that has been at issue in this case and in the reexamination proceedings involving the patent-in-suit.

17. Exhibit 17 to Plaintiff's Response is a true and correct copy of the Ma '783 patent.

18. Exhibit 18 to Plaintiff's Response is a true and correct copy of an office action from the reexamination proceedings involving the patent-in-suit.

19. Exhibit 19 to Plaintiff's Response is a true and correct copy of an office action response from the reexamination proceedings involving the patent-in-suit.

20. Exhibit 20 to Plaintiff's Response is a true and correct copy of an office action from the reexamination proceedings involving the patent-in-suit.

21. Exhibit 21 to Plaintiff's Response is a true and correct copy of the as-written expert report of Plaintiff's technical expert in this case, Dr. Muskivitch, which was Exhibit 4 to his deposition.

2

ATTORNEY'S EYES ONLY

22. Exhibit 22 to Plaintiff's Response is a true and correct copy of excerpts from the deposition of NewEgg/Rosewill's damages expert Dr. Sullivan from this case.

23. Due to the Court's construction of "rotatably attached," AdjustaCam dropped sixteen (16) webcams from the suit because the rotatable attachment between the hinge member and camera was not limited to a single axis of rotation.  The dropped webcams were the HP 3100, Gearhead WC 740, Gearhead WC 745, Gearhead WC 750, Gearhead WC 740I, Gearhead WC 1100, Gearhead WC 1200, Gearhead WC 1300, Gearhead WC 1400, Gearhead WC 1500, Gearhead WCF 2600, Gearhead WCF 2750, Gearhead WC 4750 and Gearhead WC 8301.

24. AdjustaCam originally accused NewEgg of infringement relative to various webcams sold by NewEgg which were manufactured by Auditek, Creative, Digital Innovations, Gearhead, Hercules, HP, iMicro, Lifeworks, jWin, Pixxo and Rosewill. However, during the course of the lawsuit, certain of NewEgg's suppliers reached settlements with AdjustaCam which licensed the sale of their webcams by NewEgg.  Finally, on August 10, 2012, AdjustaCam settled with NewEgg's supplier GearHead, and on August 17th, AdjustaCam settled with NewEgg's supplier HP.  With the HP and GearHead licenses, AdjustaCam's claims against almost all of remaining retailers in the case became essentially *de minimis*, and the only significant remaining defendants were Sakar and its primary distributor Kohl's.

25. Sakar/Kohl's were also unique among the remaining defendants in that they failed to designate a damages expert, and thus had no expert to rebut AdjustaCam's damages expert, Mr. Walt Bratic.

26.  Therefore, in view of the HP and GearHead settlements, and in an effort to streamline this case by winnowing out *de minimis* infringers, and to focus on Sakar/Kohl's (who lacked a damages expert), AdjustaCam voluntarily dismissed its claims against the remaining retailers who had sold HP and/or GearHead webcams, namely Best Buy, Fry's, MicroCenter, Office Depot and Walmart.

3

ATTORNEY'S EYES ONLY

27. The following images:

 

are cut from true and correct photos of disassembled Rosewill 8163 and Hercules Classic webcams. The red arrows, which were added by me, point to channels in the housing.

28.     For its opening settlement number at mediation for NewEgg/Rosewill, AdjustaCam quoted $75,000 to account for both past and expected future infringement for the life of the '343 patent. At the mediation, AdjustaCam explained that its settlement number was based upon a $1.50 per webcam metric, and that it took into account past infringement as well as some future infringement.

29.     AdjustaCam and NewEgg did not have any direct communications about settlement during March 2012. All communications were conducted using Mr. Jim Knowles as an intermediary in furtherance of his role as mediator. NewEgg and AdjustaCam did not have any communications, so no explanation of AdjustaCam's settlement number was refused. Further, AdjustaCam did explain to the Mr. Knowles, who was well aware of AdjustaCam's $1.25 per webcam metric, that its settlement number for NewEgg was based upon past infringement and estimated future infringement.

30.     AdjustaCam's July 11, 2012 settlement offer was communicated to NewEgg via email, and no one representing NewEgg asked for an explanation. Had NewEgg asked for an explanation of how AdjustaCam arrived at that number, it would have been informed that AdjustaCam took its expert's damage figure of $17,928 based upon two years of past infringement, and then extrapolated a royalty

4

ATTORNEY'S EYES ONLY

number for future infringement based upon 3.75 more years of infringement (i.e., $33,615) through the term of the '343 patent, for a total of $51,543.

I declare under penalty of that the foregoing is true and correct.

Executed in Houston, TX on November 7, 2012.

John J. Edmonds

5

ATTORNEY'S EYES ONLY



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,366 | 12/06/2010 | 5855343 | 20145.0001.EP343 | 7040 |

7590          08/30/2012

HIMANSHU AMIN, LLC
127 Public Square
57th Floor
Cleveland, OH 44114

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 08/30/2012

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,316 | 12/30/2010 | 5855343 | 76958.00001 | 5680 |

7590    08/30/2012

HIMANSHU AMIN, LLC
127 Public Square
57th Floor
Cleveland, OH  44114

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 08/30/2012

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

PAUL HASTINGS JANOFSKY & WALKER LLP
875 15th Street, NW
Washington, DC 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/011,316 and 90/011,366*.

PATENT NO. *5855343*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Tracy W. Druce
Novak Druce & Quigg, LLP
1000 Louisiana Street, 53rd Floor
Houston, TX 77002

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/011,366 and 90/011,316*.

PATENT NO. *5855343*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| **Office Action in Ex Parte Reexamination** | Control No.<br>90/011,316 and 90/011,366 | Patent Under Reexamination<br>5855343 |
|---|---|---|
| | Examiner<br>WILLIAM DOERRLER | Art Unit<br>3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on <u>20 July 2012</u> .    b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08. ·  4. ☐ _____

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1,2,5-8,10,14-17,19 and 22-48* are subject to reexamination.

1b. ☒ Claims *3,4,9,11-13,18,20 and 21* are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☒ Claims *22-48* are patentable and/or confirmed.

4. ☒ Claims *1,2,5-8,10,14-17 and 19* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. _____ .

   4☐ been filed in reexamination Control No. _____.

   5☐ been received by the International Bureau in PCT application No. _____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)        Office Action in Ex Parte Reexamination        Part of Paper No. 20120828

Application/Control Number: 90/011,316 and
90/011,366                                                                                    Page 2
Art Unit: 3993

### DETAILED ACTION

**THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire 2 months
from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination
proceedings.** The provisions of 37 CFR 1.136 apply only to "an applicant" and not to
parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR
1.550(a), it is required that reexamination proceedings "will be conducted with special
dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37
CFR 1.550(c).** A request for extension of time must be filed on or before the day on
which a response to this action is due, and it must be accompanied by the petition fee
set forth in 37 CFR 1.17(g). The mere filing of a request will not effect any extension of
time. An extension of time will be granted only for sufficient cause, and for a reasonable
time specified.

The filing of a timely first response to this final rejection will be construed as
including a request to extend the shortened statutory period for an additional month,
which will be granted even if previous extensions have been granted. In no event
however, will the statutory period for response expire later than SIX MONTHS from the
mailing date of the final action. See MPEP § 2265.

Application/Control Number: 90/011,316 and
90/011,366                                                                    Page 3
Art Unit: 3993

### *Merged Proceeding*

Reexamination Control Nos. 90/011,316 and 90/011,366 have been merged into a single proceeding. See the June 14, 2011 merger decision. Therefore, a single combined examiner's action is set forth below for the merged proceeding.

Any paper filed by the patent owner must consist of a single response, filed in duplicate, each bearing an original signature for entry into each file. All papers filed by the patent owner must be served on each of the third party requesters and requesters will be sent copies of all papers mailed by the Office. Where a paper is filed that requires payment of a fee (e.g., petition fee, excess claims fee, appeal brief fee, brief fee, etc.) only a single fee payment is required.

### *Reexamination Procedures*

Submissions after this Office action, which is a final action, will be governed by the requirements of 37 C.F.R. 1.116 and 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

Extensions of time under 37 C.F.R. 1.136(a) will not be permitted in these proceedings because the provisions of 37 C.F.R. 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. 1.550(c).

Application/Control Number: 90/011,316 and
90/011,366                                                                                      Page 4
Art Unit: 3993

The patent owner is reminded of the continuing responsibility under 37 C.F.R.

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving the patent, throughout the course of this reexamination

proceeding. The third party requester is also reminded of the ability of similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding. See MPEP §§ 2207, 2282 and 2286.

Patent owner is notified that any proposed amendment to the specification and/or

claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must

be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees

required by 37 C.F.R. 1.20(c). See MPEP § 2250(IV) for examples to assist in the

preparation of proper proposed amendments in reexamination proceedings.

After the filing of a request for reexamination by a third party requester, any

document filed by either the patent owner or the third party requested must be served

on the other party (or parties where two or more third party requested proceedings are

merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248.

See 37 C.F.R. 1.550(f).

***Summary of the Proceeding to Date***

In reexamination 90/011,366, a Third Party Requester requested reexamination

of claims 1,2,5-8,10,14-17 and 19 of U.S. Patent No. 5,855,343 (hereinafter "the '343

patent") based upon the following proposed rejections:

Application/Control Number: 90/011,316 and
90/011,366                                                                      Page 5
Art Unit: 3993

A. Claims 1, 2, 5, 6, 8, 10 and 14-17 are anticipated by Irifune (JP-H2-19997) under
35USC 102(b).

B. Claims 1, 7, 8 and 19 are anticipated by Ma (US Patent No. 5,880,783) under 35
USC 102(e).

C. Claims 7 and 19 are rendered obvious by Irifune in view of Ma under 35 USC 103(a).


An order granting reexamination based on above substantial new questions of

patentability affecting claims 1,2,5-8,10,14-17 and 19 of the '343 patent was mailed on

December 21, 2010 (reexamination 90/011,366).

In reexamination 90/011,316 another Third Party Requester requested

reexamination of claims 1,10 and 19 of U.S. Patent No. 5,855,343 (hereinafter "the '343

patent) based upon the following proposed rejections:

A. Claims 1, 10 and 19 are anticipated by Ma (US Patent No. 5,880,783) under 35 USC
102(e).

B. Claims 1, 10 and 19 are obvious over Yamauchi (US Patent No. Des. 383,475) under
35 USC 103(a).

C. Claims 1, 10 and 19 are obvious over Yamauchi in view of Ma under 35 USC 103(a).

D. Claims 1, 10 and 19 are obvious over Yamauchi in view of Wakabayashi (US Patent
No. 5,808,672) under 35 USC 103(a).

E. Claims 1, 10 and 19 are obvious over Yamauchi in view of Ohmura (US Patent No.
4,493,542) under 35 USC 103(a).

F. Claims 1 and 10 are anticipated by Dovey (US Patent No. 4,526,308) under 35 USC
103(a).


An order granting reexamination based on above substantial new questions of

patentability affecting claims 1,10 and 19 of the '343 patent was mailed on March 23,

Application/Control Number: 90/011,316 and
90/011,366
Art Unit: 3993

Page 6

2011. The March 23, 2011 order did not find a SNQ for proposed rejection A

regarding claims 1 and 19 (as this would be a duplicate of the '366 reexam) or

proposed rejection B (as Yamauchi is seen as the technical equivalent of McAll,

which was relied upon during the original prosecution). See both the December 21,

2010 and the March 23, 2011 orders.

Reexamination was not requested or ordered for claims 3,4,9,11,12,13,18,20 and

21 of the '343 patent. Accordingly, these claims will not be examined in this merged

proceeding.

The patent owner did not file a statement under 37 CFR 1.530 for either

reexamination.

An Office Action mailed August 12, 2011 rejected claims 1,2,5,6,8,10,14-17 and 19

as anticipated by Irifune, claims 1,7 and 19 as anticipated by Ma and claims 1,2,5-

8,10,14-17 and 19 as obvious over Yamauchi in view of Ma. See the August 12, 2011

Office Action. Patent owner filed a response to the August Office action October 12,

2011. This response also references an October 5, 2011 in-person interview. This

response did not cite passages of the original disclosure for the newly added claims. A

new response was submitted February 10, 2012, which included statements of support

in the original disclosure for the new claims. See the October 5, 2011 interview

summary for a discussion of what was discussed during the interview. The February

10, 2012 amendment added new claims 22-47 (with two claims numbered 24). After an

April 17, 2012 telephone interview, Patent Owner filed a response on May 8, 2012 to

the March 8, 2012 Office action. The changes to the claims on this amendment were

Application/Control Number: 90/011,316 and
90/011,366                                                                Page 7
Art Unit: 3993

noted using the earlier amendment as a basis, instead of the patent, so a Notice of

Informal Amendment was mailed June 20, 2012.  A compliant amendment was received

July 20, 2012.


***Grounds of Rejection***
The following grounds of rejection are set forth:


### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in
the United States.


Claims 1,2,5,6,8,10,14-17 and 19 are rejected under 35 U.S.C. 102(b) as being

anticipated by Irifune.

Irifune discloses a camera support apparatus which is shown supporting a

camera on a horizontal planar surface in figure 9-2 and on an object having first and

second surfaces having an edge intersecting the first and second surfaces in figure 10-

2.  Irifune shows a hinge (around shaft 1) which is rotatably attached to the camera

using threaded camera attachment shaft 9.  Although Irifune does not explicitly state

that the camera can rotate about the threaded post, such rotation is seen as inherent to

such a connection, as the post is designed to rotate to fasten the camera and the

camera can be securely fastened in any position using shaft 9 as an axis while the

camera rests on the camera fixed part 2.   The large arm 3 and small arm 4 are seen as

a support frame which is rotatably attached to the hinge member and which, as shown

in figures 9-2 and 10-2, can support the camera on either a horizontal surface or

supported adjacent the edge between two inclined surfaces.   The central shaft 1,

around which the large arm, small arm and camera fixed part rotate is perpendicular to

the camera attachment shaft 9, around which the camera can be rotated for proper

positioning.

In regard to claim 2, arms 3 and 4 are seen as the first and second portion of the

support frame.  Figure 9-2 shows the arms in a first disposition with the distal

extremities of the arms engaging a generally horizontal planar surface.  Figure 10

shows the arms engaging opposing outer surfaces to maintain the camera at an edge

between the two surfaces.

In regard to claim 5, Irifune shows nonslip rubber rings 12 attached to arms 3 and

4, so that the arms engage a generally horizontal surface at four locations and

unwanted rotation of the frame is avoided.

In regard to claim 6, figures 10-1 and 10-2 show the large leg contacting the

surface further away from the edge than the short leg contacts the opposite surface.

In regard to claim 8, the camera attachment shaft 9, which provides a pivoting

support for the camera is above the central portion of shaft 1, and is thus seen as being

located in a proximal end of the body.  Irifune states that the structure is "(a) structure in

which a camera fixed part (2) and arms (3) and (4) can be freely rotated about a central

shaft (1)". This is seen as the body (camera fixed part 2) being able to rotate about the

second axis (shaft 1) relative to the support frame (arms 3 and 4).

In regard to claim 10, the camera supported by the Irifune device in figure 9-2 is

shown to have both a housing and a lens and the camera is shown supported on a

generally horizontal substantially planar surface. Figure 10 also shows the camera

housing and lens, but in this instance it is supported on an edge intersecting a first

surface and a second surface. The camera fixed part 2 is adapted to be rotatably

attached to the camera using shaft 9. While a pivotable connection between the

camera and the camera fixed part is not explicitly recited, "adapted to be rotatably

attached to the camera" is functional language, and the threaded shaft 9 is clearly

capable of mounting the camera in various orientations relative to the long sides of the

camera fixed part. Due to this potential movement, shaft 9 is seen as the first axis.

Arms 3 and 4 are seen as the support frame, as each arm is rotatably attached to shaft

1 (which also pivotably supports camera fixed part 2). Because of this arrangement,

shaft 1 forms the second axis of rotation relative to the support frame, with the first and

second axes being perpendicular and the second axis substantially parallel to the first

surface when the hinge member is supported on the object. As shown in figures 9 and

10, the arms can support the camera on either a planar surface or by contacting

opposite surfaces of an object by changing the disposition of the arms relative to the

second axis. As non-slip rings 12 are the parts of the frame which contact the surface,

the device of Irifune is seen to have two rear support elements and two front support

elements (the non-slip rings on each arm). When in the second disposition (with the

arms contacting opposite surfaces of an object) the non-slip rings associated with large

arm contact one surface, while the non-slip rings associated with the small arm contact

the opposite surface which will prevent the frame from rotating.

In regard to claims 14 and 15, figure 9 shows the front and rear support elements

(non-slip rubber rings 12) contacting the planar horizontal surface at a total of four

locations, with the non-slip surfaces preventing rotation of the support frame.

In regard to claim 16, Irifune uses a small arm (3) and a large arm (4). Irifune

does not specify which is the front arm, and in fact has figures showing both the small

arm in front (fig 11) and the large arm in front (fig 10). This is seen as evidence that

Irifune shows an embodiment with the rear support element further away from the edge

than the front support element. This is further seen as evidence of Irifune showing

multiple camera positions relative to the first axis.

In regard to claim 17, the camera attachment shaft 9, which provides a pivoting

support for the camera is above the central portion of shaft 1, and is thus seen as being

located in a proximal end of the body. Irifune states that the structure is "(a) structure in

which a camera fixed part (2) and arms (3) and (4) can be freely rotated about a central

shaft (1)". This is seen as the body (camera fixed part 2) being able to rotate about the

second axis (shaft 1) relative to the support frame (arms 3 and 4).

Claim 19 is seen as claiming the same structure as claim 1, with the claiming of

the specific use, "for supporting a camera on a laptop camera". This is seen as

intended use, which does not impart any structural elements to the claim. Irifune

discloses that the disclosed camera support is designed for use in a variety of positions,

Application/Control Number: 90/011,316 and
90/011,366                                                                          Page 11
Art Unit: 3993

including fastened to opposite surfaces of generally vertical opposing surfaces (as

shown in figure 10 and described on page 7, "the back of a chair,... a guard rail, a wall,

a fence". As claim 19 is an apparatus claim, and "for supporting a camera on a laptop

computer", is functional language which the structure of Irifune is capable of performing,

claim 19 is seen as anticipated by Irifune.


### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claim 7 is rejected under 35 U.S.C. 103(a) as being unpatentable over Irifune in

view of Ma.

As discussed above, Irifune shows a camera support device which can be placed

in different configurations to be supported where the user desires. Figure 2 shows the

camera in a position in which the camera is supported by opposing generally vertical

planar surfaces. Irifune does not explicitly state that the device can be used to support

a camera on a display screen for a laptop computer. Figure 3 of Ma shows the camera

supported by the screen of a laptop computer, with the circuit box 3 forming the rear leg

on the back of the display screen and the hook plate pivoted to its open position to

Application/Control Number: 90/011,316 and
90/011,366                                                    Page 12
Art Unit: 3993

contact the front of the display screen. It would have been obvious to one of ordinary

skill in the art at the time of invention of the '343 patent to use the camera support of

Irifune to support a camera on a screen of a laptop to enable the camera to take

pictures of the computer's user, or what is seen by the computer's user.

### *Allowable Subject Matter*

Claims 22-48 are allowed.

The following is a statement of reasons for the indication of allowable subject

matter:  Claim 22 requires "a hinge member adapted to be rotatably and permanently

attached to the camera".  Similarly, claim 40 requires "a hinge member adapted to be

permanently rotatably attached to the camera" and claim 41 requires "a hinge member

adapted to be permanently rotatably joined to the camera". This type of connection is

not shown by the cited art.  Even though this is seen as functional language, Irifune

cannot be seen to provide a permanent, rotating connection.  The connection of Irifune

is a screw that if completely tightened to form a connection that can be called

permanent, will not permit rotation.  Claims 23-30,32 and 33 depend from claim 22, so

they are allowable for at least the above reason. Claim 31 requires the hinge member to

consist of a single unitary body.  The hinge of Irifune requires the screw to rotate

relative to the platform 2, so it cannot function if the parts were integrated into a unitary

body.  The same reasoning applies to claims 23-25 and 33.  Claims 34-39 depend from

claim 31, so they are allowable for at least the above reason. Claim 42 requires

"permanently rotatably attaching said hinge member to said camera."  As discussed

Application/Control Number: 90/011,316 and
90/011,366                                                          Page 13
Art Unit: 3993

above, such a connection is not shown in the cited art. Claim 43 requires the hinge

member to be capable of being inserted into a joint within a housing of the camera.

This is not shown by the cited prior art. Claims 44 and 45 are allowable, as none of the

cited references show or fairly teach a hinge member with a lip for rotatable attachment

to the camera. In regard to claims 46 and 47, none of the cited references show or

fairly teach a front support that engages the front surface, and the intersection of the

edge with both the first and second surfaces. In regard to claim 48, the cited references

fail to show or fairly teach the support frame having a front support element that can sit

atop a portion of the length of the edge between the first and second surfaces when

supporting the camera. The support of Irifune contacts only the first and second

surfaces and would not function if one of the legs was attached to the edge between

surfaces.


### Response to Patent Owner's Remarks

The amendments made by the patent owner have overcome the rejections under

35 USC 112 (both first and second paragraphs).

While the camera support of Irifune is capable of being locked in place by

attachment shaft 9, it is clearly possible to loosen the attachment screw, to enable the

pivoting of the camera relative to support (fixed part 2) while the camera is still attached

to the support. This (the axis of screw 9) represents a first axis of rotation relative to the

hinge member. Patent owner (PO) states that the partially tightened screw is not

attached. PO gives a dictionary definition for attached as "permanently fixed, joined,

connected or bound." Dictionary.com's definition is the final three words of this given

definition (not counting "or"). When the screw is slightly loosened, the camera is still

joined or connected to the fixed part of the support. Thus, Irifune is seen to show a

camera attached to a support, as claimed. To support their position, PO submitted a

declaration of John Vronay. This declaration states in part, "a rotatably attached

connection describes a joint in which two members are attached or fixed but the

connection allows rotation of at least one member relative to the other about at least

one axis with control of a rotated position without initiating disassembly of the

members." In the opinion of the examiner, this definition reads limitations into the

claims that are not found in the common definition of the terms, or having a definition in

the specification. If the screw of Irifune was slightly loosened, the camera would be

able to pivot and if the camera were picked up, the support would be picked up as well,

through the action of the screw. Loosening the screw does not require the

deconstruction of any component of the system.

Irifune's fixed part (2) is seen as the hinge member, as the camera can pivot

about one axis (screw 9) at one end (proximal) of the hinge member and a support

frame (legs 3 and 4) pivots about a perpendicular axis at the other (distal) end. This is

seen to meet the claimed limitations of claims 8 and 17. It is further noted that

independent claims 1 and 10 use the functional phrase "a hinge member adapted to be

rotatably attached". A reference that is capable of performing this function is seen to

meet the limitation. The hinge member (2) of Irifune is clearly capable of being attached

(connected or joined to the camera), while enabling rotation of the camera relative to the

Application/Control Number: 90/011,316 and
90/011,366                                                    Page 15
Art Unit: 3993

hinge member. The examiner agrees that if the claims are amended to clearly claim

that the hinge is permanently, yet rotatably fastened to the camera, Irifune could be

overcome. The newly added claims clearly claim that the connection is permanent and

able to rotate (and have thus been indicated as allowable). The original patent claims

which remain rejected use only functional language to establish a rotating connection

between parts, and Irifune is capable of performing this function.

PO states that figure 2 of Irifune shows an unthreaded hole through fixed part 2.

It is unclear how an unthreaded hole would overcome the rejection. If the hole is

unthreaded, it is still possible (and easier than it would be if the hole were threaded) to

rotate fixed part 2, while the screw is still firmly attached to the camera.

PO states that Irifune does not show the camera rotating about a first axis of

rotation relative to the hinge member as claimed in claim 10. The camera can pivot

about the screw, which provides an axis of rotation relative to the hinge member (2).


**All** correspondence relating to this *ex parte* reexamination proceeding should be
directed:

By EFS:   Registered users may submit via the electronic filing system EFS-Web, at
          https://efs.uspto.gov/efile/myportal/efs-registered.


By Mail to:  Mail Stop *Ex Parte* Reexam
             Central Reexamination Unit
             Commissioner for Patents
             United States Patent & Trademark Office
             P.O. Box 1450
             Alexandria, VA 22313-1450

Application/Control Number: 90/011,316 and
90/011,366                                                          Page 16
Art Unit: 3993

By FAX to:  (571) 273-9900
            Central Reexamination Unit

By hand:    Customer Service Window
            Randolph Building
            401 Dulany Street
            Alexandria, VA 22314


For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that
correspondence (except for a request for reexamination and a corrected or replacement
request for reexamination) will be considered timely filed if (a) it is transmitted via the
Office's electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a
certificate of transmission for each piece of correspondence stating the date of
transmission, which is prior to the expiration of the set period of time in the Office action.


Any inquiry concerning the status of this proceeding should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705. Any inquiry concerning this
communication should be directed to William Doerrler at telephone number (571) 272-
4807.


Signed:

___/William C. Doerrler/_____

William C. Doerrler
CRU Examiner
GAU 3993
(571) 272-4807

Conferee:  __/JMC/__

Conferee:  _____

Attorney Docket No. GMGP101US

**CERTIFICATE OF TRANSMISSION**

I hereby certify that this correspondence (along with any paper referred to as being attached or enclosed) is being submitted *via* the USPTO EFS Filing System on the date shown below to Mail Stop Ex Parte Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Date: September 20, 2012       /Himanshu S. Amin/

                                       Himanshu S. Amin

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Application No(s). | : | 90/011,366 and 90/011,316 | Confirmation No. | 5680 |
| Patent No. | : | 5,855,343 | Patentee: | David E. Krekelberg |
| Assignee | : | Global Media Group LLC | | |
| Filed | : | March 7, 1997 | | |
| Art Unit | : | 3993 | | |
| Examiner | : | William C. Doerrler | | |
| Docket No. | : | GMGP101US | | |

Mail Stop Ex Parte Reexam
Central Reexamination Unit
Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## REPLY TO FINAL OFFICE ACTION DATED AUGUST 30, 2012

Dear Sir,

     This is in response to the Final Office Action dated August 30, 2012. Favorable reconsideration of the subject patent under reexamination is respectfully requested in view of the following amendments and comments. The Commissioner is authorized to charge any fees due in relation to this filing to Deposit Account No. 50-1063 [GMGP101US].

     **A Marked-Up Version of All Pending Claims** begins on page 2 of this paper.

     **Remarks/Arguments** begin on page 15 of this paper.

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

_____

**Listing of Claims:**

1. (Cancelled - Subject to Reexamination)

2. (Cancelled - Subject to Reexamination)

3. (Not Subject to Reexamination)    Apparatus according to claim 2 wherein the support frame includes a cover adapted to protect the camera lens when the camera is rotated about the second axis until the camera is between the first portion and the second portion.

4. (Not Subject to Reexamination)    Apparatus according to claim 3 wherein the first portion of the support frame further includes said cover, said cover being mounted at the distal end of the first portion and adapted the lens of the camera.

5. (Cancelled - Subject to Reexamination)

6. (Cancelled - Subject to Reexamination)

7. (Cancelled - Subject to Reexamination)

8. (Cancelled - Subject to Reexamination)

9. (Not Subject to Reexamination)    Apparatus according to claim 8 wherein the pivot element has a bore along the first axis of rotation to receive an electrical wiring harness and pass said wiring harness to the camera.

10. (Cancelled - Subject to Reexamination)

Copied from 90011316 on 10/05/2012

Application No(s).  90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

11. (Not Subject to Reexamination)   Apparatus according to claim 10 wherein the support frame adapted to protect the camera when the camera is rotated about the second axis towards the rear support element of the support frame until the camera is between the rear support element and the first and second front support elements, and is releasably held between the rear support element and the first and second front support elements.

12. (Not Subject to Reexamination)   Apparatus according to claim 11 wherein the first and second front support elements are spaced a distance apart, and wherein said distance is less than a diameter of the housing of the camera so that as the camera is being rotated about the second axis in the direction towards the rear support element, said housing passes between the first and second front support elements and the first and second front support elements resiliently flex outwardly to accommodate passage of said housing, said housing being releasably held once passing between the first and second front support elements by the rear support element engaging said housing at the lens.

13. (Not Subject to Reexamination)   Apparatus according to claim 11 wherein the first portion of the support frame further has a cover, said cover being mounted at a distal end of the rear support element and adapted to receive the lens of the camera when the camera is releasably held between the rear support element and the first and second front support elements.

14. (Cancelled - Subject to Reexamination)

15. (Cancelled - Subject to Reexamination)

16. (Cancelled - Subject to Reexamination)

17. (Cancelled - Subject to Reexamination)

Copied from 90011316 on 10/05/2012

Application No(s).  90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

18. (Not Subject to Reexamination)   Apparatus according to claim 17 wherein the pivot element has a bore along the first axis of rotation to receive said electrical wiring harness and pass said wiring harness to the camera.

19. (Cancelled - Subject to Reexamination)

20. (Not Subject to Reexamination)   Apparatus for supporting a camera having a lens on a substantially level surface, comprising:

   a.     a hinge member adapted to be rotatably attached to the camera, the camera rotating about a first axis of rotation relative to said hinge member; and

   b.     a support frame rotatably attached to said hinge member and configured to support said hinge member on a generally horizontal, substantially planar surface, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the generally horizontal, substantially planar surface when said hinge member is supported on the generally horizontal, substantially planar surface, said support frame having a first portion and a second portion wherein said support frame protects the camera when said hinge member is not supported on the generally horizontal, substantially planar surface, and when the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

21. (Not Subject to Reexamination)   Apparatus for supporting a camera, having a lens, on an object having a first surface and a second surface, wherein a thickness measured between the first surface and the second surface defines an edge therebetween, comprising:

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

a.      a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so adapted, rotating about a first axis of rotation relative to said hinge member; and

b.      a support frame rotatably attached to said hinge member and configured to support said hinge member on the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported by said support frame on the object, said support frame supporting said hinge member on the object when said first surface is inclined from a substantially horizontal position, the camera being maintained adjacent the edge when an uppermost extremity of the object is the edge, rotation of said support frame being precluded about an axis substantially parallel to said second axis, said second axis being substantially parallel to said edge, said support frame having a first portion and a second portion wherein said support frame releasably holds and protects the camera when said hinge member is not supported by said support frame on the object and the camera is rotated around said second axis in a direction from said second portion towards said first portion of said support frame until the camera is between said first portion and said second portion and is releasably held between said first portion and said second portion.

22. (Pending - Subject to Reexamination)   Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

a.      a hinge member adapted to be rotatably and permanently attached to the camera, said camera, when the hinge member is so permanently attached, rotating, about a first axis of rotation, relative to said hinge member; and

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

_____    b.    a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

23.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member consists of a single, unitary body.

24.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member consists of a single piece of material.

25.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member consists of a  unitary piece of material.

26.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member is adapted to be inserted inside a housing of said camera for rotatably attaching said hinge member to said camera.

27.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member comprises a lip adapted for rotatably attaching said hinge member to said camera.

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

28.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member comprises a neck having a lip, with said lip adapted for rotatably attaching said hinge member to said camera, wherein said lip has a wider circumference than said neck.

29.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member supports said camera from the bottom of said camera.

30.    (Pending - Subject to Reexamination)  The apparatus of claim 22, wherein said hinge member is rotatably attached to said camera at the bottom of said camera, and wherein said hinge member is rotatably attached to said support frame at the top of said support frame.

31.    (Pending - Subject to Reexamination)   Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

        a.      a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member, wherein said hinge member consists of a single, unitary body; and

        b.      a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first

Copied from 90011316 on 10/05/2012

Application No(s).  90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

32.    (Pending - Subject to Reexamination)  The apparatus of claim 30, wherein said hinge member is rotatably and permanently attached to the camera.

33.    (Pending - Subject to Reexamination)  The apparatus of claim 30, wherein said hinge member consists of a  single piece of material.

34.    (Pending - Subject to Reexamination)  The apparatus of claim 31, wherein said hinge member consists of a  unitary piece of material.

35.    (Pending - Subject to Reexamination)  The apparatus of claim 31, wherein said hinge member is adapted to be inserted inside a housing of said camera for rotatably attaching said hinge member to said camera.

36.    (Pending - Subject to Reexamination)  The apparatus of claim 31, wherein said hinge member comprises a lip adapted for rotatably attaching said hinge member to said camera.

37.    (Pending - Subject to Reexamination)  The apparatus of claim 31, wherein said hinge member comprises a neck having a lip, with said lip adapted for rotatably attaching said hinge member to said camera, wherein said lip has a wider circumference than said neck.

38.    (Pending - Subject to Reexamination)  The apparatus of claim 31, wherein said hinge member supports said camera from the bottom of said camera.

Copied from 90011316 on 10/05/2012

Application No(s).  90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

39.    (Pending - Subject to Reexamination)  The apparatus of claim 31, wherein said hinge member is rotatably attached to said camera at the bottom of said camera, and wherein said hinge member is rotatably attached to said support frame at the top of said support frame.

40.    (Pending - Subject to Reexamination)  Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

   a.    a hinge member adapted to be permanently rotatably attached to the camera, said camera, when the hinge member is so permanently rotatably attached, rotating, about a first axis of rotation, relative to said hinge member; and

   b.    a support frame permanently rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

41.    (Pending - Subject to Reexamination)  Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

Copied from 90011316 on 10/05/2012

Application No(s).  90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

_____

        a.     a hinge member adapted to be permanently rotatably joined to the camera, said

camera, when the hinge member is so permanently rotatably joined, rotating, about a first axis of

rotation, relative to said hinge member; and


        b.     a support frame permanently rotatably joined to said hinge member and

configured to support said hinge member on the surface and the object, said hinge member

rotating about a second axis of rotation relative to said support frame, said first axis of rotation

being generally perpendicular to said second axis of rotation, said second axis of rotation being

substantially parallel to the first surface when said hinge member is supported on the object, said

support frame having a first disposition positioned on said generally horizontal, substantially

planar surface, and said support frame having a second disposition attached to the object when

said first surface and said second surface are inclined from a generally horizontal orientation, the

camera being maintained adjacent said edge in said second disposition of said support frame.


42.     (Pending - Subject to Reexamination)  The apparatus of claim 1, wherein said hinge

member is adapted to be inserted inside a housing of said camera for permanently rotatably

attaching said hinge member to said camera.


43.     (Pending - Subject to Reexamination)  The apparatus of claim 1, wherein said hinge

member is adapted to be inserted inside a joint within a housing of said camera for rotatably

attaching said hinge member to said camera.


44.     (Pending - Subject to Reexamination)  Apparatus for supporting a camera, having a lens,

on any generally horizontal, substantially planar surface and on an object having a first surface

and a second surface and an edge intersecting the first surface and the second surface,

comprising:


        a.     a hinge member adapted to be rotatably attached to the camera, said camera, when

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member, wherein said hinge member comprises a lip adapted for rotatably attaching said hinge member to said camera.; and

      b.      a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

45.      (Pending - Subject to Reexamination)  Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

      a.      a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member, wherein said hinge member comprises a neck having a lip, with said lip adapted for rotatably attaching said hinge member to said camera, wherein said lip has a wider circumference than said neck; and

      b.      a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

46.    (Pending - Subject to Reexamination)  Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

        a.      a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

        b.      a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, wherein the support frame has a front support element and rear support element, and wherein the front support element is configured to engage the object at the intersection of the first surface and the edge, and at the intersection of the second surface and the edge, when said first surface and said second surface are inclined from a generally horizontal orientation, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

47.    (Pending - Subject to Reexamination)  Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:

         a.    a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and

         b.    a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, wherein the support frame has a front support element and rear support element, and wherein the front support element is configured to engage the object at the intersection of the first surface and the edge, at the intersection of the second surface and the edge, and at the second surface, when said first surface and said second surface are inclined from a generally horizontal orientation, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

48.    (Pending - Subject to Reexamination)  The hinge member of claim 1, wherein the support frame has a front support element and rear support element, wherein the front support element is

Copied from 90011316 on 10/05/2012

Application No(s).  90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

configured to sit atop a portion of a  length of the edge between the first surface and the second surface when said first surface and said second surface are inclined from a generally horizontal orientation.

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

---

## REMARKS/ARGUMENTS

U.S. Patent No. 5,855,343 is subject to an order granting reexamination as a result of two reexamination requests under respective Control Nos. 90/011,366 and 90/011,316. These Control Nos. have been merged into the subject reexamination proceeding.

Claims 1, 2, 5-8, 10, 14-17, 19, and 22-48 are subject to reexamination. Claims 3, 4, 9, 11-13, 18, 20 and 21 are not subject to reexamination. A listing of all claims and status is provided at pages 2-14 of this paper. Please cancel claims 1, 2, 5-8, 10, 14-17, and 19. The Final Office Action notes that claims 22-48 are patentable.

A copy of Certificate of Service to Requestors is submitted concurrently herewith. Pursuant to 37 CFR 1.565(a), the Patent Owner notifies the Patent Office that the subject patent (U.S. 5,855,343) is part of the following litigation activity:

> AdjustaCam LLC v. Amazon.com, Inc. et al., 6:10-cv-00329-LED, U.S. District Court for the Eastern District of Texas

> AdjustaCam LLC v. Atlanta Network Technologies, Inc. d/b/a Antonline et al., 6:10-cv-00644-LED, U.S. District Court for the Eastern District of Texas

> GlobalMedia Group LLC v. Logitech Inc., 5:11-cv-00778-EJD, U.S. District Court for the Northern District of California

> Logitech Inc. v. GlobalMedia Group LLC, No. 12-16532, U.S. Court of Appeals for the Ninth Circuit

> GlobalMedia Group LLC v. Logitech Inc., JAMS REF# 1100071120 (Arbitration proceedings)

Copied from 90011316 on 10/05/2012

Application No(s). 90/011,366 and 90/011,316
Reexam of U.S. Patent No. 5,855,343
Attorney Docket No. GMGP101US
Reply to Final Office Action dated August 30, 2012

---

## CONCLUSION

In view of the foregoing comments and amendments, Patent Owner's undersigned representative respectfully requests the Examiner to issue a Notice of Intent to Issue *Ex Parte Reexamination Certificate*" (NIRC). In the event additional amendments are necessary to cure informalities associated with the herein amendments, the Examiner is requested and authorized to make an Examiner's amendment to address such informalities.

If it is determined that fees are due in connection with the filing of this paper, the Commissioner is hereby authorized to charge payment of any fee(s) or any underpayment of fee(s) or credit any overpayment(s) to Deposit Account No. 50-1063 [GMGP101US].  If necessary, Patent Owner requests, under the provisions of 37 CFR 1.550(c) to extend the period for filing a reply in the above-identified application and to charge the fees for a small entity under 37 CFR 1.17(a).

Respectfully submitted,

Date:    September 20, 2012          Himanshu S. Amin, Reg. No. 40,894

Himanshu S. Amin, LLC
127 Public Square
57th Floor
Cleveland, OH 44114

Email:        hamin@thepatentattorneys.com
Telephone:    216-535-7999
Mobile:       216-409-5303
Facsimile:    216-696-8731

Copied from 90011316 on 10/05/2012



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,366 | 12/06/2010 | 5855343 | 20145.0001.EP343 | 7040 |

7590      08/30/2012

HIMANSHU AMIN, LLC
127 Public Square
57th Floor
Cleveland, OH  44114

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 08/30/2012

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,316 | 12/30/2010 | 5855343 | 76958.00001 | 5680 |

7590    08/30/2012

HIMANSHU AMIN, LLC
127 Public Square
57th Floor
Cleveland, OH  44114

EXAMINER

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 08/30/2012

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

PAUL HASTINGS JANOFSKY & WALKER LLP
875 15th Street, NW
Washington, DC 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/011,316 and 90/011,366*.

PATENT NO. *5855343*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Tracy W. Druce
Novak Druce & Quigg, LLP
1000 Louisiana Street, 53rd Floor
Houston, TX 77002

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/011,366 and 90/011,316.*

PATENT NO. *5855343.*

ART UNIT *3993.*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/011,316 and 90/011,366 | Patent Under Reexamination<br>5855343 |
|---|---|---|
| | Examiner<br>WILLIAM DOERRLER | Art Unit<br>3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on <u>20 July 2012</u> .    b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination
certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days
will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08. · 4.    ☐ _____

Part II    SUMMARY OF ACTION

1a. ☒ Claims <u>1,2,5-8,10,14-17,19 and 22-48</u> are subject to reexamination.

1b. ☒ Claims <u>3,4,9,11-13,18,20 and 21</u> are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☒ Claims <u>22-48</u> are patentable and/or confirmed.

4. ☒ Claims <u>1,2,5-8,10,14-17 and 19</u> are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. _____ .

   4☐ been filed in reexamination Control No. _____.

   5☐ been received by the International Bureau in PCT application No. _____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal
    matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D.
    11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)                    Office Action in Ex Parte Reexamination                    Part of Paper No. 20120828

Application/Control Number: 90/011,316 and
90/011,366                                                                                      Page 2
Art Unit: 3993

### DETAILED ACTION

**THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire 2 months
from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination
proceedings.** The provisions of 37 CFR 1.136 apply only to "an applicant" and not to
parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR
1.550(a), it is required that reexamination proceedings "will be conducted with special
dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37
CFR 1.550(c).** A request for extension of time must be filed on or before the day on
which a response to this action is due, and it must be accompanied by the petition fee
set forth in 37 CFR 1.17(g). The mere filing of a request will not effect any extension of
time. An extension of time will be granted only for sufficient cause, and for a reasonable
time specified.

The filing of a timely first response to this final rejection will be construed as
including a request to extend the shortened statutory period for an additional month,
which will be granted even if previous extensions have been granted. In no event
however, will the statutory period for response expire later than SIX MONTHS from the
mailing date of the final action. See MPEP § 2265.

Application/Control Number: 90/011,316 and
90/011,366                                                                    Page 3
Art Unit: 3993

### *Merged Proceeding*

Reexamination Control Nos. 90/011,316 and 90/011,366 have been merged into a single proceeding. See the June 14, 2011 merger decision. Therefore, a single combined examiner's action is set forth below for the merged proceeding.

Any paper filed by the patent owner must consist of a single response, filed in duplicate, each bearing an original signature for entry into each file. All papers filed by the patent owner must be served on each of the third party requesters and requesters will be sent copies of all papers mailed by the Office. Where a paper is filed that requires payment of a fee (e.g., petition fee, excess claims fee, appeal brief fee, brief fee, etc.) only a single fee payment is required.

### *Reexamination Procedures*

Submissions after this Office action, which is a final action, will be governed by the requirements of 37 C.F.R. 1.116 and 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

Extensions of time under 37 C.F.R. 1.136(a) will not be permitted in these proceedings because the provisions of 37 C.F.R. 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. 1.550(c).

Application/Control Number: 90/011,316 and
90/011,366                                                                        Page 4
Art Unit: 3993

The patent owner is reminded of the continuing responsibility under 37 C.F.R.
1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent
proceeding, involving the patent, throughout the course of this reexamination
proceeding. The third party requester is also reminded of the ability of similarly apprise
the Office of any such activity or proceeding throughout the course of this reexamination
proceeding. See MPEP §§ 2207, 2282 and 2286.

Patent owner is notified that any proposed amendment to the specification and/or
claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must
be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees
required by 37 C.F.R. 1.20(c). See MPEP § 2250(IV) for examples to assist in the
preparation of proper proposed amendments in reexamination proceedings.

After the filing of a request for reexamination by a third party requester, any
document filed by either the patent owner or the third party requested must be served
on the other party (or parties where two or more third party requested proceedings are
merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248.
See 37 C.F.R. 1.550(f).

### Summary of the Proceeding to Date

In reexamination 90/011,366, a Third Party Requester requested reexamination
of claims 1,2,5-8,10,14-17 and 19 of U.S. Patent No. 5,855,343 (hereinafter "the '343
patent") based upon the following proposed rejections:

Application/Control Number: 90/011,316 and
90/011,366                                                                Page 5
Art Unit: 3993

A. Claims 1, 2, 5, 6, 8, 10 and 14-17 are anticipated by Irifune (JP-H2-19997) under
35USC 102(b).

B. Claims 1, 7, 8 and 19 are anticipated by Ma (US Patent No. 5,880,783) under 35
USC 102(e).

C. Claims 7 and 19 are rendered obvious by Irifune in view of Ma under 35 USC 103(a).


An order granting reexamination based on above substantial new questions of

patentability affecting claims 1,2,5-8,10,14-17 and 19 of the '343 patent was mailed on

December 21, 2010 (reexamination 90/011,366).

    In reexamination 90/011,316 another Third Party Requester requested

reexamination of claims 1,10 and 19 of U.S. Patent No. 5,855,343 (hereinafter "the '343

patent) based upon the following proposed rejections:

A. Claims 1, 10 and 19 are anticipated by Ma (US Patent No. 5,880,783) under 35 USC
102(e).

B. Claims 1, 10 and 19 are obvious over Yamauchi (US Patent No. Des. 383,475) under
35 USC 103(a).

C. Claims 1, 10 and 19 are obvious over Yamauchi in view of Ma under 35 USC 103(a).

D. Claims 1, 10 and 19 are obvious over Yamauchi in view of Wakabayashi (US Patent
No. 5,808,672) under 35 USC 103(a).

E. Claims 1, 10 and 19 are obvious over Yamauchi in view of Ohmura (US Patent No.
4,493,542) under 35 USC 103(a).

F. Claims 1 and 10 are anticipated by Dovey (US Patent No. 4,526,308) under 35 USC
103(a).


    An order granting reexamination based on above substantial new questions of

patentability affecting claims 1,10 and 19 of the '343 patent was mailed on March 23,

2011. The March 23, 2011 order did not find a SNQ for proposed rejection A

regarding claims 1 and 19 (as this would be a duplicate of the '366 reexam) or

proposed rejection B (as Yamauchi is seen as the technical equivalent of McAll,

which was relied upon during the original prosecution). See both the December 21,

2010 and the March 23, 2011 orders.

Reexamination was not requested or ordered for claims 3,4,9,11,12,13,18,20 and

21 of the '343 patent. Accordingly, these claims will not be examined in this merged

proceeding.

The patent owner did not file a statement under 37 CFR 1.530 for either

reexamination.

An Office Action mailed August 12, 2011 rejected claims 1,2,5,6,8,10,14-17 and 19

as anticipated by Irifune, claims 1,7 and 19 as anticipated by Ma and claims 1,2,5-

8,10,14-17 and 19 as obvious over Yamauchi in view of Ma. See the August 12, 2011

Office Action. Patent owner filed a response to the August Office action October 12,

2011. This response also references an October 5, 2011 in-person interview. This

response did not cite passages of the original disclosure for the newly added claims. A

new response was submitted February 10, 2012, which included statements of support

in the original disclosure for the new claims. See the October 5, 2011 interview

summary for a discussion of what was discussed during the interview. The February

10, 2012 amendment added new claims 22-47 (with two claims numbered 24). After an

April 17, 2012 telephone interview, Patent Owner filed a response on May 8, 2012 to

the March 8, 2012 Office action. The changes to the claims on this amendment were

Application/Control Number: 90/011,316 and
90/011,366                                                                          Page 7
Art Unit: 3993

noted using the earlier amendment as a basis, instead of the patent, so a Notice of

Informal Amendment was mailed June 20, 2012. A compliant amendment was received

July 20, 2012.

### Grounds of Rejection
The following grounds of rejection are set forth:

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in
the United States.

Claims 1,2,5,6,8,10,14-17 and 19 are rejected under 35 U.S.C. 102(b) as being

anticipated by Irifune.

Irifune discloses a camera support apparatus which is shown supporting a

camera on a horizontal planar surface in figure 9-2 and on an object having first and

second surfaces having an edge intersecting the first and second surfaces in figure 10-

2. Irifune shows a hinge (around shaft 1) which is rotatably attached to the camera

using threaded camera attachment shaft 9. Although Irifune does not explicitly state

that the camera can rotate about the threaded post, such rotation is seen as inherent to

such a connection, as the post is designed to rotate to fasten the camera and the

camera can be securely fastened in any position using shaft 9 as an axis while the

camera rests on the camera fixed part 2. The large arm 3 and small arm 4 are seen as

a support frame which is rotatably attached to the hinge member and which, as shown

in figures 9-2 and 10-2, can support the camera on either a horizontal surface or

supported adjacent the edge between two inclined surfaces. The central shaft 1,

around which the large arm, small arm and camera fixed part rotate is perpendicular to

the camera attachment shaft 9, around which the camera can be rotated for proper

positioning.

In regard to claim 2, arms 3 and 4 are seen as the first and second portion of the

support frame. Figure 9-2 shows the arms in a first disposition with the distal

extremities of the arms engaging a generally horizontal planar surface. Figure 10

shows the arms engaging opposing outer surfaces to maintain the camera at an edge

between the two surfaces.

In regard to claim 5, Irifune shows nonslip rubber rings 12 attached to arms 3 and

4, so that the arms engage a generally horizontal surface at four locations and

unwanted rotation of the frame is avoided.

In regard to claim 6, figures 10-1 and 10-2 show the large leg contacting the

surface further away from the edge than the short leg contacts the opposite surface.

In regard to claim 8, the camera attachment shaft 9, which provides a pivoting

support for the camera is above the central portion of shaft 1, and is thus seen as being

located in a proximal end of the body. Irifune states that the structure is "(a) structure in

which a camera fixed part (2) and arms (3) and (4) can be freely rotated about a central

shaft (1)". This is seen as the body (camera fixed part 2) being able to rotate about the
second axis (shaft 1) relative to the support frame (arms 3 and 4).

In regard to claim 10, the camera supported by the Irifune device in figure 9-2 is
shown to have both a housing and a lens and the camera is shown supported on a
generally horizontal substantially planar surface. Figure 10 also shows the camera
housing and lens, but in this instance it is supported on an edge intersecting a first
surface and a second surface. The camera fixed part 2 is adapted to be rotatably
attached to the camera using shaft 9. While a pivotable connection between the
camera and the camera fixed part is not explicitly recited, "adapted to be rotatably
attached to the camera" is functional language, and the threaded shaft 9 is clearly
capable of mounting the camera in various orientations relative to the long sides of the
camera fixed part. Due to this potential movement, shaft 9 is seen as the first axis.
Arms 3 and 4 are seen as the support frame, as each arm is rotatably attached to shaft
1 (which also pivotably supports camera fixed part 2). Because of this arrangement,
shaft 1 forms the second axis of rotation relative to the support frame, with the first and
second axes being perpendicular and the second axis substantially parallel to the first
surface when the hinge member is supported on the object. As shown in figures 9 and
10, the arms can support the camera on either a planar surface or by contacting
opposite surfaces of an object by changing the disposition of the arms relative to the
second axis. As non-slip rings 12 are the parts of the frame which contact the surface,
the device of Irifune is seen to have two rear support elements and two front support
elements (the non-slip rings on each arm). When in the second disposition (with the

Application/Control Number: 90/011,316 and
90/011,366                                                    Page 10
Art Unit: 3993

arms contacting opposite surfaces of an object) the non-slip rings associated with large

arm contact one surface, while the non-slip rings associated with the small arm contact

the opposite surface which will prevent the frame from rotating.

In regard to claims 14 and 15, figure 9 shows the front and rear support elements

(non-slip rubber rings 12) contacting the planar horizontal surface at a total of four

locations, with the non-slip surfaces preventing rotation of the support frame.

In regard to claim 16, Irifune uses a small arm (3) and a large arm (4). Irifune

does not specify which is the front arm, and in fact has figures showing both the small

arm in front (fig 11) and the large arm in front (fig 10). This is seen as evidence that

Irifune shows an embodiment with the rear support element further away from the edge

than the front support element. This is further seen as evidence of Irifune showing

multiple camera positions relative to the first axis.

In regard to claim 17, the camera attachment shaft 9, which provides a pivoting

support for the camera is above the central portion of shaft 1, and is thus seen as being

located in a proximal end of the body. Irifune states that the structure is "(a) structure in

which a camera fixed part (2) and arms (3) and (4) can be freely rotated about a central

shaft (1)". This is seen as the body (camera fixed part 2) being able to rotate about the

second axis (shaft 1) relative to the support frame (arms 3 and 4).

Claim 19 is seen as claiming the same structure as claim 1, with the claiming of

the specific use, "for supporting a camera on a laptop camera". This is seen as

intended use, which does not impart any structural elements to the claim. Irifune

discloses that the disclosed camera support is designed for use in a variety of positions,

Application/Control Number: 90/011,316 and
90/011,366                                                                        Page 11
Art Unit: 3993

including fastened to opposite surfaces of generally vertical opposing surfaces (as

shown in figure 10 and described on page 7, "the back of a chair,... a guard rail, a wall,

a fence". As claim 19 is an apparatus claim, and "for supporting a camera on a laptop

computer", is functional language which the structure of Irifune is capable of performing,

claim 19 is seen as anticipated by Irifune.


### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claim 7 is rejected under 35 U.S.C. 103(a) as being unpatentable over Irifune in

view of Ma.

As discussed above, Irifune shows a camera support device which can be placed

in different configurations to be supported where the user desires. Figure 2 shows the

camera in a position in which the camera is supported by opposing generally vertical

planar surfaces. Irifune does not explicitly state that the device can be used to support

a camera on a display screen for a laptop computer. Figure 3 of Ma shows the camera

supported by the screen of a laptop computer, with the circuit box 3 forming the rear leg

on the back of the display screen and the hook plate pivoted to its open position to

Application/Control Number: 90/011,316 and
90/011,366                                                          Page 12
Art Unit: 3993

contact the front of the display screen. It would have been obvious to one of ordinary

skill in the art at the time of invention of the '343 patent to use the camera support of

Irifune to support a camera on a screen of a laptop to enable the camera to take

pictures of the computer's user, or what is seen by the computer's user.


### *Allowable Subject Matter*

Claims 22-48 are allowed.

The following is a statement of reasons for the indication of allowable subject

matter: Claim 22 requires "a hinge member adapted to be rotatably and permanently

attached to the camera". Similarly, claim 40 requires "a hinge member adapted to be

permanently rotatably attached to the camera" and claim 41 requires "a hinge member

adapted to be permanently rotatably joined to the camera". This type of connection is

not shown by the cited art. Even though this is seen as functional language, Irifune

cannot be seen to provide a permanent, rotating connection. The connection of Irifune

is a screw that if completely tightened to form a connection that can be called

permanent, will not permit rotation. Claims 23-30,32 and 33 depend from claim 22, so

they are allowable for at least the above reason. Claim 31 requires the hinge member to

consist of a single unitary body. The hinge of Irifune requires the screw to rotate

relative to the platform 2, so it cannot function if the parts were integrated into a unitary

body. The same reasoning applies to claims 23-25 and 33. Claims 34-39 depend from

claim 31, so they are allowable for at least the above reason. Claim 42 requires

"permanently rotatably attaching said hinge member to said camera." As discussed

above, such a connection is not shown in the cited art. Claim 43 requires the hinge

member to be capable of being inserted into a joint within a housing of the camera.

This is not shown by the cited prior art. Claims 44 and 45 are allowable, as none of the

cited references show or fairly teach a hinge member with a lip for rotatable attachment

to the camera. In regard to claims 46 and 47, none of the cited references show or

fairly teach a front support that engages the front surface, and the intersection of the

edge with both the first and second surfaces. In regard to claim 48, the cited references

fail to show or fairly teach the support frame having a front support element that can sit

atop a portion of the length of the edge between the first and second surfaces when

supporting the camera. The support of Irifune contacts only the first and second

surfaces and would not function if one of the legs was attached to the edge between

surfaces.


### *Response to Patent Owner's Remarks*

The amendments made by the patent owner have overcome the rejections under

35 USC 112 (both first and second paragraphs).

While the camera support of Irifune is capable of being locked in place by

attachment shaft 9, it is clearly possible to loosen the attachment screw, to enable the

pivoting of the camera relative to support (fixed part 2) while the camera is still attached

to the support. This (the axis of screw 9) represents a first axis of rotation relative to the

hinge member. Patent owner (PO) states that the partially tightened screw is not

attached. PO gives a dictionary definition for attached as "permanently fixed, joined,

connected or bound." Dictionary.com's definition is the final three words of this given

definition (not counting "or"). When the screw is slightly loosened, the camera is still

joined or connected to the fixed part of the support. Thus, Irifune is seen to show a

camera attached to a support, as claimed. To support their position, PO submitted a

declaration of John Vronay. This declaration states in part, "a rotatably attached

connection describes a joint in which two members are attached or fixed but the

connection allows rotation of at least one member relative to the other about at least

one axis with control of a rotated position without initiating disassembly of the

members." In the opinion of the examiner, this definition reads limitations into the

claims that are not found in the common definition of the terms, or having a definition in

the specification. If the screw of Irifune was slightly loosened, the camera would be

able to pivot and if the camera were picked up, the support would be picked up as well,

through the action of the screw. Loosening the screw does not require the

deconstruction of any component of the system.

Irifune's fixed part (2) is seen as the hinge member, as the camera can pivot

about one axis (screw 9) at one end (proximal) of the hinge member and a support

frame (legs 3 and 4) pivots about a perpendicular axis at the other (distal) end. This is

seen to meet the claimed limitations of claims 8 and 17. It is further noted that

independent claims 1 and 10 use the functional phrase "a hinge member adapted to be

rotatably attached". A reference that is capable of performing this function is seen to

meet the limitation. The hinge member (2) of Irifune is clearly capable of being attached

(connected or joined to the camera), while enabling rotation of the camera relative to the

Application/Control Number: 90/011,316 and
90/011,366                                                    Page 15
Art Unit: 3993

hinge member. The examiner agrees that if the claims are amended to clearly claim

that the hinge is permanently, yet rotatably fastened to the camera, Irifune could be

overcome. The newly added claims clearly claim that the connection is permanent and

able to rotate (and have thus been indicated as allowable). The original patent claims

which remain rejected use only functional language to establish a rotating connection

between parts, and Irifune is capable of performing this function.

PO states that figure 2 of Irifune shows an unthreaded hole through fixed part 2.

It is unclear how an unthreaded hole would overcome the rejection. If the hole is

unthreaded, it is still possible (and easier than it would be if the hole were threaded) to

rotate fixed part 2, while the screw is still firmly attached to the camera.

PO states that Irifune does not show the camera rotating about a first axis of

rotation relative to the hinge member as claimed in claim 10. The camera can pivot

about the screw, which provides an axis of rotation relative to the hinge member (2).


**All** correspondence relating to this *ex parte* reexamination proceeding should be
directed:

By EFS:    Registered users may submit via the electronic filing system EFS-Web, at
           https://efs.uspto.gov/efile/myportal/efs-registered.


By Mail to:  Mail Stop *Ex Parte* Reexam
             Central Reexamination Unit
             Commissioner for Patents
             United States Patent & Trademark Office
             P.O. Box 1450
             Alexandria, VA 22313-1450

Application/Control Number: 90/011,316 and
90/011,366                                                          Page 16
Art Unit: 3993

By FAX to:  (571) 273-9900
                    Central Reexamination Unit

By hand:     Customer Service Window
                    Randolph Building
                    401 Dulany Street
                    Alexandria, VA 22314


For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that
correspondence (except for a request for reexamination and a corrected or replacement
request for reexamination) will be considered timely filed if (a) it is transmitted via the
Office's electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a
certificate of transmission for each piece of correspondence stating the date of
transmission, which is prior to the expiration of the set period of time in the Office action.


Any inquiry concerning the status of this proceeding should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705. Any inquiry concerning this
communication should be directed to William Doerrler at telephone number (571) 272-
4807.


Signed:

___/William C. Doerrler/_____

William C. Doerrler
CRU Examiner
GAU 3993
(571) 272-4807

Conferee:  __/JMC/_

Conferee:  ___

Case: 13-1665    Document: 97-1    Page: 390    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1                 UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF TEXAS

3                        TYLER DIVISION

4

5    ADJUSTACAM, LLC,

6                    Plaintiff(s),

7           vs.                  NO: 6:10-CV-329-LED

8    AMAZON.COM, INC., et al.,

9                    Defendant(s).

10   _____/

11

12

13       DEPOSITION OF JOHN CONRAD MUSKIVITCH, Ph.D.

14

15   DATE:        Friday, August 24, 2012

16   TIME:        9:11 A.M.

17   LOCATION:    TALTY COURT REPORTERS, INC.
                  2131 The Alameda
18                Suite D
                  San Jose, CA 95126
19
     REPORTER:    Patricia Hope Sales, CRR
20                CSR License Number C-4423

21

22

23

24

25

Case: 13-1665    Document: 97-1    Page: 391    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    some reason to discontinue the litigation came up.

2        Q.   Okay.

3             So there is eight products listed on Exhibit A.

4    You are not exactly sure why those eight products were

5    withdrawn from this litigation?

6        A.   I -- I don't remember ever hearing specifically

7    the reason for that.

8        Q.   Okay.

9        A.   I was just told that they had -- that it would

10   be best to remove them from the original report because

11   they were no longer part of the case.

12       Q.   Okay.

13            But you didn't instruct anybody to remove those

14   from this case, did you?

15       A.   Oh, no.  I was -- I was depending upon counsel

16   to, you know, deal with the litigants.  I was really

17   just there for technical reasons, not for legal

18   reasons.

19       Q.   Well, I hate to do this, but we have got to go

20   back to Exhibit D --

21       A.   Yeah.

22       Q.   -- to your --

23       A.   Sure.

24       Q.   -- infringement report.

25            MR. EDMONDS:  So the record is clear, you are

Case: 13-1665     Document: 97-1     Page: 392     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    talking about Exhibit D to Exhibit 3, or Exhibit D --

2             MR. HERBERHOLZ:  Correct.

3             THE WITNESS:  Okay.

4             So this one.  Okay.

5    BY MR. HERBERHOLZ:

6        Q.   Turn your attention to the HP Pro claim chart.

7    I don't know if this helps, Dr. Muskivitch, but the

8    chart I'm looking at, the camera looks like that

9    (indicating).

10       A.   Oh, you have got it.  Okay.

11            (Reviewing document(s).)

12            Okay.

13       Q.   You found it?

14       A.   Yes, sir.

15       Q.   Great.

16            You had an opportunity to inspect the HP Pro

17   webcam as part of your opinions in this case,

18   correct?

19       A.   Yes.

20       Q.   I'll ask you to flip to the next page of this

21   claim chart for me, page two.

22            We talked earlier about ball-and-socket joints.

23       A.   Um-hmm.

24       Q.   Is it your understanding that the HP Pro webcam

25   contains a ball-and-socket joint?

Case: 13-1665     Document: 97-1     Page: 393     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          A.   Well, I'm aware that -- let's step back just a

2     sec.

3               From a standpoint of someone skilled in the

4     art, I think by looking at and examining the behavior

5     of this device and the way the structure is put

6     together, it has two distinct joints, even though they

7     are at the same location.

8               And one joint allows the rotational -- the

9     rotate -- the rotatable -- the rotatable connection.

10    The other allows for movement away from that axis, and

11    it's sort of a hinge.

12              So it's a combination of a biaxial joint or a

13    two-joint mechanism that has two independent and

14    distinct, separate motions.

15              So to say that that joint is a ball-and-socket

16    joint is -- is incomplete --

17         Q.   Okay.

18         A.   -- because --

19         Q.   So as a Ph.D. in engineering, and as a person

20    of ordinary skill in the art, you understand what a

21    ball-and-socket joint is, don't you?

22         A.   I do.

23         Q.   Okay.

24              So my question is does the HP Pro contain a

25    ball-and-socket joint as you understand that term?

Case: 13-1665    Document: 97-1    Page: 394    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      A.   Being that -- as I just mentioned, that there

2  are two separate behaviors, two distinct behaviors, I

3  cannot be sure that the ball-and-socket joint is the

4  only mechanism.

5      Q.   Well, I'm not --

6      A.   Or is the mechanism there.

7      Q.   Well, I'm not asking if it's the mechanism.

8  You did say the ball-and-socket joint, and that's my

9  question.   Is there a ball-and-socket joint in the HP

10  Pro camera?

11      A.   I don't know for certain.

12      Q.   Is your answer the same for the HP Pro for

13  Notebooks webcam; you don't know if that particular

14  product has a ball-and-socket joint?

15      A.   Again, I didn't -- when I -- when I did my

16  analysis, I didn't necessarily look at the individual

17  components that were included or contained within the

18  cameras.   I looked at the overall behavior that was

19  called out in the claims, claims one, seven and

20  nineteen of the -- of the patent.

21          So the -- the rotatably attached part was the

22  first part that I looked at.   And whether or not the

23  mechanism of that was a ball-and-socket joint or

24  whether it was -- whatever it was, you know, how -- how

25  that was implemented was really not the point.

Case: 13-1665     Document: 97-1     Page: 395     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1           The fact that it had that capability to move in
2    that direction is the major -- is the major issue.  The
3    fact that it could move in another direction is really
4    in my mind irrelevant because any other motion in any
5    other direction would be independent motion.
6           Q.   Okay.
7                So going back to the issue of a ball-and-socket
8    joint, correct me if I'm wrong, but my understanding is
9    that a ball-and-socket joint needs to have at least two
10   things:  One, a ball; two, a socket.
11               Is that fair?
12               MR. EDMONDS:  Objection.  Form.
13               THE WITNESS:  Um-hmm.  Probably need some kind
14   of transmittal device that would transfer the motion
15   from the ball to the socket.
16   BY MR. HERBERHOLZ:
17          Q.   How about a stem?
18          A.   Stem or structure, sure.
19          Q.   Okay.
20               So you could have a stem connected to a ball,
21   and then that stem-and-ball configuration within a
22   socket, and that stem, ball and socket could be
23   referred to as a "ball-and-socket joint"; is that
24   fair?
25          A.   That's correct.

Case: 13-1665    Document: 97-1    Page: 396    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          Here we go.  It's Exhibit Number 7-1.  I'm

2    handing that to you.

3        A.  Okay.

4        Q.  So is it your opinion that the camera of the

5    Rosewill 8163 webcam is rotatably attached to what

6    you've identified as a hinge member?

7        A.  Yes.

8        Q.  And what's the basis for that opinion?

9        A.  The basis, there seems to be a -- a ball that's

10   connected, as I mentioned earlier, to the base of the

11   camera, and it seems to be placed into a slot of some

12   sort, a slot that has a direction to it.  But the

13   rotatable attachment in terms of the patent would be as

14   you -- as you stated it.

15       Q.  You applied the court's claim construction as

16   part of your analysis in this case, didn't you?

17       A.  Yes.

18       Q.  And you understand -- and this is on page nine

19   of your report if you need to turn there -- that the

20   court said that rotatably attached objects in the

21   patent in suit are limited to a single axis of

22   rotation.

23          Do you remember that?

24       A.  Yes.

25       Q.  Are you saying that the camera of the Rosewill

Case: 13-1665     Document: 97-1     Page: 397     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    8163 that you have identified is limited to a single

2    axis of rotation with respect to the hinge member?

3         A.  No.  What I'm saying is there are two possible

4    motions here that are independent motions.  So by

5    looking at this camera, I can -- I can take that camera

6    and I can place it into that -- that slot or whatever,

7    whatever channel or whatever you'd like to call it.

8    And I can rotate it about what's called in the patent

9    axis one, and it's independent of anything else that's

10   going on.  But it only along that axis can move in that

11   direction, so it's independent.

12        If I -- if I move it to the side, as I think

13   you are trying to get at, is -- what you are doing is

14   you are imposing or you are imploring or utilizing a

15   second element, which is a hinge, and the hinge behaves

16   to allow motion in a single plane.  And it's

17   independent.

18        So the fact that there is -- the fact that this

19   axis one is made up -- now, this is a ball and this is

20   a socket (indicating), but it's not -- in my opinion,

21   it's not a true ball-and-socket joint.

22        Q.  Why is it not a true ball-and-socket joint?

23        A.  Because this can't move in every direction.

24   It's limited in the directionality which it can move.

25        A true ball-and-socket joint would move this

Case: 13-1665    Document: 97-1    Page: 398    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    way, rotate any way you wanted it to (demonstrating).

2        Q.   All right.

3        A.   Here it can only rotate about the axis, and it

4    can bend almost like your elbow and your arm and your

5    forearm.

6            If you take the -- the rotatable attachment and

7    you rotate it vertical this way (demonstrating), it

8    doesn't matter whether your arm is -- your elbow is

9    bent or straight.  It still has that rotatable

10   attachment ability.

11       Q.   I just want --

12       A.   Because it's independent of any kind of hinge

13   member.

14           So this is really a dual -- basically it has

15   two axes of motion that are independent of one

16   another.

17       Q.   What has two axes?  The camera relative to the

18   hinge member?

19       A.   Yes.

20       Q.   It has two axes?

21       A.   Two separate axes that -- two separate,

22   independent axes that allow it to move to -- within

23   certain bounds --

24       Q.   Okay.

25       A.   -- on the camera.

Case: 13-1665    Document: 97-1    Page: 399    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      Q.   So the camera is not limited to a single axis

2   of rotation with respect to the hinge member?

3      A.   Correct.  But they are independent.  So one can

4   have -- I can spin this all day and it does not have to

5   move as a hinge.  It doesn't have to move down this

6   slot, move forward, so it's called "forward tilt."

7      Q.   Okay.

8      A.   And I can move it forward tilt back and forth

9   as much as I want and it doesn't have to be -- it

10  doesn't -- nothing is forcing it to rotate.

11         So those are two independent motions.

12     Q.   Okay.

13         I have here an exemplar of the Rosewill 8163

14  camera.

15     A.   Right.

16     Q.   And just for purposes of the record, I want to

17  try to be as clear as I can about what I'm going to do

18  when I'm manipulating this.  But if --

19     A.   Right.  Okay.

20     Q.   -- something is inaccurate, let me know.

21         I'm setting the camera down here.  I'm going to

22  put it on a flat surface on the table.

23     A.   Sure.

24     Q.   Okay?

25         And I'm trying to configure the casing,

Case: 13-1665    Document: 97-1    Page: 400    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    whatever you want to call this, the camera, to be

2    upright.

3          A.   Right.   Okay.

4          Q.   And I want the axis to be perpendicular to the

5    table.   Do you follow me?

6          A.   Yes.

7          Q.   Okay.

8               I have configured it that way.

9               So I'm now taking the camera and I am going to

10   rotate it.   Okay?

11         A.   Okay.

12         Q.   I'm rotating it to that configuration

13   (demonstrating).

14              How many degrees have I rotated that camera?

15         A.   It looks like approximately ninety degrees.

16         Q.   Okay.

17         A.   About that central axis.

18         Q.   Okay.

19              So I have rotated it about a single axis of

20   rotation, correct?

21         A.   That's correct.

22         Q.   Okay.

23              Now I'm going to turn it back to the

24   configuration that I had it.   Okay?   Are you with me?

25         A.   Yes.

Case: 13-1665    Document: 97-1    Page: 401    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    Q.  Now, here's what I'm going to do.  I'm going to

2    move the camera at this angle directly toward me

3    (demonstrating).

4         Do you see that I just tilted it?

5    A.  Um-hmm.

6         (Nods head.)

7    Q.  Okay.

8         Now I'm going to do the same rotation that I

9    did a moment ago, but on this other angle.  And I'm

10   going to turn the camera that way (demonstrating).

11        Do you follow me?

12   A.  Yes.

13   Q.  How many degrees did I rotate the camera?

14   A.  Well, you rotated it in two -- about two

15   axes.

16   Q.  Okay.

17        So what I --

18   A.  So I -- it looks like from a -- if I use a

19   vertical -- a vertical axis, it looks like it's ninety

20   degrees.  Well, not even quite ninety.  More than

21   ninety degrees.  No, ninety degrees.  And if I look at

22   the rotation about the horizontal axes, it looks to be

23   a little bit less.

24        But those are both independent motions.  They

25   do not depend on one another.

Case: 13-1665    Document: 97-1    Page: 402    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          To get to -- if we -- if we go back to basic

2    engineering, to get from one point to another is a

3    combination of three displacements and three rotations,

4    any part in -- any point in space.

5          So if I take this bottle and I move it here, I

6    have translated it.  And if I rotate it this way, I

7    have rotated it (demonstrating).

8          Now, those are independent of one another.  I

9    can translate it first and then rotate it.  I can

10   rotate it first and then translate it.  It doesn't

11   matter, because when I -- okay.

12         Let's take an example of two springs together.

13   If I have a spring that's fixed, like a Slinky -- do

14   you follow where I'm going?

15   Q.  Um-hmm.

16   A.  -- and I hold it at this one end, we'll say the

17   left end, and there is a connection in between them,

18   between two Slinkys.

19         When I talk about independent motion, I -- in

20   that configuration, I -- I have what's called

21   "dependent motion," because if I move one, the other is

22   forced to move with it.

23   Q.  Okay.

24   A.  Okay?

25         In this case, if I rotate it around to the

Case: 13-1665    Document: 97-1    Page: 403    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    center, there is nothing that forces it to move, to

2    tilt or to sway to either side.  It's a separate

3    motion; it's a separate functional joint.  It may be

4    the same location, but it's the same function joint.

5        Q.  Okay.

6            Regardless of whether it's a separate motion --

7        A.  Well, it's --

8        Q.  -- if I go back and do the same thing that I

9    just did -- so I'm just going to configure the camera

10   so the first axis of rotation, as you described it, is

11   perpendicular to the table.

12           Is that fair?  Is that how I have it placed

13   right now?

14       A.  The first axis of rotation is straight up

15   (demonstrating).

16       Q.  All right.

17           So, again, and I'm going to tilt the camera as

18   far toward me as I can.  Do you see that?

19       A.  Sure.

20       Q.  Okay.

21           Now I'm going to rotate it again ninety

22   degrees.

23           Do you follow me?  (Demonstrating.)

24       A.  Yes.

25       Q.  Just to be clear, when I rotated that, it

Case: 13-1665    Document: 97-1    Page: 404    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    rotated about two axis (sic) of rotation.  Is that

2    right?  They might be separate, but they are two axis

3    of --

4        A.  Well, there is a --

5        Q.  -- rotation, correct?

6        A.  -- part that -- they are separate, yes.  There

7    is two axes, but they are separate --

8        Q.  Okay.

9        A.  -- and independent -- and independent, and I

10   want to be clear on that.

11       Q.  Okay.

12       A.  Because you did have to -- you did have to move

13   it -- well, I -- maybe -- maybe you didn't have to do

14   it.  But the way you demonstrated it is you moved it in

15   one direction, meaning that there's a joint that allows

16   it to move in that direction --

17       Q.  Okay.

18       A.  -- and then you rotated it, which means that

19   there is some functional capability that allows it to

20   do that.

21       Q.  Okay.

22           But, in any event, it rotated in two axes?

23       A.  In two independent -- about two independent

24   axes, yes.

25       Q.  Okay.

Case: 13-1665    Document: 97-1    Page: 405    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          Now, is there --

2      A.  It doesn't necessarily have to correspond.   In

3  this particular case they happen to go through the

4  center of the camera and the center of the base.

5      Q.  Okay.

6          I'm not going to go through demonstrations with

7  each of these products here, but can you take a look at

8  the Hercules Classic drawing that you have.

9      A.  Okay.

10     Q.  Is it your understanding that the lens, or more

11  particularly the part that you have colored as the

12  camera, you know, rotates in a similar manner relative

13  to the hinge member as the Rosewill camera that we have

14  demonstrated?

15     A.  Yes, that's correct.

16     Q.  Okay.

17     A.  It's a -- it may be a ball, it may be a socket,

18  but it's a -- a constrained ball-and-socket joint.

19          So just the fact that you have a ball and you

20  have a socket does not in itself satisfy the condition

21  of being a true ball-and-socket joint.

22     Q.  Okay.

23     A.  This happens to be a constrained

24  ball-and-socket joint.  So it can spin about the axis,

25  it can move forward, it may be able to move to the

Case: 13-1665    Document: 97-1    Page: 406    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1   side.

2       Q.  Okay.

3       A.  But each of those motions are independent.

4       Q.  Okay.

5           So Hercules Classic has what you identified as

6   a constrained ball-and-socket joint?

7       A.  Yes.

8       Q.  Okay.

9           And just to make sure I understand, the camera

10  that you have identified in the Hercules Classic

11  rotated about at least one axis of rotation; maybe it's

12  a separate axis of rotation, but nevertheless it

13  rotated about more than one axis.  Is that right?

14          MR. EDMONDS:  Objection.  Form.

15          THE WITNESS:  Well, it depends on how -- you

16  know, how it's positioned.

17  BY MR. HERBERHOLZ:

18      Q.  Okay.

19          Let's say hypothetically if I had that same

20  device and went through the same analysis that we did

21  with the Rosewill camera, in other words --

22      A.  Sure.

23      Q.  -- I set it upright, pull it to the side,

24  rotate it ninety degrees like I did with the Rosewill

25  camera --

Case: 13-1665    Document: 97-1    Page: 407    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        A.   Right.

2        Q.   -- that particular rotation has been about more

3    than one axis, right?

4        A.   Well, you moved it to the side?  If you are

5    just moving it around its central axis, that's just one

6    rotation.

7        Q.   Okay.

8        A.   But taking it and moving it in another

9    direction in addition to rotating it about its axis,

10   that's two separate, independent motions.

11       Q.   Okay.

12            Two separate, independent motions between the

13   camera and the hinge member?

14       A.   Yes.

15       Q.   Okay.

16            Is that the same -- handing you the Exhibit

17   8-1, which is the Hercules Dualpix.

18       A.   Um-hmm.

19       Q.   Is what you have -- is what you have identified

20   as a camera there -- does that also rotate -- well,

21   first let me back up.  Strike that.

22            Does the Hercules Dualpix have a constrained

23   ball-and-socket joint as well?

24       A.   I believe it does.

25       Q.   Okay.

Case: 13-1665    Document: 97-1    Page: 408    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          And does the rotation of the camera in the

2    Hercules Dualpix relative to the hinge member -- does

3    that occur over more than one axis of rotation?

4        A.  Well, it very well could, but, again, they are

5    independent motions.

6        Q.  Okay.

7        A.  So the fact that -- that you have it rotatably

8    attached is an independent issue from whether it's

9    hingedly attached in the other direction.  Those are --

10   those are two independent issues.

11       Q.  Now, "hingedly attached" means connected by a

12   hinge joint, doesn't it?

13       A.  Right.  And that's what -- that's what that

14   channel is creating.  It's creating -- it's limiting

15   the motion from side to side.  It's forcing it to go

16   along that channel.

17       Q.  So are you -- you said earlier the Hercules

18   Dualpix has a modified ball-and-socket joint?

19       A.  Right.

20       Q.  Is that modified ball-and-socket joint in the

21   same location as what you have identified as the hinge

22   joint?

23       A.  No.

24       Q.  Okay.

25          Where were the modified ball-and- --

Case: 13-1665    Document: 97-1    Page: 409    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      A.   Well, again, there is really -- in this

2   particular case there could be as many as three.

3   But -- but I think when I did play with this -- this

4   camera, essentially it was really two axes that it

5   allowed rotation.  It allowed rotation about the

6   central axis, or corresponding to axis one in both the

7   patent and in the preferred embodiment, and the second

8   axis was dependent upon the orientation -- well,

9   actually, let me take that back.

10          The motion itself is independent, and that

11   would be the motion that would be along that channel.

12   But the direction of the motion is a combination of the

13   two.

14          So by rotating it and then -- rotating it about

15   its rotational axis and then rotating it about a hinge

16   axis, it reaches any of the possible limits of the

17   motate (sic) -- of the motion you have.  And, again,

18   those are independent.  One does not require the other

19   to occur.

20      Q.   You see the door here in the conference room?

21      A.   Um-hmm.

22      Q.   Would you -- do you see the hinge on the

23   door?

24      A.   Yes.

25      Q.   Would you understand that to be a hinge

Case: 13-1665    Document: 97-1    Page: 410    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    joint?

2        A.   Yes.

3        Q.   Do you see anything that looks like that hinge

4    joint in the Hercules Dualpix webcam?

5        A.   Doesn't matter.

6        Q.   No, I'm just asking a question.  Is there --

7        A.   No, I don't see anything in there, but what it

8    looks like really doesn't matter, because it's a

9    behavior that's -- it's displaying that's the important

10   thing.  However the engineer decided to do it is -- is

11   really irrelevant because the overall characteristic of

12   that joint is to allow that hinged rotation.

13        So that could be -- it could have drills in it,

14   it could extend four feet out into this room, and as

15   long it allowed that motion, it really doesn't matter

16   what it looks like.

17        Q.   But that motion is in a single axis of

18   rotation; is that correct?

19        A.   That's correct.

20        Q.   Is there anything in this modified

21   ball-and-socket joint in the Hercules Dualpix cam --

22        (Reporter clarification.)

23        MR. HERBERHOLZ:  Sure.

24   BY MR. HERBERHOLZ:

25        Q.   Is there any structure in this Hercules Dualpix

Case: 13-1665     Document: 97-1     Page: 411     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1  webcam, at least in the modified ball-and-socket

2  portion of it, where the -- where there is rotation

3  about a single axis relative to the hinge member?

4     A.  To the -- rotation about a single -- well,

5  actually, there is two axes.  Again, there is one

6  independent motion which allows rotation about the

7  central axis.  There is another motion which is more

8  like the door hinge (demonstrating).

9        And what I'm saying is -- maybe for the court

10  reporter -- is I have my hand, my right hand,

11  vertically upward, and if I rotate that down, that's --

12  and if I rotate it about my elbow, that's my rotational

13  connection.

14        When I take my hand and I move it down towards

15  the table, rotating it in my -- looking at it here

16  counterclockwise to reach the table, that's an

17  independent hinge motion.  And, again, however that's

18  configured internally is -- is basically irrelevant in

19  my mind, because the motion is allowed to occur only in

20  that direction.

21        Now, if I rotate my hand forty-five degrees and

22  then I use the hinge, I can -- I can duplicate that

23  motion, which gives me -- which puts me in a different

24  position in space.

25        But, again, there is nothing that -- that

Case: 13-1665    Document: 97-1    Page: 412    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    forces the rotational motion or the hinge motion to

2    occur simultaneously, or have any kind of -- other than

3    the bounds that are put on any kind of limits on it.

4        Q.  So I want you to envision a traditional

5    ball-and-socket joint.  Okay?  Do you have that in

6    mind?

7        A.  Um-hmm.

8        Q.  Okay.

9            Is it your testimony that every ball-and-socket

10   joint also includes a hinge joint?

11       A.  Depending upon the way that it is configured,

12   it can -- it can -- if it's limited, it can have

13   hingelike behavior.

14           And that's what I'm saying.  The fact that it's

15   a ball and the fact that it's a socket is really

16   irrelevant.  It has constraints on it that force it to

17   move a certain way.

18       Q.  Well, I'm not a professional engineer, so

19   correct me if I'm wrong.

20       A.  No, that's all right.

21       Q.  I'm just a lawyer trying to --

22       A.  That's fine.

23       Q.  -- understand.

24       A.  Sure.  That's fine.

25       Q.  The way I envision a ball-and-socket joint is

Case: 13-1665    Document: 97-1    Page: 413    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1              And same here (indicating).  So that's an edge.

2              MR. HERBERHOLZ:  I don't have any other

3     questions at the present time.  I'm going to go over my

4     notes, but in the meantime, I'm going to pass the

5     witness.  I think Mr. Sutton had some questions he

6     wanted to ask.

7              MR. SUTTON:  Okay.  Did you want to take a

8     quick break, or are you okay?

9              THE WITNESS:  No, I'm -- I'm okay.

10             MR. SUTTON:  All right.  Good.

11             THE WITNESS:  Yes.

12             EXAMINATION BY MR. SUTTON

13     Q.  Do you have the '343 patent in front of you, or

14     can you get that in front of you?

15     A.  Yes, I do.

16     Q.  And can you look at figure four of that patent.

17     A.  What was that?  What was that again?

18     Q.  Can you please look at figure four of the '343

19     patent.

20     A.  Yes.

21     Q.  Okay.

22             And, by the way, have you looked at any Kodak

23     webcams?

24     A.  I believe so.

25     Q.  Okay.  All right.

Case: 13-1665    Document: 97-1    Page: 414    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1      Q.   Therefore, the support frame, eighteen, rotates

2    about the single axis of rotation, which is pivot

3    element, eighty-two; is that correct?

4      A.   Yes.

5      Q.   Is it also correct --

6      A.   Oh.

7      Q.   -- that the pivot pin is -- I think we -- I

8    asked you this one before, and it's repetitive, but is

9    it also correct that the pivot pin, eighty-two, is the

10   second axis of rotation in the patent, which is labeled

11   "axis thirty-two" in figure three?

12     A.   I believe that's correct.

13     Q.   Okay.

14          Now, can you please look again at the Kodak

15   webcam.

16     A.   Okay.

17          Yes.

18     Q.   And I'm referring again to the stem and ball

19   which are affixed to the bottom part of the camera.

20     A.   Yes.

21     Q.   Now, the stem and ball that you are looking at,

22   is it your understanding that it has a single axis of

23   rotation or more than one axis of rotation relative to

24   the support frame?

25     A.   Relative to --

Case: 13-1665    Document: 97-1    Page: 415    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          MR. EDMONDS:  Objection.  Form.

2          THE WITNESS:  Do you mean relative to the hinge

3    member?

4    BY MR. SUTTON:

5        Q.  Well, I'm going to say relative to -- let me

6    back up and --

7          Do you understand that the Kodak web- -- the

8    Kodak webcam has two legs which we can call a support

9    frame, similar to the patent?

10       A.  Yes.

11       Q.  Or I should say to use the wording of the

12   patent.

13       A.  (Nods head.)

14       Q.  So does the -- does the stem and ball of the

15   Kodak webcam which is fixed to the bottom of the

16   camera -- does the stem and ball have a single axis of

17   rotation relative to the support frame or more -- or

18   more than one axis of rotation relative to the support

19   frame?

20         MR. EDMONDS:  Objection.  Form.

21         THE WITNESS:  Well, I think we discussed this

22   before.

23         Looking at the photograph, I think that the --

24   the structure is such that one skilled in the art could

25   somewhat independently of the actual structure of that

Case: 13-1665    Document: 97-1    Page: 416    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    joint come to the conclusion that you have two

2    independent rotations possible, and they are distinct

3    independent rotations which correspond -- at least the

4    rotatably attached one, which would be corresponding

5    to -- essentially what is axis one in the patent would

6    be the rotatable attachment part.

7        And as part of that same structure -- and,

8    again, this is -- this is based on the behavior -- it

9    has a separate and distinct joint which allows forward

10    rotation such as very similar to a hinge.

11    BY MR. SUTTON:

12    Q.  All right.

13        Well, let me go back and clarify something.

14        You understand looking at the photograph of the

15    Kodak webcam -- do you understand that you can tilt the

16    support frame forward relative to the stem and ball?

17    A.  The support frame could be rotated forward,

18    yeah, through the hinge, yes.

19    Q.  Through the stem and ball?

20        MR. EDMONDS:  Objection.  Form.

21        THE WITNESS:  I don't follow the question.  Are

22    you asking me if the stem and ball can be -- well, let

23    me ask -- let me let you ask the question.  I didn't

24    understand the question the way it was posed.

25    / / /

Case: 13-1665    Document: 97-1    Page: 417    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    BY MR. SUTTON:

2        Q.   Okay.

3             You understand that you can tilt the support

4    frame of the Kodak webcam forward relative to the stem

5    and ball?

6             MR. EDMONDS:   Objection.   Form.

7             THE WITNESS:   Well --

8    BY MR. SUTTON:

9        Q.   Do you understand that part of the question?

10       A.   No, I don't, because I -- the support frame --

11       Q.   Okay.

12            Let me -- okay.   So let me clarify that for

13   you.

14            The support frame that I'm referring to are the

15   two legs at the bottom of the stem and ball.   Two

16   hinged legs.

17       A.   Okay.

18            So that's your -- you are -- okay.   That's not

19   what we have been calling the support frame.   But what

20   you are saying is the base of the camera.

21       Q.   No, no.

22       A.   I'm sorry.   The base -- where the -- where

23   the -- there is a base that connects to the camera.

24       Q.   Well, okay.

25       A.   I'm sorry.

Case: 13-1665    Document: 97-1    Page: 418    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    holding the camera still in space, and moving it in

2    either the predominantly forward or predominantly

3    backward direction, rotating it.

4         Is that fair?

5    Q.    What was that last part?  I'm doing what?

6    A.    And rotating it essentially.

7    Q.    I'm sorry.  Rotating the -- rotating what?

8    A.    Rotating the hinge member while holding the

9    camera essentially in its vertical position.  And

10   rocking -- basically rocking it back and forth in that

11   connection.

12        Is that -- is that what you are asking?

13   Q.    I think so, but let me restate it so we are --

14   it's going to be clear on the record.

15   A.    Okay.

16   Q.    When you tilt forward and back the upper leg

17   member, which you call the "hinge member," and when

18   you tilt it forward and back relative to the ball and

19   stem, you can do that, correct, with the Kodak webcam,

20   right?

21   A.    Yes, that's correct.

22   Q.    Now -- and let's take -- I want to ask you what

23   happens -- can you rotate the -- the hinge member in

24   either of those positions?  So it's the forward

25   position and the -- tilted forward position and the

Case: 13-1665    Document: 97-1    Page: 419    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    tilted back position.

2          Can you rotate the hinge member in either of

3    those positions?

4        A.   I believe so, yeah.

5        Q.   Okay.

6          That's fine.

7        A.   Yeah.   Okay.

8        Q.   And if you can do that, is there a single axis

9    of rotation or more than one axis of rotation?

10       A.   If those -- if those motions of rocking it back

11   and forth are essentially in the same direction -- and

12   by that I mean if they -- central axis from side to

13   side is pointing directly frontwards or directly

14   backwards, then that is an axis -- that is one axis of

15   rotation.

16          MR. SUTTON:   I'm sorry.   Could you read back

17   that answer.

18          (The record was read as follows:

19          "A.    If those -- if those motions

20          of rocking it back and forth are

21          essentially in the same

22          direction -- and by that I mean if

23          they -- central axis from side to

24          side is pointing directly

25          frontwards or directly backwards,

Case: 13-1665    Document: 97-1    Page: 420    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          then that is an axis -- that is one

2          axis of rotation.")

3    BY MR. SUTTON:

4        Q.   All right.

5            Let me break it into two parts because it's --

6    let's look at the -- the tilting the legs or what you

7    call the upper -- I call it the "upper leg"; you are

8    calling it the "hinge member."

9        A.   Correct.

10       Q.   I'm talking about tilting the hinge member back

11   relative to the stem and ball, right?

12       A.   Yes.  So that the -- so that the right side of

13   the photograph would be higher than the left side --

14   the right side of the hinge member would be higher than

15   the left side of the hinge member.  Is that correct?

16       Q.   Well, I don't have the photograph you are

17   looking at, so I'm --

18       A.   I'm essentially looking at a side view, what I

19   would call the side view --

20       Q.   Yeah.

21       A.   -- where the lens is protruding toward the

22   left, and the -- the cable is potuding (sic) --

23   protruding towards the -- towards the right.

24       Q.   Well, I'm not looking at the photograph, so I'm

25   not --

Case: 13-1665    Document: 97-1    Page: 421    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        A.   Well, I'm trying to describe it to you.

2        Q.   Well, no.   It's okay.   It's not necessary for

3    my question.

4             Let me ask you:   If you tilt the upper leg of

5    the Kodak webcam let's say forward so that the front of

6    it is close to the bottom of the camera and the back of

7    it is far away from the camera --

8        A.   Okay.

9        Q.   Do you follow what I'm saying?

10       A.   Yes, yes.

11       Q.   Okay.

12            And now can you rotate -- in that position can

13   you rotate the -- the upper leg or hinge member

14   relative to the ball and stem?

15       A.   Yes.

16            In what -- in what particular direction are

17   you -- are you thinking of?

18       Q.   Well, I -- I just -- I have it in my hand and I

19   can rotate it -- rotate it to the left or right.

20            Yeah, I'm talking about the upper leg or hinge

21   member, I can rotate it about the stem and ball to the

22   left or right.

23       A.   Okay.

24       Q.   Now, can we call that rotation in that position

25   one axis of rotation?

Case: 13-1665     Document: 97-1     Page: 422     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1        A.   If it's about the vector that would cause that

2    one axis of rotation, yes.   And it would be independent

3    of any other rotations that you -- that you would

4    apply.

5        Q.   All right.

6             Well, I'm going to come to another axis of

7    rotation.

8        A.   Yeah.   Okay.

9        Q.   But that would be one -- that would be one axis

10   of rotation, right?

11       A.   Okay.   Yes.

12       Q.   Now, if we just pivot it -- or tilt it, I

13   should say, the leg, or what you call the "hinge

14   member" -- if we tilt it in the opposite direction so

15   that now the -- looking at the front of the camera, the

16   leg or hinge member is now facing down, so that the

17   back end is sort of closer to the camera --

18       A.   Okay.

19       Q.   So now let's call that a "rear tilt."   Okay?

20       A.   Okay.

21       Q.   Now, in that rear tilt position, I can still

22   rotate the upper leg or hinge member to the left or

23   right, correct?

24       A.   I don't have the camera, and to be honest,

25   that's not one of the motions that we -- well, it's one

Case: 13-1665    Document: 97-1    Page: 423    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    that we looked at.  And I can't remember the camera

2    specifically, but are you just saying rocking it side

3    to side?

4        Q.  No.  I'm rocking -- I just rocked the -- no.

5            First of all, I didn't say "rocking"; I said

6    "rotate."

7        A.  Right, right.  Okay.  Right.

8        Q.  So my question was in that rear tilt

9    position --

10       A.  Right.

11       Q.  -- you can rotate the upper leg or hinge member

12   relative to the ball and stem, correct?

13       A.  Yes.  It's an independent rotation, but it can

14   be done, yes.

15       Q.  Okay.

16           And in that second position or rear tilt

17   position, when we do that rotation of the upper leg or

18   hinge member relative to the ball and stem, is that a

19   different axis of rotation than the one we were talking

20   about when we tilt it forward?

21       A.  As long as it's symmetric, then it would be the

22   same axis of rotation.  In other words, as long as the

23   center line of the -- of the device in all directions,

24   the three directions, were essentially oriented the

25   same way, then that would be the -- a single axis of

Case: 13-1665    Document: 97-1    Page: 424    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    rotation.

2        Q.   So you are saying in both the rear position --

3    rear tilt position and the forward tilt position, it's

4    the same axis of rotation?

5        A.   If I understand your question correctly, yes.

6        Q.   Okay.

7             Let me ask you another question.  Let me give

8    you a third example.

9        A.   Okay.

10       Q.   Let's assume that the camera and ball and stem

11   are totally vertical and perpendicular to the upper leg

12   or hinge --

13       A.   The hinge --

14       Q.   -- member.

15       A.   -- member.  Okay.

16       Q.   Now, in that position obviously you can rotate

17   the upper leg or hinge member relative to the ball and

18   stem, right?

19       A.   Holding the camera still, yes.

20       Q.   Okay.  Yes.

21            And that would -- I think we could call that a

22   vertical axis of rotation?

23       A.   Yes.  That's correct.

24       Q.   Okay.

25            And, now, is that vertical axis of rotation the

Case: 13-1665    Document: 97-1    Page: 425    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    same or different from the two axes of rotation that we

2    just talked about when we talked about the rear tilt

3    position and the forward tilt position?

4        A.   Well, actually, they are different.   One,

5    because the -- the axis -- the origin of the axis is --

6    is probably the same, or could be the same, but the

7    vertical axes and the -- I'll say sort of the

8    horizontal axes are -- are independent and pretty much

9    orthogonal.

10       Q.   Okay.

11            But --

12       A.   So I can -- I can rotate the camera or the

13   base, whichever way you want to do it, about that axis

14   independently of any forward, backward or side

15   motion.

16       Q.   Okay.

17            But the question I was trying to get at was --

18   and I think you have agreed, but let me just clarify it

19   just so that there is no misunderstanding.

20       A.   Yes.

21       Q.   The vertical axis of rotation that we talked

22   about was -- I think you agreed a moment ago was

23   different from the two axes of rotation when the --

24       A.   Yes.

25       Q.   -- upper leg or hinge member has tilted forward

Case: 13-1665    Document: 97-1    Page: 426    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    or back, correct?

2        A.   That's correct.

3        Q.   Okay.

4        A.   One is horizontal and one is vertical.

5        Q.   One --

6        A.   I'm sorry.  One of the axes is vertical.

7        Q.   Which one?

8        A.   The one that goes -- I think it is the first

9    one you talked about, where it's rotating about the

10   center axis.

11       Q.   Yeah.  But which -- the one I called the

12   vertical axis of rotation?

13       A.   That's correct.

14       Q.   Okay.

15            And the other one --

16       A.   And then the other one for the other situation,

17   that's more of a horizontal axis.

18       Q.   Well, I'm looking -- I have it in my hand, and

19   when I tilt the -- when I tilt it forward and back,

20   the -- the angle -- the rotational axis appears to me

21   to be tilting either forward or back relative to the

22   vertical axis.  So I see three different vertical axes.

23       A.   Well, that's -- that's kind of the discussion

24   and is covered in my report, is that that -- when you

25   move that -- the -- that particular joint that you are

Case: 13-1665    Document: 97-1    Page: 427    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    talking about at the base of the webcam that goes into

2    I guess you called it a ball and socket maybe, or it's

3    been called a ball and socket, where the post of the

4    webcam goes into the hinge member, that allows for

5    three independent rotations, as far as we have

6    discussed, so far as -- as I understand it.

7        Q.  And when you say "we discussed," you are

8    talking about the discussion we just had?

9        A.  Yeah, you and I.

10       Q.  Okay.

11       A.  Or you and me.

12       Q.  So there is three independent axes of

13   rotation?

14       A.  Yes.  And the -- the only important one from my

15   view in my -- in my evaluation is that vertical axis.

16   That's what we call the rotatably attached connection

17   to the -- to the hinge member.

18       Q.  Between the support frame and the hinge member?

19       A.  No.  The one that goes from the bottom of the

20   plug on the bottom of the camera to the hinge member

21   where that -- that raised section is?  The bottom --

22   the bottom of the camera and the post that goes into

23   that -- that frame below it?

24       Q.  Yes.

25       A.  Okay.

Case: 13-1665    Document: 97-1    Page: 428    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          When you rotate about the vertical axis, that
2    essentially is axis number one in the patent, and also
3    in the preferred embodiment, which I guess is the
4    Critter cam.  And that's independent from any other --
5    any other motion.
6    Q.  All right.
7          Well, when I was asking you questions about
8    forward tilt, the rear tilt, and then keeping the
9    camera in a vertical position relative to the base or
10   hinge member --
11   A.  Right.
12   Q.  -- I was talking about the relationship between
13   the -- the hinge member and the -- and the -- and the
14   ball and stem.
15   A.  Right.  So it has three -- in general, it would
16   have three possible motions.
17   Q.  Well, are those -- you say "motions."  Are
18   those different axes of rotation?
19   A.  Yes.
20   Q.  Okay.
21          I mean -- all right.  All right.
22          So now --
23   A.  And --
24   Q.  -- do you understand that the court has ruled
25   that the -- with regard to the patent claims that

Case: 13-1665    Document: 97-1    Page: 429    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    the -- that the rotational -- the rotational connection

2    between the ball and socket and the --

3        A.  And the hinge member.

4        Q.  -- and the hinge member is limited to a single

5    axis of rotation?

6        A.  And I agree with that, and my opinion is based

7    on that.

8        Q.  Excuse me, but you just said there is three

9    axes of rotation, and not a single --

10       A.  Because there is three -- three independent

11   behaviors.

12       Q.  Well, no, no.  A moment ago you said three axes

13   of rotation.

14       A.  Right.  And they are independent of one

15   another.

16       Q.  Okay.  Fine.

17            But three axes of rotation is not a single axis

18   of rotation of which the court limited that terminology

19   of the claim to.

20            MR. EDMONDS:  Objection.  Form.

21            THE WITNESS:  Let me look at the --

22   BY MR. SUTTON:

23       Q.  In other words, you have said -- based on the

24   three positions that I had asked you about, you said

25   that there is a vertical axis of rotation, and it's

Case: 13-1665    Document: 97-1    Page: 430    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    different from the forward tilt axis of rotation and

2    the rear tilt axis of rotation.  And if there is a

3    different axis of rotation, that means you have got

4    more than a single axis of rotation between the ball

5    and socket and the support member.  Is that correct?

6            MR. EDMONDS:  Objection.  Form.  Where is the

7    question there?  That was a speech.

8            MR. SUTTON:  I made a statement and I said, "Is

9    that correct?"

10           MR. EDMONDS:  Okay.  Objection.  Form.

11   BY MR. SUTTON:

12       Q.  Did you understand my question?

13       A.  I believe so.  But, again, it's -- it's in the

14   context of whether or not those -- those axes of

15   rotation -- let me go back and look at the judge's

16   ruling, if I may.

17           (Reviewing document(s).)

18           Well, actually, you know, just off the top of

19   my head, consistent -- those are three separate joints

20   even though they are in one location.  So --

21   BY MR. SUTTON:

22       Q.  Which -- which structure are you referring to

23   now?

24       A.  The -- the bottom of the post.

25       Q.  Are you looking at the Kodak webcam?

Case: 13-1665     Document: 97-1     Page: 431     Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1     A.  Yes, I am.

2     Q.  Okay.

3         So I'm sorry.  What are you saying now?

4     A.  Because of the three independent motions that

5     you are allowed, essentially you are talking about

6     three separate joints that allow different independent

7     motions.

8     Q.  Where are the three separate joints that you

9     are talking about in the Kodak webcam?

10    A.  At the base of -- of the post.

11    Q.  At the base of the post we have assumed that

12    there is some kind of spherical structure, right?

13    A.  Right.  But that doesn't mean it's -- that

14    doesn't mean functionally it's not a joint, or it's not

15    a multiple joint.

16        If you look at your elbow and you hold your

17    elbow -- or your elbow out, can you move your hand up

18    and down like if you were curling?

19    Q.  I can't talk about my elbow right now.  It's

20    not related to the camera.  I'm trying to stick to the

21    camera.

22    A.  No, but I'm trying to demonstrate the concept

23    that I'm trying to get across.

24    Q.  Okay.

25        But if you could do it in terms of the Kodak

1   webcam, it would be helpful.

2       A.   Okay.

3           The fact that you have -- let's take -- we

4   start with axis one as defined by -- in the patent.

5       Q.   Well, now you are going back -- the axis of

6   rotation -- the first axis of rotation as defined in

7   the patent is the axis of rotation between the camera

8   and the stem and ball in our case, you know.  That's a

9   different axis of rotation.

10      A.   Not if you take -- not if you choose the

11  vertical axis.

12      Q.   Well, we have -- we have already talked about

13  the relationship between the camera and the stem and

14  ball, and we have agreed earlier -- or you agreed

15  earlier that -- that in a Kodak webcam, there is no

16  rotational movement between the -- the camera and the

17  ball and stem that fits together.

18          Do you remember that?

19      A.   Yeah, sure, sure.

20      Q.   In the Kodak webcam there is no first axis of

21  rotation as defined in the patent, correct?

22          MR. EDMONDS:  Objection.  Form.

23          THE WITNESS:  No, I don't -- I don't agree with

24  that.

25  / / /

Case: 13-1665    Document: 97-1    Page: 433    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1   BY MR. SUTTON:

2       Q.  Well, we went through it about ten minutes ago.

3   I asked you was the -- was the stem and ball of the

4   Kodak webcam fixed to the bottom of the camera, and you

5   said, "Yes."

6       A.  Correct.

7       Q.  And then I said, "Correct?"

8       A.  Correct.

9       Q.  And then I -- and then I said to you is there

10  any -- therefore -- let me just go back now, look at my

11  question.

12          I then said to you, "So that the camera stem

13  and ball move together as a unit?" and you said, "Yes."

14  Correct?

15      A.  Correct.

16      Q.  And, therefore, the Kodak camera does not

17  rotate relative to the stem and ball, and I said, "Is

18  that correct?" and you said, "Yes."

19      A.  Okay.

20      Q.  So, therefore, in the Kodak webcam there is no

21  first axis of rotation, as defined in the patent,

22  between the camera and the stem and ball in the Kodak

23  webcam?

24      A.  Oh, true.  Sure.  It's the -- it's the stem and

25  ball with the -- with the hinge member that's the

Case: 13-1665    Document: 97-1    Page: 434    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    issue.

2        Q.   Well, you love to -- let me -- yeah, you have

3    made two answers there.  I want to break them up.

4        A.   Okay.

5        Q.   I think you agreed -- you first agreed to my

6    statement that in the Kodak webcam, the Kodak camera

7    does not rotate relative to the stem and ball, and you

8    have said yes to that, correct?

9        A.   I agree, yes.

10       Q.   Okay.

11            And, therefore, you also said there is not a

12   first axis of rotation in the Kodak webcam.

13            MR. EDMONDS:   Objection.  Form.

14            THE WITNESS:   I don't believe I said that.  I

15   mean that's -- that's fundamental to my opinion is that

16   there is -- when you consider the -- the camera with

17   the attached ball and stem, and its connection with the

18   hinge member, there absolutely is a -- a rotational

19   axis that corresponds to axis one in the patent.

20   BY MR. SUTTON:

21       Q.   Okay.

22            But if the ball -- let me clarify something.

23            If the ball and stem are fixed to the bottom of

24   the camera in the Kodak webcam, how can there be -- and

25   they all move together, right?

Case: 13-1665    Document: 97-1    Page: 435    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1              Those three elements move together.  The

2    camera, the ball and the stem all move together.

3    You've established that, correct?

4         A.  I agree, yes.

5         Q.  Okay.

6              So how could there be an axis of rotation

7    between the bottom of the camera, or the camera itself,

8    and the ball and stem that are fixed to it?

9         A.  No.  Maybe I -- I was misunderstood, I'm sure.

10             I'm talking about the rotation being at the

11   base of the ball and stem, where it connects to the

12   hinge member.

13        Q.  Okay.

14             But there is no relative movement between the

15   ball and stem, which are -- and the camera, which are

16   fixed together, correct?

17        A.  I agree.  Right.

18        Q.  Okay.

19             All right.  So, now, going back to this -- to

20   the other axis of rotation, which is the second axis

21   of -- second axis of rotation called for in the patent.

22        A.  Right.

23        Q.  All right?  Which the judge has defined as

24   limited to a single axis of rotation, correct?

25        A.  Yes.

Case: 13-1665    Document: 97-1    Page: 436    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          Okay.  And is it correct that the support arms

2     that are shown on the log there are the support arms,

3     and they rotate about that single pivot axis between

4     the arms?

5          A.  I believe it's described in -- it's disclosed

6     in the -- in the disclosure.

7          Q.  Is the answer yes?

8          A.  Yes.

9          Q.  Okay.

10          MR. SUTTON:  I have no further questions.

11          THE WITNESS:  Okay.

12               EXAMINATION BY MR. EDMONDS

13          Q.  Dr. Muskivitch, during the lunch break did you

14     go through the version of your report that has the

15     erroneous Exhibit D and the version of your report that

16     has the correct Exhibit D and tab where the textual

17     changes were?

18          A.  For the first couple -- the first camera, which

19     would be -- I believe would be carried through the

20     entire report.

21          And I also put one on the incorrect pict- --

22     the incorrect picture of the camera.

23          Q.  Okay.  So you --

24          A.  And I mean that was the -- where of the Gear

25     Head was figured.

Case: 13-1665    Document: 97-1    Page: 437    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1          (Reporter clarification.)

2          THE WITNESS:  One of the Gear Head cameras.

3    BY MR. EDMONDS:

4      Q.  When you say "carried through the entire

5    report," are you saying that where there had been a

6    correction in the draft in that chart that you tabbed,

7    you looked to the same place --

8      A.  Yes.

9      Q.  -- in the other chart to see the same

10   correction?

11     A.  Yes.

12         Well, the corrections that I thought I made

13   based on the draft were in the copy you had this

14   morning.

15     Q.  Okay.

16         So if counsel chooses to ask you about those

17   changes that were made, and what's different about

18   Exhibit 3 and Exhibit 4, are you able to answer those

19   questions today if asked?

20     A.  I believe so, sure.  Yes.

21         MR. EDMONDS:  Pass the witness.

22          FURTHER EXAMINATION BY MR. HERBERHOLZ

23     Q.  Dr. Muskivitch, you were just asked questions

24   about whether or not -- about the fact that you tabbed

25   the changes from your earlier draft --

Case: 13-1665    Document: 97-1    Page: 438    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    you see as the hinge member?

2        A.   Yes.

3        Q.   Okay.

4             You are saying there is three independent

5    joints where the ball attaches to the hinge member?

6        A.   In a -- in a general sense.  In this one there

7    might only be two.

8        Q.   Okay.

9        A.   Which would be the -- this axis and then the

10   forward/backward (demonstrating).

11       Q.   Okay.

12            This --

13       A.   I don't know how much side to side is --

14       Q.   So it at least has two axes, correct?

15       A.   Yes.  They are independent axes.  They are

16   independent axes associated with independent joints.

17       Q.   Okay.

18            So the ball of the Rosewill 8163 webcam

19   connects to the hinge member by at least two axes of

20   rotation that may be independent, but they are still

21   two axes of rotation, right?

22            MR. EDMONDS:  Objection.  Form.

23            THE WITNESS:  The -- well, the important

24   distinction there is they're -- is they're really

25   functionally two independent joints.

Case: 13-1665    Document: 97-1    Page: 439    Filed: 12/11/2014

Adjustacam LLC vs. Amazon.com, Inc., et al.

1    BY MR. HERBERHOLZ:

2        Q.   Are there --

3        A.   And this is the discussion that we talked about

4    this morning with my arm.

5             I can -- and my -- my elbow is a -- is a

6    biaxial joint, as that would be considered, and it

7    can -- it rotate backward and forward, and it also can

8    rotate side to side (demonstrating), independently of

9    one another.

10       Q.   Okay.

11            So going back to --

12       A.   So it's not -- it's not just the axis of

13   rotation.  It's the -- the joint motion that's

14   associated with that axial rotation.

15       Q.   Okay.

16            So going back to the Rosewill 8163 webcam, I'm

17   looking at specifically the connection between the ball

18   and what you have identified as the hinge member.

19            Do you see that?

20       A.   Yes.

21       Q.   How many joints are there?

22       A.   Depends on the kind of behavior you are seeing.

23       Q.   So --

24       A.   It's one connection, but it can -- it can

25   manifest itself in many types of behavior.

1    Q.  So it's one connection, and the number of

2    joints at that connection depends on how I orient the

3    ball relative to the hinge member?

4        A.  And any constraints that are placed on them,

5    yes.

6        Q.  Okay.

7            But, again, I can rotate the ball relative to

8    the hinge member about more than one axis, correct?

9    Even though they are independent axes, it's more than

10   one?

11       A.  Well, because -- because they are independent

12   joints.

13       Q.  Okay.

14       A.  The joints are the things that allow that

15   independent motion.  Same way your elbow joint --

16       Q.  So the answer is yes?

17       A.  -- has two.

18           Yes.  I'm sorry.

19           MR. HERBERHOLZ:  I don't have anything further

20   at this time.

21           I just want to reiterate our point on the

22   record this morning that Exhibit 4 that we received was

23   the first time we have received that report.  Our

24   experts haven't had a chance to consider that report.

25           I don't think it's fair that I should be

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ADJUSTACAM LLC** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 6:10-cv-329-LED** |
| | § | |
| **AMAZON.COM, INC., et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

### EXPERT REPORT OF WALT BRATIC

---

Dated:  June 25, 2012

Respectfully submitted,

_____
Walt Bratic

*Highly Confidential – Attorneys' Eyes Only Material*

**Table of Contents**

1.0    QUALIFICATIONS .................................................................................. 3

2.0    ASSIGNMENT ....................................................................................... 3

3.0    INFORMATION REVIEWED ................................................................ 4

4.0    SUMMARY OF OPINIONS ................................................................... 4

5.0    BACKGROUND INFORMATION ......................................................... 6

   5.1    Parties-in-Suit .................................................................................. 6

   5.2    Patent-in-Suit ................................................................................... 9

   5.3    Accused Products ........................................................................... 10

   5.4    Market for Accused Products ......................................................... 10

6.0    REASONABLE ROYALTY ANALYSIS ............................................ 11

   6.1    Hypothetical Negotiation Date ...................................................... 12

   6.2    *Georgia-Pacific* Factor Analysis ................................................. 14

   6.3    The Hypothetical Negotiation ........................................................ 44

   6.4    Royalty Rate Conclusion ............................................................... 46

   6.5    Royalty Base .................................................................................. 47

   6.6    Reasonable Royalty Conclusion .................................................... 48

7.0    RESERVATION OF RIGHTS .............................................................. 51

## 1.0    QUALIFICATIONS

1.    I am a Managing Director of OverMont Consulting, LLC ("OverMont").  I am a Certified Public Accountant licensed to practice in the state of Texas.  My qualifications are listed in my resume attached as Exhibit 1.  A list of my testimony during the last four years is attached as Exhibit 2.  OverMont is being compensated at an hourly rate of $525 for my work performed in connection with this matter.  OverMont's fees are not contingent upon the outcome of the litigation.

## 2.0    ASSIGNMENT

2.    I have been retained by the law firm of Collins, Edmonds, Pogorzelski, Schlather & Tower ("CEP"), counsel for the plaintiff AdjustaCam LLC ("AdjustaCam" or the "Plaintiff") in the above matter, to determine the reasonable royalties due to AdjustaCam as a result of the alleged infringement of U.S. Patent No. 5,855,343 (the "'343 Patent" or the "Patent-in-Suit") by Best Buy Co., Inc. d/b/a Best Buy d/b/a Rocketfish, Best Buy Stores, LP, Bestbuy.com, LLC (collectively referred to herein as "Best Buy"), Fry's Electronics, Inc. ("Fry's"), Gear Head, LLC ("Gear Head"), Hewlett-Packard Company ("HP"), Kohl's Corporation d/b/a Kohl's, Kohl's Illinois, Inc. (collectively referred to herein as "Kohl's"), Micro Electronics, Inc. d/b/a Micro Center ("Micro Center"), Newegg, Inc., Newegg.com, Inc. (collectively referred to herein as "Newegg"), Office Depot, Inc. ("Office Depot"), Sakar International, Inc. ("Sakar"), Wal-mart Stores, Inc. ("Walmart") (collectively referred to herein as "Defendants").[1]

3.    For purposes of my analysis, I have assumed the asserted claims of the '343 Patent (i.e., claims 1, 7 and 19) are valid, enforceable, and have been infringed by the Defendants.

---

[1] It is my understanding that Jasco Products Company LLC, jWin Electronics Corp., Intcomex, Inc. & Klip Extreme, LLC & Software Brokers of America, Inc., Phoebe Micro, Inc., Trippe Manufacturing Company, RadioShack Corporation, Baltic Latvian Universal Electronics, LLC, Creative Technology, Ltd., Creative Labs, Inc., Dell Inc., J&R Electronics Inc., Mace Group, Inc, Macally Peripherals, Inc. d/b/a Macally U.S.A., Overstock.com, Inc., Auditek Corporation, and Digital Innovations, LLC, CDW Corporation f/k/a CDW Computer Centers, Inc. and CDW, Inc. have entered settlement and license agreements with AdjustaCam and are no longer involved in the current litigation.  See Exhibit 7.

*Highly Confidential – Attorneys' Eyes Only Material*

4.      This report reflects my analysis and opinions to date in this matter.   It is my understanding that discovery in this matter is ongoing.   As additional data, information, or testimony become available to me, I intend to consider this information.   Therefore, I may modify or update my opinions in light of any additional information received subsequent to this report date.

**3.0      INFORMATION REVIEWED**

5.      In connection with this report, OverMont professionals working under my supervision and direction and I have reviewed certain documents, information and testimony in this matter. The information I have reviewed and considered is identified in the body and footnotes of this report as well as in Exhibit 3.  In addition, I interviewed the following:

- Steve Wong, Acacia Research Group LLC vice president and AdjustaCam's licensing representative;
- Joel Barthelemy, president of GlobalMedia Group LLC; and
- John Muskivitch, Ph.D., AdjustaCam's technical expert.

**4.0      SUMMARY OF OPINIONS**

6.      My analysis of a reasonable royalty rate for the Patent-in-Suit is based on the construct of a hypothetical negotiation between GlobalMedia Group, LLC ("GlobalMedia") or Acacia Patent Acquisition LLC ("APAC"), and the Defendants for a license to the Patent-in-Suit that would take place at the time of first infringement.  The royalty base to which the reasonable royalty rate is applied is based on my analysis of data produced by each Defendant related to unit sales of products (the "Accused Products")[2] which are deemed by AdjustaCam's technical expert, Dr. Muskivitch, to infringe the '343 Patent.

7.      Based on my review and analysis of the documents, information, and testimony, in this matter, the interviews which were conducted, and my education, training, and experience in

---

[2] A list of Accused Products are identified in Exhibit 6.

intellectual property matters, including licensing, it is my opinion that a reasonable royalty based upon a hypothetical negotiation between the parties for the Patent-in-Suit would be no less than $1.25 per unit of U.S. sales of Accused Products. Additionally, a reasonable royalty rate of $1.25 represents the contribution of the Accused Feature to the overall device and is not dependent on the sales price of the Accused Product. The fact that so many suppliers (including a market leader, ▮▮▮▮▮▮▮▮▮▮▮▮ and resellers of licensed products, embodying the teachings of the '343 patent, agreed to pay actual and implied royalty rates of at least $1.25 to $1.50 per unit clearly establishes the value associated with the patented invention to be no less than $1.25 per unit. Therefore, the value of the '343 Patent is not dependent upon the sales price of the Accused Product.

8.      As a result of applying a royalty rate of $1.25 to U.S. sales of Accused Products, I calculated reasonable royalty damages owed to AdjustaCam for each of the Defendants as follows:



9.      The royalty damages above are not additive as the Defendants involve both suppliers and resellers[3] and therefore include an overlap in sales among the Defendants. In an effort to

---

[3] Defendant's Motion to Sever and Stay Claims as to Reseller Defendants Based on the Customer Suit Exception of January 13, 2011.

eliminate any duplication, I have eliminated overlapping sales in my royalty base at the retail level due to the exhaustion principle. The following table provides a breakdown of royalty damages by Defendant, eliminating any such overlapping sales:



## 5.0    BACKGROUND INFORMATION

### 5.1    Parties-in-Suit

10.    AdjustaCam is a Texas Limited Liability Company with its place of business in Frisco, Texas.[4]

11.    Best Buy, founded in 1966, is a leading multi-channel global retailer and developer of technology products and services.[5]  Best Buy is a multinational retailer of consumer electronics, computing and mobile phone products, entertainment products, appliances, and related services.

---

[4] First Amended Complaint, pg. 4.
[5] http://pr.bby.com/phoenix.zhtml?c=244152&p=irol-factSheet.

Best Buy operates retail stores and call centers and conduct online retail operations under a variety of brand names.[6]

12.    Fry's, a closely-held private company, was founded in 1985 in Sunnyvale, California by three brothers: John, Randy and Dave; and Kathy Kolder.[7]  Fry's runs a chain of 28 electronics superstores ranging in size from 50,000 square feet to more than 180,000 square feet.[8]

13.    Gear Head is a limited liability company that manufactures, engineers, imports, markets, tests and supports a comprehensive line of high quality Computer Peripherals/Accessories including Mobile Mice, Desktop Mice, Wireless Desktops, Keyboards, Cooling Pads, Webcams, Desktop Accessories, Tablet Accessories, Apple Accessories, USB Devices and Cables, Card Readers, Speakers, Headsets, Optical Drives, Home/Office Shredders, and a new line of Screen Gear Universal Cleaning Kits.[9]

14.    HP was founded in 1939 and is headquartered in Palo Alto, California.[10]  HP is a technology company that operates in more than 170 countries around the world offering consumers a wide range of products and services from digital photography to digital entertainment and from computing to home printing.[11]

15.    Kohl's is a family-focused, value-oriented store founded in 1962 with its principal place of business in Menomonee Falls, Wisconsin.[12]  Today it operates approximately 1,134 stores in 49 states and offers moderately price, exclusive and national brand apparel, shoes, accessories, beauty, and home products.[13]

---

[6] Best Buy Form 10-K for the fiscal year ended March 3, 2012, pg. 4.
[7] http://www.frys.com/template/isp/index/Frys/isp/Middle_Topics/ G1%20Store%20History/.
[8] http://www fundinguniverse.com/company-histories/fry-s-electronics-inc-history/.
[9] http://pcgearhead.com/about.php.
[10] First Amended Complaint for Patent Infringement, pg. 5; http://www8 hp.com/in/en/hp-information/about-hp/index.html.
[11] http://www8 hp.com/in/en/hp-information/about-hp/index.html.
[12] Third Amended Complaint for Patent Infringement, pg. 4; http://investing.businessweek.com/research/stocks/snapshot/snapshot.asp?ticker=KSS:US.
[13] http://www kohlscorporation.com/InvestorRelations/press.htm.

*Highly Confidential –Attorneys' Eyes Only Material*                                                *PAGE 7*

16.    Micro Center was founded in 1979 on the principle of providing "technical retailing" at its best.[14]  Micro Center offers a large selection of competitively price, high-quality products and a wealth of information to help customers make thoughtful buying decisions.[15]

17.    Newegg, founded in 2001, is the leading electronics-focused e-retailer in the United States.[16]  Newegg offers customers a comprehensive selection of the latest consumer electronic products, detailed product descriptions and images, as well as how-to information and customer reviews.[17]

18.    Office Depot, founded in 1986, opened its first store in Fort Lauderdale, Florida and today provides office supplies and services through 1,678 worldwide retail stores, catalogues and global e-commerce operations.[18]

19.    Sakar is a 30-year old consumer electronics manufacturer with a mission to deliver great product at affordable prices.[19]  Sakar was founded nearly 30 years ago as a small family business and is now a leader in technology trends, with showrooms and worldwide distribution.[20]  Sakar has evolved from selling camera lenses for SLR cameras, to being the #1 supplier of digital cameras to the mass retail channel.[21]

20.    Walmart was founded in 1962, with the opening of the first Walmart discount store in Rogers, Ark.[22]  Walmart serves its customers in retail outlets, online, and on mobile devices and has a place of business in Bentonville, Arkansas.[23]  Walmart operates under 69 different banners in 27 countries and employs 2.2 million associates worldwide.[24]

---

[14] http://www.microcenter.com/at_the_stores/history.html.
[15] http://www.microcenter.com/at_the_stores/history.html.
[16] http://www.newegg.com/Info/FactSheet.aspx
[17] http://www.newegg.com/Info/FactSheet.aspx
[18] http://www.officedepot.com/specialLinks.do?file=/companyinfo/companyfacts/index.jsp&template=companyInfo.
[19] http://www.sakar.com/aboutus.aspx.
[20] http://www.sakar.com/aboutus.aspx.
[21] http://www.sakar.com/aboutus.aspx.
[22] http://www.walmartstores.com/aboutus/
[23] First Amended Complaint for Patent Infringement, pg. 9.
[24] http://www.walmartstores.com/aboutus/

*Highly Confidential –Attorneys' Eyes Only Material*                                    *PAGE 8*

### 5.2    Patent-in-Suit

21.    The '343 Patent entitled "Camera Clip" issued on January 5, 1999,[25] and was subsequently assigned to GlobalMedia on or around February 1, 2002.[26] On February 22, 2010, GlobalMedia granted an exclusive license to all substantial rights of the '343 Patent to APAC.[27] On June 11, 2010, APAC assigned all of its rights in the '343 Patent to AdjustaCam.[28] AdjustaCam is the present exclusive licensee of, and owner of all substantial rights to the '343 Patent.[29]

22.    According to Dr. Muskivitch, the claimed invention generally relates to a "highly versatile and configurable camera clip which is ideal for webcams used in conjunction with laptop computers and desktop computers" ("Accused Feature").  The invention focuses on a versatile, configurable camera clip which may optionally be configured to sit on a generally horizontal, substantially planar surface or an object having a first surface, a second surface, and an edge the first surface and the second surface upon which one may perch a webcam.[30] The "highly desirable configurability allows for versatile and unobstructed angles of view for the webcam, as well as stability of the camera clip and webcam."[31]

23.    The claims of the '343 Patent cover apparatuses for supporting cameras comprising:  (1) a hinge member adapted to be rotatably attached to the camera, and the camera rotates about a single axis of rotation relative to the hinge member, (2) a support frame rotatably attached to the hinge member and configured to support the hinge member on the surface (for example, the table) and the object (for example, a laptop computer).  The hinge member rotates about a second axis of rotation relative to the support frame, with the first axis of rotation being generally perpendicular to said second axis of rotation, and the second axis being substantially parallel to a first surface when said hinge member is supported on the object, (3) the support frame has a first

---

[25] U.S. Patent No. 5,855,343.
[26] GLOBALMEDIA000001 – 012 at 1.
[27] http://assignments.uspto.gov/assignments/q?db=pat&pat=5855343; ADJCAM000133-147.
[28] Assignment and Assumption Agreement between Acacia Patent Acquisition LLC ("APAC") and AdjustaCam LLC effective June 11, 2010.
[29] Assignment and Assumption Agreement between Acacia Patent Acquisition LLC ("APAC") and AdjustaCam LLC effective June 11, 2010.
[30] Interview of John Muskivitch Ph.D.
[31] Interview of John Muskivitch Ph.D.

disposition positioned on a generally horizontal, substantially planar surface, and a second disposition attached to the object when the first surface and said second surface are inclined from a generally horizontal orientation with the camera being maintained adjacent the edge in said second disposition of said support frame.[32]

### 5.3    Accused Products

24.    For purposes of this report, I have been asked to assume that the Defendants have infringed one or more asserted claims of the '343 Patent as a result of selling the Accused Products, which are listed in Exhibit 6.

### 5.4    Market for Accused Products

25.    I understand that the Defendants' Accused Products are webcams, generally defined as video devices (cameras) that are typically mounted on a computer above the monitor / display screen.[33]  Webcams are typically tethered to a personal computer and offer both still and streaming video-image capture capabilities for the primary purchase of Internet posting, videoconferencing, video instant messaging, or video mail.[34]  Webcams allow users to transmit visual images of themselves to correspondents with whom they are communicating by VoIP, email, or instant messaging.[35]  In addition to being popular for consumer use, webcams enable business applications such as videoconferencing and security.[36]

26.    The webcam market blossomed in 2006 due to the proliferation of video instant messaging, broadband video, and a strong uptake in the use of webcams to record videos posted to social networking sites.[37]  Consumer fascination with social networking and sharing photos online was expected to continue to support the expanding use of webcams.[38]  Also, Skype's addition of video in 2007 contributed to further growth of the webcam market.[39]  Webcams

---

[32] Expert Report of John Muskivitch Ph.D.; Interview of John Muskivitch Ph.D.
[33] HP000296 – 370, at 312.
[34] HP000201 – 214, at 203.
[35] HP000296 – 370, at 312.
[36] HP000296 – 370, at 312.
[37] HP000201 – 214, at 204.
[38] HP000296 – 370, at 335.
[39] HP000215 – 229, at 219.

generated about 12% of all worldwide aftermarket computer accessory revenues in 2008.[40]  In
2007, ████ dominated the U.S. webcam market, with 47% market share.[41]

27.    The following tables illustrate IDC's reporting of actual webcam sales from 2005 through
2008 and estimates of webcam sales for 2009 through 2013:[42]

| United States | | | | | Worldwide | | | |
|---|---|---|---|---|---|---|---|---|
| | Units (in thousands) | Sales (in millions) | ASP | | | Units (in thousands) | Sales (in millions) | ASP |
| 2005 | 6,284 | $ 358.20 | $57.00 | | 2005 | 22,420 | $ 1,480.80 | $66.05 |
| 2006 | 7,818 | 422.20 | 54.00 | | 2006 | 30,987 | 1,995.90 | 64.41 |
| 2007 | 7,821 | 414.50 | 53.00 | | 2007 | 38,759 | 2,415.70 | 62.33 |
| 2008 | 8,296 | 456.30 | 55.00 | | 2008 | 47,543 | 2,931.50 | 61.66 |
| 2009 (E) | 8,325 | 449.60 | 54.01 | | 2009 (E) | 49,685 | 3,023.10 | 60.85 |
| 2010 (E) | 8,400 | 453.60 | 54.00 | | 2010 (E) | 49,575 | 2,989.10 | 60.29 |
| 2011 (E) | 7,850 | 431.80 | 55.01 | | 2011 (E) | 47,536 | 2,889.40 | 60.78 |
| 2012 (E) | 7,560 | 415.80 | 55.00 | | 2012 (E) | 45,765 | 2,763.20 | 60.38 |
| 2013 (E) | 6,700 | 375.20 | 56.00 | | 2013 (E) | 41,825 | 2,512.50 | 60.07 |

28.    In 2009, NextGen Research estimated that webcams would grow at a compound annual
growth rate ("CAGR") of 4.71% from 2009 through 2013, outpacing the growth of the overall
aftermarket for computer accessories, which was expected to grow only at a CAGR of 3.05%
over the same period.[43]

## 6.0    REASONABLE ROYALTY ANALYSIS

29.    I understand that in patent infringement cases, economic damages are awarded pursuant
to 35 U.S.C. § 284, which requires that:

---

[40] HP000296 – 370, at 335.
[41] HP000201 – 214, at 205.
[42] HP00230 - 243, at 235 and 238.
[43] HP000296 – 370, at 335.

*Highly Confidential –Attorneys' Eyes Only Material*                                                              *PAGE 11*

"*Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interests and costs as fixed by the court.*"[44]

30.    Determination of a reasonable royalty is based on the hypothetical negotiation set forth in *Georgia-Pacific Corp. v. United States Plywood Corp ("Georgia-Pacific")*.[45]    In *Georgia-Pacific*, the Court held that determination of reasonable royalties generally reflects various factors which might have been considered by a willing licensor and willing licensee in trying to reach an agreement at the time of first infringement.    Furthermore, I have considered recent district court and Federal Circuit opinions as they relate to my opinion of economic damages in this matter and my opinions comply with court mandates.[46]

### 6.1    Hypothetical Negotiation Date

31.    In determining reasonable royalties for a license to the Patent-in-Suit, a hypothetical license scenario is considered in which the parties negotiate the terms of a non-exclusive license for the Patent-in-Suit.    The hypothetical negotiation is assumed to have occurred at the time of first alleged infringement.    The Defendants are assumed to infringe the Patent-in-Suit at the time of their respective first date of alleged infringement.    This is the first date, on which the Defendants made, used, sold, or offered for sale the Accused Products after the Patent-in-Suit issued.    I understand that the date of first alleged infringement for each of the Defendants is as follows:

---

[44] 35 U.S.C. § 284.

[45] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 116 (S.D.N.Y. 1970).

[46] *Lucent Technologies, Inc. et al. v. Gateway, Inc. et al.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Cornell University v. Hewlett-Packard Company*, 2008 U.S. Dist. LEXIS 41848, Case. No. 01- CV01974, *4 (N.D.N.Y. May 27, 2008); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868, (Fed.Cir.2010), *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011).

*Highly Confidential –Attorneys' Eyes Only Material*                                                          PAGE 12

| Defendant | Date of First Sale / Infringement |
|---|---|
| Micro Center | October 2, 2005 [47] |
| Newegg | 2006 [48] |
| Office Depot | 2006 [49] |
| HP | November 2006 [50] |
| Gear Head | January 1, 2007 [51] |
| Best Buy | June 2007 [52] |
| Fry's | August 8, 2007 [53] |
| Walmart | September 1, 2008 [54] |
| Sakar | September 9, 2009 [55] |
| Kohl's | Spring 2010 [56] |

32.    The hypothetical negotiation would have occurred for each of the Defendants' rights to the '343 Patent owned either by GlobalMedia or APAC. As noted above, GlobalMedia is a subsequent assignee of the '343 Patent.[57]   On February 22, 2010, GlobalMedia granted to APAC an exclusive license to all substantial rights to the '343 Patent.[58]   On June 11, 2010, APAC assigned all of its rights in the '343 Patent to AdjustaCam.[59]   As a result, the hypothetical negotiation would have occurred between GlobalMedia and each of the Defendants, except for Kohl's, on or around the date of first infringement as identified in the table above. At the time of first alleged infringement by Kohl's, the rights to the '343 Patent resided with APAC and

[47] See Exhibit 5.7.
[48] See Exhibit 5.8.
[49] See Exhibit 5.9.
[50] See Exhibit 5.5.
[51] See Exhibit 5.4.
[52] See Exhibit 5.1.
[53] See Exhibit 5.3.
[54] See Exhibit 5.10.
[55] See Exhibit 5.2.
[56] I understand that Kohl's spring season beings on February 1 and ends on July 31; See Exhibit 5.6.
[57] http://assignments.uspto.gov/assignments/q?db=pat&pat=5855343; ADJCAM000133-147.
[58] ADJCAM000133-147 at 133.
[59] Assignment and Assumption Agreement between Acacia Patent Acquisition LLC ("APAC") and AdjustaCam LLC effective June 11, 2010.

therefore the hypothetical negotiation would have occurred between APAC and Kohl's on or around Spring 2010.[60]

33.     According to Mr. Barthelemy, GlobalMedia would have considered similar information to the information that APAC and AdjustaCam considered in a hypothetical negotiation for the rights to the '343 Patent.[61]   In fact, Mr. Barthelemy advised me that he was involved in PAR's negotiations with Philips Electronics North America Corporation ("Philips") and ██████.[62] Accordingly, GlobalMedia[63] and APAC would have both relied upon the licensing history of the '343 Patent as guidance in a hypothetical negotiation, and more specifically the licenses between PAR and Philips and PAR and ██████ as a benchmark for reasonable royalty rate.

34.     Furthermore, the hypothetical negotiation dates for the Defendants range from October 2, 2005 through Spring 2010.   Based on my investigation, the economic conditions during this period as it relates to the webcam market were such that the reasonable royalty rate that would result from hypothetical negotiations between GlobalMedia, APAC and the Defendants would not have been affected.   This is consistent with the actual licenses, discussed below, which I analyzed.   During a period of about 1.76 years over which 20 licenses were executed, the royalty rates that were agreed to for a license to the Patent-in-Suit were generally within a range of $1.25 to $1.50 per licensed product. Furthermore, as more licenses were entered into within this range from 2006 forward, with the passage of time that royalty range would, if anything, increase in usefulness as a benchmark.

### 6.2     *Georgia-Pacific* Factor Analysis

35.     In the following paragraphs, I have analyzed the *Georgia-Pacific* factors to determine a reasonable royalty rate in a patent infringement matter.   I do not give the factors equal weight in my analysis.   Rather, I use the *Georgia-Pacific* factors as a part of my overall analysis in a manner that has been approved of in a long line of court opinions.

---

[60] Kohl's produced sales information based on seasons and therefore a specific date of infringement is unknown.
[61] Interview of Joel Barthelemy.
[62] Interview of Joel Barthelemy.
[63] Interview of Joel Barthelemy.

*Highly Confidential –Attorneys' Eyes Only Material*

**Factor #1 – The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.**

36.    *Georgia-Pacific* factor #1 involves consideration of the existence of an established royalty for the Patent-in-Suit.  As of the date of this report, neither GlobalMedia nor APAC had licensed the Patent-in-Suit to any third-party outside the settlement of litigation.[64]   However, I understand that AdjustaCam has entered into 20 settlement and license agreements that granted rights to the Patent-in-Suit as a result of the current litigation.  Additionally, PAR also entered into two settlement and license agreements for the Patent-in-Suit.   In some circumstances, settlement agreements offer the most relevant guidance as to a reasonable royalty that would have been negotiated by the parties in a hypothetical negotiation.  In fact, I understand that in *ResQNet*, the Federal Circuit observed that the "most reliable license" in that case arose out of litigation of the asserted patents.[65]

**Foundational Agreements**

37.    PAR, the previous owner of the '343 Patent, entered into two early settlements that helped establish a royalty rate range (i.e., $1.25 to $1.50) that would be the basis for each of AdjustaCam's subsequent settlements.[66]  These two agreements are discussed below.



38.    Effective October 22, 2001, PAR entered into a Settlement and License Agreement with ███.[67]  Under the agreement, PAR granted ███ a non-exclusive right to make, have made, use, offer to sell, sell, and/or import Licensed Products in the U.S.[68]  PAR also granted ███

---

[64] On February 22, 2010, GlobalMedia entered into an Exclusive License Agreement with APAC wherein it granted APAC exclusive rights to the '343 Patent in exchange for a portion of Net Proceeds obtained by APAC.  As a result, GlobalMedia has never licensed an operating entity that makes or sells a product outside the settlement of litigation.  Furthermore, I understand that Chicony anonymously contacted AdjustaCam for a license to the '343 Patent.  Chicony was indemnifying three of its customers, who were also anonymous.  As a result, the license was negotiated without any reference to Chicony or the parties that they represented and was based on good faith negotiations.  It was not until after the contract was agreed upon that Chicony and its customers were identified.
[65] *ResQNet.com, Inc. v. Lansa, Inc.,* 2010 WL 396157 (Fed. Cir. 2010).
[66] Interview of Steve Wong.
[67] ADJCAM-SETTLE000001 – 15.
[68] ADJCAM-SETTLE000001 – 15 at 2 – 3.

*Highly Confidential –Attorneys' Eyes Only Material*                                          PAGE 15

customers a non-exclusive right to use, offer to sell, sell, and/or import Licensed Products in the U.S. made by or for ████.[69]  In consideration of the rights granted by PAR, ████ agreed to make an initial, non-refundable payment of $90,000, which would be creditable toward royalty payments for past and future sales, based upon the following per-unit royalty schedule and also calculated separately for each past and future year:[70]

- 0 – 20,000 units: $1.00 / unit
- 20,001 - 40,000: $2.00 / unit
- 40,001 - 60,000: $6.00 / unit
- More than 60,000: $8.00 / unit

39.     The parties agreed that after the $90,000 initial payment was exhausted, ████ agreed to pay running royalties for future manufacture or sales, in accordance to the schedule above.[71] ████ was not entitled to any refund or reimbursement of any portions of the initial payment regardless of its actual sales volume.[72]  The parties agreed to submit to the court a dismissal of the lawsuit and also issue a joint press release indicating that ████ has accepted a license under the '343 Patent.[73]  The agreement would remain in effect until the expiration date of the '343 Patent, or until every claim of the '343 Patent is held invalid or enforceable by a court of competent jurisdiction in a final judgment from which no further appeal could be taken.[74]

40.     Additionally, in the event that PAR entered into a settlement or license agreement under the '343 Patent with a third party under overall terms and conditions that, taken as a whole were more favorable to such a third party, then PAR was required to notify ████ in writing and ████ then had the right to elect the more favorable terms provided that ████ also accepted any relevant less favorable terms in the same agreement.[75]

---

[69] ADJCAM-SETTLE000001 – 15 at 2 – 3.
[70] ADJCAM-SETTLE000001 – 15 at 3 – 4.
[71] ADJCAM-SETTLE000001 – 15 at 3 – 4.
[72] ADJCAM-SETTLE000001 – 15 at 4 – 5.
[73] ADJCAM-SETTLE000001 – 15 at 5.
[74] ADJCAM-SETTLE000001 – 15 at 7.
[75] ADJCAM-SETTLE000001 – 15 at 7 – 8.

41.    Using the unit ranges of 0 - 20,000 ($1.00 / unit) and 20,001 - 40,000 ($2.00 / unit) as a conservative baseline, PAR was expected to receive an average royalty payment of approximately $1.50 per licensed product.

42.    Effective December 31, 2001, Par and ███ entered a Settlement and License Agreement for rights to the '343 Patent.[76]  PAR granted ███ a worldwide, non-exclusive license to make, have made, use, lease, sell, offer to sell, import, export, distribute, and otherwise dispose of Licensed Products sold by ███.[77] The initial term of the license was 10 years.[78] ███ paid a lump-sum fee of $100,000 as full and complete consideration for all previous matters pertaining to the claimed infringement of the '343 Patent against the ███ SmartClip.[79]  Additionally, ███ agreed to pay future per unit royalties for each Licensed Product at the following rates:[80]

- Total aggregate royalties up to $2 million: $1.25 per unit[81]
- Total aggregate royalties between $2 to 4 million: $1.00 per unit
- Total aggregate royalties between $4 to 5 million: $0.75 per unit
- Total aggregate royalties between $5 to 6 million: $0.50 per unit
- Total aggregate royalties greater than $6 million: Royalty-free

43.    As part of the Settlement and License Agreement, PAR and ███ agreed to finalize and enter into a separate Distribution Agreement relating to ███ manufacture and distribution of Firewire and USB webcams using the ███ by March 31, 2002.[82]  If the parties were unable to mutually agree on the terms and conditions of a definitive Distribution

---

[76] GLOBALMEDIA0000013 – 34.

[77] GLOBALMEDIA0000013 – 34.

[78] GLOBALMEDIA0000013 – 34.

[79] GLOBALMEDIA0000013 – 34.

[80] GLOBALMEDIA0000013 – 34.

[81] Pursuant to the most favored nations clause of the ███ agreement, upon execution of the ███ agreement, the royalties payable under the ███ agreement were reduced to $1.25 / unit for total aggregate royalties up to $2 million. GLOBALMEDIA0000013 – 34.

[82] PAR / WIYN Investments, Inc. / GlobalMedia did in fact enter into a License and Distribution Agreements. However, this license is not indicative of a bare patent license that would have been negotiated by the parties for rights to the '343 Patent.  GLOBALMEDIA0000001 – 12.

*Highly Confidential –Attorneys' Eyes Only Material*                                              *PAGE 17*

Agreement, then ███████ agreed to pay PAR an additional license fee of $550,000 and PAR would then extend the terms of the license granted in the Settlement and License Agreement into a perpetual license for the life of the '343 Patent and at the same royalty rates above.[83]

## Settlement Agreements w/ Lump-Sum and Running Royalty

44.     From September 2010 to May 2012, AdjustaCam entered into 6 settlement and license agreements which included a lump-sum payment plus a running royalty of $1.50 which would kick in after a certain number of units were sold.   According to Mr. Wong, AdjustaCam understood, and the Defendants in the litigation appeared to understand, that AdjustaCam could not recover past royalties due to the marking statute,[84] and the estimated future sales of these six licensees (using linear projections based upon past sales) were relatively small.[85]   In each instance the lump sum payment was a number higher than expected from future sales applying a $1.50 rate.   Further, in each instance the parties agreed to a running royalty ranging between $1.25 and $1.50 in the event that future sales exceeded what was covered by the lump sum. These agreements are discussed in more detail below.



45.     Effective September 21, 2010, AdjustaCam granted ██████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell and sell methods, apparatuses and systems covered by the claims of the Licensed Patents.[86]   The license would remain in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[87]   AdjustaCam also granted a covenant not to sue ██████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[88]   ██████ agreed that it would not challenge, or assist others in challenging in any way, the validity or

---

[83] GLOBALMEDIA0000001 – 12.
[84] 35 U.S.C. § 287 ("No remedies for infringement under section 271(g) of this title shall be available with respect to any product in the possession of, or in transit to, the person subject to liability under such section before that person had notice of infringement with respect to that product.").  *See* Doc Nos. 426 (Court Order) and 489 (AdjustaCam Response to Motion) regarding the parties' awareness of non-marking.  *See also* Defendant Answers asserting the marking defense (e.g.. Doc Nos. 150, 153, 156, 159, 163, 169, 171, 172,  201, 202, 203, 204,  209, 211, 227 and 310)
[85] Interview of Steve Wong.
[86] ADJCAM-SETTLE000060 – 69 at 61.
[87] ADJCAM-SETTLE000060 – 69 at 63.
[88] ADJCAM-SETTLE000060 – 69 at 61.

enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[89]   In consideration for the rights granted in the license, ████ paid a non-refundable payment of $25,000 to AdjustaCam, which would extend only to a cumulative total of 16,500 units of Licensed Products, resulting in an implied per unit royalty of $1.52 per unit.[90]   In the event that ████ determined that more than 16,500 units of Licensed Products were expected to be made, made for, sold, offered for sale, or imported by ████ in the U.S., ████ would have the option to purchase an additional license at $1.50 per Licensed Product.[91]



46.     Effective November 22, 2010, AdjustaCam granted ███████████████ ████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell and sell methods, apparatuses and systems covered by the claims of the Licensed Patents.[92]   The license would remain in force until the expiration of the last surviving Licensed Patent.[93]   AdjustaCam also granted a covenant not to sue ████ ███████████████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[94]   ███████████████ also agreed that they would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[95]   In consideration for the rights granted in the license, ███████████████ paid a non-refundable payment of $25,000 to AdjustaCam, which covered cumulative sales of 16,500 units of Licensed Products, resulting in an implied per unit royalty of $1.52 per unit.[96]   In the event that ███████████████ ████ determined that more than 16,500 units of Licensed Products were expected to be made, made for, sold, offered for sale, or imported by ███████████████ in the

---

[89] ADJCAM-SETTLE000060 – 69 at 64.
[90] ADJCAM-SETTLE000060 – 69 at 61 – 62 ($25,000 / 16,500 = $1.52 per unit.).
[91] ADJCAM-SETTLE000060 – 69 at 62.
[92] ADJCAM-SETTLE000038 – 48.
[93] ADJCAM-SETTLE000038 – 48 at 41.
[94] ADJCAM-SETTLE000038 – 48 at 39.
[95] ADJCAM-SETTLE000038 – 48 at 42.
[96] ADJCAM-SETTLE000038 – 48 at 39.  ($25,000 / 16,500 = $1.52 per unit.)

United States, ███████████████████████ then had the option to purchase an additional license at $1.50 per Licensed Product.[97]

47.     Effective March 17, 2011, AdjustaCam granted ████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[98]  The license would be in force until March 7, 2017.[99] AdjustaCam also granted a covenant not to sue ████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[100] ████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[101]  In consideration for the rights granted in the license, ████ paid a non-refundable payment of $15,000 to AdjustaCam, which covered cumulative sales of 12,000 units of Licensed Products, resulting in an implied per unit royalty of $1.25 per unit.[102]  In the event that ████ determined that more than 12,000 units of Licensed Products were expected to be made, made for, sold, offered for sale, or imported by ████ in the United States, then ████ had the option to purchase an additional license at $1.50 per Licensed Product.[103] Additionally, if ████ breached the agreement by contesting the validity or enforceability of the Patent-in-Suit, then the per unit royalty would double to $3.00 per unit.[104]

48.     Effective March 23, 2011, AdjustaCam granted ████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[105]  The license was in force until the expiration or final

---

[97] ADJCAM-SETTLE000038 – 48 at 39.
[98] ADJCAM-SETTLE000049 – 59.
[99] ADJCAM-SETTLE000049 – 59 at 52.
[100] ADJCAM-SETTLE000049 – 59 at 50.
[101] ADJCAM-SETTLE000049 – 59 at 53.
[102] ADJCAM-SETTLE000049 – 59 at 50 – 51.  ($15,000 / 12,000 = $1.25 per unit.)
[103] ADJCAM-SETTLE000049 – 59 at 51.
[104] ADJCAM-SETTLE000049 – 59 at 51.
[105] ADJCAM-SETTLE000027 – 37.

determination of invalidity of the last surviving Licensed Patent.[106] AdjustaCam also granted a covenant not to sue ▮▮▮ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[107] ▮▮▮ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[108] In consideration for the rights granted in the license, ▮▮▮ paid a non-refundable payment of $18,000 to AdjustaCam, which covered cumulative sales of 12,000 units of Licensed Products. This resulted in an implied per unit royalty of $1.50 per unit.[109] In the event that ▮▮▮ determined that more than 12,000 units of Licensed Products were expected to be made, made for, sold, offered for sale, or imported by ▮▮▮ in the United States, ▮▮▮ then had the option to purchase an additional license at $1.50 per Licensed Product.[110] Additionally, if ▮▮▮ breached the agreement by contesting the validity or enforceability of the Patent-in-Suit, then the per unit royalty would double to $3.00 per unit.[111]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

49.    Effective June 3, 2011, AdjustaCam granted ▮▮▮▮▮▮ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[112] The term of the license would continue until March 7, 2017.[113] AdjustaCam also granted a covenant not to sue ▮▮▮▮▮, its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[114] ▮▮▮▮▮ also agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[115] In consideration for the rights granted in the license, ▮▮▮▮▮ made a non-refundable payment of $15,000 to AdjustaCam, which covered cumulative sales of 10,000 units of Licensed Products. This

---

[106] ADJCAM-SETTLE000027 – 37.
[107] ADJCAM-SETTLE000027 – 37.
[108] ADJCAM-SETTLE000027 – 37.
[109] ADJCAM-SETTLE000027 – 37.
[110] ADJCAM-SETTLE000027 – 37.
[111] ADJCAM-SETTLE000027 – 37.
[112] ADJCAM-SETTLE000106 – 116.
[113] ADJCAM-SETTLE000106 – 116.
[114] ADJCAM-SETTLE000106 – 116.
[115] ADJCAM-SETTLE000106 – 116.

resulted in an implied per unit royalty of $1.50 per unit.[116]  In the event that ████████ determined that more than 10,000 units of Licensed Products were expected to be made, made for, sold, offered for sale, or imported by ████████ in the U.S., ████████ then had the option to purchase an additional license at $1.50 per Licensed Product.[117]  Additionally, if ████████ breached the agreement by contesting the validity or enforceability of the Patent-in-Suit, the per unit royalty would double to $3.00 per unit.[118]

████████████████

50.    Effective May 10, 2012, AdjustaCam granted ████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[119]  The license was in force until March 7, 2017.[120]  AdjustaCam also granted a covenant not to sue ████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[121]  ████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[122]  In consideration for the rights granted in the license, ████ made a non-refundable payment of $20,000 to AdjustaCam, which covered cumulative sales of 13,333 units of Licensed Products.  This resulted in an implied per unit royalty of $1.50 per unit.[123]

### Settlement Agreements w/ Lump-Sum Only

51.    From December 2010 to June 2012, AdjustaCam entered into 14 settlement and license agreements that included only a lump-sum payment.  According to Mr. Wong the lump-sum payments were negotiated using a benchmark of at least $1.25 to $1.50 to estimated future sales.[124]  Furthermore, these licensees had low sales and were not expected to exceed the volume

---

[116] ADJCAM-SETTLE000106 – 116.
[117] ADJCAM-SETTLE000106 – 116.
[118] ADJCAM-SETTLE000106 – 116.
[119] ADJCAM-SETTLE000235-243.
[120] ADJCAM-SETTLE000235-243.
[121] ADJCAM-SETTLE000235-243.
[122] ADJCAM-SETTLE000235-243.
[123] ADJCAM-SETTLE000235-243.
[124] Interview of Steve Wong.  I understand that Chicony was a unique agreement in which Chicony anonymously approached AdjustaCam seeking a license without being a named party in the litigation.  As such, Chicony was

derived by AdjustaCam for estimated future sales, which was the benchmark for the lump-sum payment.[125]  These agreements are discussed in more detail below.

████████████████████████████████

52.    Effective December 28, 2010, AdjustaCam granted ███ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[126]  The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[127]  AdjustaCam also granted a covenant not to sue ████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[128]  ████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[129]  In consideration of the rights granted in the license, ████ paid a non-refundable payment of $212,500 to AdjustaCam.[130]

████████████████████████████████████
████████████████████████████

53.    Effective March 24, 2011, AdjustaCam granted ████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[131]  The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[132]  AdjustaCam also granted a covenant not to sue ████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[133]  ████ agreed that it would not challenge, or assist others in challenging in any

---

granted a license at a discounted rate of approximately $1.05.  Furthermore, based on the circumstances of the license, one could argue that this agreement was executed outside the settlement of litigation.
[125] Interview of Steve Wong.
[126] ADJCAM-SETTLE000016 – 26.
[127] ADJCAM-SETTLE000016 – 26.
[128] ADJCAM-SETTLE000016 – 26.
[129] ADJCAM-SETTLE000016 – 26.
[130] ADJCAM-SETTLE000016 – 26.
[131] ADJCAM-SETTLE000244-254.
[132] ADJCAM-SETTLE000244-254.
[133] ADJCAM-SETTLE000244-254.

*Highly Confidential –Attorneys' Eyes Only Material*
                                                                                                    *PAGE 23*

THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE

way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[134]  In consideration for the rights granted in the license, █████ paid a non-refundable payment of $100,000 to AdjustaCam.[135]

██████████████████████

54.    Effective June 28, 2011, AdjustaCam granted █████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[136]  The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[137]  AdjustaCam also granted a covenant not to sue █████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[138]  █████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[139]  In consideration for the rights granted in the license, █████ made a non-refundable payment of $100,000 to AdjustaCam.[140]

55.    I understand that █████ initially approached AdjustaCam when it became aware that three of its customers were named as Defendants in this lawsuit.  I understand that during the negotiations of the agreement, AdjustaCam was unaware of the identity of █████ or the identity of █████ customers in the suit. It was only after the agreement was verbally reached that █████ and its customers were divulged to AdjustaCam for purposes of including them in a written agreement.  I understand that AdjustaCam provided █████ with a discounted royalty rate of approximately $1.05, due to the fact that █████ approached AdjustaCam anonymously and represented that it was beyond the reach of the U.S. patent laws. The █████ license was not executed as a result of litigation against █████.

---

[134] ADJCAM-SETTLE000244-254.
[135] ADJCAM-SETTLE000244-254.
[136] ADJCAM-SETTLE000097 – 105.
[137] ADJCAM-SETTLE000097 – 105.
[138] ADJCAM-SETTLE000097 – 105.
[139] ADJCAM-SETTLE000097 – 105.
[140] ADJCAM-SETTLE000097 – 105.

56.     Effective August 8, 2011, AdjustaCam granted ███████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[141]  The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[142]  AdjustaCam also granted a covenant not to sue ███████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[143]  ███████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[144]  In consideration for the rights granted in the license, ███████ made a non-refundable payment of $80,000 to AdjustaCam.[145]

57.     Effective August 11, 2011, AdjustaCam granted ███████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[146]  The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[147]  AdjustaCam also granted a covenant not to sue ███████, its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[148]  ███████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[149]  In consideration for the rights granted in the license, ███████ made a non-refundable payment of $50,000 to AdjustaCam.[150]

---

[141] ADJCAM-SETTLE000117 – 126.
[142] ADJCAM-SETTLE000117 – 126.
[143] ADJCAM-SETTLE000117 – 126.
[144] ADJCAM-SETTLE000117 – 126.
[145] ADJCAM-SETTLE000117 – 126.
[146] ADJCAM-SETTLE000127 – 139.
[147] ADJCAM-SETTLE000127 – 139.
[148] ADJCAM-SETTLE000127 – 139.
[149] ADJCAM-SETTLE000127 – 139.
[150] ADJCAM-SETTLE000127 – 139.

*Highly Confidential –Attorneys' Eyes Only Material*                    PAGE 25

████████████████████████████

58.    Effective September 12, 2011, AdjustaCam granted ████████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[151]   The term of the license would continue until the latest date of the expiration of the Licensed Patent.[152]   AdjustaCam also granted a covenant not to sue ████████, its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[153]   ████████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[154]   In consideration for the rights granted in the license, ████████ made a non-refundable payment of $25,000 to AdjustaCam.[155]

████████████████████

59.    Effective November 3, 2011, AdjustaCam granted ███ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[156]   The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[157]   AdjustaCam also granted a covenant not to sue ███ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[158]   ███ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[159]   In consideration for the rights granted in the license, ███ made a non-refundable payment of $20,000 to AdjustaCam.[160]

---

[151] ADJCAM-SETTLE000191 – 201.
[152] ADJCAM-SETTLE000191 – 201.
[153] ADJCAM-SETTLE000191 – 201.
[154] ADJCAM-SETTLE000191 – 201.
[155] ADJCAM-SETTLE000191 – 201.
[156] ADJCAM-SETTLE000153 – 163.
[157] ADJCAM-SETTLE000153 – 163.
[158] ADJCAM-SETTLE000153 – 163.
[159] ADJCAM-SETTLE000153 – 163.
[160] ADJCAM-SETTLE000153 – 163.

60.    Effective November 11, 2011, AdjustaCam granted ███████████████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[161]  The license was in force untill March 7, 2017.[162]  AdjustaCam also granted a covenant not to sue ██████████ ██████, its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[163] ██ ██████████████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[164]  For the rights granted in the license, ███████████████ made a non-refundable payment of $225,000 to AdjustaCam.[165]

61.    Effective November 18, 2011, AdjustaCam granted ██████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[166]  The license was in force until March 7, 2017.[167]  AdjustaCam also granted a covenant not to sue ████████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[168] ██████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[169]  In consideration for the rights granted in the license, ██████ made a non-refundable payment of $65,000 to AdjustaCam.[170]

---

[161] ADJCAM-SETTLE000176 – 190.
[162] ADJCAM-SETTLE000176 – 190.
[163] ADJCAM-SETTLE000176 – 190.
[164] ADJCAM-SETTLE000176 – 190.
[165] ADJCAM-SETTLE000176 – 190.
[166] ADJCAM-SETTLE000142 – 152.
[167] ADJCAM-SETTLE000142 – 152.
[168] ADJCAM-SETTLE000142 – 152.
[169] ADJCAM-SETTLE000142 – 152.
[170] ADJCAM-SETTLE000142 – 152.

████████████████████████████

62.     Effective December 30, 2011, AdjustaCam granted ██████████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[171]  The license was in force until the latest date of the expiration of the Licensed Patent.[172]  AdjustaCam also granted a covenant not to sue ██████████, its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[173] ██████████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[174]  In consideration for the rights granted in the license, ██████████ made a non-refundable payment of $20,000 to AdjustaCam.[175]

████████████████████████████████

██████████████████████

63.     Effective March 15, 2012, AdjustaCam granted ████████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[176]  The license was in force until the March 7, 2017.[177] AdjustaCam also granted a covenant not to sue ████████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[178] ████████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[179]  In consideration for the rights granted in the license, ██████████ paid a non-refundable payment of $25,000 to AdjustaCam.[180]

---

[171] ADJCAM-SETTLE000164 – 175.
[172] ADJCAM-SETTLE000164 – 175.
[173] ADJCAM-SETTLE000164 – 175.
[174] ADJCAM-SETTLE000164 – 175.
[175] ADJCAM-SETTLE000164 – 175.
[176] ADJCAM-SETTLE000202 – 212.
[177] ADJCAM-SETTLE000202 – 212 at 203.
[178] ADJCAM-SETTLE000202 – 212 at 203.
[179] ADJCAM-SETTLE000202 – 212 at 205 – 206.
[180] ADJCAM-SETTLE000202 – 212 at 203.

████████████████████

64.     Effective March 22, 2012, AdjustaCam granted ██████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[181]  The license was in force until the expiration or final determination of invalidity of the last surviving Licensed Patent.[182]  AdjustaCam also granted a covenant not to sue ██████ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[183]  ██████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[184]  In consideration for the rights granted in the license, ██████ paid a non-refundable payment of $40,000 to AdjustaCam.[185]

████████████████████

65.     Effective May 31, 2012, AdjustaCam granted ████████████ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[186]  The license was in force until March 7, 2017.[187]  AdjustaCam also granted a covenant not to sue ████████████, its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[188]  ████████████ agreed that it would not challenge, or assist others in challenging in any way, the validity or enforceability, including in connection with court or reexamination proceedings, of the Licensed Patents unless required by law or a court of competent jurisdiction.[189]  In consideration for the rights granted in the license, ████████████ made a non-refundable payment of $50,000 to AdjustaCam.[190]

---

[181] ADJCAM-SETTLE000213 – 222.
[182] ADJCAM-SETTLE000213 – 222 at 14.
[183] ADJCAM-SETTLE000213 – 222 at 14.
[184] ADJCAM-SETTLE000213 – 222 at 17.
[185] ADJCAM-SETTLE000213 – 222 at 15.
[186] ADJCAM-SETTLE000202 – 213.
[187] ADJCAM-SETTLE000223 – 234.
[188] ADJCAM-SETTLE000223 – 234.
[189] ADJCAM-SETTLE000223 – 234.
[190] ADJCAM-SETTLE000223 – 234.

66.     Effective June 22, 2012, AdjustaCam granted ▮▮▮ a worldwide, non-exclusive, non-transferable, fully paid-up license to the '343 Patent to make, have made, use, import, offer to sell, and sell the Licensed Products.[191]   The license was in force until the expiration of the last surviving Licensed Patent plus an additional 6 years.[192]   AdjustaCam also granted a covenant not to sue ▮▮▮ its affiliates, suppliers, subcontractors, distributors, resellers, and customers.[193]   In consideration for the rights granted in the license, ▮▮▮ made a non-refundable payment of $25,000 to AdjustaCam.[194]

*Conclusion*

67.     The ▮▮▮ and ▮▮▮ agreements discussed above set the benchmark for a reasonable royalty rate involving a hypothetical negotiation for rights to the '343 Patent.[195]   As discussed above, ▮▮▮ agreed to pay per unit royalty rates ranging from $1.00 to $8.00 per unit for rights to the '343 Patent.   It appears that ▮▮▮ did not intend to sell more than 40,000 units, because running royalties escalate significantly from $2.00 to $6.00 per unit after an initial 40,000 units have been sold.   I understand that AdjustaCam believed that the $1.00 to $2.00 per unit royalty (average of $1.50 per unit) included in the ▮▮▮ license to be representative of an appropriate royalty rate for rights to the Patent-in-Suit.[196]

68.     As discussed above, ▮▮▮ agreed to pay per unit royalties from $1.25 to $0.50 per unit for rights to the '343 Patent under the Settlement and License Agreement.   I understand that AdjustaCam believed that the $1.25 per unit royalty was the most appropriate rate as this rate applies to sales of up to 1.6 million ▮▮▮ units, which significantly exceeds the volume of Accused Products sold by any of the Defendants.[197]   It is my understanding that AdjustaCam utilized the $1.50 to $1.25 per unit royalties from the Philips and ▮▮▮ licenses, and from

---

[191] Settlement and Patent License Agreement between AdjustaCam and CDW dated June 22, 2012, pg. 1.
[192] Settlement and Patent License Agreement between AdjustaCam and CDW dated June 22, 2012, pg. 2.
[193] Settlement and Patent License Agreement between AdjustaCam and CDW dated June 22, 2012, pg. 2.
[194] Settlement and Patent License Agreement between AdjustaCam and CDW dated June 22, 2012, pg. 2.
[195] Interview of Steve Wong.
[196] Interview of Steve Wong.
[197] Interview of Steve Wong.  $2 million in aggregate royalties / $1.25 per unit = 1.6 million units.  See Exhibit 7.

*Highly Confidential –Attorneys' Eyes Only Material*

*PAGE 30*

other licenses as they were entered into, in its successful negotiations with the various parties discussed below.[198]

69.     AdjustaCam entered into 6 settlement and license agreements for rights to the '343 Patent that included both a lump-sum payment relating to a certain number of units of webcams and also a running royalty rate for sales of webcams that exceed the units sold that were covered by the lump-sum payment.[199]   The implied royalty rate related to the lump-sum payments was approximately $1.50 per unit for five license agreements and $1.25 per unit for one license agreement.[200]  The running royalty rates for sales of units exceeding the volume included in the lump-sum payments for each of the 6 licenses were $1.50 per unit.[201]   I understand that AdjustaCam utilized this royalty structure because these licensees had a low volume of past sales and it would be highly unlikely that total volume sales would exceed the units included in the lump-sum payment.[202]

70.     AdjustaCam entered into 14 settlement and license agreements for rights to the '343 Patent that included only a paid up, lump-sum payment.[203]   I understand that these licensees provided AdjustaCam with past sales information for the accused products.[204]  Being aware that it could not recover royalties for past sales due to the marking statute, AdjustaCam then estimated future sales through the expiration of the Patent-in-Suit to determine the total sales volume that would be covered by the lump-sum payment included in the various licenses.[205]  Furthermore, I understand that AdjustaCam also considered, and negotiated using the benchmark of, the same $1.25 to $1.50 per unit royalty rates its predecessor had obtained from the Philips and ███████ licenses discussed above.[206]  I understand that AdjustaCam utilized a lump-sum only royalty structure because it understood these licensees generated low volumes of past sales and it was unlikely that total volume sales would exceed the units included in the lump-sum payment, and because in many cases through successful negotiation it was able to obtain a lump

[198] Interview of Steve Wong.
[199] See Exhibit 7.
[200] See Exhibit 7.
[201] See Exhibit 7.
[202] Interview of Steve Wong.
[203] See Exhibit 7.
[204] Interview of Steve Wong.
[205] Interview of Steve Wong.
[206] Interview of Steve Wong.

*Highly Confidential –Attorneys' Eyes Only Material*                    *PAGE 31*

sum which exceeded an implied royalty rate of $1.25 to $1.50 based upon expected future sales. Also, AdjustaCam was able to use the past volume data the licensees provided to estimate future sales that were reflected in the paid up, lump sum payment.[207]

71.     The 22 agreements described above, especially the ████ and Philips agreements which preceded infringement by the Defendants, provide evidence of an established royalty ($1.25 to $3.00) for the Patent-in-Suit. In *Rude v. Westcott*, the Supreme Court found that "it is undoubtedly true that where there has been such a number of sales by a patentee of licenses to make, use, and sell his patents as to establish a regular price for a license, that price may be taken as a measure of damages against infringers."[208]  Although these agreements are the result of a settlement of litigation, they provide the most guidance as to a royalty that would have been agreed upon in a hypothetical negotiation between the parties.  The fact that so many suppliers and resellers of licensed products, embodying the teachings of the '343 patent, agreed to pay actual and implied royalty rates of at least $1.25 to $1.50 per unit clearly establishes the value associated with the patented invention to be no less than $1.25 per unit.  This also confirms that the value of the '343 Patent is not dependent upon the sales price of the Accused Product.

**Factor #2 – The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.**

72.     As of the date of this report, the Defendants have not produced any licenses involving technology comparable to the Patent-in-Suit.  Micro Center produced five licenses related generally to video encoding and video anti-copying processes and semiconductor integrated circuit packaging technology.  According to Dr. Muskivitch, the patented technology involved in the Micro Center licenses is not comparable to the inventions of the '343 Patent.[209]  Furthermore, these licenses are not indicative of a bare patent license negotiated between the parties for rights to the Patent-in-Suit.  As a result, this factor would have a neutral effect on a negotiated royalty between the parties.

---

[207] Interview of Steve Wong.
[208] *Rude et al. v. Westcott et al.*, 130 U.S. 152 (1889)
[209] Interview of John Muskivitch, Ph.D.

**Factor #3 – The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.**

73.     The hypothetical licenses negotiated between GlobalMedia or APAC and the Defendants would have involved a non-exclusive, U.S., bare patent license to practice the Patent-in-Suit, including the right to manufacture and sell licensed products in the United States.  It would not have included a license to any know-how, trade secrets, or other non-patented intellectual property.  As a result, this factor would have a neutral effect on a negotiated royalty between the parties.

**Factor #4 – The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.**

74.     I am not aware of any established policy of any of the Defendants to maintain their respective patent monopoly.  At the time of the hypothetical negotiations, no one had licensed the Patent-in-Suit outside the settlement of litigation.  Although GlobalMedia and APAC had not licensed the rights to the Patent-in-Suit outside the settlement of litigation, given their business model,[210] they would have been motivated to license the '343 Patent in order to generate a return on its intellectual property.  Further, PAR had already entered into litigation licenses with ████████ a market leader, and Philips.  As a result, this factor would have a downward effect on a negotiated royalty between the parties.

**Factor #5 – The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.**

75.     I understand that GlobalMedia is an operating company in the area of telemedicine, but does not operated in the webcam market.[211]   Therefore, neither GlobalMedia nor APAC makes

---

[210] I understand that GlobalMedia is an operating company in the area of telemedicine, but does not operated in the webcam market.
[211] Interview of Joel Barthelemy.

or distributes any products that would compete with the Accused Products sold by the Defendants. In the context of a hypothetical negotiation, the relationship between GlobalMedia or APAC and the Defendants would be considered inventor and promoter and not as competitors. As a result, this factor would have a neutral effect on a negotiated royalty between the parties.

**Factor #6 – The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.**

76.      In general, convoyed sales would be the sales of parts, supplies, accessories and related products, which flow or would be expected to flow to the licensee from the right to manufacture, use, or sell the patented invention. David Birt, Director of Merchandise Operations for the Computer Department of Fry's, testified that Fry's sometimes sells the Accused Products below cost "to generate traffic and bring more potential customers into the store."[212] As of the date of this report, no information specifically concerning non-infringing products or services which may be sold by the Defendants as a result of sales of the Accused Products has been produced. As a result, this factor would have a neutral effect on a negotiated royalty between the parties.

**Factor #7 – The duration of the patent and the term of the licensee.**

77.      A license resulting from the hypothetical negotiation would have been for the unexpired term of the Patent-in-Suit. I understand that the Patent-in-Suit will expire on March 6, 2017. Assuming that the hypothetical negotiation would occur on or around the date of first infringement, which is identified in the table below, the term of the license would encompass the majority of the statutory life of the Patent-in-Suit.

---

[212] Deposition of David Birt, June 5, 2012, pgs. 13 – 14.

*Highly Confidential –Attorneys' Eyes Only Material*                                    *PAGE 34*

| Defendant | Date of First Sale / Infringement |
|---|---|
| Micro Center | October 2, 2005 [213] |
| Newegg | 2006 [214] |
| Office Depot | 2006 [215] |
| HP | November 2006 [216] |
| Gear Head | January 1, 2007 [217] |
| Best Buy | June 2007 [218] |
| Fry's | August 8, 2007 [219] |
| Walmart | September 1, 2008 [220] |
| Sakar | September 9, 2009 [221] |
| Kohl's | Spring 2010 [222] |

78.    As a result, this factor would have a neutral effect on a negotiated royalty between the parties.

**Factor #8 - The established profitability of the product made under the patent; its commercial success; and its current popularity.**

79.    In order to evaluate this factor, it is important to not only review actual sales and profits realized by the Defendants during the period of alleged infringement, but also the Defendants' expectations regarding future sales at the time of the hypothetical negotiation.  However, based

---

[213] See Exhibit 5.7.
[214] See Exhibit 5.8.
[215] See Exhibit 5.9.
[216] See Exhibit 5.5.
[217] See Exhibit 5.4.
[218] See Exhibit 5.1.
[219] See Exhibit 5.3.
[220] See Exhibit 5.10.
[221] See Exhibit 5.2.
[222] I understand that Kohl's spring season beings on February 1 and ends on July 31; See Exhibit 5.6.

*Highly Confidential –Attorneys' Eyes Only Material*                                                    *PAGE 35*

upon reading the Defendants' depositions I understand that none have provided past sales projections.

*Established Profitability*

80.    The Defendants realized significant revenues and profits from the sale of Accused Products.    The following tables illustrate the revenues and profits realized by each of the Defendants:[223]



81.    The profitability figures identified above may not be an accurate reflection of the value of the Accused Products to each of the Defendants.    Products often are not sold for profit, or sometimes even a loss, in order to generate foot traffic and additional sales / profits of other products.    In fact, Mr. Birt testified that Fry's sometimes sells the Accused Products below cost

---

[223] See Exhibit 5.

*Highly Confidential –Attorneys' Eyes Only Material*

"to generate traffic and bring more potential customers into the store."[224]   The Defendants would have been aware of the profitability of the Accused Products and would have felt pressure to accept a license in order to remain competitive and provide a product that was versatile, configurable, stable, and portable.

*Commercial Success/Popularity*

82.    The commercial success and popularity of the Accused Products were discussed in a May 4, 2007 HP consumer study, entitled "HP Accessories Form and Feature Study".  Ninety percent of consumers responded that the clamp to adjust to the monitor or LCD screen either is essential or adds value to a webcam.[225]   Ninety percent of consumers also responded that the tilt function is either essential or adds value to a webcam.[226]   The clamp to adjust to the monitor or LCD screen was the 3rd highest ranked feature or functionality of a webcam while the tilt function was the 5th highest ranked.[227]   Additionally, 86% of respondents stated that the clamp to attach to a Notebook PC was either essential or adds value to a webcam.[228] According to 59% of respondents, this functionality was the 2nd highest ranked feature or functionality in terms of being essential to a webcam.[229]

83.    In or around 2005, a HP web survey of U.S. webcam home users reported that 47% of users placed webcams on top of an LCD monitor, 16% placed it directly on the desk, and 19% placed it upon other items.[230]   Additionally, HP has also indicated that one of the trends in the webcam market is the large adoption of LCD monitors and flat screen TVs, demonstrating the increased importance of clips that would attach to the monitors and TVs.[231]   The survey results above and the trends in the webcam market demonstrate the importance of a versatile and configurable webcam clip.

---

[224] Deposition of David Birt, June 5, 2012, pgs. 13 – 14.
[225] HP00023 – 57, at 36.
[226] HP00023 – 57, at 36.
[227] HP00023 – 57, at 36.
[228] HP00023 – 57, at 36.
[229] HP00023 – 57, at 36.
[230] HP000371 – 406, at 374.
[231] HP000371 – 406, at 383.

*Highly Confidential –Attorneys' Eyes Only Material*                                                                                        PAGE 37

84.    Furthermore, HP, which is clearly a substantial and sophisticated player in this market, touted the benefits of a versatile and configurable webcam clip. In a HP presentation for three of its webcams, HP indicated that one of the key features for these three webcams was the "best-in class LCD clip".[232]   Also, when HP prepared a competitive comparison of the various webcams on the market, one area of focus was the "versatile clip" of the webcams.[233]   HP also touted the importance of the clip by stating that the "back packaging must highlight the key features / customer benefits, different attachment options (LCD, Stand, Easy Clip)…"[234]   As part of the hardware specifications for one of its webcams, HP stated that it "must" work on all LCD monitors (HP easy clip), and a desk (stand).[235]   In a competitive analysis performed by HP and provided to Lora Yadon of Walmart, HP touted that its webcam's "flexible versatile clip mounts anywhere".[236]   HP also discussed that its webcam has 360-degree rotation and tilt compared to the competing Microsoft webcam having only tilt adjustment.[237]

85.    I believe that HP's survey results regarding the patented technology, the benefits touted by HP, and the significant sales of the patented products sold by licensees and Defendants indicate that the patented technology is a commercial success and very popular. As such, the Defendants recognized the need to offer a versatile and configurable webcam clip for its Accused Products to remain competitive and would have been unwilling to be excluded from competing in the market and forego future profits from sales of Accused Products. Furthermore, a licensee is willing to pay higher royalty rates for a patented invention incorporated in products which generate significant profits. As a result, this factor would have an upward effect on a negotiated royalty between the parties.

---

[232] HP000371 – 406, at 387 - 389.
[233] HP000244 – 295, at 252.
[234] HP000244 – 295, at 258.
[235] HP000244 – 295, at 266.
[236] WMT-ACAM0001128 – 1131, at 1129.
[237] WMT-ACAM0001128 – 1131, at 1130.

**Factor #9 – The utility and advantages of the patent property over old modes or devices, if any, that had been used for working out similar results.**

**Factor #10 – The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits of those who have used the invention.**

86.    *Georgia-Pacific* Factors Nos. 9 and 10 are often considered together because of their similar nature.  *Georgia-Pacific* Factors Nos. 9 and 10 both relate to the advantages conveyed due to use of the patented invention and the related benefits enjoyed by the user of the patented invention over alternative means of achieving similar results.  I have interviewed AdjustaCam's technical expert, Dr. Muskivitch, who I have relied upon to form my understanding about the teachings and benefits of the Patent-in-Suit.

87.    Based on my interview of Dr. Muskivitch, I understand the teachings of the Patent-in-Suit represent a novel technology advancement.[238]  According to Dr. Muskivitch, the teachings of the '343 Patent "revolutionized" personal and business communication through the ability to attach and configure a device, such as a webcam, to a variety of objects.[239]

*Utility and Advantages*

88.    I understand that prior to the invention disclosed in the '343 Patent, camera support apparatus were relatively large and not easily transportable.[240]  They also did not provide means to protect the camera during transport, and if constructed of hard, exposed materials, tended to damage the cameras.[241]  Furthermore, the prior art apparatus could not easily accommodate the variety of applications desired for portable cameras and often times more than one camera support apparatus was necessary in order to support the desired range of applications.[242]  This created a "desire…within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and

---

[238] Interview of John Muskivitch, Ph.D.
[239] Interview of John Muskivitch, Ph.D.
[240] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[241] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[242] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.

vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage."[243]

89.    I understand that the Accused Feature supports the camera in any number of desired configurations and accommodates repositioning the camera to new orientations during use and is easily transportable.[244]    Additionally, the Accused Feature is lightweight and versatile in accommodating new camera and laptop designs.[245]    According to Dr. Muskivitch, the Accused Feature "is highly advantageous over the prior art due to its versatility, configurability, stability and portability."[246]    The Accused Feature allows for webcams to be configurable for different angles and views, and ensures that they have a secure, stable perch, which is also "highly desirable".[247]    Furthermore, the '343 Patent has revolutionized visual communications because it has allowed for ease of accessibility of the visual connection to a computer.[248]

*Conclusion*

90.    According to Dr. Muskivitch, the teachings of the Patent-in-Suit represents a novel technology advancement and the teachings of the '343 Patent "revolutionized" personal and business communication through the ability to attach and configure a device, such as a webcam, to a variety of objects.[249]    There was a "desire…within the industry for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer, and to protect the camera during storage."[250]    The Accused Feature answered the desires of the industry as it "is highly advantageous over the prior art due to its versatility, configurability, stability and portability."[251]    HP touted the benefits of the ability to offer a versatile and configurable webcam clip and considered it a competitive advantage.    As a result, this factor would have an upward effect on a negotiated royalty between the parties.

---

[243] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[244] Interview of John Muskivitch, Ph.D.
[245] Interview of John Muskivitch, Ph.D.
[246] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[247] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[248] Interview of John Muskivitch, Ph.D.
[249] Interview of John Muskivitch, Ph.D.
[250] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[251] Interview of John Muskivitch, Ph.D.

*Highly Confidential –Attorneys' Eyes Only Material*    *PAGE 40*

**Factor #11 – The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.**

91.     The Defendants are accused of making substantial use of the Patent-in-Suit, and have profited substantially from that alleged use.  As noted above, the Defendants have realized significant revenues and profits from its sale of Accused Products:[252]



92.     The Defendants would have recognized that the Accused Feature "is highly advantageous over the prior art due to its versatility, configurability, stability and portability."[253]    The Defendants would have recognized the need in the market for "for a small, easily transportable camera support apparatus for supporting the camera on both horizontal surfaces, such as the surface of a desk or table, and vertical surfaces, such as the display screen of a laptop computer,

---

[252] See Exhibit 5.
[253] Interview of John Muskivitch, Ph.D.

and to protect the camera during storage."[254]   As a result, the Defendants would be reluctant to forgo the opportunity to offer the Accused Feature in the Accused Products.  This would impose upward pressure on a negotiated royalty between the parties.

**Factor #12 – The portion of the profit or the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.**

93.     The relevant inquiry with respect to this factor is whether there is a customary royalty rate for analogous inventions in the public domain.  As a result, I obtained information from RoyaltySource,[255] an online database and provider of publicly-available information on licenses of intellectual property, based on descriptions of licenses responsive to keyword search terms provided by AdjustaCam's technical expert Dr. Muskivitch.   These search terms included: "Camera clip, Camera stand, Camera mount, Camera holder, Camera support, Camera tripod, Camera monopod, Webcam clip, Webcam stand, Webcam mount, Webcam holder, Webcam support, Webcam tripod, Video clip, Video stand, Video mount, Video holder, Video support, Video tripod, Video monopod, Photography clip, Photography stand, Photography mount, Photography holder, and Photography support."

94.     Based on the above search terms, a search of the RoyaltySource database did not yield any publicly-available licenses that involved patented technology comparable to the '343 Patent.[256]   As a result, this factor would have a neutral effect on a negotiated royalty between the parties.

**Factor #13 – The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.**

95.     This factor takes into account the relative contribution of the patented feature(s) to the success of the product(s).  In evaluating this factor, I am aware of and have taken into account

---

[254] Expert Report of John Muskivitch, Ph.D.; Interview of John Muskivitch, Ph.D.
[255] http://www.royaltysource.com.
[256] Interview of John Muskivitch, Ph.D.

*Highly Confidential –Attorneys' Eyes Only Material*                                                          PAGE 42

recent developments in the case law in this area as reflected in such decisions as *Lucent* and *Uniloc*. I understand that the teachings of the Patent-in-Suit represents a novel technology advancement and the teachings of the '343 Patent "revolutionized" personal and business communication through the ability to attach and configure a device, such as a webcam, to a variety of objects.[257] According to Dr. Muskivitch, the Accused Feature substantially creates the value of the component parts.[258] The Accused Feature "is highly advantageous over the prior art due to its versatility, configurability, stability and portability."[259]

96.    HP touted the benefits of the ability to offer a versatile and configurable webcam clip and considered it a competitive advantage. In a HP presentation for three of its webcams, HP indicated that one of the key features for these three webcams was the "best-in class LCD clip".[260] Also, when HP prepared a competitive comparison of the various webcams on the market, one area of focus was the "versatile clip" of the webcams.[261] HP also touted the importance of the clip by stating that the "back packaging must highlight the key features / customer benefits, different attachment options (LCD, Stand, Easy Clip)…"[262] As part of the hardware specifications for one of its webcams, HP stated that it "must" work on all LCD monitors (HP easy clip), and a desk (stand).[263] In a competitive analysis performed by HP and provided to Lora Yadon of Walmart, HP touted that its webcam's "flexible versatile clip mounts anywhere".[264] HP also discussed that its webcam has 360-degree rotation and tilt compared to the competing Microsoft webcam having only tilt adjustment.[265]

97.    The benefits touted by HP indicate that it would be significantly impacted by an inability to offer the Accused Feature, which would place the HP at a significant competitive disadvantage. The benefits identified above indicate that a greater portion of the realizable profits from sales of the Accused Products should be credited to the inventions of the Patent-in-Suit, vis-à-vis other related technology incorporated in the Accused Products. Furthermore,

---

[257] Interview of John Muskivitch, Ph.D.
[258] Interview of John Muskivitch, Ph.D.
[259] Interview of John Muskivitch, Ph.D.
[260] HP000371 – 406, at 387 - 389.
[261] HP000244 – 295, at 252.
[262] HP000244 – 295, at 258.
[263] HP000244 – 295, at 266.
[264] WMT-ACAM0001128 – 1131, at 1129.
[265] WMT-ACAM0001128 – 1131, at 1130.

GlobalMedia and APAC would also seek to extract full value from the Patent-in-Suit. As a result, this would impose upward pressure on a negotiated royalty between the parties.

98.    Based on my review and analysis of the documents and information in this case, I noted that numerous suppliers and resellers agreed to pay actual or imputed royalty rates of at least $1.25 per unit which was not tied to the sales price or the profitability of the webcam. Therefore, the industry recognized that the value associated with the '343 Patent was at least $1.25 per licensed webcam.

**Factor #14 – The opinion testimony of qualified experts.**

99.    This factor includes by reference all of the opinions of Dr. Muskivitch which I rely on as part of my analysis.[266]

**Factor #15 – The royalty that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon if both had reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license**

100.    The discussions above reflect my analysis of the factors influencing the hypothetical negotiation that would have occurred in this matter.

### 6.3    The Hypothetical Negotiation

101.    GlobalMedia and APAC would have entered into a hypothetical negotiation with the Defendants for a non-exclusive, bare patent license for rights to the Patent-in-Suit on or around the respective first date of alleged infringement. In determining a reasonable royalty, it is important to consider the respective economic bargaining positions of GlobalMedia, APAC, and

---

[266] As of the date of this report, I have been provided a final or near final draft of Dr. Muskivitch's report, which is consistent with my interviews of them, and which I am relying upon in addition to my interviews of him.

the Defendants at, or about the time of first alleged infringement. Based on the documents, information, and deposition testimony in this matter, the parties would have considered the information discussed throughout this report. In addition to the factors discussed above in the *Georgia-Pacific* analysis, the parties would have also considered the following factors at the respective hypothetical negotiations:

*GlobalMedia's and APAC's Bargaining Position:*

- The Patent-in-Suit is assumed to be valid and has been infringed by Defendants;
- There was an established royalty rate, from the ████ and Philips licenses, for the Patent-in-Suit at the time of the hypothetical negotiation. The ████ license would have been especially relevant because ████ was the leader in this market;
- The technology taught by the Patent-in-Suit represents a novel technology advancement and has "revolutionized" personal and business communication through the ability to attach and configure a device, such as a webcam, to a variety of objects;
- The Accused Feature "is highly advantageous over the prior art due to its versatility, configurability, stability and portability;"
- HPhas touted the benefits of providing the Accused Feature with its Accused Products;
- Based upon the results of the HP survey, the Defendants would have known the importance of providing the Accused Feature;
- Numerous AdjustaCam licensees acknowledged that they would not contest the validity and enforceability of the Patent-in-Suit. This is consistent with the hypothetical negotiation whereby the Defendants recognize the Patent-in-Suit is valid and has been infringed;
- Numerous AdjustaCam licensees acknowledged that if they challenged the validity and enforceability of the Patent-in-Suit they would lose their pre-paid license rights, and in some cases would be required to pay a royalty of $3.00 per licensed product sold, which in effect would double the royalty due;
- The Defendants realized significant revenues and profits from its sale of Accused Products; and

- The term of the license would encompass the majority of the statutory life of the Patent-in-Suit.

*Defendants' Bargaining Position:*

- Defendants would have known that neither GlobalMedia nor APAC had made or distributed any products that would compete with the Accused Products;
- Although neither GlobalMedia nor APAC had licensed the rights to the Patent-in-Suit outside the settlement of litigation, given their business model, they would have been motivated to license the Patent-in-Suit in order to generate a return on its intellectual property; and
- The Accused Products incorporated technologies other than the Patent-in-Suit.

**6.4    Royalty Rate Conclusion**

102.    The parties to the hypothetical negotiation would have considered the above-discussed *Georgia-Pacific* factor analysis at the time of the respective hypothetical negotiation in determining a reasonable royalty rate.  The parties would have also considered the other factors and considerations described throughout this report at the time of the hypothetical negotiation in determining a reasonable royalty rate.

103.    In concluding a royalty rate which would result from the hypothetical negotiation, I have taken into account my analysis of the Georgia-Pacific factors, all of the considerations discussed in this report, the documents, information, and testimony reviewed to date, interviews I have conducted, and my education, training, and experience in intellectual property matters.  Based on the licensing expectations of GlobalMedia and APAC and the established royalty detailed above, it is my opinion that a reasonable royalty rate for the Patent-in-Suit would be no less than $1.25 per unit of sales of Accused Products, which was also discounted due to the risk of the pending litigation.

104.    GlobalMedia and APAC would have had greater bargaining power than did the Defendants in each of the respective hypothetical negotiations.  In addition, under the Book of

Wisdom, the parties to the hypothetical negotiations would have recognized that a significant number of companies in the industry accepted $1.25 to $1.50 as an appropriate royalty rate to reflect the value associated with rights to practice the teachings of the '343 Patent.

105.    In addition, I noted that several of AdjustaCam's licensees agreed to not challenge the validity and enforceability of the '343 Patent.  From a financial or economic perspective, agreeing not to challenge the validity and enforceability of the '343 Patent is similar to acknowledging the validity and enforceability of the '343 Patent.  In the hypothetical negotiations in this case, AdjustaCam and the Defendants are to assume the '343 Patent is valid and infringed.  Therefore, the running royalty of $1.25 to $1.50 per unit paid by those licensees who agreed not to challenge the '343 Patent reflects a royalty scenario analogous to the hypothetical negotiations with respect to assumed validity and infringement.  However, the $1.25 to $1.50 per unit agreed to in these specific licenses included the downward adjustment AdjustaCam made to account for litigation risk, which is not a factor to be considered in the respective hypothetical negotiations with the Defendants.

106.    Numerous licensees also agreed that if they challenged the validity and enforceability of the '343 Patent, then they would pay an additional $1.50 per unit, in effect doubling the royalty rate to $3.00 per unit. The $3.00 per unit royalty includes an upward component related to litigation risk of $1.50 per unit.

107.    My conclusion regarding a reasonable royalty rate of $1.25 per unit to be paid by the Defendants is conservative because it incorporates the downward litigation risk adjustment, and various licensees agreed to pay an additional $1.50 per unit above the baseline royalty in the event they challenged the patent validity and enforceability.  Therefore, my concluded royalty rate of $1.25 per unit is conservative.

### 6.5    Royalty Base

108.    It is my opinion that damages for infringement in this matter are appropriately measured by a reasonable per-unit royalty rate applied to a royalty base comprised of the number of Accused Products which have been sold by each of the Defendants during the infringement

period. It is my understanding that damages for each of the Defendants can only begin on July 2, 2010, as this is the date upon which the Defendants were first notified of the '343 Patent. Based upon a damage period of July 2, 2010 through June 25, 2012, I have calculated the royalty base by Defendant as follows:[267]



### 6.6    Reasonable Royalty Conclusion

109.    It is my opinion that damages for infringement in this matter are appropriately measured by a reasonable royalty rate applied to a royalty base comprised of the total U.S. unit sales of the Accused Products as calculated above. As a result of applying a royalty rate of $1.25 to U.S. sales of Accused Products, I calculated reasonable royalty damages owed to AdjustaCam for each of the Defendants as follows:[268]

---

[267] See Exhibit 4.
[268] See Exhibit 4.



110.    The royalty damages above are not additive as the Defendants involve both suppliers and resellers and therefore include an overlap in sales among the Defendants.    In an effort to eliminate any duplication, I have eliminated overlapping sales in my royalty base at the retail level due to the exhaustion principle.    The following table provides a breakdown of royalty damages by Defendant, eliminating any overlapping sales:[269]

---

[269] See Exhibit 4.1.

THE MATERIAL OMITTED DISCLOSES MATERIAL DEEMED CONFIDENTIAL UNDER LICENSE



111.    As noted above, it is my understanding that the Accused Feature is sold only as a component of the Accused Products. Various licensees, including suppliers and resellers, have taken a license to the '343 Patent. In all 22 executed licenses the actual or implied royalty base was the accused webcam. This is the least saleable unit into which the Accused Feature is found. None of the Defendants, and none of AdjustaCam's licensees sell the Accused Feature separate and apart from the accused webcam product. Therefore, my damage model is properly focused on the least salable unit.

112.    Furthermore, in Uniloc the Federal Circuit stated:

> *The entire market value rule allows a patentee to assess damages based on the entire market value of the accused product only where the patented feature creates the "basis for customer demand" or "substantially create[s] the value of the component parts."*[270]

---

[270] *Uniloc USA, Inc. v. Mircosoft Corporation*, 2011 WL 9738 (Fed. Cir. Jan. 4, 2011).

It is my understanding that the teachings of the Patent-in-Suit represent a novel technology advancement and substantially creates the value of the component parts.[271]   Additionally, a reasonable royalty rate of $1.25 represents the contribution of the Accused Feature to the overall device and is not dependent on the sales price of the Accused Product.

113.   I understand various courts have recognized that a post-verdict royalty rate can be predicated on potentially different circumstances than a pre-trial royalty rate.   For example, courts have recognized that as a result of a finding of infringement, the infringer is considered a willful infringer.   This stands in contrast to the hypothetical negotiation at the time of first infringement whereby the infringer is assumed to be a willing licensee.   I am prepared to analyze a post-verdict royalty rate if requested by counsel to do so.

## 7.0     RESERVATION OF RIGHTS

114.   It is my understanding that additional documents may be produced in this matter that could provide information relevant to my analysis.   If information I determine to be relevant is produced or presented in this matter after the date of issuance of this report, I may revise my analyses and/or my report to reflect the relevant information.   I further reserve the right to consider and comment on any opinion and reports offered by the Defendants' expert(s) pertaining to the subject matter hereof.   Furthermore, I may prepare demonstrative graphs and/or charts to assist in the presentation of my opinions at deposition or at hearing or trial, if I am requested to testify.

---

[271] Interview of John Muskivitch, Ph.D.

## <u>CERTIFICATE OF SERVICE</u>

I, John J. Edmonds, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On December 11, 2014, a copy of the foregoing **CORRECTED NON-CONFIDENTIAL JOINT APPENDIX – VOLUME I OF III (A0001 – A0578)** was filed electronically with the Clerk of the Court using the CM/ECF System, which will serve via electronic mail notice of such filing to all counsel registered as CM/ECF users.

Upon acceptance by the Court of the electronically filed document, six paper copies will be filed with the Court via courier within the time provided by the Court's rules.

Dated: December 11, 2014          /s/ *John J. Edmonds*
                                  John J. Edmonds

                                  COLLINS, EDMONDS, POGORZELSKI,
                                  SCHLATHER & TOWER, PLLC